William M. Audet (SBN 117456)
S. Clinton Woods (SBN 246054)
Ling Y. Kuang (SBN 296873)
   waudet@audetlaw.com
   cwoods@audetlaw.com
   lkuang@audetlaw.com
**AUDET & PARTNERS, LLP**
   711 Van Ness Avenue, Suite 500
   San Francisco, CA 94102-3275
   Telephone:   (415) 568-2555
   Facsimile:    (415) 568-2556

*Attorneys for Plaintiffs Brent Jones, Karen Palmer, and Mark
Davis, on behalf of themselves and all others similarly situated*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| IN RE: APPLE INC. DEVICE PERFORMANCE LITIGATION | Case No. 5:18-md-02827-EJD-NC |
| | ***JONES* PLAINTIFFS' NOTICE OF MOTION AND MOTION TO CONSOLIDATE AND APPOINT INTERIM LEAD SUBCLASS COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF** |
| | Judge: Honorable Edward J. Davila |
| | Dept: Courtroom 4 (Fifth Floor) |
| | **CLASS ACTION** |
| BRENT JONES, KAREN PALMER, and MARK DAVIS, individually, and on behalf all others similarly situated, | Case No. 5:18-cv-00406-EJD |
| Plaintiffs, | |
| v. | |
| APPLE INC. | |
| Defendant. | |

## **TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................... 1

II.   FACTUAL BACKGROUND ......................................................................... 4

III.  RELEVANT PROCEDURAL BACKGROUND ............................................. 5

IV.   ARGUMENT ............................................................................................... 6

    A.  Subclass Counsel for the Older iPhone Subclass is Necessary..................................... 6

    B.  This Court Should Appoint William M. Audet of Audet & Partners as Interim
       Subclass Counsel for the Older iPhone Subclass........................................................ 8

       1.  Mr. Audet and Audet & Partners, LLP, Meets and Exceeds the
          Requirements of Rule 23(g)(1)(A)........................................................... 9

       2.  Mr. Audet is Willing to Serve as Subclass Counsel Under Fairly-
          Appointed Lead Counsel, However, the Court Should
          Reject The Proposal of Gilson Counsel. ................................................. 14

    C.  This Court Should Consolidate the Related Actions .................................................. 15

V.    CONCLUSION ............................................................................................ 15

Motion to Consolidate and Appoint Interim Lead Subclass Counsel

# TABLE OF AUTHORITIES

**Cases**                                                                                                 **Page(s)**

*Adedipe v. U.S. Bank, N.A.*,

    2014 U.S. Dist. LEXIS 28239 (D. Minn. Feb. 4, 2014) ............................................................ 3

*Bernal v. Netflix, Inc.*,

    No. 5:11-cv-00820 EJD, 2011 U.S. Dist. LEXIS 89903  (N.D. Cal. Aug. 12, 2011) .......... 9, 12

*Cooperman v. Galeos LLC*,

    2011 U.S. Dist. LEXIS 163019 (C.D. Cal. Apr. 18, 2011) ..................................................... 14

*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) .................................................... 7

*Douglas v. Haier Am. Trading, LLC*,

    No. 5:11-cv-02911 EJD (PSG), 2011 U.S. Dist. LEXIS 91695  (N.D. Cal. Aug. 17, 2011) ... 11

*Durso v. Samsung Elecs. Am.,*

    2013 U.S. Dist. LEXIS 111412 (D.N.J. Aug. 5, 2013)............................................................... 3

*FTC v. Qualcomm Inc.* (*In re Qualcomm Antitrust Litig.*),

    No. 17-cv-00220 LHK (NC), 2018 U.S. Dist. LEXIS 61384  (N.D. Cal. Feb. 24, 2018).......... 4

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ......................................................... 7

*In re Aon ERISA Litigation*, No. 04 CV 6875 (N.D. Illinois)...................................................... 15

*In re Literary Works in Electronic Databases*, 654 F.3d 242 (2d Cir. 2011) ............................... 7

*In re Scrap Metal Antitrust Litig.*, No. 1:02-CV-0844 2002 WL 31988203

    (N.D. Ohio Aug. 5, 2002) ..................................................................................................... 15

*Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l Ltd*., 247 F.R.D. 253 (D. Mass 2008) ........... 7

*Paraggua v. Linkedin Corp.*,

    No. 5:12-cv-03088 EJD, 2012 U.S. Dist. LEXIS 123226  (N.D. Cal. Aug. 29, 2012) ........ 9, 13

*Perez-Funez v. Dist. Dir., I.N.S.*, 611 F. Supp. 990 (C.D. Cal. 1984) ......................................... 15

*Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157 (9th Cir. 2013) ......................................... 7

*Walker v. Discover Fin. Servs*.,

    2011 U.S. Dist. LEXIS 58803 (N.D. Ill. May 26, 2011) ....................................................... 3

**Statutes**

Fed. R. Civ. P. 23(g)(1)................................................................................... passim

Fed. R. Civ. P. 42(a) ............................................................................................ 15

**Treatises**

1 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS

§ 3.31 (4th ed. 2002) ...................................................................................... 7

William M. Audet and Kimberly A. Fanady, HANDLING FEDERAL DISCOVERY

(22nd Revision)(James Publishing Co.)...................................................... 11

Motion to Consolidate and Appoint Interim Lead Subclass Counsel

**NOTICE OF MOTION AND MOTION TO CONSOLIDATE AND**

**APPOINT INTERIM LEAD SUBCLASS COUNSEL**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May, 10, 2018 at 10:00AM in San Jose, California, Courtroom 4, 5th floor before the Honorable Judge Edward J. Davila, Plaintiffs Brent Jones, Karen Palmer, and Mark Davis (collectively, "*Jones* Plaintiffs") and AUDET & PARTNERS, LLP ("the Audet Firm" or "the Firm"), will, and hereby do move to appoint William M. Audet of Audet & Partners, LLP, as interim lead subclass counsel representing a class of purchasers of iPhones of iPhone 5s or older (hereinafter "Older iPhone Subclass"), and hereby do move to consolidate all related cases.

