THEODORE J. BOUTROUS JR., SBN 132099
  tboutrous@gibsondunn.com
CHRISTOPHER CHORBA, SBN 216692
  cchorba@gibsondunn.com
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
TIMOTHY W. LOOSE, SBN 241037
  tloose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

G. CHARLES NIERLICH, SBN 196611
  gnierlich@gibsondunn.com
RACHEL S. BRASS, SBN 219301
  rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA  94105
Telephone: 415.393.8200
Facsimile:  415.374.8458

Attorneys for Defendant APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| **IN RE:  APPLE INC. DEVICE PERFORMANCE LITIGATION** | CASE NO. 5:18-md-02827-EJD <br><br> **PUTATIVE CLASS ACTION** <br><br> **DEFENDANT APPLE INC.'S RESPONSE TO PLAINTIFFS' MOTIONS TO CONSOLIDATE RELATED ACTIONS AND APPOINT INTERIM LEAD COUNSEL** <br><br> Hearing Date: May 10, 2018 <br> Time: 10:00 a.m. <br> Location: Courtroom 4, 5th Floor <br> Judge: Hon. Edward J. Davila |

Defendant Apple Inc. respectfully submits this response to Plaintiffs' competing motions for consolidation and appointment as interim lead counsel filed by the attorneys in the related actions before this Court.  (ECF Nos. 30, 35, and 38.)

1. Pretrial Consolidation.  Apple supports Plaintiffs' request to consolidate the cases for pretrial purposes pursuant to Rule 42 of the Federal Rules of Civil Procedure.  Apple specifically reserves its right to oppose class certification on all available grounds, including but not limited to the absence of common questions susceptible to common answers, *see Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), that common questions do not predominate over individualized questions, Fed. R. Civ. P. 23(b)(3), and *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013).

2. Appointment of Interim Lead Counsel.  While Apple will be prepared to address the appointment of interim lead counsel at the hearing on May 10, Apple submits that Plaintiffs' counsels' very different views on the appropriate leadership structure would be more appropriately heard on a regular hearing schedule with the benefit of full briefing from all interested parties, rather than on the expedited basis as proposed by Plaintiffs at the CMC.

As the Court is well aware, a principal purpose of appointing interim class counsel is to maximize efficiencies and to eliminate duplication of efforts and "unproductive posturing" by the various plaintiffs' lawyers and firms.  *See* 5 James Wm. Moore et al., *Moore's Federal Practice* ¶ 23.121 (3d ed. 2010).  Where, as here, multiple attorneys and law firms are determined to secure a lead role in the litigation, it falls to the court presiding over the litigation to develop an efficient structure.  *See* Fed. R. Civ. P. 23(g).  This Court should not be rushed into doing so, particularly given the amount of materials provided in support of the motions and the accusations made therein regarding certain improprieties by counsel throughout the internal structuring process to date.  (*See, e.g.*, ECF No. 30 ("*Jones* Motion") at 6:14-24.)

Apple expresses no view as to which particular lawyer and/or firm should serve as interim lead counsel, as this is a matter for the Court and the clients to decide.  However, because Apple has significant concerns with the complex and unwieldy structure proposed in the motion to appoint Cotchett, Pitre & McCarthy, LLP (counsel in the *Gilson* action) and Kaplan Fox & Kilsheimer LLP (counsel in the *Gallmann* action) as co-interim lead counsel (the "*Gilson*/*Gallmann* Motion," ECF

