**COTCHETT, PITRE & MCCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
Mark C. Molumphy (SBN 168009)
Brian Danitz (SBN 247403)
Stephanie D. Biehl (SBN 306777)
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: 650-697-6000
Facsimile: 650-697-05777
*jcotchett@cpmlegal.com*
*mmolumphy@cpmlegal.com*
*bdanitz@cpmlegal.com*
*sbiehl@cpmlegal.com*

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: 415-772-4700
Facsimile: 415-772-4707
*lking@kaplanfox.com*

Frederic S. Fox (*pro hac vice*)
David A. Straite (*pro hac vice*)
850 Third Avenue
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
*ffox@kaplanfox.com*
*dstraite@kaplanfox.com*

*Interim Co-Lead Class Counsel*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| **IN RE: APPLE INC. DEVICE PERFORMANCE LITIGATION** | Case No. 5:18-md-02827-EJD-NC |
| | **CLASS ACTION** |
| This Relates to: | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR RELIEF PURSUANT TO RULE 23(d) OF THE FEDERAL RULES OF CIVIL PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES** |
| **ALL CASES** | |
| | Judge: Hon. Edward J. Davila |
| | Courtroom: 4, 5th Floor |
| | Hearing Date: September 28, 2018 |
| | Hearing Time: 10:00 a.m. |

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on September 28, 2018 at 10:00 a.m., before the Honorable Edward J. Davila, in Courtroom 4 of the United States District Court for the Northern District of California, located at the Robert F. Peckham Federal Building, 280 South 1st Street, 5th Floor, San Jose, California 95113, Plaintiffs will and hereby do move the Court for an order pursuant to Rule 23(d) of the Federal Rules of Civil Procedure ("Rule 23(d)") concerning defendant Apple Inc.'s ("Apple") communications to putative class members regarding the discounted battery replacement that Apple announced on December 28, 2017, and the refund "credit" that Apple announced on May 23, 2018.  The motion is based upon this motion, the accompanying memorandum of points and authorities, declaration of Mark C. Molumphy and attached exhibits and the proposed Order submitted herewith. Plaintiffs request an order providing:

1. Any releases, waivers and agreements affecting remedies in this litigation that Apple obtained based on communications with putative class members regarding 1) the discounted battery replacement and 2) the refund credit, that failed to disclose the pendency of this proposed class action prior to the date of entry of this Order, are declared invalid, unenforceable, and void.

2. Within thirty (30) days of entry of this Order, Apple shall issue a corrective notice regarding the discounted battery replacement that Apple announced on December 28, 2017, and the refund credit announced on May 23, 2018, informing putative class members of the pendency of this proposed class action, with the language and form to be approved by Plaintiffs' Interim Co-Lead Counsel and the Court.  All future communications regarding the discounted battery replacement and refund credit shall include a similar notice approved by Plaintiffs' Interim Co-Lead Counsel and the Court.

3. Within ten (10) days of entry of this Order, Apple shall produce to Plaintiffs' Interim Co-Lead Counsel copies of all prior communications with putative class members, and the names, email addresses, and other contact information for those putative class members that Apple has contacted regarding the discounted battery replacement and the refund credit on or after December 21, 2018, the date on which this action commenced.

## **ISSUES TO BE DECIDED**

1. Whether Apple's communications with proposed class members potentially interfere with the rights of the parties in this litigation and warrant Court intervention.

2. Whether the Court should invalidate any releases, waivers, or agreements affecting remedies in this litigation.

3. Whether the Court should require Apple to issue corrective notice and require future communications to inform putative class members of this proposed class action and the nature and scope of the claims and remedies that are available in this litigation.

4. Whether the Court should require Apple to produce to Plaintiffs copies of all prior communications with putative class members, and the names, email addresses, and other contact information for those putative class members that Apple has contacted regarding the "credit" or similar refund for a battery replacement.

