1
2
3
4
5
6
7

THEODORE J. BOUTROUS, JR., SBN 132099
    tboutrous@gibsondunn.com
CHRISTOPHER CHORBA, SBN 216692
    cchorba@gibsondunn.com
THEANE EVANGELIS, SBN 243570
    tevangelis@gibsondunn.com
TIMOTHY W. LOOSE, SBN 241037
    tloose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:   213.229.7000
Facsimile:    213.229.7520

8
9
10
11
12

G. CHARLES NIERLICH, SBN 196611
    gnierlich@gibsondunn.com
RACHEL S. BRASS, SBN 219301
    rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA  94105
Telephone:   415.393.8200
Facsimile:    415.374.8458

13

*Attorneys for Defendant Apple Inc.*

14
15
16
17

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| IN RE: APPLE INC. DEVICE PERFORMANCE LITIGATION, | CASE NO. 5:18-md-02827-EJD |
| | **PUTATIVE CLASS ACTION** |
| This Document Relates To: | **DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |
| ALL ACTIONS. | |
| | [*Request for Judicial Notice and Supporting Declarations filed concurrently*] |
| | Judge:          Hon. Edward J. Davila |
| | Courtroom:   4, 5th Floor |
| | Hearing Date:  September 28, 2018 |
| | Hearing Time:  10:00 a.m. |

Gibson, Dunn & Crutcher LLP

1   **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2   **PLEASE TAKE NOTICE THAT** on September 28, 2018, at 10:00 a.m., or as soon thereafter

3   as the matter may be heard before the Honorable Edward J. Davila, in Courtroom 4, Fifth Floor, of the

4   United States District Court for the Northern District of California in the San Jose Courthouse, 280

5   South First Street, San Jose, California 95113, Defendant Apple Inc. will, and hereby does, move this

6   Court, pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, for an order

7   dismissing the Consolidated Amended Complaint ("CAC") on several grounds.

8   Pursuant to the Court's direction in CMO No. 4, Apple's Motion focuses on Counts 1–6 as well

9   as the CAC's inclusion of non-U.S. claimants/claims and the allegations regarding the iPad and

10  iPhone 5, 5c, and 5s devices, and Apple expressly reserves its right to challenge the remaining claims

11  at a later time, if necessary.  (Dkt. 163 at 1.)  The claims that this Motion addresses fail as a matter of

12  law for several reasons:

13  *First*, the Court should reject Plaintiffs' effort to expand the geographic reach of this action.

14  The CAC attempts to convert what was a large number of purported nationwide U.S. class actions into

15  the first worldwide consumer MDL in history, without any legal authority to support that reach.  But

16  non-U.S. consumers may not pursue their claims in this Court because (1) it would violate Apple's due

17  process rights and would present intractable manageability and efficiency problems; (2) the non-U.S.

18  Plaintiffs cannot invoke California law because the iOS software license does not apply to their claims

19  for the simple reasons that this is not a "license" dispute and Plaintiffs have cited no applicable

20  agreement providing for venue in this Court; (3) the statutes Plaintiffs seek to invoke do not apply

21  extraterritorially to transactions in other countries; and (4) Plaintiffs do not even have named

22  representatives from each of the foreign countries whose consumers they purport to represent.  Before

23  filing this Motion, Apple conferred with Plaintiffs regarding the futility and impropriety of their pursuit

24  of claims on behalf of non-U.S. consumers.  Plaintiffs refused to provide Apple with any legal basis in

25  support of this attempt.

26  For similar reasons, the Court should also dismiss Plaintiffs' claims brought under the laws of

27  the United Kingdom because international comity prohibits adjudication of claims brought under

28  foreign law, and a U.S. court is not the most convenient forum for adjudicating these novel claims.

*Second*, the CAC does not allege that any of Apple's statements were false or deceptive, and it does not allege that any Plaintiff viewed—much less relied on—any particular statement. Accordingly, the CAC lacks the well-pleaded, plausible, factual allegations required by Rule 8(a) or Rule 9(b) to state claims under the California Consumers Legal Remedies Act, False Advertising Law, and Unfair Competition Law (Counts 2–4) based on an affirmative misrepresentation theory.

*Third*, Plaintiffs also do not state a claim under these statutes pursuant to any "omission" theory, because the CAC does not explain what Apple should have disclosed beyond what it already told customers. Their core "omission" theory appears to be that Apple should be held liable because the lithium-ion batteries in their devices would not meet peak power demands in perpetuity. The fact that batteries do not last forever is common knowledge, as the CAC admits, and Apple disclosed that batteries are consumable products. Further, as acknowledged in the CAC, Apple disclosed the development of the performance management feature to prevent unexpected shutdowns.

*Fourth*, among other problems, Plaintiffs' voluntary download of the iOS software at issue precludes their claims for trespass to chattels and violations of the federal Computer Fraud and Abuse Act and the California Data Access and Fraud Act (Counts 1, 5–6).

*Finally*, the Court should dismiss Plaintiffs' attempt to expand the scope of this action to include iPad and iPhone 5, 5c, and 5s devices that never included the performance management features at issue in this MDL. Permitting these claims to proceed beyond the pleading stage would substantially expand the scope of discovery when Plaintiffs have not identified any facts to pursue those claims.

Pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, Apple hereby provides notice that it relies on declarations regarding the laws of several countries (China, France, Japan, Italy, Peru, Turkey, Nigeria, and the United Kingdom) implicated by the CAC.[*] Defendant's Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Christopher Chorba, Kristian Brabander (Canada), Professor Jianguo Xiao (China), Justice Jean-Paul Beraudo (France), Professor Masato Dogauchi (Japan), Professor Guido Alpa (Italy),

---

[*] Apple reserves the right to submit additional declarations pursuant to Rule 44.1. As noted at the last status conference, the time provided for Apple to prepare this Motion addressing the new claims on behalf of non-U.S. residents necessarily limited Apple's ability to obtain such declarations. (Hr'g Tr., July 11, 2018, at 9:20-10:3.)

DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:18-MD-02827-EJD

Gibson, Dunn &
Crutcher LLP

José Tam Perez (Peru), Jin-Yeong Chung (South Korea), Professor Ziya Akinci (Turkey), Professor Fabian Ajogwu (Nigeria), and Jonathan Kirk Q.C. (U.K.), the accompanying Request for Judicial Notice (and any other matters of which the Court may take judicial notice), the other documents on file in this action, and any oral argument of counsel.

Dated: August 9, 2018                    GIBSON, DUNN & CRUTCHER LLP

By:  _____/s/ Theodore J. Boutrous, Jr._____
         Theodore J. Boutrous, Jr.

*Attorneys for Defendant Apple Inc.*

DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:18-MD-02827-EJD

Gibson, Dunn & Crutcher LLP

# TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ....................................................... 1

II.   STATEMENT OF ISSUES TO BE DECIDED ................................................................ 4

III.  SUMMARY OF ALLEGED FACTS AND RELEVANT PROCEDURAL HISTORY ......... 4

IV.   THE LEGAL STANDARDS GOVERNING THIS MOTION ............................................. 6

V.    ARGUMENT ................................................................................................................. 7

      A.    The Court Lacks Jurisdiction Over The Non-U.S. Plaintiffs .............................. 7

            1.    *Allowing Non-U.S. Plaintiffs To Pursue Claims In This Court Raises*
                  *Insurmountable Practical And Constitutional Problems.* ......................... 7

            2.    *The Non-U.S. Plaintiffs Have Not Alleged Any Basis For Invoking*
                  *California Law.* .......................................................................................... 10

            3.    *The California And Federal Laws At Issue Do Not Apply*
                  *Extraterritorially.* ...................................................................................... 13

            4.    *The Court Should Dismiss Non-U.S. Plaintiffs Where There Is No*
                  *Named Representative From Their Country.* .............................................. 15

      B.    The Court Should Dismiss All Claims Arising Under U.K. Law (Counts 17-
            18) ...................................................................................................................... 15

            1.    *International Comity Compels Dismissal Of The U.K. Claims.* ................. 15

            2.    *A U.S. Court Is Not The Most Convenient Forum For Adjudicating*
                  *U.K. Claims.* .............................................................................................. 16

      C.    Plaintiffs' California And Federal Claims (Counts 1–6) Fail As A Matter Of
            Law ..................................................................................................................... 18

            1.    *Plaintiffs Fail To Plead An Affirmative Misrepresentation (Counts 2–*
                  *4).* ............................................................................................................. 18

            2.    *Plaintiffs Also Cannot State Consumer Protection Claims Based On A*
                  *Supposed Omission Or Any Other Theory (Counts 2–4).* .......................... 23

            3.    *Plaintiffs Do Not And Cannot State Any Claim For Trespass To*
                  *Chattels And Violations Of California Or Federal Computer Fraud*
                  *Statutes (Counts 1, 5, and 6).* .................................................................. 31

            4.    *The Claims Regarding iPad And iPhone 5/5c/5s Devices (Counts 1–6)*
                  *Fail For The Additional Reason That The Performance Management*
                  *Feature Never Operated On Those Devices.* ............................................... 35

VI.   CONCLUSION .............................................................................................................. 35

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.H. Lundberg Assocs., Inc. v. TSI, Inc.*,
  No. 14-1160, 2014 WL 5365514 (W.D. Wash. Oct. 21, 2014) ......................................19

*Abraham v. Volkswagen of Am., Inc.*,
  795 F.2d 238 (2d Cir. 1986).........................................................................................25

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  No. 06-1775, 2008 WL 5958061 (E.D.N.Y. Sept. 26, 2008) ...........................15, 16, 17

*In re Alstom SA Secs. Litig.*,
  No. 03-6595, 2010 WL 3718863 (S.D.N.Y. Sept. 14, 2010).........................................16

*Am. Pipe & Constr. Co. v. Utah*,
  414 U.S. 538 (1974)........................................................................................................9

*Apollo Group v. Avnet, Inc.*,
  58 F.3d 477 (9th Cir. 1995).........................................................................................34

*In re Apple & ATTM Antitrust Litig.*,
  No. 07-05152-JW, 2010 WL 3521965 (N.D. Cal. July 8, 2010)....................................34

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................................7

*In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*,
  228 F. Supp. 2d 348 (S.D.N.Y. 2002)...........................................................................10

*Baggett v. Hewlett-Packard Co.*,
  No. 07-0667, 2009 WL 3178066 (C.D. Cal. Sept. 29, 2009) ........................................34

*Baltazar v. Apple Inc.*,
  No. 10-03231-WHA, 2011 WL 6747884 (N.D. Cal. Dec. 22, 2011) .............................20

*Baltazar v. Apple Inc.*,
  No. 10-3231-JF, 2011 WL 3795013 (N.D. Cal. Aug. 26, 2011) ....................................24

*In re Banco Santander Secs.-Optimal Litig.*,
  732 F. Supp. 2d 1305 (S.D. Fla. 2010) ........................................................................12

*Bardin v. DaimlerChrysler Corp.*,
  136 Cal. App. 4th 1255 (2006) .....................................................................................19

*Bell Atlantic v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................7, 15, 24

*Berenblat v. Apple Inc.*,
  No. 08-4969-JF, 2010 WL 1460297 (N.D. Cal. Apr. 9, 2010) ......................................30

*Bersch v. Drexel Firestone, Inc.*,
  519 F.2d 974 (2d Cir. 1975)..........................................................................................10

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Birdsong v. Apple Inc.*,
 590 F.3d 955 (9th Cir. 2009)..................................................................................................21

*BMW of N. Am., Inc. v. Gore*,
 517 U.S. 559 (1996)...............................................................................................................14

*Bros. v. Hewlett-Packard Co.*,
 No. 06-02254-RMW, 2006 WL 3093685 (N.D. Cal. Oct. 31, 2006) ....................................19

*Brownfield v. Bayer Corp.*,
 No. 09-00444, 2009 WL 1953035 (E.D. Cal. July 6, 2009) .................................................28

*In re Carrier IQ, Inc.*,
 78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..................................................................................33

*City of Oakland v. BP P.L.C.*,
 Nos. 17-6011-WHA, 17-6012-WHA, 2018 WL 3109726 (N.D. Cal. June 25,
 2018) ......................................................................................................................................14

*Continental Airlines, Inc. v. Mundo Travel Corp.*,
 412 F. Supp. 2d 1059 (E.D. Cal. 2006).................................................................................11

*Cover v. Windsor Surry Co.*,
 No. 14-05262-WHO, 2016 WL 520991 (N.D. Cal. Feb. 10, 2016) .....................................13

*Dana v. Hershey Co.*,
 180 F. Supp. 3d 652 (N.D. Cal. 2016) ..................................................................................24

*Daugherty v. Am. Honda Motor Co., Inc.*,
 144 Cal. App. 4th 824 (2006) ...................................................................................25, 27, 29

*de Fontbrune v. Wofsy*,
 838 F.3d 992 (9th Cir. 2016)....................................................................................................8

*Deras v. Volkswagen Group of Am., Inc.*,
 No. 17-05452-JST, 2018 WL 2267448 (N.D. Cal. May 17, 2018) .......................................30

*DeYoung v. Beddome*,
 707 F. Supp. 132 (S.D.N.Y. 1989)........................................................................................17

*Diamond Multimedia Sys., Inc. v. Super. Ct.*,
 19 Cal. 4th 1036 (1999) ........................................................................................................14

*Doe v. Successfulmatch.com*,
 No. 13-03376-LHK, 2014 WL 1494347 (N.D. Cal. Apr. 16, 2014) .....................................22

*Donohue v. Apple Inc.*,
 871 F. Supp. 2d 913 (N.D. Cal. 2012) ..................................................................................31

*E-Shops Corp. v. U.S. Bank Nat. Ass'n*,
 678 F.3d 659 (8th Cir. 2012)..................................................................................................30

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
   751 F.3d 990 (9th Cir. 2014).................................................................7, 30

*Edgar v. MITE Corp.,*
   457 U.S. 624 (1982)....................................................................................13

*Edmunson v. Procter & Gamble Co.,*
   No. 10-2256, 2011 WL 1897625 (S.D. Cal. May 17, 2011)........................22

*Elias v. Hewlett-Packard Co.,*
   950 F. Supp. 2d 1123 (N.D. Cal. 2013) ......................................................19

*Exxon Shipping Co. v. Baker,*
   554 U.S. 471 (2008).....................................................................................12

*In re Facebook Privacy Litig.,*
   791 F. Supp. 2d 705 (N.D. Cal. 2011) ........................................................33

*Ferens v. John Deere Co.,*
   494 U.S. 516 (1990).....................................................................................12

*Flextronics Int'l, Ltd. v. Parametric Tech. Corp.,*
   No. 13-00034-PSG, 2014 WL 2213910 (N.D. Cal. May 28, 2014) .........31, 33

