THEODORE J. BOUTROUS, JR., SBN 132099
  tboutrous@gibsondunn.com
CHRISTOPHER CHORBA, SBN 216692
  cchorba@gibsondunn.com
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
TIMOTHY W. LOOSE, SBN 241037
  tloose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:   213.229.7000
Facsimile:   213.229.7520

G. CHARLES NIERLICH, SBN 196611
  gnierlich@gibsondunn.com
RACHEL S. BRASS, SBN 219301
  rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA  94105
Telephone:   415.393.8200
Facsimile:   415.374.8458

*Attorneys for Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| IN RE: APPLE INC. DEVICE PERFORMANCE LITIGATION, | CASE NO. 5:18-md-02827-EJD |
| | **PUTATIVE CLASS ACTION** |
| This Document Relates To: | **DEFENDANT APPLE INC.'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR RELIEF PURSUANT TO RULE 23(d)** |
| ALL ACTIONS. | [*Declaration of Christopher Chorba filed concurrently*] |
| | Judge:       Hon. Edward J. Davila |
| | Courtroom:   4, 5th Floor |
| | Hearing Date:   September 28, 2018 |
| | Hearing Time:   10:00 a.m. |

# TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................ 1

II. STATEMENT OF ISSUES TO BE DECIDED ................................................................ 3

III. FACTUAL BACKGROUND ................................................................................ 3

IV. ARGUMENT ................................................................................................ 8

    A. Plaintiffs' Counsel Have Offered No Legal Or Factual Basis To Scrutinize And Control Apple's Ordinary Customer Communications About Discounted Battery Repairs ........................................................................ 9

        1. *Rule 23(d) Only Permits Courts To Correct Coercive Communications About Litigation, Not To Compel A Party To Speak.* ............................ 9

        2. *Compelling Speech About The Litigation Would Violate The First Amendment.* ........................................................................ 14

    B. The Court Should Not Preemptively Declare The Legal Effect Of Battery Repairs ........................................................................ 16

        1. *The Requested Declaration Would Be Premature And Procedurally Improper.* ........................................................................ 16

        2. *The Declaration Plaintiffs Request Misstates The Law.* .................... 17

    C. Plaintiffs Cannot Compel Additional Discovery Through This Motion .................... 20

V. CONCLUSION ................................................................................................ 22

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Balasanyan v. Nordstrom, Inc.*,
No. 10-2671, 2012 WL 760566 (S.D. Cal. Mar. 8, 2012) ...........................................14

*Burrell v. Crown Cent. Petrol., Inc.*,
176 F.R.D. 239 (E.D. Tex. 1997) ...............................................................................16

*Camp v. Alexander*,
300 F.R.D. 617 (N.D. Cal. 2014) ...............................................................................13

*Cent. Illinois Light Co. v. Citizens Util. Bd.*,
827 F.2d 1169 (7th Cir. 1987) ....................................................................................15

*Cheverez v. Plains all Am. Pipeline, LP*, No. 15-4113, 2016 WL 861107 (C.D. Cal.
Mar. 3, 2016)...................................................................................................13, 20

*County of Santa Clara v. Astra USA, Inc.*,
No. 05-03740-WHA, 2010 WL 2724512 (N.D. Cal. July 8, 2010).........................13, 20

*Cruz v. Redfin Corp.*,
No. 14-05234-TEH, 2016 WL 2621966 (N.D. Cal. May 9, 2016).........................11, 15

*In re Deepwater Horizon*,
MDL No. 2179, 2011 WL 323866 (E.D. La. Feb. 2, 2011) .........................................14

*Dodona I, LLC v. Goldman, Sachs & Co.*,
300 F.R.D. 182 (S.D.N.Y. 2014) ................................................................................10

*George W. v. U.S. Dept. of Educ.*,
149 F. Supp. 2d 1195 (E.D. Cal. 2000).......................................................................17

*Great Rivers Co-op. of Southeastern Iowa v. Farmland Indus., Inc.*,
59 F.3d 764 (8th Cir. 1995)........................................................................................10

*Guifu Li v. A Perfect Day Franchise, Inc.*,
270 F.R.D. 509 (N.D. Cal. 2010)................................................................................12

*Gulf Oil Co. v. Bernard*,
452 U.S. 89 (1981)...............................................................................10, 12, 15, 16

*Hernandez v. Best Buy Stores, L.P.*,
No. 13-2587, 2015 WL 7176352 (S.D. Cal. Nov. 13, 2015) .......................................11, 12

*IL Fornaio (Am.) Corp. v. Lazzari Fuel Co., LLC*,
No. 13-05197-WHA, 2014 WL 6845197 (N.D. Cal. Dec. 4, 2014).............................19

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*IL Fornaio (Am.) Corp. v. Lazzari Fuel Co., LLC*,
No. 13-05197-WHA, 2014 WL 6985127 (N.D. Cal. Dec. 10, 2014) ...........................................19

*Jenifer v. Delaware Solid Waste Auth.*,
No. 98-270, 1999 WL 117762 (D. Del. Feb. 25, 1999) ....................................................................10

*Jones v. Jeld-Wen, Inc.*,
250 F.R.D. 554 (S.D. Fla. 2008) ...............................................................................................13, 20

*Kelly v. Pac. Tele. Grp.*,
No. 97-02729-CAW, 1999 WL 33227541 (N.D. Cal. Oct. 20, 1999) .............................................10

*Mevorah v. Wells Fargo Home Mortg., Inc., a div. of Wells Fargo Bank*,
No. 05-1175-MHP, 2005 WL 4813532 (N.D. Cal. Nov. 17, 2005) ...........................................12, 14

*N.Y. Times Co. v. United States*,
403 U.S. 713 (1971) ........................................................................................................................16

*Nat'l Inst. of Family & Life Advocates v. Becerra*,
138 S. Ct. 2361 (2018) ....................................................................................................................15

*O'Connor v. Uber Techs., Inc.*,
No. 13-3826-EMC, 2013 WL 6407583 (N.D. Cal. Dec. 6, 2013) ..................................................14

*Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of Cal.*,
475 U.S. 1 (1986) ............................................................................................................................15

*Parks v. Eastwood Ins. Servs., Inc.*,
235 F. Supp. 2d 1082 (C.D. Cal. 2002) .........................................................................................16

*Payne v. Goodyear Tire & Rubber Co.*,
207 F.R.D. 16 (D. Mass. 2002) .................................................................................................10, 11

*Piekarski v. Amedisys Illinois, LLC*,
4 F. Supp. 3d 952 (N.D. Ill. 2013) .................................................................................................14

*Pollar v. Judson Steel Corp.*,
No. 82-6833-MHP, 1984 WL 161273 (N.D. Cal. Feb. 3, 1984) .....................................................14

*Slavkov v. Fast Water Heater Partners I, LP*,
No. 14-04324-JST, 2015 WL 6674575 (N.D. Cal. Nov. 2, 2015) .............................................13, 20

*In re Volkswagen Clean Diesel Cases*,
No. 15-13360 (E.D. Mich. Nov. 13, 2015) ......................................................................................20

*Wang v. Chinese Daily News, Inc.*,
623 F.3d 743 (9th Cir. 2010), *vacated*, 565 U.S. 801 (2011) ........................................................13

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Woodcock v. Fontana Scaffolding & Equip. Co.*,
  445 P.2d 881 (Cal. 1968) ...........................................................................................................19

*Zarate v. Younglove*,
  86 F.R.D. 80 (C.D. Cal. 1980) ...................................................................................................10

**Statutes**

Oil Pollution Act of 1990.............................................................................................................13

**Rules**

Fed. R. Civ. P. 23(d) .............................................................8, 9, 10, 11, 12, 15, 16, 20, 21

Fed. R. Civ. P. 12 ........................................................................................................................17

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' counsel's core complaint is that Apple is providing discounted battery replacements and credits for past replacements to its customers without talking about the litigation.  Their motion is based on the false factual premise that Apple's silence is somehow deceiving customers into waiving their rights.  But as Apple explained on several occasions, Plaintiffs' counsel have the facts and the law backwards.

