THEODORE J. BOUTROUS, JR., SBN 132099
tboutrous@gibsondunn.com
CHRISTOPHER CHORBA, SBN 216692
cchorba@gibsondunn.com
THEANE EVANGELIS, SBN 243570
tevangelis@gibsondunn.com
TIMOTHY W. LOOSE, SBN 241037
tloose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

G. CHARLES NIERLICH, SBN 196611
gnierlich@gibsondunn.com
RACHEL S. BRASS, SBN 219301
rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone: 415.393.8200
Facsimile: 415.374.8458

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| **IN RE: APPLE INC. DEVICE PERFORMANCE LITIGATION** | CASE NO. 5:18-md-02827-EJD<br><br>**<u>PUTATIVE CLASS ACTION</u>**<br><br>**DEFENDANT APPLE INC.'S OPPOSITION TO PLAINTIFFS' REVISED AND UPDATED MOTION TO COMPEL INFORMATION REGARDING CONFIDENTIAL INVESTIGATIONS**<br><br>Judge: Hon. Edward J. Davila<br><br>Referral: Hon. Rebecca Westerfield (Ret.) Discovery Special Master |

# TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT ..... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ..... 3

III. ARGUMENT ..... 5

A. Plaintiffs Have Not Justified Their Request For All Subpoenas And Document Requests ..... 5

B. Plaintiffs' Interrogatories Are Untethered To Their Claims And Would Undermine Confidential Investigations ..... 9

IV. CONCLUSION ..... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
No. 11-1846-LHK (N.D. Cal. May 18, 2011).....7

*Campbell v. Facebook*,
No. 13-5996-PJH, 2015 WL 4463809 (N.D. Cal. July 21, 2015).....9

*In re Capacitors Antitrust Litig.*,
No. 14-3264-JD (N.D. Cal. Oct. 30, 2014).....8

*Capital Ventures Int'l v. J.P. Morgan Mortgage Acq. Corp.*,
No. 12-10085, 2014 WL 1431124 (D. Mass. Apr. 14, 2014).....7, 8

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. C-07-5944-SC, 2014 U.S. Dist. LEXIS 162989 (N.D. Cal. Nov. 20, 2014).....9

*Connex R.R. LLC v. AXA Corp. Sols. Assur.*,
No. 16-2368, 2017 WL 3433542 (C.D. Cal. Feb. 22, 2017).....6

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
No. 09-3690 (N.D. Ill. Mar. 4, 2010).....7

*In re Flash Memory Antitrust Litig.*,
No. 07-0086-SBA, 2008 WL 62278 (N.D. Cal. Jan. 4, 2008).....5

*Fort Worth Empl. Ret. Fund v. J.P. Morgan Chase & Co.*,
297 F.R.D. 99 (S.D.N.Y. 2013).....7

*In re High Tech Employee Antitrust Litig.*,
No. 11-cv-2509-LHK (N.D. Cal. 2011).....7

*In re Horizon Healthcare Serv., Inc. Data Breach Litig.*,
No. 13-cv-7418 (D.N.J. July 31, 2017).....6

*In re Lithium Ion Batteries Antitrust Litig.*,
No. 13-md-2420-YGR, 2013 U.S. Dist. LEXIS 72868 (N.D. Cal. May 21, 2013).....8

*Midwest Gas Servs., Inc. v. Indiana Gas Co.*,
No. 99-cv-0690, 2000 WL 760700 (S.D. Ind. Mar. 7, 2000).....2, 6

*In re Optical Disk Drive Antitrust Litig.*,
No. 10-md-2143-RS (N.D. Cal. 2011).....7

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
No. 05-md-1720, 2010 U.S. Dist. LEXIS 89275 (E.D.N.Y. Aug. 27, 2010).....9

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Pharm. Industry Avg. Wholesale Price Litig.*, No. 01-12257 (D. Mass. Oct. 28, 2002) ........ 8

