UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: APPLE INC. DEVICE PERFORMANCE LITIGATION | Case No. 18-md-02827-EJD<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR RELIEF PURSUANT TO RULE 23(d) OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>Dkt. No. 174 |

Before the Court is Plaintiffs' motion for relief pursuant to Rule 23(d) of the Federal Rules of Civil Procedure. Plaintiffs contend that Apple Inc.'s ("Apple") pre-certification communications with putative class members regarding Apple's iPhone discounted battery replacement program are "intensely misleading" and "trick" the class members into releasing or limiting claims in this action. Dkt. 174, p. 7. As a curative measure, Plaintiffs request an order providing that:

> 1. Any releases, waivers and agreements affecting remedies in this litigation that Apple obtained based on communications with putative class members regarding 1) the discounted battery replacement and 2) the refund credit, that failed to disclose the pendency of this proposed class action prior to the date of entry of this Order, are declared invalid, unenforceable, and void.
>
> 2. Within thirty (30) days of entry of this Order, Apple shall issue a corrective notice regarding the discounted battery replacement that Apple announced on December 28, 2017, and the refund credit announced on May 23, 2018, informing putative class members of the pendency of this proposed class action, with the language and form to be approved by Plaintiffs' Interim Co-Lead Counsel and the Court. All future communications regarding the discounted battery

Case No.: 18-md-02827-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR RELIEF PURSUANT TO RULE 23(d) OF THE FEDERAL RULES OF CIVIL PROCEDURE

1

> replacement and refund credit shall include a similar notice approved by Plaintiffs' Interim Co-Lead Counsel and the Court.
>
> 3. Within ten (10) days of entry of this Order, Apple shall produce to Plaintiffs' Interim Co-Lead Counsel copies of all prior communications with putative class members, and the names, email addresses, and other contact information for those putative class members that Apple has contacted regarding the discounted battery replacement and the refund credit on or after December 21, 2018 [sic], the date on which this action commenced.

Dkt. 174, p. i. Apple opposes the motion, asserting, among other things, that "Apple's message, both to Plaintiffs' counsel and publicly, has been consistent, clear, and uncontroversial: No right, claim, or interest of any Plaintiffs or putative class member regarding the purchase of the device or the installation of an iOS software update is waived by participation in, or use of, the discounted pricing program." Dkt. 187, p. 6. Apple readily acknowledges, however, that it intends to "reserve[] its objections" to any customer who obtains a discounted battery replacement receiving "double recovery" in this action. *Id.*, p. 11. For the reasons set forth below, Plaintiffs' motion is denied.

**I.  BACKGROUND**

On December 28, 2017, Apple announced a program that allows any customer with an eligible iPhone 6 or later model to obtain a battery replacement from Apple for $29 instead of the standard price of $79 for devices that are out of warranty and not covered by AppleCare+ or another superseding Apple service plan. *See* Declaration of Christopher Chorba ("Chorba Decl.") ¶ 2; *see also* https://support.apple.com/iphone/repair/battery-power.

On February 9, 2018, plaintiffs in three of the actions that have been consolidated into the instant MDL filed a motion for expedited relief pursuant to Rule 23(d) of the Federal Rules of Civil Procedure. The Court stayed the motion pending a decision on consolidation by the Judicial Panel on Multidistrict Litigation and pending appointment of lead plaintiffs' counsel.

On May 23, 2018, Apple announced a program for customers who had already replaced their battery at full price between January 1, 2017 and December 28, 2017.[1] Apple provided those

---

[1] The December 28, 2017 and May 23, 2018 programs are collectively referred to hereinafter as

customers with a $50 credit for an out-of-warranty battery replacement for an iPhone 6 or later model. *See* Chorba Decl. ¶ 4; *see also* https://support.apple.com/iphone-out-of-warranty-battery-replacement-credit. Before announcing the program, on May 23, 2018, Apple notified Plaintiffs' counsel of the program and explained that "Apple does not intend participation in this program to extinguish any legal rights or claims stemming from events unrelated to a repair." Dkt. No. 174, Ex. 7. More specifically, Apple explained as follows:

> The terms and conditions applicable to a repair service, such as a battery replacement, will govern that service. In particular, those terms govern repair services and replacement components. For example, the terms would address the risk of unintended data loss incident to the repair of the device and/or system components, and they would apply to any claim relating to such losses during a repair. The terms do not—and do not purport to—replace, waive, or otherwise diminish the terms and conditions to which customers agreed in connection with the original purchase of their iPhone devices. That said, no plaintiffs or putative class members may recover twice for the same alleged injury.

