THEODORE J. BOUTROUS, JR., SBN 132099
   tboutrous@gibsondunn.com
CHRISTOPHER CHORBA, SBN 216692
   cchorba@gibsondunn.com
THEANE EVANGELIS, SBN 243570
   tevangelis@gibsondunn.com
TIMOTHY W. LOOSE, SBN 241037
   tloose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

G. CHARLES NIERLICH, SBN 196611
   gnierlich@gibsondunn.com
RACHEL S. BRASS, SBN 219301
   rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA  94105
Telephone:  415.393.8200
Facsimile:  415.374.8458

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE: APPLE INC. DEVICE PERFORMANCE LITIGATION, | CASE NO. 5:18-md-02827-EJD |
| | **PUTATIVE CLASS ACTION** |
| This Document Relates To: | **DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND CONSOLIDATED AMENDED COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |
| ALL ACTIONS. | |
| | *[Filed concurrently with Declaration of G. Charles Nierlich]* |
| | Judge:      Hon. Edward J. Davila<br>Courtroom:  4, 5th Floor<br>Hearing Date:  March 7, 2019<br>Hearing Time:  10:00 a.m. |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 7, 2019, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Edward J. Davila, in Courtroom 4, Fifth Floor, of the United States District Court for the Northern District of California in the San Jose Courthouse, 280 South First Street, San Jose, California 95113, Defendant Apple Inc. will, and hereby does, move this Court, pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing Plaintiffs' Second Consolidated Amended Complaint ("SAC") on several grounds.

Apple's Motion focuses on Counts 1–18 of the SAC.  (See Dkt. 263.)[*]  The Court dismissed several of these counts already in its ruling on the motion to dismiss the initial Consolidated Amended Complaint.  (Dkt. 219 (MTD Order).)  The SAC has not remedied the pleading deficiencies that led to the previous dismissal:  Most fundamentally, this Court dismissed Plaintiffs' "defect" theory as "far too sweeping," because "Plaintiffs' own allegations demonstrate [that] consumers are fully aware of the facts regarding software capability and battery capacity."  (MTD Order 33.)  The SAC repeats this same overbroad theory, without any supporting facts.  Further, Plaintiffs still fail to plead factual allegations about their own experiences (all Counts); they do not identify any statement Apple made was untrue (Counts 2–4, 7–9, 13–15) or any omission that Apple had a duty to disclose (Counts 2–4, 7–9, 13–15); they have not added any allegations to remedy their failure to plead a viable claim as to the iPhone 5/5c/5s devices (all Counts); and they do not plead any unauthorized access to their phones (Counts 1, 5, and 6).  And Plaintiffs' other claims fail for reasons the Court did not previously consider:  Plaintiffs have not pled unauthorized "damage" to their devices (Counts 1, 5, and 6); they cannot bring claims under California and U.S. law on behalf of non-U.S. Plaintiffs (Counts 1–16); and their U.K. claims must be dismissed on the basis of international comity and *forum non conveniens* (Counts 17–18).  Finally, this Court should dismiss the remaining contract (Counts 10–12, 16) and common-law fraud (Counts 7–9, 13–15) claims that it has not yet addressed.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of G. Charles Nierlich, the other documents on file in this

---

[*]   Apple continues to reserve its right to seek dismissal of the remaining counts not addressed in this Motion.  (*See, e.g.*, Dkt. 153 at 5; Dkt. 163 ¶ 1; July 11, 2018 Hr'g Tr. 6:6–15.)

Gibson, Dunn &
Crutcher LLP

1    action, any oral argument of counsel at the hearing on the Motion, and any matters of which the

2    Court may take judicial notice.  In particular, the Court has not yet ruled on Apple's request for

3    judicial notice of the Hardware Warranty (Dkts. 177, 198), finding it unnecessary to decide Apple's

4    first motion to dismiss (MTD Order 12).  Because the Warranty is just as relevant to this Motion as it

5    was to the previous motion, and because Plaintiffs reference the Warranty in the SAC (¶¶ 387, 446),

6    the Court should grant Apple's outstanding request for judicial notice.

7

8    DATED:  January 24, 2019                    GIBSON, DUNN & CRUTCHER LLP

9

                                                By:  _____ /s/ Christopher Chorba _____
10                                                        Christopher Chorba

11                                              *Attorneys for Defendant Apple Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.   INTRODUCTION AND SUMMARY OF ARGUMENT .......................................... 1

II.  STATEMENT OF ISSUES TO BE DECIDED ...................................... 2

III. SUMMARY OF ALLEGED FACTS AND RELEVANT PROCEDURAL HISTORY ......... 3

IV.  ARGUMENT ............................................................... 5

    A.   Plaintiffs' Failure To Plead Any Factual Allegations About Their Own Experiences Requires Dismissal Of Their Claims ........................................ 6

    B.   Plaintiffs Did Not Remedy The Deficiencies That Led The Court To Dismiss Their Affirmative Misrepresentation Claims (Counts 2–4, 7–9, 13–15) ...................... 8

        1.   *Plaintiffs' Reliance Allegations Remain Conclusory And Not Individualized.* ..................................................... 9

        2.   *Plaintiffs Still Do Not Allege That Apple Made Any Actionable Misrepresentation.* ................................................. 9

        3.   *Plaintiffs' Remedy Is To Follow The Hardware Warranty.* ........................... 13

    C.   Plaintiffs' Omissions Theory Still Fails As A Matter Of Law (Counts 2–4, 7–9, 13–15) ................................................. 14

        1.   *Apple Had No Duty To Disclose The Facts Regarding Software Capability And Battery Capacity.* ............................ 14

        2.   *As The Court Ruled, Plaintiffs Cannot Use Consumer Fraud Law To Impermissibly Extend The Products' Warranty.* ........................... 17

        3.   *As The Court Also Concluded, Plaintiffs Do Not Adequately Plead Materiality.* ................................................. 18

        4.   *Plaintiffs Have Not Pled That Apple's Conduct Is "Unfair" Or "Unlawful."* ..................................................... 20

    D.   Plaintiffs Have Not Tried To Salvage Their Claims About iPhone 5/5c/5s Devices (Counts 1–18) ............................................ 21

    E.   Plaintiffs Fail To State "Computer Intrusion" Claims (Counts 1, 5, and 6) .............. 21

        1.   *Plaintiffs Fail To Plead That Apple Fraudulently Induced Plaintiffs To Damage Their Devices.* ........................... 21

        2.   *Plaintiffs Do Not Plead That Any Of Them Suffered Damage.* ..................... 23

    F.   Plaintiffs' Contract Claims (Counts 10–12, 16) Fail As A Matter Of Law And Show The Deficiencies In Plaintiffs' Other Claims ................................ 24

        1.   *Plaintiffs Fail To Identify The Contract.* ........................................ 24

DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
CASE NO. 5:18-MD-02827-EJD

Gibson, Dunn & Crutcher LLP

# TABLE OF CONTENTS
(continued)

Page

2. *The Actual Written Contracts Between The Parties Preclude All Of These Claims.* ............................................................................... 25

3. *Plaintiffs' Contract Claims Fail For Several Additional Reasons.* ................ 29

G. Plaintiffs Have Not Justified Their Attempts To Make This A Global Class Action ......................................................................................................... 31

1. *Plaintiffs' U.K. Law Claims (Counts 17–18) Should Be Dismissed For Lack Of A Plaintiff And On Forum Non Conveniens And Comity Grounds.* ............................................................................................ 31

2. *California's CDAFA (Count 5), Like The FAL, Does Not Apply Extraterritorially.* .................................................................................. 33

3. *All Claims Brought By Non-U.S. Plaintiffs (Counts 1–16) Should Be Dismissed Because Their Claims Are Not Governed By California Or U.S. Law.* ............................................................................................ 34

V. CONCLUSION ................................................................................................. 35

iv

DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
CASE NO. 5:18-MD-02827-EJD

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.H. Lundberg Assocs., Inc. v. TSI, Inc.*,
No. 14-1160, 2014 WL 5365514 (W.D. Wash. Oct. 21, 2014) ....................................................12

*Abraham v. Volkswagen of Am., Inc.*,
795 F.2d 238 (2d Cir. 1986)................................................................................26

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 06-1775, 2008 WL 5958061 (E.D.N.Y. Sept. 26, 2008) ........................................32

*Alvarez v. Chevron Corp.*,
656 F.3d 925 (9th Cir. 2011)................................................................................28

*In re Apple Processor Litig.*,
No. 18-00147-EJD, 2019 WL 79035 (N.D. Cal. Jan. 2, 2019)....................................6, 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................19

*Baggett v. Hewlett-Packard Co.*,
No. 07-0667, 2009 WL 3178066 (C.D. Cal. Sept. 29, 2009) ......................................24

*Baltazar v. Apple Inc.*,
No. 10-03231-WHA, 2011 WL 6747884 (N.D. Cal. Dec. 22, 2011)..............................11

*Baltazar v. Apple, Inc.*,
No. 10-3231-JF, 2011 WL 3795013 (N.D. Cal. Aug. 26, 2011) ................................8, 15

*Bardin v. DaimlerChrysler Corp.*,
136 Cal. App. 4th 1255 (2006) ................................................................................10

*Berger v. Home Depot U.S.A., Inc.*,
476 F. Supp. 2d 1174 (C.D. Cal. 2007) ................................................................29

*Berkla v. Corel Corp.*,
302 F.3d 909 (9th Cir. 2002)................................................................................25

*Best Aviation Ltd. v. Chowdry*,
No. 12-05852, 2012 WL 5457439 (C.D. Cal. Nov. 7, 2012).........................................32

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009).................................................................................26

*BladeRoom Grp. Ltd. v. Emerson Elec. Co.*,
No. 15-01370-EJD, 2018 WL 2124064 (N.D. Cal. May 8, 2018)................................32

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Blanda v. Butler*,
 No. 16-01008, 2016 WL 10842584 (C.D. Cal. Aug. 22, 2016)......................................................22

*Bros. v. Hewlett-Packard Co.*,
 No. 06-02254-RMW, 2006 WL 3093685 (N.D. Cal. Oct. 31, 2006) ............................................11

*Brown v. Grimes*,
 192 Cal. App. 4th 265 (2011) ......................................................................................................30

*In re Capacitators Antitrust Litig.*,
 154 F. Supp. 3d 918 (N.D. Cal. 2015) .........................................................................................33

*Caraccioli v. Facebook, Inc.*,
 167 F. Supp. 3d 1056 (N.D. Cal. 2016) .......................................................................................27

*Carijano v. Occidental Petroleum Corp.*,
 643 F.3d 1216 (9th Cir. 2011).....................................................................................................31

*In re Carrier IQ, Inc.*,
 78 F. Supp. 3d 1051 (N.D. Cal. 2015) .........................................................................................33

*Clemens v. DaimlerChrysler Corp.*,
 534 F.3d 1017 (9th Cir. 2008).............................................................................................26, 29

*Coffen v. Home Depot U.S.A. Inc.*,
 No. 16-03302-PJH, 2016 WL 4719273 (N.D. Cal. Sept. 9, 2016) ..........................................24, 25

*Collins v. eMachines, Inc.*,
 202 Cal. App. 4th 249 (2011) ...............................................................................................15, 16

*Dana v. Hershey Co.*,
 180 F. Supp. 3d 652 (N.D. Cal. 2016) .........................................................................................15

*Daugherty v. Am. Honda Motor Co.*,
 144 Cal. App. 4th 824 (2006) ...............................................................................................18, 26

*Donohue v. Apple Inc.*,
 871 F. Supp. 2d 913 (N.D. Cal. 2012) ....................................................................................20, 24

*Elias v. Hewlett-Packard Co.*,
 950 F. Supp. 2d 1123 (N.D. Cal. 2013) .........................................................................................8

*Ewiz Express Corp. v. Ma Labs., Inc.*,
 No. 15-01213-LHK, 2015 WL 5680904 (N.D. Cal. Sept. 28, 2015)............................................22

*In re Facebook Privacy Litig.*,
 791 F. Supp. 2d 705 (N.D. Cal. 2011) .........................................................................................23

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
CASE NO. 5:18-MD-02827-EJD

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Gerlinger v. Amazon.Com, Inc.*,
   311 F. Supp. 2d 838 (N.D. Cal. 2004) ......................................................................31

*Gertz v. Toyota Motor Corp.*,
   No. 10-1089, 2011 WL 13142144 (C.D. Cal. Apr. 28, 2011) ........................................9

*In re GlenFed, Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994) ........................................................................................12

*Gonzales v. Uber Techs., Inc.*,
   305 F. Supp. 3d 1078 (N.D. Cal. 2018) .......................................................................22

*Graham v. Bank of Am., N.A.*,
   226 Cal. App. 4th 594 (2014) .........................................................................................8

*Gravquick A/S v. Trimble Navigation Int'l Ltd.*,
   323 F.3d 1219 (9th Cir. 2003) ......................................................................................34

*Gutierrez v. Advanced Med. Optics, Inc.*,
   640 F.3d 1025 (9th Cir. 2011) ......................................................................................32

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) .......................................................................20

*Hall v. Sea World Entm't, Inc.*,
   No. 15-660, 2015 WL 9659911 (S.D. Cal. Dec. 23, 2015) ..........................................17

*Halperin v. Int'l Web Servs., LLC*,
   70 F. Supp. 3d 893 (N.D. Ill. 2014) .............................................................................23

*Hedging Concepts, Inc. v. First All. Mortg. Co.*,
   41 Cal. App. 4th 1410 (1996) .......................................................................................25

*Herrington v. Johnson & Johnson Consumer Cos.*,
   No. 09-1597-CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ................................26

*Hill v. Roll Int'l Corp.*,
   195 Cal. App. 4th 1295 (2011) .....................................................................................30

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) ..................................................................................15, 16

