THEODORE J. BOUTROUS, JR., SBN 132099
    tboutrous@gibsondunn.com
CHRISTOPHER CHORBA, SBN 216692
    cchorba@gibsondunn.com
THEANE EVANGELIS, SBN 243570
    tevangelis@gibsondunn.com
TIMOTHY W. LOOSE, SBN 241037
    tloose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:   213.229.7000
Facsimile:   213.229.7520

G. CHARLES NIERLICH, SBN 196611
    gnierlich@gibsondunn.com
RACHEL S. BRASS, SBN 219301
    rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA  94105
Telephone:   415.393.8200
Facsimile:   415.374.8458

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: APPLE INC. DEVICE PERFORMANCE LITIGATION, | CASE NO. 5:18-md-02827-EJD |
| | **PUTATIVE CLASS ACTION** |
| This Document Relates To:<br><br>    ALL ACTIONS. | **DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND CONSOLIDATED AMENDED COMPLAINT**<br><br>Judge:          Hon. Edward J. Davila<br>Courtroom:   4, 5th Floor<br>Hearing Date: March 7, 2019<br>Hearing Time: 10:00 a.m. |

Gibson, Dunn & Crutcher LLP

# TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 1

II.   ARGUMENT .................................................................................................... 2

    A.   Plaintiffs' Unchanged "Defect" Theory Fails For The Same Reasons It Failed Before ......................................................................................................... 2

    B.   Plaintiffs' Admitted Failure To Plead Their Own Experiences Undermines Both Standing And The Reliance And Injury Elements Of Their Claims .................. 3

    C.   Plaintiffs Do Not State Claims Based On Any Affirmative Misrepresentation (Counts 2–4, 7–9, 13–15) ........................................................................... 5

    D.   Plaintiffs Do Not State An Omissions Theory (Counts 2–4, 7–9, 13–15) ............ 7

        1.   *The SAC Still Does Not Plead An Actionable Legal Duty To Disclose.* .......... 7

        2.   *Plaintiffs Do Not Adequately Plead Materiality.* ............................................ 10

        3.   *Plaintiffs Do Not Defend Their UCL "Unfair" And "Unlawful" Claims.* ................................................................................................ 14

    E.   Plaintiffs Ignore The Deficiencies In Their "Computer Intrusion" Claims (Counts 1, 5, 6) ........................................................................................... 15

    F.   Plaintiffs Have Not Pled Their Contract Claims (Counts 10–12, 16) ...................... 16

        1.   *The SAC Does Not Identify The Contract Terms Or Apple's Alleged Breach.* ........................................................................................... 16

        2.   *The Actual Written Contracts Preclude These Claims.* ................................. 17

        3.   *Plaintiffs Did Not Provide An Opportunity To Repair Or Replace The Devices.* .......................................................................................... 18

        4.   *Plaintiffs' Ancillary Claims Fail For Additional Reasons* ............................. 20

    G.   This Court May Not Adjudicate Claims Brought On Behalf Of Non-U.S. Plaintiffs ..................................................................................................... 22

        1.   *Forum Non-Conveniens And Comity Require Dismissal Of The U.K. Claims (Counts 17–18).* ........................................................................ 22

        2.   *The CDAFA (Count 5) Has No Extraterritorial Effect.* ................................ 24

        3.   *The Non-U.S. Plaintiffs' Claims (Counts 1–16) Should Also Be Dismissed Because They Are Governed By The Laws Of The Country Of Purchase.* ........................................................................................ 24

III.  CONCLUSION .............................................................................................. 25

Gibson, Dunn &
Crutcher LLP

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

5

*Alvarez v. Chevron Corp.*,
   656 F.3d 925 (9th Cir. 2011) ....................................................................................................19, 20

6

*In re Anthem, Inc. Data Breach Litig.*,
   No. 15-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016) ...........................................14

7

8

*In re Apple iPhone Antitrust Litig.*,
   846 F.3d 313 (9th Cir. 2017).........................................................................................................4

9

10

*In re Apple Processor Litig.*,
   No. 18-00147-EJD, 2019 WL 79035 (N.D. Cal. Jan. 2, 2019)...........................................1, 3, 4, 5

11

*In re Ariz. Theranos, Inc., Litig.*,
   308 F. Supp. 3d 1026 (D. Ariz. 2018) ..........................................................................................16

12

13

*In re Arizona Theranos, Inc., Litig.*,
   256 F. Supp. 3d 1009 (D. Ariz. 2017) ..........................................................................................16

14

15

*Banko v. Apple Inc.*,
   No. 13-02977-RS, 2013 WL 6623913 (N.D. Cal. Dec. 16, 2013)................................................15

16

*Bardin v. DaimlerChrysler Corp.*,
   136 Cal. App. 4th 1255 (2006) ......................................................................................................9

17

18

*Bathija v. Vivint Wireless, Inc.*,
   No. 18-04389-EJD, 2018 WL 5906546 (N.D. Cal. Nov. 9, 2018) ...............................................18

19

20

*Berenblat v. Apple Inc.*,
   No. 08-4969-JF, 2010 WL 1460297 (N.D. Cal. Apr. 9, 2010) .....................................................18

21

*Birdsong v. Apple Inc.*,
   590 F.3d 955 (9th Cir. 2009).........................................................................................................5

22

23

*Boyd v. Avanquest N. Am. Inc*,
   No. 12-04391-WHO, 2014 WL 7183988 (N.D. Cal. Dec. 16, 2014).....................................16, 18

24

*Brown v. Grimes*,
   192 Cal. App. 4th 265 (2011) .......................................................................................................22

25

26

*Cahen v. Toyota Motor Corp.*,
   717 F. App'x 720 (9th Cir. 2017) .................................................................................................4

27

28

*Carrese v. Yes Online Inc.*,
   No. 16-5301, 2016 WL 6069198 (C.D. Cal. Oct. 13, 2016)..........................................................24

Gibson, Dunn &
Crutcher LLP

## TABLE OF AUTHORITIES
(continued)

Page(s)

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..................................................................13, 14

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*,
295 F. Supp. 3d 927 (N.D. Cal. 2018) ........................................................................14

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008)......................................................................................17

*Collins v. eMachines, Inc.*,
202 Cal. App. 4th 249 (2011) ...................................................................................8, 12

*Daniel v. Ford Motor Co.*,
806 F.3d 1217 (9th Cir. 2015)....................................................................................9, 14

*Darling v. Green*,
No. 12-362, 2013 WL 12132058 (C.D. Cal. Apr. 18, 2013) ........................................5

*Daugherty v. Am. Honda Motor Co.*,
144 Cal. App. 4th 824 (2006) ........................................................................................9

*Dickey v. Advanced Micro Devices, Inc.*,
No. 15-04922-HSG, 2019 WL 251488 (N.D. Cal. Jan. 17, 2019).................................5

*Donohue v. Apple, Inc.*,
871 F. Supp. 2d 913 (N.D. Cal. 2012) ...................................................................19, 21

*Doyle v. Chrysler Grp. LLC*,
No. 13-620, 2014 WL 3361770 (C.D. Cal. July 3, 2014)............................................14

*Ehret v. Uber Techs., Inc.*,
68 F. Supp. 3d 1121 (N.D. Cal. 2014) ...........................................................................7

*Ehrlich v. BMW of N. Am., LLC*,
801 F. Supp. 2d 908 (C.D. Cal. 2010) .........................................................................14

*Elder v. Pac. Bell Tel. Co.*,
205 Cal. App. 4th 841 (2012) ......................................................................................22

*Elias v. Hewlett-Packard Co.*,
No. 12-00421-LHK, 2014 WL 493034 (N.D. Cal. Feb. 5, 2014)..................................9

*French v. Robbins*,
172 Cal. 670 (1916) .....................................................................................................22

*Gerlinger v. Amazon.com, Inc.*,
311 F. Supp. 2d 838 (N.D. Cal. 2004) .........................................................................21

APPLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
CASE NO. 5:18-MD-02827-EJD

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Gherna v. Ford Motor Co.*,
   246 Cal. App. 2d 639 (1966)........................................................................................16

*Gilstrap v. Radianz Ltd.*,
   443 F. Supp. 2d 474 (S.D.N.Y. 2006).........................................................................23

*In re GlenFed, Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 1994)........................................................................................13

*Gravquick A/S v. Trimble Navigation Int'l Ltd.*,
   323 F.3d 1219 (9th Cir. 2003)......................................................................................24

*Greenhouse v. MCG Capital Corp.*,
   392 F.3d 650 (4th Cir. 2004)........................................................................................13

*Gutierrez v. Advanced Med. Optics, Inc.*,
   640 F.3d 1025 (9th Cir. 2011)......................................................................................23

*Hasemann v. Gerber Prod. Co.*,
   No. 15-2995, 2016 WL 5477595 (E.D.N.Y. Sept. 28, 2016) .......................................5

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018)....................................................................................8, 12

*Hoey v. Sony Elecs. Inc.*,
   515 F. Supp. 2d 1099 (N.D. Cal. 2007) ........................................................................9

*Inter-Mark USA, Inc. v. Intuit, Inc.*,
   No. 07-04178-JCS, 2008 WL 552482 (N.D. Cal. Feb. 27, 2008) ...............................20

*Jun-En Enter. v. Lin*,
   No. 12-2734, 2013 WL 12126098 (C.D. Cal. Nov. 13, 2013).....................................16

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)........................................................................................5

*Khoja v. Orexigen Technologies, Inc.*,
   899 F.3d 988 (9th Cir. 2018)........................................................................................18

*Lewis v. Casey*,
   518 U.S. 343 (1996)........................................................................................................4

*Lorenzo v. United States*,
   No. 09-1803, 2010 WL 11508278 (S.D. Cal. Oct. 21, 2010) ........................................4

*Marina Tenants Ass'n v. Deauville Marina Dev. Co.*,
   181 Cal. App. 3d 122 (1986)..................................................................................21, 22

Gibson, Dunn &
Crutcher LLP

APPLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
CASE NO. 5:18-MD-02827-EJD

# TABLE OF AUTHORITIES
(continued)

Page(s)

*McBride v. Boughton*,
   123 Cal. App. 4th 379 (2004) ..................................................................................21

*McVicar v. Goodman Glob., Inc.*,
   No. 13-1223, 2015 WL 4945730 (C.D. Cal. Aug. 20, 2015).........................................14

*Minkler v. Apple Inc.*,
   65 F. Supp. 3d 810 (N.D. Cal. 2014) .................................................................18, 19

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016).....................................................................................8

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014).....................................................................................18

*Norcia v. Samsung Telecommunications America, LLC*,
   845 F.3d 1279 (9th Cir. 2017).....................................................................................18

*NRG Energy, Inc. v. Fuchs*,
   No. 10-0989, 2011 WL 1625169 (S.D. Cal. Apr. 28, 2011)........................................5

*Orshan v. Apple Inc.*,
   No. 14-05659-EJD, 2018 WL 5858643 (N.D. Cal. Nov. 6, 2018) ................................7

