**COTCHETT, PITRE & McCARTHY, LLP**
Joseph W. Cotchett (SBN 36324)
Mark C. Molumphy (SBN 168009)
Elle D. Lewis (SBN 238329)
Brian Danitz (SBN 247403)
Gina Stassi (SBN 261263)
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: 650-697-6000
Facsimile: 650-697-0577
*jcotchett@cpmlegal.com*
*mmolumphy@cpmlegal.com*
*bdanitz@cpmlegal.com*
*gstassi@cpmlegal.com*

*Interim Co-Lead Class Counsel*

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
Mario M. Choi (SBN 243409)
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: 415-772-4700
Facsimile: 415-772-4707
*lking@kaplanfox.com*
*mchoi@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (*pro hac vice*)
Donald R. Hall (*pro hac vice*)
David A. Straite (*pro hac vice*)
850 Third Avenue
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
*ffox@kaplanfox.com*
*dhall@kaplanfox.com*
*dstraite@kaplanfox.com*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

IN RE: APPLE INC. DEVICE
PERFORMANCE LITIGATION

This Document Relates To:

ALL ACTIONS.

Case No. 5:18-md-02827-EJD

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND CONSOLIDATED AMENDED COMPLAINT**

Judge: Hon. Edward J. Davila
Courtroom: 4, 5th Floor
Hearing Date: March 7, 2019
Hearing Time: 10:00 a.m.

**REDACTED VERSION OF DOCUMENT SUBMITTED UNDER SEAL**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 1

II.   PLAINTIFFS' COUNTER-STATEMENT OF ISSUES TO BE DECIDED
      PURSUANT TO CIVIL L.R. 7-4(a)(3) ................................................... 3

III.  PLAINTIFFS' OBJECTIONS TO THE MTD PURSUANT TO CIVIL L.R. 7-3(a) ........ 3

IV.   FACTUAL BACKGROUND ................................................................. 3

      A.    Apple Devices Have a Design Defect that Apple Concealed ..................... 3

            1.    Stage One: Selling Defective Devices ...................................... 4

            2.    Stage Two: Releasing the Throttling Updates to Mask the Defect ........... 6

      B.    The Defect and the iOS Update Were Material to Consumers. ................... 7

V.    PLEADING STANDARDS ................................................................ 8

VI.   ARGUMENT ............................................................................... 8

      A.    The SAC Sufficiently Pleads Omissions-Based Claims Under the
            Consumer Protection Statutes and the Common Law (Counts 2-4, 7-9,
            13-15) ................................................................................... 8

            1.    Apple Had a Duty to Disclose the Defect and that the iOS Updates
                  Intentionally Throttled the Devices........................................... 10

                  a.    The Omitted Facts Are Material .................................. 11

                  b.    The Omitted Facts Concern the Devices' Central
                        Functionality ...................................................... 14

                  c.    Apple Had Exclusive Knowledge of the Defect and
                        Throttling of Devices by the iOS Updates ..................... 15

                  d.    Apple Actively Concealed the Defect and the Throttling of
                        Devices by the iOS Updates...................................... 18

                  e.    The Representations were Misleading Because Other
                        Material Facts Were Not Disclosed .............................. 19

            2.    The SAC Adequately Alleges Material Omissions................................. 21

      B.    The SAC Sufficiently Pleads Damages and Standing ............................. 22

            1.    General Objection .................................................... 23

            2.    Allegations of Damages are Governed by Rule 8(a), not 9(b)................. 24

            3.    Apple Mischaracterizes Plaintiffs' Theories of Damages...................... 24

                  a.    The Defect Claims ................................................ 24

PLTFS' MPA IN OPPOSITION TO MOTION TO DISMISS

**TABLE OF CONTENTS**
**(cont.)**

Page

b.     The iOS Claims ........................................................ 25

4.     The Plaintiffs Adequately Allege Standing ............................................. 25

C.     The SAC Sufficiently Pleads Computer Trespass Claims (Counts 1, 5 and 6) ........................................................................................................ 26

D.     The SAC Alleges Facts Sufficient to Include Defect-Related Claims Related to the iPhone 5, 5S and 5C Devices (Counts 2-4, 7-18). ........................ 27

E.     The International Plaintiffs May Assert Their Federal, California and U.K. Claims in this Court (All Counts) ............................................................. 27

1.     The U.K. Claims (Counts 17-18) Are Properly in this Court .................. 27

2.     The CDAFA (Count 5) Protects Out-of-State Residents ........................ 28

3.     Non-U.S. Plaintiffs May Assert California and Federal Claims Against California-Based Apple, Inc. ........................................... 28

F.     The SAC Sufficiently Pleads Contract Claims and Related Claims at Equity (Counts 10-12, 16) ......................................................................... 29

1.     Plaintiffs Sufficiently Pled Breach of Contract ...................................... 29

a.     Plaintiffs sufficiently pled the terms Apple breached. ................. 29

b.     Neither the U.S. Hardware Warranty Nor the SLA Preclude Common Law Purchase Contract Claims .................................. 30

c.     Pre-suit notice has been provided and is otherwise not required ....................................................................................... 31

d.     Plaintiffs are in privity with Apple ............................................. 32

2.     Plaintiffs Plead a Claim for Breach of the Covenant of Good Faith and Fair Dealing ......................................................................... 33

3.     Plaintiffs Pled a Claim for Money Had and Received .............................. 34

4.     Plaintiffs Sufficiently Plead Unjust Enrichment ..................................... 35

VII.     CONCLUSION ................................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ass'n for L.A. Deputy Sheriffs v. Cty. of L.A.*,
648 F.3d 986 (9th Cir. 2011) ........................................................................................... 8

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ......................................................................................... 35

*Barlow v. Grund*,
39 F.3d 213 (9th Cir. 1994) ........................................................................................... 28

*Becerra v. Gen. Motors LLC*,
241 F. Supp. 3d 1094 (S.D. Cal. 2017) ......................................................................... 35

*Bell Atl. Corp. v. Twombly*,
550 U.S. 545 (2007) ......................................................................................................... 8

*Beyer v. Symantec Corp.*,
333 F. Supp. 3d 966 (N.D. Cal. 2018) ........................................................... 11, 15, 18

*Boyd v. Avanquest N.A. Inc.*,
No. 12-cv-04391-WHO, 2014 WL 7183988 (N.D. Cal. Dec. 16, 2014) ........................... 31, 33

*Canning v. HomEq*,
No. SACV 10-0435 AG (RNBx), 2010 WL 11558082 (C.D. Cal. July 16, 2010) ................... 34

*Carrese v. Yes Online Inc.*,
No. 16-CV-5301-SJO, 2016 WL 6069198 (C.D. Cal. Oct. 13, 2016) ............................... 28

*Clemens v. DaimlerChrysler Corp.*,
534 F.3d 1017 (9th Cir. 2008) ....................................................................................... 33

*Colgan v. Leatherman Tool Grp., Inc.*,
135 Cal. App.4 th 663 (2006) ......................................................................................... 9

*Collins v. eMachines, Inc.*,
202 Cal. App. 4th 249 (2011) ................................................................................. *passim*

*Cousins v. Lockyer*,
568 F.3d 1063 (9th Cir. 2009) ......................................................................................... 8

*Daniel v. Ford Motor Co.*,
806 F.3d 1217 (9th Cir. 2015) ............................................................... 10, 14, 15, 22

*Dickey v. Advanced Micro Devices, Inc.*,
No. 15-CV-4922-HSG, 2019 WL 251488 (N.D. Cal., Jan. 17, 2019) ............................... 24

*Donohue v. Apple, Inc.*,
871 F. Supp. 2d 913 (N.D. Cal. 2012) ........................................................................... 29

*Doyle v. Chrysler Grp., LLC*,
No. SACV 13–00620 JVS (ANx), 2014 WL 3361770 (C.D. Cal. July 3, 2014) ................ 22

*Duttweiler v. Triumph Motorcycles Am. Ltd.*,
No. 14-cv-04809-HSG, 2015 WL 4941780 (N.D. Cal. Aug. 19, 2015) ............................. 32

### TABLE OF AUTHORITIES (cont.)

Page

*Ehret v. Uber Techs., Inc.*,
   68 F. Supp. 3d 1121 (N.D. Cal. 2014) .................................................................. 15

*Elder v. Pac. Bell Tel. Co.*,
   205 Cal. App. 4th 841 (2012) .............................................................................. 35

*Elias v. Hewlett-Packard Co.*,
   No. 12-CV-00421-LHK, 2014 WL 493034 (N.D. Cal. Feb. 5, 2014) .............................. *passim*

*Erickson v. Pardus*,
   551 U.S. 89 (2007) .............................................................................................. 8

*G.P.P., Inc. v. Guardian Protection Prods., Inc.*,
   No. 1:15-cv-00321-SKO, 2017 WL 220305 (E.D. Cal. Jan. 18, 2017) ........................ 34

*Gherna v. Ford Motor Co.*,
   246 Cal. App. 2d 639 (1966)................................................................................. 30

*Gil v. Wells Fargo Bank, N.A.*,
   No. 5:15-cv-01793-EJD, 2016 WL 3742372 (N.D. Cal. July 13, 2016) ...................... 31

*Gutierrez v. Girardi*,
   194 Cal. App. 4th 925 (2011) .............................................................................. 34

*Hall v. SeaWorld Entm't, Inc.*,
   747 F. App'x. 449 (9th Cir. 2018) ........................................................................ 11

*Hasemann v. Gerber Prods. Co.*,
   No. 15-cv-2995-MKB, 2016 WL 5477595 (E.D.N.Y. Sept. 28, 2016) ........................ 25

*Hendrickson v. Octagon Inc.*,
   225 F. Supp. 3d 1013 (N.D. Cal. Dec. 2, 2016) ...................................................... 34

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018)........................................................................... 10, 11

*In re Anthem, Inc. Data Breach Litig.*,
   No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016) .................. 21, 22

*In re Apple In-App Purchase Litig.*,
   855 F. Supp. 2d 1030 (N.D. Cal. 2012) ................................................................. 35

*In re Apple Processor Litigation*,
   No. 18-cv-0147-EJD, 2019 WL 79035 (N.D. Cal. Jan. 2, 2019)................................ 26

*In re Arizona Theranos, Inc., Litig.*,
   256 F. Supp. 3d 1009 (D. Ariz. 2017)................................................................... 29

*In re Arizona Theranos, Inc., Litig.*,
   308 F. Supp. 3d 1026 (D. Ariz. 2018)................................................................... 29

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) ......................................................... 11, 13, 22

# TABLE OF AUTHORITIES (cont.)

Page

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prods. Liab. Litig.*,
295 F. Supp. 3d 927 (N.D. Cal. 2018) .................................................................. 14, 22

*In re Facebook Internet Tracking Litig.*,
263 F. Supp. 3d 836 (N.D. Cal. 2017) ........................................................................ 23

*In re First Alliance Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) ........................................................................................ 9

*In re Gupta Corp. Sec. Litig.*,
900 F. Supp. 1217 (N.D. Cal. 1994) ............................................................................ 8

*In re MyFord Touch Consumer Litig.*,
46 F. Supp. 3d 936 (N.D. Cal. 2014) ......................................................................... 14

*In re Sony PS3 "Other OS" Litig. v. Sony Comput. Entm't Am., Inc.*,
551 F. App'x 916 (9th Cir. 2014). ................................................................................ 9

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ............................................................................................... 22

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*,
754 F. Supp. 2d 1145 (C.D. Cal. 2010) ...................................................................... 33

*In re: Facebook Priv. Litig.*,
No. C-10-02389-RMW, 2015 WL 632329 (N.D. Cal. Feb. 13, 2015) ....................... 22

*In re: Lenovo Adware Litig.*,
No. 15-md-02624-RMW, 2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ................... 11

*Interserve, Inc. v. Fusion Garage PTE Ltd.*,
No. 09-cv-5812-RS, 2011 WL 500497 (N.D. Cal. Feb. 9, 2011) .............................. 24

*Johnson v. Harley-Davidson Motor Co. Grp., LLC*,
285 F.R.D. 573 (E.D. Cal. 2012) ............................................................................... 16

*Jun-En Enter. v. Lin*,
No. CV 12-2734 PSG (SSx), 2013 WL 12126098 (C.D. Cal. Nov. 13, 2013) .......... 29

*Kasky v. Nike, Inc.*,
27 Cal. 4th 939 (2002) ............................................................................................... 20

*Keegan v. American Honda Motor Co., Inc.*,
838 F. Supp. 2d 929 (C.D. Cal. 2012) ....................................................................... 33

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ..................................................................................... 30

*Kowalsky v. Mercedes-Benz USA, LLC*,
No. CV 12-00936 DMG (CWx), 2013 WL 2285237 (C.D. Cal. May 22, 2013) ....... 15

*Linear Tech. Corp. v. Applied Materials, Inc.*,
152 Cal. App. 4th 115 (2007) ...................................................................................... 9