Specifically, the *Jones* Plaintiffs seek an order: (1) Appointing William M. Audet and the Audet Firm as interim lead subclass counsel representing the Older iPhone Subclass; (2) rejecting the proposed leadership structure submitted by Counsel for *Gilson v. Apple, Inc.*, Case No. 5:18-cv-00216-EJD-N.D. Cal., and *Gallman v. Apple, Inc.*, Case No. 5:17-cv-07285-EJD-N.D. Cal.; (3) appointing a streamlined leadership structure; and (4) consolidating all related actions, and additional relief.

The motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the Declaration of William M. Audet in support of the instant motion, the papers and records on file in this action, and other such written and oral argument as may be presented to the Court.

Dated May 3, 2018                              AUDET & PARTNERS, LLP

By:    s/    *William M. Audet*

WILLIAM M. AUDET (SBN 117456)
S. CLINTON WOODS (SBN 246054)
LING Y. KUANG (SBN 296873)
711 Van Ness Avenue, Suite 500
San Francisco, Ca 94102-3275
Telephone:    (415) 568-2555
Facsimile:    (415) 568-2556
*Attorneys For Plaintiffs Brent Jones, Karen Palmer, And Mark Davis*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Over 80 complaints have been filed in various District Courts against Defendant Apple, Inc. (hereinafter "Apple" or "Defendant") arising out of Apple's 'throttling' of its older iPhones over the past several years. These cases now have been sent to this Honorable Court for pretrial proceedings by the MDL Panel.  The scale of this litigation has been magnified by media coverage and the millions of users impacted by Apple's previously-secret 'throttling' process.

As is typical in a case of this magnitude, certain firms have been convened behind the scenes meetings, calls, and the like, in an effort to curry favor and support for these firms' appointment as lead counsel. In this case, based on commitments by a number of firms, including some firms now seeking lead positions in this Court, the undersigned firm (and others) relied on the commitment by two firms now seeking co-lead positions[1] that *every* firm interested in seeking leadership would have the opportunity to do so.  Further, during the pre-MDL filings in this Court, statements had been made between counsel that in this case all parties would be provided an opportunity to apply for lead positions by way of the usual motion practice used in MDL cases[2].

As noted in greater detail below, this overall approach was upended by statements made to this Court at the CMC regarding the implicit support for an already agreed-upon leadership structure. Yet, even though it may appear that a 'majority' consensus exists, the fact remains that a number of excellent firms and attorneys must be considered for leadership in this case. In

---

[1] Cotchett Pitre & McCarthy, LLP, and Kaplan Fox & Kilsheimer LLP, counsel of record in the *Gilson v. Apple, Inc.*, Case No. 5:18-cv-00216-EJD-N.D. Cal., and *Gallman v. Apple, Inc.*, Case No. 5:17-cv-07285-EJD-N.D. Cal., respectively (hereinafter *Gilson* Counsel).

[2] For example, in the last submission to the Court before the CMC, a number of attorneys inserted in the draft CMC statement a request to the Court to set a hearing date for consideration of leadership applications on the usual motion process.  This suggested language was removed just before the CMC statement was filed, with the comment from *Gilson* Counsel that plaintiffs should not be 'advising' the Court on how to appoint lead counsel and that the Court would know how best to set the process. However, hindsight reveals that by removing the suggested process this allowed Counsel to "advise" the Court of how to proceed in a manner that was entirely self-serving.

addition to the lack of real consensus on leadership, a number of firms have significantly differing views on how the litigation should proceed. These concerns include whether a large and unwieldy two committee structure - that is apparently part of the *Gilson* Counsel's proposal - is the most efficient and practical way to proceed in this case. Among other faults, *Gilson* Counsel's notion that this case needs layers and layers of committees and attorneys is one that may not, at the end of the day, be in the best interest of the class.

For the vast majority of class members, Apple has already admitted liability and has offered to certain class members a battery replacement program involving the purchase of a battery at significantly less than the usual listed price ($29, reduced from $79). This offer of relief is without question totally inadequate (and even now has been reported to be fraught with problems that only a class action can remedy). Other class members, such as the *Jones* Plaintiffs and their putative subclass, have not been offered any remedy at all. As noted *infra*, while real issues remain involving the total amount of damages suffered by the class and what remedy exists for the class, the truth is that for a significant portion of the class Apple is not in a position to contest liability. While some form of committee structure may be necessary, unlike most other MDLs, this case should not require dozens and dozens of lawyers from all over the country to be involved in every aspect of the case as appears to be the proposal by the *Gilson* Counsel. Instead, the case really is about making the class whole, and little more. Extensive discovery or even complicated motion practice may not be necessary, but at this stage to just assume that it is will lead to unnecessary work and potentially and needlessly protract this litigation. (Indeed, where, as here, the large committee structure may have been created out of the effort to garner support for a two way co-lead structure consisting of the *Gilson* Counsel firms, the Court should question the need for so many committees and subcommittees.)