No. 35), it affirmatively opposes that motion. The *Gilson/Gallmann* Motion proposes a sprawling leadership structure that includes two firms serving as co-lead interim counsel, an "Executive Committee" comprised of 24 attorneys from 23 different firms, and a "Steering Committee" consisting of an additional 15 attorneys from 15 different firms. *Id.* at 7, 12-15. This proposal—consisting overall of **_42_** lawyers from **_40_** firms—would represent the very "overstaffing" and "ungainly counsel structure" that the Federal Rules specifically warn against. *See* Fed. R. Civ. P. 23(g)(2) adv. comm. note (2003 amends.). More than 80% of the firms signing onto the *Gilson/Gallmann* proposal have a role in some form. As other courts in this District have cautioned, "shared leadership structures" such as the one proposed here tend to "complicate, muddle, and otherwise bloat litigation," *Nicolow v. Hewlett Packard Co.*, No. 12-05980-CRB, 2013 WL 792642, at *9 (N.D. Cal. Mar. 4, 2013), "increase the risk that items may fall through the cracks," *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944-SC, 2008 WL 2024957, at *1 (N.D. Cal. May 9, 2008), and should generally be avoided absent "unique" circumstances—such as a high degree of dissimilarity in a group of clients' interests, or "the inability of a single firm to handle the work." *Nicolow*, 2013 WL 792642, at *9; *see also Manual for Complex Litig.* § 10.221 (4th ed. 2004) (noting that "[c]ommittees are most commonly needed when group members' interests and positions are sufficiently dissimilar to justify giving them representation in decision making."). If these attorneys are unable to exercise the necessary discipline and selflessness to propose a more efficient structure now, then there is no assurance that they will do so in the future (if appointed).

The perils of a multi-firm leadership structure involving the efforts of numerous attorneys from numerous firms were made abundantly clear in the recent *Anthem* data breach litigation. There, the court explicitly rejected an eight-firm leadership structure and instead appointed two firms as co-lead counsel and an additional two firms as Steering Committee members, noting that co-lead counsel could involve other attorneys "as needed." *See* Order Granting Mot. to Appoint Special Master at 3, *In re Anthem Inc. Data Breach Litig.*, No. 15-md-02617-LHK (N.D. Cal. Feb. 2, 2018) [ECF No. 972] (copy attached as Ex. A). Yet even this four-firm structure (*one-tenth* of what is proposed here), which evolved to include attorneys at other firms, proved to be vastly inefficient, unwieldy, and uneconomical—resulting in 331 billers from 53 law firms and 78,892.5 hours of legal work, and a

request for $37.95 million in attorneys' fees. *Id.* at 4 (noting that employing dozens of law firms "likely resulted in unnecessarily duplicative or inefficient work by virtue of the fact that so many billers needed to familiarize themselves with the case and keep abreast of case developments"); *see also Manual for Complex Litig.* § 10.221 (noting that committees can "lead to substantially increased costs").

The *Gilson/Gallmann* Motion does not explain why such an expansive, numerous, and multi-tiered leadership structure is necessary at this stage of this litigation. The related actions all involve *one* defendant represented by *one* law firm, overlapping putative classes, and overwhelmingly similar claims and allegations throughout the complaints. *See Kamakahi v. Am. Soc. for Reproductive Med.*, No. 11-01781-SBA, 2012 WL 892163, at *3 (N.D. Cal. Mar. 14, 2012) (rejecting a three-firm Executive Committee where there was no showing of "any diverse interest among the parties that would support the appointment of a committee of counsel" and "no showing that the interests of efficiency and economy" would be served by such an appointment); *In re 5-Hour Energy Mktg. v. Innovation Ventures, LLC*, No. 13-4001-PSG, 2013 WL 12134144, at *2 (C.D. Cal. Nov. 8, 2013) (finding that an Executive Committee was unnecessary because "the member cases in [the] litigation assert closely-related claims on behalf of similar and overlapping proposed classes"). To the contrary, allowing such an "ungainly" structure would inhibit the efficient progress of the litigation, as work would undoubtedly be duplicated, unnecessary work would be performed, and every conference of counsel, motion, stipulation, discovery request, deposition, hearing, conference, settlement discussion, or any other pretrial activity would require the input of, or at least coordination with, dozens of different attorneys. This is a recipe for gridlock, not efficiency.[1]

A far more sensible and appropriate approach would be one like that advanced in the motion filed by *Solak*'s counsel, which asserts "that one-well qualified firm can manage the case." (ECF

---

[1] Apple is particularly concerned about the efficiency and effectiveness of sprawling committees based on its experiences in this matter to date. For example, it has been forced to engage in individualized, uncoordinated discussions regarding premature procedural matters, and with numerous Plaintiffs' attorneys in preparing multiple CMC statements and obtaining stipulations of stays and extensions. These experiences highlight the need for a single, centralized decision-maker able to speak as a representative of all Plaintiffs, a point which members of the Plaintiffs' group echo in their statements. (ECF No. 30 (*Jones* Motion) at 6; ECF No. 38 (*Solak* Motion) at 9 n. 9.)