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................................1

II. FACTUAL BACKGROUND ..................................................................................................2

    A. Apple's Misleading Communications Regarding Battery Replacement .................2

    B. Apple Rebuffed Plaintiffs' Repeated Attempts To Address This Issue ..................3

III. LEGAL STANDARD ............................................................................................................5

IV. ARGUMENT .........................................................................................................................7

    A. Apple Should Issue Corrective Notice Disclosing This Litigation .........................8

    B. Any Waiver or Release Obtained By Apple After This Litigation Was Filed Should Be Invalidated .............................................................................................9

    C. Apple Should Be Ordered to Produce to Plaintiffs All Information About Its One-Sided Communications with Putative Class Members ..................................11

V. CONCLUSION .....................................................................................................................12

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Balasanyan v. Nordstrom, Inc.*,
   2012 WL 760566 (S.D. Cal., Mar. 8, 2012) ..............................................................................10

*Camp v. Alexander*,
   300 F.R.D. 617 (N.D. Cal. 2014) ................................................................................................9

*Cheverez v. Plains All Am. Pipeline, LP.*,
   No. CV15-4113 PSG, 2016 WL 861107 (C.D. Cal. Mar. 3, 2016) ........................................5, 8

*County of Santa Clara v. Astra USA, Inc.*,
   2010 WL 2724512 (N.D. Cal. July 28, 2010) ................................................................9, 10, 11

*Gallmann v. Apple Inc.*,
   No. 17-cv-07285-EJD, Dkt. No. 31 ............................................................................................4

*Guifu Li v. A Perfect Day Franchise, Inc.*,
   270 F.R.D. 509 (N.D. Cal. 2010) ..............................................................................................11

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981) ..................................................................................................................5, 6

*Hernandez v. Best Buy Stores, L.P.*,
   2015 WL 7176352 (S.D. Cal. Nov. 13, 2015) .........................................................................7, 8

*Jones v. Jeld-Wen, Inc.*
   250 F.R.D. 554, 558 (S.D. Fla. 2008) .......................................................................................11

*Mevorah v. Wells Fargo Home Mortg., Inc., a div. of Wells Fargo Bank*,
   2005 WL 4813532 (Patel, J) ......................................................................................................6

*O'Connor v. Uber Technologies, Inc.*,
   2014 WL 1760314 (N.D. Cal. May 2, 2014) ..........................................................................1, 6

*O'Connor v. Uber Techs., Inc.*,
   2013 WL 6407583 (N.D. Cal. Dec. 6, 2013) ....................................................................6, 8, 10

*Piekarski v. Amedisys Illinois, LLC*,
   2013 WL 605548 (N.D. Ill. Nov. 12, 2013) .............................................................................10

*Slavkov v. Fast Water Heater Partners I, LP*
   2015 WL 6674575, at *2 (N.D. Cal. Nov. 2, 2015) ..............................................................8, 10

*Wang v. Chinese Daily News, Inc.*,
   623 F.3d 743 (9th Cir. 2010), *judgment vacated on other grounds*, 132 S. Ct. 74
   (2011) ..........................................................................................................................................5

**Rules and Other Authorities**

Federal Rules of Civil Procedure Rule 23(d) ............................................................................. *passim*

Federal Rules of Civil Procedure Rule 23 ...............................................................................9, 10, 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Apple is currently communicating with putative class members on a daily basis without Court supervision. In these communications, Apple is offering to replace certain iPhone batteries at a discounted price ($29, discounted from the original $79) to mitigate performance problems with iPhones at the heart of this case. But Apple's communications are intensely misleading. As disclosed privately to Co-Lead Counsel (but hidden from the public), Apple believes the real price of a new battery is not $29. Instead, in Apple's view, customers must pay $29, ***plus agree to limit certain claims in the MDL***. Similarly, Apple is offering a parallel $50 credit to customers who paid full price last year – but yet again Apple is privately telling Co-Lead Counsel that it reserves the right to treat the amount of the credit as an offset to damages in the MDL.

Co-Lead Counsel disagree that the terms of service governing the battery replacement program have any effect on claims in the MDL and disagree that the $50 credit should be treated as anything other than a "goodwill gesture" to earn back customer trust. But even if Apple were correct on these points, Apple cannot keep these positions a secret from customers – it is simply impermissible for a defendant to have unsupervised communications with class members that trick the class members into releasing or limiting claims in existing litigation.