*Ford v. Brown,*
   319 F.3d 1302 (11th Cir. 2003) ..................................................................16

*Gertz v. Toyota Motor Corp.,*
   No. 10-1089, 2011 WL 13142144 (C.D. Cal. Apr. 28, 2011) .....................22

*Glass v. BMW of N. Am., LLC,*
   No. 10-5259, 2011 WL 6887721 (D.N.J. Dec. 29, 2011) ...........................30

*In re GlenFed, Inc. Secs. Litig.,*
   42 F.3d 1541 (9th Cir. 1994)........................................................................21

*Gonzales v. Uber Techs., Inc.,*
   305 F. Supp. 3d 1078 (N.D. Cal. 2018) ......................................................34

*Grodzitsky v. Am. Honda Motor Co.,*
   No. 12-1142, 2013 WL 690822 (C.D. Cal. Feb. 19, 2013) .........................31

*Hadley v. Kellogg Sales Co.,*
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ......................................................31

*Hall v. Sea World Entm't, Inc.,*
   No. 15-660, 2015 WL 9659911 (S.D. Cal. Dec. 23, 2015) .........................24

*Hernandez v. Burger,*
   102 Cal. App. 3d 795 (1980)........................................................................12

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Inter-Mark USA, Inc. v. Intuit, Inc.*,
No. 07-04178-JCS, 2008 WL 552482 (N.D. Cal. Feb. 27, 2008) ..................19

*In re iPhone 4s Consumer Litig.*,
637 F. App'x 414 (9th Cir. 2016) ..................19, 29

*In re iPhone Application Litig.*,
6 F. Supp. 3d 1004 (N.D. Cal. 2013) ..................22

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..................31, 32, 33, 35

*In re iPhone Application Litig.*,
No. 11-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011)..................33

*Japan Line, Ltd. v. County of L.A.*,
441 U.S. 434 (1979)..................14

*Jesner v. Arab Bank, PLC*,
138 S. Ct. 1386 (2018) ..................14

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009)..................6, 21

*Khokhar v. Yousuf*,
No. 15-6043-SBA, 2017 WL 3535055 (N.D. Cal. Aug. 16, 2017) ..................11

*Kiobel v. Royal Dutch Petroleum Co.*,
569 U.S. 108 (2013)..................14

*Laster v. T-Mobile USA, Inc.*,
407 F. Supp. 2d 1181 (S.D. Cal. 2005) ..................21

*Lavie v. Procter & Gamble Co.*,
105 Cal. App. 4th 496 (2003) ..................19

*Leonhart v. Nature's Path Foods, Inc.*,
No. 13-0492-EJD, 2014 WL 1338161 (N.D. Cal. Mar. 31, 2014) ..................35

*Lindsey v. Normet*,
405 U.S. 56 (1972)..................8

*Lockman Found. v. Evangelical Alliance Mission*,
930 F.2d 764 (9th Cir. 1991)..................16

*Lou v. Belzberg*,
834 F.2d 730 (9th Cir. 1987)..................17

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*,
583 F.3d 656 (9th Cir. 2009)..................16, 17

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Lueck v. Sundstrand Corp.*,
   236 F.3d 1137 (9th Cir. 2001)...................................................................................17

*LVRC Holdings LLC v. Brekka*,
   581 F.3d 1127 (9th Cir. 2009)...................................................................................33

*Maxwell v. Unilever United States, Inc.*,
   No. 12-1736-EJD, 2018 WL 1536761 (N.D. Cal. Mar. 29, 2018) ..........................28, 29

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012)...................................................................................12, 13

*McCann v. Foster Wheeler LLC*,
   48 Cal. 4th 68 (2010) .............................................................................................12, 13

*McKinney v. Google, Inc.*,
   No. 10-01177-EJD, 2011 WL 3862120 (N.D. Cal. Aug. 30, 2011) .........................19, 31

*McQueen v. BMW of N. Am., LLC*,
   No. 12-06674, 2014 WL 656619 (D.N.J. Feb. 20, 2014) .........................................31

*McVicar v. Goodman Glob., Inc.*,
   No. 13-1223, 2015 WL 4945730 (C.D. Cal. Aug. 20, 2015).....................................27

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   243 F. Supp. 2d 1073 (C.D. Cal. 2003) ...................................................................11

*Mickens v. Ford Motor Co.*,
   No. 10-5842, 2015 WL 5310755 (D.N.J. Sept. 10, 2015) .......................................25

*Microsoft Corp. v. AT&T Corp.*,
   550 U.S. 437 (2007)................................................................................................13

*Missaghi v. Apple Inc.*,
   No. 13-2003, 2013 WL 12200086 (C.D. Cal. Nov. 1, 2013).....................................20, 24

*Mujica v. AirScan Inc.*,
   771 F.3d 580 (9th Cir. 2014)...................................................................................10

*Munch v. Sears Roebuck & Co.*,
   No. 06-7023, 2007 WL 2461660 (N.D. Ill. Aug. 27, 2007) .....................................31

*Nat'l Foreign Trade Council v. Natsios*,
   181 F.3d 38 (1st Cir. 1999) .....................................................................................14

*In re NJOY, Inc. Class Action Litig.*,
   No. 14-00428, 2014 WL 12586074 (C.D. Cal. Oct. 20, 2014)..................................23, 28

*North Am. Chem. v. Super. Ct.*,
   59 Cal. App. 4th 764 (1997) ...................................................................................34

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Oestreicher v. Alienware Corp.*,
    544 F. Supp. 2d 964 (N.D. Cal. 2008) ...................................................................................18

*Opperman v. Path, Inc.*,
    87 F. Supp. 3d 1018 (N.D. Cal. 2014) ..................................................................................34

*Oracle USA, Inc. v. Rimini St., Inc.*,
    879 F.3d 948 (9th Cir. 2018)................................................................................................33

*Palmer v. Apple Inc.*,
    No. 15-05808-RMW, 2016 WL 1535087 (N.D. Cal. Apr. 15, 2016).....................................25

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998)................................................................................................11

*Paulo v. Bepex Corp.*,
    792 F.2d 894 (9th Cir. 1986)................................................................................................12

*Pelayo v. Nestle USA, Inc.*,
    989 F. Supp. 2d 973 (C.D. Cal. 2013) ..................................................................................29

*People v. Gomez*,
    No. D049431, 2008 WL 3415503 (Cal. Ct. App. Sept. 8, 2008)............................................32

*Phillips v. Apple Inc.*,
    No. 15-04879-LHK, 2016 WL 1579693 (N.D. Cal. Apr. 19, 2016) ......................................28

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) .............................................................................................................16

*Ranza v. Nike*,
    793 F.3d 1059 (9th Cir. 2015)..............................................................................................16

*Rasmussen v. Apple Inc.*,
    27 F. Supp. 3d 1027 (N.D. Cal. 2014) ..................................................................................29

*Resnick v. Hyundai Motor Am., Inc.*,
    No. 16-00593, 2017 WL 1531192 (C.D. Cal. Apr. 13, 2017) ...............................................30

*Rice v. Sunbeam Prod., Inc.*,
    No. 12-7923, 2013 WL 146270 (C.D. Cal. Jan. 7, 2013) ...............................................6, 18, 29, 30

*Rubenstein v. The Gap, Inc.*,
    14 Cal. App. 5th 870, 877 (2017) ....................................................................................20, 29

*Seely v. White Motor Co.*,
    63 Cal. 2d 9 (1965) ..............................................................................................................27

*In re Sling Media Slingbox Advertising Litig.*,
    202 F. Supp. 3d 352 (S.D.N.Y. 2016)...................................................................................11

Gibson, Dunn &
Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
(continued)

Page(s)

*In re Sony PS3 Other OS Litig.*,
  551 F. App'x 916 (9th Cir. 2014) .................................................................33

*Spencer v. DHI Mortg. Co.*,
  642 F. Supp. 2d 1153 (E.D. Cal. 2009) ........................................................34

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
  538 U.S. 408 (2003) .....................................................................................14

*Stewart v. Electrolux Home Prods., Inc.*,
  304 F. Supp. 3d 894 (E.D. Cal. 2018) ..........................................................30

*Sud v. Costco Wholesale Corp.*,
  229 F. Supp. 3d 1075 (N.D. Cal. 2017) ........................................................27

*Sullivan v. Oracle Corp.*,
  51 Cal. 4th 1191 (2011) ...............................................................................14

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
  No. 17-00561-WHO, 2018 WL 1305912 (N.D. Cal. Mar. 13, 2018)..............33

*Taison Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
  308 F.R.D. 630 (N.D. Cal. 2015) .................................................................13

*Talyancich v. Microsoft Corp.*,
  No. 12-1128, 2012 WL 12941690 (W.D. Wash. Nov. 2, 2012) ....................32

*Tatum v. Chrysler Grp. LLC.*,
  No. 10-4269, 2011 WL 1253847 (D.N.J. Mar. 28, 2011)..............................25

*Tomek v. Apple Inc.*,
  No. 11-02700, 2012 WL 2857035 (E.D. Cal. July 11, 2012) ........................21

*United States v. Grobstein*,
  No. 13-663, 2016 WL 10587954 (D.N.M. Mar. 7, 2016)...............................32

*Velasco v. Americanos USA, LLC*,
  No. 13-05251, 2014 WL 266803 (C.D. Cal. Jan. 10, 2014) ...........................8

*In re Vioxx Prods. Liab. Litig.*,
  478 F. Supp. 2d 897 (E.D. La. 2007) ............................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)........................................................................................8

*Warn v. M/Y Maridome*,
  169 F.3d 625 (9th Cir. 1999)........................................................................17

*Wash. Mut. Bank, FA v. Super. Ct.*,
  24 Cal. 4th 906 (2001) ............................................................................11, 12

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017)..............................................................................7, 18, 25

*Williams v. Yamaha Motor Corp.*,
No. 13-05066, 2015 WL 13626022 (C.D. Cal. Jan. 7, 2015) ...........................................18

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012)..........................................................................24, 26, 30

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
No. 16-2752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017).....................................11

*Yastrab v. Apple Inc.*,
173 F. Supp. 3d 972 (N.D. Cal. 2016) ................................................................21, 23

*Zinn v. Ex-Cell-O Corp.*,
148 Cal. App. 2d 56 (1957).................................................................................13

**Statutes**

15 U.S.C. § 78u-4(b)(2) ....................................................................................21

28 U.S.C. § 1404(a) ........................................................................................17

Cal. Bus. & Prof. Code § 17500 ............................................................................14

**Rules**

Fed. R. Civ. P. 1 ...........................................................................................8

Fed. R. Civ. P. 44.1 ........................................................................................8

Gibson, Dunn & Crutcher LLP

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

The Consolidated Amended Complaint (CAC) declares that this case arises out of an admission to "one of the largest consumer frauds in history," but the alleged (and actual) facts tell a very different story.  Far from perpetrating a fraud, Apple was faced with a complex technological problem, and its engineering teams worked responsibly, rapidly, and successfully to address it in a way that would deliver a better experience for customers.  And far from representing a "defect," the technical problem at the heart of this action rests in the existing realities of (and limitations to) lithium-ion battery technology.  As the lithium-ion battery within an iPhone chemically ages and operates in varying temporary conditions—environmental temperature, state of charge, and customer usage—the battery may not have been able to deliver the necessary peak power, causing the iPhone to unexpectedly shut down.  Apple sought to solve that problem by introducing a free software update that would more effectively manage the peak power demands on chemically aged batteries.

In response to customer feedback about its efforts to prevent unexpected shutdowns, Apple released a message to its customers in which it provided additional information about lithium-ion battery technology.  This message explained, in relevant part:

> First and foremost, we have never — and would never — do anything to intentionally shorten the life of any Apple product, or degrade the user experience to drive customer upgrades.  Our goal has always been to create products that our customers love, and making iPhones last as long as possible is an important part of that.
>
> . . .
>
> About a year ago in iOS 10.2.1, we delivered a software update that improves power management during peak workloads to avoid unexpected shutdowns on iPhone 6, iPhone 6 Plus, iPhone 6s, iPhone 6s Plus, and iPhone SE.  With the update, iOS dynamically manages the maximum performance of some system components when needed to prevent a shutdown.  While these changes may go unnoticed, in some cases users may experience longer launch times for apps and other reductions in performance.
>
> Customer response to iOS 10.2.1 was positive, as it successfully reduced the occurrence of unexpected shutdowns.  We recently extended the same support for iPhone 7 and iPhone 7 Plus in iOS 11.2.
>
> Of course, when a chemically aged battery is replaced with a new one, iPhone performance returns to normal when operated in standard conditions.

(CAC ¶ 20; https://www.apple.com/iphone-battery-and-performance/.)

Apple also substantially reduced the price of out-of-warranty battery replacements throughout 2018, and it later extended credits to those customers who obtained a full-price, out-of-warranty replacement battery during 2017.  Apple also responded by releasing another software update (iOS 11.3) that not only provides more visibility for customers into the health of their iPhone's battery and whether their battery's condition may be affecting their iPhone's performance, but also the option of disabling the performance management feature.

These are not the actions of a company scheming to "defraud" its customers, as Plaintiffs contend.  Their CAC is a dramatic overreach, attempting to take this dispute far beyond what Apple has acknowledged, and vastly expand the scope of this action in terms of its jurisdictional reach (domestic to international), the products affected (from iPhone 6, 6 Plus, 6s, 6s Plus, SE, 7, and 7 Plus devices affected by the performance management feature to iPad and iPhone 5, 5c, and 5s devices, which the CAC shows never ran those features), and the bounds of governing law (by purporting to impose a legal duty to disclose the pace of battery technology).  The CAC should be dismissed for several reasons:

_First_, Plaintiffs cannot use this Court as a one-stop-shop to litigate claims globally.  The CAC asks this Court to adjudicate claims in 40 foreign countries, which Plaintiffs' counsel apparently selected as a matter of convenience and not based on any principled legal justification.  There is no precedent for this, especially when there is not a single citizen to represent more than half of the countries listed in the CAC.  For several others, nearly identical claims are being litigated in their home jurisdictions—contrary to Plaintiffs' counsel's suggestion that foreign matters are "on hold" pending this MDL.  Plaintiffs' primary justification for involving these non-U.S. claimants is a choice of law provision in the Software License Agreement.  Aside from the fact that this is not a "license" dispute, a choice of law clause is _not_ a venue provision, and Plaintiffs ignore Apple's hardware warranty, which is also implicated by the CAC's claims and which "is governed by . . . the laws of the country in which the Apple Product purchase took place," including the "laws of [the purchaser's] country, province or state."  The Court should dismiss all non-U.S. Plaintiffs and non-U.S. claims.