As Apple has explained, both publicly and in its discussions with Plaintiffs' counsel, customers with iPhones who wish to replace their battery outside of the warranty period (or another protection plan like AppleCare+) may do so at an Apple Store or authorized repair location.  The price to consumers of an out-of-warranty battery replacement at an Apple Store is normally $79.  However, on December 28, 2017, Apple announced a discount program that reduced the price for all eligible devices to $29 through the end of 2018.  On May 23, 2018, Apple also extended this discount to customers who already had replaced their battery at full price in 2017 by providing them with a $50 credit.

Following these announcements, Plaintiffs' counsel requested clarification of the effect these programs may have on putative class members' claims.  Apple's message, both to Plaintiffs' counsel and publicly, has been consistent, clear, and uncontroversial:  No right, claim, or interest of any Plaintiffs or putative class member regarding the *purchase* of the device or the installation of an iOS software update is waived by participation in, or use of, the discounted pricing program mentioned above.  The terms and conditions governing battery replacements affect *only the repair itself*—for example, restricting the availability of special or "consequential" damages (such as loss of use of the device when a repair takes longer than expected).  These terms and conditions expressly provide that they "govern *the service of your product* by Apple Inc."  (Dkt. 174, Ex. 9 [at Ex. A] (emphasis added).)  And the terms limit liability for "special, indirect, incidental or consequential damages *resulting from services provided*" in connection with the repair.  (*Id.* ¶ 6 (emphasis added).)

As this language makes clear, the repair terms do not concern events occurring before the repair, and thus do not serve to operate as a waiver of the claims alleged in this lawsuit—including all of Plaintiffs' claims for alleged violations of the consumer protection statutes, and/or their claim that

Gibson, Dunn &
Crutcher LLP

the batteries or devices were "defective."  As Plaintiffs are well aware, none of their claims involves alleged complications flowing from an out-of-warranty battery replacement.

Apple readily agreed to a stipulation establishing that participation in the $29 battery discount program (or the related $50 credit program) does not waive claims in this litigation.  And Apple requested a draft stipulation to this effect several months ago, on May 30, 2018.  Plaintiffs' counsel did not provide a draft until two months later.  Apple provided comments to this proposed stipulation, but Plaintiffs cut negotiations short by filing their motion hours after receiving Apple's revisions.  To this day, Plaintiffs have not responded to Apple's edits or endeavored to complete the meet-and-confer process in which this Court instructed the parties to engage.

Apple's proposed stipulation was consistent with the position it had expressed to Plaintiffs for more than *six months*.  Apple does not intend a battery replacement to affect this lawsuit, and the only possible impact on customers availing themselves of this program would be that:  (1) the repair terms will govern any claims *resulting from* repairs (such as inadvertent damage to the device occurring in the repair process), claims which are *not* asserted in this action, and (2) a plaintiff and/or putative class member may not have two recoveries for the same alleged injury (a point that is as premature as it is uncontroversial).  For example, if Plaintiffs were later to claim (most likely in a brand new, non-class lawsuit) they lost business due to devices being unavailable because of a failed repair or one that took longer than expected, the repair terms would govern *that* claim.  And if the Court ultimately concludes that Plaintiffs are owed the cost of a battery replacement through the claims asserted in this action (which is exceedingly unlikely, notwithstanding the breadth of the CAC), a plaintiff that paid only $29 for a replacement of course cannot recover $79.

Plaintiffs have never explained what is problematic or unclear about these provisos.  Nor have they put forth any reason or legal authority that would allow Plaintiffs to interfere with Apple's constitutional right to advise customers about the availability of the replacement battery discounts and its right to continue to conduct its business while this litigation proceeds.  Plaintiffs admit that Apple has *not* been communicating about the litigation right now; they want the Court to *compel* Apple to speak about the litigation, as part of communications about a different issue.  Rule 23(d) supplies no authority for such compelled speech.  Rather, that Rule allows a court to take corrective

measures when a party has communicated deceptively or coercively about the litigation with class members.  Plaintiffs do not, and cannot, identify any communication here that requires correction.

Plaintiffs' request that the Court compel discovery fails for the same reasons.  Discovery is not necessary because there is nothing to "remedy" under Rule 23(d).  Moreover, Plaintiffs cannot compel discovery when they never even served an interrogatory or document request seeking this information, and when Apple already (months ago) gave Plaintiffs the exemplar communications they requested, as part of its attempt to negotiate a stipulation.

For all of these reasons, the Court should deny the motion.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether Rule 23(d) and the First Amendment allow Plaintiffs to force Apple to issue Plaintiffs-drafted statements about the litigation.

2.    Whether Plaintiffs may reserve their right to seek a double-recovery on behalf of customers who obtain a discounted battery replacement, and override Apple's objections to such a double-recovery.

3.    Whether Plaintiffs may compel discovery when they have not served a formal discovery request, and when Apple already has provided the requested information that is relevant to this dispute on an informal basis.

## III.    FACTUAL BACKGROUND

On December 28, 2017, Apple announced a program that allows any customer with an eligible iPhone 6 or later to obtain a battery replacement from Apple at a reduced price of $29—instead of the standard price of $79—for devices that are out of warranty and not covered by AppleCare+ or another superseding Apple service plan.  (*See* Declaration of Christopher Chorba ("Chorba Decl.") ¶ 2; *see also* https://support.apple.com/iphone/repair/battery-power.)  On February 9, 2018, plaintiffs in three actions now consolidated into the MDL—*Gallmann v. Apple Inc.*, No. 5:17-cv-07285-EJD, *Cunningham v. Apple Inc.*, No. 5:18-cv-0338-EJD, and *Block v. Apple Inc.*, No. 5:18-cv-0481-EJD—filed a motion for expedited relief pursuant to Fed. R. Civ. P. 23(d), seeking an order declaring that the terms and conditions governing the December 28, 2017 battery replacement program did not waive or release claims in the three actions.  (*See Gallmann*, Dkt. 31 at

1   1-2.)  That motion was stayed by this Court pending a decision on consolidation by the Judicial Panel

2   on Multidistrict Litigation, and, later, pending appointment of lead counsel.  (*Harvey* Feb. 22, 2018

3   Hearing Tr. 46:16-18; Dkt. 17.)

4       On May 23, 2018, Apple announced a program for those customers who already had replaced

5   their battery at full price in 2017, and it provided those customers with a $50 credit for out-of-

6   warranty battery replacements for an iPhone 6 or later model between January 1 and December 28,

7   2017.  (*See* Chorba Decl. ¶ 4; *see also* https://support.apple.com/iphone-out-of-warranty-battery-

8   replacement-credit.)   Before announcing the program, Apple sent advance notice to Plaintiffs'

9   counsel.  That notice advised that "Apple does not intend participation in this program to extinguish

10  any legal rights or claims stemming from events unrelated to a repair."  (Dkt. 174 ("Mot."), Ex. 7.)

11  In addition, Apple stated only the uncontroversial and well-established principle that "no plaintiffs or

12  putative class members may recover twice for the same alleged injury."  (*Id.*)

13      Despite this straightforward position, Plaintiffs' counsel requested another assurance that

14  participation in the May 23, 2018 credit program would not waive putative class members' claims,

15  and requested clarification on whether participation in the December 28, 2017 battery replacement

16  program would affect those rights.  (Dkt. 174, Ex. 8 at 1.)  They also requested any "form letter,

17  email, agreement or terms of use sent to ANY customer who participates in either program."  (*Id.* at

18  2.)