*In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617 (S.D.N.Y. Nov. 30, 2010) ........ 7

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, No. 12-md-23280 (E.D. La. June 4, 2012) ........ 7

*Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd., et al.*, No. 08-cv-42 (E.D.N.Y. Nov. 7, 2013) ........ 7

*In re Resistors Antitrust Litig.*, No. 15-3820-JD (N.D. Cal. 2016) ........ 7

*Rivera v. NIBCO, Inc.*, 464 F.3d 1057 (9th Cir. 2004) ........ 5

*In re Rubber Chemicals Antitrust Litig.*, 486 F. Supp. 2d 1078 (N.D. Cal. 2007) ........ 5, 9

*Société Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522 (1987) ........ 5, 9

*In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896 (N.D. Cal. 2008) ........ 7

*In re Sulfuric Acid Antitrust Litig.*, No. 03-4576, 2004 WL 769376 (N.D. Ill. Apr. 9, 2004) ........ 8

*In re TFT/LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827-SI (N.D. Cal. Apr. 26, 2011) ........ 7, 9, 10

*In re Toyota Motor Corp. Unintended Acc. Mktg., Sales Prac., and Prod. Liab. Litig.*, No. 10-md-2151 (C.D. Cal. June 1, 2010) ........ 7

*In re Weatherford Int'l Sec. Litig.*, No. 11-1646, 2013 WL 5788680 (S.D.N.Y. Oct. 28, 2013) ........ 6

**Rules**

Fed. R. Civ. P. 26(b)(1) ........ 1, 5, 10

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Nearly two months ago, Apple produced more than *6 million* pages of documents in response to Plaintiffs' First Set of Requests for Production of Documents. This represents the lion's share of the core documents related to the performance management feature at the heart of this litigation, and these are the same documents produced to regulators in the United States (except for a very limited subset of inadvertently produced documents that were privileged and/or wholly irrelevant). To aid Plaintiffs in understanding this sizable document production, Apple even provided the complete list of search terms and the custodians.

This production substantially advanced the document discovery process in this case, and it should have put the parties on the accelerated path that Judge Davila has urged. But rather than review this production or engage with Apple on the considerable information that it has provided, Plaintiffs have brought an unnecessary motion to compel, seeking to require Apple to produce all "documents exchanged in related litigation and with regulators in related investigations," including any subpoenas and document demands in unrelated matters, and then to identify "all related litigation and governmental investigations" worldwide, whether public or confidential. These "cloned" discovery requests are wholly irrelevant to "any party's claims or defenses" and "[dis]proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Apple's document production—consisting of the only documents actually relevant to the claims and defenses in this case, in response to Plaintiffs' first set of discovery requests—should have mooted this discovery dispute altogether.

But even after obtaining those core documents, Plaintiffs continue to insist on the identification of the investigations and the underlying subpoenas/document demands. Plaintiffs offer two justifications for this additional information, but neither stands up to scrutiny. ***First***, Plaintiffs assert that they require the subpoenas and document requests that nonparties prepared in other matters so that Plaintiffs may "understand what [Apple's production] relate[s] to." (Mot. at 6.) But Plaintiffs did not disclose in their Motion that Apple already provided a full list of ***search terms*** and ***custodians*** on August 22, shortly after the massive production. That information is far more useful in understanding the production than the underlying demands, which are confidential and were subject to narrowing after confidential meet-and-confer discussions. And this is precisely why Plaintiffs' Motion should be

denied—even after producing the underlying documents, Apple will be subjected to endless rounds of questions from Plaintiffs, attempting to re-enact those discussions. It would be far more efficient for Plaintiffs to serve their own requests (as they recently did on September 19), and the parties can meet and confer over any remaining materials that Apple needs to produce. To that end, Apple anticipates a supplemental production in response to Plaintiffs' First RFPs in the next 30 days. Plaintiffs offer no authority to support their more inefficient approach; nearly all of the cases that they cite involve the production of the underlying documents, and not the subpoenas or document requests. Apple has already done this, and Plaintiffs should review these documents rather than bringing unnecessary discovery motions.[1]