*Id*.

When Plaintiffs' counsel requested assurance that participation in the credit program would not waive putative class members' claims in this lawsuit, Apple reiterated that Apple "does not intend participation in [the $50 credit program] to extinguish any legal rights that are based upon events predating the battery replacement service" and quoted from its May 23, 2018 letter to Plaintiffs' counsel. Dkt. 174, Ex. 9 at p. 1. Apple also explained that it did not intend participation in the December 28, 2017, program to extinguish any legal rights unrelated to a repair. Apple explained that repairs performed at an Apple repair location, including an out-of-warranty battery replacement at the $29 reduced price, are governed by the "U.S. Retail Repair Terms." *See id*. at p. 2; Chorba Decl. ¶ 6. Repairs performed by Apple when a customer mails an iPhone device to Apple for repair, and when the device is out of warranty and not covered by a superseding Apple service plan (such as AppleCare+), are governed by the "Global Repair Terms." Dkt. 174, Ex. 9 at p. 2; Chorba Decl. ¶ 6 n. 1. According to Apple, both the U.S. Retail

---

the "battery replacement program."
Case No.: 18-md-02827-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR RELIEF PURSUANT TO RULE 23(d) OF THE FEDERAL RULES OF CIVIL PROCEDURE
3

Repair Terms and Global Repair Terms are intended to govern repair services and replacement components provided by Apple. Dkt. 174, Ex. 9 at p. 2. Apple also explained that it does not intend for the U.S. Retail Repair Terms or the Global Repair Terms "to extinguish any rights or claims stemming from events prior to a repair, such as those alleged in the various complaints in this matter." *Id*. Apple also reiterated that "no plaintiffs or putative class members may recover twice for the same alleged injury," explaining that "consumers who received a $50 discount on . . . a battery replacement may not recover $50 *as if they paid full price for the replacement service*." *Id*. Apple also provided Plaintiffs with an exemplar email to customers regarding the $50 credit. Dkt. 174, Ex. 9 at p. 3.

Plaintiffs' counsel requested further clarification and proposed entry of a joint stipulation addressing the effect of the battery replacement program on the claims alleged in this MDL. Dkt. 174, Ex. 10 at p. 1. The parties continued to meet and confer. Apple stated again that Apple's battery replacement program does not limit claims unrelated to repairs, and that "Apple does not view the $50 credit as an 'offset to damages,' but merely reserves its objections as to any putative class member's effort to seek the same $50 in damages twice." Chorba Decl. ¶ 10.[2]

On July 23, 2018, approximately two months after the parties first began negotiating a possible stipulation, Plaintiffs' counsel provided a draft stipulation to Apple and asked that Apple provide an executed version in four days. Dkt. 174, Ex. 15. Apple's counsel informed Plaintiffs that it would return edits to the draft stipulation by close of business on August 7, 2018. Chorba Decl. ¶ 20. Apple provided Plaintiffs' counsel with a revised stipulation as promised which included the following proposed agreement:

> [E]xcept to the extent provided in Apple's U.S. Retail Repair Terms (attached hereto as Exhibit A) and Global Repair Terms (attached hereto as Exhibit B), and except as to Apple's objection to any double-recovery (i.e., a putative class member claiming a $50 credit for a battery replacement before December 2017, when that putative class member already received the $50 credit pursuant to the

---

[2] Apple in turn requested clarification from Plaintiffs regarding what damages they intended to seek in their Consolidated Amended Complaint ("CAC). *Id*. Plaintiffs refused to answer. *Id*.