*Hoey v. Sony Elecs. Inc.*,
   515 F. Supp. 2d 1099 (N.D. Cal. 2007) ....................................................................8, 13

*In re Integrated Res. Real Estate Ltd. P'shps. Sec. Litig.*,
   850 F. Supp. 1105 (S.D.N.Y. 1993) .............................................................................17

vii

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Inter-Mark USA, Inc. v. Intuit, Inc.*,
   No. 07-04178-JCS, 2008 WL 552482 (N.D. Cal. Feb. 27, 2008) ......................................12, 24, 29

*In re iPhone 4s Consumer Litig.*,
   637 F. App'x 414 (9th Cir. 2016) .........................................................................................10, 12

*In re iPhone Application Litig.*,
   No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011)...............................23, 24

*Johnson v. City of Durham*,
   No. 09-954, 2011 WL 4625730 (M.D.N.C. Sept. 30, 2011) .........................................................16

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)..................................................................................................8, 9, 22

*Kowalsky v. Hewlett-Packard Co.*,
   771 F. Supp. 2d 1138 (N.D. Cal. 2010) ......................................................................................27

*Laster v. T-Mobile USA, Inc.*,
   407 F. Supp. 2d 1181 (S.D. Cal. 2005) .........................................................................................9

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) ....................................................................................................10

*Leavitt v. Wells Fargo Bank, N.A.*,
   No. 09-214, 2009 WL 1178708 (D. Ariz. May 1, 2009) ...............................................................16

*Lee v. Toyota Motor Sales, U.S.A., Inc.*,
   992 F. Supp. 2d 962 (C.D. Cal. 2014) ..........................................................................................8

*Lueck v. Sundstrand Corp.*,
   236 F.3d 1137 (9th Cir. 2011)................................................................................................32, 33

*LVRC Holdings LLC v. Brekka*,
   581 F.3d 1127 (9th Cir. 2009)....................................................................................................23

*Lyons v. Coxcom, Inc.*,
   718 F. Supp. 2d 1232 (S.D. Cal. 2009).......................................................................................26

*Marina Tenants Ass'n v. Deauville Marina Dev. Co.*,
   181 Cal. App. 3d 122 (1986).......................................................................................................31

*McBride v. Boughton*,
   123 Cal. App. 4th 379 (2004) .....................................................................................................30

*McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*,
   339 F.3d 1087 (9th Cir. 2003).....................................................................................................30

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*McKinney v. Google, Inc.*,
  No. 10-01177-EJD, 2011 WL 3862120 (N.D. Cal. Aug. 30, 2011) .............................................10

*McVicar v. Goodman Glob., Inc.*,
  No. 13-1223, 2015 WL 4945730 (C.D. Cal. Aug. 20, 2015).......................................................20

*Mintz v. Mark Bartelstein & Assocs.*,
  906 F. Supp. 2d 1017 (C.D. Cal. 2012) ...................................................................................24

*Missaghi v. Apple Inc.*,
  No. 13-02003, 2013 WL 12200086 (C.D. Cal. Nov. 1, 2013)...............................................12, 15

*Moore v. Apple Inc.*,
  73 F. Supp. 3d 1191 (N.D. Cal. 2014) ......................................................................................8

*Mujica v. AirScan Inc.*,
  771 F.3d 580 (9th Cir. 2014)...............................................................................................32, 33

*Myers v. BMW of N. Am.*,
  LLC, No. 16-412-WHO, 2016 WL 5897740 (N.D. Cal. Oct. 11, 2016) ....................................8

*O'Connor v. Uber Techs., Inc.*,
  58 F. Supp. 3d 989 (N.D. Cal. 2014) .................................................................................33, 34

*Oestreicher v. Alienware Corp.*,
  322 F. App'x 489 (9th Cir. 2009) .............................................................................................8

*Oestreicher v. Alienware Corp.*,
  544 F. Supp. 2d 964 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009) .........................11

*Oracle Am., Inc. v. Serv. Key, LLC*,
  No. 12-00790-SBA, 2012 WL 6019580 (N.D. Cal. Dec. 3, 2012)...............................................22

*Orshan v. Apple Inc.*,
  No. 14-05659-EJD, 2018 WL 5858643 (N.D. Cal. Nov. 6, 2018) ...........................................9, 13

*Otero v. Zeltiq Aesthetics, Inc.*,
  No. 17-3994, 2018 WL 3012942 (C.D. Cal. June 11, 2018) ....................................................15, 16

*Palmer v. Apple Inc.*,
  No. 15-05808-RMW, 2016 WL 1535087 (N.D. Cal. Apr. 15, 2016)...........................................20

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
  96 F.3d 1151 (9th Cir. 1996)......................................................................................................30

*Park-Kim v. Daikin Indus., Ltd*,
  No. 15-09523, 2017 WL 373439 (C.D. Cal. Jan. 23, 2017) ......................................................19

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998), *superseded by statute on other grounds, Abrego v. The Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006) ........................................................................3

*Pasadena Live, LLC v. City of Pasadena*,
114 Cal. App. 4th 1089 (2004) ...........................................................................................29

*Rasmussen v. Apple Inc.*,
27 F. Supp. 3d 1027 (N.D. Cal. 2014) .................................................................15, 16, 19

*Reddy v. Litton Indus., Inc.*,
912 F.2d 291 (9th Cir. 1990)...............................................................................................16

*Richards v. Lloyd's of London*,
135 F.3d 1289 (9th Cir. 1998) (en banc)............................................................................35

*Rojas-Lozano v. Google, Inc.*,
159 F. Supp. 3d 1101 (N.D. Cal. 2016) .............................................................................30

*Rubenstein v. The Gap, Inc.*,
14 Cal. App. 5th 870, 876 (2017) ................................................................................13, 19

*Rutledge v. Hewlett-Packard Co.*,
238 Cal. App. 4th 1164 (2015) .....................................................................................15, 16

*Shvarts v. Budget Grp., Inc.*,
81 Cal. App. 4th 1153 (2000) .............................................................................................30

*Smith v. Ford Motor Co.*,
749 F. Supp. 2d 980 (N.D. Cal. 2010) .................................................................................8

*Sud v. Costco Wholesale Corp.*,
229 F. Supp. 3d 1075 (N.D. Cal. 2017) .......................................................................18, 20

*Sullivan v. Oracle Corp.*,
51 Cal.4th 1191 (2011) ......................................................................................................33

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
313 F. Supp. 3d 1056 (N.D. Cal. 2018) .............................................................................22

*Talyancich v. Microsoft Corp.*,
No. 12-1128, 2012 WL 12941690 (W.D. Wash. Nov. 2, 2012)........................................23

*Thurmond v. Compaq Comput. Corp.*,
171 F. Supp. 2d 667 (E.D. Tex. 2001) .................................................................................6

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Tomek v. Apple Inc.,*
   No. 11-02700, 2012 WL 2857035 (E.D. Cal. July 11, 2012) .......................................................11

*Trujillo v. Apple Comput., Inc.,*
   581 F. Supp. 2d 935 (N.D. Ill. 2008) .........................................................................................26

*United States v. Nosal,*
   676 F.3d 854 (9th Cir. 2012) (en banc).....................................................................................23

*Warn v. M/Y Maridome,*
   169 F.3d 625 (9th Cir. 1999).....................................................................................................32

*Wichansky v. Zowine,*
   150 F. Supp. 3d 1055 (D. Ariz. 2015) .......................................................................................23

*Williams v. Yamaha Motor Co.,*
   851 F.3d 1015 (9th Cir. 2017)...........................................................................................15, 18

*Williams v. Yamaha Motor Corp., U.S.A.,*
   No. 13-05066, 2015 WL 13626022 (C.D. Cal. Jan. 7, 2015) ...........................................11, 29, 30

*Wilson v. Hewlett-Packard Co.,*
   668 F.3d 1136 (9th Cir. 2012)...........................................................................................15, 18

*Wofford v. Apple Inc.,*
   No. 11-0034, 2011 WL 5445054 (S.D. Cal. Nov. 9, 2011) .........................................................26

*Wright v. Adventures Rolling Cross Country,*
   No. 12-982-EMC, 2012 WL 12942824 (N.D. Cal. May 3, 2012).................................................34

*Yastrab v. Apple Inc.,*
   173 F. Supp. 3d 972 (N.D. Cal. 2016) .........................................................................................8

*Young v. Facebook, Inc.,*
   790 F. Supp. 2d 1110 (N.D. Cal. 2011) ...............................................................................25, 29

**Statutes**

15 U.S.C. § 78u-4(b)(2) .................................................................................................................12

18 U.S.C. § 1030(a)(5)(A) .............................................................................................................21

18 U.S.C. § 1030(a)(5)(C) .............................................................................................................21

Cal. Com. Code § 2607(3)(A).......................................................................................................28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Cal. Penal Code § 502(a) ...................................................................................................34

Cal. Penal Code § 502(c) ...................................................................................................21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

3    This Court already dismissed Plaintiffs' theory that certain iPhone batteries were "defective"

4    because they chemically aged and became less able to support power demands from increasingly

5    capable software.  As the Court observed, Plaintiffs' theory was "far too sweeping," because

6    "Plaintiffs' own allegations demonstrate [that] consumers are fully aware of the facts regarding

7    software capability and battery capacity."  (Dkt. 219 (MTD Order) at 33.)  Yet Plaintiffs advance the

8    same theory, now slightly rephrased, in their new complaint:  While the Consolidated Amended

9    Complaint defined the "Defect" as batteries that "degraded overly quickly" because the increasing

10    "power demands" of "software" "requir[ed] a further draw on the batteries" (Dkt. 145 (CAC) ¶¶ 9,

11    13, 346, 370–71, 384–85), the Second Consolidated Amended Complaint defines the "Defect" as

12    "power-hungry operating software" and "applications" that "strained the battery powering the

13    Device, thereby causing the battery to age and degrade prematurely" (Dkt. 243-3 (SAC) ¶¶ 4, 370).

14    The SAC's "defect" theory is substantively unchanged, and it fails for the same reasons as before.

15    In its previous ruling, the Court also held that Plaintiffs did not "explain what is false or

16    misleading" about any Apple statements.  (MTD Order 27–28.)  Plaintiffs rely on the same

17    representations they did before, offering no reasons for this Court to reach a different result.  They

18    now focus on Apple's statement that the iPhone "battery is designed to retain up to 80% of its

19    original capacity at 500 complete charge cycles."  (SAC ¶ 446.)  Plaintiffs attempt to twist this

20    statement into something it does not say—███████████████████████████████████

21    ███████████████████████████████.  But maximum capacity is a distinct

22    technological concept, different from a UPO, and a "charge cycle" is not synonymous with a "day."

23    A user completes one charge cycle when she discharges an amount equal to 100% of the battery's

24    capacity, which could occur over a day or a number of days.  Plaintiffs cannot wring an affirmative

25    misrepresentation claim out of this statement, because they do not allege that any battery—much less

26    a battery in any of the named Plaintiff's devices—failed to retain 80% of its original capacity.

27    The Court also concluded in its previous order that Plaintiffs did not plead any facts to expand

28    this case to include iPhone 5/5c/5s or iPad devices.  (MTD Order 37–39.)  Plaintiffs have not

1   attempted to add allegations to resurrect these claims. Based on discovery they obtained, Plaintiffs

2   now concede they have no claim about these devices based on the performance management feature,

3   which these devices did not run. And they appear to drop all of their claims relating to the iPads,

4   although they seek to preserve whatever appellate rights they have. (*See* SAC ¶ 1 n.1.) The SAC

5   includes no new allegations regarding the iPhone 5/5c/5s devices. So the only claim that remains

6   relating to these devices is their "defect" theory, which the Court already rejected.

7       Moreover, Plaintiffs also have not heeded the Court's instruction to plead their individual

8   experiences, rather than "a conclusory allegation" copied-and-pasted about each Plaintiff. (*Id.* at 29.)

9   Once again, there are no new allegations at all regarding any of the named Plaintiffs. Notably,

10  although Plaintiffs' counsel used an online survey website (SurveyMonkey) in an attempt to address

11  some of the deficiencies in their allegations, they apparently did not survey their own clients: No

12  Plaintiff describes experiencing performance slowdowns, UPOs, or any other potential injury.

13  Because "[n]o Plaintiff alleges that the battery in his or her device did not live up to the standards

14  actually communicated by Apple" (*id.* at 34), no Plaintiff has pled either standing under Article III or

15  the injury elements of her claims. Nor does any Plaintiff identify any representations that led her to

16  purchase her iPhone or download a software update. This is a basic failure to meet their Article III

17  and Rules 8(a) and 9(b) obligations, and all of the claims should be dismissed as a result.

18      In addition to failing to cure these fundamental deficiencies, Plaintiffs' remaining claims—

19  both those that were subject to the previous motion (UCL, FAL, and CLRA claims based on an

20  "omission" theory, the "computer intrusion" claims, and the U.K. law claims), as well as the new

21  ones addressed for the first time here (the common-law fraud and contract-based claims)—are also

22  insufficient to state a viable cause of action. As a result, the Court should dismiss all claims.

## II.   STATEMENT OF ISSUES TO BE DECIDED

24      1.   Whether Plaintiffs may pursue claims without alleging any essential facts regarding

25  their own experiences, when they instead rely on copied-and-pasted general allegations repeated

26  verbatim for each Plaintiff.

27      2.   Whether the SAC contains specific factual allegations showing each essential element

28  of Plaintiffs' fraud claims (Counts 2–4, 7–9, 13–15), on the theory that Apple made false

1    representations, when the SAC fails to identify any specific statement that was false or that any

2    Plaintiff saw (much less relied upon) any alleged misstatement.

3        3.    Whether the SAC alternatively pleads these fraud claims on the theory that Apple did

4    not satisfy a duty to disclose that demanding software strains batteries or to supply a battery that

5    delivers peak performance for years longer than warranted.