*Otero v. Zeltiq Aesthetics, Inc.*,
   No. 17-3994, 2018 WL 3012942 (C.D. Cal. June 11, 2018) .......................................8

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
   96 F.3d 1151 (9th Cir. 1996).......................................................................................21

*Pasadena Live, LLC v. City of Pasadena*,
   114 Cal. App. 4th 1089 (2004) ...................................................................................20

*Piper Aircraft v. Reyno*,
   454 U.S. 235 (1981).............................................................................................22, 23

*Pirozzi v. Apple Inc.*,
   913 F. Supp. 2d 840 (N.D. Cal. 2012) ........................................................................5

*Rasmussen v. Apple Inc.*,
   27 F. Supp. 3d 1027 (N.D. Cal. 2014) ........................................................................8

*Rutledge v. Hewlett-Packard Co.*,
   238 Cal. App. 4th 1164 (2015) ...................................................................................8

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009) ..................................................................12, 19

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Seely v. White Motor Co.*,
63 Cal. 2d 9 (1965) ...................................................................................................9

*Shvarts v. Budget Grp., Inc.*,
81 Cal. App. 4th 1153 (2000) ..................................................................................21

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007)..................................................................................................22

*Sloan v. Gen. Motors LLC*,
287 F. Supp. 3d 840 (N.D. Cal. 2018) .....................................................................19

*Smith v. Apple, Inc.*,
No. 08-1498, 2009 WL 3958096 (N.D. Ala. Nov. 4, 2009) .....................................20

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ...............................................................................................5

*Sud v. Costco Wholesale Corp.*,
229 F. Supp. 3d 1075 (N.D. Cal. 2017) ..............................................................10, 14

*Svenson v. Google Inc.*,
No. 13-04080-BLF, 2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) ...........................5

*T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*,
83 F. Supp. 3d 855 (N.D. Cal. 2015) .......................................................................17

*Tan Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
992 F. Supp. 2d 962 (C.D. Cal. 2014) .......................................................................4

*Taragan v. Nissan N. Am., Inc.*,
No. 09-3660-SBA, 2013 WL 3157918 (N.D. Cal. June 20, 2013)......................12, 13

*Tietsworth v. Sears*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) ...................................................................13

*Valentine v. NebuAd, Inc.*,
804 F. Supp. 2d 1022 (N.D. Cal. 2011) ...................................................................24

*Ward v. Nat'l Entm't Collectibles Ass'n, Inc.*,
No. 11-06358, 2012 WL 12885073 (C.D. Cal. Oct. 29, 2012)...................................5

*Warn v. M/Y Maridome*,
169 F.3d 625 (9th Cir. 1999)....................................................................................23

*Wayne Merritt Motor Co. v. New Hampshire Ins. Co.*,
No. 11-01762-LHK, 2011 WL 5025142 (N.D. Cal. Oct. 21, 2011).............................5

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Williams v. Wells Fargo Bank, N.A.*,
  No. 13-03387-EJD, 2017 WL 1374693 (N.D. Cal. Apr. 14, 2017) ................................................ 21

*Williams v. Yamaha Motor Co.*,
  851 F.3d 1015 (9th Cir. 2017) .............................................................................................. 3, 7, 9, 10

*Williams v. Yamaha Motor Corp., U.S.A.*,
  No. 13-05066, 2015 WL 13626022 (C.D. Cal. Jan. 7, 2015) ............................................... 17, 21

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012) ..................................................................................................... 7, 9, 10

*Wofford v. Apple Inc.*,
  No. 11-0034, 2011 WL 5445054 (S.D. Cal. Nov. 9, 2011) ......................................................... 17

*Woodard v. Labrada*,
  No. 16-00189, 2017 WL 3309765 (C.D. Cal. July 31, 2017) ..................................................... 13

*Worley v. Avanquest N. Am., Inc.*,
  No. 12-04391-SI, 2013 WL 450388 (N.D. Cal. Feb. 5, 2013) ................................................... 18

*In re Yahoo Mail Litig.*,
  308 F.R.D. 577 (N.D. Cal. 2015) ................................................................................................ 24

*Young v. Facebook, Inc.*,
  790 F. Supp. 2d 1110 (N.D. Cal. 2011) .................................................................................... 20

**Statutes**

Cal. Penal Code § 502 ............................................................................................................ 24

Cal. Penal Code §§ 630–637.5 ............................................................................................... 24

**Rules**

Civil L.R. 7-3(a) .................................................................................................................... 15

Fed. R. Civ. P. 9 ...................................................................................................................... 5

Gibson, Dunn &
Crutcher LLP

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' Opposition confirms that the Second Amended Complaint did not fix the pleading deficiencies that this Court identified in its last ruling:

*First*, this Court previously dismissed all of Plaintiffs' "defect"-based claims, concluding that the theory "buckled under its own weight." (Dkt. 219 at 32.)  Plaintiffs do not dispute that this theory is unchanged (MTD 1, 4, 14)—Plaintiffs now define the "Defect" as power-hungry operating software causing iPhone batteries to age "prematurely" and complain that the batteries aged "faster than expected" (Opp. 1–2, 12, 24); but that is no different than Plaintiffs' previous theory that batteries "degraded overly quickly" (CAC ¶ 384).  The SAC also fails to provide factual allegations demonstrating that software caused the batteries to age.  (MTD 14.)  And Plaintiffs concede that all claims concerning iPhone 5/5c/5s devices rise or fall with the unchanged "defect" theory.

*Second*, Plaintiffs do not deny their repeated failure, in spite of the Court's previous dismissal, to plead essential allegations about their own experiences.  This omission means that Plaintiffs have failed to allege standing—as the Court ruled in its recent decision, *In re Apple Processor Litig.*, No. 18-00147-EJD, 2019 WL 79035 (N.D. Cal. Jan. 2, 2019)—and other elements of their claims.

*Third*, Plaintiffs identify only one supposed misstatement—that iOS 10.2.1 contained "bug fixes and improvements"—which this Court already concluded is not actionable.  (Dkt. 219 at 27–29.)  Plaintiffs also misread Apple's other true statements as somehow misleading by omission, but this effort is unavailing and Plaintiffs still do not allege that they relied on any of those statements.

*Fourth*, as for the balance of their omissions theory, Plaintiffs ignore binding Ninth Circuit precedent holding that Apple did not need to disclose a non-safety issue it did not warrant against.  Plaintiffs do not dispute that Apple's products performed exactly as warranted.  Still lacking a cognizable theory, Plaintiffs improperly cite a small handful of documents outside the pleadings.  But these documents do not and cannot fix Plaintiffs' deficient pleadings; instead, they confirm that Apple's engineering teams effectively developed a free software upgrade that managed the peak power demands on chemically aged batteries, addressing a technical problem that rests in the existing realities of (and limitations to) lithium-ion battery technology.  They do not remedy the failing that led the Court to dismiss these claims before:  that customers already are aware of the key facts Plaintiffs say Apple

APPLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
CASE NO. 5:18-MD-02827-EJD

Gibson, Dunn &
Crutcher LLP

should have disclosed.  Plaintiffs' overly-simplistic demand that Apple provide lithium-ion batteries that deliver more peak power performance simply does not state an actionable omission claim.

*Fifth*, Plaintiffs do not even respond to Apple's arguments against their "computer intrusion" claims on the merits.  And contrary to their improper "Objection" (Dkt. 282), Apple acknowledges the previous decision (while preserving its earlier arguments), and addresses new points the Court did not consider:  Plaintiffs' claims for unauthorized "damage" sound in fraud but do not satisfy Rule 9(b), and each Plaintiff fails to plead that her particular phone has suffered that "damage."

*Sixth*, Plaintiffs contend that they are basing their contract claims not on the actual, written agreements between the parties—the Software License Agreement and the Hardware Warranty—but on the notion that the Court should imply various promises from the sale of the devices.  But courts routinely reject this very argument:  Where the parties' rights are governed by a written contract, that agreement (and not any implied contract) governs their rights and obligations.

*Finally*, Plaintiffs do not save their non-U.S. claims.  They do not show that this Court is better suited than a U.K. court to decide the novel issues of U.K. law they invoke.  They ignore that similar language as that in California's False Advertising Law, which the Court rightly held precludes its extraterritorial application, also appears in the Computer Data Access and Fraud Act.  And they do not refute that, if the Court agrees with Apple that the laws of California do not govern all claims by non-U.S. persons, the non-U.S. Plaintiffs' claims under California and U.S. law must be dismissed.

For all of these reasons, the Court should dismiss the SAC.

## II.   ARGUMENT

### A.   Plaintiffs' Unchanged "Defect" Theory Fails For The Same Reasons It Failed Before

Plaintiffs do not deny that their core "Defect" theory simply rephrases the same theory the Court ruled "buckles under its own weight."  (MTD 1, 5, 14; Dkt. 219 at 29–37.)  In fact, they apparently recognize that the failure of a product to last forever is not an actionable defect (Opp. 2, 12), and they characterize the SAC's theory as challenging batteries that "age *prematurely*."  (*Id*. at 2, 4–6, 12, 15, 16, 20, 21.)  What Plaintiffs mean by "prematurely," and how it differs from "overly quickly" (CAC ¶ 384) is unclear, but "[n]o Plaintiff alleges that the battery in his or her device did not live up to the standards actually communicated by Apple."  (Dkt. 219 at 34.)  Plaintiffs have not changed that their

"liability theory is nearly limitless and 'raises concerns about the use of consumer fraud statutes to impermissibly extend a product's warranty period.'" (*Id.* at 37 (quoting *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1029 (9th Cir. 2017)).)  For the reasons explained in the Motion (at 14–20) and those explained *infra* (at 7–14), this theory still fails as a matter of law.

As a result, all of Plaintiffs' claims relating to the iPad and iPhone 5, 5c, or 5s devices must be dismissed.  Plaintiffs do not deny that these devices never ran the performance management feature at issue here, and they admit that their claims regarding these devices "rise or fall" with their "Defect" theory.  (Opp. 27; *see* MTD 27.)  The Court should dismiss all claims relating to these devices.

## B.   Plaintiffs' Admitted Failure To Plead Their Own Experiences Undermines Both Standing And The Reliance And Injury Elements Of Their Claims

Plaintiffs also admit that the SAC includes no individualized allegations about any of the named Plaintiffs' pertinent experiences, including what representations or omissions they relied upon, what performance they experienced, how (if at all) that changed over time or after a software update, and whether they ever had a UPO.  (Opp. 22–26 & n.26.)  Instead, they concede, they used "uniform language" (*id.* at 24)—the same uniform language the Court already found too "conclusory" to state a claim (Dkt. 219 at 29)—to describe each Plaintiff's experiences.  Plaintiffs even admit that none of them suffered "damages caused by a … UPO." (Opp. 24.)  In other words, just as in *Apple Processor*, "Plaintiffs acknowledge that they have not … allege[d] they personally experienced a degradation of performance of their iDevices."  2019 WL 79035, at *3.  As Apple explained (MTD at 6–8), this failure has consequences:  Plaintiffs cannot show either injury-in-fact under Article III or that they meet the reliance and injury requirements of their claims, under any pleading standard.