## TABLE OF AUTHORITIES (cont.)

Page

*Lovejoy v. AT&T Corp.*,
   92 Cal. App. 4th 85 (2001) ................................................................. 10

*Madrigal v. Hint, Inc.*,
   No. CV 17-02095-VAP (JCx), 2017 WL 6940534 (C.D. Cal. Dec. 14, 2017) ....................... 32

*Main v. Gateway Genomics, LLC*,
   No. 15cv2945 AJB (WVG), 2016 WL 7626581 (S.D. Cal. Aug. 1, 2016) ............................ 32

*Marolda v. Symantec Corp.*,
   672 F. Supp. 2d 992 (N.D. Cal. 2009) ...................................................... 34

*Marsikian v. Mercedes Benz USA, LLC*,
   No. CV 08-04876 AHM (JTLx), 2009 WL 8379784 (C.D. Cal. May 4, 2009) ...................... 16

*Martin v. Ford Motor Co.*,
   765 F. Supp. 2d 673 (E.D. Pa. 2011) ....................................................... 32

*McKell v. Wash. Mut., Inc.*,
   142 Cal. App. 4th 1457 (2006) .............................................................. 9

*Menjivar v. Trophy Prop. IV DE, LLC*,
   No. 06-cv-03086-SI, 2006 WL 2884396 (N.D. Cal. Oct. 10, 2006) ............................ 24

*Metowski v. Traid Corp.*,
   28 Cal. App. 3d 332 (1972) ................................................................. 32

*Mias Fashion Mfg. Co. Inc. v. Jiangyin Jiamei Knitting Clothing Co. Ltd.*,
   No. CV 17-03124 SJO (RAOx), 2017 WL 7163924 (C.D. Cal. Aug. 1, 2017) ..................... 32

*Michael v. Honest Co., Inc.*,
   No. LA CV15-07059 JAK (HGRx), 2016 WL 8902574 (C.D. Cal. Dec. 6, 2016) ................. 32

*Morgan v. AT&T Wireless Servs.,Inc.*,
   177 Cal. App. 4th 1245 (2009) ............................................................. 10

*Mui Ho v. Toyota Corp.*,
   931 F. Supp. 2d 987 (N.D. Cal. 2013) ....................................................... 18

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) .............................................................. 30

*Norcia v. Samsung Telecoms. Am., LLC*,
   845 F.3d 1279 (9th Cir. 2017) .............................................................. 30

*Norcia v. Samsung Telecoms. Am., LLC*,
   No. 14-cv-00582-JD, 2018 WL 4772302 (N.D. Cal. Oct. 1, 2018) ......................... 11, 15

*Oasis West Realty, LLC v. Goldman*,
   51 Cal.4th 811 (2011) ...................................................................... 29

*Opperman v. Path, Inc.*,
   84 F. Supp. 3d 962 (N.D. Cal. 2015) ................................................... 22, 30

**TABLE OF AUTHORITIES (cont.)**

Page

*Rutledge v. Hewlett-Packard Co.,*
238 Cal. App. 4th 1164 (2015) ...................................................................................... 10, 14

*Ryanair DAC v. Expedia Inc.,*
No. 17-cv-1789-RSL, 2018 WL 3727599 (W.D. Wash. Aug. 6, 2018) ................................. 29

*Sanders v. Apple Inc.,*
672 F. Supp. 2d 978 (N.D. Cal. 2009) ................................................................................ 35

*Skydive Ariz., Inc. v. Quattrocchi,*
673 F.3d 1105 (9th Cir. 2012) .......................................................................................... 14

*Smith v. Wells Fargo Bank, N.A.,*
135 Cal. App. 4th 1463 (2005) ............................................................................................ 9

*Smolinski v. Oppenheimer,*
No. 11 C 7005, 2012 WL 2885175 (N.D. Ill. July 11, 2012) .................................................. 24

*St. Paul Mercury Ins. Co. v. Crawford and Co.,*
No. LA CV16–08462 JAK (JPRx), 2017 WL 5891047 (C.D. Cal. June 6, 2017) ................... 35

*Sud v. Costco Wholesale Corp.,*
731 F. App'x 719 (9th Cir. 2018) ....................................................................................... 11

*Sunfarms, LLC v. Eurus Energy America Inc.,*
No. 3:18-cv-0058-L-AGS, 2018 WL 6617635 (S.D. Cal. Dec. 18, 2018) ............................. 34

*Swearingen v. Santa Cruz Nat., Inc.,*
No. 13-cv-04291-SI, 2016 WL 4382544 (N.D. Cal. Aug. 17, 2016) ..................................... 34

*Synopsys, Inc. v. Ubiquiti Networks, Inc.,*
313 F. Supp. 3d 1056 (N.D. Cal. 2018) ............................................................................. 22

*T & M Solar and Air Conditioning, Inc. v. Lennox Int'l Inc.,*
83 F. Supp. 3d 855 (N.D. Cal. 2015) ................................................................................. 29

*Thornton v. Micro-Star Int'l Co., Ltd.,*
No. 2:17-cv-03231-CAS-AFMx, 2018 WL 5291925 (C.D. Cal. 2018) ................................. 18

*Tietsworth v. Sears,*
720 F. Supp. 2d 1123 (N.D. Cal. 2010) ............................................................................. 19

*Valentine v. NebuAd, Inc.,*
804 F. Supp. 2d 1022 (N.D. Cal. 2011) ............................................................................. 28

*Vess v. Ciba-Geigy Corp. USA,*
317 F.3d 1097 (9th Cir. 2003) ...................................................................................... 8, 23

*Washington v. Baenziger,*
673 F. Supp. 1478 (N.D. Cal. 1987) ..................................................................................... 8

*Wayne Merritt Motor Co. v. New Hampshire Ins. Co.,*
No. 11-cv-1762-LHK, 2011 WL 5025142 (N.D. Cal. Oct. 21, 2011) ..................................... 24

Case No. 5:18-md-02827-EJD

**TABLE OF AUTHORITIES (cont.)**

Page

*Weeks v. Google LLC*,
No. 18-cv-00801 NC, 2018 WL 3933398 (N.D. Cal. Aug. 16, 2018) .................................. 14

*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008) .................................................................................................... 9

*Williams v. Wells Fargo Bank, N.A.*,
No. 5:13-cv-03387-EJD, 2017 WL 1374693 (N.D. Cal. Apr. 14, 2017) .............................. 33

*Williams v. Yamaha Motor Corp., U.S.A.*,
No. CV 13-05066 BRO (VBKx), 2015 WL 13626022 (C.D. Cal. Jan. 7, 2015) .................. 33

*Woodard v. Labrada*,
No. EDCV 16-00189 JGB (SPx), 2017 WL 3309765 (C.D. Cal., July 31, 2017) ................. 19

*Xavier v. Philip Morris USA Inc.*,
787 F. Supp. 2d 1075 (N.D. Cal. 2011) ................................................................................. 33

**Statutes**

18 U.S.C.
§ 1030(e)(8) ........................................................................................................................... 25
§ 1080 (the Consumer Fraud and Abuse Act, "CFAA") ................................................. *passim*

California Business and Professions Code
§§ 17200 *et seq.* (the Unfair Competion Law, "UCL") ................................................... *passim*
§§ 17500 *et seq.* (the California False Advertising Law, "FAL") .................................... *passim*

California Civil Code
§§ 1750, *et seq.* (the Consumer Legal Remedies Act, "CLRA") ........................... 8, 9, 19
§ 1770(a) .................................................................................................................................. 9
§ 1770(a)(5) ............................................................................................................................. 9
§ 1770(a)(7) ............................................................................................................................. 9
§ 1770(a)(9) ............................................................................................................................. 9
§ 1770(a)(16) ........................................................................................................................... 9

California Penal Code
§ 502 (the California and Data Fraud Act, "CDAFA") ................................................... *passim*

**Rules**

Federal Rules of Civil Procedure
Rule 8 .............................................................................................................................. 15, 24
Rule 8(a) ........................................................................................................................... 8, 24
Rule 9(b) ..................................................................................................................... 8, 15, 24
Rule 12(b)(1) ......................................................................................................................... 23
Rule 12(b)(6) ..................................................................................................................... 8, 23
Rule 15 .................................................................................................................................. 35
Rule 25(a) .............................................................................................................................. 28

**Treatise**

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT
§ 1 (2011) ............................................................................................................................. 23

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

This case is about Apple's knowledge and concealment of a serious problem affecting the core functionality of millions of the Devices it sold to consumers.[1] Put simply, Apple designed its Devices so that, when used in the ordinary course, the power-hungry operating system and applications unduly strained the Device's battery causing it to prematurely age and degrade (the "Defect"). This Defect resulted in ▓▓▓▓▓▓ Devices shutting down unexpectedly—which Apple referred to internally as an "unexpected power off" or "UPO"—impacting even brand new or substantially charged Devices. The premature aging was not normal, not what consumers bargained for, and contrary to Apple's own statements regarding the Devices' capabilities. Worse, Apple successfully concealed the problem for almost a year with a software update that artificially throttled CPU clock speed and performance, and tricked customers into downloading it.

The Second Amended Complaint (the "SAC," ECF Nos. 244 (redacted) & 243-3 (sealed)) adequately pleads consumer protection, computer trespass, fraud, contract, and other claims with summary-judgment-like detail arising out of these bad acts. This Court already sustained the computer trespass claims, the California and Data Fraud Act ("CDAFA") claim, Unfair Competition Law ("UCL") claims under the unlawful and unfair prongs, and the unauthorized damage prong of the Consumer Fraud and Abuse Act ("CFAA"), as they relate to the iOS updates. *See generally* Order on First MTD dated October 1, 2018 (the "Order," ECF No. 219). With the benefit of the Court's analysis, the SAC pleads 61 additional paragraphs of facts (and supplements another 13 paragraphs) that cure the three primary pleading deficiencies identified in the Order. First, the SAC pleads the precise nature of the Defect. Second, the SAC pleads detailed facts to support the fraudulent and negligent omission-based claims. Third, the SAC pleads that Apple acted knowingly, and that knowledge went to the highest levels of management. For example, the SAC adds the following facts:

- Apple was aware of a problem with UPOs by at least ▓▓▓▓▓▓▓▓▓▓ ¶394.

- The UPO problem accelerated in 2016. By winter 2016, UPOs were affecting ▓▓▓ Devices and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[1] Unless otherwise stated, paragraph citations refer to the SAC and capitalized terms here are defined as used in the SAC.

¶371. Devices were ▮▮▮▮ ¶384.

- By the end of 2016, Apple knew that the UPOs were the consequence of the Defect: Apple designed a Device that caused the lithium-ion batteries to age prematurely, meaning, develop prematurely high internal resistance ("Ra"). According to a Senior Engineering Manager, ▮▮▮▮ ¶385. Three months later, another Senior Engineering Manager noted, ▮▮▮▮ ¶391.

- Apple knew that it needed to address the Defect, and quickly. ¶384. Apple's solution was to throttle performance—trading one harm for another. But Apple chose further deception rather than truth, deceiving customers into installing software by misrepresenting that it was meant to fix "bugs" and "improve security." The deception was not lost on Apple engineers, who internally ▮▮▮▮ ¶374 (emphasis in original).

- ▮▮▮▮ ¶9. ▮▮▮▮ ¶400.

- Apple also misrepresented that its Devices were designed to function normally for 500 charge cycles. ¶381. ▮▮▮▮ ¶388. ▮▮▮▮ ¶¶388-89 (emphasis in original).

- Senior Apple executives *admitted* internally that ▮▮▮▮ ¶¶386, 391.

- Senior Apple engineers *admitted* internally that the Defect was a ▮▮▮▮ ¶399. Nonetheless, while Apple engineers re-confirmed in early 2017 that ▮▮▮▮ ¶397, Apple continued to conceal the problem and the impact of its secret throttling software throughout 2017. *Id.*

- The truth was not revealed by Apple. Rather, on December 20, 2017, an independent researcher in Toronto discovered and disclosed Apple's throttling of Devices. Inside Apple, its engineers candidly acknowledged that the ▮▮▮▮ Cotchett Decl., Ex. 1.[2]

     To be clear, this case is not about any expectation that a battery should last forever. Instead it is about Apple selling millions of Defective Devices when it knew customers were being misled. It is about Apple violating its duty to be truthful. It is about Apple purposefully tricking customers

---

[2] This memorandum is accompanied by the Declaration of Joseph W. Cotchett, dated February 14, 2019 ("Cotchett Decl."), containing additional documents produced by Apple in discovery and/or subject to judicial notice. To the extent the Court identifies any insufficiency in the SAC, Plaintiffs seek leave to amend and include these and other materials.

1   into accepting a software patch designed to throttle CPU performance by more than 50% rather than

2   be truthful. But despite the overwhelming evidence, Apple seeks dismissal of this case. In Apple's

3   telling, no consumer has any legal recourse under any theory—including those already sustained by

4   this Court. Apple even tries to convince this Court that its actions were pro-consumer. But internally,

5   Apple ███████████████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████  *See* Cotchett Decl., Ex. 2. The

7   renewed Motion to Dismiss (the "MTD," ECF No. 272) should be denied.