Finally, before discussing *Gilson* Counsel's request for relief, two important points require discussion: First, with likely few exceptions, Mr. Audet has personally litigated more cases against Apple over the last 20+ years than most any plaintiffs' attorney in the United States.  As noted in the CV submitted herein, Mr. Audet has unique and valuable knowledge of the inner workings of Apple, and has prepared and/or served as first or second chair in more than

a dozen depositions of Apple employees and executives. Declaration of William M. Audet ("Audet Decl.") at Exh. 1, ¶ 19. Based on his past litigation against Apple, Mr. Audet has unique knowledge of how Apple maintains its paper and electronic files, and has also negotiated numerous ESI protocols, protective orders and key pretrial documents in other cases against Apple. Failing to include Mr. Audet as a key member of the leadership would clearly waste a valuable resource. Audet Decl. at ¶¶ 30-31.

Second, Audet & Partners, LLP, appears to be the only firm that filed a case on behalf of *only* the Older iPhone Subclass. *See* Amended Compl. in *Jones v. Apple Inc.*, Case No. 5:18-cv-00406-EJD-N.D. Cal., Dkt. #6 (hereinafter, "*Jones* Compl.") at ¶ 46.  This complaint was filed after significant research and investigation into the claims of the entire class and the potential discrete subclass. Unlike the putative class members in virtually every other case (including those of the *Gilson* Counsel), the Older iPhone Subclass members have thus far been offered **nothing** by Apple. Thus, the conflict between the larger class and this unique subclass demands separate class counsel in order to avoid challenges further down the road.  This is not just a matter of 'allocation' but a matter of adequate representation of the subclass from the inception of the case. *See Walker v. Discover Fin. Servs.*, 2011 U.S. Dist. LEXIS 58803 at * 14-16 (N.D. Ill. May 26, 2011) (appointing additional counsel when separate complaints focused on separate claims); Durso *v. Samsung Elecs. Am.,* 2013 U.S. Dist. LEXIS 111412 at * 8-9, 13-14 (D.N.J. Aug. 5, 2013) (court has discretion to appoint more than one firm as interim co-lead counsel, over the objections of one of the applicants); *Adedipe v. U.S. Bank, N.A.*, 2014 U.S. Dist. LEXIS 28239 at * 8-9 (D. Minn. Feb. 4, 2014). (Appointing counsel when "both applicants satisfy the criteria for certification under Rule 23(g)(1)" and where the applicants "have complementary strengths.")

Accordingly, counsel for the *Jones* Plaintiffs respectfully submit that *Gilson* Counsel's proposed two way co-lead counsel, with an Executive Committee *and* a Steering Committee, should not be approved by this Court. Instead, the *Jones* Plaintiffs respectfully request that the Court:

1. Appoint one lead counsel from the *Gilson* Counsel's group and one lead counsel from

1    any of the other applicants' firms or groups (including but not necessarily limited to

2    considering Steve Berman, of Hagens Berman Sobol Shapiro, LLP, counsel of record for

3    plaintiffs in *Solak v. Apple, Inc.*, 5:18-cv-00123-EJD-N.D. Cal.).

4    2.  Appoint Mr. Audet as lead interim subclass counsel[3] for the Older iPhone Subclass.

5    3.  Reject the appointment of a large steering committee and instead approve a small (5

6        firms or less) Executive Committee. If this case later suggests the need for such a

7        structure then the Court can readily revisit the issue. The appointments should be based

8        on merit, not on 'who supports who' in this case.

9    4.  Appoint a Special Master for Mediation Purposes, not for discovery purposes.

10       Appointment of a discovery referee at this stage may be premature given the posture of

11       this case. Indeed, Apple has already admitted to throttling iPhone devices and even

12       offered a fix, albeit a subpar one. Counsel has failed to articulated any reason why

13       discovery cannot be "effectively and timely addressed" under the current procedures

14       and, as such, appointment is inappropriate. *FTC v. Qualcomm Inc.* (*In re Qualcomm*

15       *Antitrust Litig.*), No. 17-cv-00220 LHK (NC), 2018 U.S. Dist. LEXIS 61384, at *6-7

16       (N.D. Cal. Feb. 24, 2018) (denying appointment of a special master for discovery).

17   5.  Order the parties immediately meet and exchange information and require parties to

18       meet with ESI representatives of the company and then work out an ESI proposal based

19       on the unique manner that Apple maintains its electronic files.

20   6.  Order consolidation of the related individual actions into *In Re: Apple Inc. Device*

21       *Performance Litigation*, Case No. 5:18-md-02827-EJD-N.D. Cal., as all of the cases

22       involve similar - though not entirely overlapping - legal theories and factual scenarios.