No. 38 ("*Solak* Motion") at 2.)  As other courts have recognized, "a single firm will usually provide more effective and efficient representation than a group of two or more firms" because it is "already organized with internal levels of communication and management structure." *CRT Antitrust Litig.*, 2008 WL 2024957, at *1; *see also Miller v. Ventro Corp.*, No. 01-1287-VKA, 2001 WL 34497752, at *13 (N.D. Cal. Nov. 28, 2001) ("To the extent that one firm assume[s] the leadership position in the litigation, it begs the question of the true need for additional firms.").  Moreover, while the *Gilson/Gallmann* Motion touts the leadership structure in the Volkswagen MDL, it is worth noting that *Solak*'s counsel—Hagens Berman Sobol Shapiro LLP—is the only firm in this litigation to have actually *served* in that leadership structure and, tellingly, vigorously opposes the use of such a structure here.  *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-2672 CRB (JSC) (N.D. Cal.); *see also* ECF No. 38 at 7-8.

Again, although Apple takes no position regarding which firm should be appointed, the *Solak* Motion makes clear that a single firm is capable of serving as interim lead counsel on its own.  At most, and only should the Court so desire, this litigation calls for the appointment of a two-firm leadership structure.  If and when additional assistance is required, the Court can address and appoint additional attorneys at that time.  *See, e.g.*, *In re 5-Hour Energy Mktg.*, 2013 WL 12134144, at *3 (rejecting Executive Committee and noting that "[i]f Plaintiffs see need for a more extensive leadership structure as this case progresses, Plaintiffs should bring this matter back to the Court's attention at that time"); *Cappello v. Franciscan All., Inc.*, No. 16-290, 2016 WL 10744872, at *2 (N.D. Ind. Sept. 8, 2016) (appointing one firm as interim lead counsel and noting that because "Plaintiffs' legal needs in this putative class action could change as the case progresses . . . Plaintiffs may file a renewed motion for appointment of interim class counsel should circumstances arise that demand additional representation").  Any other structure would lead to costly and wasteful duplication, gridlock, and delay, and repeat the mistakes of *Anthem* and other actions in which too many plaintiffs' counsel became involved.

In sum, given the need for this Court to fully evaluate the competing Motions, Apple respectfully requests that this Court defer ruling on the interim lead counsel motions at the May 10 hearing and instead set these motions for a normal briefing and hearing schedule.  This is an

important decision that requires careful attention.  In addition, given the risk of inefficiency posed by the multi-tiered structure proposed in the *Gilson*/*Gallmann* Motion, Apple respectfully requests that this Court reject the proposed "Executive Committee" and "Steering Committee" and appoint a single firm to ensure the efficient prosecution of these overlapping putative class actions.  The Court and Plaintiffs' counsel can always revisit the need for additional resources should the need arise.

Dated:  May 8, 2018                               GIBSON, DUNN & CRUTCHER LLP

                                                 By:  */s/ Theodore J. Boutrous, Jr.*
                                                       THEODORE J. BOUTROUS, JR.

                                                 *Attorneys for Defendant Apple Inc.*

# CERTIFICATE OF SERVICE

I, Theodore J. Boutrous, Jr., hereby certify that on May 8, 2018, the foregoing **RESPONSE TO PLAINTIFFS' MOTIONS TO CONSOLIDATE RELATED ACTIONS AND APPOINT INTERIM LEAD COUNSEL** was filed electronically through the CM/ECF system, copies of which were sent by First Class Mail to anyone unable to accept them via the electronic filing system.

By: */s/ Theodore J. Boutrous, Jr.*
 THEODORE J. BOUTROUS, JR.