For the past six months, plaintiffs' counsel have repeatedly asked Apple to agree to a simple one-sentence stipulation – that customer participation in the battery replacement program will not affect any claims in the MDL. Apple refuses to agree, most recently today, the date of this motion. Therefore, Apple's communications constitute "potential interference" and require Court intervention under Fed. R. Civ. P. 23(d). *See, e.g.*, *O'Connor v. Uber Technologies, Inc.*, 2014 WL 1760314, at *3 (N.D. Cal. May 2, 2014) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)).

As explained below, the Court should enter the [Proposed] Order submitted herewith granting relief that is necessary to protect the interests of the putative class members and maintain the integrity of the class action procedure.

II.     **FACTUAL BACKGROUND**

   A.     **Apple's Misleading Communications Regarding Battery Replacement**

On **December 20, 2017**, Apple **admitted** to releasing a feature for certain iPhones during the prior year that throttled processor speeds and power usage in older iPhones. Decl. ¶ 3, Ex. 1.[1] **For nearly a year**, Apple **failed to disclose** these issues or that users could have partially mitigated the problems with their iPhones by replacing the batteries, rather than replacing the devices. *Id*.

On **December 21, 2017**, plaintiffs began filing complaints against Apple alleging violations of consumer protection laws in state and federal courts nationwide. Decl. ¶ 4. The Department of Justice, Securities and Exchange Commission, and foreign governments soon announced investigations regarding Apple's **failure to disclose** these defects. Decl. ¶ 5, Ex. 5.

On **December 28, 2017**, a week after the suits were filed, Apple posted *A Message to Our Customers about iPhone Batteries and Performance* on its website, apologized for not disclosing the throttling software before, and announced a discounted battery replacement service "for anyone with an iPhone 6 or later whose battery needs to be replaced," effective through the end of 2018. Decl. ¶ 5, Ex. 2. Apple said it would reduce its price to replace on iPhone battery from $79 to $29. *Id*. No mention was made of the pending lawsuits nor Apple's position that participation in the program would potentially impact putative class members' claims and damages.

Five months later, on **May 23, 2018**, Apple mailed a letter to Plaintiffs' Co-Lead Counsel and informed them of a "consumer goodwill program" that Apple intended to launch later that day. Apple said it intended to email customers directly to inform them that they would receive a $50 credit if they paid full price for a battery replacement. Decl. ¶¶10-11, Exs. 6, 7. However, while Apple described the program as a "goodwill gesture" to its customers, and assured counsel that participation in a battery repair would not extinguish any legal rights or claims in this action, Apple

---

[1] "Ex. _" refers to exhibits to the Declaration of Mark C. Molumphy in Support of Plaintiffs' Motion for Relief Pursuant to Rule 23(d) ("Decl.").

ended the letter with an ominous and confusing message: "**That said, no plaintiffs or putative class members may recover twice for the same alleged injury**." Decl. ¶ 11, Ex. 7 at 2.

Apple's position also appeared to deviate from its own "Repair Terms & Conditions" published on its website for U.S. Retail Repairs, which purports to affect a broad release "under any other legal theory" and states in pertinent part:

> 6. TO THE MAXIMUM EXTENT PERMITTED BY LAW, APPLE AND ITS AFFILIATES, WILL UNDER NO CIRCUMSTANCES BE LIABLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM SERVICES PROVIDED OR UNDER ANY OTHER LEGAL THEORY, INCLUDING BUT NOT LIMITED TO LOSS OF REVENUE; LOSS OF ACTUAL OR ANTICIPATED PROFITS (INCLUDING LOSS OF PROFITS ON CONTRACTS); LOSS OF THE USE OF MONEY; LOSS OF ANTICIPATED SAVINGS; LOSS OF BUSINESS; LOSS OF OPPORTUNITY; LOSS OF GOODWILL; LOSS OF REPUTATION; LOSS OF, DAMAGE TO, OR CORRUPTION OF DATA; OR ANY COSTS OF RECOVERING, PROGRAMMING, OR RESTORING ANY PROGRAM OR DATA STORED OR USED WITH YOUR PRODUCT AND ANY FAILURE TO MAINTAIN THE CONFIDENTIALITY OF DATA STORED ON YOUR PRODUCT.

*See* Ex. 9 at Exhibit A (¶ 6).