_Second_, the Court also should reject Plaintiffs' attempt to sweep in various iPad models and iPhone 5, 5c, and 5s devices.  The message quoted above is limited to _other_ iPhones, and the CAC

admits that iPad and the iPhone 5, 5c, and 5s devices never ran the performance management feature at issue.  Plaintiffs identify no factual basis for expanding this MDL to include those additional devices.

*Third*, Plaintiffs cannot identify any express promise that Apple made and failed to meet, which forecloses their consumer protection claims (Counts 2–4) based on an affirmative misrepresentation theory.  Plaintiffs do not identify a single statement, representation, or promise that was false.  Nor do Plaintiffs allege that their devices failed to conform to the warranties, or that Apple failed to live up to any promises about speed or device performance over time.  The CAC does not even allege that Plaintiffs actually *viewed* any specific representations that Apple made, much less claim that Plaintiffs *relied on* any statements that turned out to be false or deceptive.  These basic pleading deficiencies require dismissal of all of the claims resting on a "misrepresentation" theory.

*Fourth*, Plaintiffs also cannot pursue any fraudulent "omission" theory because they have not defined what Apple should have but did not disclose.  While Apple acknowledged that it could have communicated better *about the performance management feature*, its warranty has long informed customers that batteries are consumable goods with a limited lifespan.  In fact, the CAC references Apple's battery replacement service, a clear indication in and of itself that batteries may need to be replaced, and Apple has long provided information on its battery webpage—https://www.apple.com/batteries/.  Further, the CAC admits that the Plaintiffs' iPhones functioned as warranted, which means that under well-established Ninth Circuit precedent, Apple's alleged disclosure obligation is limited to unreasonable safety hazards.  Nowhere does the CAC allege any undisclosed "safety" issues.

*Fifth*, Plaintiffs' "trespass" and "computer fraud" theories (Counts 1, 5–6) seek to vastly expand the law.  But because the CAC does not (and cannot) allege that Plaintiffs did not voluntarily download the software, they cannot pursue these claims.  Several cases in this District have rejected these claims at the pleading stage on this basis.  And Plaintiffs do not allege that the performance management feature harmed, rather than benefited, their devices; to the contrary, they concede that this feature reduced the problem of unexpected shutdowns.

For all these reasons, the Court should grant this Motion.

## II.   STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Plaintiffs have any legal basis to expand this case to include non-U.S. Plaintiffs who purchased devices from 40 foreign countries, and whether their attempt to do so is barred as a matter of due process, manageability, extraterritoriality, and basic pleading deficiencies.

2.      Whether Plaintiffs' claims brought under the laws of the United Kingdom (Counts 17-18) should be dismissed on the grounds of international comity and *forum non conveniens*.

3.      Whether the CAC contains specific factual allegations showing each essential element under California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"), Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), and the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") (Counts 2–4), on the theory that Apple made false representations, when the CAC fails to identify any specific representation that was false or that any Plaintiff saw (much less relied upon) any alleged misstatement.

4.      Whether the CAC alternatively pleads these consumer protection claims on the theory that Apple did not satisfy a duty to disclose that batteries chemically age or to supply a battery that delivers peak performance for years longer than warranted.

5.      Whether the CAC pleads factual allegations showing that Apple's action of making software updates available for its users to voluntarily install constitutes "trespass to chattels" and violations of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA") and California Computer Data Access and Fraud Act, Cal. Penal Code §§ 502, *et seq.* ("CDAFA") (Counts 1, 5–6).

6.      Whether Plaintiffs may include iPad and iPhone 5/5c/5s devices, when the performance management features at the heart of the CAC admittedly never ran on those devices.

## III.   SUMMARY OF ALLEGED FACTS AND RELEVANT PROCEDURAL HISTORY

Lithium-ion batteries are consumable components that become less effective with time, number of charge cycles, extreme temperature exposure, and/or usage—and chemically aged batteries are less able to deliver peak energy loads.  (CAC ¶ 11.)[1]  As a result, when power demands were high, some customers experienced unexpected shutdowns of their older-model iPhones.  (*Id*.)  Apple worked

---

[1]  Apple's hardware warranty identifies "batteries" as "consumable parts."  (Chorba Decl. Ex. A.)  As discussed below (*infra* n. 9), this Court may take judicial notice of the warranty.

Gibson, Dunn &
Crutcher LLP

quickly to fix the issue.  In January 2017, Apple released iOS 10.2.1, an operating system upgrade, which included a performance management feature that dynamically managed the performance of certain iPhones and successfully reduced the frequency of unexpected shutdowns.  (*Id.* ¶¶ 13, 20, 401, 403.)  But some customers noticed temporarily slowed performance of the phone when running certain applications, and many lawsuits ensued.  (*Id.* ¶ 20.)

On July 2, 2018, Plaintiffs filed the CAC.  It spans more than 300 pages; includes 76 causes of action arising under the laws of 50 states, several U.S. territories, and the United Kingdom; purports to add a class of consumers who purchased devices in 40 foreign countries (including a subclass of consumers in the U.K.);[2] and includes new allegations regarding iPad and iPhone 5, 5c, and 5s devices. The CAC does not identify *any* named Plaintiff from 26 of the 40 foreign countries that constitute the putative worldwide class.  (CAC ¶ 455 n.70.)[3]

Despite its length and breadth, the CAC is short on specifics.  Plaintiffs' core allegation is that Apple failed to disclose to consumers a vague "mismatch" between "the Devices' hardware, including their processing chips and rechargeable lithium-ion batteries, and the ever-increasing demands placed on the Devices via Apple's constantly-updating iOS software platform."  (*Id.* ¶ 9.)  That general allegation is the only description of the purported "Defect."  (*See*, *e.g.*, *id.* ¶¶ 14, 469, 483, 488, 494.) The CAC also cites multiple Apple representations about iPhone batteries and devices, but does not allege that any representation is false.  For example, Plaintiffs allege that Apple represents that its batteries retain 80% of their capacity once they reach 500 charge cycles, but never allege that any device failed to achieve this goal.  (*Id.* ¶¶ 382–83.)  Additionally, none of the 122 named Plaintiffs is

---

[2]  The forty countries are Argentina, Azerbaijan, Australia, Belgium, Brazil, Canada, Chile, China, Colombia, the Czech Republic, Denmark, France, Germany, Greece, Hong Kong, India, Italy, Japan, Malaysia, Mexico, the Netherlands, New Zealand, Nigeria, Norway, Peru, Poland, Portugal, Romania, Russia, Saudi Arabia, South Africa, South Korea, Spain, Sweden, Switzerland, Taiwan, Turkey, the Ukraine, the United Kingdom, and Venezuela.  (CAC ¶¶ 455 n.70, 457.)

[3]  Plaintiffs' counsel had suggested that they would "coordinate" with civil lawsuits in foreign countries, not co-opt them altogether.  (Dkt. 3 at 9:20-22 ("Plaintiffs anticipate proposing ways to enhance cross-border efficiencies between these cases and the MDL where appropriate"); Hr'g Tr., May 10, 2018, at 59:13-60:3 ("This case *requires coordination with* those actions outside of the U.S."); Dkt. 35 at 12 (defining the role of "international liaison counsel" as "*monitor[ing] and help[ing] coordinate with any litigation in any international courts* and advis[ing] on issues related to international class members in this MDL.") (emphases added).)  Plaintiffs' counsel also pledged to "look to this [C]ourt *to see if it's appropriate . . . in some circumstances* to have class members from other countries joining" the case.  (Hr'g Tr., May 10, 2018, at 59:24-60:2 (emphases added).)

alleged to have relied on, or even seen, any of these or any other Apple representations; the CAC simply parrots the same conclusory allegations for each Plaintiff.  (*Id.* ¶¶ 29–272, quoted *infra* pp. 22, 27, 34.)

In addition to the UCL, FAL, and CLRA (Counts 2–4), the CAC also asserts claims for "trespass to chattels" (Count 1) and alleged violations of the CDAFA and CFAA (Counts 5-6).  For example, Plaintiffs contend that Apple is liable for trespass to chattels because "it knew that Plaintiff and class members were downloading computer software onto their Devices that reduced the performance of the Devices," but Plaintiffs would not have wanted such an iOS update.  (*Id.* ¶¶ 474, 524, 534.)  Yet Plaintiffs admit that they voluntarily downloaded the updates.  (*Id.* ¶¶ 386–89.)

After Plaintiffs indicated at a July 11, 2018 status conference that the first six counts of the CAC were their strongest claims on which they would like to focus initially, the Court ordered that this Motion focus on those counts.  While Apple objects to this procedure, the Court ordered that this Motion is without prejudice to Apple's ability to challenge the remaining claims.  (CMO No. 4, Dkt. 163 at 1; *see also* Dkt. 153 at 5 & n.2.)  The Court also ordered that this Motion address whether this MDL should include claims on behalf of non-U.S. Plaintiffs, including claims pursuant to certain U.K. laws and regulations, and iPad devices.  (CMO No. 4, Dkt. 163 at 1; *see also* Dkt. 153 at 6.) The Court stayed discovery as to these two topics "[b]ecause Apple's motion to dismiss may definitively resolve [these] issues."  (*Id.* ¶ 2.)[4]

## IV.   THE LEGAL STANDARDS GOVERNING THIS MOTION

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  This heightened pleading standard applies to claims under state consumer protection laws like the CLRA, UCL, and FAL (Counts 2–4). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  The Rule "requires a plaintiff to identify the who, what, when, where and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent conduct, and why it is false."  *Rice v. Sunbeam Prod., Inc.*, No. 12-7923, 2013 WL 146270, at *3 (C.D. Cal. Jan. 7, 2013) (punctuation omitted).

---

[4]  Plaintiffs dispute the inclusion of iPhone 5/5c/5s devices in this Motion, but as explained below (*infra* p. 35), the dismissal arguments are the same for these devices as the iPad.  And Apple raised these devices in the Second Supplemental Joint Case Management Statement (Dkt. 153 at 7 n.3) and at the July 11 hearing (Tr. of Hr'g, July 11, 2018, at 28:22-29:3).

The CAC and all claims also must satisfy Rule 8(a)(2)'s pleading standards.  "A sufficiently pleaded cause of action 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'  Rather, 'factual allegations must be enough to raise a right to relief above the speculative level.'"  *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 (9th Cir. 2017) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).  In testing the sufficiency of a complaint, the court does not "credit," *id.* at 1025 n.5, mere "legal conclusions," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and it must "draw on its judicial experience and common sense," *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996, 998 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679).  "[I]t is only by taking care to require allegations that reach the level" of plausibility that courts "can hope to avoid the potentially enormous expense of discovery."  *Twombly*, 550 U.S. at 559.

# V.   ARGUMENT

The CAC does not state a claim for relief under any theory or provide any justification for Plaintiffs' attempt to substantially expand the jurisdictional, legal, and product scope of this case.

## A.   The Court Lacks Jurisdiction Over The Non-U.S. Plaintiffs

This Court should reject Plaintiffs' counsel's attempt to make this the first worldwide consumer MDL in history.  There is *no* legal basis or precedent to expand this Court's jurisdiction to adjudicate the claims of customers from 40 foreign countries.

Even if Plaintiffs could identify any legal grounds for permitting this unprecedented worldwide MDL to proceed—and they cannot—there are countless legal and practical reasons to reject it:  (1) it would present insurmountable manageability issues for the Court and the parties; (2) Plaintiffs cite no applicable venue provision requiring worldwide claims to be litigated here; (3) neither the CFAA nor California's consumer protection laws have application beyond U.S. borders; and (4) the CAC does not include proposed plaintiffs from 26 of the 40 countries in the purported global class.  In short, this Court is not the appropriate forum to adjudicate claims for products bought outside the U.S.

### 1.   *Allowing Non-U.S. Plaintiffs To Pursue Claims In This Court Raises Insurmountable Practical And Constitutional Problems.*

The CAC does not allege *any* grounds permitting this Court to adjudicate the claims of consumers in 40 foreign countries.  The unprecedented *worldwide* consumer MDL that Plaintiffs propose here would preclude the kind of fair and efficient adjudication required by the Federal Rules.

*See, e.g.*, Fed. R. Civ. P. 1 (requiring administration of all rules "to secure the just, speedy, and inexpensive determination of every action and proceeding"); 23(b)(3) (mandating notice and opt-out procedures in class actions seeking monetary relief, and requiring that the class action device is both manageable and superior).  Due process guarantees the right to conduct discovery and "present every available defense" (*Lindsey v. Normet*, 405 U.S. 56, 66 (1972); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) (holding that the Rules Enabling Act "forbids interpreting Rule 23 to 'abridge . . . or modify any substantive right'")).  Yet, this Court cannot assert jurisdiction over absent foreign plaintiffs, much less conduct class-certification and merits discovery, subpoena witnesses, or oversee notice to putative or certified class members in far-flung corners of the world.

As explained by the accompanying declarations,[5] these countries also have vastly different discovery systems than the U.S., making it difficult if not impossible for Apple to obtain the discovery to which it is entitled pursuant to U.S. law.  (*See, e.g.*, Declarations of Prof. Masato Dogauchi ¶¶ 13–14 [Japan], Prof. Jianguo Xiao ¶¶ 10–12 [China], and Prof. Guido Alpa ¶ 9 [Italy].)  Plaintiffs can offer no solution to the practical absurdities presented by the proposed adjudication of potentially hundreds of millions of claims from putative absent class members in 40 foreign countries that collectively are home to more than half the world's population.  The challenges involved in administering non-U.S. Plaintiffs' claims would overwhelm the already significant endeavor of attempting to administer a proposed nationwide class action that includes more than 100 proposed class representatives in the U.S.