19      Apple promptly responded on May 25, 2018, stating again that Apple "does *not* intend

20  participation in [the $50 credit program] to extinguish any legal rights that are based upon events

21  predating the battery replacement service," and quoting the same paragraph from its May 23, 2018

22  letter stating that position.  (Dkt. 174, Ex. 8 at 1 (emphasis in original).)  Apple also explained that it

23  did not intend participation in the December 28, 2017, program to extinguish any legal rights

24  unrelated to a repair.  Instead, repairs performed at an Apple repair location, including an out-of-

25  warranty battery replacement at the $29 reduced price, are governed by the "U.S. Retail Repair

26  Terms," which have been in effect since at least December 1, 2017, and remain in effect today.  (*See*

27  *id.* at 2; Chorba Decl. ¶ 6.)  These terms expressly "govern the service of your product by Apple Inc."

28  (Dkt. 174, Ex. 9 [at Ex. A].)  They also contain a clause stating, in capital letters:

TO THE MAXIMUM EXTENT PERMITTED BY LAW, APPLE AND ITS AFFILIATES, WILL UNDER NO CIRCUMSTANCES BE LIABLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING **FROM SERVICES** PROVIDED OR UNDER ANY OTHER LEGAL THEORY, INCLUDING BUT NOT LIMITED TO LOSS OF REVENUE; LOSS OF ACTUAL OR ANTICIPATED PROFITS (INCLUDING LOSS OF PROFITS ON CONTRACTS); LOSS OF THE USE OF MONEY; LOSS OF ANTICIPATED SAVINGS; LOSS OF BUSINESS; LOSS OF OPPORTUNITY; LOSS OF GOODWILL; LOSS OF REPUTATION; LOSS OF, DAMAGE TO, OR CORRUPTION OF DATA; OR ANY COSTS OF RECOVERING, PROGRAMMING, OR RESTORING ANY PROGRAM OR DATA STORED OR USED WITH YOUR PRODUCT AND ANY FAILURE TO MAINTAIN THE CONFIDENTIALITY OF DATA STORED ON YOUR PRODUCT.

(Dkt. 174, Ex. 9 [at Ex. A ¶ 6] (emphasis added).)[1]

Apple also explained that these terms, as is clear from their express language (which Apple attached as exhibits to the letter), specifically "govern the service of [the] product by Apple Inc." (Dkt. 174, Ex. 9 at 2, Ex. A; Chorba Decl. ¶ 7.)  In particular, both sets of repair terms address risks incident to the repair itself, and would apply to any claim relating to such damages "resulting from services provided" during a repair.  (Dkt. 174, Ex. 9 at 2, Ex. A ¶ 6; Chorba Decl. ¶ 7.)  For example, if a customer lost business because she was without her phone during the time of the repair, that customer could not pursue a claim for "incidental or consequential damages" from that lost business. To avoid any alleged ambiguity about this limited carve-out, Apple explained that it does not intend for the repair terms to extinguish any rights or claims stemming from events prior to a repair, such as the initial purchase of an iPhone device or installation of an iOS update—in other words, the claims brought in this lawsuit.  (Dkt. 174, Ex. 9 at 2; Chorba Decl. ¶ 7.)  This intent is already clear from the unambiguous express language of the terms, but Apple was willing to make this point explicit in any

---

[1]  Repairs performed by Apple when a customer mails an iPhone device to Apple for repair, and when the device is out of warranty and not covered by a superseding Apple service plan (such as AppleCare+), are governed by the "Global Repair Terms," which have been in effect since at least December 1, 2017, and are still in effect today.  (Dkt. 174, Ex. 9 at 2; Chorba Decl. ¶ 6 n. 1.) The Global Repair Terms contain a similar limitation-of-liability clause as the U.S. Retail Repair Terms.  (Dkt. 174, Ex. 9 [at Ex. B ¶ 3.3].)

Neither the Global Repair Terms nor the U.S. Retail Repair Terms govern repairs outside these conditions, such as repairs performed by an Apple Authorized Service Provider ("ASP").  Apple does not determine the terms (including price) of repairs performed by ASPs.  Its involvement with the terms governing ASP-performed repairs is limited to requesting that the ASP obtain the customer's email address and permission to send the customer a follow-up survey.  In addition, neither the Global Repair Terms nor the U.S. Retail Repair Terms govern when the device is covered by warranty or by a superseding Apple service plan (such as AppleCare+).

Gibson, Dunn & Crutcher LLP

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR RULE 23(d) RELIEF
CASE NO. 5:18-MD-02827-EJD

negotiated stipulation.

Apple also reiterated its basic observation that Plaintiffs and putative class members are not entitled to double recovery, explaining that the principle simply means a consumer who, for instance, "received a $50 discount on . . . a battery replacement may not recover $50 *as if they paid full price for the replacement service.*"  (Dkt. 174, Ex. 9 at 2 (emphasis in original); Chorba Decl. ¶ 8.)  Apple also provided an exemplar email to customers regarding the $50 credit.  (Dkt. 174, Ex. 9 at 3; Chorba Decl. ¶ 8.)

Plaintiffs responded on May 29, 2018, acknowledging that Apple "confirm[ed]" that it "does not intend for its recently-announced credit program nor its previously announced battery replacement program to 'extinguish any legal rights that are based upon events predating the battery replacement service.'"  (Dkt. 174, Ex. 10 at 1.)  Plaintiffs then proposed entry of a joint stipulation addressing the effect of the two programs on the claims alleged in this MDL.  (*Id.*)

The following week, the parties met and conferred on various issues, including the battery discount and credit programs.  (Chorba Decl. ¶ 10.)  At Plaintiffs' counsel's request, Apple again explained that the replacement and credit programs do not limit claims unrelated to repairs, and that Apple does not view the $50 credit as an "offset to damages," but merely reserves its objections as to any attempt to seek the same recovery for the same alleged injury.  (*Id.*)  However, when Apple in turn requested clarification from Plaintiffs regarding what damages they intended to seek in their Consolidated Amended Complaint ("CAC")—given that double recovery would not be an issue if, for instance, Plaintiffs did not intend to seek damages for the cost of a replacement battery— Plaintiffs refused to answer.  (*Id.*)  Nevertheless, to avoid needless motions practice, the parties agreed that Plaintiffs would provide a draft stipulation addressing the effect of the two programs on the MDL.  (*Id.*; Dkt. 174, Ex. 11 at 1 (inviting Plaintiffs to provide a draft stipulation at their convenience).)  Plaintiffs did not communicate with Apple regarding the stipulation or the battery replacement programs at that time or for weeks thereafter.

On June 29, 2018, shortly before Plaintiffs' counsel's deadline to file their CAC, Plaintiffs' counsel sent a demand letter pursuant to the California Consumers Legal Remedies Act and various other statutes.  (Dkt. 174, Ex. 12.)  The letter did not mention Apple's battery replacement programs.

On July 2, 2018, Plaintiffs then filed the CAC.  Nowhere in the complaint did Plaintiffs include allegations involving the battery replacement programs, either.  Nor did the CAC seek damages specifically for the cost of a replacement battery.

Apple responded to the letter by explaining that it was defective and had failed to demonstrate any actionable conduct under the CLRA or any other law.  (Dkt. 174, Ex. 13 at 1.)  Plaintiffs now contend that this response "admitted" that "Apple developed the battery replacement program in direct response to this litigation and intended it as partial relief."  (Mot. 7.)  That is incorrect:  At no point did Apple "admit" that the replacement program was a response to these lawsuits, because it was not.  And Apple's response to Plaintiffs' demand letter simply replied to the relief Plaintiffs requested, noted various steps Apple had taken, and stated:

> Apple has already taken action, however, with respect to the type of relief that you seek, and did so months before receiving your letter:
>
> . . .
>
> As you know, Apple provided all of these benefits to its customers before the date of your letter.  All of the alleged "violations" in your letter are non-existent, and the "remedies" you demand already are in place.  All of Apple's actions were taken with the intent of improving customers' experiences with their existing devices, and nothing in your letter sets forth any facts demonstrating otherwise, much less that there has been a violation of the CLRA or any other law.