*Second*, regarding the identity of the investigations "relating to any matter alleged in the [CAC]," Plaintiffs claim that they need this information because the Court has instructed Plaintiffs to "coordinate" with these officials. (Mot. at 7.) But their sole support for this claim is an order from Judge Davila appointing interim lead counsel that *preceded* these discovery requests—and which incorporated Plaintiffs' own proposed language regarding the responsibilities of their *State Court* Liaison. What Plaintiffs volunteered to undertake is not a valid reason under Fed. R. Civ. P. 26(b)(1) to compel disclosure of those proceedings. Plaintiffs also pay no heed to the serious confidentiality and privilege issues implicated by disclosure, nor do they consider the international comity analysis a court must undertake before considering whether to order disclosure of this information.

What Plaintiffs truly seek is not to obtain the documents actually relevant to this action, but to "piggyback" on the subpoenas and discovery requests in related proceedings. Rather than embark on fishing expeditions for work done by others in related proceedings, Plaintiffs should "do their own work," *Midwest Gas Servs., Inc. v. Indiana Gas Co.*, No. 99-cv-0690, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000), and actually focus on the claims at issue and the discovery needed in this litigation. Apple already has advanced this process by producing millions of pages of documents, and Plaintiffs' Motion should be denied.

---

1 As Apple has explained, its objection is limited to requests and subpoenas by governmental entities. Apple is willing to share requests served by other civil plaintiffs, although to date it has not produced any information in response to those requests, and Judge Karnow has tentatively indicated that he will stay the parallel (and duplicative) JCCP actions. (*Infra* p. 9.) Apple reserves its objection to Plaintiffs' effort to convert this domestic MDL into a global litigation.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Before they filed a consolidated pleading to govern this multidistrict action, Plaintiffs informally demanded production of all documents produced to, and all communications with, any "governmental agencies, regulatory authorities, Congress, [or] foreign investigators" anywhere in the world who might be investigating allegations similar to those alleged in this litigation. (Dkt. 117 Ex. A.) Although the parties were still conferring on this request, Plaintiffs filed an expedited motion to compel early discovery on June 8, 2018. (*See* Dkt. 122, at 5-6.) Judge Davila deferred decision of that motion until after Plaintiffs filed a consolidated complaint. (June 19 Hearing Tr. at 4:12-18.)

Four days after filing their governing pleading, Plaintiffs served formal discovery requests, their First RFPs and First Set of Interrogatories. The requests sought, *inter alia*, the production of (1) all subpoenas, correspondence, or any other requests for information received by Apple from any regulator or government entity anywhere in the world relating to the allegations in the CAC, (2) all documents produced to such entities, (3) all discovery requests in related litigation anywhere in the world relating to the claims raised in the CAC, (4) all documents produced to these litigants, and (5) all transcripts or recordings of testimony in any proceeding anywhere in the world relating to the CAC. (*See* Mot. at 6.) Plaintiffs' Interrogatories further demanded that Apple identify all "cases against, proceedings involving, inquiries from, and/or investigations of Apple" relating to "any matter alleged in the CAC" anywhere in the world. (*See id.* at 7.)

Within 30 days of receiving these requests, on August 6, 2018, Apple produced to Plaintiffs 313,176 documents spanning 6,175,169 pages. Apple explained these were "the same documents produced to regulators in the United States," except for a very small subset of inadvertently produced documents that were privileged and/or wholly irrelevant. (Loose Decl. Ex. 1 at 1-2.) Apple also served Responses and Objections to Plaintiffs' requests, noting the irrelevance and overbroad nature of the remaining requests, but nonetheless invited Plaintiffs to review the substantial document production provided, and then meet-and-confer if there were any issues remaining after examining Apple's substantial document production. (Loose Decl. ¶¶ 5-6; Ex. 2 at 5-10; Ex. 3 at 4-5.)