Case No.: 18-md-02827-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR RELIEF PURSUANT TO RULE 23(d) OF THE FEDERAL RULES OF CIVIL PROCEDURE
4

> program discussed above), no right, claim or interest of any Plaintiff or putative class member that otherwise is available and properly asserted in this Action will be mooted, settled, waived, or released by participation in, or use of, any feature of the price reduction to $29 announced on December 28, 2017 or the $50 credit for a battery replacement announced on May 23, 2018, nor will participation in, or acceptance, receipt, or use of, any feature of the price reduction to $29 announced on December 28, 2017 or the $50 credit for a battery replacement announced on May 23, 2018 be used in any manner in opposition to class certification or opposition to inclusion of that putative Class Member in any class definition in the Action by virtue of participation in either program.

Dkt. 174, Ex. 17. Plaintiffs filed the instant motion hours after receiving Apple's revised stipulation.

## II. LEGAL STANDARDS

"Rule 23(d) gives district courts the power to regulate the notice and opt-out processes and to impose limitations when a party engages in behavior that threatens the fairness of the litigation." *Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 756 (9th Cir. 2010), *judgment vacated on other grounds*, 132 S.Ct. 74 (2011). "[T]he purpose of Rule 23(d)'s conferral of authority is not only to protect class members in particular but to safeguard generally the administering of justice and the integrity of the class certification process." *O'Connor v. Uber Technologies, Inc.*, No. C-13-3826 EMC, 2014 WL 1760314, at *3 (N.D. Cal. May 2, 2014). "Under Federal Rule of Civil Procedure 23(d), in conducting a class action the Court may issue orders that 'require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of: (i) any step in the action; (ii) the proposed extent of the judgment; or (iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action.'" *Masonek v. Wells Fargo Bank*, No. 09-1048 DOC, 2009 WL 10672345, at *2 (C.D. Cal. Dec. 21, 2009) (quoting Fed. R. Civ. P. 23(d)(1)(B)).

Communications that are misleading pose a threat to the fairness of the litigation process, the adequacy of representation and the administration of justice. *Cheverez v. Plains all American Pipeline, LP*, No. 15-4113 PSG, 2016 WL 861107, at *2 (C.D. Cal. Mar. 3, 2016). Accordingly, a

court may take action to cure inaccurate, confusing or misleading communications. *Id.*; *see also Keystone Tobacco Co., Inc. v. U.S. Tobacco Co.*, 238 F. Supp. 2d 151, 157 (D. D.C. 2002) (the court "would be greatly troubled by communications from defendants and/or their representatives to putative class members that were incomplete, inaccurate, purposely misleading or coercive"). "Examples of problems or abuse include communications that 'misrepresent the status or effect of the pending action' or have the 'potential for confusion.'" *Hernandez v. Best Buy Stores, L.P.*, No. 13-2587 JM, 2015 WL 7176352, at *5 (S.D. Cal. Nov. 13, 2015) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-100 n. 12 (1981)).

"An order under *Gulf Oil* 'does not require a finding of actual misconduct.'" *Slavkov v. Fast Water Heater Partners I, LP*, No. 14-4324 JST, 2015 WL 6674575, at *2 (N.D. Cal. Nov. 2, 2015). Nor does Rule 23(d) require a finding of actual harm. *Cheverez v. Plains all American Pipeline, LP*, 2016 WL 861107, at *2. Instead, "[t]he key is whether there is 'potential interference' with the rights of the parties in a class action." *O'Connor v. Uber Technologies, Inc.*, No. C-13-3826 EMC, 2013 WL 6407583, at *4-5 (N.D. Cal. Dec. 6, 2013).