6        4.    Whether the SAC pleads claims relating to iPhone 5/5c/5s devices, when it adds no

7    allegations concerning these devices after the Court dismissed them.

8        5.    Whether the SAC pleads with sufficient particularity under Rule 9(b) that Apple

9    fraudulently induced iOS users to voluntarily install software updates, and that these updates caused

10    actual damage to each of Plaintiffs' particular phones (Counts 1, 5–6).

11        6.    Whether the SAC pleads claims for breach of implied, oral, and quasi-contract

12    (Counts 10–12, 16), where written, integrated contracts preclude these claims.

13        7.    Whether claims brought under the laws of the United Kingdom (Counts 17–18) should

14    be dismissed on the grounds of international comity and *forum non conveniens*; whether California's

15    CDAFA (Count 5), which protects only devices "within this state," may apply extraterritorially; and

16    whether non-U.S. Plaintiffs may bring claims under California and U.S. law (Counts 1–16).

17    **III.    SUMMARY OF ALLEGED FACTS AND RELEVANT PROCEDURAL HISTORY**

18        Lithium-ion batteries are "consumable" components that become less effective with time,

19    number of charge cycles, extreme temperature exposure, and/or usage—and chemically aged

20    batteries are less able to deliver peak energy loads.  (SAC ¶ 16; Dkt. 177, Ex. A.)[1]  As a result, when

21    power demands were high, some customers experienced frustrating unexpected shutdowns of their

22    older-model iPhones.  (SAC ¶ 16.)  In January 2017, Apple released iOS 10.2.1, an operating system

---

[1]    The "Hardware Warranty" (Dkt. 177, Ex. A) applies to purchasers of iPhone devices in the United States.  Plaintiffs cannot avoid informing the Court of the limitations in that warranty, which is referenced in SAC ¶¶ 387 and 446.  *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (plaintiffs cannot "surviv[e] a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based"), *superseded by statute on other grounds, Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006).  The Court should grant Apple's outstanding request for judicial notice of the Hardware Warranty applicable to iPhone purchasers in the U.S. (*see* Dkts. 177, 198).  (The hardware warranties that apply to purchases of different Apple products in different locations at different times may vary.  Apple reserves the right to bring those distinctions to the Court's attention, if necessary, at later stages.)

DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:18-MD-02827-EJD

upgrade, which included a performance management feature that dynamically managed the performance of certain iPhones and successfully reduced the frequency of unexpected shutdowns. (*Id.* ¶¶ 13, 22, 431–33.)

On July 2, 2018, Plaintiffs filed the CAC, which pled 76 legal claims:  a federal claim (Count 1), fifteen claims under California law (Counts 2–16), two claims under U.K. law on behalf of a single named Plaintiff in the U.K. (Counts 17–18), and—in the alternative to their claims under California law, which Plaintiffs allege governs all non-U.K. claims—58 claims under the laws of various other states (Counts 19–76).  (Dkt. 145.)  Despite asserting that Apple had engaged in "one of the largest consumer frauds in history" (*id.* ¶ 2), the CAC did not identify a single promise that Apple made but did not deliver.  And no Plaintiff alleged that she even viewed, much less relied upon, any alleged misstatement; the CAC simply repeated the same conclusory allegation for each Plaintiff. (*Id.* ¶¶ 29–272, quoted at Dkt. 176 at 22.)  The CAC's principal theory was that Apple had failed to disclose a supposed "Defect," which it defined as a "mismatch" between "the Devices' hardware, including their processing chips and rechargeable lithium-ion batteries, and the ever-increasing demands placed on the Devices via Apple's constantly-updating iOS software platform."  (*Id.* ¶ 9.)

Per the Court's direction, Apple moved to dismiss Counts 1–6 of the CAC, reserving challenges to the remaining claims.  (*See* Dkt. 153 at 6; Dkt. 163 at 1; Dkt. 176 at 2.)  The Court granted the motion in part, and denied it in part, ruling:

- Plaintiffs had failed to identify any statement Apple made that was allegedly false.  (MTD Order 27–28.)

- Plaintiffs' cookie-cutter allegation of reliance did not "come close to fulfilling th[eir] high burden" to "plead exposure to Apple's allegedly misleading advertising statements."  (*Id.* at 28–29.)

- "[C]onsumers are fully aware of the facts regarding software capability and battery capacity" and "Apple's representations made that point even more salient with respect to the devices at issue," including by disclosing "that 'the iPhone battery is designed to retain up to 80% of its original capacity at 500 complete charge cycles.'"  (*Id.* at 33–34.)

- Plaintiffs' omissions theory "buckles under its own weight."  (*Id.* at 32.)

- Apple provides a "limited" warranty covering its devices and batteries.  "No Plaintiff alleges that the battery in his or her device did not live up to the standards actually communicated by Apple."  Plaintiffs' theory "'raises concerns about the use of consumer fraud statutes to impermissibly extend a product's warranty period.'"  (*Id.* at 34–37.)

- "Plaintiffs gave Apple permission by choosing to voluntarily download and install the iOS updates." (*Id*. at 20.)

- Because the performance management feature never ran on iPad and iPhone 5/5c/5s devices, Plaintiffs cannot bring claims concerning these devices. (*Id*. at 18, 37–39.)

The Court gave Plaintiffs leave to amend and nearly two months to correct these deficiencies. (*See id*. at 18, 21–22, 37–39.) They did not do so. The SAC repeats exactly the same copy-paste allegations that the Court found deficient—even though Plaintiffs ought to know this information. (SAC ¶¶ 31–270.) It again fails to allege that any Plaintiff's device failed to live up to any alleged promise—also information entirely within Plaintiffs' knowledge. It adds no substantive allegations to cure the previously-identified deficiencies in all of their claims regarding iPhone 5/5c/5s devices. And it simply repackages the CAC's "sweeping" (MTD Order 33) omissions theory. (*Compare* CAC ¶¶ 9, 13, 346, 370–71, 384–85 *with* SAC ¶¶ 4, 370.)

The SAC also repeats each of the 76 counts from the CAC. This motion focuses on the first 18 counts, seeking dismissal of all California, federal, and U.K. claims. (*See* Dkt. 263.) Several of these claims (Counts 7–9, 13–15) are the California common law variants that underlie the consumer protection claims the Court already dismissed. The remainder (Counts 10–12, 16) are contract-based claims that Apple has not previously had the opportunity to challenge.

## IV.    ARGUMENT

Plaintiffs have not remedied the deficiencies in their claims. They again have not pled any facts about their own experiences, including individual allegations of reliance or injury. They again failed to plead that any Apple representation was false. And none of the new allegations alters the undeniable facts that "consumers are fully aware of the facts regarding software capability and battery capacity," and that consumers "cannot realistically expect their batteries to last for the lifetime of their devices (or even necessarily for more than a year)." (MTD Order 33–34.) This defeats Plaintiffs' defect theory, which takes the iPhone 5, 5c, and 5s devices out of the case once again.

Plaintiffs also have not overcome previous admission that they "cho[se] to voluntarily download and install the iOS updates." (*Id*. at 20.) To be sure, the Court previously ruled that this fact alone did not defeat some claims pleaded under certain subsections of the CFAA and CDAFA, and trespass to chattels (which the Court labelled the "computer intrusion" claims). Apple

respectfully disagrees with this conclusion but, while it preserves all of its arguments, it does not seek to reargue here issues the Court previously decided.  Rather, these claims as pled in the SAC fail for additional reasons the Court did not previously consider, including that Plaintiffs' boilerplate allegations fail to provide facts showing that the updates they downloaded damaged their particular phones, or that their consent to the updates did not extend to the features contained in those updates.

This Court has not yet addressed Plaintiffs' contract-based claims.  After extensive briefing on the Software License Agreement and Hardware Warranty, Plaintiffs do not even acknowledge that these contracts exist in the SAC's paragraphs pleading the contract claims.  These explicit, written, integrated contracts preclude any attempt to invoke implicit, unwritten, quasi contracts.

Nor have Plaintiffs justified their attempt to make this a global case.  Plaintiffs' claims arising under the laws of the United Kingdom should be dismissed on *forum non conveniens* and international comity grounds.  Apple Inc. submits to jurisdiction in the U.K. for the claims brought on behalf of the putative U.K. subclass, and the U.K. is the proper forum to litigate these disputes.  Additionally, California's CDAFA does not apply extraterritorially for the same reasons the Court held that California's FAL does not.  And as explained in Apple's pending motion for reconsideration, all non-U.S. Plaintiffs' claims should be dismissed because they are governed by the laws of the country of purchase, not by California or U.S. law.

A.    **Plaintiffs' Failure To Plead Any Factual Allegations About Their Own Experiences Requires Dismissal Of Their Claims**

One of the SAC's most glaring deficiencies is its failure to include any individualized allegations about any of the named Plaintiffs.  This failure requires dismissal of Plaintiffs' claims for lack of Article III standing, and for failing to comply with Rules 8(a) and 9(b).

As this Court recently explained, to establish standing at the pleading stage, a plaintiff must "clearly allege facts demonstrating" that he or she "suffered an injury in fact."  *In re Apple Processor Litig.*, No. 18-00147-EJD, 2019 WL 79035, at *2 (N.D. Cal. Jan. 2, 2019).  In that case, this Court dismissed for lack of standing claims based on generalized allegations that iPhone users experienced reduced processing speeds, because the plaintiffs never plausibly "allege[d] they personally experienced a degradation of performance of their iDevices."  *Id.* at *3–5; *see Thurmond v. Compaq*

1  *Comput. Corp.*, 171 F. Supp. 2d 667, 680 (E.D. Tex. 2001) ("[E]ven named plaintiffs who represent a

2  class must allege and show that they personally have been injured." (quotation marks omitted)).

3  Like the *Apple Processor* complaint, the SAC is devoid of any individualized allegations of

4  injury. Plaintiffs allege that *some* iPhones experienced performance issues, but no Plaintiff alleges

5  that *her* iPhone suffered. Plaintiffs rely on benchmark tests (*see* SAC ¶¶ 383–401), but these tests do

6  not permit an inference that all (or nearly all) devices experienced reduced performance. *Apple*

7  *Processor Litig.*, 2019 WL 79035 at *2–4. Plaintiffs also conclusorily allege that, but for Apple's

8  conduct, they would not have purchased an Apple device or would have paid substantially less for it.

9  (*See* SAC ¶¶ 31–270.) But this Court held that nearly identical allegations were insufficient in *Apple*

10  *Processor*, because the plaintiffs did not allege any facts about the market for Apple devices. 2019

11  WL 79035, at *4–5. The same is true here. As a result, Plaintiffs' claims should be dismissed for

12  failure to meet the injury requirements of Article III and of each claim. *Id.*

13  In any event, as the Court explained, "Plaintiffs are … obligated under Rule 9(b) to plead

14  separately and with particularity their individual" experiences. (MTD Order 29 (quotation marks

15  omitted).) This requirement ensures that the defendant is "on notice 'what' the alleged

16  misrepresentations were," and ensures that each plaintiff herself may bring a claim. (*Id.* (quotation

17  marks omitted).) But as shown in the redline between the CAC and the SAC that Plaintiffs submitted

18  to the Court on November 30 with their SAC (*see* Redline at 12–111), Plaintiffs did not address this

19  fundamental deficiency in amending their complaint. The SAC does not plead from which retailer

20  any Plaintiff purchased her phone, which representations she was exposed to or relied upon (*see*

21  MTD Order 28–29), or her personal experience with using the phone—including whether she

22  perceived any slow-down after installing an update, whether her battery retained its capacity, or

23  whether she experienced a UPO. Instead, the SAC repeats the same conclusory, copied-and-pasted

24  allegation for each Plaintiff, carried over without any substantive changes from the CAC. (*Compare*

25  CAC ¶¶ 29–272, quoted at Dkt. 176 at 22, *with* SAC ¶¶ 31–270; *see also* Redline at 12–111.)

26  Thus, as before, "Plaintiffs do not come close to fulfilling th[e] high burden" of Rule 9(b)'s

27  specificity requirement (MTD Order 29), which applies to all claims grounded in fraud, including

28  common law, consumer protection laws, and any other claims where Plaintiffs' theory is fraud-based.

1    *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).[2]

2    **B.    Plaintiffs Did Not Remedy The Deficiencies That Led The Court To Dismiss Their Affirmative Misrepresentation Claims (Counts 2–4, 7–9, 13–15)**

Plaintiffs plead fraud across numerous counts, but all fail for the same reasons.  Plaintiffs' common law fraud theories (Counts 7–9 and 13–15) simply re-phrase the same claims that the Court already dismissed in their statutory form (CLRA, UCL, FAL, Counts 2–4).  All of these claims fail for the reasons explained below.  *See*, *e.g.*, *Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1105 (N.D. Cal. 2007) (dismissing statutory and common law fraud claims based on the same conduct); *Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 977 81 (N.D. Cal. 2016) (same); *Baltazar v. Apple, Inc.*, No. 10-3231-JF, 2011 WL 3795013, at *4–6 (N.D. Cal. Aug. 26, 2011) (same); *Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 606–09, 613–14 (2014) (same); *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1131–39 (N.D. Cal. 2013) (same); *Oestreicher v. Alienware Corp.*, 322 F. App'x 489, 493 (9th Cir. 2009) ("common law fraudulent concealment" claim was "properly dismissed" for the same reason as statutory claims—failure to allege a safety issue); *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 993 (N.D. Cal. 2010) (same).  The elements that are missing here are "essentially identical," so all can be analyzed together.  *Myers v. BMW of N. Am.*, LLC, No. 16-412-WHO, 2016 WL 5897740, at *7 (N.D. Cal. Oct. 11, 2016) (citation omitted).