None of Plaintiffs' four responses alters this conclusion.  <u>*First*</u>, they argue that "all Plaintiffs" suffered a "uniform injury."  (Opp. 24–25.)  But the allegation they say "best" demonstrates this uniformity (*id.* at 25) shows the opposite:  Even for a particular model at "[r]oom [t]emperature," the performance management feature's cap on CPU clock speed varies heavily.  (SAC ¶ 404.)  And whether that cap matters—and whether the phone would experience a UPO without it—depends on the phone's immediate power demand, which varies depending on other factors, such as the application(s) the phone is running.  (*Id.* ¶ 379.)  Any injury is thus even less uniform than the injury allegedly caused

Gibson, Dunn & Crutcher LLP

by the iOS 11.2 update that addressed the "industry-wide computer security vulnerability" in *Apple Processor*, 2019 WL 79035, at *1.[1]

*Second*, Plaintiffs argue that their devices are worth less, and this confers standing.  (Opp. 24–26.)  But once again, this Court rejected the same argument in *Apple Processor*, agreeing that "Plaintiffs cannot manufacture standing by merely alleging that their iDevices suffered an actual diminution in value."  2019 WL 79035, at *4.  Here too, Plaintiffs do not plead the facts necessary to "show their iDevices are worth less than what they paid for them."  *Id.* at *5.  For example, they do not "allege that they were forced to replace or discontinue use of their iDevices due to the alleged degradation in performance."  *Id.*  Nor do they "allege any facts about the market for their iDevices."  *Id.*[2]  Their "conclusory allegations"—"that they would not have purchased their iDevices, or paid the prices they did"—are virtually identical to the deficient *Apple Processor* allegations.  *Id.*  Plaintiffs cannot simply assert that their iPhones are worth less to "show that they personally have been injured, not that injury has been suffered by other, unidentified members of the [putative] class."  *Lewis v. Casey*, 518 U.S. 343, 357 (1996).  As in an earlier case where plaintiffs who never alleged experiencing the alleged defect sued Apple, "the alleged loss in value does not constitute a distinct and palpable injury that is actual or imminent because it rests on a hypothetical risk … to other consumers who may or may not"

---

[1]  The Court did not previously find that "Apple intentionally throttled *all* Devices," as Plaintiffs mischaracterize (Opp. 26), just that Plaintiffs had alleged that Apple "sen[t] iOS updates" which were "designed … to slow processing speed" in some devices (Dkt. 219 at 19).  The Court has never ruled that Plaintiffs have standing, or that they pled individualized allegations of injury.  Nor has Apple "waived" these arguments.  (Opp. 23.)  A "motion to dismiss for lack of subject matter jurisdiction, including for failure to allege injury sufficient for Article III standing, may be made at any time."  *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 319 (9th Cir. 2017).  Moreover, "Plaintiffs filed an amended complaint subsequent to Defendant's previous motion to dismiss and Defendant is therefore entitled to raise additional Rule 12(b)(6) defenses in a motion to dismiss the amended complaint."  *Lorenzo v. United States*, No. 09-1803, 2010 WL 11508278, at *3 (S.D. Cal. Oct. 21, 2010).

[2]  Plaintiffs' SurveyMonkey allegation and the fact that Apple offered discounted battery replacements (Opp. 26) do not show "a demonstrable effect on the market for their specific [phones]."  *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 723 (9th Cir. 2017) (no standing where plaintiffs had not shown "documented recalls or declining Kelley Bluebook values" or "a risk so immediate that they were forced to replace or discontinue using their vehicles, thus incurring out-of-pocket damages").  Plaintiffs do not allege (and cannot plead in good faith) that Apple's decision to give customers a discount on replacement batteries was somehow a reflection of the market value of iPhones.  *See, e.g.*, *Tan Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 973 (C.D. Cal. 2014) ("alleged overpayment" is insufficient where plaintiffs do not allege that they personally "experienced any problems" with the allegedly defective feature such that they were "unwilling to" use the product or sold it "at a loss").

1    experience the issue.  *Birdsong v. Apple Inc.*, 590 F.3d 955, 961 (9th Cir. 2009).[3]

2         *Third*, Plaintiffs suggest that their "unjust enrichment" and contract claims are immunized from

3    Article III requirements.  (Opp. 23 n.27.)   But this Court dismissed these same claims in *Apple*

4    *Processor*, 2019 WL 79035, at *2.  If Plaintiffs "suffered no loss" (Opp. 23 n.27), the possibility of

5    nominal damages does not confer "Article III standing."  *Svenson v. Google Inc.*, No. 13-04080-BLF,

6    2016 WL 8943301, at *10 (N.D. Cal. Dec. 21, 2016); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540,

7    1550 (2016) (a "procedural violation" that "result[s] in no harm" is insufficient for standing).  And

8    because "Plaintiff[s] fail[] to allege specifically which statements [they] found material to [their]

9    decision to purchase an Apple Device," they lack standing to pursue an unjust enrichment claim based

10   on alleged overpayment.  *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 847, 852 (N.D. Cal. 2012).

11        *Fourth*, Plaintiffs also contend that the "damages" elements of their fraud claims are not subject

12   to Rule 9(b)'s heightened pleading standard.  (Opp. 24.)  But a "speculative claim" of damages "fails

13   even Rule 8(a)(2)'s lower pleading standard," *NRG Energy, Inc. v. Fuchs*, No. 10-0989, 2011 WL

14   1625169, at *4 (S.D. Cal. Apr. 28, 2011), and only "[m]alice, intent, knowledge, and other conditions

15   of a person's mind" are not subject to Rule 9's heightened pleading standard, Fed. R. Civ. P. 9(b).

16   Subject to that exception, "a party must state with particularity the circumstances constituting fraud."

17   *Id.*; *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126–27 (9th Cir. 2009) ("damages" are an element

18   of fraud, and fraud "must be pleaded with particularity under Rule 9(b)").[4]

19   **C.    Plaintiffs Do Not State Claims Based On Any Affirmative Misrepresentation (Counts 2–4, 7–9, 13–15)**

20        Plaintiffs admit that the elements of their fraud claims are the same, and rise or fall together.

21   (Opp. 8. n.14.)  Although the SAC purports to bring claims for "fraudulent misrepresentations and

22

---

23   [3]  Plaintiffs' cases (Opp. 24–25) do not address this issue:  *Dickey v. Advanced Micro Devices, Inc.*, No. 15-04922-HSG, 2019 WL 251488, at *2 (N.D. Cal. Jan. 17, 2019), certified a class where named
24   Plaintiffs had standing; they actually "saw" and "relied on Defendant's advertisement"; and *Hasemann v. Gerber Prod. Co.*, No. 15-2995, 2016 WL 5477595, at *21 (E.D.N.Y. Sept. 28, 2016), held only that
25   the Florida Deceptive and Unfair Trade Practices Act did not require pleading a competitor's price.

26   [4]  Courts that have decided the issue most recently have held that "the reliance and damages elements of [fraud] claims must be pled with particularity."  *Ward v. Nat'l Entm't Collectibles Ass'n, Inc.*, No.
27   11-06358, 2012 WL 12885073, at *5 (C.D. Cal. Oct. 29, 2012) (quoting Plaintiffs' case, *Wayne Merritt Motor Co. v. New Hampshire Ins. Co.*, No. 11-01762-LHK, 2011 WL 5025142, at *12 (N.D. Cal. Oct.
28   21, 2011)).  That includes each of the sections of the CLRA Plaintiffs identify (Opp. 9 n.15).  *See Darling v. Green*, No. 12-362, 2013 WL 12132058, at *4 (C.D. Cal. Apr. 18, 2013).

omissions" (*e.g.*, SAC ¶ 1), Plaintiffs have now abandoned virtually all of their claims based on affirmative misrepresentations.  The only representation they still allege was "an actionable material misrepresentation of fact" is the general statement, in the standard terms used to describe update packages, that iOS 10.2.1 contained "bug fixes and improvements." (Opp. 21.)  The Court already has rejected this argument.  Plaintiffs previously argued, in opposing Apple's first motion to dismiss, that this representation was false or misleading. (CAC ¶¶ 8–10, 399, 402–04; Dkt. 194 at 2, 5, 11, 24.)  The Court discussed this statement throughout its opinion (Dkt. 219 at 2, 3, 21, 24, 34, 36), and ruled that "Apple's broad statements about improving features … are insufficient to ground Plaintiffs' affirmative misrepresentation claim" (*id.* at 27) and that Plaintiffs had not alleged reliance on them (*id.* at 28–29). The same is still true—it is not actionable to tout improvements in software. (MTD 11–12.)  And the statement was true:  Plaintiffs admit the updates were designed to, and did, "fix" a problem with the devices. (SAC ¶¶ 13, 22, 431–33.)  Plaintiffs' allegation based on this statement also suffers from other problems—like failure to plead reliance and failure to follow the agreed-upon remedy—that they do not address. (MTD 8–14.)

Plaintiffs have now shifted to asserting that other statements are somehow "misleading by omission." (Opp. 19–21.)  But Apple already has explained that Plaintiffs do not adequately allege that any of these statements is false or misleading. (MTD 9–13.)  Plaintiffs first cite Apple's statement, "Your battery is designed to retain up to 80% of its original capacity at 500 complete charge cycles." (Opp. 12, 16, 19–20; SAC ¶ 446.)  But they still do not allege that any Plaintiff's device failed to hit this target. (MTD 12–13.)  Instead, they assert that the plain meaning of this statement is "split[ting] hairs," and attempt to graft a promise about the rate of power delivery onto this statement. (Opp. 20.) But Plaintiffs previously admitted that the statement "says nothing about the rate at which [batteries] are able to deliver power." (CAC ¶ 383.)  Plaintiffs do not deny that they are bound by this admission— and all their others from the CAC. (MTD 16–17.)  Nor do they dispute that California law precludes their attempt to misread Apple's statement as saying what it does not.  (*Id.* at 13 (collecting cases).) Apple never promised that batteries would always be able to support peak power demands regardless of usage and would never experience a UPO until 500 charge cycles.  Thus, there is no claim that Apple did anything like sell "a computer advertised at a processor speed of 2ghz but which actually ran at

1.8ghz." (Opp. 15 (quoting *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1135 (N.D. Cal. 2014)).)

The only other statements Plaintiffs identify—those touting improved "performance"—are not actionable and not alleged to be false, as the Court has recognized. (Opp. 20; MTD 10–12; Dkt. 219 at 27–28.) Plaintiffs repeat that "Apple lacked a basis to make these claims." (Opp. 20.) But "lacked a basis" is not "false or misleading." (MTD 11.) And the only fact cited in support of that proposition— that lifespan tests could not exactly mimic real-world use—does not show that "these representations were knowingly false and misleading." (Opp. 21; *see* MTD 11.) Plaintiffs argue that Apple knew about the chemical aging of batteries, which could lead to UPOs under certain circumstances. (Opp. 21.) But Plaintiffs do not allege that chemical aging (or anything else) had caused performance reductions sufficient to render Apple's actionable promises false; in fact, they do not allege that any Apple device failed to live up to any specific promise for any reason. Nor do they allege that they personally relied on—or even saw—those promises (MTD 9), or that they brought any supposed problem to Apple, as the Warranty requires (*id.* at 13–14, 26–28.)[5]

## D.   Plaintiffs Do Not State An Omissions Theory (Counts 2–4, 7–9, 13–15)

As discussed above, Plaintiffs' "defect" theory is unchanged and should be dismissed for the same reasons as before. Their other attempts to plead an omissions theory also fail as a matter of law.