## II.   PLAINTIFFS' COUNTER-STATEMENT OF ISSUES TO BE DECIDED PURSUANT TO CIVIL L.R. 7-4(a)(3)

1.   Whether the SAC sufficiently pleads standing and damages.

2.   Whether the SAC sufficiently pleads a defect.

3.   Whether the SAC sufficiently pleads Counts 1 through 16.

4.   Whether the SAC alleges facts sufficient to include the iPhone 5, 5s and 5c models in the definition of "devices."

5.   Whether foreign plaintiffs are barred from asserting any civil claims against a California-based defendant in California federal court.

## III.   PLAINTIFFS' OBJECTIONS TO THE MTD PURSUANT TO CIVIL L.R. 7-3(a)

Plaintiffs raise three general objections to the MTD. These objections are developed more fully in a separate document, and Plaintiffs seek leave to file herewith ("Objections").[3]

## IV.   FACTUAL BACKGROUND

### A.   Apple Devices Have a Design Defect that Apple Concealed

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████  ¶383. The presence of the

Defect and UPOs was not a surprise to anyone at Apple because: (1) as early as

██████████████████████████████████████████████████████  (¶394); and

(2) ████████████████████████████████████████████████████████████████████

---

[3] First Objection: Apple improperly moves to dismiss claims already upheld by the Court. Second Objection: Apple improperly raises new arguments that could have been raised in the first MTD but are now deemed waived. Third Objection: Apple makes arguments diametrically opposed to those made in its Motion for Reconsideration (ECF No. 236-1).



(¶369). The reports Apple received in late 2016, however, were unprecedented, indicating that thereby triggering a company-wide ¶371.

¶¶388-92.

¶388 (emphasis in original).

Apple represents that its Devices were designed to remain functional at 500 complete charge cycles. ¶5. However, the confirmed that ¶¶4, 388. This ¶386.

Instead of admitting the fiasco—and offering customers refunds—Apple surreptitiously implanted code in the Devices (the "Updates") to mask the Defect by slowing Device performance based on battery resistance levels. ¶¶12, 15-16. Then in December 2017, when Apple was forced to belatedly reveal the Updates impact on Device performance, Apple *again* failed to come clean about the Defect. ¶¶16-17, 22-23. Hence, Apple's fraud has two stages: the first stage was the Defect, which arose at the point of sale and which occurred globally across all Devices; and the second stage was the use of iOS Updates to actively conceal the Defect. ¶¶4-23.[5]

### 1.   Stage One: Selling Defective Devices

Apple knew at its highest levels that its Devices suffered from a Defect. ¶¶6, 9-11, 14, 369-

---

[4] ¶388, n.47.

[5] As detailed in the SAC, these allegations are taken directly from the writings of Apple's top engineering, battery, software, hardware and executive teams. *See, e.g.*, ¶¶6, 9-11, 14, 369-77, 383-409. The documents uncovered during discovery mirror Plaintiffs' original allegations in the CAC, including why Devices were defective at point of sale. *See id.*

77, 383-409.[6] Specifically, Apple sold Devices knowing that its proprietary power-hungry operating software (required to use the Device) and Device applications were straining the batteries and increasing internal resistance, causing batteries to age prematurely. ¶¶4, 378-79 (discussing how higher resistance causes battery to heat up and voltage to drop).



¶394.

¶369.

Finally, after the iPhone 7 and 7 Plus were released,

¶391. Shortly thereafter,

¶392.

Apple dedicated massive resources—daily—to address UPOs,

¶¶376, 383-93.[7] By December 2016, Apple had a dedicated                    to resolving the UPO issue and acknowledged that the

¶¶384-85. Apple's investigation

¶388 (emphasis in original); *see also* ¶390

Apple could no longer ignore the Defect and

¶386. Apple, however, publicly ignored the results of its findings and continued to sell Defective Devices. ¶¶4, 369-405.

---

6

¶400.

7

¶396.

### 2. Stage Two: Releasing the Throttling Updates to Mask the Defect

On January 23, 2017, Apple released update iOS 10.2.1, which included undisclosed code to slow (a/k/a throttle) Device performance[8] based on Device resistance levels to prevent iOS and software applications from overwhelming an aged battery and causing a UPO. ¶¶12-15, 378-79. The throttling software secretly reduced Device performance by as much as 50% ▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓[9] ¶403 *see also* ¶¶ 439-43. While iOS 10.2.1 was successful in reducing the number of Device UPOs, it did not eliminate them; internal documents acknowledged that post-iOS 10.2.1 the UPO rate remained ▓▓▓▓▓▓▓▓▓▓▓ ¶14.

In March 2017, Apple engineers knew ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ¶391.[10] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* Thus, on December 2, 2017, Apple introduced iOS 11.2, which throttled the speed of the iPhone 7 and 7 Plus to reduce UPOs. ¶¶15, 362. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ¶393.

Apple knew these Updates would cause the Devices to be ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ¶403. Consequently, Apple hid the truth from the public, simply stating the Updates were designed to fix "bug[s]" and "improve security," and entirely ignoring that the Updates throttled (or slowed) Devices to prevent prematurely aged batteries from causing UPOs. ¶¶12-15, 358-62.[11]

---

[8] The Court already found the CAC's allegations adequately plead that Apple damaged the Devices "without permission" and "intentionally". Order at 18-24 (finding that Apple's throttling of Devices pleads a civil violation of criminal statutes (CFAA/CDAFA)).

[9] As this Court held on the prior dismissal motion, Apple's February 2017 statements about "power management" "never mentioned the reduction in processor speeds", and thus did not change the Court's ruling that Plaintiffs never gave permission for Apple to damage their Devices.

[10] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ¶392. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.*

[11] Even without benefit of details such as ▓▓▓▓▓▓▓▓▓▓▓▓▓ the Court already held that Plaintiffs sufficiently allege that Apple's conduct violated

1    Mounting consumer complaints caught the attention of third-party researchers who, in
2  December 2017, released studies linking the Updates to slowed performance. ¶¶439-47. Upon review
3  of the studies, one Apple engineer commented, ███████████████████████████████████
4  ████████████████████████████████████      and characterized the Updates as
5  ███████████████████████████████████ Cotchett Decl. Ex. 2.

6    On December 20, 2017, facing an inexorable public outcry about the Updates slowing the
7  Devices, Apple begrudgingly acknowledged that it released the Updates to "smooth out
8  instantaneous peaks" in "current demand" to prevent "unexpected shutdowns" of certain of its
9  iPhones (the "Admission"). ¶¶16-17. Apple's "Admission" occurred nearly eleven months after it
10 released iOS 10.2.1 and failed to admit the root cause of the need for the Updates, *i.e.* the point of
11 sale Defect. ¶15. Apple made another public statement, stylized as an "Apology", on December 28,
12 2017, which was similarly bereft of any disclosure of the Defect. ¶22.

13    **B.    The Defect and the iOS Update Were Material to Consumers.**

14    Apple's failure to disclose both the Defect and the true nature of the iOS Updates (*i.e.*, the
15 throttling of Devices) was material to consumers. ¶¶4, 369-405. According to SurveyMonkey®, of
16 2,063 distinct iPhone users, 96.95% stated "performance (speed) of the phone" was extremely
17 important, very important, or somewhat important to their "buying decision" while 97.82% stated
18 battery life was extremely important, very important, or somewhat important to their buying decision.
19 ¶¶410-11. Critically, 92.44% stated it would be important to their buying decision to know if the
20 iPhone might experience UPOs. ¶412. Moreover, if iPhone users surveyed knew their iPhones would
21 experience UPOs, 66.12% would consider buying a different brand of smartphone entirely while
22 88.51% would not be willing the pay the same price for the smartphone. ¶413.[12] The materiality is
23 underscored by Apple's internal response to the Defect, the public outcry, and the regulatory
24 proceedings. ¶¶461-79; *see also* Section VI(A)(1)(a) below. The iOS Updates significantly inhibited
25 Devices' processing speeds, and "effectively turned the device's performance into that of a device

26  ───────────────────────
    criminal statutes (CFAA/CDAFA), constituted trespass, and was unfair and unlawful under the UCL.
27 Order at 18-26, 37-38.
    [12] As the SAC details, surveyed consumers' willingness to buy different smartphones if UPOs were
28 disclosed is what motivated Apple to conceal the Defect, *i.e.*, to avoid losing consumers and revenue.

1  1-2 generations older" or "less than half as fast as Apple advertises." ¶¶442-43.

2  **V.     PLEADING STANDARDS**

3          Under Rule 8(a), Plaintiffs are not required to plead "detailed factual allegations" to state

4  claims at the pleading stage of litigation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 545, 555 (2007);

5  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Under Rule 9(b), fraud allegations must "be specific

6  enough to give defendants notice of the particular misconduct. . . ." *Vess v. Ciba-Geigy Corp. USA*,

7  317 F.3d 1097, 1106 (9th Cir. 2003). Knowledge and state of mind "may be alleged generally." Fed.

8  R. Civ. P. 9(b). As to facts within Apple's knowledge, Rule 9(b) standards are "relaxed" prior to

9  discovery. *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1228 (N.D. Cal. 1994). Similarly, for

10  fraudulent omission claims, Rule 9(b) is relaxed because "a plaintiff cannot plead either the specific

11  time of [an] omission or the place, as he is not alleging an act, but a failure to act." *Washington v.*

12  *Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987). On a Rule 12(b)(6) motion, the Court accepts

13  all allegations as true, considers them as a whole, and draws all reasonable inferences in Plaintiffs'

14  favor. *Ass'n for L.A. Deputy Sheriffs v. Cty. of L.A.*, 648 F.3d 986, 991 (9th Cir. 2011). The complaint

15  need not "contain detailed factual allegations," but only "enough facts to state a claim to relief that

16  is plausible on its face." *Cousins v. Lockyer*, 568 F.3d 1063, 1067-68 (9th Cir. 2009).

17  **VI.    ARGUMENT**[13]

18          **A.     The SAC Sufficiently Pleads Omissions-Based Claims Under the Consumer**
               **Protection Statutes and the Common Law (Counts 2-4, 7-9, 13-15)**
19

20          Plaintiffs assert claims under the California Consumer Legal Remedies Act ("CLRA"),

21  California Civil Code §§ 1750, *et seq.*, the "fraudulent" prong of the UCL, Cal. Bus. & Prof. Code

22  §§ 17200, *et seq.*, the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500,

23  *et seq.*, and for common law fraud and concealment.[14]

24          The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices

25  ---
[13] All internal citations and quotations are omitted, and all emphasis added unless otherwise stated.

26  [14] "[T]he elements of common law fraud are essentially identical to those for a claim of active
   concealment under the CLRA and the UCL fraud prong." *Elias v. Hewlett-Packard Co.*, No. 12-CV-

27  00421-LHK, 2014 WL 493034, at *5 (N.D. Cal. Feb. 5, 2014). Accordingly, the analysis under the
   CLRA, UCL and FAL based upon Apple's material omissions applies to the common law fraud
   claims based upon active concealment. *Id.*

28

undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).[15] Conduct that is "likely to mislead a reasonable consumer" violates the CLRA. *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 680 (2006); *see also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Deception is a question of fact not appropriate for resolution here. *Gerber Prods.*, 552 F.3d at 938.

The UCL provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. *See* Cal. Bus. & Prof. Code §§ 17200, *et seq.*[16] The SAC alleges claims under all three prongs. This Court already held that the CAC adequately alleged UCL claims against Apple for all Devices (other than the iPhone 5's and iPad's) based upon violations of the unlawful and unfair prongs of the UCL. *See* Order at 37-38. Apple's cursory attempt to seek dismissal of those claims again (MTD at 20) is baseless. Plaintiffs articulate in Section VI(D) why these rulings should also apply to the iPhone 5's but focus accordingly on the "fraudulent" prong of the UCL.[17]

"A fraudulent business practice is one which is likely to deceive the public." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1471 (2006). "It may be based on representations to the public which are untrue, and 'also those which may be accurate on some level, but will nonetheless tend to mislead or deceive. . . A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under'" the UCL. *Id.* The determination as to whether a business practice is deceptive is based on the likely effect such practice would have on a reasonable consumer. *Id.*[18]

---

[15] "Section 1770(a)(9) is the only subsection that requires pleading fraud, since it specifically requires intent to defraud . . ." *In re Sony PS3 "Other OS" Litig. v. Sony Comput. Entm't Am., Inc.*, 551 F. App'x 916, 921 (9th Cir. 2014). Section 1770(a)(5) concerns representations that the product had a characteristic that it did not actually have, while § 1770(a)(7) focuses on the product being of a different quality or grade than represented, § 1770(a)(9) on advertising goods with intent not to sell them as advertised, and § 1770(a)(16) on representing the subject of a transaction has been supplied in accordance with a previous transaction when it has not. ¶520.