23   **II.    FACTUAL BACKGROUND**

24       The *Jones* Plaintiffs filed a class action behalf of themselves and all others similarly

---

[3] This unique subclass has been subject to the same throttling issues in the past, but Apple has not provided any remedy for these class members, creating a clear and undeniable conflict between the Older iPhone Subclass on the one hand, and the class consisting of purchasers of the iPhone 6 and newer models on the other.

situated for Apple's failure to warn consumers of the older pre-iPhone 6 that it was 'throttling' the performance of the phone. *Jones* Compl. at ¶ 88. Apple's most successful product line, the iPhones, have always been paired with Apple's own proprietary mobile operating system—the iOS—the electronic platform or 'backbone' upon which Apple's products operate and in which Apple exerts dominant control and influence upon consumers who purchase their products. *Id*. at ¶ 4.   The iOS is not a static system but undergoes continuous changes. *Id*. at ¶ 6.   During each 'update' of the iOS, consumers are urged and encouraged by Apple to update their iOS to the latest version to enjoy a better user experience. *Id*. at ¶ 7.   But in fact, these iOS updates significantly degraded the user experience. *Id*. Apple's (now-admitted) business decision to 'throttle' or slowdown iPhones sold to the public at large—via its iOS 'upgrades' or updates— were made without the public's knowledge or consent. *Id*. at ¶ 8.   As a result of Apple's actions, *Jones* Plaintiffs and other class members experienced, amongst other harms, slower phone speeds, degraded performance, shutdowns without warning, or loss of power and sudden rebooting of the iPhone device. *Id*.

*Jones* Plaintiffs seek to represent a class comprised of all individuals in the United States who currently own, or owned, an iPhone smartphone that was introduced to the general public **prior to 2014** (including the following: iPhone 5c, iPhone 5s, iPhone 5, iPhone 4s, iPhone 4, iPhone 3GS, iPhone 3G, and the original iPhone), and which was updated with Apple's proprietary operating system iOS. *Id*. at ¶ 46.

## III.   RELEVANT PROCEDURAL BACKGROUND

On February 21, 2018 the Court held a case management conference.  *See Jones* Dkt. No. 22. At the CMC, the Court stayed all actions pending determination of consolidation by the Judicial Panel on Multidistrict Litigation. *Id*. The JPML granted consolidation on April 4, 2018. *See* JPML Dkt. Nos. 159, 160.

The parties filed a consolidated CMC statement for the Court on April 13, 2018. *See* Dkt. No. 3. The CMC statement proposed that motions for lead counsel be filed by an agreed-upon date of May 16, 2018. *Id*. at p. 12. On April 25, without advising a number of attorneys in attendance (and clearly not advising those not in attendance), an attorney for the *Gilson* Counsel

indicated to the Court that, as to the issue of interim class leadership "[w]e are getting very close to putting together the leadership, the subcommittees, the steering committees…". *See* April 25, 2018 Hearing Transcript, at 19:15-16. *Gilson* Counsel further indicated that the Court should set a deadline for leadership motions by May 3rd at 5pm, and a hearing on May 10th, because, among other things "…we think we have a group put together, that will lead this ship…". *Id.* at 19:22-23. *Gilson* Counsel further indicated that the hearing on this leadership motion would take "all of five minutes, at most" because "I don't anticipate a lot of opposition…" *Id.* at 20:10-11. It was further represented that, as to the leadership motion "I don't think we are going to have a lot of dispute on that." *Id.* at 26:12. The Court agreed with *Gilson* Counsel's suggestion, possibly because the Court believed that an actual leadership structure had been proposed to the collective plaintiffs' counsel prior to the hearing and that proposal had met with little or no opposition. Unfortunately, the representations made regarding a leadership structure already in place and somehow supported by essentially all plaintiffs' counsel may not have been entirely accurate.

Counsel for *Jones* Plaintiffs immediately and repeatedly reached out to *Gilson* Counsel for the substance of any existing agreement or leadership structure so that they could evaluate the proposal and decide whether to participate. Audet Decl. at ¶ 23, Exh. 4, 6, 7, 8, 9. Instead of responding substantively, the *Gilson* Counsel resolutely refused to indicate which firms were participating in their proposed leadership group. *Id.* at Exhs. 5, 9. Indeed, the *Gilson* Counsel did not provide a proposed structure, consisting of a steering committee and an executive committee with several subcommittees until Sunday night, April 29, at 9pm. *Id.* at ¶ 26. As of the filing of the instant motion, *Gilson* Counsel have still not provided plaintiffs' counsel with detail as to the proposed leadership structure. *Id.* at Exh. 9. In short, despite claims otherwise, the two attorneys now seeking lead counsel have refused to provide the names of any committee member, cutting off any real opposition to the proposed bloated committee structure.

## IV.   ARGUMENT

### A.   Subclass Counsel for the Older iPhone Subclass is Necessary and Appropriate

To ensure that all members of the class and any subclass are adequately represented,

district courts must make sure that the members of the class possesses the same interests, and that no fundamental conflicts exist among the members of the class, class counsel, and any potential subclass. *See In re Literary Works in Electronic Databases*, 654 F.3d 242 (2d Cir. 2011); *see also Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). Representation is not adequate when "the class representatives face significantly different financial incentives than the rest of the class." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1165 (9th Cir. 2013). *See also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). ("Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"); s*ee also Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l Ltd.*, 247 F.R.D. 253, 269 (D. Mass 2008)(appropriate to appoint separate counsel for each subclass).