None of Apple's consumer communications regarding the battery replacement and credit programs disclose the existence of this class action nor disclose that, far from a "goodwill gesture," Apple is taking the position that participation in the programs might impact the claims and remedies that Plaintiffs may seek on behalf of the proposed class. Decl. ¶¶ 10-11, Ex. 6.

### B. Apple Rebuffed Plaintiffs' Repeated Attempts To Address This Issue

To avoid court intervention, Plaintiffs attempted to address this matter with Defendants on multiple occasions, each time without success. As early as **January 26, 2018**, certain plaintiffs asked Apple to either state that the initial Battery Replacement Program had no effect on class members' claims in the litigation or to explain clearly in their communications with the proposed class what the effect was. *See* Ex. 4. Defendants refused to do either. Accordingly, on **February 9, 2018**, these plaintiffs moved the Court for an order requiring that, in any future communications with proposed Class members, Apple include the following language:

> By participating in the replacement battery program, you are not relinquishing any rights or diminishing any claims that you might have concerning the initial purchase of

3

your iPhone, including those currently alleged in [insert ND Ca docket numbers] and those alleged in the actions currently subject to the motion pending before the JPML.

*See Gallmann v. Apple Inc.*, No. 17-cv-07285-EJD, Dkt. No. 31 at 1.  As the JPML had yet to centralize the cases before a single court, this Court held the motion in abeyance pending a decision by the JPML and continued the stay until lead counsel were identified.  Decl. ¶ 8.

Plaintiffs' counsel continued to ask Apple for additional information about the "credit" and assurances that the "credit" does not release class members' claims, but Apple's counsel refused to provide the requested information.  Decl. ¶¶ 9, 12-18, Exs. 8-14.

Between **May and July 2018**, following Apple's disclosure of the "goodwill" program on May 23, 2018 (one week after Co-Lead Counsel were appointed), Plaintiffs again attempted to negotiate a stipulation whereby Apple would agree, in writing, that acceptance of the "credit" or the discounted battery replacement would not act to settle, waive, or release any claims or remedies in this case.  Apple gave noncommittal responses and suggested a stipulated resolution would be possible but only after seeing the Consolidated Amended Complaint, which was filed on July 2, 2018.  Dkt. No. 145.  During the parties' Rule 26(f) meet-and-confer process on July 3 and July 5, 2018, Apple again suggested that a stipulated resolution would be possible.  *See* Dkt. No. 153 at 7; Dkt. No. 156 at 2 (¶ 9).

On **July 5, 2018**, Apple counsel sent a response letter to Co-Lead Counsel in response to a consumer demand letter sent by Co-Lead Counsel pursuant to California's Consumers Legal Remedies Act (the "CLRA") (the "Response Letter").  In the Response Letter, Apple denied a CLRA violation, and denied needing to take corrective action.  But surprisingly, Apple claimed that it had "already taken action" with respect to the "relief" sought in this action, citing specifically the battery replacement and credit programs.  Decl. ¶ 19, Ex. 13 at 3.  For months, Apple denied that the battery replacement program was meant to impact claims in the MDL, and yet on July 5, ***said the exact opposite*** in private communication to Co-Lead Counsel.  The battery replacement program was intended to act as partial "relief" in the MDL after all.

During the **July 11, 2018** Case Management Conference, Co-Lead Counsel mentioned the surprise July 5th development and suggested that Apple had now made a stipulated resolution

4

unlikely. Tr. 36:12-18. Apple represented that a stipulation was still possible, but it just wanted one "carveout." Tr. 37:24. The parties agreed to discuss a stipulation one last time, and as Apple counsel noted, if "we agree, we avert a motion. We don't agree, they renew their motion." Tr. 40:9-10. Plaintiffs then sent a draft stipulation to Apple counsel for review, modeled closely on a similar stipulation agreed to by Volkswagen regarding its $500 goodwill program. *See In re: Volkswagen "Clean Diesel Cases*," No. 2:15-cv-13360-GER-APP (E.D. Mich.), Stipulation and Order dated Nov. 13, 2015 (ECF No. 57). There were no "carveouts" in the *Volkswagen* stipulation, but Apple refused to agree to similar language. Instead, on **August 7, 2018**, Apple returned edits that included not just the one carveout identified at the July 11th CMC, but a total of three carveouts that would continue to impact class members but be hidden from them in ongoing communications. Ex. 17.