In addition to these practical concerns, neither the parties nor the Court can be assured that any judgment in this action would bind non-U.S. customers and/or have a preclusive effect on claims in foreign jurisdictions.  As the State Department explains, "[t]here is no bilateral treaty or multilateral convention in force between the United States and any other country on . . . enforcement of judgments." *Velasco v. Americanos USA, LLC*, No. 13-05251, 2014 WL 266803, at *11 (C.D. Cal. Jan. 10, 2014) (quoting U.S. Dep't of State, Enforcement of Judgments, https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/Enforcement-of-Judges.html.)  There is thus no

---

[5]  The Court can consider the concurrently filed declarations and make determinations regarding foreign law.  *See* Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony…."); *de Fontbrune v. Wofsy*, 838 F.3d 992, 1000 (9th Cir. 2016) (holding that courts may consider "foreign legal materials[,] including expert testimony and declarations[,] at the pleading stage").

guarantee that *any* of the courts in the 40 foreign countries would recognize a U.S.-style class action judgment.  Many of these countries require collective consumer actions to be brought only through consumer associations, only recognize opt-in as opposed to opt-out actions, and/or have no class action systems at all.  (*See*, *e.g.*, Declarations of Prof. Ziya Akinci ¶ 6 [Turkey], José Tam Perez ¶ 5.a. [Peru], Justice Jean-Paul Beraudo ¶ 17 [France], Alpa ¶ 10 [Italy], Dogauchi ¶ 24 [Japan], and Xiao ¶¶ 8–9 [China].)  And there is no assurance that they will give preclusive effect to a U.S. class action judgment rendered in favor of a defendant.  (*See*, *e.g.*, Akinci Decl. ¶ 10 [Turkey]; Dogauchi Decl. ¶ 7, 25 [Japan]; Decl. of Prof. Fabian Ajogwu ¶ 16 [Nigeria]; Xiao Decl. ¶¶ 19–22 [China]; Beraudo Decl. ¶ 16 [France].)  Such a result would be *unprecedented* in these countries.  (*See*, *e.g.*, Akinci Decl. ¶ 11 [Turkey]; Xiao Decl. ¶ 23 [China]; Perez Decl. ¶ 12 [Peru].)  In certain countries, one barrier to enforcement would be foreign class members' failure (or inability) to take *affirmative* steps to submit themselves to the jurisdiction of the U.S. court—mere receipt of notice and the opportunity to opt out would not be sufficient.  (*See*, *e.g.*, Dogauchi Decl. ¶¶ 25-26 [Japan].)  Thus, if a citizen of one of those countries were a member of a certified class that *lost* in U.S. litigation, that class member could attempt to reassert—or *continue* asserting—his or her claim in a foreign court.  *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 546–47 (1974) (Rule 23 was amended to eliminate the "unfair" practice of "allow[ing] members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one").[6]

Far from providing any legal assurance that a class action judgment would have preclusive effect worldwide, Plaintiffs' counsel disclosed that their process for "coordination" with ongoing global litigation was to place phone calls to inquire whether foreign counsel were "comfortable" with the plan to represent global claimants in the U.S., and they excluded countries that voiced objections.

---

[6] This is not a theoretical risk.  Although Plaintiffs dispute that these are the same individuals, two of the named plaintiffs from South Korea (Heekyung Jo and Youngro Lee) share identical names of two claimants in a group action in South Korea, and if these are the same people, they certainly should not be allowed to proceed simultaneously in a duplicative putative class action in the U.S. (Decl. of Jin-Yeong Chung ¶ 3 [South Korea].)  But even if they are different individuals, this "coincidence" illustrates the impossibility of efficiently managing claims in different countries.  Moreover, there are nine pending class actions in Canada, and—contrary to Plaintiffs' counsel's representations at the last hearing that Canadian counsel are "comfortable" with Canadian consumers proceeding via this MDL (*see* Hr'g Tr., July 11, 2018, at 20:18-21:11)—the Canadian actions are not "on hold" pending a resolution here.  (Decl. of Kristian Brabander ¶¶ 3-6.)

DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:18-MD-02827-EJD

Gibson, Dunn &
Crutcher LLP

(Hr'g Tr., July 11, 2018, at 20:18-21:11 (Canadian counsel are amenable, but Israeli counsel are not).) But Plaintiffs' counsel offered no principled legal analysis as to how any such concession could give a U.S. class action judgment preclusive effect in any foreign country.  Without such assurance, this Court, Apple, and the named Plaintiffs would have wasted significant time and resources briefing preliminary motions and Plaintiffs' motion for class certification, and conducting broader discovery, only to repeat those efforts in countries that do not grant preclusive effect to any final judgment.

Such a result would be manifestly unfair.  "[I]f defendants prevail against a class they are entitled to a victory no less broad than a defeat would have been."  *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 996 (2d Cir. 1975), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 257–58 (2010).  The case therefore should not proceed if class members "would not be precluded from litigating abroad in their home countries should they lose in [the United States]."  *In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*, 228 F. Supp. 2d 348, 364 (S.D.N.Y. 2002); *accord Bersch*, 519 F.2d at 996–97 (dismissing claims of all "purchasers other than persons who were residents or citizens of the United States").  Courts have reached this conclusion even when the *res judicata* effect of a U.S. judgment was merely *uncertain.  See, e.g., Bersch*, 519 F.2d at 996–97.[7]

**2.**    ***The Non-U.S. Plaintiffs Have Not Alleged Any Basis For Invoking California Law.***

All of the non-U.S. Plaintiffs' claims also should be dismissed because Plaintiffs offer no basis for applying California law to all of their claims.  The CAC attempts to invoke California law based on a provision in the iOS Software License Agreement stating that the "***License*** will be governed by" California law.  (CAC ¶ 276 (emphasis added).)  But the Software License Agreement does not support worldwide application of California law in this case for at least three reasons.[8]

---

[7] The doctrine of international comity likewise supports dismissal of the claims asserted by non-U.S. Plaintiffs in countries (such as Canada and Colombia) where group actions are already underway. *See generally Mujica v. AirScan Inc.*, 771 F.3d 580, 599 (9th Cir. 2014) ("[International comity] is a doctrine of prudential abstention," premised on a "discretionary act of deference by a national court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state.").  The U.S. has little interest in adjudicating the claims relating to devices located in, and activity that allegedly occurred in, foreign countries.  *Id.* at 603–04.

[8] Plaintiffs acknowledge that the license agreement's governing law provision does not apply to "consumer[s] based in the United Kingdom," for whom the license is "governed by the laws of the jurisdiction of . . . residence."  (CAC ¶ 276.)  The U.K. Plaintiffs therefore plainly do not have claims under California or federal U.S. law.  And as discussed *infra* (pp. 16-17), this Court also is not the proper forum to adjudicate the U.K. Plaintiffs' claims under U.K. law (Counts 17 and 18).

*First*, this is *not* a forum selection clause and does not support venue in this Court:  The "clause merely identifies the law that governs the [license], not the forum in which suit may be brought." *Khokhar v. Yousuf*, No. 15-6043-SBA, 2017 WL 3535055, at *3 (N.D. Cal. Aug. 16, 2017).

*Second*, aside from this obvious fault, Plaintiffs do not even invoke the correct agreement. The Software License Agreement does not apply for the basic reason that this case does not present a "license" dispute, and the claims do not arise solely from the iOS software "license."  Thus, the agreement is not controlling because the "claims fall outside [its] scope." *Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 918 (2001); *see, e.g.*, *In re Sling Media Slingbox Advertising Litig.*, 202 F. Supp. 3d 352, 358 (S.D.N.Y. 2016) (choice-of-law provision in license agreement did not apply to alleged violations of California's consumer-protection statutes); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1085–86 (C.D. Cal. 2003) (choice-of-law provision in license agreements that was "essentially unrelated" to claims is not applicable).

Because Plaintiffs' claims arise out of alleged "Defects" and "Battery Issues" that are based on "the Devices' **hardware**" (CAC ¶ 9 (emphasis added)), their claims also implicate the devices' hardware warranty (*id.* ¶ 416).  Unlike the iOS Software License Agreement, the hardware warranty "is governed by . . . the laws of the country in which the Apple Product purchase took place."  (Decl. of Christopher Chorba Ex A.)[9]  The non-U.S. Plaintiffs therefore cannot invoke California law and their claims must be dismissed.  *See Continental Airlines, Inc. v. Mundo Travel Corp.*, 412 F. Supp. 2d 1059, 1070 (E.D. Cal. 2006) ("A valid choice-of-law provision selecting another [jurisdiction]'s law is grounds to dismiss a claim [under California law].");  *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-2752-LHK, 2017 WL 3727318, at *52 (N.D. Cal. Aug. 30, 2017) (non-U.S. plaintiffs "cannot assert their California . . . claim as a matter of law" if the applicable provisions did not select California law to govern their claims).

*Third*, California's governmental interests choice-of-law analysis confirms that the non-U.S.

---

[9]  As explained in the accompanying Request for Judicial Notice, Plaintiffs cannot avoid informing the Court of the limitations in the warranty, which is mentioned in CAC ¶ 416.  *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (plaintiffs cannot "surviv[e] a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based"), *superseded by statute on other grounds*, *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006).

Plaintiffs' claims are governed by their respective countries' laws—and not California's.  *Wash. Mut. Bank*, 24 Cal. 4th at 921.[10]   Under the governmental interests approach, the Court must consider whether the other country's laws are "the same or different" from California, and—if different—apply the law of the jurisdiction with the interest that would be "more impaired if its law were not applied." *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81–82, 87 (2010).

As an initial matter, there are obvious and inherent differences between the laws of California and those of the other 40 countries at issue.  Most countries do not even recognize a private right of action to pursue consumer protection- and fraud-based claims in a class setting; to the extent some do, there is countless variation in the elements needed to establish liability and the corresponding available remedies.  *See, e.g.*, *In re Banco Santander Secs.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1335 (S.D. Fla. 2010) (very few countries recognize "'opt-out' class actions akin to that provided by Rule 23"); *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 496 (2008) ("[P]unitive damages overall are higher and more frequent in the United States than they are anywhere else.").  (*See, e.g.*, Ajogqu Decl. ¶¶ 7, 9, 14 [Nigeria]; Akinci Decl. ¶ 6 [Turkey]; Alpa Decl. ¶ 6 [Italy];  Dogauchi Decl. ¶¶ 8–11 [Japan]; Perez Decl. ¶¶ 6, 8 [Peru]; Xiao Decl. ¶¶ 6–7 [China] (explaining each country has its own relevant laws and regulations that govern the claims brought by their residents.)  *Even within the United States*, the differences in state laws are "not trivial or wholly immaterial," as each state "may impose or not impose liability depending on" its own "policy choices."  *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 591 (9th Cir. 2012).

Each country's interest in applying its own laws far outweighs California's "little interest in applying its law to compensate citizens of [other countries]."  *Paulo v. Bepex Corp.*, 792 F.2d 894, 896 (9th Cir. 1986).  "With respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest."  *Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (1980).  Even though the CAC alleges that the representations "emanated from California" and the Devices were "designed, manufactured, and tested in California" (CAC ¶ 284), the place of the alleged wrong remains in each Plaintiff's home jurisdiction—where the representations were allegedly received.  *See*

---

[10]  In an MDL, the transferee court "must apply the law of the transferor forum . . . including the transferor forum's choice-of-law rules."  *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 903 (E.D. La. 2007) (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 524 (1990)).

*Zinn v. Ex-Cell-O Corp.*, 148 Cal. App. 2d 56, 80 n.6 (1957) ("No matter where the intention to misrepresent was formed, nor the acts which were misrepresented took place, no wrong was committed until the misrepresentations were communicated to plaintiffs."); *Taison Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 638 (N.D. Cal. 2015) ("[T]he critical wrong is where the misrepresentation was *received* by the purchaser."). By applying its own laws, each jurisdiction advances its "interest in setting the appropriate level of liability for companies conducting business within its territory." *Mazza*, 666 F.3d at 592. All countries also have a strong interest in "assur[ing] individuals and commercial entities operating within [its] territory" that "the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future." *Id.* at 592–93 (quoting *McCann*, 48 Cal. 4th at 98). The displacement of local law with California law would defeat each country's interest in providing legal uniformity and certainty.

By contrast, California "has no legitimate interest in protecting nonresident[s]." *Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982).[11] Plaintiffs' request is akin to a Korean court demanding that a *California* plaintiff's claim regarding a Samsung smartphone that she *purchased in California* must nonetheless be decided under *South Korean* law (and in a South Korean court), because Samsung designed and marketed the device from South Korea. Of course, no U.S. court would respect such a result, and this Court should dismiss the non-U.S. Plaintiffs' claims. *See Cover v. Windsor Surry Co.*, No. 14-05262-WHO, 2016 WL 520991, at *8 (N.D. Cal. Feb. 10, 2016) (dismissing FAL, UCL, and CLRA claims where choice-of-law analysis demonstrated another jurisdiction's law applied).

### 3. *The California And Federal Laws At Issue Do Not Apply Extraterritorially.*

The Supreme Court has recognized the "longstanding principle of American law that legislation of Congress . . . is meant to apply only within the territorial jurisdiction of the United States," absent "affirmative intention of the Congress clearly expressed." *Morrison*, 561 U.S. at 255 (quotation marks omitted); *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 454 (2007) ("United States law governs domestically but does not rule the world."). This principle "'guards against our courts triggering . . .

---

[11] To the extent Plaintiffs rely on California's interest in regulating Apple's activities in California (CAC ¶¶ 281–84), that interest is already being advanced by the California-based Plaintiffs' claims. *See Mazza*, 666 F.3d at 594 (applying California law to foreign residents' claims is not "necessary to achieve" California's "interest[] . . . in regulating . . . a California corporation").

serious foreign policy consequences, and instead defers such decisions, quite appropriately, to the political branches.'" *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1407 (2018) (quoting *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 124 (2013)); *see also City of Oakland v. BP P.L.C.*, Nos. 17-6011-WHA, 17-6012-WHA, 2018 WL 3109726, at *7 (N.D. Cal. June 25, 2018) (rejecting plaintiffs' efforts to impose liability on defendant corporations' worldwide conduct and "allow plaintiffs to govern conduct and control . . . policy on foreign soil"). As the Court explained, "[w]hen a statute gives no clear indication of an extraterritorial application, it has none." *Morrison*, 561 U.S. at 255. Nowhere in the text of the statute does the CFAA state that Section 1030(a) broadly applies to conduct affecting individuals' devices *outside* America's borders. In fact, nothing in the text (or legislative history) supports application of the CFAA to individuals outside of the U.S. The CFAA claim therefore must be dismissed as to the non-U.S. putative class members.

The presumption against extraterritoriality also bars application of the California law claims to the non-U.S. Plaintiffs. *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011) ("[W]e presume the Legislature did not intend a statute to be 'operative, with respect to occurrences outside the state, . . . unless such intention is clearly expressed or reasonably to be inferred 'from the language of the act or from its purpose, subject matter or history.'" (quoting *Diamond Multimedia Sys., Inc. v. Super. Ct.*, 19 Cal. 4th 1036, 1059 (1999))). For example, the FAL prohibits false or misleading statements made "before the public *in this state*" and "from this state before the public in any *state*." Cal. Bus. & Prof. Code § 17500 (emphasis added). Nothing in the text or legislative history evinces any intent to apply the FAL to allegedly false or misleading statements made to residents of any *foreign country*.[12]

---

[12] The Due Process Clause of the U.S. Constitution limits the ability of a state to regulate conduct occurring outside of its borders. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 572 (1996) ("principles of state sovereignty and comity," rooted in the Due Process and Commerce Clauses, mandate that a State "may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' lawful conduct in other States"); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003) ("Laws have no force of themselves beyond the jurisdiction of the State which enacts them." (citation omitted)). These constitutional limitations apply with special force where, as here, *foreign* commerce is at issue. *See Japan Line, Ltd. v. County of L.A.*, 441 U.S. 434, 448 (1979) (noting that foreign commerce is particularly an area of federal—not state—concern); *Nat'l Foreign Trade Council v. Natsios*, 181 F.3d 38, 67 (1st Cir. 1999) (a state may not regulate commerce that occurs "outside of this country's borders").