(Dkt. 174, Ex. 13 at 3.)  Plaintiffs' counsel seized on this response to claim that Apple had "taken a negotiated resolution off the table" (Dkt. 174, Ex. 14 at 1), but Apple explained that there had been no change in position.  (Chorba Decl. ¶ 16.)  Apple also reiterated this position at the hearing the next day.  (*Id.* ¶ 17; July 11, 2018 Hrg. Tr. 38:3-5 (noting that Apple's only caveat was that a "class member[] can't recover the same dollar twice for the same exact alleged harm.").)

Two months after the parties first began negotiating a possible stipulation, Plaintiffs' counsel finally provided a draft stipulation on July 23, 2018.  (Dkt. 174, Ex. 15.)  Their own delay notwithstanding, counsel requested Apple's agreement to file no later than the end of that same week, on July 27, 2018.  (*Id.*)  Moreover, the draft stipulation went further than Plaintiffs' counsel had represented in negotiations:  Rather than addressing the MDL only, for instance, they proposed limitations "in this *or any other consumer lawsuits or legal proceedings against*" Apple.  (*Id.* (emphasis added).)  Before receiving any edits from Apple, Plaintiffs' counsel then sent an additional

letter on August 1, 2018, announcing that they planned to request an expedited hearing on a renewed Rule 23(d) motion, and suggesting, despite the parties' continued negotiations, that *any* revisions to the stipulation would be unacceptable.  (Dkt. 174, Ex. 16 at 1.)  Nonetheless, in a good faith effort to continue negotiations, Apple informed Plaintiffs that it would return edits to the draft stipulation by close of business on August 7, 2018.  (Chorba Decl. ¶ 20.)

As promised, Apple returned a redline to Plaintiffs' draft stipulation on that date.  (Dkt. 174, Ex. 17.)  Apple's edits were consistent with its representations to Plaintiffs since the beginning of the program.  Apple proposed that no right, claim, or interest of any Plaintiff or putative class member *unrelated* to a repair be waived in the MDL and preserved its objection to any double recovery.  (*Id.*)  Apple also included one further edit preserving *both* parties' rights as to all other rights not addressed in the stipulation.  (*Id.*)

Plaintiffs' counsel did not respond to Apple's edits, attempt to confer with Apple regarding these changes, or even acknowledge receipt of the redline.  (Chorba Decl. ¶ 22.)  Instead, hours after Apple provided its redline, Plaintiffs filed the motion.

## IV. <u>ARGUMENT</u>

Although Plaintiffs' motion is styled as one "for relief pursuant to Rule 23(d)," their actual request has nothing to do with that Rule, which allows courts to remedy coercive communications about ongoing litigation.  Plaintiffs admit that Apple is *not* communicating about the litigation through its battery repairs at all—much less in a coercive or deceptive fashion.  They ask the Court to *order* Apple to start delivering *Plaintiffs' counsel's* message about the legal effects of obtaining a repair on the litigation.  Rule 23(d) provides no authority for this extraordinary request, which the First Amendment would prohibit in any event.  Nor may Plaintiffs base a request for relief on Rule 23(d) for any alleged deceptive omission about the impact of the battery repair terms and conditions, because those terms expressly apply only to a repair and not any claim in this lawsuit.

Next, Plaintiffs also ask the Court to immediately declare the effect of a discounted battery replacement on any future recovery.  But the parties agree that a replacement does not waive claims in this action; their only *dis*agreement appears to be whether Plaintiffs may recover twice for the same injury.  The law is clear that they cannot.  The Court should deny Plaintiffs' premature request

for the Court to adjudicate damages issues now.

Finally, Plaintiffs ask the Court to compel Apple to produce all communications with customers about discounted battery replacements, but they have not justified this request for several reasons:  (1) Rule 23(d) does not apply at all, so it does not require any discovery; (2) Plaintiffs have not served a discovery request for this information; and (3) Apple already produced the communication at issue in any event.

### A.   Plaintiffs' Counsel Have Offered No Legal Or Factual Basis To Scrutinize And Control Apple's Ordinary Customer Communications About Discounted Battery Repairs

There is no cause for any relief under Rule 23(d) for the simple reason that Apple is not communicating about the case, as Plaintiffs admit.  (*E.g.*, Mot. 2 (in Apple's communications to customers, "[n]o mention was made of the pending lawsuits"), 3 ("None of Apple's consumer communications regarding the battery replacement and credit programs disclose the existence of this class action"), 11 ("Apple's communications to putative class members did not disclose any information about the pending class action.").)  Indeed, Plaintiffs' complaint is that Apple is *not* communicating about the litigation.  (*E.g.*, *id.* at 9 ("Apple's statements on its website and in the emails Apple sent to putative class members fail to inform potential class members of the existence of this litigation . . . . The omission of any detail about the pending class action from Apple's communications demands a corrective notice.").)

But Apple has no obligation to speak about the lawsuit.  Rule 23(d) only permits *corrective* measures once a party already has communicated about the litigation—and then only when the communications were coercive.  And the repair terms Apple presents to customers are neither deceptive nor "coercive":  By their plain language, the terms do not waive claims arising from the purchase of the device or installation of iOS software—i.e., the claims asserted here.  The First Amendment also protects Apple from Plaintiffs' attempt to compel it to speak.

### 1.   *Rule 23(d) Only Permits Courts To Correct Coercive Communications About Litigation, Not To Compel A Party To Speak.*

There is no legal basis for Plaintiffs' demand that Apple "issue . . . a notice . . . informing putative class members of the pendency of this proposed class action, with the language and form to be approved by Plaintiffs' Interim Co-Lead Counsel and the Court."  (Mot. i.)  Because there are no

communications about the lawsuit, Rule 23(d) does not apply.  Rule 23(d) permits courts to take corrective measures, such as "an order limiting communications between parties and potential class members," to remedy a party's deceptive communications about a lawsuit.  *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100-01 (1981); *see also* Fed. R. Civ. P. 23(d) (permitting a court "to protect class members and fairly conduct the action" by "issu[ing] orders that" give "appropriate notice" of the proceedings).  Given the constitutional rights at stake, courts must "take care to ensure that the restraint on expression is 'justified by a likelihood of serious abuses' of the class action device," a justification that virtually always requires a finding that one party has engaged, or is likely to engage, in a misleading, coercive, or deceptive communication about the case.  *Kelly v. Pac. Tele. Grp.*, No. 97-02729-CAW, 1999 WL 33227541, at *2 (N.D. Cal. Oct. 20, 1999) (quoting *Gulf Oil*, 452 U.S. at 104).[2]  Far from providing a "particular and specific demonstration of fact" showing that Apple has communicated deceptively about the case, *Gulf Oil*, 452 U.S. at 102 n.16 (citation omitted), Plaintiffs admit that Apple is not communicating about the case at all.  (*See* Mot. 2, 3, 11.)

Plaintiffs turn Rule 23(d) on its head by suggesting that the Rule—which allows a court to enter an order *remedying* abusive communications with class members—can be used to *compel* Apple to communicate Plaintiffs' preferred message to potential class members.  That is wrong as a matter of law.  The Rule does not apply if the defendant is "not communicat[ing] any—much less misleading—information to individuals about the instant action."  *Cruz v. Redfin Corp.*, No. 14-05234-TEH, 2016 WL 2621966, at *2 (N.D. Cal. May 9, 2016); *see Payne v. Goodyear Tire &*

---

[2] *See*, *e.g.*, *Great Rivers Co-op. of Southeastern Iowa v. Farmland Indus., Inc.*, 59 F.3d 764 (8th Cir. 1995) (reversing order granting plaintiffs' motion to regulate communications under Rule 23(d) due to insufficient findings regarding "what was misleading and why"); *Zarate v. Younglove*, 86 F.R.D. 80, 103 (C.D. Cal. 1980) (finding that requested relief under Rule 23(d) was overbroad because it "forb[ade] speech that, upon analysis, [did] not pose any serious and imminent threat of interference with fair administration of justice"); *Dodona I, LLC v. Goldman, Sachs & Co.*, 300 F.R.D. 182, 185-86 (S.D.N.Y. 2014) (denying plaintiffs' application under Rule 23(d) due to lack of evidence that defendants "made any misleading statements to the class members they contacted"); *Payne v. Goodyear Tire & Rubber Co.*, 207 F.R.D. 16, 21 (D. Mass. 2002) ("Plaintiffs' belief that homeowners will feel 'discouraged' about the instant lawsuit is insufficient to warrant the court placing limitations on Goodyear's communications."); *Jenifer v. Delaware Solid Waste Auth.*, No. 98-270, 1999 WL 117762 at *5 (D. Del. Feb. 25, 1999) (denying request to limit communications with putative class members due to lack of evidence that "putative class members would be threatened or coerced into foregoing any claims").