Given the unprecedented size and speed of this production, Apple had hoped that this would put any discovery disputes to rest. Instead, Plaintiffs refused to engage meaningfully with Apple on

any of the remaining requests, or even to conduct a meaningful review of the documents to determine if the production narrowed the matters in dispute. (Loose Decl. ¶¶ 6, 9-10, 12-13.) In a telephonic meet-and-confer on August 10, Plaintiffs' counsel asked only if Apple intended to disclose any proceedings related to the MDL, but refused to articulate any reasoning as why they believed identification of these proceedings were at all relevant to the claims in, or defenses to, the CAC, other than the vague statement that they believed this would lead to the discoverability of other evidence. (*Id.* ¶ 6.) Plaintiffs refused to engage further on any of their other discovery requests during this meet-and-confer. (*Id.*.)

On August 22, 2018, Apple provided Plaintiffs' counsel with a list of the custodians for its initial production, as well the search terms used to locate the documents. (Loose Decl. Ex. 4 at 2-18.) Apple further described the production as consisting of documents "that relate to the performance management feature introduced in iOS 10.2.1 to [iPhone 6 devices] and in iOS 11.2 to [iPhone 7 devices], including its design, development, implementation, testing, performance, communication with customers, and press coverage relating to these updates." (*Id.* at 2.) Plaintiffs also knew from Apple's August 6 letter that the documents produced were the same documents that had been previously provided to regulators in the United States, and Apple further communicated to Plaintiffs that, to the extent any other productions were made to regulators since the August 6 production, it would supplement its production to Plaintiffs. (Loose Decl. ¶ 10; Ex. 1 at 1-2.) Apple anticipates producing another 17,200 documents, spanning approximately 241,000 pages, within the next 30 days. (Loose Decl. ¶ 11.) Apple is also analyzing Plaintiffs' recently served Second Set of Requests for the Production of Documents, and it anticipates producing additional documents in response to those demands.

Apple conferred with Plaintiffs a final time on September 20 in an attempt to narrow the scope of the dispute. (*Id.* ¶ 12.) During this meet-and-confer, Plaintiffs confirmed that they had not completed a review of Apple's initial production, but that they nonetheless intended to file their motion to compel. (*Id.*) Plaintiffs asserted that they had no way of knowing what the documents were without receiving the underlying requests for production, but were unable to specify what about the documents

they found difficult to understand, or how the list of custodians and search terms failed to provide the requisite context. (*Id.*)

## III. ARGUMENT

The scope of discovery under Fed. R. Civ. P. 26(b)(1) is not unlimited. Instead, "[t]he Federal Rules provide limits on the scope of discovery[,] incentives for cooperation between the parties[,] and a basis for court resolution of discovery disputes. Allowing discovery outside the terms of these Rules . . . obviates these protections." *In re Flash Memory Antitrust Litig.,* No. 07-0086-SBA, 2008 WL 62278, at *5 (N.D. Cal. Jan. 4, 2008). Discovery is appropriate when it is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Moreover, "Rule 26 grants the court discretion to limit discovery on several grounds, including international comity." *In re Rubber Chemicals Antitrust Litig.*, 486 F. Supp. 2d 1078, 1081 (N.D. Cal. 2007) (citing *Société Nationale Industrielle Aerospatiale v. U.S. Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 544 (1987)). And where a party cannot articulate a basis for their request, it should be denied. *See id.* at 1082 (discouraging "[g]eneralized searches" for information); *see also Rivera v. NIBCO, Inc.*, 464 F.3d 1057, 1072 (9th Cir. 2004) (courts "need not condone the use of discovery to engage in 'fishing expedition[s]'").