Pre-certification communications to potential class members are permitted and are considered constitutionally protected speech. *Mevorah v. Wells Fargo Home Morg., Inc.*, No. 05-1175 MHP, 2005 WL 4813532, at *3 (N.D. Cal. Nov. 17, 2005) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. at 101); *Parks v. Eastwood Ins. Services, Inc.*, 235 F. Supp. 2d 1082, 1084 (C.D. Cal. 2002); *Atari, Inc. v. Superior Court of Santa Clara County*, 166 Cal. App. 3d 867, 871 (1985). As such, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co.*, 452 U.S. at 101; *see also Kelly v. Pac. Tele. Grp.*, No. 97-02729 CAW, 1999 WL 33227541, at *1 (N.D. Cal. Oct. 20, 1999) ("An order limiting communications should issue only after a careful weighing of competing interests, and must be based on a clear record and specific findings reflecting the need for such an order."). "Only such a determination can ensure that the court is furthering, rather than

hindering, the policies embodied in the Federal Rules of Civil Procedure, especially Rule 23." *Gulf Oil Co.*, 452 U.S. at 101-102. "[S]uch a weighing — identifying the potential abuses being addressed — should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id*. at 102; *see also White v. Experian Information Solutions, Inc.*, No. 05-1070 DOC, 2009 WL 4267843, at *8 (C.D. Cal. Nov. 23, 2009) ("*Gulf Oil* encourages courts to narrowly tailor restrictions such that limitations do not make it more difficult for the parties to vindicate their rights.").

## III. DISCUSSION

As an initial matter, Apple contends that Rule 23(d) is inapplicable for the simple reason that Apple is not communicating about the litigation, much less communicating misleading information about the litigation. Although there is caselaw supporting Apple's position (*see Cruz v. Redfin Corp.*, No. 14-05234-TEH, 2016 WL 2621966 (N.D. Cal. May 9, 2016) and *Payne v. Goodyear Tire & Rubber Co.*, 207 F.R.D. 16 (D. Mass. 2002)), neither case cited by Apple adopted such a hard and fast rule. In *Cruz*, the allegedly misleading communication was an independent contractor agreement containing an arbitration agreement. The plaintiff argued that district courts "routinely require the issuance of curative notice in situations where putative class members have received misinformation which may affect not only their rights but their understanding of those rights." The *Cruz* court acknowledged that plaintiff's position was sound, but ultimately concluded that a curative notice was inappropriate for several reasons, not merely because the agreement did not communicate any information about the class action. *Cruz*, 2016 WL 2621966, at *2. In *Payne*, plaintiffs brought a product defect class action suit. Defendant Goodyear offered customers a free inspection of the allegedly defective product—a hose for radiant floor heating systems. Plaintiffs sought an order prohibiting defendant from communicating with putative class members. The *Payne* court denied plaintiffs' motion because there was insufficient evidence that the inspections were coercive or misleading. *Payne*, 207 F.R.D. at 20. In reaching this conclusion, the *Payne* court the noted that "the record here contains

Case No.: 18-md-02827-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR RELIEF PURSUANT TO RULE 23(d) OF THE FEDERAL RULES OF CIVIL PROCEDURE

7

1   no evidence allowing the inference that Goodyear is either pressuring plaintiffs to opt out of the
2   litigation or covertly robbing plaintiffs of their opportunity to participate in the instant litigation:
3   the record does not establish any communication with potential plaintiffs concerning litigation at
4   all." *Id*. at 21. Thus, the *Payne* court's decision to deny Rule 23(d) relief was not based solely
5   upon the lack of communication about the lawsuit.

Furthermore, Apple's argument ignores Ninth Circuit precedent establishing that Rule 23(d) gives district courts "broad authority to exercise control over a class action" and that this authority extends to "behavior that threatens the fairness of the litigation." *Wang v. Chinese Daily News, Inc.*, 623 F.3d at 755-56; *see also Balasanyan v. Nordstrom, Inc.*, No. 10-2671 JM, 2012 WL 760566, at *3 (S.D. Cal. Mar. 8, 2012) (rejecting "bright line rule" that would focus on whether a communication specifically mentions the lawsuit).

**A. Apple's Communications Do Not Threaten the Fairness Of The Litigation**

Plaintiffs contend that Apple's communications with putative class members regarding the battery replacement program threaten the fairness of the litigation because the communications "are designed to obtain [class members'] uninformed 'consent' to waive, release, or settle some or all of the proposed class claims." Dkt. 174, p. 13. For support, Plaintiffs cite to Apple's statements in a letter to Plaintiffs' counsel dated July 5, 2018 (Dkt. 174, Ex. 13), which Plaintiffs construe as containing an admission that Apple "developed the battery replacement program in direct response to this litigation and intended it as partial relief." *Id*. In particular, Plaintiffs focus on Apple's statements in the July 5, 2018 letter that "no plaintiffs or putative class members may recover twice for the same alleged injury" and "Apple has already taken action . . . with respect to the type of relief that you seek" as evidence of Apple's intent to affect a waiver of putative class members' claims in this lawsuit.