At bottom, the SAC contains essentially the same "allegations" and theories "the court previously found were insufficient to state a plausible claim of fraud under any of the consumer protection statutes," and so must be dismissed for the same reasons—this time, with prejudice.

---

[2]    Plaintiff-specific allegations are essential in a case like this.  Among other reasons, because consumer fraud claims cannot be based on post-sale conduct, each Plaintiff can recover only for supposed misrepresentations that existed at the time she purchased her device.  *See*, *e.g.*, *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 974 n.10 (C.D. Cal. 2014).  "Insofar as Apple's allegedly unfair or deceptive practices occurred after Plaintiff[s] purchased [their] iPhone [models], Plaintiff cannot show that [they] suffered economic injury as a result of [their] reliance on Apple's conduct."  *Moore v. Apple Inc.*, 73 F. Supp. 3d 1191, 1201 (N.D. Cal. 2014) (punctuation omitted).  Yet Plaintiffs do not plead when Apple made various representations, including the representation about 500 charging cycles.  This matters because Plaintiffs allege only that this statement was available on Apple's website as of June 30, 2018 (SAC ¶ 446 n.72), and no Plaintiff alleges a purchase after April 2018.  Accordingly, no Plaintiff can plead reliance on that statement.

As another example, Plaintiffs' initial document production also contradicts many of their allegations regarding device ownership; some Plaintiffs have produced receipts, packaging, and documentation relating to entirely different iPhone models than the ones the SAC alleges they owned.

Gibson, Dunn & Crutcher LLP

DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:18-MD-02827-EJD

*Orshan v. Apple Inc.*, No. 14-05659-EJD, 2018 WL 5858643, at *4, *6 (N.D. Cal. Nov. 6, 2018).

### 1.     *Plaintiffs' Reliance Allegations Remain Conclusory And Not Individualized.*

This Court previously ruled that Plaintiffs failed to allege reliance on any of the statements they identify.  (MTD Order 28–29.)  The SAC adds no allegation that Plaintiffs even read the supposed misrepresentations, much less a non-conclusory allegation that Plaintiffs relied on them in making a purchase.  "Federal Rule of Civil Procedure 9(b) requires that Plaintiffs specify which statements the plaintiff actually saw and relied upon."  (*Id.*)  In particular, a plaintiff needs to "specify which sales material he relied upon in making his decision to buy" the product, including "when he was exposed to them," "which ones he found material," "who made th[e] statement[s]," and "when [they were] made."  *Kearns*, 567 F.3d at 1126.  Even if "Plaintiffs meticulously describe the allegedly misleading advertisements," they must "allege that they saw, read, or in any way relied on the advertisements" and "allege that they entered into the transaction as a result of those advertisements."  *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005).

As explained in the previous section (*supra* at 6–8), "Plaintiffs do not come close to fulfilling that high burden here."  (MTD Order 29.)  The SAC still fails to allege which statements Plaintiffs even saw.  (*See* MTD Order 28 ("Plaintiffs do not plead exposure to Apple's allegedly misleading advertising statements.").)  Instead, "[t]he SAC includes verbatim the allegations the court previously found were insufficient to state a plausible claim of fraud under any of the consumer protection statutes."  *Orshan*, 2018 WL 5858643, at *4.  Because Plaintiffs again "fail to allege that they actually saw the particular advertisements the [SAC] identifies," much less based their purchasing decisions on those advertisements, their complaint must be dismissed.  *Gertz v. Toyota Motor Corp.*, No. 10-1089, 2011 WL 13142144, at *4 (C.D. Cal. Apr. 28, 2011).  As this Court ruled, Plaintiffs cannot avoid pleading individual reliance "merely by pointing to the allegation that Apple conducted a 'multiple year, consistent marketing plan.'"  (MTD Order 29.)  As Plaintiffs have not attempted to allege which statements they saw or relied upon, the Court should now dismiss the affirmative misrepresentation claims with prejudice.  *Orshan*, 2018 WL 5858643, at *6.

### 2.     *Plaintiffs Still Do Not Allege That Apple Made Any Actionable Misrepresentation.*

In addition, as was true in the CAC, none of the numerous Apple statements Plaintiffs quotes

are even alleged to be a false factual representation.  (MTD Order 27–28.)  Plaintiffs recite three categories of statements, but none of them is an allegedly untrue factual statement.

(a)  <u>Plaintiffs Do Not Allege that Any of Apple's Specific Promises Were False</u>.  First, Plaintiffs identify Apple's not-even-allegedly-false representations about product features—such as "up to 8 hours of browsing on a cellular connection."  (SAC ¶ 293.)  These same allegations appeared in the CAC, and Plaintiffs do not add any allegation that any factual claim was false.  For example, "No Plaintiff who purchased an iPhone 5 alleges that he or she was unable to use the phone for the amount of time specified in Apple's advertising" (MTD Order 28)—or anything else about her personal experience (*see supra* at 6–8).

Plaintiffs have thus failed to allege that any representations were false or misleading—i.e., "that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).  Plaintiffs must allege more than the "conclu[sion] that the public would likely be deceived"; they must plead "facts showing the basis for that conclusion."  *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1275 (2006).  They have not done so.  "To the extent that Plaintiffs rely on Apple's general advertising statements evincing the speed and long battery life of the devices, Plaintiffs do not explain precisely how those statements are misleading when consumers know about the problem of declining battery performance."  (MTD Order 36.)  As the Ninth Circuit held in another case in which plaintiffs claimed that Apple's iOS performed below plaintiffs' subjective expectations:

> Apple's general advertising campaign is insufficient to show that Apple fraudulently misled Plaintiffs into believing [iOS] would perform consistently.  Plaintiffs fail to define what level of consistency they expected from these representations and how often [iOS] actually performed as requested.  Plaintiffs also do not allege that [iOS] never worked, just that [iOS] did not work as consistently as they expected.  Failure to meet Plaintiffs' undefined expectations of consistency does not render Apple's representations misleading.

*In re iPhone 4s Consumer Litig.*, 637 F. App'x 414, 415–16 (9th Cir. 2016); *see McKinney v. Google, Inc.*, No. 10-01177-EJD, 2011 WL 3862120, at *5 (N.D. Cal. Aug. 30, 2011) ("[Plaintiff] fails to specifically identify any representation by [Defendants] that mentions 3G connectivity, much less one that the Nexus One would maintain consistent 3G connectivity.").

1      Apple did not "represent or promise that the iP[hone] would operate without interruption in

2   the specific environmental conditions under which it allegedly tended to shut down," or that it would

3   always work at peak speed, regardless of hardware state or performance.  *Baltazar v. Apple Inc.*, No.

4   10-03231-WHA, 2011 WL 6747884, at *4 (N.D. Cal. Dec. 22, 2011).  There is likewise no allegation

5   that statements that devices could achieve "up to" certain battery life or speed were false.  *Tomek v.*

6   *Apple Inc.*, No. 11-02700, 2012 WL 2857035, at *4 (E.D. Cal. July 11, 2012) (no allegation plausibly

7   showing that Apple's description of a MacBook as "up to twice as fast as the previous generation"

8   was false).  Similarly, Apple's statements about the quality of device components are not actionable

9   because there is no allegation the devices did not contain those components.  *See*, *e.g.*, *Bros. v.*

10  *Hewlett-Packard Co.*, No. 06-02254-RMW, 2006 WL 3093685, at *5 (N.D. Cal. Oct. 31, 2006).

11     (b)  <u>General Assertions About Improved Performance Are Not Actionable</u>.  The second

12  category of representations in the SAC is "general assertions" about "faster performance and better

13  battery life" and "broad statements about improving features and product superiority."  (MTD Order

14  27–28.)  These are the same statements Plaintiffs recited in the CAC.  The Court already ruled that

15  they are non-actionable because "none of these statements makes a claim about specific or absolute

16  characteristics of the products."  (*Id.*)

17     Plaintiffs try to salvage this claim by alleging that "Apple lacked a basis to" make these

18  general assertions of product superiority, because its testing conditions do not exactly mimic real-

19  world use.  (SAC ¶¶ 406–09.)  But Plaintiffs still do not allege that these claims were false—either in

20  general, or with respect to their particular phones.  Lifespan tests, by nature, simplify real-world

21  conditions to enable quick and controlled observation.  And the Court already held that these

22  statements are non-actionable subjective representations "insufficient to ground Plaintiffs' affirmative

23  misrepresentation claim."  (MTD Order 27.)  Statements to the effect that a product "would operate at

24  or above the industry standard or performance" are "non-actionable."  (*Id.* (citing *Williams v. Yamaha*

25  *Motor Corp., U.S.A.*, No. 13-05066, 2015 WL 13626022, at *9 (C.D. Cal. Jan. 7, 2015)).)  *See also*

26  *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489

27  (9th Cir. 2009) (claims about "'higher performance,' 'longer battery life,' 'richer multimedia

28  experience,' [and] 'faster access to data' are all non-actionable").

The same is true for the representations here about iOS. Software necessarily entails tradeoffs. Providing more features also introduces complexity and can reduce speed, and increasing features or speed may adversely impact hardware lifespan. (SAC ¶¶ 4, 289, 347, 415.) Claiming that new software is an "improvement," considering these trade-offs, is not a misrepresentation. *See Missaghi v. Apple Inc.*, No. 13-02003, 2013 WL 12200086, at *6 (C.D. Cal. Nov. 1, 2013) ("[T]here were no representations that the product would not experience malfunctions with the passage of time, and Apple's simple statements regarding the build quality of its products … does not change this fact[.]"); *accord*, *e.g.*, *Inter-Mark USA, Inc. v. Intuit, Inc.*, No. 07-04178-JCS, 2008 WL 552482, at *10 (N.D. Cal. Feb. 27, 2008) (statements "touting the 'improvements' and 'enhancements' in Intuit's Software without making any verifiable factual representations" are not actionable); *A.H. Lundberg Assocs., Inc. v. TSI, Inc.*, No. 14-1160, 2014 WL 5365514, at *6 (W.D. Wash. Oct. 21, 2014) (similar); *In re iPhone 4s Consumer Litig.*, 637 F. App'x at 416 (affirming dismissal where court "could not determine if a reasonable consumer would be misled" by representations concerning iOS).

In addition, the statements Apple and its employees made about the performance management feature (such as the December 2017 statements) do not retroactively make their earlier statements false. A "plaintiff must set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading when made. … The fact that an allegedly fraudulent statement and a later statement are different does not necessarily amount to an explanation as to why the earlier statement was false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994) (emphasis omitted), *superseded by statute on other grounds by* 15 U.S.C. § 78u-4(b)(2).

(c) Apple's Statement About Retaining Battery Capacity Is Not Allegedly False. The final representation Plaintiffs cite in the SAC is Apple's statement, "Your battery is designed to retain up to 80% of its original capacity at 500 complete charge cycles." (SAC ¶ 446.) Plaintiffs included this statement before, too. As Apple explained in its previous motion to dismiss (Dkt. 176 at 5, 20–21 & n.14, 25), "Plaintiffs do not allege that any battery failed to hit this target." This is still true: Plaintiffs do not allege anything about how much battery capacity phones retained in general, nor anything about whether their phones suffered any problems at all. (*Supra* at 6–8.)

Plaintiffs now attempt to contort this statement to label it "misleading." (SAC ¶¶ 386, 388, 401.) They assert that, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. (*Id.* ¶¶ 381–401.) But Apple did not promise anything of the sort—as Plaintiffs previously admitted. On its face, the statement addresses only the battery's "capacity," and Plaintiffs conceded in the CAC that the statement "says nothing about the rate at which they are able to deliver power," and certainly says nothing about UPOs. (CAC ¶ 383.) Further, this Court previously noted that Apple's Hardware Warranty is limited to one year, so in context the statement "make[s] clear that consumers cannot realistically expect their batteries to last for the lifetime of their devices (or even necessarily for more than a year)." (MTD Order 34, 36.)

Plaintiffs cannot plead their way into a cause of action by claiming that they misread Apple's specific, limited statement as addressing an entirely different subject. *See Rubenstein v. The Gap, Inc.*, 14 Cal. App. 5th 870, 876 (2017) (upholding dismissal based on plaintiffs' selective reading of clothing labels because, "[a]s a matter of law, Gap's use of its own brand name labels on clothing that it manufactures and sells at Gap-owned stores is not deceptive, regardless of the quality of the merchandise or whether it was ever for sale at other Gap-owned stores"); *Orshan*, 2018 WL 5858643, at *5 (dismissing complaint with prejudice because no reasonable customer would view "16GB iPhone capacity" representation as promising 16GB of available space); *Hoey*, 515 F. Supp. 2d at 1104–05 (rejecting argument that defendant's statements created an "expectation that a notebook computer would operate defect-free for more than one year" given the express, one-year warranty).

### 3.   *Plaintiffs' Remedy Is To Follow The Hardware Warranty.*

As explained in further detail below, the integrated written Hardware Warranty contract disclaims any representations made before purchase. (*Infra* at 26–27.) But even if any of Apple's statements could be viewed as actionable in spite of this warranty, and even if Plaintiffs' phones had failed to live up to some promise Apple made, Plaintiffs' remedy, if any, is under the Hardware Warranty. If any customer experienced a problem, the warranty gives her a solution: Bring the

1    phone to Apple or an authorized service provider for Apple to, "at its option," repair, replace, or

2    refund it. (Dkt. 177, Ex. A.) This agreed remedy fulfills the purpose of warranty law: The warranty

3    is an agreement that gives customers the ability to obtain relief when they have an actual problem.

4    Plaintiffs are attempting to circumvent the warranty processes, but as the Court explained, they

5    cannot use fraud claims to achieve this "unsavory result." (MTD Order 36–37.)