### 1.   *The SAC Still Does Not Plead An Actionable Legal Duty To Disclose.*

Plaintiffs do not acknowledge the binding case law holding that a manufacturer's duty to disclose issues it has not warranted against is limited to an "unreasonable safety hazard." *E.g.*, *Williams*, 851 F.3d at 1025–26, 1028–29; *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012). Nor do Plaintiffs deny that they "plainly do not allege that the design defect caused an

---

[5]  The Court already explained that Plaintiffs cannot "escape this conclusion merely by pointing to the allegation that Apple conducted a 'multiple year, consistent marketing plan.'" (Dkt. 219 at 29; *contra* Opp. 22 n.26.) As Apple explained, *Tobacco II* does not, and cannot, change the requirements for named Plaintiffs to plead a claim in federal court. (Dkt. 197 at 11 & n.9.) Plaintiffs offer to amend their complaint to bring "individualized allegations" (Opp. 22 n.26), but what statements they saw and relied upon always has been known to them (and them alone). Plaintiffs have no excuse for not pleading this information earlier. The Court already dismissed these claims because "Plaintiffs do not plead exposure to Apple's allegedly misleading advertising statements," and gave "leave to amend" with instructions to bring "exposure allegations" if they wanted to maintain these claims. (Dkt. 219 at 28–29.) In neither case Plaintiffs cite (Opp. 22 n.26) had the Court previously dismissed the claims, much less on grounds that the plaintiff had declined to even try to correct. These claims should be dismissed with prejudice. *See Orshan v. Apple Inc.*, No. 14-05659-EJD, 2018 WL 5858643, at *5–6 (N.D. Cal. Nov. 6, 2018).

Gibson, Dunn &
Crutcher LLP

unreasonable safety hazard." (Dkt. 219 at 30–31.)

Instead, Plaintiffs assert that "*Hodsdon* [*v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018),] articulated the controlling standard." (Opp. 10.) Yet Plaintiffs do not, and cannot, dispute that *Hodsdon* explicitly declined to overrule *Wilson*, stating that it "ha[d] no occasion in this case to consider whether" to "overrule[] *Wilson*" and could "offer no binding opinion on the issue." 891 F.3d at 861–62, 864 & n.6. Like this Court did in its previous Order, in *Hodsdon*, "the Ninth Circuit concluded that plaintiffs could not state a claim even under their own reading of the California cases." (Dkt. 219 at 30.) As Apple explained, and Plaintiffs do not refute, under the Court of Appeals' stare decisis rules, *Williams*— which came after the California decisions on which Plaintiffs rely, *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249 (2011), and *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164 (2015)—still governs. (MTD at 15–16; *accord, e.g.*, *Otero v. Zeltiq Aesthetics, Inc.*, No. 17-3994, 2018 WL 3012942, at *5 (C.D. Cal. June 11, 2018) ("even after the *Rutledge* decision, the Ninth Circuit reaffirmed *Wilson*'s holding in" *Williams*).)[6] Because binding precedent requires a safety issue, which Plaintiffs do not plead, their omissions theory fails at the threshold and should be dismissed.

In the alternative, there are two other reasons Plaintiffs fail to plead a duty to disclose—neither of which Plaintiffs address. <u>First</u>, Plaintiffs do not plead a duty under *Collins* and *Rutledge*. (MTD 16–17.) As Plaintiffs do not dispute, these cases explicitly do not impose a duty to disclose where a product is "complete and operational when sold," but degraded over time due to a supposed "defect." (*Id.*) Yet Plaintiffs do not dispute that this exactly describes their theory. "Plaintiffs readily concede 'that iPhones worked as expected when new.'" (Dkt. 219 at 36 (quoting CAC ¶ 397).) Their theory— as they describe it—is premature aging. (Opp. 2, 4–6, 12, 15, 16, 20, 21.)

<u>Second</u>, as this Court explained, "California courts have been careful to cabin the scope of the

---

[6] Like *Hodsdon*, the unpublished Ninth Circuit decisions following that decision also found no duty to disclose. (Opp. 10–11.) They determined only what a manufacturer need not disclose, not what it must disclose. Like *Hodsdon*, they thus did not, and could not—even if they had been precedential— overrule *Williams*. To the extent any district court decisions have declined to follow *Williams*, they violated the rule that a district court "may not disregard binding Ninth Circuit precedent in the absence of 'any intervening California authority.'" *Otero*, 2018 WL 3012942, at *5 (quoting *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210–11 & n.5 (9th Cir. 2016)); *accord Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1036 (N.D. Cal. 2014) ("The Court is not free to deviate from the Ninth Circuit's construction of California law in *Wilson* absent a subsequent interpretation from California's courts that the interpretation was incorrect." (collecting cases)).

Gibson, Dunn &
Crutcher LLP

duty to disclose to avoid the unsavory result that manufacturers are on the hook for every product defect that occurs at any time, regardless of any time limits contained in their warranties." (Dkt. 219 at 36 (punctuation omitted).)  Under California law, as articulated by its Supreme Court, a consumer can be "fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will." *Seely v. White Motor Co.*, 63 Cal. 2d 9, 18 (1965).  Courts have applied this rule to dismiss claims where products performed as warranted, but not as well or as long as plaintiffs wished thanks to an alleged undisclosed defect of design, manufacture, or components. *E.g.*, *Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1105 (N.D. Cal. 2007) (premature failure of connections between memory and motherboard in mobile computer); *Wilson*, 668 F.3d at 1143 (premature failure of power jack in mobile computer); *Williams*, 851 F.3d at 1028 (premature corrosion of vehicle motor); *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006) (oil leakage destroying car motor); *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1270 (2006) ("use of less expensive and less durable materials" causing premature cracking and failure in a car).  Many of these "defects" rendered the product entirely worthless—unlike here, where the only alleged impact is a performance cap or temporary shutdown that the SAC does not even allege affected any named Plaintiff.  Yet the courts refused to allow plaintiffs to use fraud and consumer protection law to evade the "limitations in warranty coverage." *Daugherty*, 144 Cal. App. 4th at 1270 (citation omitted).

The Court should do the same here.  Plaintiffs' theory—that "[e]lectronics manufacturers … must design batteries to be more powerful than they need to be so that as they grow weaker, they still have the ability to meet the processor's peak power demands" so the battery "will still be capable of meeting the processor's peak power demands for years to come" (SAC ¶¶ 423–24)—is a blatant (and legally impermissible) attempt to "broaden" the express written Warranty.  *Wilson*, 668 F.3d at 1141.

Plaintiffs contend that a "latent defect that manifests after purchase is actionable."  (Opp. 15.)  But the cases on which they rely hold only that a warranted defect is actionable (*e.g.*, *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1222–25 (9th Cir. 2015)).  By contrast, "to state a claim under the CLRA, the UCL fraud prong, or for common law fraud, based on omissions regarding *post*-warranty period malfunctions, Plaintiff must establish that the malfunctions constituted an unreasonable safety hazard" (*Elias v. Hewlett-Packard Co.*, No. 12-00421-LHK, 2014 WL 493034, at *2 (N.D. Cal. Feb. 5, 2014)).

The "onset" of the problem must take place during the warranted period, and fit within the scope of the warranty, to be actionable under fraud, UCL, CLRA, and FAL theories. *Williams*, 851 F.3d at 1029.

For these reasons, Plaintiffs do not plead a duty to disclose. The Ninth Circuit has applied California law and rejected their view that "a fact need only be material to trigger a duty to disclose." *Wilson*, 668 F.3d at 1143.

### 2. *Plaintiffs Do Not Adequately Plead Materiality.*

Plaintiffs also have not pled either of the "two 'sub-elements' a plaintiff must prove to show" materiality: "awareness; and a change in behavior." *Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1083 (N.D. Cal. 2017); MTD 18–20.

(a) <u>Plaintiffs Do Not Plead That They Would Have Behaved Differently Because Customers Already Know The Facts.</u> As the Court explained, "Plaintiffs have not adequately pled that Apple had exclusive knowledge of material facts not known or reasonably accessible to the plaintiff or actively concealed a material fact from the plaintiff," because "common sense and Plaintiffs' own allegations demonstrate that consumers know about the degradation of batteries and the increasing capability of software." (Dkt. 219 at 35 (punctuation omitted).) Apple does not have exclusive knowledge of, and cannot conceal, what customers already know. And because Plaintiffs already know these facts, disclosure of them could not change their behavior. (MTD 18–20.)

Plaintiffs argue that "[t]he SAC cures this deficiency." (Opp. 16.) But none of the SAC's "new allegations" (*id.* at 22) changes the facts that led the Court to conclude that Plaintiffs had not pled materiality: that "consumers are fully aware of the facts regarding software capability and battery capacity" and that "[i]n addition to consumers' baseline awareness of the inevitability of battery decay, Apple's representations made that point even more salient with respect to the devices at issue." (Dkt. 219 at 33–34.) The only paragraph in Plaintiffs' Opposition purporting to address the first of these facts (they never acknowledge the second) is a non-sequitur: It asserts that "[t]he SAC more than fills any gaps" by clarifying that Plaintiffs' theory is that the batteries would "age *prematurely*." (Opp. 12.) As explained above, and as Plaintiffs do not deny, this is the same theory they tried before. And critically, it is not a new or changed factual allegation. It does nothing to negate that "consumers are fully aware" that "their batteries will eventually need replacement because increasing software

1    capability puts more demands on hardware and battery capacity degrades over time." (Dkt. 219 at 33.)

2    Nor do the other allegations Plaintiffs cite.  These fall into four categories.

3    *First*, Plaintiffs cite their flawed survey's findings that customers care about UPOs and

4    performance. (Opp. 13–14.)  That is not in dispute (in this Motion at least).  (MTD 19–20.)  As Apple

5    explained and Plaintiffs never answer, the survey says nothing about whether "consumers know about

6    the degradation of batteries and the increasing capability of software" or whether Apple's statements

7    to customers made "clear that consumers cannot realistically expect their batteries to last for the lifetime

8    of their devices (or even necessarily for more than a year)." (Dkt. 219 at 34–35.)  And an anonymous

9    survey is no substitute for particularized allegations about the named Plaintiffs.  (MTD 6–8, 19–20.)