[16] The UCL's coverage is "sweeping," and its standard for wrongful business conduct "intentionally broad." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006).

[17] It must be emphasized, however, that "[w]hether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made" on a motion to dismiss. *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007); *Gerber Prods.*, 552 F.3d at 938-39.

[18] While a claim pursuant to FAL requires that a statement be made (*i.e.* advertising), neither the FAL nor the UCL require an affirmative misrepresentation for liability to attach. *Smith v. Wells*

1           **1.**       **Apple Had a Duty to Disclose the Defect and that the iOS Updates**
                        **Intentionally Throttled the Devices**

An omission is actionable under California's consumer protection statutes and the common law when it is "contrary to a representation actually made by the defendant," or is "an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018). Plaintiffs' omission-based claims are cognizable because Apple was obliged to disclose both the Defect and that the iOS Updates were designed to throttle the performance of consumers' Devices, "effectively turn[ing] the device's performance into that of a device 1-2 generations older." ¶442.

Apple argues that it has no duty to disclose any defect because a manufacturer only has a duty to disclose an "unreasonable safety hazard." MTD at 15. However, as this Court recognized, in *Hodsdon* the Ninth Circuit found that the "'safety hazard pleading requirement is not necessary in all omission cases'" and manufacturers may "'have a duty to disclose a defect when it affects the central functionality of a product.'" Order at 31 (quoting *Hodsdon*, 891 F.3d at 863-64). The Ninth Circuit based the "central functionality" standard on two California Court of Appeal cases: *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249 (2011), and *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164 (2015).[19] *Collins* held that a CLRA omission claim was stated where the alleged defect in floppy disk controllers "was central to the function of a computer as a computer." *Id.*, 202 Cal. App. 4th at 258. *Rutledge* held that there was a triable issue of fact about a defect that caused computer screens to dim and darken. *Id.*, 238 Cal. App. 4th at 1168, 1172-76.

Subsequent decisions in this Circuit recognize that *Hodsdon* articulated the controlling standard for fraud by omission under California's consumer protection statutes: "Insofar as the plaintiffs' claims are premised on omissions, our decision in *Hodsdon* [] controls . . . that a seller of goods has a duty to disclose only product defects that relate to the 'central functionality' of the

_____

*Fargo Bank, N.A.*, 135 Cal. App. 4th 1463, 1488 n.22 (2005) (allowing FAL claim to proceed based on omission); *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1245, 1256 (2009) (UCL and FAL claims need "not [be] based upon [plaintiffs'] reliance on specific representations they assert were false"); *see Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 87 (2001) ("deceit may be negative as well as affirmative").

[19] *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1222 (9th Cir. 2015) ("We must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently").

product." *Sud v. Costco Wholesale Corp.*, 731 F. App'x 719, 720 (9th Cir. 2018); *see also Hall v. SeaWorld Entm't, Inc.*, 747 F. App'x. 449, 451 (9th Cir. 2018) ("interpreting *Rutledge* and other California decisions, we recently held that, for a fraud by omission claim under California's consumer protection laws, the omitted fact 'must relate to the central functionality of the product'"); *Norcia v. Samsung Telecoms. Am., LLC*, No. 14-cv-00582-JD, 2018 WL 4772302, at *1-2 (N.D. Cal. Oct. 1, 2018) (denying motion to dismiss UCL claim where "[t]he challenged omission [went] directly to the Samsung cell phone's central function" of "speed and performance").[20]

Accordingly, as this Court recognized, in *Hodsdon*:

> [T]he Ninth Circuit laid out the three circumstances that a plaintiff must plead to raise this duty to disclose. First, a plaintiff must allege "that the omission was material." *Id.* Second, a plaintiff must allege "that the defect was central to the product's function." *Id.* Third, a plaintiff must allege one of the following: "(1) [that] the defendant is the plaintiff's fiduciary; (2) [that] the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) [that] the defendant actively conceals a material fact from the plaintiff; [or] (4) [that] the defendant makes partial representations that are misleading because some other material fact has not been disclosed." *Id.* at 862 (quoting *Collins v. eMachines, Inc.*, 134 Cal. Rptr. 3d 588, 593 (Ct. App. 2011)).

Order at 31. The SAC satisfies these requirements, alleging facts that Apple's omissions (1) are material, (2) relate to the Devices' central function, and (3) that Apple had exclusive knowledge of material facts not known or reasonably accessible to Plaintiffs, actively concealed a material fact from Plaintiffs, and made partial representations that are misleading because some other material fact has not been disclosed. The SAC satisfies three of the four prongs of the third element, notwithstanding the need to establish just one.

### a. The Omitted Facts Are Material

California's consumer protection laws focus on the "reasonable consumer": "Plaintiffs must plead facts sufficient to raise the plausible inference that Apple's disclosure of the alleged defects

---

[20] *See also Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 979 (N.D. Cal. 2018) ("[T]he plaintiff must plead that the defect was central to the product's function"; "Because the complaint in the instant case does not allege a safety hazard, the issue under *Collins* and *Rutledge* is whether the [Defects] constitute 'physical' defects that were 'central' to the Affected Products' function."); *In re: Lenovo Adware Litig.*, No. 15-md-02624-RMW, 2016 WL 6277245, at *12-13 (N.D. Cal. Oct. 27, 2016) (rejecting argument that duty to disclose was limited to defects relating to safety concerns); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1112-15 (N.D. Cal. 2015) (denying motion to dismiss where defendant had exclusive knowledge of intrusive software).

1   would be important in the reasonable consumer's decision about whether to purchase the Apple

2   device at the stated price." Order at 32; *see also Elias*, 2014 WL 493034, at *9.

3          The Court previously found that "Plaintiffs do not adequately allege that Apple's omission

4   was material" given consumers' "baseline awareness of the inevitability of battery decay." Order at

5   32-34. The Court found the CAC failed to provide the "factual underpinning" to allege materiality,

6   noting: "[a]lthough Plaintiffs also plead that 'Apple's batteries (as designed) degraded *over quickly*',

7   [] they provide no explanatory allegations and do not otherwise allege that Apple knew about this

8   over-degradation." *Id*. at 34-35. The SAC more than fills any gaps, explaining that Plaintiffs do not

9   complain about batteries that age as designed by Apple or that they should last forever. Instead, the

10  SAC alleges a known Defect, present at the point of sale, that caused the batteries to age *prematurely*

11  (twice as fast) during normal use and were thereby unable to power the Devices and impairing its

12  central functionalities.

13         The SAC provides the factual underpinning to allege materiality and demonstrate that the

14  battery age in nearly all affected Devices "did not live up to the standards actually communicated by

15  Apple." Order at 33-34. Contrary to Apple's representation that "the iPhone battery is designed to

16  remain functional at 500 complete cycles," the SAC demonstrates through internal reports and emails

17  among senior Apple executives and engineers, that

18                                                            ¶¶383-401. For example, an internal

19  report

20                                                            ¶¶387-88 (emphasis in original).

21  Internal emails show                                      ¶390. The

22  concealed information **contradicted** consumers' reasonable understanding "about the degradation

23  of batteries" and Apple's specific representation that its batteries are "designed to retain up to 80%

24  of its original capacity at 500 complete charge cycles." Order at 34-35.

25         The Defect ***impacted millions of Devices worldwide*** and

26                                                            ¶¶8, 371. Noting the

27      one Director admitted that the Devices                ¶384. A Senior

28  Software Engineering Manager at Apple stated:

¶385 (emphasis in original). An Apple Vice President stated in an email that the Company

¶386.

Apple's response also demonstrates materiality. It recognized the Defect as an urgent threat, and elevated the issue to the highest echelons of the Company. ¶376.

¶¶375, 400.

Additionally, the SAC "contains extensive allegations regarding the public outcry regarding the Defect and the iOS update once its existence became public knowledge"—including Congressional proceedings, SEC and DOJ investigations, and international regulatory proceedings. ¶¶461-79. "The intensity of [this] outcry underscores the materiality of the alleged omission." *Carrier IQ*, 78 F. Supp. 3d at 1114.

Materiality is also documented through a survey of 2,063 iPhone users. ¶¶410-14.

- **92.44%** of surveyed iPhone users stated it would be **important to their buying decision** to know if the iPhone might experience UPOs (¶412);

- **88.51%** of surveyed iPhone users responded they would **not be willing to pay the same price** for the smartphone if they knew their iPhones would experience UPOs (¶413); and

- **66.12%** of surveyed iPhone users responded they **would consider buying a different brand of smartphone** entirely if they knew their iPhones would experience UPOs (¶413).

That two-thirds of iPhone users surveyed would consider buying a different brand of smartphone based on such a disclosure is significant as compared with Apple's 92% iPhone loyalty (or "retention") rate as of May 17, 2017. ¶414.

When asked which of several statements listed were important to their iPhone purchasing decision, (a) **72.86%** responded whether the smartphone "[o]ffer[ed] faster performance and deliver[ed] higher sustained performance with great battery life," (b) **76.25%** responded whether a smartphone with "[g]reat battery life even while performing new great features," and (c) **68.64%**

said a smartphone that had "[m]ore power and performance with the best battery life." ¶411.[21]

Consistent with these survey results, the SAC alleges as to each Plaintiff: If Plaintiff had been told of the Defect "and the deceptive manner in which Apple would damage the Device after sale, [Plaintiff] would not have purchased the Device, or would have paid substantially less for it." ¶¶32– 270. These allegations "plead facts sufficient to raise a plausible inference that Apple's disclosure" of the Defect, which caused UPOs, and the subsequent "solution" by Apple to use Updates to throttle Devices to conceal the Defect and degraded the Devices, "would be important to a reasonable consumer's decision about whether to purchase the Apple device at the stated price." Order at 33; *see Elias*, 2014 WL 493034, at *6 ("Plaintiff has adequately pleaded materiality by alleging that he would have acted differently by not purchasing the computer as ordered had he known about the insufficiency of the included PSU."); *see also Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012) (noting materiality "is 'typically' proven through consumer surveys"); *Weeks v. Google LLC*, No. 18-cv-00801 NC, 2018 WL 3933398, at *11 (N.D. Cal. Aug. 16, 2018) ("[I]t is manifest that knowledge of a defect that would render a phone unfit for its normal use is material."). Moreover, as this Court noted, "materiality is typically a question of fact that should not be decided at the motion to dismiss stage." Order at 33 (*citing In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)); *see also Rutledge*, 238 Cal. App. 4th at 1175 ("whether the information about the [defect] is material is a question for the trier of fact"); *Daniel*, 806 F.3d at 1225-26 ("Materiality is judged from the perspective of a reasonable consumer, and is generally a question of fact.")*.*

**b.    The Omitted Facts Concern the Devices' Central Functionality**

Apple does not, because it cannot, argue that the Defect and the iOS Updates did not affect the Device's central functionality. UPOs cause the loss of all functionality. And the UPOs were caused by the undisclosed Defect. The iOS Updates then significantly capped Device processing speeds, "effectively turn[ing] the device's performance into that of a device 1-2 generations older."

---

[21] Materiality of Apple's omissions is also demonstrated by the fact that Apple marketed the Devices by advertising the battery life and speed of the Devices (*e.g.*, ¶¶290-341). *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 1014 (N.D. Cal. 2018) ("Defendants promoted the Class Vehicles as such, they believed that such information was material to the consuming public."); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 957 (N.D. Cal. 2014) ("it is odd for Ford to quibble with materiality here when it promoted the MFT system as a desirable component of a vehicle in the first place").

¶442; *see also* ¶443 (processor speed was "less than half as fast as Apple advertises"). "No reasonable person could disagree that 'speed and performance' go to the heart of a smartphone's central function." *Norcia,* 2018 WL 4772302, at *2; *c.f. Ehret v. Uber Techs., Inc*., 68 F. Supp. 3d 1121, 1135 (N.D. Cal. 2014) ("someone who, for example . . . bought a computer advertised at a processor speed of 2ghz but which actually ran at 1.8ghz" would have been defrauded). The same is self-evident when it comes to electricity. Without power, Apple's Devices are nothing more than very expensive paperweights. This case is not about batteries with diminished capacity to hold a charge, but rather about prematurely aged batteries (based on internal resistance) that caused unprecedented numbers of Devices to unexpectedly shut down.

Apple instead argues it had no duty to disclose because the CAC alleged that the "iPhones worked as expected when new." MTD at 16 (citing CAC ¶397). But Apple ignores the rest of that sentence, alleging that "even after a few months or years, [iPhones] began to cease functioning, i.e., switching off at random intervals." CAC ¶397. Apple also ignores the SAC's allegations that the Defect involved a "latent issue" and "as early as a few days or months, [iPhones] began to cease functioning." ¶¶397, 427. There is no inconsistency. A latent defect that manifests after purchase is actionable. *Elias*, 2014 WL 493034, at *12 ("Plaintiff may proceed on . . . the CLRA, the UCL fraud prong, and common law, for fraudulent omissions regarding insufficiently powerful PSUs that led to malfunctions"); *see also Daniel*, 806 F.3d at 1222-23. The SAC also shows the defect is physical as it involved battery resistance levels, UPOs, and software affecting speed and performance. *See Beyer*, 333 F. Supp. 3d at 979 (software is physical under California law).