There is no question that the Older iPhone Subclass potentially possesses "significantly different financial incentives" than purchasers of more recent versions of the iPhone. This is primarily because, unlike purchasers of iPhone 6, 6s, 7, or 7s, Apple has denied throttling any of the pre-6 iPhones which were purchased by members of the Older iPhone Subclass and have offered no remedy at all to these harmed members. Unlike the battery replacement program introduced by Apple for iPhone 6, 6s, 7, and 7s, no existing remedy has been offered for members of the Older iPhone Subclass. Thus, a potential conflict exists between members of the Older iPhone Subclass and the classes of purchasers who own iPhones where the liability has been essentially admitted.[4] This potential conflict alone justifies subclass treatment on behalf of pre-iPhone 6 purchasers. *See* 1 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 3.31 (4th ed. 2002) ("When the class members are united in interest on the liability issues but have potential conflicts regarding the nature of the relief or the division of a monetary

---

[4] *See* February 2, 2018 letter from Apple to Senator John Thune, Chairman of the United States Senate Committee on Commerce, Science, and Transportation. Audet Decl. at 9, Exh. 3. The letter states that "Older iPhone models such as iPhone 5s have different system power demands than newer iPhone models and so do not experience the same issue." *Id*. at p. 4.

award, the court may avoid the potential conflict by creating subclasses").

*Jones* Plaintiffs filed their complaint specifically to only represent the Older iPhone Subclass. *Jones* Compl. at ¶ 46. By contrast, the vast majority of cases currently pending before this Court seek to represent only purchasers of iPhone 6 and later. A review of the first 40 actions consolidated before the Court indicates that only two cases other than the *Jones* Plaintiffs seeks a proposed class that specifically includes any models earlier than the iPhone 6[5]. None, other than the *Jones* Plaintiffs specifically pleaded a class on behalf of purchasers of iPhones prior to the iPhone 5. Notably, neither of the complaints filed by the *Gilson* Counsel seek to represent members of the Older iPhone Subclass[6]. This is not a *de minimus* issue. Pre-iPhone 6 owners constitute a significant portion of the overall iPhone market.[7] Older iPhone Subclass members therefore require skilled subclass counsel to protect their significant interests.

### B. This Court Should Appoint William M. Audet of Audet & Partners LLP as Interim Subclass Counsel for the Older iPhone Subclass

As explained below, Mr. Audet meets the requirements for appointing interim lead subclass counsel under Rule 23(g). Mr. Audet and the Audet Firm conducted an extensive factual investigation into Apple's history of engendering consumer suspicion (*see Jones* Compl. at ¶¶ 9-12), Apple's late disclosure of throttling (*id.* at ¶¶ 13-16), Apple's apology (*id.* at ¶¶ 17-21), and Apple's inability to address the what remediation is available to those with Older iPhones (*id.* at ¶¶ 22-25). *See also*, Audet Decl. at ¶ 8. As noted *supra*, Mr. Audet was the only

---

[5] *See Mangino v. Apple, Inc.* Case No. 1:17-cv-09178-HDL-N.D. Ill.; *and Cook v. Apple, Inc.*, Case No. 3:17-cv-02579-GPC-RBB-S.D. Cal.

[6] *See Gallman v. Apple, Inc.*, Case No. 5:17-cv-07285-EJD-N.D. Cal. (seeking to represent a class consisting of: All consumers who (a) reside in the United States, (b) owned Apple iPhone 6, 6S, SE or 7 models and upgraded to iOS 10.2.1 or a later version prior to the date of this Complaint, and (c) who purchased that iPhone within the United States.); *and Gilson v. Apple, Inc.*, Case No. 5:18-cv-00216-EJD-N.D. Cal. (seeking to represent a class consisting of: All persons and entities in the United States who own or have owned an iPhone 6, 6 Plus, 6s, 6s Plus, SE, 7, or 7 Plus and installed iOS 10.2.1 or 11.2 on their iPhone.)

[7] *See* Share of iPhone installed base worldwide by model, as of April 2017, showing that as of a year ago the overall market share of the Older iPhone Subclass was approximately 22%, available at: https://www.statista.com/statistics/755593/iphone-model-device-market-share-worldwide/

firm to seek to represent exclusively members of the Older iPhone Subclass. *Jones* Compl. at ¶ 46; Audet Decl. at ¶ 15.   Mr. Audet also has a substantial reputation litigating over technology-related issues and experience in leading major complex class actions. Audet Decl. at ¶¶ 17-20, Exhs. 1, 2.   Many courts recognize that 'specialization' or focused experiences with class litigation is a laudable attribute relevant to leadership. *Paraggua v. Linkedin Corp.*, No. 5:12-cv-03088 EJD, 2012 U.S. Dist. LEXIS 123226, at *6 (N.D. Cal. Aug. 29, 2012) ("the firm is experienced in class action litigation and, in particular, in class action litigation involving [issues in this case]"); *Bernal v. Netflix, Inc.*, No. 5:11-cv-00820 EJD, 2011 U.S. Dist. LEXIS 89903, at *9 (N.D. Cal. Aug. 12, 2011) (noting favorably counsel that "specializes in class actions relating to consumer technology and privacy issues.").

### 1.   Mr. Audet and Audet & Partners, LLP, Meets and Exceeds the Requirements of Rule 23(g)(1)(A)

Mr. Audet[8] meets and exceeds each of the factors set forth under Rule 23(g)(1)(A)(i) – (iv) for selecting lead counsel.  Mr. Audet and the Firm defined the central claims and conducted an extensive investigation into this case (Audet Decl. at ¶¶ 15-16); they have an extensive history of successfully leading similar actions and offer a particularized understanding of the issues attendant with this litigation (Audet Decl. at ¶¶ 17-20); and they have pledged to commit significant resources to the continued prosecution of the cases (Audet Decl. at ¶¶ 7-9). Thus, Mr. Audet and the Audet Firm should be appointed interim lead subclass counsel.