To this day, therefore, Apple continues its one-sided communications with putative class members about the battery replacement and the "credit" – through statements on Apple's website and in emails that Apple has sent directly to putative class members – that fail to inform the public of Apple's private position taken in this case. *See, e.g.,* Exs. 2, 3, 6.

### III. LEGAL STANDARD

"Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). "Rule 23(d) gives district courts the power to regulate the notice and opt-out processes and to impose limitations when a party engages in behavior that threatens the fairness of the litigation." *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 756 (9th Cir. 2010), *judgment vacated on other grounds*, 132 S. Ct. 74 (2011). Importantly, "[t]he court's duty to supervise communications with potential class members exists even before a class is certified." *Cheverez v. Plains All Am. Pipeline, LP.*, No. CV15-4113 PSG (JEMx), 2016 WL 861107, at *2 (C.D. Cal. Mar. 3, 2016) (citing *In re Oil Spill by the Oil Rig "Deepwater Horizon " in the Gulf of Mexico on Apr. 20, 2010*, No. 10-md-02179, 2011 WL 323866, at *2. (E.D. La. Feb. 2, 2011)).

   "The prophylactic power accorded to the court presiding over a putative class action under Rule 23(d) is broad; the purpose of Rule 23(d)'s conferral of authority is not only to protect class members in particular but to safeguard generally the administering of justice and the integrity of the class certification process." *O'Connor v.Uber Technologies, Inc.*, 2014 WL 1760314, at *3 (N.D. Cal. May 2, 2014). In granting relief pursuant to Rule 23(d), a court should make "findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *O'Connor*, 2013 WL 6407583 at *5. Importantly, "[a]n order under *Gulf Oil* 'does not require a finding of actual misconduct' — rather, '[t]he key is whether there is "potential interference" with the rights of the parties in a class action.'" *Id*.

   The applicability of Rule 23(d) extends beyond a "class communication" directed solely to putative class members or that only relates to the litigation. *O'Connor v. Uber Techs., Inc.*, 2013 WL 6407583, at *4 (N.D. Cal. Dec. 6, 2013). As Judge Edward Chen made clear in *O'Connor*, "the touchstone under Rule 23(d) is not whether the communication is of an ordinary business nature; rather, the inquiry is whether the communication is abusive, misleading, coercive, or otherwise affects the administration of justice in the context of a putative class action lawsuit." *Id*. Thus, the Court may grant relief from a potentially misleading or abusive communication even if it is directed to a broader group of individuals that are not members of the proposed class, such as the defendant's customers or other persons with whom the defendant has a business relationship. *See id*. "No court has held that the characterization of the communication as official business in and of itself immunizes such a communication from Rule 23(d) scrutiny." *Id*. "[A] threat may exist regardless of whether the communication to the class is denominated as 'business' in nature." *Id.* at *4. The Court's authority to grant relief under Rule 23(d) may extend to an "ordinary business communication" where (as here) it is potentially abusive or misleading to the class. *See id*. (discussing a new licensing agreement and rejecting the defendant's argument that the agreement was an ordinary business communication and not a class communication). "At most, the existence of a possible business purpose may counsel that any regulation imposed by the Court be narrowly tailored." *Id*.

6

PLAINTIFFS' MOTION FOR RELIEF PURSUANT TO RULE 23(d) OF THE FEDERAL RULES OF CIVIL PROCEDURE    No. 5:18-md-02827-EJD

Courts in this District regularly have restricted a defendant's ability to communicate with potential class members "following the defendant's publication of a notice that, in relevant part, ***failed to disclose the pendency or scope of the class action and may have caused confusion among potential class members regarding their rights***." *Mevorah v. Wells Fargo Home Mortg., Inc., a div. of Wells Fargo Bank*, 2005 WL 4813532, at *3 (Patel, J) (citing *Pollar v. Judson Steel Corp.,* 1984 WL 161273 (N.D. Cal. Feb. 3, 1984) (emphasis added).  "Examples of problems or abuse include communications that **'misrepresent the status or effect of the pending action'** or have the 'potential for confusion.'" *Hernandez v. Best Buy Stores, L.P.*, 2015 WL 7176352, at *5 (S.D. Cal. Nov. 13, 2015) (quoting *Gulf Oil,* 452 U.S. 99–100 n. 12) (emphasis in original).