Gibson, Dunn &
Crutcher LLP

### 4.   *The Court Should Dismiss Non-U.S. Plaintiffs Where There Is No Named Representative From Their Country.*

The Court should dismiss efforts to pursue claims on behalf of non-U.S. consumers that are not included among the named Plaintiffs.  The CAC includes named Plaintiffs from only *14* of the 40 countries at issue.  Plaintiffs plead nothing about any of the consumers from the other 26 countries and do not even meet the minimal pleading requirements of Rule 8(a)(2) as to those countries for which there is no named representative; they do not give "fair notice of what the claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555.

## B.   The Court Should Dismiss All Claims Arising Under U.K. Law (Counts 17-18)

Finally, Plaintiffs purport to bring two claims on behalf of a U.K. subclass "of individuals who purchased Apple Devices in the United Kingdom"—a purported claim for Violation of the Consumer Protection from Unfair Trading Regulations 2008 (2008 No. 1277) (Count 17) and a claim for Violation of the Consumer Rights Act 2015 (2015 C. 15) (Count 18).  (CAC ¶¶ 457, 633-662.)  But a U.S. court is not the proper forum to adjudicate U.K. claims, and this Court should dismiss Counts 17-18.

### 1.   *International Comity Compels Dismissal Of The U.K. Claims.*

The international comity doctrine disfavors an attempt by a federal court to adjudicate claims brought under foreign law.  The Supreme Court has cited the importance of deferring to foreign procedures and remedies, because "the regulation of other countries often differs from ours as to what constitutes fraud, what disclosures must be made, what damages are recoverable, what discovery is available in litigation, what individual actions may be joined in a single suit, what attorney's fees are recoverable, and many other matters."  *Morrison*, 561 U.S. at 269.

Dismissal of the U.K. law claims is particularly appropriate here, because those laws are relatively new and there is not a substantial body of case law concerning them—especially not case law applying these laws to the novel facts and legal theories in this case.  (Decl. of Jonathan Kirk Q.C. ¶ 14 [U.K.].)  *See In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-1775, 2008 WL 5958061, at *31 (E.D.N.Y. Sept. 26, 2008) (applying comity doctrine "where the adjudication of claims involves the application of unsettled foreign law").  Here, the two U.K. laws at issue have not yet been interpreted in an authoritative way by the U.K. courts.  (*See* Kirk Decl. ¶ 14 [U.K.].)  Further, both require an analysis of E.U. legal principles, which are "different to traditional common law analysis

1    and sometimes surprising in their result." (*Id.* ¶ 13.)  If it allowed these claims to proceed, "[t]his

2    [C]ourt would be forced to fly blind on these unsettled issues," and with no "mechanism by which to

3    obtain an opinion from [the highest court in the U.K.] on an unresolved issue." *Air Cargo*, 2008 WL

4    5958061, at *33; *see*, *e.g.*, *In re Alstom SA Secs. Litig.*, No. 03-6595, 2010 WL 3718863, at *3

5    (S.D.N.Y. Sept. 14, 2010) (rejecting French law claims that would entail "obtaining evidence abroad

6    potentially under a different set of rules, and deciding the merits of this aspect of the case under an

7    entirely different, complex, and foreign code").  Adjudicating these claims here would undermine the

8    U.K.'s interest in developing its own consumer protection laws.  *See* (Kirk Decl. ¶ 14(a)(iv) [U.K.].)

9    "[I]t is 'far better that the case be tried in [a foreign country] by one or more jurists as familiar with

10   [foreign] law as we are unfamiliar with it.'" *Ford v. Brown*, 319 F.3d 1302, 1307 (11th Cir. 2003)

11   (citation omitted); *Morrison*, 561 U.S. at 270 (noting "some fear [the U.S.] has become the Shangri-La

12   of class-action litigation for lawyers representing those allegedly cheated in foreign [] markets").

13                  **2.      *A U.S. Court Is Not The Most Convenient Forum For Adjudicating U.K. Claims.***

14          For many of the same reasons, this Court should exercise its discretion to dismiss the claims

15   brought on behalf of the purported U.K. subclass on *forum non conveniens* grounds.  A court may

16   dismiss claims on this basis if there is "an adequate alternative forum, and . . . the balance of private

17   and public interest factors favors dismissal." *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583

18   F.3d 656, 664 (9th Cir. 2009) (citation omitted).  All of these factors favor dismissal of the U.K. claims:

19          *First*, there is no serious question that the United Kingdom provides an adequate alternative

20   forum.  An "alternative forum is deemed adequate if (1) the defendant is amenable to process there;

21   and (2) the other jurisdiction offers a satisfactory remedy." *Ranza v. Nike*, 793 F.3d 1059, 1077 (9th

22   Cir. 2015).  As the Ninth Circuit has explained, "a forum will be inadequate only where the remedy

23   provided is so clearly inadequate or unsatisfactory, that it is no remedy at all." *Id.* (punctuation

24   omitted); *see Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir. 1991) (lack

25   of pretrial discovery and jury trials, absence of appellate review, and possibility in change in law or

26   less favorable remedy do not render forum inadequate).  Because the named Plaintiff purporting to

27   represent the U.K. subclass—Kushagra Sharma—is a resident and citizen of the U.K. (CAC ¶ 271), his

28   choice of forum is entitled to less weight than is ordinarily afforded to a plaintiff.  *See Piper Aircraft*

1   *Co. v. Reyno*, 454 U.S. 235, 256 (1981) ("[A] foreign plaintiff's choice deserves less deference.");

2   *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001).[13]   And U.S. courts have repeatedly

3   found that the U.K. provides an adequate alternative forum to litigation in the United States.  *E.g.,*

4   *Warn v. M/Y Maridome*, 169 F.3d 625, 629 (9th Cir. 1999).  Nor does Apple contest that it or one of

5   its subsidiaries is subject to service of process in the U.K.

6       *Second*, "the balance of private and public interest factors favors dismissal" of the U.K. claims.

7   *Loya*, 583 F.3d at 664.  As to the public interest factors, the same considerations discussed above—the

8   cost and complexities of asking this Court to apply relatively new U.K. law in which there is not a

9   substantial body of case law available to entirely novel legal theories, the burden on the court and juries

10   in adjudicating U.K. law claims, and the impact on the speed and efficiency of the U.S. Plaintiffs'

11   claims—strongly support dismissal.  *See Lueck*, 236 F.3d at 1147 ("Public interest" factors include

12   "(1) local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts

13   and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum.").

14       While these factors alone are sufficient to dismiss the U.K. claims, the private interest factors

15   also support this conclusion.  Those factors include "(1) the residence of the parties and witnesses;

16   (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof;

17   (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial;

18   (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case

19   easy, expeditious and inexpensive."  *Id.* at 1146 (quotation marks omitted).  Mr. Sharma seeks to

20   represent a class of individuals who purchased Apple devices in the U.K. (CAC ¶ 457), meaning that

21   the U.K. subclass consists of U.K. residents.  Although certain evidence relevant to Plaintiffs' claims

22   may be available in California, the fact that the named Plaintiff and the overwhelming majority of

23   purported subclass members likely reside in the U.K. strongly favor dismissal.  There is little reason to

---

13   This is all the more true because the Plaintiff is proceeding in a representative capacity.  *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (noting, in the related context of transfer under 28 U.S.C. § 1404(a), that "when an individual . . . represents a class, the named plaintiff's choice of forum is given less weight"); *Air Cargo*, 2008 WL 5958061, at *25 ("As the EU plaintiffs asserting foreign law claims are mostly foreign and have chosen a United States forum, their choice of forum deserves comparatively less deference."); *DeYoung v. Beddome*, 707 F. Supp. 132, 138 (S.D.N.Y. 1989) ("[A] plaintiff's choice of forum weighs far less heavily" where she has "only a small direct interest in a large controversy in which there are many potential plaintiffs").

think that the U.S. is a more "convenient" forum for the absent class members whose claims are being usurped and asserted in a foreign forum, almost certainly without their knowledge.

## C.     Plaintiffs' California And Federal Claims (Counts 1–6) Fail As A Matter Of Law

The Court also should dismiss the six California and federal "core claims" that Plaintiffs have identified as their strongest:  (1) the CAC never alleges that anything Apple said was untrue—including its promises in the warranty; (2) Plaintiffs fail to identify any required disclosure Apple failed to make, and Apple had no duty to disclose that batteries cannot deliver peak performance forever; (3) Plaintiffs' theory that Apple was legally prohibited (under a "trespass to chattels" and/or computer abuse theory) from offering its users software updates for them to download also fails as a matter of law.

### 1.     *Plaintiffs Fail To Plead An Affirmative Misrepresentation (Counts 2–4).*

Counts 2–4 challenge purported "representations and omissions" Apple made concerning its devices and software.  (*E.g.*, CAC ¶¶ 487–88, 504, 519.)  Although each count recites a different statute, the underlying conduct and theories of liability are the same—and must be dismissed for the same reasons.  *See*, *e.g.*, *Rice*, 2013 WL 146270, at *8–10 (UCL and FAL claims "premised upon the same representations" as CLRA claim fail for the same reasons); *Williams*, 851 F.3d at 1019, 1028 (same).  The CAC does not allege claims under any of these consumer protection statutes based on a misrepresentation theory, for the basic reason that Plaintiffs do not allege that anything Apple said was false or deceptive, or that they actually saw (much less relied on) any alleged misstatements:

*First*, although the CAC quotes numerous statements by Apple concerning its devices and operating system, it never alleges that any of these representations was false or deceptive.  The statements are either entirely true representations about particular hardware or software features, or general statements that Apple's products are of high quality.  (*See generally* CAC ¶¶ 287–369.)

To the extent Plaintiffs allege that "Apple sought to convey" a "marketing message" that its devices were "faster," with "longer battery life, more Features" and "thinner and lighter physical boundaries" (*e.g.*, CAC ¶ 290), this message is not actionable.  Representations to the effect that a product "would operate at or above the industry standard or performance" are "non-actionable" statements.  *Williams v. Yamaha Motor Corp.*, No. 13-05066, 2015 WL 13626022, at *9 (C.D. Cal. Jan. 7, 2015); *see*, *e.g.*, *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008)

(claims about "'higher performance,' 'longer battery life,' 'richer multimedia experience,' [and] 'faster access to data' are all non-actionable"), *aff'd*, 322 F. App'x 489, 493 (9th Cir. 2009); *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1133 (N.D. Cal. 2013) ("generalized advertisements that a computer is 'ultra-reliable' or 'packed with power' say nothing about the specific characteristics or components of the computer" and are thus "non-actionable").  Likewise, Apple's statements touting the power of the devices' processors—e.g., that iPhone 7 used the "A10 Fusion chip," "the most powerful chip ever in a smartphone" (CAC ¶ 317)—are not actionable because there is no allegation the devices did not actually contain those processors. *See Bros. v. Hewlett-Packard Co.*, No. 06-02254-RMW, 2006 WL 3093685, at *5 (N.D. Cal. Oct. 31, 2006).  Statements that a new version has various "improvements" are similarly "not actionable."  *A.H. Lundberg Assocs., Inc. v. TSI, Inc.*, No. 14-1160, 2014 WL 5365514, at *6 (W.D. Wash. Oct. 21, 2014); *Inter-Mark USA, Inc. v. Intuit, Inc.*, No. 07-04178-JCS, 2008 WL 552482, at *10 (N.D. Cal. Feb. 27, 2008) (statements "touting the 'improvements' and 'enhancements' in Intuit's Software without making any verifiable factual representations" are not actionable).

Even assuming that these statements were actionable, Plaintiffs have not alleged that they were false or misleading—i.e., "that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).  Plaintiffs must allege more than the "conclu[sion] that the public would likely be deceived;" they must plead "facts showing the basis for that conclusion." *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1275 (2006).  They have not.

As the Ninth Circuit held in another case in which plaintiffs claimed that iOS performed below their expectations, citing representations in "Apple's general advertising campaign is insufficient to show that Apple fraudulently misled Plaintiffs into believing [iOS] would perform consistently." *iPhone 4s Consumer Litig.*, 637 F. App'x 414, 415–16 (9th Cir. 2016) ("Plaintiffs fail to define what level of consistency they expected from these representations and how often [iOS] actually performed as requested.  Plaintiffs also do not allege that [iOS] never worked, just that [iOS] did not work as consistently as they expected.  Failure to meet Plaintiffs' undefined expectations of consistency does not render Apple's representations misleading."); *see also McKinney v. Google, Inc.*, No. 10-01177-

EJD, 2011 WL 3862120, at *5 (N.D. Cal. Aug. 30, 2011) ("[Plaintiff] fails to specifically identify any representation by Google or HTC that mentions 3G connectivity, much less one that the Nexus One would maintain consistent 3G connectivity.").

Here, as in *McKinney*, Plaintiffs do not identify any representation that phones would never unexpectedly shut down or that they would always work at maximum speed, regardless of hardware state or performance.  As another court in this District held, Apple did not "represent or promise that the [device] would operate without interruption in the specific environmental conditions under which it allegedly tended to shut down."  *Baltazar v. Apple Inc.*, No. 10-03231-WHA, 2011 WL 6747884, at *4 (N.D. Cal. Dec. 22, 2011).  While the CAC states that Apple "emphasized battery power designed to keep pace with ever improving processor 'chips'" (CAC ¶ 288), it is not even clear what this means—or where Apple promised it.[14]  Phone design entails balancing many factors:  Providing more software features also introduces complexity and can reduce speed, and increasing features or speed may adversely impact hardware size and lifespan.  (*See id.* ¶¶ 348, 371, 373, 385.)  Apple's statement that its new software and hardware were "improvements," considering these trade-offs, is not an actionable misrepresentation.  *See Missaghi v. Apple Inc.*, No. 13-2003, 2013 WL 12200086, at *6 (C.D. Cal. Nov. 1, 2013) ("there were no representations that the product would not experience malfunctions with the passage of time, and Apple's simple statements regarding the build quality of its products … does not change this fact").