*Rubber Co.*, 207 F.R.D. 16, 21 (D. Mass. 2002) (denying motion where "the record does not establish any communication with potential plaintiffs concerning litigation at all").

To the extent Plaintiffs argue that Apple's repair terms are deceptive because they do not mention the litigation, both *Cruz* and the terms themselves foreclose this argument.  The terms state, plainly, that they "govern the service of your product by Apple Inc."—and they limit indirect damages "resulting from services provided" in the repair.  (Dkt. 174, Ex. 9 [at Ex. A].)  Like the defendant in *Cruz*, Apple is merely continuing its ongoing business operations, which are governed by an agreement, drafted before the litigation, that says nothing about the litigation.  2016 WL 2621966, at *2; *see* Dkt. 174, Ex. 9 at 2 (noting that the repair terms have not changed since before the litigation began).  And *Cruz* held that Rule 23(d) did not authorize relief even though that agreement—unlike the repair terms—*did* waive the right to pursue the litigation.  *Id.* at *1-2.

Similarly, the court in *Payne* denied a Rule 23(d) motion when the defendant was inspecting, and taking samples of, the allegedly defective products at the homes of putative class members because the record did not reveal that the defendant was talking about the litigation during those free home inspections, much less "pressuring plaintiffs to opt out of the litigation or covertly robbing plaintiffs of their opportunity to participate in the instant litigation."  207 F.R.D. at 18-21.  Without that showing, the Rule did not apply.  *Id.* at 21-22.

Accordingly, there is simply no legal foundation for an order requiring Apple to deliver a message about the case that Plaintiffs have drafted.  To the contrary, the Court already has declined to issue an order that would put its imprimatur on communications about the case that Plaintiffs' counsel would draft *and then deliver themselves*.  (June 19, 2018 Hearing Tr. 30:12-21.)  There is even less basis for the Court to put its imprimatur on a Plaintiffs-drafted message that Plaintiffs then want *Apple* to deliver.

None of the cases that Plaintiffs cite requires a defendant to speak about a case.  In fact, one of those decisions, *Hernandez v. Best Buy Stores, L.P.*, No. 13-2587, 2015 WL 7176352 (S.D. Cal. Nov. 13, 2015) (*see* Mot. 7), denied the relief Plaintiffs seek here, explaining:

- "Under the Supreme Court's decision in *Gulf Oil*, the Court can only take remedial or corrective action based on 'a clear record and specific findings.'"  *Id.* at *15 (quoting *Gulf Oil*, 452 U.S. at 101).

- "The 'mere possibility' of abusive tactics is simply not enough." *Id.*

- "Nor is the 'mere possibility' of abusive tactics sufficient to justify the time and expense of the additional discovery and evidentiary hearing that would be necessary for the Court to be able to make specific findings." *Id.*

The same reasons compel denial of Plaintiffs' motion here.  The Court need not order discovery, hold a hearing or make findings; there is not even a *possibility* for abusive communications about the litigation because, again, Apple's programs do not involve communication about this matter.

All of Plaintiffs' other cases (*see* Mot. 5-11) confirm that Rule 23(d) authorizes only remedial fixes for *coercive*, *litigation-related* communications.  Most of the cases involve an employer's attempt to cajole employees into settling the claims at issue in the underlying litigation, which the courts have found to be a particularly coercive scenario (all emphases added):

- In *Mevorah v. Wells Fargo Home Mortg., Inc., a div. of Wells Fargo Bank*, No. 05-1175-MHP, 2005 WL 4813532 (N.D. Cal. Nov. 17, 2005) (Mot. 7), the defendant called unrepresented employees, told them "that the telephone calls were **in connection with this action**," and misrepresented the nature of the action.  *Id.* at *4-5.  The court found a "potential for coercion" because the defendant was calling its employees (whom the defendant could fire), and it determined that the defense counsel's conduct breached the Rules of Professional Conduct.  *Id.*  Even so, the court only restricted "precertification communications regarding this action," and it held that a "[c]ommunication undertaken in the regular course of business"—precisely what is at issue here— was explicitly "excepted from this restriction."  *Id.* at *5.

- Similarly, *Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509 (N.D. Cal. 2010) (Mot. 11), "recognized that in the context of an employer/worker relationship, there is a particularly acute risk of coercion and abuse when the employer solicits opt-outs from its workers."  *Id.* at 517.  When a defendant employer met in person with individual employees **to present them with a form opting out of the class** (written in a language that some workers did not understand), the court found that these meetings were coercive and invalidated the opt-outs obtained.  *Id.* at 518.

- *Camp v. Alexander*, 300 F.R.D. 617 (N.D. Cal. 2014) (Mot. 9), likewise noted that "[t]he caselaw nearly universally observes that employer-employee contact is particularly prone to coercion."  *Id.* at 624.  The court found coercive a letter and declaration that contained "a dramatic

statement of the potential loss of employment **should employees join the lawsuit**." *Id.* at 623-24.

- In *Slavkov v. Fast Water Heater Partners I, LP*, No. 14-04324-JST, 2015 WL 6674575 (N.D. Cal. Nov. 2, 2015) (Mot. 8, 10), the settlement agreement the employer presented **about the lawsuit** would not even validly settle the claims (because settlement required approval of the Secretary of Labor).  But the employer misled the plaintiffs into thinking that the agreement would settle the claims and that they could not serve as witnesses in the case.  *Id.* at *4-6.  While the agreements were therefore invalid, the court declined to supervise defendant's future communications.  *See id.* at *7.

- *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743 (9th Cir. 2010), *vacated*, 565 U.S. 801 (2011) (Mot. 5), did not involve a defendant's ordinary communications with putative class members at all.  Instead, the court invalidated **an opt-out process** that "was rife with instances of coercive conduct, including threats to employees' jobs, termination of an employee supporting the litigation, the posting of signs urging individuals not to tear the company apart, and the abnormally high rate of opt outs."  *Id.* at 757.

- In *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554 (S.D. Fla. 2008) (Mot. 11), the defendant sent a letter **informing absent class members of the lawsuit** and threatening to withhold promised repair work if they did not opt out of the class.  *See id.* at 559, 563-64.

- In *County of Santa Clara v. Astra USA, Inc.*, No. 05-03740-WHA, 2010 WL 2724512 (N.D. Cal. July 8, 2010) (Mot. 9-10), the defendant sent checks that plaintiffs could only cash if they promised to **release all claims in the lawsuit**—but the letter was "misleading" in numerous ways, including that it appeared to say that the checks were for the same amount plaintiffs would recover if they litigated, which was false.  *Id.* at *4-5.[3]

---

[3]  Plaintiffs' remaining cases (Mot. 5) involved alleged abuse of a specific claims process under the Oil Pollution Act of 1990 (OPA), which provides a claims process to obtain short-term relief but preserves plaintiffs' right to recover for remaining damages at trial.  *See Cheverez v. Plains all Am. Pipeline, LP*, No. 15-4113, 2016 WL 861107, at *1-6 (C.D. Cal. Mar. 3, 2016) (alleging that the defendant "engaged in misleading conduct" by using an OPA claims process to attempt to convince plaintiffs to waive their full claims); *In re Deepwater Horizon*, MDL No. 2179, 2011 WL 323866, at *5-8 (E.D. La. Feb. 2, 2011) (cited in *Cheverez*; supervising an OPA claims process that allegedly confused claimants into thinking that the administrators were independent of the defendant when they were not).