By producing 6.1 million pages of documents in the very first month following the filing of a CAC in this action (along with the search terms, custodians, and a description of the production), Apple has already met—if not exceeded—its discovery obligations under the Federal Rules with regards to Plaintiffs' first discovery requests. Plaintiffs' remaining requests to compel production of communications "exchanged" with regulators and to compel disclosure of related proceedings anywhere in the world, are irrelevant to "any party's claim or defense" and "[dis]proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Moreover, responding to these requests would implicate broad confidentiality and privilege issues, as well as principles of international comity, that far outweigh any nominal need Plaintiffs could possibly articulate for this information after Apple's production. Plaintiffs' Motion should be denied.

### A. Plaintiffs Have Not Justified Their Request For All Subpoenas And Document Requests

As an initial matter, Plaintiffs continue to contend that Apple should be required to produce

"documents already exchanged with government regulators" (Mot. at 3), ignoring that Apple already has done just that. On August 6, 2018, Apple provided the same 6.1 million pages of documents that were "produced to _regulators_ in the United States." (Loose Decl. Ex. 1 at 1 (emphasis added).) What Plaintiffs truly seek is not to obtain the underlying production, but rather to "piggyback" on the subpoenas and other correspondence already exchanged in related proceedings. But those exchanges have no bearing on the underlying factual issues in *this* case, and rather than embark on fishing expeditions for document requests and correspondence exchanged in related proceedings, Plaintiffs should "do their own work and request the information they seek directly." *Midwest Gas Servs., Inc.*, 2000 WL 760700, at *1. Plaintiffs' attempt to compel this information fails for several reasons:

***First***, Plaintiffs cannot articulate why the underlying subpoenas, let alone all correspondence or "exchanges" with regulators, are relevant or proportional to the needs of the case in light of Apple's initial production. Courts routinely deny such requests on these grounds. *See, e.g., Connex R.R. LLC v. AXA Corp. Sols. Assur.*, No. 16-2368, 2017 WL 3433542, at *10 (C.D. Cal. Feb. 22, 2017) (denying request for communications with government authorities, which sought "information with only minimal relevance to this action [and were] not proportional to the needs of the case").

After devoting nearly three pages to inapplicable case law (*infra* pp. 7-8), Plaintiffs claim only that these subpoenas are "essential to assist counsel in understanding what the documents [produced by Apple] relate to." (Mot. at 6.) But when Apple's counsel asked what Plaintiffs were not able to understand after receiving the search terms, custodian lists, and Apple's description of the production, Plaintiffs' counsel glibly invoked Donald Rumsfeld, stating that there are "unknown unknowns," and "we don't know what we don't know." (Loose Decl. ¶ 12.)

Plaintiffs have not provided any examples of what is difficult to understand based on the search terms and custodians that Apple has already provided. Plaintiffs instead defer to three district court decisions, all of which are inapposite:

- *In re Horizon Healthcare Serv., Inc. Data Breach Litig.*, No. 13-cv-7418 (D.N.J. July 31, 2017) (Mot. at 6), ordered the production of just "three discrete items," including a subpoena in a related proceeding, only after the parties agreed to enter into mediation, and stayed *all other discovery.*
- Contrary to Plaintiffs' claims (Mot. at 6), *In re Weatherford Int'l Sec. Litig.*, No. 11-

1646, 2013 WL 5788680, at *1 (S.D.N.Y. Oct. 28, 2013), does not concern production of subpoenas at all, but interrogatories concerning transactions made by a company employee.

- And although the court in *Fort Worth Empl. Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 110-11 (S.D.N.Y. 2013) (Mot. at 6), ordered production of subpoenas, it did *not* require defendants to turn over all of the documents actually produced in response to those subpoenas. Moreover, the court specifically denied plaintiff's requests for any *other* communications beyond the subpoena itself (*id.*), whereas Plaintiffs here seek all correspondence.