Apple's July 5, 2018 letter to Plaintiffs' counsel contains no such admission. At no point did Apple "admit" that the battery replacement program was a response to litigation. The relevant portions of Apple's letter state as follows:

Case No.: 18-md-02827-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR RELIEF PURSUANT TO RULE 23(d) OF THE FEDERAL RULES OF CIVIL PROCEDURE

8

> Nothing in your letter demonstrates any sort of actionable conduct under the CLRA or any other law, as battery aging and associated device performance impact are innate characteristics of lithium-ion batteries. . .
>
> Your letter demands that Apple take the following action to address plaintiffs' unspecified claims: (1) "Identify or make a reasonable attempt to identify to Co-Lead Counsel those individuals and entities who purchased the Devices"; (2) "In a format provided by Co-Lead Counsel, notify all such purchasers so identified that, upon their request, Apple will offer an immediate remedy for past wrongful conduct, including a full refund of the purchase price, plus interest, costs, and attorneys' fees"; (3) Undertake (or promise to undertake within a reasonable time if it cannot be done immediately) the actions described above for all purchased Devices"; and (4) "Cease from expressly or impliedly representing to consumers who purchased Devices are non-defective, as more fully described in the previously-filed complaints." (Ltr. at 2–3.)
>
> Apple has already taken action, however, with respect to the type of relief that you seek, and did so months before receiving your letter:
>
> . . .
>
> As you know, Apple provided all of these benefits to its customers before the date of your letter. All of the alleged "violations" in your letter are non-existent, and the "remedies" you demand already are in place. All of Apple's actions were taken with the intent of improving customers' experiences with their existing devices, and nothing in your letter sets forth any facts demonstrating otherwise, much less that there has been a violation of the CLRA or any other law.

Dkt. 174, Ex. 13, pp. 2-3. As is evident from the cited text above, Apple was simply replying to the relief Plaintiffs requested in the letter. Apple's July 5, 2018 letter does not support Plaintiffs' contention that Apple is soliciting putative class members' uninformed 'consent' to waive, release, or settle some or all of the proposed class claims.

Moreover, Apple has made very clear in communications with Plaintiffs' counsel that it does not intend for the battery replacement program to affect this lawsuit. Apple's stated intent is also consistent with the U.S. Retail Repair Terms and Global Repair Terms, neither of which contain any provisions limiting the claims in this suit. To the contrary, the U.S. Retail Repair Terms is prefaced by a clear statement that: "These Terms & Conditions (T&Cs) govern the service of your

product by Apple Inc." Dkt. 174, Ex. 9 (at Ex. A, p. 1). The U.S. Retail Repair Terms contains a provision limiting liability for "special, indirect, incidental or consequential damages *resulting from services provided*" during the repair, stating in pertinent part:

> 6. TO THE MAXIMUM EXTENT PERMITTED BY LAW, APPLE AND ITS AFFILIATES, WILL UNDER NO CIRCUMSTANCES BE LIABLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM SERVICES PROVIDED OR UNDER ANY OTHER LEGAL THEORY, INCLUDING BUT NOT LIMITED TO LOSS OF REVENUE; LOSS OF ACTUAL OR ANTICIPATED PROFITS (INCLUDING LOSS OF PROFITS ON CONTRACTS); LOSS OF THE USE OF MONEY; LOSS OF ANTICIPATED SAVINGS; LOSS OF BUSINESS; LOSS OF OPPORTUNITY; LOSS OF GOODWILL; LOSS OF REPUTATION; LOSS OF, DAMAGE TO, OR CORRUPTION OF DATA; OR ANY COSTS OF RECOVERING, PROGRAMMING, OR RESTORING ANY PROGRAM OR DATA STORED OR USED WITH YOUR PRODUCT AND ANY FAILURE TO MAINTAIN THE CONFIDENTIALITY OF DATA STORED ON YOUR PRODUCT.