6    **C.    Plaintiffs' Omissions Theory Still Fails As A Matter Of Law (Counts 2–4, 7–9, 13–15)**

7    Just as Plaintiffs have failed to correct the deficiencies in their affirmative misrepresentation

8    theory, they also have not fixed the problems with their omissions-based claims. Instead, they

9    rephrase the alleged "Defect" as "power-hungry operating software" and "applications" that "strained

10   the battery powering the Device, thereby causing the battery to age and degrade prematurely." (SAC

11   ¶¶ 4, 370.) The underlying "Defect" is the same as alleged before—that more powerful software

12   "requiring a further draw on the batteries," combined with natural chemical processes, "contributed

13   to" the batteries "degrad[ing] overly quickly." (CAC ¶¶ 9, 13, 346, 370–71, 384–85.) And Plaintiffs

14   have not substantiated their theory with any actual, specific factual allegations (despite receiving over

15   6.5 million pages of documents since August). The most the SAC adds is a more explicit assertion

16   that the power demands of iOS and third-party software are a cause of this aging. (SAC ¶¶ 4, 370.)

17   Plaintiffs do not support this contention; there are no factual allegations attribute chemical aging to

18   "power-hungry operating software": The SAC exclusively lists other factors, including an alleged

19   design defect in the batteries (*see id.* ¶¶ 422–27), the batteries' chemical aging process (*see id.*

20   ¶¶ 378–79, 422–27), ███████████████████████████████ (*see id.* ¶¶ 406–08),

21   and ████████████████████████████ (*see id.* ¶ 407). But as

22   explained further below, even if Plaintiffs supported the claim, it would not make a legal difference.

23   **1.    *Apple Had No Duty To Disclose The Facts Regarding Software Capability And Battery Capacity.***

24   Apple did not have a duty to disclose the technical details of either the batteries' ability to

25   support power-hungry software as they chemically age or how the performance management feature

26   solved that problem. Although this Court previously concluded that California duty-to-disclose law

27   "is in some disarray" (MTD Order 30), Plaintiffs' omissions claims still do not fit within any

28

1    potential duty.

2    *First*, as the Court explained, "Plaintiffs plainly do not allege that the design defect caused an

3    unreasonable safety hazard." (MTD Order 30–31.) This is critical because, under binding Ninth

4    Circuit precedent, a manufacturer only has a duty to disclose an "unreasonable safety hazard."

5    *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025–26, 1028–29 (9th Cir. 2017); *accord*, *e.g.*,

6    *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012). For example, a defect that

7    "accelerates the normal and expected process of corrosion in [vehicle] motors," causing "premature"

8    failure, does not qualify. *Williams*, 851 F.3d at 1028. And here, "Plaintiffs plainly do not 'allege that

9    the design defect caused an unreasonable safety hazard.'" (MTD Order 30 (quoting *Wilson*, 668 F.3d

10    at 1143).) The SAC does not add any safety-related allegations; it merely repeats the same

11    inadequate allegations from the CAC. And reduced phone performance is not a safety issue, much

12    less an "unreasonable safety hazard." *See Missaghi*, 2013 WL 12200086, at *4–5 (dismissing claim

13    that a broken iPhone power button presented a safety issue); *Baltazar*, 2011 WL 3795013, at *5

14    (rejecting argument "that Apple had a duty to disclose the iPad's functional limitations"); MTD

15    Order 31 (citing decisions dismissing similarly inadequate claims).

16    In lieu of these allegations, Plaintiffs previously argued that the safety rule is no longer good

17    law, citing *Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018), *Collins v. eMachines, Inc.*, 202 Cal.

18    App. 4th 249 (2011), and *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164 (2015). But the

19    safety rule is supported by the "overwhelming" "weight of authority" as well as "sound policy,"

20    *Dana v. Hershey Co.*, 180 F. Supp. 3d 652, 664 (N.D. Cal. 2016), and it is binding on this Court,

21    *Otero v. Zeltiq Aesthetics, Inc.*, No. 17-3994, 2018 WL 3012942, at *5 (C.D. Cal. June 11, 2018);

22    *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1036 (N.D. Cal. 2014). In fact, as Apple has

23    explained (Dkt. 197 at 12), *Hodsdon* declined to overrule *Wilson*, stating that it "ha[d] no occasion in

24    this case to consider whether" to "overrule[] *Wilson*" and could "offer no binding opinion on the

25    issue." 891 F.3d at 861–62, 864 & n.6. Any statements of uncertainty regarding the safety rule were

26    thus, explicitly, *dicta*.

27    Accordingly, *Wilson* remains good law, and Plaintiffs must plead an unreasonable safety

28    hazard. *Hodsdon* did not overrule either *Wilson*, which articulated the safety rule, or *Williams*, which

came after *Collins* and *Rutledge* and reaffirmed that the duty to disclose is limited to unreasonable safety hazards.  There thus was no intervening California or Ninth Circuit precedent after *Williams*. Because there has been no contrary "intervening California authority," "this Court is bound to follow *Wilson*."  *Otero*, 2018 WL 3012942, at *5; *Rasmussen*, 27 F. Supp. 3d at 1036.

<u>*Second*</u>, Plaintiffs have failed to plead facts establishing that Apple had a duty to disclose the alleged "defect" even under *Collins* and *Rutledge*.  *Collins* at most "stands for the premise that a manufacturer has a duty to disclose only physical defects … that relate to a product's central function and arise during the warranty period."  *Hodsdon*, 891 F.3d at 862.  The alleged defect in *Collins* involved the products "missing actual physical hardware logic industry standards require" and was "not a situation where the [product was] complete and operational when sold, but [wore] out or [broke] over time because of use … [r]ather, the [product defect resulted] from logic that was never installed on the [product]."  202 Cal. App. 4th at 257.  In *Rutledge*, the products "were defective in manufacturing and installation at the time the[y] were sold."  238 Cal. App. 4th at 1175.  By contrast, Plaintiffs do not allege that Apple's hardware was not "complete and operational when sold."  *Id.*  To the contrary, "Plaintiffs readily concede 'that iPhones worked as expected when new.'"  (MTD Order 36 (quoting CAC ¶ 397); *see also* SAC ¶ 427 ("iPhones seemed to operate as designed when new").)

Plaintiffs are bound by that prior concession.  Although the SAC revised this statement, "Plaintiff[s'] Amended Complaint does not explicitly contradict th[is] admission[] from [their] original Complaint," and they "remain[] bound by [their] prior admission[]."  *Johnson v. City of Durham*, No. 09-954, 2011 WL 4625730, at *6 n.9 (M.D.N.C. Sept. 30, 2011).  The most the SAC adds are allegations that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and an assertion that this is because batteries degrade "prematurely." (SAC ¶¶ 4, 369–409.)  That says nothing to contradict their previous "conce[ssion] 'that iPhones worked as expected when new.'"  (MTD Order 36 (quoting CAC ¶ 397).)  And in any event, "[a]ny new allegation could not contradict Plaintiff's earlier admission," *Leavitt v. Wells Fargo Bank, N.A.*, No. 09-214, 2009 WL 1178708, at *3 (D. Ariz. May 1, 2009):  "Although leave to amend should be liberally granted, the amended complaint may only allege other facts consistent with the challenged pleading."  *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990).  "Plaintiffs may not,

by amending their Complaint, undo [what they have] conceded by their first complaint." *In re Integrated Res. Real Estate Ltd. P'shps. Sec. Litig.*, 850 F. Supp. 1105, 1132 n.47 (S.D.N.Y. 1993).

In short, Plaintiffs cannot dispute that there are some limits on the duty to disclose under California law—and Plaintiffs' theory would be actionable only if the duty to disclose were boundless. To the contrary, it is not enough to "allege that information about [the defect], had it been disclosed, would have been material to" Plaintiffs' use and enjoyment of the phone. *Hall v. Sea World Entm't, Inc.*, No. 15-660, 2015 WL 9659911, at *7 (S.D. Cal. Dec. 23, 2015).

### 2.    *As The Court Ruled, Plaintiffs Cannot Use Consumer Fraud Law To Impermissibly Extend The Products' Warranty.*

Plaintiffs' disclosure theory falters on another front: Plaintiffs cannot use consumer protection law to avoid the explicit limitations in their hardware warranties. Plaintiffs' theory, as the Court has explained, seeks "to hold Apple liable for failing to provide a battery that lasted as long as Plaintiffs preferred." (MTD Order 36.) Plaintiffs confirm that this is still their theory, arguing that ███████████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████, even though Apple never warranted anything regarding UPOs. (*Id.* ¶¶ 369–414.) They once again allege that "[e]lectronics manufacturers … must design batteries to be more powerful than they need to be so that as they grow weaker, they still have the ability to meet the processor's peak power demands" so that the battery "will still be capable of meeting the processor's peak power demands for years to come." (*Id.* ¶¶ 423–24.) In other words, Plaintiffs seek to require Apple to give Plaintiffs a different warranty than it in fact provided. As Plaintiffs previously alleged and the Court previously explained:

> Apple, like other smartphone manufacturers (including Samsung, LG, and Google), warranties its batteries for a limited amount of time. CAC ¶ 416. Specifically, Apple provides a "one-year warranty," which includes "service coverage for a defective battery." *Id.* In that warranty, Apple explicitly notes that the iPhone "battery is designed to retain up to 80% of its original capacity at 500 complete charge cycles." *Id.*; *id.* ¶ 416 n.60 (stating that the iPad "battery is designed to retain up to 80% of its original capacity at 1000 complete charge cycles"). These statements make clear that consumers cannot realistically expect their batteries to last for the lifetime of their devices (or even necessarily for more than a year).

(MTD Order 34.)

Even though Plaintiffs admit that Apple provided this warranty (*see* SAC ¶ 446), they do not

allege that Apple ever failed to live up to it. (MTD Order 34 ("No Plaintiff alleges that the battery in his or her device did not live up to the standards actually communicated by Apple.").) Again, they do not—and cannot—contradict this prior admission. As explained, Plaintiffs still do not allege that any of their own devices failed to live up to any supposed representation Apple made—even though this is information entirely within Plaintiffs' control.

As the Court previously noted, "California courts have been careful to cabin the scope of the duty to disclose to avoid the unsavory result that manufacturers are on the hook for every product defect that occurs at any time, regardless of any time limits contained in their warranties." (MTD Order 36 (punctuation omitted).) This holding follows the Ninth Circuit's warning that "to broaden the duty to disclose beyond safety concerns would eliminate term limits on warranties, effectively making them perpetual or at least for the useful life of the product." *Wilson*, 668 F.3d at 1141. Plaintiffs' allegation that Apple caused performance degradation "to occur earlier in a [phone]'s lifetime than a consumer would otherwise expect" is not actionable under consumer-protection statutes. *Williams*, 851 F.3d at 1028–29. Because "[a]ll of plaintiffs' [iPhones] functioned as represented throughout their warranty periods," *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 834 (2006), there is no claim here. In sum, "Plaintiffs' liability theory is nearly limitless and raises concerns about the use of consumer fraud statutes to impermissibly extend a product's warranty period." (MTD Order 37.) The Court should reject it, just as it did before.

### 3. *As The Court Also Concluded, Plaintiffs Do Not Adequately Plead Materiality.*

Plaintiffs also have not pled materiality. As this Court ruled before, given customers' knowledge and Apple's statements about the facts regarding batteries, Plaintiffs failed to allege a material omission. (MTD Order 32–35.) Plaintiffs repeat the error and again failed to allege either of the "two 'subelements' a plaintiff must prove to show" materiality: "awareness; and a change in behavior." *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1083 (N.D. Cal. 2017).

(a) <u>Plaintiffs Do Not Adequately Plead A Change In Behavior</u>. Plaintiffs do not allege that any alleged omission was "a substantial factor in their decision making process," as needed to presume "a change in behavior." *Id.* As the Court ruled, Plaintiffs fail to allege under Rule 8(a) or 9(b) how, if Apple had disclosed some piece of the information, they would not have purchased their

iPhones (or downloaded the iOS updates).  (*See* MTD Order 33–35.)  Conclusory allegations about what Plaintiffs would have done in a counterfactual world are not enough (*id.* at 32–33); the Court must apply its "common sense" in analyzing whether factual allegations state a plausible claim of reliance on an omission.  *Park-Kim v. Daikin Indus., Ltd*, No. 15-09523, 2017 WL 373439, at *6 & n.3 (C.D. Cal. Jan. 23, 2017); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (court must "draw on its judicial experience and common sense").  Dismissal is proper "when the facts alleged fail as a matter of law to show" that the statements or omissions are "likely to deceive a reasonable consumer."  *Rubenstein*, 14 Cal. App. 5th at 877; *accord, e.g., Rasmussen*, 27 F. Supp. 3d at 1032.  As before, Plaintiffs' allegations do not meet this standard.

To the contrary, Plaintiffs admitted that "consumers are fully aware of the facts regarding software capability and battery capacity"—and thus no reasonable customer could rely on a failure to disclose those facts.  (MTD Order 33.)  As the Court ruled, "common sense and Plaintiffs' own allegations demonstrate that consumers know about the degradation of batteries and the increasing capability of software."  (*Id.* at 35.)  "In addition to consumers' baseline awareness of the inevitability of battery decay, Apple's representations made that point even more salient with respect to the devices at issue."  (*Id.* at 34.)  Apple's statements about battery capacity "make clear that consumers cannot realistically expect their batteries to last for the lifetime of their devices (or even necessarily for more than a year)."  (*Id.*)  In light of this, Plaintiffs have not established that the allegedly omitted information would have influenced their purchase decision.  (*Id.* at 34–35.)

Plaintiffs have done nothing to cure their failure to allege lack of awareness.  Their new allegations under the heading "Apple's Statements Were Material to iPhone Customers" (SAC ¶¶ 410–14) merely conclude that many customers care about phone performance and UPOs; they do not establish that a reasonable customer is unaware of the issues they say Apple should have disclosed—which was the Court's basis for dismissing this theory.