10    *Second*, Plaintiffs cite allegations that Apple engineers recognized the UPO issue, acted quickly

11    to address it, and internally debated the solution. (Opp. 12–13, 16–18.)  As Plaintiffs recognize, these

12    discussions at most are evidence that Apple knew that some phones with chemically aged batteries

13    were experiencing at least one UPO.  (Opp. 17 (describing these statements as "evidence of Apple's

14    knowledge").)  That point too is not in dispute (in this Motion)—Apple never has asserted that UPOs

15    did not occur before 2016, nor did it warrant against them.[7]  As the Court explained, although Plaintiffs

16    "assert that Apple was on notice that the software would eventually outpace the hardware (as the

17    software improved and the battery degraded)," their "allegations are insufficient because these facts

18    were not in Apple's exclusive knowledge but were readily accessible to the public, including

19    Plaintiffs." (Dkt. 219 at 35.)

20    Plaintiffs argue that the CAC was deficient only in that it did not adequately plead that Apple

21    knew that some devices could chemically age and experience UPOs "within a few months," and that

22    they "cured this deficiency" by alleging "that the batteries in the Devices were prematurely aging" and

23    "causing UPOs." (*Id.* at 16.)  But this was not the only deficiency.  The more fundamental problem

24    for Plaintiffs' theory is that "common sense and Plaintiffs' own allegations demonstrate that consumers

25    know about the degradation of batteries and the increasing capability of software." (Dkt. 219 at 35.)

26    The allegation Plaintiffs highlight does not fix that problem.  The only way it could is if Plaintiffs were

27

28    [7]  In each of the cases Plaintiffs cite (Opp. 18), the defendant's lack of knowledge was the issue.  Here, by contrast, the hole in Plaintiffs' theory is that customers already possess the relevant knowledge.

1   correct that customers would "reasonabl[y] understand[] … Apple's specific representations that its

2   batteries are 'designed to retain up to 80% of [their] original capacity at 500 complete charge cycles'"

3   to mean that batteries would not experience UPOs or reduced performance before 500 complete charge

4   cycles.  (Opp. 16.)  But Plaintiffs are not correct; they admitted that Apple's statement cannot be read

5   that way, and the law does not allow them to misread it into a cause of action.  The statement shows,

6   rather, that "consumers cannot realistically expect their batteries to last for the lifetime of their devices

7   (or even necessarily for more than a year)."  (Dkt. 219 at 34.)

8        Because Plaintiffs cannot show what they must, they attempt to change the standard.  They

9   argue that "exclusive knowledge" is not required, only "superior" knowledge.  (Opp. 16.)  Plaintiffs

10  are wrong.  The Court already has explained that "exclusive knowledge" is needed—and dismissed the

11  CAC for failing to allege it.  (Dkt. 219 at 31, 35.)  The case the Court cited for that proposition (*id.* at

12  31) is the one Plaintiffs say "articulated the controlling standard for fraud by omission": *Hodgson*, 891

13  F.3d at 862 (quoting *Collins*, 202 Cal. App. 4th at 255).  In that decision, the Ninth Circuit concluded

14  that "the better reading of California law" is that "the test is 'exclusive' knowledge," and rejected the

15  view that a defendant "need only have 'superior' knowledge of the customer."  *Id.* at 864 n.5.  To be

16  sure, this statement was *dicta* for the same reason its statement about safety issues was *dicta.*

17       An essential holding of *Hodsdon*, however, is that there is some limit to the duty to disclose.  If

18  Plaintiffs were correct that "superior" knowledge is enough, the duty to disclose would have no limits,

19  because a manufacturer always knows more about its own products than its customers do.  Claims that

20  a manufacturer is in a superior position to know "'could be made about any alleged design defect in

21  any manufactured product'—which is 'exactly the situation' the heightened pleading requirements of

22  Rule 9(b) were designed to avoid."  *Taragan v. Nissan N. Am., Inc.*, No. 09-3660-SBA, 2013 WL

23  3157918, at *6 (N.D. Cal. June 20, 2013) (quoting *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 986

24  (N.D. Cal. 2009)).  In any event, Plaintiffs have not shown "superior" knowledge either:  Consumers

25  already know the key facts—because "[f]or years, consumers have had to replace batteries in their cell

26  phones and other devices," and Apple disclosed that batteries will need to be replaced.  (Dkt. 219 at 33–

27  34.)  Apple's knowledge does not change what consumers already know.

28       *Third*, Plaintiffs contend that "the SAC contains extensive allegations regarding the public

1  outcry regarding the Defect." (Opp. 13 (quotation marks omitted).) But the cited allegations, which

2  are not new to the SAC, actually concern governmental investigations, not "public" reaction (CAC

3  ¶¶ 431–45; SAC ¶¶ 461–79)—unlike the "extensive allegations regarding the public outcry regarding

4  the Carrier IQ Software once its existence became public knowledge" in the case Plaintiffs cite, *In re*

5  *Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1114 (N.D. Cal. 2015). In any event, a "public outcry" does not

6  establish materiality; otherwise, every acknowledgment of a problem would trigger fraud liability. Any

7  "attendant outcry or opprobrium" is of "no moment" to whether a statement is "material." *Greenhouse*

8  *v. MCG Capital Corp.*, 392 F.3d 650, 656 (4th Cir. 2004); *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541,

9  1549 (9th Cir. 1994) ("later, sobering revelations" do not show fraudulent omissions).

10      *Fourth*, Plaintiffs cite their conclusory allegations about "concealment." (Opp. 18–19.) These

11  are the same allegations from the CAC that the Court held were insufficient to plead that Apple

12  "actively concealed a material fact from the plaintiff." (Dkt. 219 at 35 (punctuation omitted).) The

13  Court was correct. Adding the word "concealed" does not create a well-pleaded claim. "An allegation

14  of active concealment must plead more than an omission" coupled with "'conclusory' allegations that

15  [the manufacturer] 'actively concealed the defect.'" *Taragan*, 2013 WL 3157918, at *7 (citation

16  omitted).[8] The SAC has no allegation, certainly not one "with the requisite specificity," that Apple

17  "sought to suppress information in the public domain or obscure the consumers' ability to discover it."

18  *Id.* (quotation marks omitted). "Apple's representations" enhanced, not suppressed or obscured,

19  "consumers' baseline awareness of the inevitability of battery decay." (Dkt. 219 at 34.) And Plaintiffs

20  allege that, immediately after a third-party report raised concerns about the performance management

21  feature, Apple issued statements giving greater detail about the feature. (SAC ¶¶ 22, 374, 440–45.)

22      (b) <u>Plaintiffs Do Not Plead How Apple Should Have Made Them Aware</u>. Plaintiffs cannot

23  show materiality for the additional reason that they have not alleged a "method" by which Apple should

---

[8]  *Tietsworth v. Sears*, 720 F. Supp. 2d 1123 (N.D. Cal. 2010) (Opp. 19), says the same thing. There, the plaintiffs successfully alleged active concealment by pleading that they "contacted Sears for service of their defective Machines," and Sears lied to them that "the Machines were not defective" and "denied free service or replacement of the defective parts." *Id.* at 1134. Plaintiffs here do not allege that they ever contacted Apple about the "defect" or sought service, or that Apple denied anything. Nor did *Woodard v. Labrada*, No. 16-00189, 2017 WL 3309765, at *8 (C.D. Cal. July 31, 2017) (Opp. 19 n.22), allow conclusory concealment claims to proceed. It held only that "the requisite intent" can be pled more generally than the other elements of fraud (*id.*)—but here those other elements are at issue.

have disclosed any alleged omitted fact.  *McVicar v. Goodman Glob., Inc.*, No. 13-1223, 2015 WL 4945730, at *11 (C.D. Cal. Aug. 20, 2015).

Plaintiffs assert that "[t]he SAC … alleges that Plaintiffs would have learned of the required disclosure." (Opp. 22.)  But they cite no allegation.  Instead, they argue that the Court should simply assume that if customers view information as important, they "would have become aware of it." (*Id.*)[9] That would collapse the "two 'sub-elements' a plaintiff must prove" into one.  *Sud*, 229 F. Supp. 3d at 1083.  The Ninth Circuit has rejected that approach:  Even if information is important, "a plaintiff must still be able to show she would have been aware of the information if it had been disclosed." *Id.* (citing *Daniel*, 806 F.3d at 1225–26).  Plaintiffs do not even attempt to allege that.

Just the opposite.  Because no named Plaintiff "alleges that she read or relied on" any Apple statement where it could have disclosed the information "before she purchased" the phone, they have not shown materiality.  *Id.* at 1084.  There is not even an allegation that any Plaintiff read the iOS "notifications" or "terms of use." (Opp. 22.)  In fact, Plaintiffs allege that they do not base their decision whether to update on these notices or terms of use.  (SAC ¶¶ 418–19; *see* Dkt. 197 at 14.)

### 3.  *Plaintiffs Do Not Defend Their UCL "Unfair" And "Unlawful" Claims.*

Plaintiffs offer no separate defense of their claims under the "unlawful" and "unfair" prongs of the UCL.  As Apple explained, these claims fail for the same reasons as Plaintiffs' other claims, and because Apple's battery and software design is not unfair.  (MTD 20.)

---

[9] As Apple previously explained (Dkt. 197 at 14 n.13), the case Plaintiffs quote for this proposition confirms that they must allege, and cannot presume, a "method" of disclosure: *Carrier IQ* was quoting from a case "the court dismissed" because the "plaintiff had failed to allege that had the defect been disclosed, he would have been aware of it."  78 F. Supp. 3d at 1114.  Even though the defect was important, the plaintiff did not allege that he read any of the materials to which the defendant would have made the disclosure—exactly as here.  *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 919–20 (C.D. Cal. 2010).  *In re Anthem, Inc. Data Breach Litig.*, No. 15-02617-LHK, 2016 WL 3029783, at *35 (N.D. Cal. May 27, 2016), which relied on *Carrier IQ*, did not explicitly address the requirement for a method of disclosure.  To the extent Plaintiffs read either case to say that the Court should presume reliance based on "public outcry," that argument fails here for the reasons explained above.  *Daniel* and *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 1014–15 (N.D. Cal. 2018), held that Plaintiffs had sufficiently alleged a method of disclosure:  a car maker would tell the dealer, who would tell the customer.  And *Doyle v. Chrysler Grp. LLC*, No. 13-620, 2014 WL 3361770, at *6 (C.D. Cal. July 3, 2014), simply rejected a "broad duty" for "Plaintiffs to prove they reviewed every communication regarding replacement regulators, which could include anything from numerous press releases, continually updated web pages, countless mailings, and advertisements in a variety of media."

**E.    Plaintiffs Ignore The Deficiencies In Their "Computer Intrusion" Claims (Counts 1, 5, 6)**

Nor do Plaintiffs try to defend their computer intrusion claims from the arguments in Apple's Motion.  (Opp. 26–27; MTD 21–24.)  Plaintiffs simply assert that the Court rejected these arguments already.  (Opp. 26.)[10]  But that is not true.  Apple's arguments recognize the Court's decision on the first motion to dismiss (although Apple preserves its earlier arguments).  Although the same claim elements—authorization and damage—are at issue, the points are different.  Apple can raise new arguments against a newly amended complaint, as explained above (at 4 n.2).  The Court should "consider more fully how its prior holding impacts the viability of [Plaintiffs'] remaining claims." *Banko v. Apple Inc.*, No. 13-02977-RS, 2013 WL 6623913, at *2 (N.D. Cal. Dec. 16, 2013).