### c.    Apple Had Exclusive Knowledge of the Defect and Throttling of Devices by the iOS Updates

The SAC alleges sufficient facts under three of the four *Collins* factors—exclusive knowledge, active concealment, partial representations—even though Plaintiffs need only establish one to plead an actionable omission. Rule 8 applies to Apple's knowledge of a defect. *See, e.g*., Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *Kowalsky v. Mercedes-Benz USA, LLC*, No. CV 12-00936 DMG (CWx), 2013 WL 2285237, at *7 (C.D. Cal. May 22, 2013) (Plaintiffs only need to raise "a plausible inference that

1  Defendant knew of the [] Defect at the time of the sale.").

2    An actionable omission arises "when the defendant had exclusive knowledge of material facts

3  not known to plaintiff." *Elias*, 2014 WL 493034, at *6; Order at 31 (omissions actionable under any

4  of the four *Collins* factors). "A defendant has exclusive knowledge giving rise to a duty to disclose

5  when 'according to the complaint, [defendant] knew of this defect while plaintiffs did not, and, given

6  the nature of the defect, it was difficult to discover.'" *Elias*, 2014 WL 493034, at *9; *Marsikian v.*

7  *Mercedes Benz USA, LLC*, No. CV 08-04876 AHM (JTLx), 2009 WL 8379784, at *6 (C.D. Cal.

8  May 4, 2009) (finding allegations that defendant "was in a superior position to know" of an alleged

9  defect "plainly sufficient"); *Johnson v. Harley-Davidson Motor Co. Grp., LLC*, 285 F.R.D. 573, 583

10  (E.D. Cal. 2012) (noting that courts look to "whether the defendant had 'superior' knowledge of the

11  defect" and do not rigidly require literal exclusivity).

12    The Court previously found that Plaintiffs did not adequately plead that Apple "ha[d]

13  exclusive knowledge of material facts not known or reasonably accessible to the plaintiff" or

14  "actively conceal[ed] a material fact from the plaintiff." Order at 35 (quoting *Collins*, 134 Cal. Rptr.

15  3d at 593). Specifically, the Court found that Plaintiffs

16    [did] not plead that Apple knew that the devices would cease functioning within 'a
      few months.' Rather, Plaintiffs generally assert[ed] that Apple was on notice that
17    the software would eventually outpace the hardware (as the software improved and
      the battery degraded). Framed in this way, Plaintiffs' allegations are insufficient
18    because these facts were not in Apple's exclusive knowledge but were readily
      accessible to the public, including Plaintiffs.
19

20  Order at 35. The SAC cures this deficiency. The detailed allegations leave no doubt that Apple had

21  exclusive knowledge of the Defect and its decision to cap tens of millions of its Devices to mitigate

22  the rate of UPOs caused by the Defect. ¶¶369-405. The concealed information known to Apple

23  **contradicted** any reasonable understanding about the natural "degradation of batteries" and Apple's

24  specific representations that its batteries are "designed to retain up to 80% of its original capacity at

25  500 complete charge cycles." Order at 34-35. In fact, Apple knew, but failed to disclose, that the

26  batteries in the Devices were ▓▓▓▓▓▓▓▓▓▓

27  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  ¶¶10-11, 373, 387.

28    Indeed, the sheer breadth of the UPO issue sent Apple's highest-level executives and software

1  engineers ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

2  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ¶371. Apple

3  even created ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ¶376. Apple, however, knew it was too late to change the

4  design of its Devices, and hence it could not cure the underlying Defect. ¶4. But in sharp contrast to

5  the internal turmoil, Apple told the public all was well. ¶¶373-74.

Just a sample of evidence of Apple's knowledge includes:

- ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ¶394.

- ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ¶369.

- In 2016, Apple documented ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ¶383.

- In December 2016, an Apple Director e-mailed that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ¶384.

- In December 2016, a Senior Software Engineering Manager wrote: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ¶385.

- ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ¶¶387-88.

- As of January 10, 2017, internal documents ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ¶373.

- Correspondence between Apple's Sales Operation Manager and a Quality Engineering Program Manager (Hardware) refers to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The Quality Engineering Program Manager responded that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ¶397.

- Just weeks after the January 2017 release of iOS 10.2.1, Apple executives ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ¶377.

- By March 2017, Apple's engineers were ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ¶390.

Apple did not publicly admit any problem with its Devices for more than a year-and-a-half after its internal investigation heated up and, despite this knowledge, continued to sell millions of Defective Devices. And Apple never came clean on its own; it partially did so only after a third-party

1    discovered that Apple released iOS 10.2.1 with the secret purpose of capping the speed of tens of

2    millions of its Devices to mitigate the rate of UPOs triggered by the Defect. ¶374. Apple referred to

3    this decision internally as ████████████████████████████████████████████

4    ████████████  *Id.* (emphasis in original). When the public started to learn that Apple was slowing

5    down their Devices, the engineers' initial reaction to the news breaking was, ████████████████

6    ████████████████████████████████████████  Cotchett Decl., Ex. 1. One engineer

7    commented, ████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████████

9    *Id.*, Ex. 2.

10            These allegations (¶¶369-409) raise far more than the required plausible inference that Apple

11   knew of the Defect at the time of sale, of the secret throttling of the Devices at the time the iOS

12   Updates were released, and that this information was not available to consumers. *See Mui Ho v.*

13   *Toyota Corp.*, 931 F. Supp. 2d 987, 998 (N.D. Cal. 2013) (exclusive knowledge pled where plaintiff

14   alleged defendant internally knew of defect); *Beyer*, 333 F. Supp. 3d at 981 (exclusive knowledge

15   pled where defendant designed the software, knew its functions, and exposed operating systems to

16   security vulnerabilities); *Thornton v. Micro-Star Int'l Co., Ltd.*, No. 2:17-cv-03231-CAS-AFMx,

17   2018 WL 5291925, at *6 (C.D. Cal. 2018) (noting that whether defendants had "exclusive knowledge

18   of facts to be disclosed is a factual question that is not a basis to dismiss the complaint.").

19            **d.      Apple Actively Concealed the Defect and the Throttling of**

20                    **Devices by the iOS Updates**

21            The SAC sufficiently alleges active concealment of a material fact, which is an independent

22   basis for Plaintiffs' omission claims under *Collins*. *See* ¶¶428-34; 596-98; Order at 31. "Apple did

23   not publicly admit any problem with its Devices for more than a year-and-a-half (until late December

24   2017) and did so only after a third-party discovered Apple released iOS 10.2.1 with the secret purpose

25   of throttling tens of millions of its Devices to mitigate the rate of UPOs, caused by the Defect." ¶374.

26   Apple "concealed the Defect from the public by secretly throttling the Devices' performance." ¶14.

27   "Apple concealed the problem; Apple concealed the solution; and Apple concealed that its solution

28   would slow its customers' products." ¶434. Apple did so "for the simple reason most frauds are

- 18 -                                      Case No. 5:18-md-02827-EJD

committed: money." ¶18. "Although technically complex in part, the scheme was logical and simple: Devices were designed defectively, and Apple released Updates to conceal the Defect, all the while exacerbating the Defect's effects—principally decreased performance—so that Device users had no choice but to purchase new batteries or upgrade their Devices, resulting in additional payments to Apple and a sustained (albeit forced) customer base." *Id*. In other words, "Apple concealed material information related to the Device Defect and that iOS Updates would throttle Devices" "to drive up sales and maintain its market power, as consumers would not purchase Devices, or would pay substantially less for them, had consumers known the truth." ¶¶638-39; *see also* ¶¶649-53.

These allegations raise the plausible inference that Apple actively concealed the Defect and the throttling of Devices, and that Apple's motivation was to defraud consumers and increase sales. *See Elias*, 2014 WL 493034, at *11 ("Taken as true and viewed together, Plaintiff's allegations are sufficient to raise the plausible inference that HP actively concealed the fact that the [power supply units] in computers it sold to Plaintiff and class members were insufficiently powerful, and that HP's motivation in concealing this fact was to defraud purchasers and increase HP's sales."); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1134 (N.D. Cal. 2010).[22]

Because Plaintiff's allegations are sufficient to raise the plausible inference that Apple actively concealed the Defect and the throttling of Devices by the iOS Updates, Plaintiffs adequately plead claims premised on fraudulent concealment under the CLRA, FAL, and UCL fraud prong on the basis of an active concealment, as well as for common law fraud.

### e.   The Representations were Misleading Because Other Material Facts Were Not Disclosed

The SAC also sufficiently alleges actionable omissions based on the fourth *Collins* factor. Order at 31. Throughout the relevant period, Apple represented that its batteries are designed to remain functional at 500 complete charge cycles. ¶381.[23] The SAC demonstrates that this

---

[22] *See also Woodard v. Labrada*, No. EDCV 16-00189 JGB (SPx), 2017 WL 3309765, at *8 (C.D. Cal. July 31, 2017) (a fraud by concealment claim "can succeed without the same level of specificity required by a normal fraud claim").

[23] Apple notes that the SAC only confirms the content of the "Battery Service and Recycling" webpage June 30, 2018. MTD at 8 n.2. Plaintiffs can confirm that Apple's statement "Your battery is designed to retain up to 80% of its original capacity at 500 complete charge cycles" is unchanged since at least December 2, 2014. *See* accompanying Request for Judicial Notice.

1   representation was knowingly false because it failed to disclose to consumers that ▓▓▓▓▓ Devices

2   had prematurely aged batteries and could not perform as represented under normal conditions, which

3   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

4   ¶401; *see also* ¶¶5, 10, 373, 381-82; 388-90. Apple splits hairs, arguing the statement only addresses

5   the battery's "capacity," and not "the rate" at which power is delivered. MTD at 13. But this

6   statement omits material information known only to Apple: that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

7   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Moreover, Apple's executives recognized that ▓▓▓▓

8   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

9   ▓▓▓▓▓▓▓ ¶386. The pertinent question is thus whether members of the public are likely to be

10  deceived, which is a question of fact not appropriate on this motion to dismiss.

11      Apple's marketing repeatedly emphasized battery power designed to keep pace with ever-

12  improving processor chips and features loaded onto the Devices. ¶¶287-432. However, internally

13  Apple admitted ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

14  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ¶391. Apple failed to disclose the

15  Defect to the public and that it mitigated UPOs caused by the prematurely aged batteries by throttling

16  Device performance. ¶¶402-05. Indeed, Apple represented that its Devices:

- Offered faster performance and . . . delivering higher sustained performance with great battery life (¶303);

- Great battery life. Even while powering great new features (¶307);

- Delivered faster performance and great battery life (¶309);

- 90 percent faster . . . all with gains in energy efficiency for great battery life (¶309);

- More power and performance with best battery life ever (¶316).[24]

    The SAC shows that "without adequate testing that was ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓ Apple lacked a basis to make these claims to consumers in its marketing materials. ¶¶406-

---

[24] The Court found Apple's statements about "improving features and product superiority as insufficient to ground Plaintiffs' affirmative representation claim." Order at 27. California's consumer protection statutes prohibit not only advertising "which is false, but also advertising which [ ] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002). Plaintiffs posit that these statements are also actionable as omissions; i.e., "partial representations that are misleading because some other material fact has not been disclosed." Order at 31.

09. Apple's response that "[l]ifespan tests, by nature, simplify real-world conditions" (MTD at 11) underscores the factual nature of this dispute. Moreover, as discussed *supra*, these representations were knowingly false and misleading at the time they were made because they failed to disclose the known Defect. ¶¶380-82. Specifically, when Apple made these representations, it knew the information set forth in ¶¶369-409 concerning the Defect but failed to disclose it, which as set forth in ¶¶410-14 would have been material to reasonable consumers at the time of purchase including, *inter alia*, that battery resistance was growing prematurely and causing UPOs. ¶382.

The SAC further alleges that Apple pushed out iOS Updates without informing customers the Updates contained secret code designed to throttle the Devices' processors and hide the Defects' symptoms. ¶¶428-32. As this Court previously found:

> Plaintiffs allege that the iOS updates were designed to slow their iPhones' processing speed. []. And they allege that Apple did not inform consumers that the updates would do so. Instead, Apple's accompanying message told users that the updates "include[d] bug fixes and improvements," [], and "improve[d] power management during peak workloads to avoid unexpected shutdowns on iPhone," []. In light of this limited information from Apple, Plaintiffs plausibly plead that they consented only "to the installation of iOS Updates that would improve performance, not diminish performance." []

Order at 24; *see also* ¶¶429-30. Neither the software update notification nor the software update release notes made any mention of this severe throttling effect. Apple did so "for the simple reason most frauds are committed: money." ¶18. "Apple misrepresented the Devices' speed, power, and battery life, and misrepresented the content of pertinent iOS Updates, telling its customers that the iOS Updates would *improve* the overall functionality of the Devices." ¶648. Apple does not address its statement that the iOS Updates "include[d] bug fixes and improvements" when Apple knew the material fact that the iOS Updates would throttle and degrade the performance of the Devices. These statements, delivered by Apple to every Device that received the Update (¶429), is an actionable material misrepresentation of fact. ¶¶432-34.