#### a.   *Audet & Partners Has Expended Considerable Time and Effort Investigating the Claims*

Audet & Partners has an entire practice area devoted to information technology class

---

[8] In addition to Mr. Audet's years as a plaintiffs' attorney, as detailed in his CV, Mr. Audet has a three post-undergraduate degrees (J.D., LL.M. & LL.D.), and clerked for the Ninth Circuit and served as a law clerk for the Honorable Fern M. Smith and the Honorable Alphonso Zirpoli. While obtaining his masters' degree from UW Madison, Mr. Audet taught civil procedure and advanced third year law courses at the law school and has been author of annually updated book on federal discovery.  Thus, in addition to his extensive past litigation experience against Apple, this unique legal career provides Mr. Audet with additional skills that would readily benefit the class and this Court in this case.

actions and holding large technology firms accountable. Audet Decl. at Exhs. 1-2. The Firm's history with and focus on these issues directly led to an in-depth investigation and analysis of the claims now before the Court. Audet Decl. at ¶¶ 15-16.  The Firm's investigation to date includes conducting numerous interviews of Apple users, engaging in discussions with technology experts and exchanging information with Apple's attorneys to ensure that the threat posed by Apple's malfeasance has been abated. *Id.* When Mr. Audet discovered that other law firms had filed similar lawsuits, he took the lead in compiling existing complaints, comparing causes of action, and engaging with Defendants and other plaintiffs' counsel regarding initial discovery and protective order issues. *Id.* Mr. Audet has also been active in discussing issues surrounding the proposed leadership structure. Audet Decl. at ¶¶ 23-28. Accordingly, Mr. Audet has expended substantial effort in investigating and bringing these claims before the Court.

### b. *Mr. Audet Has Superior Experience Handling Class Actions and Complex Litigation against Defendant Apple*

Rule 23(g)(1)(A)'s second factor examines proposed lead counsel's experience in handling class actions, other complex litigation and claims of the type asserted in the action.  In this respect, Mr. Audet stands out—his practice is focused largely on technology class actions. Audet Decl. at ¶¶ 17-20.  More significant to the instant cases, Mr. Audet and attorneys at the Firm have significant experience litigating against Apple over technology issues that negatively impacted consumers. *Id*; *see also* Exhs. 1, 2.  A non-exhaustive list of cases Mr. Audet and the Audet Firm has played a lead or liaison role in, spanning nearly two decades, includes several notable cases. *See, e.g., Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001) (Superior Court of Santa Clara County, Case Nos. CV780270 and CV775618.) (Mr. Audet appointed lead Counsel in a case involving Apple's unilateral act of ceasing its free telephone technical supports, which was settled with a value in excess of $11.5 million); *and In re Apple iPhone 4 Prods. Liab. Litig.*, No. 5:10-md-2188-RMW (N.D. Cal.) (Mr. Audet appointed Liaison Counsel in a case involving claims that the "iPhone 4" was defective); *and Johnson v. Apple, Inc*. (Superior Court of Santa Clara County, Case No. CV146501.) (Mr. Audet served as lead class counsel in a nationwide class action against Apple for overcharging consumers who purchased

Motion to Consolidate and Appoint Interim Lead Subclass Counsel

"99¢" iTunes gift cards, settled with $50 million dollars in payouts to the class); *and IN RE iPhone Application Litigation*, Case No. 5:11-md-02250-LHK-N.D. Cal. (appointed Liaison Counsel on a data privacy case against Apple).[9] The Audet Firm also has several cases against Apple on which attorneys at the firm served on leadership roles. *See, e.g., Orshan, et al. v. Apple, Inc.* Case No. 5:14-cv-05659-EJD-N.D. Cal.; *and Neocleous, et al. v. Apple, Inc.* Case No. 5:15-cv-00501-NC-N.D. Cal.*; and Cottrell, et al. v. Apple, Inc.* and *Phillips, et al., v. Apple, Inc.* Case No. 5:15-cv-05205-LHK-N.D Cal., 5:15-cv-04879-LHK-N.D. Cal.

As demonstrated above, Mr. Audet and the Audet Firm bring years-worth of battle-hardened experience litigating against Apple to this case. This factor weighs heavily in favor of appointment. *Douglas v. Haier Am. Trading, LLC*, Case No. 5:11-cv-02911-EJD-N.D.Cal, 2011 U.S. Dist. LEXIS 91695, at *5 (N.D. Cal. Aug. 17, 2011) (finding it favorable that counsel has "been previously appointed to represent customers of [similar defendants] in another class action suit similar to the instant action.") Here, Mr. Audet's litigation history is not just with similar defendants, but the ***same*** defendant.

Also worthy of consideration, the Audet Firm's experiences is not limited to just one technology behemoth but has in fact engaged in protracted litigation with other scions of the Silicon Valley.[10] Mr. Audet is not just at the forefront of technology and e-discovery issues in federal class actions, he literally wrote the book on it. *See* Handling Federal Discovery, by William M. Audet and Kimberly A. Fanady.  Beyond the context of technology-related class actions, Mr. Audet is the Firm's managing partner and has been appointed to leadership roles in numerous state[11], federal[12], and even international[13] class actions, resulting in the recovery of

---

[9] For a full list of cases against Apple, and others, on which Mr. Audet and the Audet Firm has worked, consult the Firm Resume. Audet Decl. at Exh. 1.