Here, Apple's communications regarding the battery replacement program are misleading and potentially interfere with the rights of the parties.

## IV.   ARGUMENT

As Apple has made clear in its letters to plaintiffs' counsel and in its refusal to stipulate, its communications with putative class members regarding the battery replacement program are designed to obtain their uninformed "consent" to waive, release, or settle some or all of the proposed class claims.  As Apple finally admitted in writing on July 5, 2018, Apple developed the battery replacement program in direct response to this litigation and intended it as partial relief. Apple's statements in connection with the battery replacement program that "no plaintiffs or putative class members may recover twice for the same alleged injury," and that "Apple has already taken action . . . with respect to the type of relief that you seek," leave no doubt that Apple intends the communications to affect a waiver of claims.  This is improper and constitutes substantial interference with the integrity of this class action and the rights of the parties.  The Court should require Apple to issue corrective notice to inform putative class members of their rights and remedies that are available in this litigation and invalidate any uninformed releases, waivers, or agreements affecting remedies in this litigation related to the battery replacement program and credits and require that all future related communications be supervised by this Court.

### A. **Apple Should Issue Corrective Notice Disclosing This Litigation**

Where, as here, the Court has been deprived of its authority to supervise unilateral communications, and prophylactic measures are no longer possible, courts should order corrective notice and take other actions that are necessary to protect the putative class members' rights with regard to the claims and potential remedies that may be available in the pending litigation. The Court should order Apple to issue a corrective notice disclosing the existence of this litigation so that putative class members are aware of their rights and remedies in this litigation, and to prevent further misleading and confusing putative class members.

Judge Tigar explained in *Slavkov v. Fast Water Heater Partners I, LP*, "courts may limit communications that improperly encourage potential class members to not join the suit, especially if they fail to provide adequate information about the pending class action." 2015 WL 6674575, at *2 (N.D. Cal. Nov. 2, 2015) (internal citations omitted). Similarly, courts have "a duty under Rule 23(d) to limit advertisements which are misleading" and should intervene where a defendant's communications "are part of a misleading campaign to steer putative class members towards knowingly waiving their rights." *Cheverez v. Plains all American Pipeline, L.P.*, 2016 WL 861107, at *4 (C.D. Cal. March 3, 2016). A court should limit or prevent future communications where, as here, "there is a realistic danger that the communications will chill participation in the class action." *Id.*

In *O'Connor v. Uber Techs., Inc.*, Uber sent an electronic notification to its drivers, the putative class members, asking them to approve a new "Software Licensing and Online Services Agreement" that waived the right to participate in a class action without informing them of their right to participate. 2013 WL 6407583 at *6. Judge Chen found that Uber's efforts to seek approval of the waiver provision "during the pendency of [the] class action" was "potentially misleading, coercive, and threatened to interfere with the rights of class members." *Id.* at *7. Under Rule 23(d), the court had authority to require "the issuance of corrective notices and action to ameliorate confusing or misleading communications." *Id*. Accordingly, Judge Chen ordered that putative class members must be given clear notice of the waiver provision, the effect of assenting to

1   waiver on their participation in this lawsuit, and reasonable means of opting out of the waiver
2   provision.  *Id.*

3       Here, Apple's statements on its website and in the emails Apple sent to putative class
4   members fail to inform potential class members of the existence of this litigation, let alone provide
5   the necessary information that would "permit a putative class member to fully evaluate his
6   likelihood of recovering through the class action."  *Cheverez*, 2016 WL 861107 at *4 (citations
7   omitted).  The omission of any detail about the pending class action from Apple's communications
8   demands a corrective notice.  Moreover, Apple does not provide any information about how
9   purchasing the battery replacement or accepting the credit may affect a class members' interests
10  with respect to this case.  Apple does not even give potential class members a choice as to whether
11  or not to accept the Credit, which may be refunded ***automatically*** in some cases.  Accordingly, the
12  Court should require Apple to issue corrective notices giving clear notice of the pendency of this
13  lawsuit and the effect of the battery replacement or credit program on putative class members'
14  participation and remedies in this lawsuit.