To the extent Plaintiffs plead *any* concrete statements of fact, they do not assert that they were false.  For example, the CAC alleges that an Apple employee stated that iOS 9 could provide up to one hour of additional time before the customer needed to charge the battery and that its "low power mode" feature could extend battery life by up to an additional three hours.  (CAC ¶ 355.)  And the CAC alleges that the iPhone "battery is designed to retain up to 80% of its original capacity at 500 complete charge

---

[14]  Plaintiffs admit that statements about batteries' lifespan "say[] nothing about the rate at which they are able to deliver power."  (CAC ¶ 383.)  Plaintiffs cannot plead their way into a cause of action by claiming that they misread Apple's statements as addressing an entirely different subject.  *See Rubenstein*, 14 Cal. App. 5th at 876 ("As a matter of law, Gap's use of its own brand name labels on clothing that it manufactures and sells at Gap-owned stores is not deceptive, regardless of the quality of the merchandise or whether it was ever for sale at other Gap-owned stores.").

Gibson, Dunn &
Crutcher LLP

cycles." (*Id.* ¶¶ 382, 416.)[15]  There is no allegation that these statements were false (nor can Plaintiffs make such an allegation in good faith).  As this Court concluded in dismissing another fraud case grounded on "general descriptions about the iPhone's attributes," Plaintiffs "fail to particularly explain what is false or misleading about the statements," none of which promise that the battery will deliver optimal performance for the life of the phone.  *Yastrab*, 173 F. Supp. 3d at 979; *see also Tomek v. Apple Inc.*, No. 11-02700, 2012 WL 2857035, at *4 (E.D. Cal. July 11, 2012) (no allegation that Apple's description of a MacBook as "up to twice as fast as the previous generation" was false).[16]

Because "[P]laintiffs do not allege that Apple made any representations that" the iPhone battery would "be capable of meeting the processor's peak power demands for years to come," "even as the battery ages and loses performance" (CAC ¶ 393), Plaintiffs are requesting a "benefit that was not part of the bargain to begin with."  *Birdsong v. Apple Inc.*, 590 F.3d 955, 961 (9th Cir. 2009).  Their consumer protection claims thus fail at the pleading stage.  *Id.*

<u>Second</u>, the CAC contains no allegation that *any* Plaintiff even *read* any Apple statement, much less a non-conclusory allegation that a Plaintiff *relied on* the representation in making a purchase.  To satisfy Rule 9(b), a plaintiff needs to "specify which sales material he relied upon in making his decision to buy" the product, including "when he was exposed to them," "which ones he found material," "who made th[e] statement[s]," and "when [they were] made."  *Kearns*, 567 F.3d at 1126.  Even where "Plaintiffs meticulously describe the allegedly misleading advertisements," they must "allege that they saw, read, or in any way relied on the advertisements" and "allege that they entered into the transaction *as a result* of those advertisements."  *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d

---

[15] The CAC states that "benchmark tests run by iPhone 6 users following the iOS 10.2.1 update revealed a processor speed of 600MHz; *less than half as fast as Apple advertises*." (CAC ¶ 413.) But the cited source (which the Court may consider, *see Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 977 (N.D. Cal. 2016)) actually says only that *one* user experienced a CPU frequency of 600MHz, compared to its "factory setting" of 1400MHz (CAC ¶ 413 n.58).  The CAC cites no advertisements promising 1.4GHz speed, much less that speed at all times, under all conditions.

[16] Nor can Apple's subsequent statements about the performance management feature (CAC ¶¶ 11, 20) retroactively render Apple's earlier statements false.  A "plaintiff must set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading *when made*. . . . The fact that an allegedly fraudulent statement and a later statement are *different* does not necessarily amount to an explanation as to why the earlier statement was false." *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994), *superseded by statute on other grounds by* 15 U.S.C. § 78u-4(b)(2).

Gibson, Dunn &
Crutcher LLP

1181, 1194 (S.D. Cal. 2005); *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1018 (N.D. Cal. 2013) (granting summary judgment since "*none* of the Plaintiffs presents evidence that he or she even saw, let alone read and relied upon, the alleged misrepresentations").  The CAC alleges none of this.

The only allegations in the CAC concerning any particular Plaintiff are: (1) which device the Plaintiff purchased, and sometimes when (but not from whom); and (2) the following copy-and-pasted, conclusory statement:

> Prior to [his/her] purchase of the Device[s], [s]he did not know, nor could [s]he have known through reasonable diligence, of the Battery Issues and Defects in [his/her] Device[s].  At time of initial purchase, the Device[s] operated [on their factory-installed iOS version / specified versions].

> Not only did [Plaintiff]'s Device[s] not operate as Apple warranted and promised initially, but Apple never represented or warranted that any of the future iOS updates would cause the way [Plaintiff]'s Device[s] operated to fundamentally change. [Plaintiff]'s Devices, particularly after installation of subsequent iOS versions, did not operate as promised in Apple's advertisements, representations, and the information publicly available in the marketplace.  Additionally, none of the packaging in which the Device[s] [was/were] sold to [Plaintiff] revealed that there were any Defects, Battery Issues, or that Apple would use the Updates to "smooth," "throttle," or otherwise regulate the battery power and speed pursuant to which [Plaintiff]'s Devices would operate.  Accordingly, not only [was/were] [Plaintiff]'s Devices defective at the point of [sale/lease] due to their Battery Issues and Design Defects, but Apple exacerbated the problems with [Plaintiff]'s Devices via its misrepresentations and omissions with the iOS software Updates.  As a result of Apple's actions, [Plaintiff] did not receive the benefit of [his/her] bargain and was injured as a result.  If [Plaintiff] had been told of these Defects, Battery Issues, and the deceptive manner in which Apple would damage the Device after sale, [Plaintiff] would not have [purchased/leased] the Device, or would have paid substantially less for it.

(CAC ¶¶ 29–272.)   Absent is any allegation that Plaintiffs viewed or relied upon *any* particular representation.

Because "Plaintiffs fail to allege that they actually saw the particular advertisements the [CAC] identifies," much less based their purchasing decisions on those advertisements, Counts 2–4  must be dismissed.  *Gertz v. Toyota Motor Corp.*, No. 10-1089, 2011 WL 13142144, at *4 (C.D. Cal. Apr. 28, 2011); *accord*, *e.g.*, *Doe v. Successfulmatch.com*, No. 13-03376-LHK, 2014 WL 1494347, at *5 (N.D. Cal. Apr. 16, 2014) (dismissing compliant because it "lacks allegations of what, if any, purported misrepresentations the two named Plaintiffs . . . actually read"); *Edmunson v. Procter & Gamble Co.*, No. 10-2256, 2011 WL 1897625, at *5 (S.D. Cal. May 17, 2011) (allegations "that Plaintiff saw Defendant's advertising claims at some point . . . and purchased [the product] in reliance on those

claims" do not suffice).[17]

## 2. *Plaintiffs Also Cannot State Consumer Protection Claims Based On A Supposed Omission Or Any Other Theory (Counts 2–4).*

Plaintiffs also contend that Apple should have disclosed what it labels "Defects and Battery Issues" in the devices.  (*E.g.*, CAC ¶¶ 483, 488, 494, 497, 499, 501, 509, 514, 516–17.)  This theory fails at the pleading stage for multiple reasons:  (1) Plaintiffs never define what Apple should have disclosed in a way that would support an actionable claim under established Ninth Circuit and California precedent; (2) Plaintiffs cannot use this action to require Apple to guarantee performance beyond what it promised in the express warranty; and (3) Plaintiffs fail to plead several essential elements of their omission-based claims.

### a. Apple Had No Duty to Disclose the Relative Progress of Battery Technology.

Plaintiffs' omission theory fails for the fundamental reason that they have not defined what Apple should have disclosed, but did not.  Nor can Plaintiffs articulate a legal theory of duty-to-disclose that has any limits at all.  The CAC appears to argue that Apple had a duty to disclose supposed "Defects and Battery Issues."  But Plaintiffs have not defined those terms in a way that would give rise to a duty to disclose anything beyond what Apple already told customers.  The CAC defines the "Defect(s)" as an alleged "mismatch between the Devices' hardware, including their processing chips and rechargeable lithium-ion batteries, and the ever-increasing demands placed on the Devices via Apple's constantly-updating iOS software platform."  (CAC ¶ 9.)  The "inherent defects" about which Plaintiffs complain are alleged "inadequate planning":  "fail[ure] to plan for the power requirements of its Devices during the normal life of the battery."  (*Id.* ¶¶ 370–71.)  As Plaintiffs explain in defining the term "Battery Issues," the alleged problem that Apple supposedly was duty-bound to disclose is the fact that, as software gains more capabilities and additional features, it puts more demands on hardware.

---

[17]  Plaintiffs also cannot escape dismissal by arguing that Apple conducted a "multiple year, consistent marketing plan."  (CAC ¶ 288.)  For starters, they do not allege any actual misstatement at all, as explained above.  But setting aside this basic deficiency, "[e]ven when members of a putative class are exposed to a long term and/or widespread advertising campaign, named plaintiffs must, under Rule 9(b), plead separately and with particularity their individual exposure to the purportedly deceptive advertising campaign so as to put defendant on notice 'what' the alleged misrepresentations were."  *NJOY*, 2014 WL 12586074, at *10 (collecting cases).  And such a campaign "does not, and indeed could not, supplant a federal plaintiff's obligation to describe that campaign with the particularity prescribed by Rule 9(b), which description must include what is false or misleading about the advertising and why it is false."  *Yastrab*, 173 F. Supp. 3d at 980.

23

1    (*See id.* ¶ 13 ("As new and more demanding iOS updates are added, users experience even slower

2    performance as the processor originally provided with the Devices struggle—not only due to their own

3    limitations—but the limitations of the batteries to provide enough power current to keep pace with the

4    new demands (the 'Battery Issues').)"); *accord id.* ¶ 346 ("As further detailed above, it was Apple's

5    constant release of these updates, each with new Features and requiring a further draw on the batteries

6    and processor chips of the Devices to run that contributed to the Defects."); *id.* ¶ 385 ("Apple's battery

7    designs were also inadequate because they could not handle the power demands of the software").)

8        Despite the CAC's "labels and conclusions," *Twombly*, 550 U.S. at 555, this is not a "defect."

9    Apple forthrightly discloses in its warranty that batteries are "consumable parts" that may "diminish

10   over time" (Chorba Decl. Ex. A at 2), and Apple advised customers of the performance management

11   feature that addressed issues that resulted from that fact (CAC ¶ 401).  Plaintiffs cannot articulate a

12   legal theory under which Apple needed to disclose more—at least no theory that would not run afoul

13   of the Ninth Circuit's concern about making "product defect litigation . . . as widespread as

14   manufacturing itself."  *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (citation

15   omitted).  Under established Ninth Circuit precedent, it is not enough to "allege that information about

16   [device performance], had it been disclosed, would have been material to" Plaintiffs' use and

17   enjoyment of their devices. *Hall v. Sea World Entm't, Inc.*, No. 15-660, 2015 WL 9659911, at *7 (S.D.

18   Cal. Dec. 23, 2015).  That is why the law cabins the duty to disclose to unreasonable safety hazards.

19   *See, e.g.*, *Wilson*, 668 F.3d at 1141.  This longstanding rule of California law, as stated in *Wilson*, is

20   supported by the "overwhelming" "weight of authority," as well as "sound policy." *Dana v. Hershey

21   Co.*, 180 F. Supp. 3d 652, 659, 664 (N.D. Cal. 2016).  Yet no allegation of a "safety" issue appears in

22   the CAC.  And reduced phone performance is not a safety issue, much less an "unreasonable safety

23   hazard," as a matter of law.  Because the CAC fails to allege an unreasonable safety hazard, it does not

24   state any omission-based claim.[18]

---

25   [18]   In just the last five years, at least three courts in this Circuit have rejected attempts to base claims
26   against Apple on this ground:  For example, one court dismissed a claim that an inoperable iPhone
     power button presented a safety issue, *Missaghi*, 2013 WL 12200086, at *4–5; another rejected the
27   argument "that Apple had a duty to disclose the iPad's functional limitations," *Baltazar v. Apple
     Inc.*, No. 10-3231-JF, 2011 WL 3795013, at *5 (N.D. Cal. Aug. 26, 2011); and a third held that
28   "Apple's failure to disclose the details of how the iPhone 5 switched off its Wi-Fi capability to

Plaintiffs' contention that Apple was required to disclose that performance degradation could "occur earlier in a [phone]'s lifetime than a consumer would otherwise expect" is thus doubly wrong. *Williams*, 851 F.3d at 1028–29.  Apple informed customers that batteries are consumable (*supra* n. 1), which already goes well beyond what the law requires.  In *Williams*, the Ninth Circuit held that an alleged defect that "*accelerates* the normal and expected process of corrosion" in the motor of a vehicle is not actionable.  *Id.* at 1028 (emphasis changed).  Accordingly, Plaintiffs' allegation that Apple did not design its batteries to somehow *neutralize* the normal chemical process of battery degradation also is not actionable.  As another district court explained, "[p]erfection, or an unlimited life span, is not attainable; nor can a plaintiff convert that impossible standard into a cause of action by alleging that the manufacturer should have warned consumers that this is so. . . .  [D]esign tradeoffs are inevitable." *Mickens v. Ford Motor Co.*, No. 10-5842, 2015 WL 5310755, at *8 (D.N.J. Sept. 10, 2015).  The fact that batteries are consumable "is not actionable, and if the [batteries] outlasted their sales warranty even by a day . . . , there would be nothing rising to the level of a design flaw for Defendants to warn of." *Tatum v. Chrysler Grp. LLC.*, No. 10-4269, 2011 WL 1253847, at *3 (D.N.J. Mar. 28, 2011).  As explained in the next section, that is the case here.

### b.   Plaintiffs Cannot Use California Consumer Protection Laws To Require Apple To Guarantee Performance Beyond The Warranted Period.

Plaintiffs cannot use consumer protection law to avoid the explicit limitations in their hardware warranties.  The CAC acknowledges that Apple provides a "one-year warranty" for its devices and states that the "battery is designed to retain up to 80% of its original capacity at 500 charge cycles." (CAC ¶ 416; *see* Chorba Decl. Ex. A.)  Yet Plaintiffs do not allege that *any* battery failed to hit this target.  Because "[a]ll of plaintiffs' [iPhones] functioned as represented throughout their warranty periods," *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 834 (2006), Plaintiffs have no claim.  Because "[a]ll parts will wear out sooner or later and thus have a limited effective life," there is no cause of action for a product failure outside the warranty term.  *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986).  Plaintiffs cannot use a supposed duty to disclose as an end-run around the express limitations contained in the hardware warranty.  "[T]o broaden the duty to disclose

---

improve battery life" is not actionable, *Palmer v. Apple Inc.*, No. 15-05808-RMW, 2016 WL 1535087, at *5-7 (N.D. Cal. Apr. 15, 2016).

DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:18-MD-02827-EJD

Gibson, Dunn &
Crutcher LLP

beyond safety concerns would eliminate term limits on warranties, effectively making them perpetual or at least for the useful life of the product." *Wilson*, 668 F.3d at 1141 (quotation marks omitted).

Eliminating the limits on Apple's warranty is precisely what Plaintiffs are attempting to do here. They allege that a "battery and processor must be designed such that even as the battery ages and loses performance, it will still be capable of meeting the processor's peak power demands for years to come" (CAC ¶ 393),[19] and they complain that Apple's batteries did not achieve this aspiration. (*Id.* ¶ 397 ("[T]he battery was not designed with enough power to meet the peak demands of the phone's processor as the battery aged.").) Yet Plaintiffs admit that Apple warrants only specific performance from the batteries (*id.* ¶¶ 383, 416); it does not, and cannot, promise that batteries—no matter how degraded from however much use in whatever conditions (*id.* ¶¶ 380–81, 392)—"will still be capable of meeting the processor's peak power demands for years to come" (*id.* ¶ 393). As Plaintiffs explain:

- A "lithium-ion battery's capacity is ***degraded over time by discharge/recharge cycles, elevated temperatures, and aging***," factors which vary substantially across users;

- "[i]t is ***well known*** to smartphone manufacturers, including Apple, that ***lithium-ion batteries degrade over time as the number of discharge/recharge cycles increases***";

- "the impedance of lithium-ion batteries used in iPhones increases as the cells age, resulting in both a reduction in overall battery capacity and a ***reduction in the battery's ability to produce peak power output***"; and

- "[a]s the[] processing units become faster and more powerful, however, ***they also require more power from the phone's battery***," potentially resulting in the phone "switch[ing] off" if the battery "is unable to deliver the peak power demanded."

(*Id.* ¶¶ 380–81, 391–92, 396 (emphases added).) These allegations—that it is "well known" that batteries inevitably "degrade over time," reducing their ability to support the power demands of faster processors—defeat Plaintiffs' claims and demonstrate why Apple *cannot* guarantee any particular, perpetual level of performance.

Apple cannot be held liable for what it did not and could not warrant:

> There is no authority that provides that the mere sale of a consumer electronics product in California can create a duty to disclose any defect that may occur during the useful

---

[19]   (*Accord, e.g.*, CAC ¶¶ 394 ("Electronics manufacturers like Apple . . . must design batteries to be more powerful than they need to be so that as they grow weaker, they still have the ability to meet the processor's peak power demands."), 396 ("the battery should be capable of meeting" demands for "peak power" "for the lifetime of the smart-phone").)

> life of the product.  In fact, the California Supreme [C]ourt has stated the general public policy that a consumer can be "fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will."

*Hoey*, 515 F. Supp. 2d at 1105 (quoting *Seely v. White Motor Co.*, 63 Cal. 2d 9, 18 (1965)) (dismissing claims that a notebook computer failed too quickly).  "Opening the door to plaintiffs' new theory of liability would" upend "product liability law in California" by making "[f]ailure of a product to last forever" into "a 'defect.'"  *Daugherty*, 144 Cal. App. 4th at 829.  California law closes that door.

### c.     The CAC Does Not Adequately Allege Several Essential Elements Of The Consumer Protection Claims.

The foregoing grounds provide ample basis for dismissing Plaintiffs' omission-based UCL, FAL, and CLRA claims, but the CAC also fails to plead several other essential elements of these laws.

*First*, Plaintiffs' omission theory also fails for many of the same reasons as their affirmative misrepresentation theory.  For example, "whether based on an affirmative misrepresentation or a material omission," Plaintiffs must (but have not) plead with particularity materiality, reliance, and Apple's knowledge.  *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1083 (N.D. Cal. 2017).

*Second*, Plaintiffs fail to allege any material facts of which Apple should have made them aware and fail to explain how they would have behaved differently had Apple done so.[20]  There are "two 'sub-elements' a plaintiff must prove to show an omission was a substantial factor in a purchasing decision: awareness; and a change in behavior."  *Id.*

The CAC does not allege "awareness," including a "method" by which Plaintiffs would have been made aware of the supposedly required disclosure.  *McVicar v. Goodman Glob., Inc.*, No. 13-1223, 2015 WL 4945730, at *11 (C.D. Cal. Aug. 20, 2015).  Nor do Plaintiffs allege (let alone with particularity) a "change in behavior"—how, if Apple had disclosed the information, they would not have purchased their iPhones (or downloaded the iOS Updates).  While the CAC incants for each of the 122 Plaintiffs the same copied averment—"If [Plaintiff] had been told of these Defects, Battery Issues, and the deceptive manner in which Apple would damage the Device after sale, [Plaintiff] would not have purchased the Device, or would have paid substantially less for it" (CAC ¶¶ 29–272)—the

---

[20]  To the extent Plaintiffs rely on the notion that Apple made partial representations that were misleading, these arguments fail for the reasons discussed in the affirmative misrepresentation section, including that "Plaintiffs do not allege that they relied on those statements" and any statements were not "misleading absent a disclosure."  *Sud*, 229 F. Supp. 3d at 1087.

1   Court must ignore "[t]his conclusory allegation" asserting what Plaintiffs "would have" done had they

2   "been aware" of the allegedly omitted information.  *Phillips v. Apple Inc.*, No. 15-04879-LHK, 2016

3   WL 1579693, at *8 (N.D. Cal. Apr. 19, 2016).  "Such conclusory allegations fail to allege what

4   Plaintiffs saw, heard and relied upon in making their purchases . . . and are insufficient as a matter of

5   law." *Brownfield v. Bayer Corp.*, No. 09-00444, 2009 WL 1953035, at *4 (E.D. Cal. July 6, 2009).

6   Because "plaintiffs fail to allege with particularity" the statements "that omitted information," the

7   statements they viewed, and how the omitted information would have changed their decisions, their

8   "claims based on fraudulent omissions fail to satisfy Rule 9(b) and must be dismissed." *In re NJOY,*

9   *Inc. Class Action Litig.*, No. 14-00428, 2014 WL 12586074, at *13 (C.D. Cal. Oct. 20, 2014).

10          Beyond legal conclusions, the CAC contains no factual allegations showing that disclosure of

11   any additional information would have changed Plaintiffs' behavior.  "[V]iewed in context," *Maxwell*

12   *v. Unilever United States, Inc.*, No. 12-1736-EJD, 2018 WL 1536761, at *4 (N.D. Cal. Mar. 29, 2018),

13   disclosure would not have caused Plaintiffs to buy a different phone; the limitations of lithium-ion

14   batteries affect *all* phones with these batteries.  (*See*, *e.g.*, CAC ¶ 381 ("It is *well known* to smartphone

15   manufacturers, including Apple, that lithium-ion batteries degrade over time as the number of

16   discharge/recharge cycles increases.") (emphasis added).)  Nor are there allegations that disclosure of

17   the performance management feature would have changed Plaintiffs' purchase decision.  Rather, the

18   only reasonable inference from the CAC's allegations is that Plaintiffs would have purchased the

19   phones whether these effects were disclosed or not, for a number of reasons—including because the

20   feature operates only in certain conditions when the phone is at risk of a far worse fate than slightly

21   slower performance, namely an unexpected shutdown.  Plaintiffs admit that the performance

22   management feature reduced and even eliminated this problem.  (*See* CAC ¶ 403 (explaining that,

23   "after the update, the processors in Apple's Devices would demand less power during peak operation.

24   This diminished requirement for peak power would reduce and eliminate instances where the processor

25   would outpace its battery, meaning that even in their weakened condition, the older batteries could

26   supply enough peak power to meet the now reduced demands of the processors" and thus "this 'fix'

27   would prevent outright shutdowns"); *id.* ¶ 21 (deactivating the feature would "subject[] the Device to

28   increased risk of unexpected shutdowns").)  And performance management is merely "one component"

1    of the device; Plaintiffs have not alleged, consistent with "common sense," how the feature would have

2    changed their purchasing decisions.  *Park-Kim*, 2017 WL 373439, at *6 n.3 (citation omitted).

3          *Third*, Plaintiffs also have failed to plead that a reasonable customer would be misled by any

4    alleged omission.  To assert these claims, Plaintiffs must "show that members of the public are likely

5    to be deceived . . . ."  *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1032 (N.D. Cal. 2014); *accord*

6    *Rice*, 2013 WL 146270, at *8, *10.  Dismissal is proper "when the facts alleged fail as a matter of law

7    to show" that the statement is "likely to deceive a reasonable consumer."  *Rubenstein v. The Gap, Inc.*,

8    14 Cal. App. 5th 870, 877 (2017); *accord Maxwell*, 2018 WL 1536761, at *5-6.

9          Here, Plaintiffs "allege no *facts* showing that reasonable consumers" were likely to be deceived

10   by any alleged omissions concerning the progress of battery technology or the effects of the

11   performance management feature.  *Rubenstein*, 14 Cal. App. 5th at 878; *see Pelayo v. Nestle USA, Inc.*,

12   989 F. Supp. 2d 973, 977–78 (C.D. Cal. 2013) (no allegation reasonable customer would have been

13   deceived by "All Natural" label without "an objective or plausible definition" of that statement); *In re*

14   *iPhone 4s Consumer Litig.*, 637 F. App'x at 416 (upholding dismissal because court "could not

15   determine if a reasonable consumer would be misled" by representations concerning iOS).

16         As the CAC explains, it is "well known" that battery performance declines over time.  (CAC

17   ¶¶ 380–81, 392.)  Apple's products are not an exception to this general rule; nor are they required to

18   be.  The performance management feature applies only in certain circumstances, mostly on phones

19   operating outside of their one-year warranty.  (*See id.* ¶¶ 396-97, 403, 416.)  No reasonable person

20   expects to buy a phone and enjoy fresh-from-the-factory battery performance for innumerable years.

21   (*See id.* ¶¶ 380–81, 392.)  Nor would a reasonable customer have believed that a new operating system,

22   with additional features and security enhancements, would inevitably increase the speed of the

23   unchanged hardware on which it was installed.  Indeed, Plaintiffs allege that "each" iOS "update[]"

24   improved on the previous versions, with "new Features and requir[ed] a further draw on the batteries

25   and processor chips of the Devices."  (*Id.* ¶ 346; *see also id.* ¶¶ 371 (noting the "power needs of the

26   iOS system"), 385 (noting "the power demands of the [iOS] software").)  "The only expectation buyers

27   could have had about the [iPhone] was that it would function properly for the length of [Apple]'s

28   express warranty, and it did."  *Daugherty*, 144 Cal. App. 4th at 838 (upholding ruling sustaining

1    demurrer of CLRA and UCL claims).  The CAC contains no factual allegations to the contrary, and

2    any such theory would defy "common sense."  *Eclectic Props.*, 751 F.3d at 998.

3         *Fourth*, Plaintiffs also have not alleged Apple's knowledge of fraud under Rule 9(b), as required

4    to plead a "claim relating to alleged omissions."  *Glass v. BMW of N. Am., LLC*, No. 10-5259, 2011

5    WL 6887721, at *8 (D.N.J. Dec. 29, 2011).  The only allegation concerning "who at [Apple] possessed

6    knowledge of the [alleged] defect," *id.*, is a lone December 2016 tweet from Tony Faddell (CAC ¶¶ 3,

7    390), who was not even allegedly an Apple employee at the time—and, in fact, had departed eight

8    years earlier, before any of the iPhone models in issue were released.  *See* Adam Fisher, *Tony Fadell's*

9    *Next Act?  Taking On Silicon Valley—From Paris*, Wired (Oct. 19, 2017), https://www.wired.com/

10   story/tony-fadell-revenge-on-silicon-valley-from-paris.[21]  Nor does the CAC allege "when or how the

11   decision was made to conceal the [alleged] defect from customers."  *Glass*, 2011 WL 6887721, at *8.

12   Instead, it quotes Apple's statements, and makes assertions about the products' functionality.  "This

13   type of pleading is insufficient to meet the requirements of Rule 9(b)."  *Rice*, 2013 WL 146270, at *6.

14        Plaintiffs do not even satisfy the comparatively lower bar of Rule 8(a)(2).  Complaints on an

15   Apple message board (*e.g.*, CAC ¶ 390) do not suffice to meet Plaintiffs' pleading burden.  *See*

16   *Berenblat v. Apple Inc.*, No. 08-4969-JF, 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010).  That is

17   true even though the CAC asserts that Apple must have "obtained" "diagnostic information" based on

18   those complaints (CAC ¶ 391).  *See Wilson*, 668 F.3d at 1147 (manufacturer's access to "data regarding

19   the risk" is insufficient); *Deras v. Volkswagen Group of Am., Inc.*, No. 17-05452-JST, 2018 WL

20   2267448, at *4-5 (N.D. Cal. May 17, 2018) (allegation of "internal monitoring" coupled with customer

21   complaints is insufficient).  Third-party reports (*see, e.g.*, CAC ¶¶ 407-13) do not suffice, either.  *See*

22   *Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 909 (E.D. Cal. 2018) ("Plaintiffs allege

23   no link between" the "consumer affairs website" where complaints were posted "and Electrolux, such

24   that Electrolux would have been aware of the complaints"); *Resnick v. Hyundai Motor Am., Inc.*,

25   No. 16-00593, 2017 WL 1531192, at *15 (C.D. Cal. Apr. 13, 2017) ("[C]omplaints on third-party

26

27   [21]  While the CAC references a patent noting that batteries may swell after extensive use, unbeknownst
     to users (CAC ¶ 14), Plaintiffs do not allege that battery swelling is a "defect"—or related at all to
     the performance management allegations of this case.  And "statements by . . . unidentified

28   employees … do not allow [a court] to infer how [Apple] knew" of the alleged problem.  *E-Shops*
     *Corp. v. U.S. Bank Nat. Ass'n*, 678 F.3d 659, 664 (8th Cir. 2012).

websites do not, by themselves, commute knowledge to a manufacturer."); *Grodzitsky v. Am. Honda Motor Co.*, No. 12-1142, 2013 WL 690822, at *7 (C.D. Cal. Feb. 19, 2013) (such "customer complaints . . . are insufficient to show that Defendant had knowledge of the [alleged] [d]efect at the time of sale.").  Plaintiffs' allegations that Apple "had 'notice' or 'knowledge' of the alleged defect because of 'consumer complaints' or 'demands for repairs,' are of little utility to Plaintiff[s] at the motion to dismiss stage because they provide no facts describing those complaints or demands," *McQueen v. BMW of N. Am., LLC*, No. 12-06674, 2014 WL 656619, at *4 (D.N.J. Feb. 20, 2014), even if they describe the number or rate of complaints as "high," *Munch v. Sears Roebuck & Co.*, No. 06-7023, 2007 WL 2461660, at *3 (N.D. Ill. Aug. 27, 2007).[22]

### 3.   *Plaintiffs Do Not And Cannot State Any Claim For Trespass To Chattels And Violations Of California Or Federal Computer Fraud Statutes (Counts 1, 5, and 6).*

Counts 1, 5, and 6 of the CAC allege that a reality of modern mobile technology—making updates available for users to download—is tortious (and possibly criminal).  According to Plaintiffs, Apple offered free "iOS Updates" containing a performance management feature that would affect device performance, and Plaintiffs chose to download and install these updates.  (CAC ¶¶ 473–79, 522–37.)  Plaintiffs draw the legal conclusion that this constitutes trespass to chattels (Count 6) and violates the CFAA (Count 1) and CDAFA (Count 5).  Plaintiffs' legal theories are incorrect:  Software companies may offer their users updates without liability for trespass and computer abuse.