Nor may Plaintiffs analogize to situations in which the defendant omitted pertinent information about the pending lawsuit, thus impacting their rights.  (Mot. at 9.)  As discussed (*supra* at pp. 4, 11; *infra* at 17), the repair terms only "govern **the service of your product** by Apple Inc.," and they limit indirect damages "resulting from services provided" via the repair.  (Dkt. 174, Ex. 9 [at Ex. A] (emphasis added).)  Accordingly, Plaintiffs' reliance on cases in which a "corrective notice" was necessary to remedy a deceptive omission (Mot. 7, 10) are completely inapposite here:

- In *Pollar v. Judson Steel Corp.*, No. 82-6833-MHP, 1984 WL 161273, at *1 (N.D. Cal. Feb. 3, 1984) (Mot. 7), defendant posted a notice that "attempt[ed] to solicit information from class members who are represented by counsel."  The failure to disclose the pending lawsuit was not the problem; rather, it was that the notice was misleading—as Judge Patel later explained in *Mevorah*, 2005 WL 4813532, at *4.

- Plaintiffs also cite cases involving a scenario even farther afield:  revised arbitration agreements presented during pending litigation.  (Mot. 6, 10; citing in *O'Connor v. Uber Techs., Inc.*, No. 13-3826-EMC, 2013 WL 6407583 (N.D. Cal. Dec. 6, 2013), *reconsideration denied*, 2014 WL 1760314, at *6, 9 (N.D. Cal. May 2, 2014), *on appeal*, No. 14-16078 (9th Cir.) (determining that the communication at issue could confuse "potential class members about their right to join the current class action" by including an arbitration agreement and class action waiver in a revised drivers' agreement); *Balasanyan v. Nordstrom, Inc.*, No. 10-2671, 2012 WL 760566, at *3-4 (S.D. Cal. Mar. 8, 2012) (declining to enforce arbitration agreement that would bind employees mid-litigation); *Piekarski v. Amedisys Illinois, LLC*, 4 F. Supp. 3d 952, 956 (N.D. Ill. 2013) (employer's suggestion that employees needed to sign an arbitration agreement "was likely to confuse and mislead potential class members and prevent them from participating in this litigation").)

In short, "unlike the cases cited by Plaintiff[s]," Apple has not "not communicate[d] any— much less misleading—information to individuals about the instant action."  *Cruz*, 2016 WL 2621966, at *2.  And for that reason, Rule 23(d) simply does not apply.  *See id.*  Plaintiffs have cited no authority sanctioning their expansive interpretation of this Rule.

**2.    *Compelling Speech About The Litigation Would Violate The First Amendment.***

Even if there were any basis in the Federal Rules to require Apple to speak about the

DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR RULE 23(d) RELIEF
CASE NO. 5:18-MD-02827-EJD

litigation—and there is none—such a requirement would violate the First Amendment in multiple ways.  For one, it would impermissibly compel Apple to speak about the case, when it would rather remain (and so far has remained) silent.  *See Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371-78 (2018) (compelled commercial speech violates the First Amendment if not narrowly tailored).    Plaintiffs seek to compel Apple to include in its ordinary business communications with its customers messages scripted by a third party—Plaintiffs' counsel—with the intent of changing Apple's message and delivering Plaintiffs' instead.  Such an order would run headlong into the First Amendment.  *See Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of Cal.*, 475 U.S. 1, 13-15 (1986) (law requiring a utility company to include a public-interest group's messages with its regular utility bills violated the First Amendment); *Cent. Illinois Light Co. v. Citizens Util. Bd.*, 827 F.2d 1169, 1173-74 (7th Cir. 1987) (same).  Even if it served any cognizable interest—and, for the reasons it explained above, it does not—Plaintiffs' proposed order is not narrowly tailored because (among other reasons) it fails to consider alternative means that do not abridge Apple's constitutional rights.  *See, e.g.*, *Becerra*, 138 S. Ct. at 2376.

The order Plaintiffs seek would also operate as an unconstitutional prior restraint on speech.  (Mot. i (requesting an order that "[a]ll future communications regarding the discounted battery replacement and refund credit shall include a . . . notice approved by Plaintiff's Interim Co-Lead Counsel and the Court").)  Any relief from this Court must be "carefully drawn" so as to "limit[] speech as little as possible."  *Gulf Oil*, 452 U.S. at 102.  Yet, Plaintiffs' motion asks this Court to ban "[a]ll future communications" between Apple and its customers unless Apple includes a statement from Plaintiffs' counsel that they not even drafted yet.  (Mot. i.)  Not only would this relief run afoul of the standards set forth by the Supreme Court in *Gulf Oil*; it would violate Apple's First Amendment rights by imposing a patently unconstitutional prior restraint of speech.  *See Gulf Oil*, 452 U.S. at 104 (order issued pursuant to Rule 23(d) "involved serious restraints on expression"); *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971) ("Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity") (citation omitted); *Burrell v. Crown Cent. Petrol., Inc.*, 176 F.R.D. 239, 243 (E.D. Tex. 1997) ("An order limiting communications between parties and class members is a prior restraint of speech.");

*Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1084 (C.D. Cal. 2002) ("there appears to be no basis for restricting communications to those having advance court approval").

Additionally, and as discussed above, the relief Plaintiffs request would regulate Apple's routine and regular business communications with its customers about an unrelated topic (Mot. i), and it is impermissibly overbroad on that basis. Such a broad sweep is not "carefully drawn" to address the communications at issue here. *Gulf Oil*, 452 U.S. at 102.

**B.    The Court Should Not Preemptively Declare The Legal Effect Of Battery Repairs**

Plaintiffs also ask the Court to invalidate "[a]ny releases, waivers and agreements affecting remedies in this litigation that Apple obtained" through the battery discount program. (Mot. i.) But Apple's battery discount and credit programs do *not* require the waiver of any rights in this litigation—as is clear from the unambiguous language of the repair terms and as Apple has repeatedly explained to Plaintiffs. In fact, Apple was willing to enter into a stipulation to that effect. Plaintiffs' request is thus somewhat obscure, but they appear to ask the Court to reject Apple's draft stipulation and approve theirs instead. But the only daylight between the parties' positions concerns a question that will arise only at the damages phrase of the case, if at all: Can a Plaintiff obtain recovery of moneys that they were never charged, or that the Defendant refunded? And Plaintiffs are wrong about that issue: The law does not permit them to obtain a double recovery. The Court should reject Plaintiffs' request that it immediately (and incorrectly) declare the legal effect of participation in the battery replacement program.

### 1.    *The Requested Declaration Would Be Premature And Procedurally Improper.*

Plaintiffs' request is premature. They seek a declaration on the merits about an issue that is not even part of their lengthy Consolidated Amended Complaint. If the battery replacement program is to be part of the case, then Plaintiffs need to plead it. And Apple would need the chance to test such a pleading on a Rule 12 motion. *That* motion—or a later dispositive motion—could be a proper means of presenting the issue (assuming there are no predicate material factual disputes). This motion is not. "Plaintiff[s] cannot seek advisory rulings . . . as to unasserted claims." *George W. v. U.S. Dept. of Educ.*, 149 F. Supp. 2d 1195, 1211 (E.D. Cal. 2000).

Plaintiffs offer no authority that would permit the Court to declare the legal effect of

1   participation in the program, over Apple's opposition, without a dispositive motion or even

2   allegations on the issue.   The Court should therefore deny Plaintiffs' request as premature and

3   procedurally improper.