Apple's production of the underlying factual documents provided to regulators in other proceedings eliminates any need to produce the correspondence between Apple and regulators. *See Capital Ventures Int'l v. J.P. Morgan Mortgage Acq. Corp.*, No. 12-10085, 2014 WL 1431124, at *3 (D. Mass. Apr. 14, 2014) (denying request for communications with regulators because defendants already agreed to produce certain documents produced to regulators); *see also In re TFT/LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827-SI (N.D. Cal. Apr. 26, 2011) Dkt. No. 2686 at 8, 10 (same).

Plaintiffs' remaining authority confirms this conclusion: the cases either (i) establish that underlying correspondence and communications with regulators should not be discoverable following defendant's production of the actual underlying documents;[2] (ii) demonstrate that productions consisting of much smaller volumes than Apple's are sufficient to stay further discovery altogether;[3] (iii) order defendants to produce far less than Apple already has here;[4] or (iv) consider requests where

[2] *In re: Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09-3690 (N.D. Ill. Mar. 4, 2010), Dkt. 75 (ordering production of documents previously produced to regulators, but requiring no additional information or details from defendants); *In re Optical Disk Drive Antitrust Litig.*, No. 10-md-2143-RS (N.D. Cal. 2011), Dkt. 370, 379 (same); *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, No. 12-md-23280 (E.D. La. June 4, 2012), Dkt. 93 (same); *Precision Assocs., Inc. v. Panalpina World Transp. (Holding) Ltd., et al.*, No. 08-cv-42 (E.D.N.Y. Nov. 7, 2013), Dkt. 933 (same); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 899-900 (N.D. Cal. 2008) (specifically limiting discovery *only* to those documents produced to a regulator).

[3] *In re Resistors Antitrust Litig.*, No. 15-3820-JD (N.D. Cal. 2016), Dkt. 112 (ordering production of documents previously produced to regulators, but ordering no additional information and staying discovery); *In re High Tech Employee Antitrust Litig.*, No. 11-cv-2509-LHK (N.D. Cal. 2011), Dkt. 88 at 1 (same); *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617 (S.D.N.Y. Nov. 30, 2010), Dkt. 59, at 2-3 (same).

[4] *Apple Inc. v. Samsung Elecs. Co.,* No. 11-1846-LHK (N.D. Cal. May 18, 2011) Dkt. 52 (ordering limited production of product samples in trademark infringement case); *In re Toyota Motor Corp.*

defendants did not challenge the discovery at all.[5]

_Second_, Plaintiffs' request for "exchanges" in other litigation and investigations should be denied because they cannot even specify what they are seeking. During the conference with the Special Master on September 14, 2018, Plaintiffs suggested they sought only "subpoenas" and any correspondence "limiting" the requests, but during the parties' meet-and-confer teleconference on September 20, Plaintiffs insisted on all "exchanges," as stated in their requests and in their Notice of Motion. (Loose Decl. ¶¶ 12-13.) The Motion itself offers little clarity, as it discusses only "subpoenas," as well as the underlying factual documents (which already have been produced). (*Id.* at 6.)[6]

_Third_, Plaintiffs' request implicates serious confidentiality and privilege issues. *See Capital Ventures Int'l,* 2014 WL 1431124, at *3 (denying request for communications with regulators because, *inter alia*, such communications are "subject to numerous confidentiality and privilege issues"). In some cases, Apple is under a legal obligation or agreement with the regulators not to disclose confidential proceedings, which would be violated by the production of subpoenas or correspondence in those proceedings, and would likely require a process for regulators to object to the discovery. *See, e.g.*, *In re Capacitors Antitrust Litig.*, No. 14-3264-JD (N.D. Cal. Oct. 30, 2014) (Dkt. 309) (granting government's motion to intervene and permitting it to object); *In re Sulfuric Acid Antitrust Litig.*, No. 03-4576, 2004 WL 769376, at *5 (N.D. Ill. Apr. 9, 2004) (denying discovery that would disrupt ongoing criminal investigation). Plaintiffs have not identified any compelling reason to disregard these legitimate concerns.