*Id.* at p. 2. The Global Repair Terms contain a similar limitation-of-liability clause as the U.S. Retail Repair Terms. Dkt. 174, Ex. 9 (at Ex. B ¶ 3.3). Thus, neither the U.S. Retail Repair Terms nor the Global Repair Terms supports Plaintiffs' contention that Apple is soliciting putative class members' uninformed 'consent' to waive, release, or settle some or all of the proposed class claims.

None of the cases relied upon by Plaintiffs support Plaintiffs' contention that Apple should be required to notify putative class members about this litigation. In *Camp v. Alexander*, 300 F.R.D. 617 (N.D. Cal. 2014), the defendant in a putative wage-and-hour class action sent a letter to potential class member employees describing the pending lawsuit and its potential negative effect on defendants' dental practice and providing an opt-out declaration for employees to sign. The *Camp* court described defendant's communication as highly inflammatory and coercive, and found that the communications "discourage[d] participation in the collective action." *Id.* at 625-67. The *Camp* court accordingly invalidated the opt-outs and issued a curative notice. In *Guifu Li v. A Perfect Day Franchise, Inc.*, 270 F.R.D. 509 (N.D. Cal. 2010), the defendants held one-on-

Case No.: 18-md-02827-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR RELIEF PURSUANT TO RULE 23(d) OF THE FEDERAL RULES OF CIVIL PROCEDURE
10

one meetings with each of their employees and presented opt-out forms, but failed to provide copies of the opt-out forms for employees to take with them or to provide a written translation of the forms in the employees' primary language. These meetings produced signed forms from a substantial number of employees. Under these circumstances, the *Guifu Li* court held that the meetings were "inherently coercive." *Id*. at 518. Here, Plaintiffs do not contend that Apple's communications are inflammatory or coercive, and Apple has not presented putative class members with opt-out forms. Hence, *Camp* and *Guifu Li* are readily distinguishable.

In *Slavkov*, plaintiffs asserted claims against their employer for wage and hour violations. *Slavkov v. Fast Water Heater Partners I, LP*, 2015 WL 6674575, at *1. The defendants sent two letters to the putative class members offering a settlement in exchange for a release of claims in the case. The *Slavkov* court held that the releases were both misleading and potentially harmful. Specifically, the *Slavkov* court found misleading the requirement in the release that the signor "agree not to disclose...any information concerning the dispute which resulted in the Agreement," because the requirement could reasonably be interpreted to mean that anyone who accepted the agreement could not talk to plaintiffs' counsel about the events surrounding the class action, whether as a witness or otherwise. *Id*. at *4. The letter was also misleading insofar as it failed to notify putative class members that releases for certain claims required judicial approval. *Id*. at *7.

In *Marino v. CACafe, Inc.*, No. 16-6291 YGR, 2017 WL 1540717 (N.D. Cal. Apr. 28, 2017), the court granted corrective action in a wage and hour case. While the case was pending, the defendant sent putative class members an email stating that the company was "restructuring its processes" and that "to ensure there is no outstanding issue" based on the member's relationship with the defendant, defendant was offering members $500 for their "cooperation." The email stated that the $500 would be immediately wired to the member's bank account upon the member signing and returning a general release of claims and waiver of rights. The email made no mention of the pending lawsuit.

The instant action is readily distinguishable from *Slavkov* and *Marino*. Apple has not

Case No.: 18-md-02827-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR RELIEF PURSUANT TO RULE 23(d) OF THE FEDERAL RULES OF CIVIL PROCEDURE

11

issued any misleading or coercive communications to putative class members. Furthermore, Apple has repeatedly stated that the releases in the U.S. Retail Repair Terms and the Global Repair Terms do not extend to the claims in this case. Apple also stands ready to enter a stipulation establishing that participation in the $29 battery discount program (or the related $50 credit program) does not waive claims in this litigation.