The only attempt to cure this deficiency is not any particularized allegations about the named Plaintiffs, but instead Plaintiffs' counsel's use of a survey website (SurveyMonkey) to ask some unknown customers—but apparently not their own clients—a few fundamentally flawed leading questions, such as "Would it be important to your buying decision to know if the iPhone might

1    experience unexpected shutdowns?" and whether the respondents value "more power and

2    performance with the best battery life ever." (*Id.*) These questions, and their answers, do not address

3    any point material to this Motion. Plaintiffs' counsel never asked about, or even acknowledged, the

4    admitted "tradeoff" between avoiding UPOs and supplying peak power to deliver top performance

5    (*id.* ¶¶ 13, 432)—or, critically, the common-sense point, of which "consumers are fully aware," that

6    batteries do not last forever (Dkt. 219 at 33).

7        (b) Plaintiffs Do Not Plead Awareness. In addition, Plaintiffs do not plead awareness (*Sud*,

8    229 F. Supp. 3d at 1083)—i.e., a "method" by which Apple should have disclosed any alleged

9    omitted fact. *McVicar v. Goodman Glob., Inc.*, No. 13-1223, 2015 WL 4945730, at *11 (C.D. Cal.

10   Aug. 20, 2015). They still do not plead how Apple should have disclosed either their alleged

11   "defect" or any supposed omitted facts about the performance management feature. (*See* SAC ¶¶ 4,

12   370.) Once again, the SAC fails for the same reasons as the CAC. (*See* Dkt. 176 at 27; Dkt. 197

13   at 14.)

14       **4.    *Plaintiffs Have Not Pled That Apple's Conduct Is "Unfair" Or "Unlawful."***

15       Nor do Plaintiffs state a claim under the "unlawful" or "unfair" prongs of the UCL—or any

16   other non-fraud-based defect claim. The SAC does not allege that Apple's conduct is "unlawful"

17   apart from the CDAFA and CFAA, which are addressed below. And because the same "business

18   practices" alleged under "the fraudulent and unlawful prongs of the UCL" are those alleged to be

19   unfair, "the unfair prong of the UCL cannot survive if the claims under the other two prongs of the

20   UCL do not survive." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104–05 (N.D. Cal.

21   2017); *see* MTD Order 37 (allowing "unlawful" and "unfair" prongs to proceed based on ruling that

22   Plaintiffs had stated a CDAFA claim but otherwise dismissing UCL claim).

23       In addition, as courts already have concluded, Apple's design choices are not "unfair." *See*

24   *Donohue v. Apple Inc.*, 871 F. Supp. 2d 913, 928 (N.D. Cal. 2012) ("Apple's choice to develop its

25   own formula in designing the iPhone signal meter" is not unfair); *Palmer v. Apple Inc.*, No. 15-

26   05808-RMW, 2016 WL 1535087, at *7 (N.D. Cal. Apr. 15, 2016) ("Apple's failure to disclose the

27   details of how the iPhone 5 switched off its Wi-Fi capability to improve battery life" is not unfair).

28

**D.      Plaintiffs Have Not Tried To Salvage Their Claims About iPhone 5/5c/5s Devices (Counts 1–18)**

The Court previously dismissed all claims about iPad and iPhone 5/5c/5s devices, because there are no allegations these devices ran the performance management feature.  (MTD Order 38–39.) Discovery confirmed that the feature never operated on these devices, and Plaintiffs added no contrary allegations to the SAC, only preserving the issue for appeal.  (SAC ¶ 1 n.1.)[3]  While Plaintiffs allege that their "defect" theory applies to these devices, that theory fails for the reasons explained above and by the Court.  (*See supra* at 14–20; MTD Order 26–37.)  The Court should dismiss these claims for the same reasons and with prejudice.

**E.      Plaintiffs Fail To State "Computer Intrusion" Claims (Counts 1, 5, and 6)**

Counts 1, 5, and 6 are what the Court termed "computer intrusion" claims.  (MTD Order 17.) The Court previously dismissed all of these except claims for trespass to chattels and violations of 18 U.S.C. § 1030(a)(5)(A) and Cal. Penal Code § 502(c)(4), (5).  (*Id.* at 17–26.)  Plaintiffs have now re-pled these claims.  All of them should be dismissed, both for the reasons the Court previously articulated and for additional reasons the Court did not previously address.

**1.      *Plaintiffs Fail To Plead That Apple Fraudulently Induced Plaintiffs To Damage Their Devices.***

As the Court explained, Plaintiffs previously failed to state claims requiring unauthorized access, such as their CFAA claim under 18 U.S.C. § 1030(a)(5)(C), because they "admit that they have a choice about whether to download an update," and "Plaintiffs gave Apple permission by choosing to voluntarily download and install the iOS updates."  (MTD Order 20.)  Plaintiffs repeat these admissions (*see* SAC ¶¶ 416–19), and do not add any allegations that Apple lacked consent to access the devices.  Because they fail to allege that "Apple's access was without authorization" (MTD Order 21), the Court should again dismiss claims requiring unauthorized access.

Plaintiffs also fail to state claims requiring unauthorized "damage."  The Court previously held that Plaintiffs' allegations showed that they had consented to access of their devices, but not to the purported "damage" to their devices.  (*Id.* at 19–20.)  But if Plaintiffs consented to the installation

---

3      Plaintiffs also retained allegations regarding iPad devices to preserve their appellate rights.  (*Id.*)

of an iOS update, as the Court correctly held they had, then Plaintiffs necessarily consented to the changes made by that software, unless they can plausibly allege that Apple fraudulently misrepresented the contents of those iOS updates.  (*Id.*)

The SAC does not adequately allege that Apple fraudulently misrepresented the contents of the iOS updates.  Because this claim sounds in fraud, it must be pled with specificity under Rule 9(b).  *See Kearns*, 567 F.3d at 1125; *Oracle Am., Inc. v. Serv. Key, LLC*, No. 12-00790-SBA, 2012 WL 6019580, at *6 (N.D. Cal. Dec. 3, 2012) (computer intrusion claims based on the notion that the defendant "fraudulently induced customers" need to satisfy Rule 9(b)); *Blanda v. Butler*, No. 16-01008, 2016 WL 10842584, at *5 (C.D. Cal. Aug. 22, 2016) (same); *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1072 & n.13 (N.D. Cal. 2018) (same).  Plaintiffs allege that Apple fraudulently induced them to download certain iOS updates by misrepresenting the contents and omitting a thorough description of the performance management feature (SAC ¶¶ 402–05), that therefore the permission they provided did not authorize Apple's alleged access, trespass, or damage to their devices (*id.* ¶¶ 415–19, 507–13, 556–71).  These allegations are insufficient under Rule 9(b) because they fail to establish "an account of the time, place, and specific content of the false representations."  *Ewiz Express Corp. v. Ma Labs., Inc.*, No. 15-01213-LHK, 2015 WL 5680904, at *4 (N.D. Cal. Sept. 28, 2015).  For example, there are (1) no allegations about which Plaintiffs viewed which representations; (2) no allegations that any Apple statement was false; and (3) no allegations that a reasonable customer would be deceived by any alleged omission.  "[N]either [Apple] nor the Court should have to guess how Plaintiff[s] contend[] these [computer intrusion laws] were violated."  *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1090 (N.D. Cal. 2018).

Plaintiffs state that they "did not give permission for Apple to install iOS updates" (SAC ¶ 508), but they also attach proof that they, in fact, gave the necessary consent.  The iOS license gives Apple permission to install updates (SAC, Exs. 5, 6 ¶ 1(b)), and, by agreeing to the iOS license, Plaintiffs explicitly assumed for themselves any risk the iOS software would not operate exactly as expected.  (*Id.* ¶¶ 7.2–7.5.)  Plaintiffs thus consented to any alleged "damage" caused by features in the updates Plaintiffs now claim they did not want.  In this way, Plaintiffs are like homeowners who have let a building contractor into their homes to upgrade their kitchens, thus giving permission for

1  the contractor to demolish and change parts of the houses; any claim that the contractor caused

2  excessive damage in the process sounds in contract, not trespass.  Plaintiffs' consent defeats each of

3  their computer intrusion claims.  *See, e.g.*, *Talyancich v. Microsoft Corp.*, No. 12-1128, 2012 WL

4  12941690, at *4 (W.D. Wash. Nov. 2, 2012) (applying California law); *In re iPhone Application*

5  *Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *12–13 (N.D. Cal. Sept. 20, 2011).

6         As the Court explained, "the CFAA was enacted 'primarily to address the growing problem of

7  computer hacking,' and the Ninth Circuit has resisted efforts to expand the statute beyond that core."

8  (MTD Order 21 (quoting *United States v. Nosal*, 676 F.3d 854, 858 (9th Cir. 2012) (en banc)).)  Any

9  contrary reading would be inconsistent with both that direction and with the rule of lenity.  *See LVRC*

10  *Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009) (citation omitted; construing CFAA);

11  *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705, 715–16 (N.D. Cal. 2011).  It would make a

12  tortfeasor, and even a criminal, out of any software maker that did not require users installing the

13  software to affirmatively consent to each and every feature of the software that could meet the

14  threshold of "damage" under the CFAA, CDAFA, and doctrine of trespass to chattels.

15         **2.    *Plaintiffs Do Not Plead That Any Of Them Suffered Damage.***

16         Here, Plaintiffs have not adequately alleged that each of them suffered the requisite quantum

17  of "damage."  As the Court explained, not just any injury qualifies:  A plaintiff must allege that she

18  suffered damage beyond "tak[ing] up valuable bandwidth and storage space or shorten[ing] the

19  battery life of the device."  (MTD Order 25 (punctuation omitted).)  While the SAC alleges generally

20  that the iOS updates would sometimes reduce performance in some phones, there are no factual

21  allegations that any named Plaintiff—let alone each of them—suffered any ill effect.

22         The computer intrusion claims must be dismissed on this basis.  A "CFAA plaintiff must

23  always establish that he is a person who suffered damage or loss by reason of a violation of the

24  CFAA."  *Wichansky v. Zowine*, 150 F. Supp. 3d 1055, 1072 (D. Ariz. 2015); *accord Halperin v. Int'l*

25  *Web Servs., LLC*, 70 F. Supp. 3d 893, 899 (N.D. Ill. 2014) (dismissing CFAA claim for failure to

26  allege individualized damage).  This is true not only for the CFAA, but for CDAFA and trespass to

27  chattels too:  As explained above, each plaintiff must plead that *she* suffered the requisite injury to

28  state each claim.  (*Supra* at 6–8.)  Where, as here, "there is no basis to conclude that Plaintiff has

personally suffered a loss as a result of the [hacking] offense," her claim must be dismissed. *Mintz v. Mark Bartelstein & Assocs.*, 906 F. Supp. 2d 1017, 1029 (C.D. Cal. 2012).[4]

## F. Plaintiffs' Contract Claims (Counts 10–12, 16) Fail As A Matter Of Law And Show The Deficiencies In Plaintiffs' Other Claims

Plaintiffs also fail to plead their four contract claims (Counts 10–12, 16). These claims are very generic, as they are based on the premise that "Plaintiff and class members formed contracts with Apple at the time they purchased their Apple Devices"—but they do not specify what those contracts are, what their terms are, or how the parties performed or breached those terms. (SAC ¶ 607.) That is likely because these contracts clearly preclude the claims asserted in the SAC.

### 1. Plaintiffs Fail To Identify The Contract.

Each of Plaintiffs' contract-related claims fails for the fundamental reason that Plaintiffs do not specify what the contract is, what its terms are, and how Apple allegedly breached it. *See Donohue*, 871 F. Supp. 2d at 930 ("The complaint must identify the specific provision of the contract allegedly breached by the defendant."); *iPhone Application Litig.*, 2011 WL 4403963, at *9 (dismissing because "Plaintiffs d[id] not actually identify the contract upon which they are relying" or "identify the 'contract's purposes'" so court "c[ould not] determine whether Plaintiffs were deprived of the benefits of the contract at issue").

Here, none of Plaintiffs' allegations (SAC ¶¶ 609–11) "identif[ies] any specific contractual provision" Apple allegedly breached. *Inter-Mark*, 2008 WL 552482, at *7. It is not even "clear from the complaint whether plaintiff is pursuing a theory based on a written, oral, or implied-in-fact contract (or some combination thereof)"; accordingly, these claims must be dismissed. *Coffen v. Home Depot U.S.A. Inc.*, No. 16-03302-PJH, 2016 WL 4719273, at *5 (N.D. Cal. Sept. 9, 2016).

---

[4] In addition, the economic loss rule should bar Plaintiffs' trespass to chattels claims. (*See* Dkt. 176 at 34–35; Dkt. 197 at 19–20 n.20.) The Court previously declined to apply the economic loss rule on the basis that "Plaintiffs plead their trespass to chattels claim with its attendant damages separate and apart from any breach of contract." (MTD Order 26.) But there are at least two contracts between the parties at issue in the SAC: the Hardware Warranty and the SLA. (*See infra* at 24–29.) Because the parties' relationship "arises solely out of their contract and commercial transaction, … the economic loss rule applies to bar Plaintiff[s'] tort claims for … trespass to chattels." *Baggett v. Hewlett-Packard Co.*, No. 07-0667, 2009 WL 3178066, at *2–3 (C.D. Cal. Sept. 29, 2009) (collecting cases).