These arguments require dismissal of these claims.  *First*, the Court correctly held that Plaintiffs had not pled any claims requiring unauthorized access, because "Plaintiffs gave Apple permission by choosing to voluntarily download and install the iOS updates."  (Dkt. 219 at 20–21; MTD 21.)

*Second*, although the Court held that some claims do not require unauthorized access, it also held that each of those claims nonetheless requires unauthorized "damage."  (Dkt. 219 at 19–20, 23–25.)  Following that ruling, Apple argued that the SAC does not plead unauthorized "damage" because the underlying theory of wrongdoing would require showing that Apple obtained Plaintiffs' consent to install the iOS updates by fraud, and the SAC does not adequately plead fraud.  (MTD 21–23.)  The Court has not considered this issue, and Apple has not waived it.  (*See supra* at 4 n.2.)

*Third*, the Court ruled that the performance reductions the updates allegedly caused in some phones, "substantially slowing their processing speed (by as much as 50%)," constituted damage or impairment.  (Dkt. 219 at 19, 23, 25.)  The Motion demonstrates that named Plaintiffs do not allege that any of them personally suffered that (or any) level of performance reduction.  (MTD 6–8, 23–24.)  The Court did not consider this issue before.  It decided what would constitute "damage" under the computer intrusion claims, not whether any named Plaintiff actually had pled such "damage."

---

[10]  Plaintiffs raise this assertion mainly in their procedurally improper "Objections."  (Dkt. 282.)  The Court should not consider this unauthorized seven-page brief, which is yet another attempt to evade the page limits.  (*See* Dkts. 193, 197 at 20 n.21.)  The Local Rules are clear that "[a]ny evidentiary and procedural objections to the motion must be contained within the brief or memorandum."  L.R. 7-3(a).

**F.      Plaintiffs Have Not Pled Their Contract Claims (Counts 10–12, 16)**

Plaintiffs acknowledge the four elements they need to state for their contract claims.  (Opp. 29 n.30.)  But Plaintiffs plead none of them—most obviously, "the existence of the contract" Plaintiffs say the parties formed (as opposed to the ones they actually did form, which preclude these claims) (MTD 21–31), but also "plaintiff's performance" by submitting their claims to Apple (*id.* at 27–28), "defendant's breach" (*id.* at 26–29 & n.5), and "resulting damages" (*id.* at 6–8).

**1.      *The SAC Does Not Identify The Contract Terms Or Apple's Alleged Breach*.**

Plaintiffs' claims fail at the threshold for failure to identify the contract, its terms, and the alleged breach.  (MTD 24.)  They say nothing to distinguish Apple's cases.  Instead, they argue that they entered into "a normal sale-and-purchase agreement."  (Opp. 29.)  But they omit important details about this supposed agreement (MTD 24), such as with whom they entered into it; no Plaintiff pleads she purchased her phone from Apple (*id.* at 7).  That is why the Court dismissed the contract claim in *In re Arizona Theranos, Inc., Litig.*, 256 F. Supp. 3d 1009, 1033–34 (D. Ariz. 2017) (Opp. 29 n.31).

Plaintiffs argue that various representations in Apple's advertisements are the terms of the contracts.  (Opp. 30.)  But the SAC does not identify these representations as contract terms.  (SAC ¶¶ 609–11.)[11]  Nor do Plaintiffs explain how Apple representations could be the terms of a contract they formed with a retailer, or what consideration Plaintiffs gave Apple for its supposed commitments. In any event, Plaintiffs do not dispute that their iPhones—and all others—lived up to these representations.  (*See supra* at 3–7; MTD 28–29.)

Plaintiffs also say the sale of the phones "implied that the product would be free from defect." (Opp. 30.)  Although this sentence is unaccompanied by any citation, Plaintiffs are correct that there is a concept called the "implied warranty of merchantability."  But the parties disclaimed this implied promise in binding written agreements, and Apple satisfied it in any event.  (MTD 25–27 & n.5.)[12]

---

[11]  By contrast, the complaints in the cases cited by Plaintiffs (Opp. 29–31) actually "state[d] the relevant terms of the purported contract."  *Jun-En Enter. v. Lin*, No. 12-2734, 2013 WL 12126098, at *4 (C.D. Cal. Nov. 13, 2013); *Boyd v. Avanquest N. Am. Inc*, No. 12-04391-WHO, 2014 WL 7183988, at *3 (N.D. Cal. Dec. 16, 2014); *In re Ariz. Theranos, Inc., Litig.*, 308 F. Supp. 3d 1026, 1057 (D. Ariz. 2018); *Gherna v. Ford Motor Co.*, 246 Cal. App. 2d 639, 652 (1966).

[12]  Nor do Plaintiffs allege facts showing privity.  (MTD 29.)  They admit that privity is required for a warranty claim (Opp. 32–33), but neglect to mention that their theories are that Apple's advertisements

1

**2.** *The Actual Written Contracts Preclude These Claims.*

2

That Plaintiffs do not plead any facts about the *sub silentio* contracts they base their claims on

3

is all the more striking given that there are actual, written contracts here.  (MTD 25–29.)  As Plaintiffs'

4

case explains, "[t]here cannot be a valid, express contract and an implied contract, each embracing the

5

same subject matter, existing at the same time."  *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l*

6

*Inc.*, 83 F. Supp. 3d 855, 873 (N.D. Cal. 2015) (Opp. 29 n.30).  That is especially so where, as here,

7

the express contracts explicitly (a) disclaim implicit and previous promises, (b) allocate the risks of the

8

problems at issue to Plaintiffs, and (c) require Plaintiffs to submit any issue to Apple.  (MTD 25–27.)

9

Plaintiffs do not argue that these contracts are unconscionable or otherwise invalid or unenforceable.

10

Plaintiffs instead make two arguments.  <u>First</u>, they claim that they allege breach of an implicit

11

sales contract rather than breach of the SLA.  (Opp. 31.)  But Plaintiffs attach the SLA to the Complaint

12

and allege that it governs this case.  Although Apple disputes this contention, if the SLA governs—

13

even if its choice-of-law clause does not—its express language would preclude Plaintiffs' claims.  The

14

SLA expressly "constitutes the entire agreement between you and Apple relating to the iOS Software

15

and supersedes all prior or contemporaneous understandings such subject matter."  (SAC

16

Exs. 5, 6 ¶ 13; *accord id.* ¶¶ 1(b), 7.6; *see* MTD 26–27.)  And it, equally expressly, allocates "THE

17

ENTIRE RISK AS TO SATISFACTORY QUALITY, PERFORMANCE, ACCURACY AND

18

EFFORT" to Plaintiffs (SAC Exs. 5, 6 ¶ 7.2) and disclaims warranties (*id.* ¶¶ 7.2–7.6).  Another court

19

already has ruled that the SLA prevents plaintiffs from pursuing a theory that alleged impairment of

20

iPhone functionality breached an implied promise.  *Wofford v. Apple Inc.*, No. 11-0034, 2011 WL

21

5445054, at *2, *4 (S.D. Cal. Nov. 9, 2011).[13]  Plaintiffs have no response.  In the case Plaintiffs rely

22

_____

23

"constitute an express warranty" and that they received an implied warranty of a defect-free phone (*id.*
at 30).  Ninth Circuit precedent requires privity to bring such claims—and manufacturers are not in

24

privity with customers who purchased the products from third parties.  *See Clemens v. DaimlerChrysler
Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008); *Williams v. Yamaha Motor Corp., U.S.A.*, No. 13-05066,

25

2015 WL 13626022, at *5–6 (C.D. Cal. Jan. 7, 2015).  Plaintiffs have not alleged privity for the
warranties they allege Apple provided, even if there is privity for the SLA or Hardware Warranty.

26

[13] Apple's Motion quoted *Wofford*'s holding that the SLA precludes Plaintiffs' claims because it "is
an express contract that governs the same subject matter."  (MTD 25.)  Contrary to Plaintiffs' claim

27

(Opp. 31), quoting this sentence does not contradict Apple's argument in its motion for reconsideration
(and throughout this case) that the SLA's choice-of-law clause does not require universal application

28

of California law because "Plaintiffs have not identified any right or obligation created by or that

APPLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
CASE NO. 5:18-MD-02827-EJD

Gibson, Dunn &
Crutcher LLP

on, the license agreement was "not alleged in the Complaint"; plaintiffs contended—and the court concluded—that it was irrelevant. *Worley v. Avanquest N. Am., Inc.*, No. 12-04391-SI, 2013 WL 450388, at *3 (N.D. Cal. Feb. 5, 2013) (reaffirmed in *Boyd*, 2014 WL 7183988, at *4).

<u>*Second*</u>, Plaintiffs argue that the Warranty is not binding. (Opp. 30–31.) They do not deny that, if the Warranty were a binding contract, it would plainly bar all of their claims. (MTD 25–28.) Plaintiffs' argument is based on a misreading of *Norcia v. Samsung Telecommunications America, LLC*, 845 F.3d 1279 (9th Cir. 2017), that Apple already has addressed. (Dkt. 269 at 4–5.) That case rejected an attempt to unilaterally impose arbitration across a range of unrelated disputes. Unlike the "freestanding obligation" to arbitrate disputes with no relevance to the warranty that the defendant sought to impose in *Norcia*, 845 F.3d at 1288–89, the Warranty's relevance to Plaintiffs' claims for breach of implied and express warranties is plain and undisputed (MTD 25–28).[14] "Plaintiffs are bound by the limitations in Apple's express warranty unless they can allege facts that would create an exception to it." *Berenblat v. Apple Inc.*, No. 08-4969-JF, 2010 WL 1460297, at *3–4 (N.D. Cal. Apr. 9, 2010). That includes the Warranty's "limitation on or disclaimer of implied warranties." *Id.* at *3; *Minkler*, 65 F. Supp. 3d at 818–19.[15]

### 3.   *Plaintiffs Did Not Provide An Opportunity To Repair Or Replace The Devices.*

Plaintiffs' contract claims are also precluded for the additional reason that they did not meet their obligations under both the Hardware Warranty and the Commercial Code to present any issue

---

emanated from the licensing of the iOS software that Apple purportedly breached." (Dkt. 236-1 at 12 (punctuation omitted); *see also* Dkt. 269 at 2–3.) Plaintiffs' similar contention (in their improper "Objections") that judicial estoppel precludes Apple's argument (Dkt. 282 at 5–7) fails because Apple's arguments are not contradictory, and it has not yet "succeeded in persuading [the] court to accept" either argument. *Bathija v. Vivint Wireless, Inc.*, No. 18-04389-EJD, 2018 WL 5906546, at *5 (N.D. Cal. Nov. 9, 2018) (citation omitted).