### 2.    The SAC Adequately Alleges Material Omissions

Typically, "a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *35 (N.D.

Cal. May 27, 2016). Thus "a fraud by omission or fraud by concealment claim can succeed without the same level of specificity required by a normal fraud claim." *Id.*

Ignoring the SAC's new allegations, Apple argues Plaintiffs do not plead reliance or materiality. MTD at 19-20. Where, as here, Plaintiffs allege a fraudulent omission, a plaintiff may show reliance and causation "by simply proving that, had the omitted information been disclosed, one would have been aware of it and behaved differently." *Daniel*, 806 F.3d at 1225. Plaintiffs meet this standard. As discussed in Section VI(A)(1)(a), the SAC adequately pleads materiality. Thus, Plaintiffs' change in behavior "can be presumed, or at least inferred." *Id.* The SAC also alleges that Plaintiffs would learned of the required disclosure. "Given the importance of the [the alleged] defect, had [Apple] chosen to disclose it to prospective buyers, presumably Plaintiff, as a member of the buying public, would have become aware of the defect in the course of making his purchasing decision." *Carrier IQ*, 78 F. Supp. 3d at 1114; *Anthem*, 2016 WL 3029783, at *36.[25]

Similarly, with the iOS Updates, which Apple delivers directly to the Devices with a description of the changes, the notifications concealed that the Updates would throttle and degrade the performance of their Devices. ¶¶429, 434. Plaintiffs also accepted Apple's "terms of use, which were silent on the performance-throttling features that Apple installed in their Devices." ¶¶639, 650. Accordingly, had Apple "been transparent," Plaintiffs would have received the message. ¶¶428-34.[26]

## B.    The SAC Sufficiently Pleads Damages and Standing

Apple argues that the SAC fails "to include any individualized allegations about any of the named Plaintiffs" sufficient to plead damages or standing. MTD at 6. This is demonstrably untrue.

---

[25] *See also Doyle v. Chrysler Grp., LLC*, No. SACV 13–00620 JVS (ANx), 2014 WL 3361770, at *6 (C.D. Cal. July 3, 2014) ("[B]ecause the alleged omission here is material, it is presumed Doyle would have been aware of any disclosure unless Chrysler rebuts the presumption."); *Chrysler-Dodge-Jeep EcoDiesel Mktg.*, 295 F. Supp. 3d at 1014-15 ("Had Defendants made the disclosure of a defect device, it is plausible that the media would pick up that story, and it would have made national news, particularly in the wake of the Volkswagen scandal regarding defeat devices").

[26] For deceptive advertising, a plaintiff "is not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements, where . . . those misrepresentations and false statements were part of an extensive and long-term advertising campaign." *Tobacco II*, 46 Cal. 4th at 328; *see also Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 979 (N.D. Cal. 2015) (finding Apple's iPhone advertising campaign to be extensive). While Plaintiffs believe they have sufficiently alleged standing and damage, should the Court find more individualized allegations necessary, Plaintiffs request leave to amend. *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1072 (N.D. Cal. 2018); *In re: Facebook Priv. Litig.*, No. C-10-02389-RMW, 2015 WL 632329, at *2 (N.D. Cal. Feb. 13, 2015).

For each plaintiff, the SAC alleges with specificity the device, date of purchase, state (or country of residence) and the operating system version(s) used. For example, Joseph Taylor, who resides in Alabama, purchased an iPhone 6 on April 8, 2015 and downloaded and installed iOS 10.2.1 in January or February 2017. ¶31. Some plaintiffs alleged when they downloaded iOS 11 (¶173), and others alleged a general practice to update the iOS when prompted (¶43). Many plaintiffs also alleged the location of purchase (¶107), and some even alleged the precise store (¶249). This Court held that Plaintiffs' allegations that "the installed iOS updates slowed processor speeds" were sufficient to plead damages in the CAC for all Plaintiffs. Order at 19.

Apple instead is really complaining about the absence of two particular allegations, neither of which are relevant to Plaintiffs' theories of damages—first, whether any individual personally experienced a UPO, and second, whether any individual personally experienced a manifestation of the throttling software. Apple premises both objections on a fundamental mischaracterization of plaintiffs' theory; Apple manufactures a straw-man at odds with the SAC, and then attacks the SAC for not alleging facts to support Apple's preferred theory.[27] Apple's gambit should be rejected.

### 1.    General Objection

Apple does not specify whether it seeks relief under Rule 12(b)(6) or 12(b)(1). A motion to dismiss claims "for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Ciba-Geigy Corp.*, 317 F.3d at 1107. Apple could have raised this argument in the First MTD but failed to do so, and it is now waived. *See* Objections. With respect to the CFAA claim specifically, Apple's argument is addressed below in Section VI(C) and in the Objections. To the extent Apple's invocation of "Article III Standing" properly implicates a jurisdictional attack under Rule 12(b)(1) rather than an attack on pleading sufficiency, that argument is addressed below for completeness.

---

[27] Although Apple argues generally that the SAC insufficiently alleges damages for <u>all</u> counts, Apple has not explained how the argument applies to Counts 10 and 11 (breach of contract and breach of the implied covenant of good faith and fair dealing) because a plaintiff may recover nominal damages in California. "Actual damages are not required to establish standing for contractual claims." *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 843 (N.D. Cal. 2017). Likewise, Apple has not explained how its argument applies to Count 16 (unjust enrichment) because damages may take the form of a right to equitable restitution even where the plaintiff suffered no loss. RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1 (2011) (damages available "without the need to show that the claimant has suffered a loss.").

1                **2.**       **Allegations of Damages are Governed by Rule 8(a), not 9(b)**

2       Plaintiffs' allegations of damages are pled with specificity and satisfy either Rule 8(a) or 9(b).

3 Plaintiffs submit that Rule 8(a) is the correct standard. The Ninth Circuit has never ruled definitively

4 on the issue. *Interserve, Inc. v. Fusion Garage PTE Ltd.*, No. 09-cv-5812-RS, 2011 WL 500497, at

5 *3 (N.D. Cal. Feb. 9, 2011) ("The Ninth Circuit has not addressed this issue directly . . . Rule 9(b)

6 may not apply to the reliance and damages elements of a fraud claim."). But most courts hold that

7 damages may be pled generally under Rule 8(a) even for those claims that sound in fraud. *Smolinski*

8 *v. Oppenheimer*, No. 11 C 7005, 2012 WL 2885175, at *3 (N.D. Ill. July 11, 2012) (damages may

9 be pled generally under Rule 8); *Menjivar v. Trophy Prop. IV DE, LLC*, No. 06-cv-03086-SI, 2006

10 WL 2884396, *13 (N.D. Cal. Oct. 10, 2006) ("While Rule 9(b) requires pleading the circumstances

11 of fraud with particularity, defendants cite no case law, and the Court finds none, requiring that fraud

12 damages be pled with more specificity than required under normal notice pleading"); *but cf. Wayne*

13 *Merritt Motor Co. v. New Hampshire Ins. Co.*, No. 11-cv-1762-LHK, 2011 WL 5025142, *12 (N.D.

14 Cal. Oct. 21, 2011) (applying Rule 9(b)). Courts applying Rule 8(a) have the better view.

15                **3.**       **Apple Mischaracterizes Plaintiffs' Theories of Damages**

16       Apple designed a Device that under normal conditions caused the battery to age much faster

17 than expected. ¶¶384-85. When Apple determined the cause, it tricked customers into downloading

18 software that throttled performance. As one Apple engineer confessed in a private chat message when

19 the truth was revealed, ████████████████████████████████████████████

20 ██████████████████ Cotchett Decl., Ex. 2. But no matter whether one looks at the Device

21 claims or the iOS claims, all similarly situated plaintiffs suffered damages. Apple's call for additional

22 "individualized" allegations is a red herring.

23                    **a.**       **The Defect Claims**

24       For claims related to the Defect, all Plaintiffs suffered damage the moment they purchased a

25 Device. Damage includes benefit of the bargain damages (¶523), overpayment (¶551), and full price

26 of the Devices (¶615). Such damage was suffered uniformly by the class and it should come as no

27 surprise that damage was alleged using uniform language. Nowhere does any Plaintiff in this MDL

28 base claims on *additional* damages caused by a later UPO. *See Dickey v. Advanced Micro Devices,*

1   *Inc.*, No. 15-CV-4922-HSG, 2019 WL 251488, at *6 (N.D. Cal. Jan. 17, 2019) (finding price

2   premium damage calculation common to all plaintiffs asserting statutory and fraud claims and

3   certifying class); *see also Hasemann v. Gerber Prods. Co.*, No. 15-cv-2995-MKB, 2016 WL

4   5477595, at *20-21 (E.D.N.Y. Sept. 28, 2016) (damages sufficiently pled in a fraud case where

5   plaintiffs generally alleged price premium theory).

6                **b.**     **The iOS Claims**

7       As this Court previously held, damages have already been sufficiently alleged because all

8   Plaintiffs allege that they downloaded and installed the relevant iOS software, and Apple damaged

9   all Devices in the same way. Order at 19. These original allegations are further strengthened in the

10   SAC. For example, ¶404 best explains *with particularity* the damage imposed on all Plaintiffs. The

11   chart therein was produced by Apple in discovery.



12

13

14

15

16

17

18       Apple now argues that Plaintiffs must allege additional individualized experiences, beyond

19   the uniform injury sustained by all Plaintiffs. This mischaracterizes the theory of the case and

20   mischaracterizes the data. Apple's error is most clear with the CFAA claim, which defines damage

21   as "any impairment to the integrity or availability of data, a program, a system, or information."

22   18 U.S.C. § 1030(e)(8). Apple's software Updates "impaired" the "availability" of normal CPU

23   performance, which is damage regardless of any particular customer's observations. The previously

24   available CPU performance was artificially reduced for everyone, uniformly—no Device was

25   exempt from throttling.

26               **4.**     **The Plaintiffs Adequately Allege Standing**

27       In support of its standing argument, Apple primarily relies on this Court's recent decision in

28   [28]

1   *In re Apple Processor Litigation*, No. 18-cv-0147-EJD, 2019 WL 79035 (N.D. Cal. Jan. 2, 2019).

2   But the facts could not be more different. With respect to the alleged performance reductions in *Apple*

3   *Processor*, certain processors in mobile devices contained an industry-wide computer security

4   vulnerability. Plaintiffs in that case argued that Apple's efforts to create a security patch, which

5   caused unintended reductions in performance. However, this Court found that there was no support

6   for the allegations of decreased performance. *Id.* at *4. Here, in contrast, in order to conceal the

7   Defect, Apple intentionally throttled <u>all</u> Devices, an allegation previously upheld by this Court. Order

8   at 19-20. With respect to injury related to the original defects, in *Apple Processor* plaintiffs pled no

9   facts about the market for the devices or to support an inference of a price premium. *Id.* at *4-5. In

10  contrast here, Plaintiffs plead substantial facts: Apple senior management acknowledged internally

11  that ████████████████████████████████████████████████ (¶386); a senior hardware

12  engineering manager admitted that the Defect was ████████████████████████████████

13  ████████████ (¶399); and Plaintiffs provided market data demonstrating that the vast majority of

14  iPhone users would not be willing to pay the same price for the phone had they known about the

15  Defect (88.5%) and a clear majority would even consider buying a different brand of phone (66%)

16  (¶413). And of course, Apple's battery replacement program offering $50 discounts to replace the

17  bad batteries (*see* ¶23; Ex. 4 at 14) is further factual support for Plaintiffs' price premium allegations.

18  Comparable facts were not pled in *Apple Processor* and thus it has no application here.

19      **C.**    **The SAC Sufficiently Pleads Computer Trespass Claims (Counts 1, 5 and 6)**

20         Apple "respectfully disagrees with" the Court's decision to uphold the CFAA, CDAFA and

21  Trespass claims, but "does not seek to reargue here issues the Court previously decided." MTD at 6.

22  And yet, Apple still seeks dismissal "for additional reasons the Court did not previously consider."

23  MTD at 6; 21-24. Apple identifies two issues supposedly "not considered": damages and consent.

24  But the Court did "consider" these arguments—and <u>rejected</u> them. As to damages, the Court held

25  that "the relevant question is whether Plaintiffs have adequately pled that Apple caused damage to

26  their iPhones" and then "concludes that Plaintiffs' allegations are sufficient." Order at 19. As to

27  consent, the Court explicitly found that Plaintiffs "never gave consent for Apple to cause damage to

28  their iPhones." *Id.* at 20. Apple's arguments were considered and rejected. As noted in Section VI(B)

1   above, the SAC's allegations of damages are even stronger, and Plaintiffs object to Apple's attempt

2   to re-litigate this issue.