[10] *See*, *e.g.*, *In re Google, Inc., Android Consumer Privacy Litigation* – MDL No. 2264; *In re Zynga Litigation* (*Sigala v. Zynga Game Network, Inc.,* Superior Court of San Francisco County, Case No. CGC-10-505324); *Google Adwords Litigation* (*CLRB Hanson Industries , LLC, et al v. Google, Inc.)*, Case No. 5:05-cv-03649-JW-N.D. Cal.

[11] *See, e.g., In re PRK/Lasik Consumer Litigation,* Superior Court of Santa Clara County Case No. CV772894 (Lead Counsel); *California IOU Litigation* (*Baird v. Chiang*, Superior Court of Sacramento County, Case No. 34-2010-00081797)(Co-Lead Counsel).

Motion to Consolidate and Appoint Interim Lead Subclass Counsel

hundreds of millions of dollars for the Firm's clients. Audet Decl. at ¶ 19.  He is regularly asked to weigh in on consumer issues for publications. *Id.*  Mr. Audet's track history with high profile cases weighs heavily in favor of appointment. *Bernal*, 2011 U.S. Dist. LEXIS 89903, at *9 (noting favorably that counsel has "served as lead or co-lead counsel in numerous high-profile class action cases.")

In sum, Mr. Audet and the Firm have more than the necessary experience handling class actions, other complex litigation, and claims of the type asserted in these cases.  He thus meets and exceeds the requirements of Rule 23(g)(1)(A)(ii).

### c.  William Audet Has Superior Knowledge of Applicable Law

The third factor courts consider under Rule 23(g)(1)(A) is the proposed lawyer's knowledge of the applicable law. As explained above, Mr. Audet and his firm have had significant experience prosecuting consumer technology claims of this nature on a class-wide basis, ensuring that he possesses superior knowledge of applicable law. Audet Decl. at ¶¶ 17-20. Also, as is evident in this case, e-discovery, electronic preservation, and other ESI issues will be at the forefront of this litigation in its early stages.  Mr. Audet and resources at the Firm more incredibly well-suited to tackle these tasks. Audet Decl. at ¶ 20.  Mr. Audet employs attorneys who are seasoned e-discovery practitioners, a skill set that will undoubtedly be critical to successfully litigating these matters insofar as the cases involve the maintenance of electronics and electronic data. Audet Decl. at ¶ 20; *see also*, Exh. 2.  Accordingly, the third factor under Rule 23(g)(1)(A) also weighs in favor of Mr. Audet's appointment because he and his firm's

---

[12] *See, e.g., In re Zyprexa Product Liability Litigation*, E.D.N.Y., MDL No. 1596 (Co-Lead, Chairperson of the Executive Committee); *In re Bextra and Celebrex Marketing Sales Practices and Product Liability Litigation*, N.D. Cal. (San Francisco), MDL No. 1699 (Executive Committee); in a groundbreaking case involving an oil spill in the San Francisco Bay entitled *Loretz v. Regal Stone, Ltd.*, Case No. 07-cv-05800-SC-N.D. Cal. [the *Cosco Busan* case], (Co-Lead counsel with the Cotchett firm);

[13] *See, e.g., In re Pet Food Prods. Liab. Litig.*, MDL No. 1850 (D.N.J.) (Co-Lead Counsel)(first of its kind class action settlement relating to recognition of certain claims by pet owners and providing for multinational(U.S.A. and Canada) resolution of the claims); *Elidio Capela Vela, et al, v. BP, et al*, Case No. 717/2012 (8th District) (seeking damages and other relief for Mexico-based fisherman and businesses impacted by the BP Deepwater Horizon Oil Spill in the Gulf of Mexico The case was recently certified to proceed as a class action, a first of its kind in Mexico.)

attorneys are well versed in the factual, legal and technological issues at hand in these cases.

### d.  Mr. Audet Has Devoted Significant Resources to the Litigation and Will Continue To Do So

Rounding out the requirements of Rule 23(g)(1)(A), Mr. Audet has devoted, and will continue to devote, significant resources to the successful prosecution of this case in all phases of litigation through trial. Audet Decl. at ¶¶ 7-9, 20.  Mr. Audet and the Firm's expenditure of resources so far includes time spent evaluating the facts giving rise to the claims asserted, as well as those that present potential hurdles to recovery. Audet Decl. at ¶ 15, 16, 20.  In addition to their continued factual investigation, attorneys at the Firm have done significant research into the defenses that Apple is likely to raise and are therefore responsible for shaping the contours of the claims asserted in these cases. Audet Decl. at ¶ 20.