15      **B.    Any Waiver or Release Obtained By Apple After This Litigation Was Filed
16              Should Be Invalidated**

17      Apple's emails about the "credit" were sent directly to putative class members in order to
18  obtain their uninformed consent to a waiver or release of the claims in this case.  The Court should
19  therefore enter an order that keeps open the option of invalidating any such waiver or release for
20  those putative class members who participated in the Battery Replacement Program or received the
21  credit.  *See, e.g.*, *Camp v. Alexander*, 300 F.R.D. 617, 624 (N.D. Cal. 2014) (Chief Magistrate Judge
22  Laporte invalidated unilaterally obtained opt-outs, ordered a curative notice and "caution[ed]
23  Defendants and their counsel that [the court] will take seriously any further claims of coercive,
24  inflammatory, or one-sided communications in this case").

25      In *County of Santa Clara v. Astra USA, Inc.*, 2010 WL 2724512, at *3 (N.D. Cal. July 28,
26  2010), Judge Alsup explained that while the Ninth Circuit had not yet adopted a standard to
27  determine what constitutes a false or misleading offer to settle, "surely that test is concomitant with
28  the potential for abuse in the communications, including being misled about the strength and extent

of their claims. The putative class members can be misled through omissions and failure to provide enough information, which can include the failure to append the plaintiffs' complaint to a settlement offer." 2010 WL 2724512, at *3. Judge Alsup went on to hold that the releases the defendant had obtained were invalid, reasoning that "[g]iven that [notice of the refunds] was sent after the litigation arose – and while [the defendant] knew good and well that a Rule 23 certification was still on the table – this tactic cannot be allowed under Rule 23, for to rule otherwise would allow defendants to shift control of one proceeding from the district judge to the defense counsel." *Id*. at *6.

In *Balasanyan v. Nordstrom, Inc.*, 2012 WL 760566 (S.D. Cal., Mar. 8, 2012), Judge Miller found it sufficient to exercise control under Rule 23(d) where defendant's failure to disclose pending litigation when it circulated an arbitration agreement for approval "create[d] an incentive to engage in misleading behavior." *Id*. at *3. The court invalidated the agreement, noting that one purpose of Rule 23 is to "prevent improper contacts that could jeopardize the rights of the class members," including inducing putative class members from participating in the class action. *Id*. *See also Piekarski v. Amedisys Illinois, LLC*, 2013 WL 605548, at *2 (N.D. Ill. Nov. 12, 2013) (finding improper, abusive, and misleading arbitration program implemented during pendency of action and invalidating agreement that likely prevented participation in the class action); *Slavkov*, 2015 WL 6674575, at *6 (granting application to invalidate settlement releases obtained by Defendants and to send a curative notice).

Here, Apple sent emails about the "credit" to customers (including putative class members) who were not eligible for the credit, which was clearly unnecessary. The emails were sent to ineligible customers (including putative class members) to inform them of the same discounted battery replacement that Apple previously announced on December 28, 2017, and thereby solicit additional customers to purchase the battery replacement service from Apple at the discounted price. Further, any customer that obtains the battery replacement service from Apple is (according to Apple) bound by the Apple Inc. Repair Terms & Conditions (U.S. Retail Repairs) (or other applicable terms and conditions), which contains a provision that could potentially be interpreted as a waiver or release of claims in this litigation. Decl. ¶ 15, Ex. 9 at Exhibit A (¶ 6). In these

circumstances, Apple's communications are confusing, at best. *See, e.g.*, *O'Connor*, 2013 WL 6407583 at *6 (invalidating waiver "buried within" defendant's "Software Licensing and Online Services Agreement" sent to putative class members for acceptance).

Moreover, Apple's communications to putative class members did not disclose *any* information about the pending class action. If Apple obtained (or potentially obtained) a waiver or release based on its one-sided and misleading communications, this "unquestionably frustrates the purposes of Rule 23." *See Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509, 518 (N.D. Cal. 2010). Any purported waiver or release should, therefore, be declared invalid by the Court. *See id*. (Judge Koh declared opt-out declarations invalid where they were obtained "ex parte at this stage of the litigation—before a class has been certified by the Court"). *Compare Astra*, 2010 WL 2724512 at *3 (invalidating releases where putative class members may have been "misled about the strength and extent of their claims").