#### a.   **Customers Installed Updates; Apple Did Not Install Them Without Consent, Authorization, Or Permission.**

Each of these claims requires Plaintiffs to show a lack of consent, authorization, or permission.  *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1064–68 (N.D. Cal. 2012) (CFAA); *Flextronics Int'l, Ltd. v. Parametric Tech. Corp.*, No. 13-00034-PSG, 2014 WL 2213910, at *4 (N.D.

---

[22] Because Plaintiffs have "failed to state a viable claim" under the laws on which they rely—the CLRA, FAL, and CDAFA (*see* CAC ¶¶ 498, 500, 505–09)—"or any other actionable wrongdoing, [they] ha[ve] failed to state a claim under the 'unlawful' prong of the UCL." *McKinney*, 2011 WL 3862120, at *7.  And where, as here, "the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104-05 (N.D. Cal. 2017).    Apple's design choices are not "unfair"—i.e., "immoral, unethical, oppressive or unscrupulous." *Donohue v. Apple Inc.*, 871 F. Supp. 2d 913, 928 (N.D. Cal. 2012) ("Apple's choice to develop its own formula in designing the iPhone signal meter" is not actionable).

DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:18-MD-02827-EJD

Gibson, Dunn & Crutcher LLP

Cal. May 28, 2014) (CDAFA); *Talyancich v. Microsoft Corp.*, No. 12-1128, 2012 WL 12941690, at *4 (W.D. Wash. Nov. 2, 2012) (California trespass to chattels).  Yet the CAC demonstrates the opposite: that Plaintiffs consented to any alleged "trespass" because they purchased phones whose operating systems would be periodically updated, and because they voluntarily installed each new iOS version. (*See* CAC ¶¶ 386–89 (noting that users *can* refuse to update, and can even turn off notifications about updates); nn.40–41 (citing a guide explaining "How to Stop iOS Nagging You to Update to the Latest Version"); Ex. 5 ¶¶ 1(b), 2(i); Ex. 6 ¶¶ 1(b), 2(i) (users agree that Apple may make iOS Updates available and agree to allow Apple to automatically install updates if the automatic update setting is activated).)[23]  As the CAC explains, "*device owners* can *click on the prompt* and download the new operating system."  (*Id.* ¶ 387 (emphasis added).)  Users thus "consented to [Apple]'s download of software to" their devices, and "there is no trespass." *Talyancich*, 2012 WL 12941690, at *4 (applying California law).[24]

Similarly, Plaintiffs have not adequately pleaded that Apple accessed their devices "without authorization" under the CFAA, because the iOS software "that allegedly harmed the phone [was] *voluntarily downloaded* by the user."  *iPhone Application*, 844 F. Supp. 2d at 1066, 1068 (collecting cases).  For the same reason, Plaintiffs have not alleged that Apple accessed their iPhones "without permission," as would be required to bring a claim under the CDAFA.  (*See, e.g.*, CAC ¶ 527 ("Apple *offered* iOS Updates to consumers" (emphasis added)).)  This is not the first time that a plaintiff has alleged that Apple's iOS software contained some undisclosed feature.  In *iPhone Application*, plaintiffs alleged that iOS would access personal information "without users' awareness or permission," and they "did not expect or consent to" this.  844 F. Supp. 2d at 1050-51.  The Court dismissed plaintiffs' CFAA, CDAFA, and trespass claims multiple times (eventually with prejudice) because plaintiffs could not plead around their "voluntary installation of the [iOS] software (either as

---

[23]  Even if users could not disable the notifications, "insistent" or "persistent" requests for permission do not render "the consent ultimately obtained" involuntary.  *United States v. Grobstein*, No. 13-663, 2016 WL 10587954, at *23-26 (D.N.M. Mar. 7, 2016); *People v. Gomez*, No. D049431, 2008 WL 3415503, at *21 (Cal. Ct. App. Sept. 8, 2008).

[24]  Plaintiffs contend that they "only consented to the installation of iOS Updates that would improve performance, not diminish performance."  (CAC ¶ 534.)  This legal assertion is irrelevant, given their *voluntary* download of the Updates.  *See iPhone Application*, 844 F. Supp. 2d at 1050, 1066, 1068.  In any event, there are no *facts* alleging that Plaintiffs delivered such limited, conditional consent, only that they accepted the updates as offered.  (*See* CAC ¶¶ 386–89.)

DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:18-MD-02827-EJD

an update or as a native installation).” *Id.* at 1064-69.  Here too, even if the iOS updates allegedly contain “surreptitious,” unwanted, and undisclosed code, “[o]n Plaintiffs’ own allegations, the iOS [updates] . . . were all installed or updated *voluntarily* by Plaintiffs.”  *In re iPhone Application Litig.*, No. 11-02250-LHK, 2011 WL 4403963, at *12-13 (N.D. Cal. Sept. 20, 2011).

Beyond *iPhone Application*, “many other cases in this district . . . hold that when software containing ‘surreptitious code’ is installed voluntarily by a plaintiff, a defendant has not accessed the plaintiff’s computer ‘without permission,’ even if the plaintiff was unaware of the ‘surreptitious code’ when he or she installed the software.”  *Flextronics*, 2014 WL 2213910, at *4–5 & n.46; *accord In re Sony PS3 Other OS Litig.*, 551 F. App’x 916, 923 (9th Cir. 2014) (“As lower courts have reasoned, users who had ‘voluntarily installed’ software that allegedly caused harm cannot plead unauthorized ‘access’ under the CFAA.”).[25]  To hold otherwise would vastly and impermissibly expand the scope of the CFAA.  If companies could be sued every time they *offer an update* to their users, which their users voluntarily download, only to later claim that the update contained some code they did not like, companies would never offer updates.  Nor is there any principled reason that Plaintiffs’ argument would be confined to updates:  If users do not know every aspect of software they install—an impossibility given the complex and technical nature of modern software—under Plaintiffs’ theory, a company could be exposed to civil or even criminal liability.  That is not the law.

### b.    The CAC Fails To Plead Several Required Elements Of These Claims.

These claims fail for other reasons as well.  Even if some iOS downloads had occurred without

---

[25]  While two cases permit claims that software that “accessed and ‘surveilled’” certain “areas of [Plaintiffs’] systems” outside the areas the software was supposed to access—e.g., supposed anti-piracy software that invaded users’ privacy by accessing all of their data—the updates here unquestionably accessed only the area they were designed and disclosed to access, namely iOS; they did not invade user privacy.  *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17-00561-WHO, 2018 WL 1305912, at *11 (N.D. Cal. Mar. 13, 2018) (citing *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1101 (N.D. Cal. 2015).).  And in any event, these decisions are no longer good law in light of the Ninth Circuit’s holding that “taking data using a *method* prohibited by the applicable terms of use, when the taking itself generally is permitted, does not violate the CDAFA.”  *Oracle USA, Inc. v. Rimini St., Inc.*, 879 F.3d 948, 962 (9th Cir. 2018).

The rule of lenity also requires a narrow construction of these criminal statutes.  “[W]here a statute has both criminal and noncriminal applications, courts should interpret the statute consistently in both criminal and noncriminal contexts.”  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009) (citation omitted; construing CFAA); *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 715-16 (N.D. Cal. 2011) (applying rule of lenity to construction of CDAFA in civil case).

33

specific user intervention—contrary to the CAC's allegations that users downloaded and installed the updates—they were not even allegedly "in a manner that circumvents technical or code based barriers in place to restrict or bar [Apple's] access," as required to show access without permission or authorization under the statutes. *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1053-54, 1062–63 (N.D. Cal. 2014). Moreover, Plaintiffs do not allege "that Defendant Apple acted with an intent to damage Plaintiffs' iPhones with the [iOS] Software," as needed to allege either trespass or a statutory violation. *In re Apple & ATTM Antitrust Litig.*, No. 07-05152-JW, 2010 WL 3521965, at *7 & n.18 (N.D. Cal. July 8, 2010). And the CAC fails to meet the pleading standard because it does not specify *how* Apple allegedly breached particular directives of the statutes, or even which CDAFA subsections it supposedly violated (and by citing a *nonexistent* subsection of the CFAA (*see* CAC ¶ 476)). "Neither [Apple] nor the Court should have to guess how Plaintiff contends these subsections were violated." *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1090 (N.D. Cal. 2018).

### c.      Plaintiffs Do Not Plead An Adequate Injury To Bring These Claims.

Plaintiffs also have failed to allege a sufficient injury to bring these claims. Under the economic loss rule, "a plaintiff who suffers only pecuniary injury as the result of the conduct of another cannot recover those losses in tort." *Apollo Group v. Avnet, Inc.*, 58 F.3d 477, 479 (9th Cir. 1995). Under California law, in actions arising from the sale of supposedly defective products—although there is no defect alleged here—the economic loss rule bars a plaintiff's recovery in tort of such pure economic damage unless the loss is accompanied by some sort of "physical injury to person or property." *Spencer v. DHI Mortg. Co.*, 642 F. Supp. 2d 1153, 1161 (E.D. Cal. 2009) (citation omitted); *see North Am. Chem. v. Super. Ct.*, 59 Cal. App. 4th 764, 777–80 (1997) ("physical damage to property (other than the defective product itself) or personal injury" is required).

Here, Plaintiffs allege no physical damage. Thus, "the economic loss rule applies to bar Plaintiff[s'] tort claims for . . . trespass to chattels." *Baggett v. Hewlett-Packard Co.*, No. 07-0667, 2009 WL 3178066, at *2–3 (C.D. Cal. Sept. 29, 2009) (collecting cases). And Plaintiffs fail to plead any harm from the iOS updates at all. They allege that "Apple impaired the condition, quality, and usefulness of Plaintiff and class members' Devices," such that Plaintiffs "would not have purchased the Device[s], or would have paid substantially less for [them]." (CAC ¶¶ 29–272, 533.) But they also

acknowledge that there was a "tradeoff": The updates provided the benefit of reducing unexpected shutdowns. (*Id.* ¶¶ 21, 403.) And the CAC notes that Apple explained that that the updates "made improvements to reduce occurrences of unexpected shutdowns." (*Id.* ¶ 401.) Plaintiffs have not pled that the updates were actually harmful, considering these benefits. *See iPhone Application*, 844 F. Supp. 2d at 1069 (claim that apps have "taken up valuable bandwidth and storage space on their iDevices and Defendants' conduct has subsequently shortened the battery life of the iDevice" does not plead a sufficient loss to state a claim).

### 4. *The Claims Regarding iPad And iPhone 5/5c/5s Devices (Counts 1–6) Fail For The Additional Reason That The Performance Management Feature Never Operated On Those Devices.*

Although the Court should dismiss Counts 1–6 in their entirety for the foregoing reasons, at a minimum it should dismiss claims concerning the iPad and iPhone 5, 5c, and 5s models. As noted in several allegations in the CAC, the performance management feature at the heart of this MDL operates *only* on iPhone SE, 6, 6 Plus, 6s, 6s Plus, 7, and 7 Plus devices and *not* on the iPhone 5/5c/5s or iPad. (*See* CAC ¶¶ 11, 20; CAC Ex. 2 at 324–25.) The CAC is devoid of *any* allegations that the feature runs on any iPhone 5/5c/5s or iPad models. The allegations concerning these devices—and any Plaintiffs who purchased only those models—should be dismissed for this reason alone. *See, e.g.*, *Leonhart v. Nature's Path Foods, Inc.*, No. 13-0492-EJD, 2014 WL 1338161, at *4 (N.D. Cal. Mar. 31, 2014) (plaintiffs cannot bring claims for products they did not purchase on the theory that they are sufficiently "similar" to the purchased products because the defendant made the same alleged misrepresentations about them).

## VI.   CONCLUSION

Plaintiffs have failed to plead any actionable misrepresentation, omission, or other fraud to support a claim on behalf of U.S. consumers, let alone the first worldwide consumer MDL in history. The CAC should be dismissed.

DATED: August 9, 2018                    GIBSON, DUNN & CRUTCHER LLP

By: _____/s/ Theodore J. Boutrous, Jr._____
                                   Theodore J. Boutrous, Jr.

*Attorneys for Defendant Apple Inc.*

Gibson, Dunn &
Crutcher LLP

## CERTIFICATE OF SERVICE

I, Theodore J. Boutrous, Jr., hereby certify that on August 9, 2018, the foregoing **MOTION TO DISMISS** and attachments thereto were filed electronically through the CM/ECF system, copies of which were sent by First Class Mail to the following individuals unable to accept them via the electronic filing system:

Abdul Mohammed
258 East Bailey Rd. Apt. C
Naperville, IL 60565

Andrew Kierstead
Hobson Bernardino & Davis LLP
444 South Flower Street
Suite 3100
Los Angeles, CA 90071

Brian Hogue
103158
c/o ISCC
H-3
P.O. Box 70010
Boise, ID 83707

Cathleen M. Combs
Edelman Combs Latturner & Goodwin, LLC
120 South LaSalle Street
18th Floor
Chicago, IL 60603

Peter Wasylyk
Hobson Bernardino & Davis, LLP
444 South Flower Street, Suite 310 0
Los Angeles, CA 90071

Richard Brian Rosenthal
Law Offices of Richard B. Rosenthal, PA
169 E. Flagler St., Suite 1422
Miami, FL 33131-1212

Richard I. Woolf
Boyle Brasher LLC
One Metropolitan Square
211 North Broadway, Suite 2300
St. Louis, MO

Gibson, Dunn &
Crutcher LLP

Richard S. Wayne
Strauss & Troy
Federal Reserve Building
150 E. Fourth St.
Cincinnati, OH 45202-4018

Steven Saul
Eggnatz Pascucci
5400 S. University Drive, Suite 417
Davie, FL 33328

By: _____*/s/ Theodore J. Boutrous, Jr.*_____
         Theodore J. Boutrous, Jr.

DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:18-MD-02827-EJD