4           **2.      *The Declaration Plaintiffs Request Misstates The Law.***

5           As explained above, Apple has repeatedly informed Plaintiffs that Apple agrees that obtaining

6   a discounted battery replacement or credit does not waive rights in this litigation.   The parties were

7   exchanging draft stipulations to this effect when Plaintiffs decided to file this motion.   Plaintiffs

8   contend that Apple's stipulation contains "three carveouts," although it does not explain what it

9   believes these are or why they are supposedly unacceptable.  (Mot. 5.)

10          In fact, Apple's proposed stipulation makes it clear that obtaining a repair does *not* waive any

11  claims unconnected with the repair.  (Dkt. 174, Ex. 17 at 3.)   It provides that "no right, claim or

12  interest of any Plaintiff or putative class member that otherwise is available and properly asserted in

13  this Action will be mooted, settled, waived, or released by participation in, or use of, any feature of"

14  the battery replacement program.   (*Id.*)   And Apple has explained that "Apple does not intend

15  participation in this program to extinguish any legal rights that are based upon events predating the

16  battery replacement service." (Dkt. 174, Ex. 9 at 1.)   However, Apple's draft stipulation notes that

17  this does not mean that a plaintiff may:  (1) avoid the terms and conditions governing battery repairs

18  to which she agrees as a condition of the repair, or (2) recover twice for the same injury.  (Dkt. 174,

19  Ex. 17 at 2-3.)   Plaintiffs profess lack of comprehension of both of these necessary implications.  But

20  they are straightforward, as Apple has repeatedly explained.

21          *First*, to obtain a battery replacement, a customer must accept the repair terms.   The terms

22  state, in plain English, that they "govern **the service of your product** by Apple Inc." (Dkt. 174, Ex. 9

23  [at Ex. A] (emphasis added).)   Nowhere do the repair terms purport to replace, waive, or otherwise

24  diminish the terms and conditions customers agreed to with the original purchase of their iPhone

25  devices.  As Plaintiffs note (Mot. 3), these terms contain a clause stating:

26          TO THE MAXIMUM EXTENT PERMITTED BY LAW, APPLE AND ITS
           AFFILIATES, WILL UNDER NO CIRCUMSTANCES BE LIABLE FOR ANY
27          SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES
           RESULTING **FROM SERVICES** PROVIDED OR UNDER ANY OTHER
28          LEGAL THEORY, INCLUDING BUT NOT LIMITED TO LOSS OF

REVENUE; LOSS OF ACTUAL OR ANTICIPATED PROFITS (INCLUDING LOSS OF PROFITS ON CONTRACTS); LOSS OF THE USE OF MONEY; LOSS OF ANTICIPATED SAVINGS; LOSS OF BUSINESS; LOSS OF OPPORTUNITY; LOSS OF GOODWILL; LOSS OF REPUTATION; LOSS OF, DAMAGE TO, OR CORRUPTION OF DATA; OR ANY COSTS OF RECOVERING, PROGRAMMING, OR RESTORING ANY PROGRAM OR DATA STORED OR USED WITH YOUR PRODUCT AND ANY FAILURE TO MAINTAIN THE CONFIDENTIALITY OF DATA STORED ON YOUR PRODUCT.

(Dkt. 174, Ex. 9 [at Ex. A ¶ 6] (emphasis added).)   This unambiguous provision, as Apple has explained several times, "govern[s] repair services and replacement components." (Dkt. 174, Ex. 9 at 1.)  In other words, if a repair takes longer than expected, or cannot be performed at all, and if the plaintiff loses business as a result of not having access to her device, this term may limit recovery. Apple does not anticipate that Plaintiffs will bring any claim of this nature in this litigation.  The CAC does not even seek "consequential" damages (*see* Dkt. 145 at 297 (praying for "actual and statutory damages"—not consequential damages)), notwithstanding Plaintiffs' counsel's attempt to significantly broaden this MDL in other ways (*see*, *e.g.*, Dkt. 176 at 2).  So Apple's stipulation makes clear that performing a repair may affect claims for special, incidental, or consequential damages stemming ***from the repair***—just in case Plaintiffs attempt to assert such claims in the future. (Dkt. 174, Ex. 17 at 2-3.)  Customers agree to this term as a condition of obtaining a repair (whether or not at a discount).  Plaintiffs identify no reason the contract is invalid or unenforceable.

*Second*, Apple's draft stipulation makes clear that a plaintiff cannot recover twice for the same injury, so in this sense obtaining a battery replacement at a discount may entitle a plaintiff to recover less as damages than if the plaintiff had not obtained the replacement.  (*Id.* at 3.)  In other words, a plaintiff cannot seek $79 for the cost of a replacement if she actually only paid $29.  (*See*, *e.g.*, Dkt. 174, Ex. 9 at 2 ("consumers who received a $50 discount on the ordinary cost of a battery replacement may not recover $50 as if they paid full price for the replacement service").)  It is that simple.

Throughout months of negotiations, Plaintiffs have never explained why they were rejecting these obvious limitations.  Nor did they explain what the alternative is—what they mean by striking these limitations and providing that obtaining a discounted battery replacement under the repair terms affects absolutely *nothing*.  Plaintiffs have not, for example, stated whether they take the position

that, if the Court were to award the cost of a battery replacement to a putative class member, she can recover $79 even if she paid only $29.  To the extent Plaintiffs do take this position, they have not explained why it would be limited to the current battery discounts.  For example, if a plaintiff paid $0 for a battery replacement because it was under warranty or under AppleCare, would she still be entitled to $79 under Plaintiffs' counsel's theory?  Plaintiffs' counsel never answered these simple questions, and the position advanced in the motion defies common sense and settled law.

To the extent Plaintiffs believe they *should* be able to recover twice, they are wrong.  There is no theory of liability under which a plaintiff can recover twice (in compensatory damages) for the same injury.  A plaintiff who pays $29 for a service cannot recover $79 for the cost of that service. *See IL Fornaio (Am.) Corp. v. Lazzari Fuel Co., LLC*, No. 13-05197-WHA, 2014 WL 6985127, at *4 (N.D. Cal. Dec. 10, 2014) (class settlement letter must explain that "[a]ny settlement money you would be entitled to receive from the settlement fund will be reduced by the amount of discounts and/or rebates you received or will receive from [the defendant]"); *IL Fornaio (Am.) Corp. v. Lazzari Fuel Co., LLC*, No. 13-05197-WHA, 2014 WL 6845197, at *4 (N.D. Cal. Dec. 4, 2014) (explaining that the discounts at issue in *IL Fornaio* were "purchase rebates" issued "[p]ursuant to a 'restitution promise to the Department of Justice,' " and holding that "[t]here should be no double recovery" of those amounts).  And where a plaintiff has previously recovered for her injury, the amount of that earlier recovery must be deducted from the ultimate award, "to avoid double recovery." *Woodcock v. Fontana Scaffolding & Equip. Co.*, 445 P.2d 881, 883-85 (Cal. 1968) (reversing because the trial court should have deducted from the award any workers' compensation that plaintiff received).

Even though the battery replacement discount is in no way a prepayment of damages, a double recovery is not permissible even in cases where a defendant *does* prepay damages—even if (also unlike here) it does so coercively.  Thus, in Plaintiffs' case *Astra*, where the court found that plaintiffs had been coerced into cashing settlement checks, the court simply held that a plaintiff could pursue an *additional* recovery beyond the amount of the settlement check; it did not permit a plaintiff to recover her full damages *plus the amount she already had recovered*.  2010 WL 2724512, at *6; *see also Cheverez*, 2016 WL 861107, at *3, *5 (noting that plaintiffs may recover "damages *not reflected in* the paid or settled partial claim" (emphasis added; citation omitted)).