And to the extent Plaintiffs seek production of "communications" with regulators or other

---

*Unintended Acc. Mktg., Sales Prac., and Prod. Liab. Litig.*, No. 10-md-2151 (C.D. Cal. June 1, 2010), Dkt. 180 (requiring production of only 75,000 to 100,000 pages of documents).

[5] *In re Pharm. Industry Avg. Wholesale Price Litig.*, No. 01-12257 (D. Mass. Oct. 28, 2002), Dkt. No. 161 (ordering production of all documents in related proceedings, *but* without any objection or opposition from defendant); *In re Lithium Ion Batteries Antitrust Litig*., No. 13-md-2420-YGR, 2013 U.S. Dist. LEXIS 72868, at *25-32 (N.D. Cal. May 21, 2013) (holding that production of 200,000 pages of documents was unduly burdensome, but permitting discovery only from defendants who made no burden objection).

[6] Plaintiffs also identify Request No. 5 (all "transcripts or recordings of proceedings" in any other litigation or investigation (Mot. at 6)), but they never attempt to justify this request, nor do they identify this material in their Notice of Motion. Apple reserves its objections to this material as well, and it reserves the right to respond to any belated justification offered by Plaintiffs.

entities in foreign proceedings, courts have been especially sensitive to the concern that civil discovery not disrupt sovereign interests. In particular, courts undertake a comity analysis before ordering such discovery, and frequently deny requests for documents in foreign proceedings under this analysis. *See In re Rubber Chems.,* 486 F. Supp. 2d at 1081-84 (noting that "Rule 26 grants the court discretion to limit discovery on several grounds, including international comity" and applying comity analysis enumerated in *Aerospatiale,* 482 U.S. at 544, to deny requests for foreign investigation documents); *Campbell v. Facebook*, No. 13-5996-PJH, 2015 WL 4463809, at *2-3 (N.D. Cal. July 21, 2015) (same); *In re TFT/LCD*, No. 07-md-1827-SI, Dkt. No. 2686 at 6 (denying motion to compel production of defendant's submissions to EC); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2014 U.S. Dist. LEXIS 162989, at *104-06 (N.D. Cal. Nov. 20, 2014) (denying request for EC's confidential decision in related investigation); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, No. 05-md-1720, 2010 U.S. Dist. LEXIS 89275, at *12, *29-35 (E.D.N.Y. Aug. 27, 2010) (denying request for portions of EC enforcement record and statement of objections). The production of the requested communications has the potential to conflict with applicable foreign laws or undermine foreign enforcers' "ability to initiate and prosecute future investigations by creating disincentives to cooperate with [the authorities]," *In re Rubber Chems.,* 486 F. Supp. 2d at 1084, factors the Court should consider in analyzing whether such communications should be produced.

Finally, as Apple has explained, it has no objection to sharing document requests in other U.S. civil litigation, as that is standard practice in MDLs. (Loose Decl. Ex. 2 at 8.) Plaintiffs already received the discovery requests served in *Apple OS Cases*, JCCP No. 4976 (Cal. Sup. Ct., S.F. Cnty.), but there has been no discovery to date in those actions, and Judge Karnow has indicated that his tentative ruling is to stay those proceedings altogether, pending a resolution of this MDL.

### B.  Plaintiffs' Interrogatories Are Untethered To Their Claims And Would Undermine Confidential Investigations

Next, Plaintiffs also seek to compel Apple to identify *all* cases, proceedings, inquiries, and investigations, whether public or confidential, international or domestic. (Mot. at 7.) They cite no case law to support this sweeping request, which is vastly overbroad and plainly not "relevant to any party's claim or defense" or "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