Plaintiffs' reliance on cases where defendants proposed arbitration agreements to putative class members during the pendency of litigation is also unavailing. In each case, the proposed arbitration agreements clearly had the potential to bar class members' claims. In *O'Connor v. Uber Technologies, Inc.*, the arbitration provision at issue was included a class action waiver purporting to contractually bar Uber drivers from participating and benefitting from any class actions; three waiver provisions "were shrouded under the confusing title 'How Arbitration Proceedings Are Conducted'"; and the arbitration provision was not "conspicuous and was not presented as a stand alone agreement." *O'Connor v. Uber Technologies, Inc.*, 2013 WL 6407583, at *6. In *Balasanyan*, Nordstrom attempted to alter the pre-existing arbitration agreement with putative class members while litigation was ongoing. *Balasanyan*, 2012 WL 760566, at *2. The new arbitration agreement was intended to apply to the resolution of past, present, and future disputes. The *Balasanyan* court held that the purported imposition of the arbitration agreement constituted an improper class communication and exercised its authority under Rule 23 of the Federal Rules of Civil Procedure to invalidate the agreement. *Id*. at *4. In *Piekarski v. Amedisys Illinois, LLC*, 2013 WL 605548 (N.D. Ill. Nov. 12, 2013), while the lawsuit was pending, the defendant sent an email to all employees announcing a company-wide arbitration program. The *Piekarski* court held that the defendant's distribution of the "Dispute Resolution Agreement" was likely to confuse and mislead potential class members and prevent them from participating in the litigation because: (1) in order to opt out of binding arbitration, employees would need to complete several steps and (2) it was likely that employees did not understand they would be bound by the arbitration agreement unless they affirmatively opted-out. *Id.* at *956. Unlike

*O'Connor*, *Balasanyan*, and *Piekarski*¸ Apple has not presented an agreement to putative class members that will foreclose their claims in the instant action.

In *County of Santa Clara v. Astra USA, Inc.*, No. 05-3740-WHA, 2010 WL 2724512 (N.D. Cal. July 28, 2010), the defendant pharmaceutical company sent refund checks to its customers, including putative class members. The accompanying letter explained that the checks were a refund for overcharged drugs and that acceptance of the refunds constituted accord and satisfaction, and a release of future claims. *Id*. at *1. The *Astra* court found the letter misleading, reasoning that the letter "misled the putative plaintiff class about the strength and extent of the plaintiffs' claims, and they were unable to make an informed choice about whether to accept the settlement payment." *Id*. at *5. The *Astra* court also invalidated the release because of a lack of good faith and ordered that: "Any checks cashed will be deducted from any recovery obtained herein (or presumably elsewhere) by the recipients." *Id*. at *6. Unlike *Astra*, Apple has repeatedly confirmed that "[n]o right, claim, or interest of any Plaintiffs or putative class member regarding the purchase of the device or the installation of an iOS software update is waived by participation in, or use of, the discounted pricing program." Dkt. 187, p. 6.

In sum, because Apple's communications are not misleading, coercive, and do not potentially interfere with class members' rights, there is no basis for the Court to take corrective measures.

### B. It Is Premature To Declare The Legal Effect of Battery Repairs

At its core, Plaintiffs' motion raises a damages issue: whether a putative class member who obtains a discounted battery replacement may obtain a double recovery. Any judicial declaration on the issue of damages would be premature. *But see County of Santa Clara v. Astra USA, Inc.*, 2010 WL 2724512, at *6. The case remains at the pleading stage and the claims have not been established. Damages discovery and calculations have not been undertaken. To the extent Plaintiffs' motion seeks a determination on the measure of damages, the request is denied.

//

Case No.: 18-md-02827-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR RELIEF PURSUANT TO RULE 23(d) OF THE FEDERAL RULES OF CIVIL PROCEDURE

13

## IV. CONCLUSION

Plaintiffs' motion for relief pursuant to Rule 23(d) of the Federal Rules of Civil Procedure and related discovery is DENIED.

**IT IS SO ORDERED.**

Dated: October 15, 2018

EDWARD J. DAVILA
United States District Judge