2. *The Actual Written Contracts Between The Parties Preclude All Of These Claims.*

Even though Plaintiffs do not base their contract claims on them, Plaintiffs admit that the parties did enter into actual, written contracts that govern claims of alleged poor performance caused by both the software and the hardware.  Plaintiffs attach and repeatedly rely on the Software License Agreement (SLA).  (SAC ¶¶ 24, 274–78, 480–84, Exs. 5, 6.)  They claim the SLA is "part of the benefit of Plaintiffs' and class members' bargains when purchasing Devices to the extent they apply." (*Id*. ¶ 483.)  Plaintiffs also repeatedly refer to the Hardware Warranty that Apple provides its customers with their iPhones in the United States.  (*Id*. ¶¶ 387, 446, 482.)  As Apple has explained in its Request for Judicial Notice, this warranty may be considered on a motion to dismiss.  (Dkts. 177, 198.)  While the Court has not yet decided whether to take judicial notice of the Hardware Warranty (*see* MTD Order 12), it did repeatedly reference the warranty in its MTD Order (*id.* at 34, 36–37).

Plaintiffs' claims are foreclosed by these actual written contracts they entered into with Apple:  the Hardware Warranty (Dkt. 177 Ex. A) and the SLA (SAC Exs. 5, 6).

(a) Plaintiffs Cannot Maintain Claims for Implied, Oral, or Quasi-Contract.  California law does not create implied obligations where the parties have reduced their agreement to writing.  *See Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011).  "Given th[e] express language" in the written agreements, Apple "could not have an implied obligation to provide a different [performance]" than what it promised in those contracts.  *Id.*  Under California law, "[t]here cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time."  *Berkla v. Corel Corp.*, 302 F.3d 909, 918 (9th Cir. 2002) (citation omitted).  "The reason for the rule is simply that where the parties have freely, fairly and voluntarily bargained for certain benefits in exchange for undertaking certain obligations, it would be inequitable to imply a different liability."  *Hedging Concepts, Inc. v. First All. Mortg. Co.*, 41 Cal. App. 4th 1410, 1419 (1996) (citation omitted).  Another court in this circuit applied this rule to dismiss claims that Apple breached an implicit contract by releasing an iOS update that supposedly impaired iPhone functionality, because the SLA "is an express contract that governs the same subject matter."

1    *Wofford v. Apple Inc.*, No. 11-0034, 2011 WL 5445054, at *2, *4 (S.D. Cal. Nov. 9, 2011).[5]

2          (b) <u>The Contracts Limit Apple's Liability</u>.    These integrated, written contracts also limit

3    Apple's liability, and preclude the claims Plaintiffs raise here: <u>*First*</u>, the Hardware Warranty limits

4    its coverage of battery issues to "defect[s] in materials or workmanship," it disclaims "all other

5    warranties, remedies and conditions," and it lasts for only one year.  (Dkt. 177, Ex. A.)  As another

6    court has found, "[t]he disclosed eventuality of the iPhone battery's depletion" does not breach any

7    warranty or other Apple contract.  *Trujillo v. Apple Comput., Inc.*, 581 F. Supp. 2d 935, 940–41 (N.D.

8    Ill. 2008).  This comports with the rule under California law that

9            an express warranty does not cover repairs made after the applicable time or [usage]
10           periods have elapsed. … Every manufactured item is defective at the time of sale in
        the sense that it will not last forever; the flip-side of this original sin is the product's
11           useful life.  If a manufacturer determines that useful life and warrants the product for
        a lesser period of time, we can hardly say that the warranty is implicated when the
item fails after the warranty period expires.  The product has performed as expressly
12           warranted.  Claims regarding other buyer expectations and the manufacturer's state of
        mind properly sound in fraud and implied warranty.

13   *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).  Thus, a "latent defect,

14   discovered outside the limits of a written warranty," cannot "form the basis for a valid express

15   warranty claim," even "if the warrantor knew of the defect at the time of sale."  *Daugherty*, 144 Cal.

16   App. 4th at 830.  Because "[a]ll parts will wear out sooner or later and thus have a limited effective

17   life," there is no cause of action for failure outside the warranty term.  *Abraham v. Volkswagen of

18   *Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986).  And the integration clause precludes Plaintiffs' claims

19   based on implied, oral, or other contracts.  *See*, *e.g.*, *Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232,

20   1239 (S.D. Cal. 2009).

21        <u>*Second*</u>, like the Hardware Warranty, the SLA includes integration clauses providing that it

22   sets forth the entire agreement in its sphere.  (*See* SAC, Exs. 5, 6 ¶ 1(b) ("The terms of this License

23   will govern any iOS Software Updates provided by Apple … unless such iOS Software Update is

24

25   [5]    Even if an implied promise survived the specific iPhone/iOS agreements to the contrary, there is
26   no allegation the iPhone "lacks even the most basic degree of fitness for ordinary use." *Birdsong v.
Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (quotation marks omitted); *accord Herrington v.
Johnson & Johnson Consumer Cos.*, No. 09-1597-CW, 2010 WL 3448531, at *13 (N.D. Cal. Sept. 1,
27   2010).  The iOS license explicitly disclaims any notion that it is suitable for uses where time delay is
important.  (SAC, Exs. 5, 6 ¶ 7.5.)  And Plaintiffs do not plead that the phones would not function *at
28   all*—or even that any of them perceived reduced performance.

accompanied by a separate license in which case the terms of that license will govern."), ¶ 7.6 ("NO ORAL OR WRITTEN INFORMATION OR ADVICE GIVEN BY APPLE OR AN APPLE AUTHORIZED REPRESENTATIVE SHALL CREATE A WARRANTY."), ¶ 13 ("This License constitutes the entire agreement between you and Apple relating to the iOS Software and supersedes all prior or contemporaneous understandings regarding such subject matter.").)

And the SLA expressly allocates all risk from use of the software to the user. (*See* SAC Exs. 5, 6 ¶ 7.2 ("YOU EXPRESSLY ACKNOWLEDGE AND AGREE THAT, TO THE EXTENT PERMITTED BY APPLICABLE LAW, USE OF THE iOS SOFTWARE AND ANY SERVICES PERFORMED BY OR ACCESSED THROUGH THE iOS SOFTWARE IS AT YOUR SOLE RISK AND THAT THE ENTIRE RISK AS TO SATISFACTORY QUALITY, PERFORMANCE, ACCURACY AND EFFORT IS WITH YOU."); *accord id.* ¶¶ 7.2–7.6 (disclaiming other warranties).) In other words, Plaintiffs explicitly agreed to assume all risk from use of the iOS software, and that Apple was providing no further contract or promises regarding iOS.

These disclaimers are valid and binding. This Court has rejected a "breach of contract claim" against a company where the terms of service provided that "you use [the site] at your own risk," *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1062–64 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017)—language even less clear than Plaintiffs' acceptance of "THE ENTIRE RISK AS TO SATISFACTORY QUALITY [and] PERFORMANCE." A merchant may properly disclaim the implied warranties of merchantability and fitness for a particular purpose as long as the disclaimer "mention[s] merchantability" and fitness for a particular purpose and is "conspicuous." *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1138, 1155–56 (N.D. Cal. 2010). That is equally true of the disclaimers in the Hardware Warranty and the SLA, both of which are specific and conspicuous.

(c) <u>Plaintiffs Failed To Give Apple the Chance to Repair, Refund, or Replace the Phones, as the Hardware Warranty and the Commercial Code Require</u>. In addition, both the Hardware Warranty and the Commercial Code require customers to present any issue they have to Apple, to give Apple the chance to fix the issue, before they sue. Specifically, the warranty requires a customer experiencing a problem with her device to bring it to Apple or an Apple Authorized Service Provider; then, Apple will determine, "at its option," whether to give the customer a repair, replacement, or

1   refund.  (Dkt. 177, Ex. A.)  The procedures customers must follow are enumerated in sections entitled

2   "WHAT WILL APPLE DO IN THE EVENT THE WARRANTY IS BREACHED?", "HOW TO

3   OBTAIN WARRANTY SERVICE", and "WARRANTY SERVICE OPTIONS."  (*Id.*)  Only if the

4   customer "submit[s] a claim to Apple"—by "contact[ing] an Apple representative or … an Apple

5   owned retail store or AASP" and giving the "Apple representative or AASP" the opportunity to

6   determine "how Apple will provide" service—will Apple "provide warranty service."  (*Id.*)  In other

7   words, the warranty gives customers the contractual means of fixing problems with the device:  Bring

8   the device to Apple.  Plaintiffs may not circumvent these processes by filing a lawsuit.

9           This comports with the general requirements under the Commercial Code.  "To avoid

10  dismissal of a breach of contract or breach of warranty claim in California, a buyer must plead that

11  notice of the alleged breach was provided to the seller within a reasonable time after discovery of the

12  breach"—and, in all events, "pre-suit."  *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011);

13  *accord* Cal. Com. Code § 2607(3)(A) (a buyer "must, within a reasonable time after he or she

14  discovers or should have discovered any breach, notify the seller of breach or be barred from any

15  remedy").  Plaintiffs do not allege that they met their obligation to submit the claim to Apple.[6]

16          (d)  <u>Plaintiffs Fail to Allege That Apple Has Breached Any Express Promise</u>.  On top of these

17  procedural problems, Plaintiffs' claims also fail because Apple did not breach any agreement or other

18  express promise.  To the extent Plaintiffs base their allegations on Apple's advertising or other

19  statements, these claims fail for the same reason their affirmative misrepresentation claims fail:  they

20  do not allege that they even saw such representations (much less formed an agreement with Apple

21  based on them) and they do not allege that Apple did not live up to its representations.  (*See supra* at

22  6–13.)

23          For example, Plaintiffs allege that their devices "did not perform as advertised or promised"

24  (SAC ¶ 614)—but no contract promises that the batteries will last forever; in fact, Apple disclosed

25  that batteries are "consumable parts" (*e.g.*, Dkt. 177 Ex. A).  As the Court ruled, "consumers know

26

27  [6]   Plaintiffs' summary CLRA demand letter (Dkt. 174, Ex. 12) did not satisfy this requirement.
    Plaintiffs did not bring their devices to Apple or an authorized service provider to repair, replace, or
28  refund.  (Dkt. 177, Ex. A.)  And the letter was served *after* plaintiffs filed their individual lawsuits.

1    about the problem of declining battery performance" (MTD Order 36)—and, "[i]n addition to

2    consumers' baseline awareness of the inevitability of battery decay, Apple's representations made

3    that point even more salient with respect to the devices at issue." (*Id.* at 34.) Statements about

4    battery capacity "make clear that consumers cannot realistically expect their batteries to last for the

5    lifetime of their devices (or even necessarily for more than a year)." (*Id.*) And "[n]o Plaintiff alleges

6    that the battery in his or her device did not live up to the standards actually communicated by Apple."

7    (*Id.*)

8         **3.    *Plaintiffs' Contract Claims Fail For Several Additional Reasons.***

9         The basic failures listed above defeat all of Plaintiffs' contract claims. In addition, each of

10   Plaintiffs' theories of implied, oral, and quasi-contract also fails for other reasons.

11        (a) No Privity. Any claims for iPhones purchased from third parties fail for lack of privity.

12   *See Clemens*, 534 F.3d at 1023–24; *Williams*, 2015 WL 13626022, at *5–6. No Plaintiff alleges that

13   she purchased her phone directly from Apple, so no Plaintiff can maintain an implied contract claim.

14        (b) Plaintiffs Cannot Bring A "Good Faith and Fair Dealing" Claim (Count 11). The claim

15   for breach of the implied covenant of good faith and fair dealing also fails because Plaintiffs do not

16   identify a governing contractual promise. The "implied covenant of good faith is read into contracts

17   in order to protect the express covenants or promises in the contract, not to protect some general

18   public policy interest not directly tied to the contract's purpose." *Young*, 790 F. Supp. 2d at 1117

19   (citation omitted). It is "limited to assuring compliance with the express terms of the contract, and

20   cannot be extended to create obligations not contemplated by the contract." *Pasadena Live, LLC v.*

21   *City of Pasadena*, 114 Cal. App. 4th 1089, 1094 (2004) (emphasis omitted). As a result, the "implied

22   covenant will not apply where no express term exists on which to hinge an implied duty, and where

23   there has been compliance with the contract's express terms." *Berger v. Home Depot U.S.A., Inc.*,

24   476 F. Supp. 2d 1174, 1177 (C.D. Cal. 2007). Like a breach of contract claim, an implied covenant

25   claim must be dismissed where, as here, Plaintiffs fail to "identif[y] the specific obligation allegedly

26   breached" because it is "impossible to know how [Apple] is supposed to have breached any implied

27   covenant of good faith and fair dealing that may exist." *Inter-Mark*, 2008 WL 552482, at *3, *6-7.

28        (c) Plaintiffs Do Not State a Claim for "Money Had and Received" (Count 12). Plaintiffs

also fail to state a claim for money had and received, for several reasons. *First*, this claim "will only lie when there is a total failure of consideration," or potentially where there is a "definite" amount of the plaintiff's money the defendant is unjustly keeping. *Brown v. Grimes*, 192 Cal. App. 4th 265, 282 (2011). Plaintiffs do not (and cannot) allege that the devices they purchased were entirely worthless from the moment of sale; nor do they allege a "precise or definite" amount of money Apple is keeping. *Id. Second*, the SAC does not allege how Apple holds money that rightfully belongs to Plaintiffs, given the deficiencies of their other contract claims. *See McBride v. Boughton*, 123 Cal. App. 4th 379, 394 (2004) ("[Plaintiff's] common count [for money had and received] must stand or fall with his [unjust enrichment] cause of action, and we therefore uphold its dismissal for the same reasons."). *Third*, claims "for money had and received and restitution" also must be dismissed "where there exists between the parties a valid express contract covering the same subject matter." *Shvarts v. Budget Grp., Inc.*, 81 Cal. App. 4th 1153, 1160 (2000).

(d) <u>Plaintiffs Cannot Maintain a Claim for Quasi-Contract or Unjust Enrichment (Count 16)</u>. The purported unjust enrichment claim also fails for multiple reasons. *First*, there is no basis to seek relief under this theory because Plaintiffs have failed to plead any actionable misrepresentation or omission. *See, e.g., Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016) ("[W]hen a plaintiff fails to sufficiently plead an actionable misrepresentation or omission, his or her restitution claim must be dismissed." (punctuation omitted)); *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011) (sustaining demurrer of unjust enrichment claim because "[t]here being no actionable wrong, there is no basis for the relief").