[14] The Court should take judicial notice of the Warranty. (*See* MTD 3 n.1, 25; Dkts. 177, 198; *Minkler v. Apple Inc.*, 65 F. Supp. 3d 810, 814 n.1 (N.D. Cal. 2014).) Apple has explained why the case Plaintiffs cite, *Khoja v. Orexigen Technologies, Inc.*, 899 F.3d 988 (9th Cir. 2018), supports judicial notice here. (Dkt. 198 at 5.) And as Apple has explained (*e.g.*, Dkt. 198 at 3; Dkt. 236-1 at 12–13; Dkt. 269 at 3–4), Plaintiffs are incorrect that the Warranty "excludes batteries" (Opp. 31).

[15] Plaintiffs' other case, *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014), is irrelevant for the same reasons as *Norcia*, and for the additional reason that Apple is not trying to impose Terms of Use that merely appear somewhere on its website. *Id.* at 1174–79. "By using the iPhone, Plaintiff agreed to be bound by the terms of the Hardware Warranty"—not because the Warranty is on a website. *Minkler*, 65 F. Supp. 3d at 814; *accord Berenblat*, 2010 WL 1460297, at *3–4.

1   they have to Apple, in order to give Apple the chance to fix the issue, before they sue.  (MTD 27–28.)

2   Plaintiffs do not deny that the Warranty requires Plaintiffs to do so.

3       Instead, they say that they did serve notice.  (Opp. 31.)  But the only factual allegations they

4   point to note that they served a CLRA demand letter.  (*Id.* at 31 & n.34.)  Apple already has explained

5   that this letter does not suffice.  (MTD 28 n.6.)  The SAC does not even allege that it suffices as notice

6   for the contract claims.  It does not bring Plaintiffs' phones to Apple or an authorized service provider,

7   as the Warranty undisputedly requires.  And it was not "pre-suit," as the Warranty and the Commercial

8   Code require.  *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011).[16]  *Minkler* rejected the

9   argument Plaintiffs raise here, that a letter from their counsel sufficed, because, as here, Plaintiffs did

10  not plead that it was delivered "pre-suit."  65 F. Supp. 3d at 817–18.

11      *Minkler* also rejected Plaintiffs' argument (Opp. 32) that customers need not give pre-suit notice

12  to a manufacturer.  65 F. Supp. 3d at 817.  This supposed exception could only apply to the Commercial

13  Code's notice requirement; it cannot negate the Warranty's separate obligation to bring the claim to

14  Apple.  And as *Minkler* explained, "such an exception would appear to undermine the very purpose of

15  this notice requirement."  *Id.*  Plaintiffs are in a bind:  Either they had "direct dealings" with Apple,

16  and therefore this exception is inapplicable (*id.*; *Sanders*, 672 F. Supp. 2d at 989), or they did not, and

17  their claims fail for lack of privity (*see supra* at 16–17 n.12).

18      Plaintiffs also say that notice was not required because Apple knew of the breach.  (Opp. 32.)

19  But there was no breach, as explained above.  And whether a phone experiences a UPO or slower

20  performance depends heavily on a number of customer-specific factors.  Apple was not on notice that

21  any specific named Plaintiffs experienced any issues.  *See Sloan*, 287 F. Supp. 3d at 883 ("Indeed, how

22  would Plaintiff Ludington's notice have made GM aware that Plaintiff Brannan in particular was

23  experiencing problems with his vehicle?").  In fact, Plaintiffs cannot even allege that they personally

24

25  [16]  This is true for later-added Plaintiffs as well.  (*Contra* Opp. 32.)  Counsel's CLRA notice could not,
    and did not, put Apple on notice that anyone whom counsel did not represent at the time experienced

26  an issue.  A notice "that purports to be made on behalf of all purchasers around the country … does not
    create a meaningful opportunity for the seller to cure or settle."  *Sloan v. Gen. Motors LLC*, 287 F.

27  Supp. 3d 840, 883 (N.D. Cal. 2018).  Even if "Apple was notified of its alleged breach before
    [Plaintiffs] filed [their] *amended* complaint," allowing such notice to suffice "would completely

28  eliminate Apple's opportunity to repair the defective item or negotiate a settlement before the initiation
    of litigation."  *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 929 (N.D. Cal. 2012).

APPLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
CASE NO. 5:18-MD-02827-EJD

Gibson, Dunn &
Crutcher LLP

1   experienced any problems.  (*See supra* at 3–5.)  The SAC cannot allege that Apple knew Plaintiffs

2   experienced a problem when it does not even allege that they experienced one.

3          If Plaintiffs' phones had an issue, the way Apple would learn about it is if Plaintiffs met the

4   Warranty's requirement that they submit it to Apple for Apple to repair, replace, or refund the phone.

5   As they do not deny, no Plaintiff did this.  "Had Apple received notice from plaintiffs that the particular

6   iPhones bought by them were defective, Apple could have taken a direct route towards fixing the

7   alleged defects or could have reached a settlement with plaintiffs at a time before litigation expenses

8   were incurred.  …. Contrary to plaintiffs' argument, a general awareness on Apple's part of alleged

9   defects in its iPhone does not extinguish the purposes of the notice requirement."  *Smith v. Apple, Inc.*,

10  No. 08-1498, 2009 WL 3958096, at *2 (N.D. Ala. Nov. 4, 2009).

11         **4.      *Plaintiffs' Ancillary Claims Fail For Additional Reasons.***

12         The basic failures listed above defeat all of Plaintiffs' contract claims.  In addition, each of

13  Plaintiffs' ancillary contract claims fail for additional reasons.

14         (a)  <u>Plaintiffs Cannot Bring A "Good Faith And Fair Dealing" Claim (Count 11)</u>.  The

15  "duplicative" claim for breach of the implied covenant fails for the same reasons as the breach of

16  contract claim.  *Alvarez*, 656 F.3d at 931 n.6.  As Plaintiffs admit, this claim requires the existence of

17  a binding contract (Opp. 33 & n.41)—and the contracts Plaintiffs allege do not actually exist (*supra* at

18  16–18).  Plaintiffs do not base this claim on the contracts the parties actually entered into.  (Opp. 31

19  (noting that Plaintiffs do not bring claims under the Warranty or the SLA).)

20         Nor do Plaintiffs point to any "express term … on which to hinge an implied duty."  *Young v.*

21  *Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011).  Although Plaintiffs may not need to show

22  a literal breach of such an express term (Opp. 33–34), they must show that the term "exist[s]," *Young*,

23  790 F. Supp. 2d at 1117, and that Apple interfered with their rights "under the *express terms* of the

24  contract," *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1094 (2004).  Plaintiffs

25  cannot "extend[]" the covenant "to create obligations not contemplated by the contract."  *Id.*  Their claim

26  must be dismissed because they have "not identified the specific obligation allegedly breached and

27  therefore it is impossible to know how [Apple] is supposed to have breached any implied covenant of

28  good faith and fair dealing that may exist."  *Inter-Mark USA, Inc. v. Intuit, Inc.*, No. 07-04178-JCS,

2008 WL 552482, at *3, *6–7 (N.D. Cal. Feb. 27, 2008).  It is for this reason that this Court rejected the good faith and fair dealing claim in Plaintiffs' lead case, *Williams v. Wells Fargo Bank, N.A.*, No. 13-03387-EJD, 2017 WL 1374693, at *7–8 (N.D. Cal. Apr. 14, 2017):  Plaintiffs "ha[ve] not identified a provision" of any contract that "could be read to impose [the] obligation[s]" they allege, and they have not "alleged interference with the contracts that do exist between the parties."  *Id.*

(b)  <u>Plaintiffs Do Not State Claims For "Unjust Enrichment" (Count 16) Or "Money Had And Received" (Count 12)</u>.  Each of these counts seeks restitution of amounts paid to Apple, on the basis that the "Devices were not as Apple represented them to be" (SAC ¶ 663) and therefore Apple breached implied contracts and "became indebted to the Plaintiff[s]" (*id.* ¶ 631).[17]  But Plaintiffs have not pled any such failure to satisfy an actionable representation.  Because they "ha[ve] failed to sufficiently plead an actionable misrepresentation or omission, [their] restitution claim[s] must be dismissed."  *Donohue*, 871 F. Supp. 2d at 933.

These claims fail for other reasons.  <u>*First*</u>, as Plaintiffs do not deny, "the existence of an express warranty covering the purchase bars any claim for unjust enrichment," even if the parties to the warranty are not in privity.  *Williams*, 2015 WL 13626022, at *14–15.  Plaintiffs do not and cannot deny that "unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties."  *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996); *see Shvarts v. Budget Grp., Inc.*, 81 Cal. App. 4th 1153, 1160 (2000) (claims "for money had and received and restitution" must be dismissed "where there exists between the parties a valid express contract covering the same subject matter").  Plaintiffs argue that they can bring this claim "in the alternative" to their claims for breach of implied contract.  (Opp. 35.)  Plaintiffs again miss the point.  They have pleaded that express contracts exist between the parties.  (*See id.* at 31 ("The SLA … is a contract."); SAC ¶ 446 ("Apple's warranty is shorter.").)  That precludes them from bringing an "unjust enrichment claim," even "in the alternative."  *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004).

<u>*Second*</u>, Plaintiffs have not alleged a legally "wrongful" acquisition of benefits.  *Marina*

---

[17]  Plaintiffs do not dispute that their "money had and received" claim "must stand or fall with" their "unjust enrichment" claim, and can be dismissed "for the same reasons."  *McBride v. Boughton*, 123 Cal. App. 4th 379, 394 (2004); Opp. 34 & n.44; MTD 29–30.

1  *Tenants Ass'n v. Deauville Marina Dev. Co.*, 181 Cal. App. 3d 122, 134 (1986). A product's failure

2  to match a plaintiff's expectations after purchase does not suffice. *See id.* (allegation of "excessive"

3  rents did not state a claim). In Plaintiffs' case, *Elder v. Pac. Bell Tel. Co.*, 205 Cal. App. 4th 841 (2012)

4  (Opp. 35), the plaintiff alleged that the defendant included unauthorized charges on a telephone bill

5  and obtained unauthorized payments from the plaintiff as a result. *Id.* at 845, 857. Here, by contrast,

6  retailers charged Plaintiffs the amounts they authorized. That is not "unjust enrichment."

7  *Third*, Plaintiffs have not alleged a "certain" sum of money Apple supposedly unjustly received,

8  as they admit is necessary to state their claim for money had and received. (Opp. 34.) The problem is

9  not that they have failed to allege an exact dollar amount, as they mischaracterize (*id.*); it is that it does

10  "not appear what portion of the money was received for" the allegedly "defective" aspects of the iPhone

11  as opposed to the ones for which Plaintiffs admittedly received the benefit of the bargain. *French v.*

12  *Robbins*, 172 Cal. 670, 679 (1916). Because Plaintiffs do not allege "a total failure of consideration,"

13  they must allege that the benefits they did not receive are a "precise" sum, "capable of being ascertained

14  by computation." *Brown v. Grimes*, 192 Cal. App. 4th 265, 282 (2011). They have not. (MTD 30.)