3       **D.   The SAC Alleges Facts Sufficient to Include Defect-Related Claims Related to
            the iPhone 5, 5S and 5C Devices (Counts 2-4, 7-18).**

5       Apple now concedes that the Defect claims related to the iPhone 5, 5S, and 5C models rise

6   or fall with the other models. MTD at 21. This is appropriate because the SAC adds substantial new

7   facts drawn from Apple's own documents. For example,

8                                               ¶394. Likewise, in December 2016,

9

10

11                              ¶396.

12       Even after iOS 10.2.1 was released in January 2017, Apple executives were still

13                                  For example, a May 2017 email between Apple executives

14   said that iPhone 5's

15                                               ¶397. One Quality Engineering Program

16   Manager proposed                                                          *Id.*

17       **E.   The International Plaintiffs May Assert Their Federal, California and U.K.
            Claims in this Court (All Counts)**

18

19           **1.   The U.K. Claims (Counts 17-18) Are Properly in this Court**

20       In the First MTD, Apple moved to dismiss claims of the Canadian, Colombian and U.K.

21   Plaintiffs on international comity grounds. *See* First MTD at 10. Apple also moved to dismiss the

22   U.K. Plaintiff specifically on *forum non conveniens* grounds. *Id.* at 16-18. This Court denied Apple's

23   request because Apple would not consent to the jurisdiction of any foreign court. Order at 17. Now,

24   Apple consents to be sued in the U.K. (but not Colombia or Canada) and renews its motion with

25   respect to the U.K. Plaintiff only. MTD at 31-33. For the reasons stated in the original briefing,

26   Apple's motion should be denied. *See* ECF No. 194 at 30-32. Notably, Apple still does not identify

27   any employees, witnesses, documents or other evidence located in the U.K. that would make the

28   U.K. more "convenient" and counter a plaintiff's right to sue in a defendant's home court. Apple

1   does not identify any related litigation in the U.K. and also does not address the problem that some

2   technical evidence in this case may be designated as "export controlled" and cannot leave the U.S.

3   *See* Protective Order at 14.6 (ECF No. 224).[29]

4              **2.        The CDAFA (Count 5) Protects Out-of-State Residents**

5          Apple moves to dismiss Count 5 as to the non-U.S. Plaintiffs on the grounds that Penal Code

6   § 502 does not apply extraterritorially. Apple cites to no cases so holding, nor does Apple

7   acknowledge those *rejecting* Apple's position. The leading case is *Valentine v. NebuAd, Inc.*, 804 F.

8   Supp. 2d 1022 (N.D. Cal. 2011), where Judge Henderson concluded the statute protects out-of-state

9   victims even where the injury was felt out-of-state if the bad acts occurred in California. *Id.* at 1028.

10  Other cases cite to this reasoning with approval. *See, e.g.*, *Carrese v. Yes Online Inc.*, No. 16-CV-

11  5301-SJO, 2016 WL 6069198, at *4 (C.D. Cal. Oct. 13, 2016). Moreover, Plaintiffs strongly object

12  because Apple already raised this argument in the First MTD, *see* ECF No. 176 at 14, and this Court

13  rejected it. *See* Order at 13 (rejecting Apple's extraterritoriality arguments except with "one caveat,"

14  the FAL); *see generally*, Objections.

15              **3.        Non-U.S. Plaintiffs May Assert California and Federal Claims Against
16                          California-Based Apple, Inc.**

17         Finally, Apple moves to dismiss all non-U.S. Plaintiffs from this case for the reasons already

18  rejected by this Court, *see* Order at 7-17, and restated in Apple's motion for reconsideration. There

19  is one international issue for which Apple does <u>not</u> seek reconsideration and that is the extraterritorial

20  application of the CFAA. *See id.* at 13-15. Apple also appropriately does not request reconsideration

21  in the MTD either. But Apple seeks dismissal anyway, now arguing that because the non-U.S.

22  Plaintiffs agreed to the application of their forum law in the U.S. Hardware Warranty ("Warranty")—

23  and because the CFAA is not foreign law, it should not apply to Apple customers.

24

_____

25  [29] Apple also moves to dismiss the U.K. claims due to the recent passing of Mr. Sharma. MTD at 33,
    n.7. Apple's motion is premature and inappropriate. Unless a claim is extinguished by operation of
26  law (which is not case here), Rule 25(a) gives Mr. Sharma's estate at least 90 days from notice to
    move for substitution. "Notice" means notice to the Court (provided on December 13, 2018). Thus,
27  Apple's Rule 25(a) motion to dismiss is premature before March 13, 2019. *See Barlow v. Grund*, 39
    F.3d 213 (9th Cir. 1994). More importantly, the parties have already conferred on this point and
28  Plaintiffs anticipate addressing the issue through a stipulation.

1    Apple's new argument suffers from at least two deficiencies. First, as detailed in the

2    reconsideration briefing and above, no Plaintiff ever agreed to be bound by the Warranty, let alone

3    Plaintiffs outside of the U.S. Second, Apple's argument is internally inconsistent. The CFAA claim

4    does not arise from the Warranty—it arises from an unauthorized computer intrusion via Apple's

5    iOS update. The Warranty, by Apple's admission, only governs claims arising under the Warranty,

6    and the Warranty excludes software. *See also Ryanair DAC v. Expedia Inc.*, No. 17-cv-1789-RSL,

7    2018 WL 3727599 (W.D. Wash. Aug. 6, 2018) (applying CFAA extraterritorially despite contrary

8    choice-of-law clause in an online TOU because the CFAA claims did not arise therefrom).

9        **F.**    **The SAC Sufficiently Pleads Contract Claims and Related Claims at Equity (Counts 10-12, 16)**

10

11           **1.**    **Plaintiffs Sufficiently Pled Breach of Contract**

12    Apple challenges two elements[30] of the common law contract claim: the existence of a

13   contract and whether there was a breach. MTD at 24-31. Apple further argues that the Warranty and

14   the Software License Agreement ("SLA") preclude any common law contract claims. Apple also

15   argues that it is not in privity with Plaintiffs and that Plaintiffs failed to provide pre-suit notice. Each

16   is addressed in turn.

17           **a.**    **Plaintiffs sufficiently pled the terms Apple breached.**

18    The SAC describes a normal sale-and-purchase arrangement.[31] Plaintiffs purchased Devices

19   in exchange for consideration with terms implied from the context of the transaction; a written

20   contract is not required at common law. *Jun-En Enter. v. Lin*, No. CV 12-2734 PSG (SSx), 2013 WL

21   12126098, at *4 (C.D. Cal. Nov. 13, 2013) ("Plaintiff is not required to plead the specific provisions

22

---

[30] The elements for breach of contract are "(1) the existence of the contract, (2) plaintiff's
performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to
the plaintiff." *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Contracts may be
written, oral, or implied. *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 930 (N.D. Cal. 2012).
However, the elements are the same. *T & M Solar and Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83
F. Supp. 3d 855, 872 (N.D. Cal. 2015).

[31] *See e.g.*, *In re Arizona Theranos, Inc., Litig.*, 256 F. Supp. 3d 1009, 1034 (D. Ariz. 2017)
("Plaintiffs' amended complaint describes a usual sale-and-purchase . . . arrangement. Plaintiffs went
to Walgreens, asked for blood tests that defendants had promised would be reliable, and were given
blood tests for a fee. Plaintiffs allege that the blood tests they received were not reliable, which is a
plausible breach of the sale-and-purchase agreement."); *accord, In re Arizona Theranos, Inc., Litig.*,
308 F. Supp. 3d 1026, 1056-57 (D. Ariz. 2018) (upholding breach of contract claim).

1  or exact language of the alleged contract between the parties. As long as Plaintiff pleads the contract

2  according to its legal effect"). Here, the terms of the contract include the sale of a Device with

3  features extensively advertised by Apple, including (1) that they would function normally for at least

4  500 complete charge cycles (¶5); (2) have "blazing fast performance" (¶¶290, 296, 300, 303); (3)

5  "great battery life" (¶¶296, 300, 301 n.16, 303, 307, 309); and (4) "power efficiency" (¶¶290, 300,

6  303). Apple's promises from its wide-spread advertising campaigns are terms of the contracts

7  (express or implied). *See Gherna v. Ford Motor Co.*, 246 Cal. App. 2d 639, 655 (1966) ("when a

8  manufacturer engages in advertising in order to bring his goods and their quality to the attention of

9  the public and thus to create a consumer demand, the representations made constitute an express

10  warranty running directly to a buyer who purchases in reliance thereon"); *Opperman*, 84 F. Supp. 3d

11  at 979 (finding Apple's iPhone advertising campaign to be extensive). As with any such contract, it

12  is implied that the product would be free from defect, and Plaintiffs sufficiently allege that the

13  Devices received were defective at the point of sale.

14            **b.**          **Neither the U.S. Hardware Warranty Nor the SLA Preclude**

15                                       **Common Law Purchase Contract Claims**

16        Apple argues that an implied agreement cannot form the basis of a breach of contract claim

17  if Plaintiffs' claims are governed by *written* agreements—ostensibly the Warranty available on

18  Apple's website, and the SLA. MTD at 25-27.

19        But the Warranty is not a contract, as Plaintiffs argued previously and incorporate here (*see*

20  ECF Nos. 192, 266). Apple concedes that no Plaintiff ever <u>expressly</u> agreed to be bound by any terms

21  in the Warranty and Apple steadfastly refuses to introduce any evidence of "constructive notice"

22  sufficient to bind the Plaintiffs, as required by recent Ninth Circuit authority governing when online

23  terms are binding on customers. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014).[32]

24  As no Plaintiff ever agreed to the Warranty, it is not contractually binding on any Plaintiff, and cannot

25  preclude these claims. Just last year, the Ninth Circuit confirmed that companies cannot bind

26  customers to contract terms simply by putting them into a warranty. *See Norcia v. Samsung*

---

27 [32] For the reasons previously argued, the Warranty is not properly before the Court. *See* ECF Nos.
192, 266; *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018). Plaintiffs incorporate

28 these arguments by reference.

*Telecoms. Am., LLC*, 845 F.3d 1279, 1289-90 (9th Cir. 2017). In any event, the Warranty excludes batteries and software and Plaintiffs simply do not assert any express warranty claims.

The SLA, in contrast, is a contract. Apple argues in the MTD that the SLA "is an express contract that governs ***the same subject matter***" of Plaintiffs' claims and precludes related implied contracts. Leaving aside the broader point, Apple just a few weeks ago argued the exact opposite in its pending Motion for Reconsideration. There, Apple urges the Court to find that the SLA is ***not related*** to the same subject matter of Plaintiffs' claims. Apple cannot be allowed to push opposite irreconcilable argument in the same case related to the same SLA within the span of weeks.[33]

Even if Apple's new position is the correct one and the SLA is a contract, and it is related broadly to the subject matter of Plaintiffs' claims, Apple is still wrong regarding preclusion of the common law contract claim. Judge Orrick recently explained this point in *Boyd v. Avanquest N.A. Inc.*, No. 12-cv-04391-WHO, 2014 WL 7183988, at *2-4 (N.D. Cal. Dec. 16, 2014). The defendant there argued that its relationship with the plaintiff was governed by an end user license agreement (or "EULA") which subsumed the plaintiff's breach of contract claim. Judge Orrick disagreed and, adopting Judge Illston's reasoning, held:

> [plaintiff] alleges a ***breach of his sales contract (distinct from the EULA)*** under which defendant sold and plaintiff purchased software that would detect and remove legitimate computer errors and perform the tasks that were advertised on the product's packaging. [Plaintiff] pleads that the software did not and could not perform as defendant represented (breach), because the software failed to perform any credible evaluation of his or other computers. The Court finds that [Plaintiff] has adequately alleged his breach of sales contract claim.

*Id.* at *4. Plaintiffs plead that the Devices did not and could not perform as Apple represented because of the Defect. The SLA is generally related but does not revoke earlier contract rights.

### c.   Pre-suit notice has been provided and is otherwise not required

Apple next argues that Plaintiffs were required to provide pre-suit notice. First, Plaintiffs did serve notice.[34] To the extent notice was insufficient (it is not), "[w]hen claims are against a defendant

---

[33] *See, e.g., Gil v. Wells Fargo Bank, N.A.*, No. 5:15-cv-01793-EJD, 2016 WL 3742372, at *2 (N.D. Cal. July 13, 2016) ("Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position . . . to protect against a litigant playing fast and loose with the courts."). Plaintiffs object to Apple's diametrically opposed positions. *See* Objections.