Further, since the filing of the *Jones* Plaintiffs' lawsuit, Mr. Audet and other attorneys at the Firm has engaged counsel for Apple to ensure that Apple has taken steps to protect its consumers in light of its actions and to discuss the Parties' respective views of the relevant facts, law, and overall direction of the litigation. Audet Decl. at ¶ 21.  Mr. Audet has also taken the lead in communicating to and participating with the other Plaintiffs' counsel regarding consolidation, litigation strategy, and cooperation, including but not limited to taking a lead role in requesting clarity on the *Gilson* Counsel's proposed leadership structure. Audet Decl. at ¶¶ 23-28. These actions also warrant Mr. Audet's appointment as subclass counsel. *See Paraggua v. Linkedin Corp.*, No. 5:12-cv-03088 EJD, 2012 U.S. Dist. LEXIS 123226, at *6 (N.D. Cal. Aug. 29, 2012) (appointing counsel that had "taken a leadership role among counsel for the other plaintiffs"). In addition, The Firm's resources, and in particular, its in-house IT staff that work hand-in-hand with attorneys at the firm, represents a significant asset in this litigation. *Bernal*, 2011 U.S. Dist. LEXIS 89903, at *9 (noting favorably the fact that "[t]he firm maintains its own information technology practice group"). Mr. Audet and the Firm have performed significant labor, and are prepared to devote whatever additional resources are necessary to bring these cases to a successful resolution. As a result, this Court should find that Mr. Audet and his firm meet and exceed the fourth and final factor of Rule 23(g)(1)(A).

### 2.   The Court Should Reject The Proposal of *Gilson* Counsel.

As demonstrated above, subclass counsel is necessary to represent the interests of the Older iPhone Subclass. Representing the only plaintiffs to file a case *solely* aimed at the interests of that subclass, Mr. Audet is a natural choice to serve as interim lead subclass counsel.

However, given the events at the April 25 CMC and subsequent to that conference, *Jones* Plaintiffs oppose the proposal as currently understood from *Gilson* Counsel. After the CMC, the *Jones* plaintiffs attempted, repeatedly, to be provided with clarification as to the overall 'support' for the two-way co-lead structure, and information about the committee membership and structure. Audet Decl. Exhs. 4-9, *generally*.  Instead of providing the information, the two presumptive co-lead attorneys treated the list of participating firms as a state secret. Indeed the *Gilson* Counsel has refused as of the filing of this motion, to provide any details, except to note that the steering committee was large, and that 'assignments' had been made, and that not only did a steering committee exist, but now an executive committee has been created as well.  Audet Decl. at Exh 9, ¶ 26.

The refusal to provide this information to all plaintiffs' counsel is telling for a host of reasons. First, it is clear that at the time of the April 25th CMC hearing, the presumed support for the as-of-yet-undisclosed leadership structure may not have existed in the manner stated to the Court. Second, it appears that the committee membership was in a state of flux, potentially in part due to last minute inclusion/modifications in exchange for support of the two-way co-lead structure. Third, the failure to provide this information before the filing of the motion for appointment has essentially cut off opposition to the structure, except in generic terms.

As such, the Court should question not only the need for so many committees and subcommittees at this point, but should also question the basis upon which a purported consensus was reached regarding the with attorneys/firms now seeking out leadership. *Cooperman v. Galeos LLC*, 2011 U.S. Dist. LEXIS 163019, at *5 (C.D. Cal. Apr. 18, 2011) (declining to adopt an Executive committee due to concerns over "the organizational difficulties and leadership issues that would arise"); *See also* MANUAL FOR COMPLEX LITIGATION (4th) § 10.224 ("[T]he judge is advised to take an active part in the decision on the appointment of counsel. Deferring to

proposals by counsel without independent examination, **even those that seem to have the concurrence of a majority of those affected**, invites problems down the road") (Emphasis added); *see also*, *id*. ("[A]n arrangement [to divide work among the counsel] proposed should be necessary, not simply the result of a bargain among the attorneys."); *See also In re Aon ERISA Litigation*, No. 04 CV 6875 (N.D. Illinois) (rejecting a multi-headed proposed leadership structure including a four-way co-lead counsel team); *and In re Scrap Metal Antitrust Litig.*, No. 1:02-CV-0844 2002 WL 31988203, at * 1 (N.D. Ohio Aug. 5, 2002)(rejecting the "negotiated deal among counsel," noting that "the MANUAL warns the Court against accepting deals of counsel at face value without making an independent evaluation")

The Court should appoint a leadership structure best suited for the needs of the class and various subclasses, not the one proposed by the *Gilson* Counsel.

### C.   This Court Should Consolidate the Related Actions

Pursuant to Fed. R. Civ. P. 42(a), cases should be consolidated where they involve common questions of law or fact. The decision to consolidate actions is within the broad discretion of the court, "although, typically, consolidation is favored." *Perez-Funez v. Dist. Dir., I.N.S.*, 611 F. Supp. 990, 994 (C.D. Cal. 1984) (citations omitted). Because of the common issues inherent in all the related actions, the Court should consolidate pursuant to Fed. R. Civ. P. 42(a) and grant leave to file a consolidated complaint after determination of leadership structure.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs Brent Jones, Karen Palmer, and Mark Davis, individually and on behalf of all others similarly situated, respectfully request that the Court appoint William M. Audet of Audet & Partners, LLP, as interim lead subclass counsel on behalf of the Older iPhone Subclass, defined as purchasers of iPhones prior to the iPhone 6.

Respectfully submitted,

Dated May 3, 2018                  AUDET & PARTNERS, LLP


By:   s/   *William M. Audet*

WILLIAM M. AUDET (SBN 117456)

S. CLINTON WOODS (SBN 246054)
LING Y. KUANG (SBN 296873)
711 Van Ness Avenue, Suite 500
San Francisco, Ca 94102-3275
Telephone:    (415) 568-2555
Facsimile:    (415) 568-2556

*Attorneys for Plaintiffs Brent Jones, Karen Palmer, And Mark Davis*

Motion to Consolidate and Appoint Interim Lead Subclass Counsel