Accordingly, the Court should invalidate any purported waiver or release of claims based on Apple's communications regarding the battery replacement program and "credit" that failed adequately to disclose the nature of the instant claims.

C. **Apple Should Be Ordered to Produce to Plaintiffs All Information About Its One-Sided Communications with Putative Class Members**

The Court should require Apple to produce to Plaintiffs copies of its prior communications with putative class members, and the names, email addresses, and other contact information for those putative class members that Apple has contacted via email. As the district court explained in *Jones v. Jeld-Wen, Inc.*, "by requiring [defendant] to communicate with the putative class members in writing and provide a copy of that communication to Plaintiffs, Plaintiffs' counsel will be in a position to analyze the appropriateness of whatever communication is made[.]" 250 F.R.D. 554, 558 (S.D. Fla. 2008). The court also ordered the defendant to produce any of its previous communications to Plaintiffs, noting that the "[p]roduction of these communications will allow Plaintiffs' counsel to analyze whether the communications appear to interfere with the integrity of the class action." *Id*. at 565.

Plaintiffs' counsel requested that Apple provide them with any communications with putative class members that are related to the credit, which Apple refused. Decl. ¶¶ 9, 12-18, Exs. 8-12. Instead, Apple sent Plaintiffs' counsel a letter on May 25, 2018, containing an "exemplar email" to customers "regarding the credit being provided" to those customers who had "an out-of warranty iPhone battery replacement completed at an Apple store." Decl. ¶ 15, Ex. 9 at 3. The "exemplar email" is insufficient. Without information about the content of Apple's communications with the putative class, Plaintiffs (and the Court) are unable to make an informed evaluation of the potential for abuse. Apple should be required to provide all of its communications with the putative class members so as to ensure that corrective notice is sent to the appropriate persons (putative class members) and to ensure the parties are operating on a level playing field and that no further abusive tactics will occur by virtue of improper one-sided communications.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court enter the [Proposed] Order that:

1. Any releases, waivers and agreements affecting remedies in this litigation that Apple obtained based on communications with putative class members regarding 1) the discounted battery replacement and 2) the refund credit, that failed to disclose the pendency of this proposed class action prior to the date of entry of this Order, are hereby declared invalid, unenforceable, and void.

2. Within thirty (30) days of entry of this Order, Apple shall issue a corrective notice regarding the discounted battery replacement that Apple announced on December 28, 2017, and the refund credit announced on May 23, 2018, informing putative class members of the pendency of this proposed class action, with the language and form to be approved by Plaintiffs' Interim Co-Lead Counsel and the Court. All future communications regarding the discounted battery replacement and refund credit shall include a similar notice approved by Plaintiffs' Interim Co-Lead Counsel and the Court.

3. Within ten (10) days of entry of this Order, Apple shall produce to Plaintiffs' Interim Co-Lead Counsel copies of all prior communications with putative class members, and the names, email addresses, and other contact information for those putative class members that Apple

1  has contacted regarding the discounted battery replacement and the refund credit on or after
2  December 21, 2018, the date on which this action commenced.

3                                                  Respectfully submitted,

4                                                  **COTCHETT, PITRE & MCCARTHY, LLP**

5  DATED: August 7, 2018          By:    */s/ Mark C. Molumphy*
                                          Joseph W. Cotchett (SBN 36324)
6                                         Mark C. Molumphy (SBN 168009)
                                          San Francisco Airport Office Center
7                                         840 Malcolm Road, Suite 200
                                          Burlingame, CA 94010
8                                         Telephone: 650-697-6000
                                          Facsimile: 650-697-05777
9                                         *jcotchett@cpmlegal.com*
                                          *mmolumphy@cpmlegal.com*
10
                                          Laurence D. King (SBN 206423)
11                                        350 Sansome Street, Suite 400
                                          San Francisco, CA 94104
12                                        Telephone:  415-772-4700
                                          Facsimile:   415-772-4707
13                                        *lking@kaplanfox.com*

14                                        *Interim Co-Lead Counsel*

15

16

17

18

19

20

21

22

23

24

25

26

27

28