Plaintiffs do not cite any cases holding that it is improper for a defendant to unilaterally give its customers a benefit, even if that benefit may ultimately offset a damages award. To the contrary, their own cases admit that "a defendant has a right to communicate settlement offers directly to putative class members." *Jones*, 250 F.R.D. at 563; *Slavkov*, 2015 WL 6674575, at *2 ("Rule 23(d) does not prohibit offers of settlement to putative class members"); *see Cheverez*, 2016 WL 861107, at *7 ("To be clear, the Court does not invalidate Defendants' releases merely because they represent a partial settlement of the putative class members' claims."). Because offers to *completely* settle the case are permissible, offers of benefits that may affect the ultimate award are permissible as well.

Plaintiffs also assert (Mot. 5) that their proposed stipulation was based on *In re Volkswagen Clean Diesel Cases*, No. 15-13360 (E.D. Mich. Nov. 13, 2015) (Dkt. 57). This is the first time, after months of negotiations, that Plaintiffs' counsel cited their reliance on a model from that matter. That situation was very different in several critical respects. Notably, the underlying program did not involve a repair—it gave customers cash—so there were no conditions involving the repair to consider. And in *Volkswagen*, the parties *stipulated* to the effect of participation in the program; the court did not resolve any dispute about the issue. That negotiated stipulation also included a far broader reservation than Apple's far more limited reservations: "Nothing in this Stipulation shall waive, release or impair any affirmative defenses otherwise available to Defendant." *Id.*

The Court should deny Plaintiffs' request for an inaccurate declaration about the legal effect of obtaining a discounted battery replacement.

## C.     Plaintiffs Cannot Compel Additional Discovery Through This Motion

Finally, Plaintiffs ask this Court to compel Apple to produce, "[w]ithin ten (10) days of entry of this Order," "copies of all prior communications with putative class members, and the names, email addresses, and other contact information for those putative class members that Apple has contacted regarding the discounted battery replacement and the refund credit on or after December 21, 2018." (Mot. i.) Plaintiffs' motion to compel discovery fails for the same reasons as explained above: There is no ground for any relief under Rule 23(d), so there is no discovery needed for such relief either. And the battery discounts are outside the scope of the CAC, so communications about the discounts are not discoverable. Plaintiffs' attempt to compel discovery fails for two other

1   independent reasons:

2   *First*, Plaintiffs seek an order compelling Apple to produce discovery when they have not

3   even served a discovery request for that information.  Plaintiffs have offered no justification for their

4   failure to do so, when they already have served discovery about other subjects.  (Perhaps it is because

5   Apple would rightly object that this discovery is far beyond the scope of the case—as it is, *see* pp. 4-

6   7, 18 *supra*.)  In any event, Plaintiffs' counsel must follow the normal process of serving requests,

7   allowing Apple to respond, and conferring with Apple about its objections, rather than immediately

8   moving to compel responses to discovery that has never been served.  Plaintiffs can "comply with the

9   Federal Rules of Civil Procedure" only by "preparing and serving on defense counsel [their]

10  discovery requests, and moving to compel *only* after [they] ha[ve] (a) received an unsatisfactory

11  response and (b) met and conferred with defense counsel to resolve any discovery disputes."

12  *Toscano v. Lewis*, No. 12-5893-EMC, 2014 WL 880728, at *5 (N.D. Cal. Mar. 3, 2014); *see Fisher v.*

13  *Dizon*, No. 05-0540, 2007 WL 2062890, at *2 (E.D. Cal. July 17, 2007) ("A party may move for an

14  order compelling discovery with respect to objections or other failure to respond to interrogatories or

15  requests to produce documents.  Plaintiff makes no showing that he served requests for these

16  documents on any of the defendants.  Therefore, there is no basis for compelling a response.") (citing

17  Fed. R. Civ. P. 37(a)(2)(B), 33(b)(5), 34(b)).  And Plaintiffs' request is misdirected; as this Court

18  ordered, and the parties stipulated, "the Special Discovery Master shall adjudicate all pretrial

19  discovery motions and disputes."  (Dkt. 173 ¶ 8.)

20  *Second*, Apple already has produced the only information Plaintiffs requested (even

21  informally) before filing the motion.  Even though Plaintiffs never served a request on Apple for its

22  communications with customers concerning the battery discounts, to facilitate discussions about the

23  proposed stipulation, Apple provided both versions of the repair terms *and* the form email that it

24  would send customers about the $50 credit for those who obtained full-price repairs in 2017.  (*See*

25  Dkt. 174, Ex. 9 [at 3 & Exs. A, B]; *see also* Ex. 17 [at Exs. A, B].)  Before filing this motion,

26  Plaintiffs only ever asked Apple to provide the "*form* letter, email, agreement, or term of use" Apple

27  would send to customers (a request Plaintiffs sent by letter, without a discovery request).  (Dkt. 174,

28  Ex. 8 at 2 (emphasis added).)  Producing *every single* communication with customers would be

1   entirely unnecessary and unduly burdensome—especially on ten days' notice.  *See* Fed. R. Civ. P.

2   26(b)(1) (discovery must be "proportional to the needs of the case, considering . . . the importance of

3   the discovery in resolving the issues, and whether the burden or expense of the proposed discovery

4   outweighs its likely benefit").   Apple would have explained this to Plaintiffs had they sent a

5   discovery request, allowed Apple to respond, and conferred with Apple before moving to compel.

6   They did not.

7           The Court should deny Plaintiffs' request to compel discovery.

8                               **V.**     **CONCLUSION**

9           Plaintiffs' motion misstates the law and the facts, and Plaintiffs have offered no legal

10   justification to interfere with Apple's ongoing business, to abrogate the company's free speech rights,

11   and to compel it to communicate about this lawsuit.  Apple respectfully requests that the Court deny

12   the motion.

13

14   DATED:  August 21, 2018                    GIBSON, DUNN & CRUTCHER LLP

15

16                                             By:  _____*/s/ Christopher Chorba*_____
                                                         Christopher Chorba

17                                             *Attorneys for Defendant Apple Inc.*

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2      I, Christopher Chorba, hereby certify that on August 21, 2018, the foregoing **DEFENDANT**

3 **APPLE INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR RELIEF PURSUANT TO**

4 **RULE 23(d)** was filed electronically through the CM/ECF system, copies of which were sent by

5 First Class Mail to the below individuals and anyone else unable to accept them via the electronic

6 filing system:

7
8
Abdul Mohammed
258 East Bailey Rd Apt. C
Naperville, IL 60565

9
10
Andrew Kierstead
Hobson Bernardino & Davis LLP
11
444 South Flower Street
Suite 3100
12
Los Angeles, CA 90071

13
Anthony Oliver
1502 Benton Blvd, Apt. #5108
14
Savannah, GA 31407

15
Brian Hogue
16
103158
c/o ISC C
17
H-3
P.O. Box 70010
18
Boise, ID 83707

19
Cathleen M. Combs
20
Edelman Combs Latturner & Goodwin, LLC
120 South LaSalle Street
21
18th Floor
Chicago, IL 60603
22

23
Noah Benjamin Novogrodsky
Univ Toronto/Faculty Of Law
24
84 Queen's Park
Toronto ON M5S 2C5
25

26
Peter Wasylyk
Hobson Bernardino & Davis, LLP
27
444 South Flower Street, Suite 3100
Los Angeles, CA 90071

28

Randall Robinson Renick
Hadsell, Stormer, Richardson & Renick, LLP
128 N. Fair Oaks Ave.
Pasadena, CA 91103

Richard Brian Rosenthal
Law Offices of Richard B. Rosenthal, PA
169 E Flagler St. Ste 1422
Miami, FL 33131-1212

Richard I Woolf
Boyle Brasher LLC
One Metropolitan Square
211 North Broadway, Suite 2300
St. Louis, MO 63102

Richard S. Wayne
Strauss & Troy
Federal Reserve Building
150 E. Fourth St.
Cincinnati, OH 45202-4018

Steven Saul
Eggnatz Pascucci
5400 S. University Drive, Ste. 417
Davie, FL 33328

By:   _____*/s/ Christopher Chorba*_____
Christopher Chorba

24