Plaintiffs' only justification is the purported claim that this Court has "ordered Plaintiffs to coordinate with relevant regulators and litigants." (Mot. at 6.) But this is merely referring to Judge Davila's adoption of *Plaintiffs'* language in an order appointing Rule 23(g) interim lead counsel in this action. That order provides that Plaintiffs' ***State Court*** Liaison has volunteered to "monitor any ongoing litigation in any state court [and] any governmental or regulatory proceedings, and coordinate with such proceedings." (Dkt. 99 at 9; *see also* Dkt. 35 at 12.) Obligations that Plaintiffs volunteer to undertake do not impose discovery obligations on Apple under the Federal Rules. Moreover, Judge Davila did *not* order Apple to disclose any confidential investigation to Plaintiffs or violate any legal obligation or agreements with regulators. In fact, that order *preceded* Plaintiffs' discovery requests as well as the motions practice that followed. And he denied Plaintiffs' Expedited Motion until the filing of a consolidated complaint, then ordered the parties to continue to confer. (June 19 Hearing Tr. at 4:12-18, 11:13-18; July 11 Hearing Tr. at 28:8-19.)

Nonetheless, Apple has offered to disclose all public proceedings. Courts have recognized that identification of the public investigations are more than sufficient. *See In re TFT/LCD,* No. 07-md-1827-SI, Dkt. 1827 at 4 (limiting plaintiffs' motion to only publicly-disclosed investigations and declining to rule on discoverability of documents relating to other regulatory bodies).

## IV. CONCLUSION

By its early production of key documents to Plaintiffs and its continued willingness to produce other documents produced to regulators in related proceedings, Apple has demonstrated its commitment to the efficient progression of discovery in this matter. Apple remains willing to comply with all of its discovery obligations under the Federal Rules of Civil Procedure. Plaintiffs, on the other hand, have wasted valuable time and resources by focusing on ancillary discovery requests that are irrelevant to the claims actually at issue in this litigation. Plaintiffs' Motion should be denied.

DATED: September 28, 2018

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Christopher Chorba*
Christopher Chorba

*Attorneys for Defendant Apple Inc.*

**CERTIFICATE OF SERVICE**

I, Christopher Chorba, hereby certify that on September 28, 2018, the foregoing **OPPOSITION TO PLAINTIFFS' REVISED AND UPDATED MOTION TO COMPEL** and attachments thereto were filed electronically through the CM/ECF system, copies of which were sent by First Class Mail to the following addresses and anyone else unable to accept them via the electronic filing system:

Abdul Mohammed
258 East Bailey Rd Apt. C
Naperville, IL 60565

Andrew Kierstead
Hobson Bernardino & Davis LLP
444 South Flower Street
Suite 3100
Los Angeles, CA 90071

Anthony Oliver
1502 Benton Blvd, Apt. #5108
Savannah, GA 31407

Brian Hogue
103158
c/o ISC C
H-3
P.O. Box 70010
Boise, ID 83707

Cathleen M. Combs
Edelman Combs Latturner & Goodwin, LLC
120 South LaSalle Street
18th Floor
Chicago, IL 60603

Noah Benjamin Novogrodsky
Univ Toronto/Faculty Of Law
84 Queen's Park
Toronto ON M5S 2C5

Peter Wasylyk
Hobson Bernardino & Davis, LLP
444 South Flower Street, Suite 3100
Los Angeles, CA 90071

Randall Robinson Renick
Hadsell, Stormer, Richardson & Renick, LLP
128 N. Fair Oaks Ave.
Pasadena, CA 91103

Richard Brian Rosenthal
Law Offices of Richard B. Rosenthal, PA
169 E Flagler St. Ste 1422
Miami, FL 33131-1212

Richard I Woolf
Boyle Brasher LLC
One Metropolitan Square
211 North Broadway, Suite 2300
St. Louis, MO 63102

Richard S. Wayne
Strauss & Troy
Federal Reserve Building
150 E. Fourth St.
Cincinnati, OH 45202-4018

Steven Saul
Eggnatz Pascucci
5400 S. University Drive, Ste. 417
Davie, FL 33328

By: *\/s/ Christopher Chorba*
Christopher Chorba