*Second*, "the existence of an express warranty covering the purchase bars any claim for unjust enrichment," even if the parties to the warranty are not in privity. *Williams*, 2015 WL 13626022, at *14–15. A plaintiff cannot maintain an unjust-enrichment claim, which sounds in quasi-contract, where there is an express contract covering the same subject matter. *See, e.g., Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996); *McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1091 (9th Cir. 2003). Plaintiffs acknowledge this problem by bringing their unjust enrichment claim "in the alternative to contract-based causes of action." (SAC ¶ 662.) But "[P]laintiff[s] cannot assert [their] unjust enrichment claim in the alternative."

1    *Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004).

2         ***Third***, Plaintiffs "have not offered any legal basis for their assertion that [there] was a

3    wrongful acquisition of benefits which [Apple is] not entitled to retain."  *Marina Tenants Ass'n v.*

4    *Deauville Marina Dev. Co.*, 181 Cal. App. 3d 122, 134 (1986).  Plaintiffs allege that they "purchased

5    the devices from Apple," and "Apple was unjustly enriched by the purchase price of those Devices"

6    (SAC ¶¶ 663–64), but the "mere fact that a person benefits another is not of itself sufficient to require

7    the other to make restitution therefor."  *Marina Tenants Ass'n*, 181 Cal. App. 3d at 134.  Plaintiffs do

8    not adequately plead that Apple received the purchase price for the devices through any "wrongful"

9    means.  As the Court ruled, "consumers are fully aware of the facts regarding software capability and

10   battery capacity," and "Plaintiffs have not pled that any omitted information would have influenced a

11   reasonable consumer's decision about whether to purchase the Apple device at the stated price."

12   (MTD Order 33–35.)

13   **G.     Plaintiffs Have Not Justified Their Attempts To Make This A Global Class Action**

14        Finally, Plaintiffs' attempt to make this into a global class action fails for several reasons:

15   (1) the Court should dismiss their U.K. claims on *forum non conveniens* and comity grounds; (2) the

16   CDAFA, like the FAL, does not apply extraterritorially; and (3) non-U.S. Plaintiffs cannot bring

17   claims under U.S. or California law.

18        **1.     *Plaintiffs' U.K. Law Claims (Counts 17–18) Should Be Dismissed For Lack Of A***
19             ***Plaintiff And On Forum Non Conveniens And Comity Grounds.***

20        The Court should dismiss Plaintiffs' U.K. law claims (Counts 17–18).  Apple raises two

     grounds here, although it reserves the right to challenge these claims on the merits.

21        Specifically, the Court should dismiss Plaintiffs' U.K. law claims under the doctrines of

22   *forum non conveniens* and international comity.  (*See* Dkt. 176 at 15–18; Dkt. 197 at 7–9.)  Dismissal

23   on this basis requires that there exist "an adequate alternative forum, and that the balance of public

24   and private interest factors favors dismissal."  *Carijano v. Occidental Petroleum Corp.*, 643 F.3d

25   1216, 1224 (9th Cir. 2011).  An adequate alternative forum exists if "the defendant is amenable to

26   process there" and "the other jurisdiction offers a satisfactory remedy."  *Id.*  Similarly, international

27   comity permits a court "to decline to exercise jurisdiction in a case properly adjudicated in a foreign

28

state." *Mujica v. AirScan Inc.*, 771 F.3d 580, 599 (9th Cir. 2014).

Apple previously briefed all of these grounds, but the Court declined to dismiss the claims on this basis because it concluded that Apple Inc. had not made a sufficiently definitive statement that it would be subject to jurisdiction in the U.K. (MTD Order 17.) In response to the Court's concerns, Apple Inc. confirms that it will submit to the jurisdiction of U.K. courts for the purposes of Counts 17 and 18. (*See* Decl. of G. Charles Nierlich ¶¶ 2–3.) This confirmation demonstrates that an adequate alternative forum exists. *See, e.g.*, *Gutierrez v. Advanced Med. Optics, Inc.*, 640 F.3d 1025, 1029 (9th Cir. 2011); *Best Aviation Ltd. v. Chowdry*, No. 12-05852, 2012 WL 5457439, at *5 (C.D. Cal. Nov. 7, 2012). And U.S. courts have repeatedly found that the U.K. provides an adequate alternative forum. *See, e.g.*, *Warn v. M/Y Maridome*, 169 F.3d 625, 629 (9th Cir. 1999).

The remaining factors that this Court did not address also support dismissal on this basis. As noted before, the balance of public and private interest factors favors dismissal. (Dkt. 176 at 17–18; Dkt. 197 at 7–9.) As to the public interest factors, the cost and complexities of asking this Court to apply relatively new U.K. law in which there is not a substantial body of case law available to entirely novel legal theories, the burden on the court and juries in adjudicating U.K. law claims, and the impact on the speed and efficiency of the U.S. Plaintiffs' claims all strongly support dismissal. *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2011) ("Public interest" factors include "(1) local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum."); (Dkt. 176-8, Decl. of Jonathan Kirk Q.C. ¶¶ 13–14 (explaining that the U.K. laws at issue have not yet been interpreted authoritatively by U.K. courts and would require analysis of E.U. legal principles)). This is not an instance in which the Court would simply be applying English law to a standard issue of contract interpretation in which the law does not differ from California law, *see BladeRoom Grp. Ltd. v. Emerson Elec. Co.,* No. 15-01370-EJD, 2018 WL 2124064, at *1 (N.D. Cal. May 8, 2018), but rather would require application of a new, unsettled U.K. consumer law. (*See* Dkt. 197-6, Kirk Rebuttal Decl. ¶¶ 8–10.) These same considerations support dismissal of the U.K. claims on comity grounds. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-1775, 2008 WL 5958061, at *31 (E.D.N.Y. Sept. 26, 2008) (applying comity doctrine "where the adjudication of

claims involves the application of unsettled foreign law"). The U.K. has a significantly greater interest in adjudicating its own "nationals[']" claims under its own laws, based on conduct related to devices "within [its] borders." *Mujica*, 771 F.3d at 607.

Further, the private interest factors, which include "(1) the residence of the parties and witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive," also strongly support dismissal. *Lueck*, 236 F.3d at 1145 (quotation marks omitted). The U.K. law claims are brought on behalf of individuals who purchased Apple devices in the U.K. (SAC ¶ 491), meaning that the U.K. class mostly consists of U.K. residents. Although certain evidence relevant to Plaintiffs' claims may be available in California, the fact that the overwhelming majority of purported subclass members likely reside in the U.K. strongly favors dismissal. There is little reason to think that the U.S. is a more "convenient" forum for the absent class members whose claims are being usurped and asserted in a foreign forum, almost certainly without their knowledge. Therefore, the Court should dismiss the U.K. claims on *forum non conveniens* and comity grounds.[7]

### 2.    *California's CDAFA (Count 5), Like The FAL, Does Not Apply Extraterritorially.*

The Court also should dismiss non-California Plaintiffs' claim under the CDAFA (Count 5) because the statute does not apply extraterritorially. As this Court recognized in dismissing Plaintiffs' FAL claim, courts applying California law must "presume the Legislature did not intend a statute to be 'operative, with respect to occurrences outside the state, … unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history.'" *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1207 (2011); *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1004 (N.D. Cal. 2014) (presumption against extraterritoriality is "presumed to be present" absent clear contrary legislative intent). (*See also* MTD Order 13.)

---

[7]    The U.K. law claims also should be dismissed because, based on the untimely death of Kushagra Sharma (*see* Dkt. 253 at 1), there is no named U.K. plaintiff to pursue these claims. *In re Capacitators Antitrust Litig.*, 154 F. Supp. 3d 918, 928 (N.D. Cal. 2015); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1075 (N.D. Cal. 2015).

Neither the text nor the legislative history of the CDAFA suggests that the California legislature intended for it to apply outside of California. To the contrary, the statute expressly states that its purpose is to "protect[] the privacy of individuals as well as … the well-being of financial institutions, business concerns, governmental agencies, and others within this state." Cal. Penal Code § 502(a). This explicit limitation—"within this state"—confirms that the CDAFA protects the privacy and well-being of individuals and entities in California—and not everyone who resides in another state or country. *See, e.g.*, *O'Connor*, 58 F. Supp. 3d at 1004; *Wright v. Adventures Rolling Cross Country*, No. 12-982-EMC, 2012 WL 12942824, at *4 (N.D. Cal. May 3, 2012). Thus, the CDAFA cannot apply beyond California "even if the parties stipulate that the law should apply." *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1223 (9th Cir. 2003). The Court should therefore dismiss all CDAFA claims by non-California Plaintiffs.

### 3.    *All Claims Brought By Non-U.S. Plaintiffs (Counts 1–16) Should Be Dismissed Because Their Claims Are Not Governed By California Or U.S. Law.*

Finally, all of the non-U.S. Plaintiffs' claims under California and U.S. law (Counts 1–16) should be dismissed because—as explained in Apple's motion for reconsideration—any claim those Plaintiffs could assert would be governed by the laws of the foreign jurisdictions where they either purchased their devices or reside. (Dkts. 236-1, 269.) The SAC does not change the outcome. As noted above, despite Plaintiffs' conclusory attempt to recast their "defect" theory (*see supra* at 1, 14), the underlying factual allegations have remained the same: that iPhone batteries were not designed to meet the demands of the phone's processor or software as the battery aged. (*E.g.*, SAC ¶ 4; CAC ¶¶ 13, 397.) Because Plaintiffs' claims are still grounded in the same alleged hardware "defect," they still fall within the scope of the Hardware Warranty's choice of law, not the SLA. (*See* Dkt 236-1 at 7–13; Dkt. 269 at 2–5.) Non-U.S. Plaintiffs still do not allege that they purchased their devices in California, and thus they may not bring any claims under California law (Counts 2–16). (Dkt. 236-1 at 19–20.)[8]

Nor can they bring a federal CFAA claim (Count 1). Claims within the scope of the

---

[8]    Alternatively, because Plaintiffs still allege that the batteries had this issue when sold, the governmental interests test once again would point to the law of the foreign country of purchase as governing non-U.S. Plaintiffs' claims. (Dkt. 269 at 10.)

DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:18-MD-02827-EJD

Gibson, Dunn &
Crutcher LLP

1   Hardware Warranty are "governed by and construed under the laws of the country in which the Apple

2   Product purchase took place," and the CFAA is not part of the "laws of [any] country" other than the

3   United States. (Dkt. 177, Ex. A.) Therefore, no Plaintiff who purchased an Apple device in a foreign

4   country may bring any claim under the CFAA. *See*, *e.g.*, *Richards v. Lloyd's of London*, 135 F.3d

5   1289, 1294–97 (9th Cir. 1998) (en banc) (choice of law and forum provisions in agreement that

6   invoked English law precluded party from litigating federal securities and RICO claims).

7   ## V.    <u>CONCLUSION</u>

8       This is the second time Plaintiffs have tried and failed to find a legal theory under which

9   Apple's successful efforts to improve the experiences of its customers is actionable. The Court

10  should dismiss the SAC with prejudice.

11  DATED:  January 24, 2019                    GIBSON, DUNN & CRUTCHER LLP

12                                              By:  _____*/s/ Christopher Chorba*_____

13                                                      Christopher Chorba

14                                              *Attorneys for Defendant Apple Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2      I, Christopher Chorba, hereby certify that on January 24, 2019, the foregoing **NOTICE OF**

3  **MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND CONSOLIDATED**

4  **AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF POINTS AND**

5  **AUTHORITIES** and attachments thereto were filed electronically through the CM/ECF system,

6  copies of which were sent by First Class Mail to the following individuals unable to accept them via

7  the electronic filing system:

8  Abdul Mohammed
9  258 East Bailey Rd Apt. C
   Naperville, IL 60565
10
   Andrew Kierstead
11  Hobson Bernardino & Davis LLP
   444 South Flower Street
12  Suite 3100
   Los Angeles, CA 90071
13
14  Brian Hogue
   103158
15  c/o ISC C
   H-3
16  P.O. Box 70010
   Boise, ID 83707
17
18  Cathleen M. Combs
   Edelman Combs Latturner & Goodwin, LLC
19  120 South LaSalle Street
   18th Floor
20  Chicago, IL 60603

21  Noah Benjamin Novogrodsky
22  Univ Toronto/Faculty Of Law
   84 Queen's Park
23  Toronto ON M5S 2C5

24  Peter Wasylyk
25  Hobson Bernardino & Davis, LLP
   444 South Flower Street, Suite 3100
26  Los Angeles, CA 90071

27

28

DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:18-MD-02827-EJD

1   Randall Robinson Renick
2   Hadsell, Stormer, Richardson & Renick, LLP
    128 N. Fair Oaks Ave.
3   Pasadena, CA 91103

4   Richard Brian Rosenthal
    Law Offices of Richard B. Rosenthal, PA
5   169 E Flagler St. Ste 1422
    Miami, FL 33131-1212
6

7   Richard I Woolf
    Boyle Brasher LLC
8   One Metropolitan Square
    211 North Broadway, Suite 2300
9   St. Louis, MO 63102

10  Richard S. Wayne
11  Strauss & Troy
    Federal Reserve Building
12  150 E. Fourth St.
    Cincinnati, OH 45202-4018
13

14  Steven Saul
    Eggnatz Pascucci
15  5400 S. University Drive, Ste. 417
    Davie, FL 33328
16

17                              By:    _____/s/ Christopher Chorba_____
                                       Christopher Chorba
18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:18-MD-02827-EJD