15  **G.    This Court May Not Adjudicate Claims Brought On Behalf Of Non-U.S. Plaintiffs**

16  **1.    *Forum Non-Conveniens And Comity Require Dismissal Of The U.K. Claims (Counts 17–18).***

17  The U.K. Plaintiffs' claims should be adjudicated in U.K. courts. (MTD 31–33; Dkt. 176 at

18  15–18; Dkt. 197 at 7–9.) Plaintiffs do not deny that adjudicating these claims would require the Court

19  to apply complex and unsettled U.K. and E.U. law to a novel legal theory within the context of a

20  U.S.-style class action that U.K. law does not even recognize. (MTD 31–33; Dkt. 176 at 15–18; Dkt.

21  197 at 7–9.) Their arguments are incorrect, and beside the point.

22  *First*, Plaintiffs contend that the Court should not dismiss these claims until Apple identifies

23  specific "employees, witnesses, documents or other evidence located in the U.K." to override their

24  "right to sue in a defendant's home court." (Opp. 27.) However, the assumption that a plaintiff's

25  choice of forum is convenient "is much less reasonable" "[w]hen the plaintiff is foreign." *Piper*

26  *Aircraft v. Reyno*, 454 U.S. 235, 255–56 (1981); *accord Sinochem Int'l Co. Ltd. v. Malaysia Int'l*

27  *Shipping Corp.*, 549 U.S. 422, 430 (2007) ("When the plaintiff's choice is not its home forum, … the

28  assumption that the chosen forum is appropriate is in such cases 'less reasonable.'"). This is especially

true here, where a (still unidentified) U.K. named plaintiff purports to sue in a U.S. court on behalf of all "individuals who purchased Apple Devices in the United Kingdom" (SAC ¶ 491)—none of whom have affirmatively expressed a desire to litigate outside of their home country.  *See Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 479 (S.D.N.Y. 2006) ("The choice of a U.S. forum by … a resident of England who purports to represent a subclass of non-residents, is presumptively entitled to 'considerably less' deference.").

Additionally, because the proposed U.K. Class is comprised of individuals who purchased devices "in the United Kingdom" (SAC ¶ 491), evidence regarding their claims—including about their purchases and uses of their devices and the representations Apple communicated to them in the United Kingdom—is likely located in the United Kingdom.  It is therefore "not necessary" for Apple to "detail" exactly what evidence that will be.  *Piper Aircraft*, 454 U.S. at 259.  To the extent a U.K. court requires evidence located in the United States to adjudicate the U.K. claims, Apple is committed to making it available to the U.K. courts.  (*See* Dkt. 272-1 [Nierlich Decl.] ¶ 3.)

*Second*, Plaintiffs fault Apple for not "identify[ing] any related litigation in the U.K."  (Opp. 28.)  But that is not necessary to establish that an adequate alternative forum exists—all that matters is that the U.K. Plaintiffs could sue and seek a remedy in U.K. courts, something they do not dispute.  *See Gutierrez v. Advanced Med. Optics, Inc.*, 640 F.3d 1025, 1029 (9th Cir. 2011) ("An alternative forum ordinarily exists when … the entire case and all parties can come within the jurisdiction of that forum." (quotation marks omitted)); *Warn v. M/Y Maridome*, 169 F.3d 625, 629–30 (9th Cir. 1999) (U.K. courts "provide more appropriate forums for the prosecution of … claims under the laws of [the United Kingdom]").  As Plaintiffs do not deny, "[t]he UK has a robust system of regulation" and "consumers are also entitled to bring their own civil actions before the courts."  (Dkt. 176-8 [Kirk Decl.] ¶ 15.)

*Third*, citing one Protective Order provision, Plaintiffs argue that the U.K. is not an adequate alternative forum because "some technical evidence in this case may be designated as 'export controlled' and cannot leave the U.S."  (Opp. 28 (citing Dkt. 224 ¶ 14.6).)  This speculative argument is irrelevant.  The Protective Order entered in this case only "appl[ies] to … cases currently pending in MDL No. 2827" (Dkt. 224 at 2) and would not apply to any action in the U.K.

### 2.    *The CDAFA (Count 5) Has No Extraterritorial Effect.*

As this Court already recognized with respect to Plaintiffs' False Advertising Law claim, "'[w]hen a law contains geographical limitations on its application, … courts will not apply it to parties falling outside those limitations.'"  (Dkt. 219 at 13 (quoting *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1223 (9th Cir. 2003)); *see* MTD 33–34.)  And just as this Court found that the FAL's statutory language contained express geographical limitations, the CDAFA's explicit statutory language indicates that it only protects individuals "within this state."  Cal. Penal Code § 502(a).  The Opposition does not engage with this explicit geographic limitation.

Instead, Plaintiffs cite two cases supposedly "rejecting Apple's position" (Opp. 28), but neither case supports extraterritorial application of the CDAFA.  In *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022 (N.D. Cal. 2011), unlike here, "the communications at issue were sent to and from California" and the court acknowledged that "state laws may not be applied to conduct occurring outside its borders" *Id.* at 1026 n.3, 1027.  And *Carrese v. Yes Online Inc.*, No. 16-5301, 2016 WL 6069198 (C.D. Cal. Oct. 13, 2016), involves an entirely different statute, the California Invasion of Privacy Act, Cal. Penal Code §§ 630–637.5, which does not share the same statutory language indicating that the California legislature only intended to protect the privacy and well-being of individuals "within this state."  Cal. Penal Code § 502(a); *see In re Yahoo Mail Litig.*, 308 F.R.D. 577, 605 (N.D. Cal. 2015) ("It is less evident how much interest, if any, California has to applying [a California law] to protect non-residents when the stated purpose of the law is to protect the privacy rights of Californians.").

Plaintiffs' "strong[] object[ion]" on the grounds that "Apple already raised this argument in the First MTD" mischaracterizes the record.  (Opp. 28; Dkt. 282 at 4.)  Apple did not specifically argue that the CDAFA lacks extraterritorial effect, and the Court did not rule on the CDAFA's extraterritorial scope.  Apple's new challenge to the new complaint is properly before the Court now.

### 3.    *The Non-U.S. Plaintiffs' Claims (Counts 1–16) Should Also Be Dismissed Because They Are Governed By The Laws Of The Country Of Purchase.*

As already thoroughly briefed, all of the non-U.S. Plaintiffs' claims should be dismissed because, under a proper choice-of-law analysis, their claims are governed by the laws of the country of purchase.  (*See* MTD 34; Dkts. 236-1, 269.)  If anything, Plaintiffs' Opposition confirms that their claims do not arise from any right or obligation in the SLA, thereby undermining their own reliance on

the SLA to assert worldwide application of California law.  (*See* Opp. 31.)  Their argument that their contract claims instead come from an implied "sale-and-purchase arrangement" based on "the sale of a Device" (*id.* at 29–30) underscores that their claims arise out of an alleged hardware defect in the device, squarely bringing their claims under the Hardware Warranty, which requires application "of the law of the country of purchase."  (*See* Dkt. 236-1 at 8–13; Dkt. 177-1 Ex. A.)

Plaintiffs now offer two grounds to dispute whether a ruling on the proper choice-of-law will implicate the CFAA claim brought on behalf of non-U.S. Plaintiffs.  *First*, Plaintiffs argue that "no Plaintiff ever agreed to be bound by the Warranty, let alone Plaintiffs outside of the U.S." (Opp. 29.) But Plaintiffs expressly referenced the Warranty in their Complaint and have not argued that the Warranty is unenforceable.  (Dkt. 269 at 4–5.)  *Second*, Plaintiffs contend that "[t]he CFAA claim does not arise from the Warranty—it arises from an unauthorized computer intrusion via Apple's iOS update." (Opp. 29.)  This argument parses Plaintiffs' theories too finely—Plaintiffs' CFAA claim only makes sense when coupled with their allegation that the iOS Updates "diminish[ed] Device performance … in order to compensate for the undisclosed Defect" (SAC ¶ 508), which they define as a "strain[] [on] the battery powering the Device, thereby causing the battery to age and degrade prematurely" (*id.* ¶ 4).  Plaintiffs' attempt to excise the CFAA from the choice-of-law analysis is therefore contradicted by their own theory of liability.  Moreover, they fail to acknowledge the possibility that the laws of each Plaintiff's country of purchase or country of residence apply under California's governmental interests choice-of-law analysis, irrespective of the Warranty.  (*See* Dkt. 236-1 at 16–19; Dkt. 269 at 6–8.)  Plaintiffs cannot inoculate their CFAA claim from the Court's choice-of-law ruling, and the non-U.S. Plaintiffs' CFAA claim should be dismissed if their claims are governed by the laws of their place of purchase.

## III.   <u>CONCLUSION</u>

Plaintiffs' Opposition confirms that they are simply unwilling to cure many of the deficiencies that led to the previous dismissal order, and the new claims addressed in this round also fail as a matter of law.  The Court should dismiss the SAC with prejudice.

1    DATED:  February 25, 2019          GIBSON, DUNN & CRUTCHER LLP

2

3                           By:         */s/ Christopher Chorba*

                                      Christopher Chorba

4                          *Attorney for Defendant Apple Inc.*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I, Christopher Chorba, hereby certify that on February 25, 2019, the foregoing **APPLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND CONSOLIDATED AMENDED COMPLAINT** and attachments thereto were filed electronically through the CM/ECF system, copies of which were sent by First Class Mail to the following individuals unable to accept them via the electronic filing system:

Abdul Mohammed
258 East Bailey Rd Apt. C
Naperville, IL 60565

Andrew Kierstead
Hobson Bernardino & Davis LLP
444 South Flower Street
Suite 3100
Los Angeles, CA 90071

Brian Hogue
103158
c/o ISC C
H-3
P.O. Box 70010
Boise, ID 83707

Cathleen M. Combs
Edelman Combs Latturner & Goodwin, LLC
120 South LaSalle Street
18th Floor
Chicago, IL 60603

Noah Benjamin Novogrodsky
Univ Toronto/Faculty Of Law
84 Queen's Park
Toronto ON M5S 2C5

Peter Wasylyk
Hobson Bernardino & Davis, LLP
444 South Flower Street, Suite 3100
Los Angeles, CA 90071

Randall Robinson Renick
Hadsell, Stormer, Richardson & Renick, LLP
128 N. Fair Oaks Ave.
Pasadena, CA 91103

1

2     Richard Brian Rosenthal
      Law Offices of Richard B. Rosenthal, PA
3     169 E Flagler St. Ste 1422
      Miami, FL 33131-1212
4

5     Richard I Woolf
      Boyle Brasher LLC
6     One Metropolitan Square
      211 North Broadway, Suite 2300
7     St. Louis, MO 63102

8     Richard S. Wayne
      Strauss & Troy
9     Federal Reserve Building
      150 E. Fourth St.
10    Cincinnati, OH 45202-4018

11
      Steven Saul
12    Eggnatz Pascucci
      5400 S. University Drive, Ste. 417
13    Davie, FL 33328

14

15                                        By:  _____
                                                      */s/ Christopher Chorba*
16                                                  Christopher Chorba

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

APPLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
CASE NO. 5:18-MD-02827-EJD