[34] *See* ¶¶524, 616, 700, 713, 739, 750, 757, 773, 787, 800, 818, 835, 846, 872, 886, 900, 911, 922,

in its capacity as a manufacturer, not as a seller, plaintiff is not required to give notice." *Main v. Gateway Genomics, LLC*, No. 15cv2945 AJB (WVG), 2016 WL 7626581, at *16 (S.D. Cal. Aug. 1, 2016).[35] Apple is the manufacturer; notice is not required. *Madrigal v. Hint, Inc.*, No. CV 17-02095-VAP (JCx), 2017 WL 6940534, at *4 (C.D. Cal. Dec. 14, 2017).[36]

Independently, Apple *knew* of the breach—it *admitted to* the throttling and then *apologized* for it—alleviating any need for notice.[37] The breach was also the subject of numerous media reports of customer complaints. *See Metowski v. Traid Corp.*, 28 Cal. App. 3d 332, 339 (1972) ("Where the merchandise was sold under circumstances which indicate that the seller . . . was aware of the breach at the time of the sale, demand for notice of the breach from each and every member of the class may be a meaningless ritual."); *Mias Fashion Mfg. Co. Inc. v. Jiangyin Jiamei Knitting Clothing Co. Ltd.*, No. CV 17-03124 SJO (RAOx), 2017 WL 7163924, at *3 (C.D. Cal. Aug. 1, 2017) (finding allegations demonstrating knowledge constitute sufficient pre-suit notice).[38] Finally, the MTD fails as to those Plaintiffs added to the CAC on July 2, 2018 and to the SAC on November 30, 2018— Apple was on notice. *Honest Co.*, 2016 WL 8902574, at *28.

### d.   Plaintiffs are in privity with Apple

Apple argues there is no privity with Plaintiffs who purchased from third-party retailers. MTD at 29. First, Apple misstates the law. It is true that a "plaintiff asserting a *breach-of-warranty*

---

[35] 930, 957, 964, 970, 979, 997, 1009, 1020, 1031, 1049, 1058, 1066, 1075, 1085, 1091, 1102, 1114, 1125, 1135, 1146, 1158, 1168, 1178, 1195, 1224, 1240, 1277, 1292, 1308, 1321, 1330, 1338, 1365, 1372; ECF No. 174, Ex. 12.

[35] *See also Michael v. Honest Co., Inc.*, No. LA CV15-07059 JAK (HGRx), 2016 WL 8902574, at *27 (C.D. Cal. Dec. 6, 2016) (collecting cases).

[36] *Accord id.* ("where a plaintiff purchases a product from a retailer, *Greenman* [*v. Yuba Power Products, Inc.*, 59 Cal. 2d 57, 61-62 (1963)] applies, excusing consumers from notifying the manufacturer of the problem prior to bringing a . . . claim.").

[37] *See* ¶¶2, 16-17, 21-22, 364, 503, Exs. 2-3; *see also* ¶¶545, 578, 601; 706, 717, 727, 739, 750, 763, 773, 787, 806, 818, 835, 846, 871, 884, 900, 911, 922, 957, 970, 979, 997, 1009, 1020, 1031, 1049, 1058, 1066, 1075, 1085, 1091, 1102, 1114, 1125, 1135, 1146, 1158, 1168, 1178, 1195, 1224, 1240, 1274, 1292, 1306, 1321, 1330, 1365, 1378.

[38] If notice is still required, consumer complaints constitute such notice. *See Duttweiler v. Triumph Motorcycles Am. Ltd.*, No. 14-cv-04809-HSG, 2015 WL 4941780, *6 (N.D. Cal. Aug. 19, 2015) ("The inference of pre-purchase knowledge is further supported by the detailed complaints made by customers to Triumph around the time of Duttweiler's purchase concerning identical failures of the exact same part at issue in this case."); *Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 683 (E.D. Pa. 2011) (notice requirement met where defendant was aware of defect due to widespread online complaints).

*claim* under Section 2314 of the California Commercial Code" must allege privity. *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1082 (N.D. Cal. 2011). But "*Xavier* does not address any claims for breach of contract." *Boyd*, 2014 WL 7183988, at *2 (privity required for breach of contract).[39] The SAC pleads a breach of contract, not warranty claims. Second, even if privity were required, Apple has elsewhere argued that it has two other contracts with all Plaintiffs. MTD at 25. Apples thus concedes privity in one part of the MTD[40] while elsewhere arguing against privity. Plaintiffs include this additional dichotomy in the Objections.

### 2. Plaintiffs Plead a Claim for Breach of the Covenant of Good Faith and Fair Dealing

A "breach of the implied covenant of good faith and fair dealing is not based on the breach of an explicit contractual term." *Williams v. Wells Fargo Bank, N.A.*, No. 5:13-cv-03387-EJD, 2017 WL 1374693, at *7 (N.D. Cal. Apr. 14, 2017).[41] The covenant is "implied by law in every contract," and "exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." *Id.*

Plaintiffs allege that the *post*-purchase throttling by Apple through iOS 10.2.1 (and other Updates) purposefully degraded Plaintiffs' Devices, frustrating Plaintiffs' rights to receive the *benefits of the agreement actually made*. This is a separate cause of action stemming from Apple's post-purchase bad acts. As noted repeatedly above, Apple engineers admitted (internally) that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—a classic example of a breach of the implied covenant.

---

[39] Apple's authority is in accord. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023-24 (9th Cir. 2008) (privity necessary for warranty claim); *Williams v. Yamaha Motor Corp., U.S.A.*, No. CV 13-05066 BRO (VBKx), 2015 WL 13626022, at *5 (C.D. Cal. Jan. 7, 2015) (same).

[40] To the extent further privity is still required, Plaintiffs are third-party beneficiaries of agreements between manufacturer and retailer. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 754 F. Supp. 2d 1145, 1184-85 (C.D. Cal. 2010); *Keegan v. American Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 947 (C.D. Cal. 2012).

[41] "[T]he factual elements necessary to establish a breach of the covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Wells Fargo*, 2017 WL 1374693, at *7.

1   Apple argues that the covenant does not apply if no express contract term has been breached.

2   MTD at 29. This is wrong. "[A] breach of a specific provision of the contract is not a necessary

3   prerequisite to a breach of an implied covenant of good faith and fair dealing." *G.P.P., Inc. v.*

4   *Guardian Protection Prods., Inc.*, No. 1:15-cv-00321-SKO, 2017 WL 220305, at *17 (E.D. Cal.

5   Jan. 18, 2017). "Were it otherwise, the covenant would have no practical meaning, for any breach

6   thereof would necessarily involve breach of some other term of the contract." *Id.*[42]

7   ### 3.   Plaintiffs Pled a Claim for Money Had and Received

8   "A cause of action is stated for money had and received if the defendant is indebted to the

9   plaintiff in a certain sum for money had and received by the defendant for the use of the plaintiff."

10  *Swearingen v. Santa Cruz Nat., Inc.*, No. 13-cv-04291-SI, 2016 WL 4382544, at *12 (N.D. Cal.

11  Aug. 17, 2016).[43] The only new argument in the MTD specific to this claim[44] is that Plaintiffs fail to

12  "allege a 'precise or definite' amount of money." However, the exact sum need not be alleged. *Id.* at

13  *12. As Plaintiffs allege, Apple received and has possession of money that it obtained from the sale

14  of Defective Devices. Such money held is the property of Plaintiffs. Additionally, Plaintiffs allege

15  that Apple came by this money through an illegal contract—the sale of Defective Devices. These

16  allegations are sufficient. *Id.* An amount certain will be ascertained through discovery.

17

18

---

19  [42] *See also Sunfarms, LLC v. Eurus Energy America Inc.*, No. 3:18-cv-0058-L-AGS, 2018 WL

20  6617635, at *5 (S.D. Cal. Dec. 18, 2018) ("'It is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed ***by the purposes*** and express terms of the

21  contract.' Thus, in order to allege breach of the implied covenant of good faith and fair dealing <u>where there has been no breach of a specific provision</u> of the contract, plaintiff must 'demonstrates a failure

22  or refusal to discharge ***contractual responsibilities***.'"); *Canning v. HomEq*, No. SACV 10-0435 AG (RNBx), 2010 WL 11558082, at *3 (C.D. Cal. July 16, 2010) (defendant breached implied covenant of good faith and fair dealing by breaching implied-in-fact contract).

23  [43] *See also Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1007 (N.D. Cal. 2009) ("it is generally necessary for the plaintiff to prove only his right to the money and the defendant's possession; and

24  any facts, circumstances or dealings from which it appears that the defendant has in his hands money of the plaintiff which he ought in justice and conscience to pay over to him, are competent evidence

25  to support the action."); *Hendrickson v. Octagon Inc.*, 225 F. Supp. 3d 1013, 1032 (N.D. Cal. Dec. 2, 2016) (same); *Gutierrez v. Girardi*, 194 Cal. App. 4th 925, 937 (2011) (money had and received

26  lies "wherever one person has received money which belongs to another, and which in equity and good conscience should be paid over to the latter.").

27  [44] Apple repeats arguments previously addressed herein regarding the "deficiencies in [Plaintiffs'] other contract claims" and the parties "express contracts". *See* Section VI(F)(1), *supra*.

28

1

### 4.     Plaintiffs Sufficiently Plead Unjust Enrichment

2         Under California law, "the elements for a claim of unjust enrichment [are] receipt of a benefit

3  and unjust retention of the benefit at the expense of another." *Elder v. Pac. Bell Tel. Co.*, 205 Cal.

4  App. 4th 841, 857 (2012). In the SAC, Plaintiffs allege they have lost money because they purchased

5  Defective Devices and that Apple has been unjustly enriched thereby. Plaintiffs seek restitution and

6  disgorgement of the amount of the unjust enrichment.

7         Apple argues that Plaintiffs cannot bring unjust enrichment claims in the alternative to other

8  contract claims.[45] Controlling Ninth Circuit precedent says otherwise. *See Astiana v. Hain Celestial*

9  *Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).[46] Further, Plaintiffs' unjust enrichment claim "will

10  depend upon the viability of [their] other claims" and thus is not subject to dismissal. *Sanders v.*

11  *Apple Inc.*, 672 F. Supp. 2d 978, 989 (N.D. Cal. 2009); *In re Apple In-App Purchase Litig.*, 855 F.

12  Supp. 2d 1030, 1042 (N.D. Cal. 2012).

13  **VII.    CONCLUSION**

14         Plaintiffs respectfully request that the Court deny Apple's motion in its entirety. To the extent

15  the Court grants any portion of the MTD, Plaintiffs request leave to amend. Fed. R. Civ. P. 15.

16                                  Respectfully submitted,

17                                  **COTCHETT, PITRE & MCCARTHY LLP**

18  DATED: February 14, 2019          By: */s/ Joseph W. Cotchett*
                                           Joseph W. Cotchett
19
                                    Joseph W. Cotchett (SBN 36324)
20                                  Mark C. Molumphy (SBN 168009)
                                    Elle D. Lewis (SBN 238329)
21                                  Brian Danitz (SBN 247403)
                                    Gina Stassi (SBN 261263)
22                                  San Francisco Airport Office Center
                                    840 Malcolm Road, Suite 200
23                                  Burlingame, CA 94010
                                    Telephone: 650-697-6000
24  _____

25  [45] Apple argues that the claim should be dismissed because Plaintiffs failed to plead an actionable
     misrepresentation or omission, which has been addressed at Section VI(A). Similarly, Apple argues
     that it has not committed any wrongful acts, also addressed herein.

26  [46] *See also St. Paul Mercury Ins. Co. v. Crawford and Co.*, No. LA CV16–08462 JAK (JPRx), 2017
     WL 5891047, at *5 (C.D. Cal. June 6, 2017) ("A cause of action for unjust enrichment, pleaded in
27  the alternative, should not be dismissed as duplicative of other causes of action."); *Becerra v. Gen.*
     *Motors LLC*, 241 F. Supp. 3d 1094, 1117 (S.D. Cal. 2017) ("courts in this Circuit have allowed unjust
28  enrichment and breach of contract claims to proceed simultaneously in one action").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Facsimile: 650-697-0577
*jcotchett@cpmlegal.com*
*mmolumphy@cpmlegal.com*
*bdanitz@cpmlegal.com*
*gstassi@cpmlegal.com*

**KAPLAN FOX & KILSHEIMER LLP**

DATED: February 14, 2019          By: */s/ Laurence D. King*
                                              Laurence D. King

Laurence D. King (SBN 206423)
Mario M. Choi (SBN 243409)
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: 415-772-4700
Facsimile: 415-772-4707
*lking@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (*pro hac vice*)
Donald R. Hall (*pro hac vice*)
David A. Straite (*pro hac vice*)
850 Third Avenue
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
*ffox@kaplanfox.com*
*dhall@kaplanfox.com*
*dstraite@kaplanfox.com*

*Interim Co-Lead Class Counsel*

1

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

2

I, Laurence D. King, attest that concurrence in the filing of this document has been obtained

3

from the other signatories. I declare under penalty of perjury under the laws of the United States of

4

America that the foregoing is true and correct.

5

Executed this 14th day of February, 2019, at San Francisco, California.

6

7

*/s/ Laurence D. King*
Laurence D. King

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28