THEODORE J. BOUTROUS, JR., SBN 132099
tboutrous@gibsondunn.com
CHRISTOPHER CHORBA, SBN 216692
cchorba@gibsondunn.com
THEANE EVANGELIS, SBN 243570
tevangelis@gibsondunn.com
TIMOTHY W. LOOSE, SBN 241037
tloose@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

G. CHARLES NIERLICH, SBN 196611
gnierlich@gibsondunn.com
RACHEL S. BRASS, SBN 219301
rbrass@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone: 415.393.8200
Facsimile: 415.374.8458

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

IN RE: APPLE INC. DEVICE PERFORMANCE LITIGATION,

This Document Relates To:

ALL ACTIONS.

CASE NO. 5:18-md-02827-EJD

**PUTATIVE CLASS ACTION**

**DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION FOR SANCTIONS; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

*[Filed concurrently with Declarations of Christopher Chorba and G. Charles Nierlich]*

Judge: Hon. Edward J. Davila
Courtroom: 4, 5th Floor
Hearing Date: May 30, 2019
Hearing Time: 9:00 a.m.

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 30, 2019, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Edward J. Davila, in Courtroom 4, Fifth Floor, of the United States District Court for the Northern District of California in the San Jose Courthouse, 280 South First Street, San Jose, California 95113, Defendant Apple Inc. will, and hereby does, move this Court, pursuant to Rules 37(b)(2) and 16(f) of the Federal Rules of Civil Procedure, for an order sanctioning Plaintiffs' counsel, Joseph Cotchett and Mark Molumphy of Cotchett, Pitre & McCarthy LLP, for violations of the Protective Order governing this action.

At a public hearing on March 7, 2019, Mr. Cotchett and Mr. Molumphy discussed and quoted directly from, without prior notice to Apple or the Court, three documents produced by Apple marked as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." Counsel quoted from two of those documents, in direct violation of the Protective Order, entered by this Court on October 15, 2018. (Dkt. 224 (Protective Order).) Counsel for Apple alerted both the Court and Plaintiffs' counsel of the violations at the hearing. Following the hearing, counsel for Apple wrote to Mr. Cotchett and Mr. Molumphy reiterating the violations of the Protective Order. Rather than admitting their oversight or offering to take remedial steps, Mr. Cotchett responded in writing and deflected blame, misrepresented the factual circumstances, and threatened his own sanctions motion based on Apple's confidential designation of the documents (despite Plaintiffs' counsel's failure to follow the steps set forth in the Protective Order for challenging such designations). Based on this willful disregard for the confidentiality of sensitive documents ordered to be kept confidential by this Court, Apple moves to terminate Mr. Cotchett's and Mr. Molumphy's interim appointment as class counsel, including as Interim Co-Lead Counsel, in this case, and to prohibit Mr. Cotchett and Mr. Molumphy from viewing documents designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" by Apple.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Christopher Chorba and G. Charles Nierlich, the other documents on file in this action, any oral argument of counsel at the hearing on the Motion, and any matters of which the Court may take judicial notice.

DATED: April 9, 2019

GIBSON, DUNN & CRUTCHER LLP

By: *\/s\/ Theodore J. Boutrous, Jr.*
Theodore J. Boutrous, Jr.

*Attorneys for Defendant Apple Inc.*

# TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT ..... 1

II. STATEMENT OF FACTS ..... 3

A. Appointment Of Lead Counsel And Entry Of Protective Order ..... 3

B. Apple's Motion To Dismiss And The March 7 Hearing ..... 5

C. Post-Hearing Correspondence ..... 7

III. ARGUMENT ..... 8

A. The Court Should Terminate Mr. Cotchett's And Mr. Molumphy's Appointment As Class Counsel ..... 9

1. *Mr. Cotchett And Mr. Molumphy Have Violated The Protective Order And The Professional Rules Of Conduct* ..... 10

2. *Mr. Cotchett's And Mr. Molumphy's Misconduct Impairs The Integrity Of These Proceedings.* ..... 15

3. *Deference To Plaintiffs' Preference For Counsel Is Inappropriate Here.* ..... 18

B. The Court Should Prohibit Mr. Cotchett And Mr. Molumphy From Viewing Apple's Confidential Documents ..... 19

IV. CONCLUSION ..... 21

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Clarke v. First Transit, Inc.*,
No. 07-CV-6476, 2012 WL 12877865 (C.D. Cal. Nov. 2, 2012)....................15, 18

*Clearly Food & Beverage Co. v. Top Shelf Beverages, Inc.*,
No. 13-CV-1763, 2015 WL 1263338 (W.D. Wash. Mar. 18, 2015)....................21

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
658 F.2d 1355 (9th Cir. 1981)....................9

*Davis v. Abercrombie*,
No. 11-CV-144, 2014 WL 7366685 (D. Haw. Dec. 24, 2014)....................17

*Evon v. Law Offices of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012)....................9

*Gulf Oil Co. v. Bernard*,
452 U.S. 89 (1981)....................17

*Hernandez v. Best Buy Stores, L.P.*,
No. 13-CV-2587, 2015 WL 7176352 (S.D. Cal. Nov. 13, 2015)....................9

*Huston v. Imperial Credit Commercial Mortg. Inv. Corp.*,
179 F. Supp. 2d 1157 (C.D. Cal. 2001)....................10, 17

*Knox v. City of Fresno*,
No. 14-CV-799, 2016 WL 10647198 (E.D. Cal. June 2, 2016)....................18

*Life Techs. Corp. v. Biosearch Techs., Inc.*,
No. 12-CV-852-WHA, 2012 WL 1600393 (N.D. Cal. May 7, 2012)....................9, 20

*LifeScan Scotland, Ltd. v. Shasta Techs. LLC*,
No. 11-CV-4494-WHO, 2013 WL 5949629 (N.D. Cal. Nov. 6, 2013)....................21

*Oracle Am., Inc. v. Google Inc.*,
No. 10-CV-3561-WHA (N.D. Cal. Aug. 8, 2016)....................12, 13

*Oracle USA, Inc. v. SAP AG*,
264 F.R.D. 541 (N.D. Cal. 2009)....................9

*Palumbo v. Tele-Commc'ns, Inc.*,
157 F.R.D. 129 (D.D.C. 1994)....................17

*Penk v. Or. State Bd. of Higher Educ.*,
816 F.2d 458 (9th Cir. 1987)....................9

**TABLE OF AUTHORITIES**

Page(s)

*Pigford v. Johanns*,
416 F.3d 12 (D.C. Cir. 2005) ....................17

*Visto Corp. v. Seven Networks, Inc.*,
No. 03-CV-333, 2006 WL 3741891 (E.D. Tex. Dec. 19, 2006)....................20

*Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.*,
992 F.2d 932 (9th Cir. 1993)....................9

**Rules**

Cal. R. of Prof'l Conduct 3.4 (2018)....................10, 14

Cal. R. of Prof'l Conduct 3.10 (2018)....................15

Fed. R. Civ. P. 16 ....................2, 9, 19

Fed. R. Civ. P. 23 ....................17

Fed. R. Civ. P. 26 ....................9

Fed. R. Civ. P. 37 ....................2, 9, 19

Local Civ. R. 79-5 ....................1, 5, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This Motion concerns a serious and intentional breach of an Order of this Court by Interim Co-Lead Plaintiffs' Counsel Joseph Cotchett and Mark Molumphy. Apple does not bring this Motion lightly, but counsel's violations directly attack the integrity of the proceedings before this Court.

On February 14, 2019, Plaintiffs submitted their Opposition to Apple's Motion to Dismiss. Plaintiffs included with their opposition papers a declaration from Mr. Cotchett. Exhibits 1, 2, and 3 to Mr. Cotchett's declaration were documents produced by Apple in this litigation and designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to the Protective Order entered by the Court. (Dkts. 279-6, 279-8, 279-10.) Recognizing that these three documents were designated as confidential by Apple under the Protective Order, Plaintiffs submitted them under seal and filed an Administration Motion to Seal pursuant to Local Rule 79-5.

This Court heard Apple's Motion to Dismiss on March 7, 2019. During oral argument, Mr. Cotchett and Mr. Molumphy described and quoted from Exhibits 2 and 3 to Mr. Cotchett's declaration—as well as other confidential documents—in disregard of this Court's Protective Order. That Order expressly provides that "***[a] Party who seeks to introduce Protected Material at a hearing, pretrial or other proceeding shall advise the Court at the time of introduction that the information sought to be introduced is protected***." (Dkt. 224 ("Protective Order") at 24, § 14.7 (emphasis added).) Despite submitting the documents under seal on February 14, Plaintiffs failed to use the procedures set forth in the Protective Order to challenge the confidentiality designations of those documents until March 12, five days *after* quoting from them at the hearing. These procedures set forth an orderly process involving a challenge with written objections, an opportunity to meet and confer over the challenge, and the opportunity to resolve any remaining disputes through a noticed motion and opposition. (*Id*. at 12–13, §§ 7.1, 7.2, 7.3.) The Protective Order, however, forbids the parties from engaging in self-help: "Until the Court rules on the challenge, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Designating Party's designation." (*Id.* at 13, § 7.3.)

While even honest mistakes are unacceptable in this context, that is not what happened here.

Mr. Cotchett and Mr. Molumphy made the calculated decision to violate the Protective Order.  The fact that Mr. Cotchett himself signed a declaration only three weeks before the hearing submitting these documents under seal confirms that Mr. Cotchett knew of the confidentiality designations and did not simply make an honest mistake.  And if there were any doubt as to Mr. Cotchett's and Mr. Molumphy's intentions, that was erased by subsequent correspondence between Apple and Plaintiffs' counsel. When Apple wrote to Plaintiffs' counsel after the hearing about this clear violation of the Protective Order, Mr. Cotchett did not take responsibility or offer to take remedial steps; instead, he made false statements and threatened both Apple and its counsel with retaliatory motion practice, in violation of the applicable ethical rules.

In light of these violations, and particularly in light of Plaintiffs' counsel's apparent intention to disregard this Court's order and refuse any responsibility for their misconduct, Apple moves for sanctions pursuant to Federal Rules of Civil Procedure 37(b) and 16(f), as well as pursuant to this Court's inherent authority.  Mr. Cotchett and Mr. Molumphy have proven themselves unwilling to respect the orders of this Court.  The documents at issue here contain sensitive information not just about Apple's business, but also about individual employees.  Other documents produced by Apple in this litigation contain confidential information about Apple's consumers.  While opposing counsel may challenge any designation by Apple, unless or until they have done so in accordance with the unambiguous process agreed to by the parties in the Protective Order and either the parties agree or the Court has ruled in Plaintiffs' favor, it is imperative that Apple be assured that opposing counsel will treat these documents with the solicitude called for by the Protective Order—the facts show that Mr. Cotchett and Mr. Molumphy can offer no such confidence.

Notably, Apple litigates numerous cases before this Court, many of which involve the production and exchange of confidential or highly sensitive materials.  Apple routinely works with opposing counsel to stipulate to protective orders that, like the Protective Order in this case, prohibit public dissemination of those materials.  The integrity of those orders depends on diligent adherence by all parties to the terms of the orders and, where there is a breach of those terms, vigorous enforcement by this Court.

Termination of Mr. Cotchett and Mr. Molumphy as class counsel, including as Interim Co-Lead

Counsel, is the most appropriate remedy. Moreover, Mr. Cotchett and Mr. Molumphy should be barred from viewing any documents designated by Apple as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." These sanctions are needed to protect the integrity of the judicial proceedings, the interests of the class, and Apple's confidential business information.

## II.      STATEMENT OF FACTS

### A.      Appointment Of Lead Counsel And Entry Of Protective Order

This multi-district litigation was assigned to this Court in early 2018. (Dkt. 1.) On May 15, 2018, after briefing and a hearing, this Court entered its order appointing Interim Co-Lead Plaintiffs' Counsel and Executive and Steering Committees. (Dkt. 100 ("Appointment Order").) The Court created "a leadership structure for plaintiffs' counsel in order to organize, simplify, and streamline the handling of these matters on behalf of all plaintiffs, consistent with the fair administration of justice." (*Id.* at 2.) The Court noted the exceptional size of the arrangement proposed by Mr. Cotchett and Laurence D. King—co-lead counsel from Kaplan Fox & Kilsheimer LLP—but concluded, "based on counsels' representations[,] that it will be in the best interests of the plaintiffs." (*Id.*) The Court appointed Mr. Cotchett and Mr. King as Interim Co-Lead Counsel, finding that Mr. Cotchett and Mr. Fox have "shown the ability to work cooperatively with others." (*Id.* at 4.) In addition, the Court appointed twenty-three attorneys to the Plaintiffs' Executive Committee (*id.* at 4–6), and an additional fourteen attorneys to the Steering Committee (*id.* at 6–7). For practical purposes, the day-to-day running of the litigation on behalf of Plaintiffs is handled by Mr. Cotchett's partner, Mr. Molumphy, as well as Mr. King's partner, David Straite.

Recognizing the sensitivity of the documents that would be implicated in this litigation, the counsel for both sides, including Messrs. Cotchett and Molumphy, negotiated and agreed on a stipulated protective order, which was entered by the Special Discovery Master on October 15, 2018. (*See* Dkt. 224.) But even before finalizing the Protective Order, the parties agreed to treat all documents produced by Apple in August 2018 (in response to Plaintiffs' "emergency" request for an immediate production, *see* Dkt. 116) as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." (Chorba Decl. ¶¶ 12–13.) In fact, Plaintiffs' counsel urged this Court to compel an early

production of documents before the entry of a final protective order, arguing that Apple would suffer no prejudice because Plaintiffs were "amenable to treating the documents as 'Attorneys Eyes Only' during the negotiations of a protective order." (Dkt. 125 at 6; *see also* Dkt. 167 (July 11 Hr'g Tr.) at 28 ("[T]o the extent that there are confidentiality concerns, which Mr. Chorba also raised at the last CMC, we're happy to deal with those, of course, but on an expedited basis. We can deal with them by receiving the documents on an Attorneys' Eyes Only basis.").)

The Protective Order establishes two orders of confidentiality: "CONFIDENTIAL" documents, which may be disclosed only to a small number of individuals (including the receiving party and the receiving party's counsel); and "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" documents, which may be disclosed to a more limited group (including the receiving party's counsel, but not to the receiving party him or herself). (Protective Order at 3, 14–16, §§ 2.4, 2.5, 8.2, 8.3, 8.4.) Neither category of documents may be disclosed to the public. (*Id.* at 14–16, §§ 8.2, 8.3, 8.4.) Documents are marked for confidentiality by the producing party. (*Id.* at 6–9, § 5.3.)

The Protective Order also establishes a procedure for challenging confidentiality designations. The party receiving documents may challenge a confidentiality designation "at any time up to and including 30 days before trial," but must begin the challenge process by serving a written objection to the designation, which must identify the specific Bates range for each challenged document and the basis for the challenge. (*Id.* at 12, §§ 7.1, 7.2.) If the parties are unable to resolve the challenge themselves, the challenging party may seek judicial intervention via a motion. (*Id.* at 13, § 7.3.) The Protective Order, however, forbids the parties from engaging in self-help: "Until the Court rules on the challenge, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Designating Party's designation." (*Id.*)

The Protective Order provides that "***[a] Party who seeks to introduce Protected Material at a hearing, pretrial or other proceeding shall advise the Court at the time of introduction that the information sought to be introduced is protected***." (*Id.* at 24, § 14.7.) "If the Party who designated the information as Protected Material requests the protection be continued, the Court will review the information to determine if the information is entitled to continued protection." (*Id.*)

**B.     Apple's Motion To Dismiss And The March 7 Hearing**

On January 24, 2019, Apple moved to dismiss Plaintiffs' Second Amended Complaint.  (Dkt. 271-4.)  In opposition, Plaintiffs filed a declaration executed by Mr. Cotchett attaching seven exhibits.  (Dkt. 280-1.)  The first three exhibits to that declaration—Bates numbers APLIOSMDL00152101, APLIOSMDL01274352–APLIOSMDL01274356,          and          APLIOSMDL05752553–APLIOSMDL05752556—all had been produced by Apple and marked as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" (the "Confidential Documents").  (Chorba Decl. ¶¶ 3–4.)

The Confidential Documents had been produced by Apple on August 6, 2018 (as noted above pursuant to the parties' express agreement to treat all documents as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pending the entry of a final confidentiality order.  (Chorba Decl. ¶¶ 12–13, Ex. E.)  Plaintiffs had never taken advantage of the procedures set forth in the Protective Order to challenge the confidentiality designations of those documents.  (Protective Order at 12–13, §§ 7.1, 7.2, 7.3; *see also* Chorba Decl. ¶ 7.)  Accordingly, Plaintiffs properly sought to have the Confidential Documents (as well as other documents filed in support of their opposition) filed under seal.  (Dkt. 279 ("Mot. to Seal").)  Plaintiffs explained to the Court that "[t]o comply with the Protective Order and Civil Local Rule 79-5, Plaintiffs have lodged the Opposition and supporting documents under seal." (*Id.* at 2.)  Plaintiffs further represented that they had "erred on the side of caution in over-designating for confidentiality to not inadvertently produce otherwise confidential information." (*Id.*)  The Motion to Seal remains pending.  (*See* Dkt. 305.)

On March 7, 2019, the Court heard oral argument on Apple's Motion to Dismiss.  As the movant, Apple's counsel argued first.  Counsel did not make any reference, direct or indirect, to any documents designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."  (Dkt. 311-4 (Hr'g Tr.) at 6–17.)  Mr. Molumphy principally argued for Plaintiffs.  A few minutes into his presentation, he began describing content from documents designated as "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY," but not those filed under seal.  Instead, Mr. Molumphy cited from

and relied on *other* confidential documents produced by Apple.  (Hr'g Tr. 19.)[1]

After Mr. Molumphy concluded—and while Mr. Chorba was at the lectern—Mr. Cotchett stood up to "add one thing."  (Hr'g Tr. 27.)  Before Apple could raise the issue of the violation of the Protective Order, Mr. Cotchett referenced the declaration he submitted in support of Plaintiffs' opposition, and began quoting *directly* from two of the Confidential Documents.  (Hr'g Tr. 29–30.)  In addition to quoting documents filed under seal and designated as confidential under the Protective Order, Mr. Cotchett quoted these documents out of context.  When pressed by the Court about whether a particular quote was accurate, Mr. Cotchett did not clarify or provide context.  (Hr'g Tr. 30.)[2]

Rising for rebuttal, Apple's counsel immediately alerted the Court to the violation:

> The first and most important thing I want to address, however, and I know counsel did not do this intentionally, we have a protective order.  We have some very confidential documents.  There were references completely out of context to documents and to specifications.  I'd like to designate this transcript as confidential pursuant to our protective order and before it's released I'd like an opportunity to go through it because some of what they read from are indisputably "Attorneys' Eyes Only Documents," and so I would just like to do that at the outset.

(Hr'g Tr. 30–31.)[3]  The Court interjected and asked Mr. Cotchett whether he had an objection, who responded, "None whatsoever."  (Hr'g Tr. 31.)  The Court put on the record that "the Court is open right now to the public," and asked whether "there is anyone who is here that is not attached to this case."  (*Id.*)  Apple's counsel noted that there were such individuals present before adding: "I, with care, I did not object.  I did not want to interrupt counsel while they were proceeding.  I never like to do that.  But I don't want my failure to do so to be used as a waiver.  It's really important to us."  (*Id.*)

In sur-rebuttal, Mr. Molumphy (indisputably now knowing the documents his colleague had quoted were designated as Attorneys' Eyes Only) again quoted from one of the Confidential

---

[1]   Other statements by Mr. Molumphy during the hearing also were based primarily or solely on documents produced by Apple and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."  (Hr'g Tr. 19–20, 25.)  Apple has filed an administrative motion to seal those portions of the transcript.  (*See* Dkts. 311, 311-4.)

[2]   The content is irrelevant, and Apple does not re-quote the content because doing so would merely lead to another sealing battle that would further sap the Court's resources and time.  It is indisputable that the documents that Plaintiffs' counsel read into the record were designated pursuant to the Protective Order and there had been no formal challenge (nor any resolution of a challenge) before the hearing.

[3]   As discussed below, such courtesy and "benefit of the doubt" was misplaced, given Plaintiffs' counsel's post-hearing response to Apple's letter notifying Plaintiffs of the Protective Order violation.

Documents (Hr'g Tr. 37), prompting the Court to interrupt, "Well, let's not get into anything that's—," and then, "I don't want to raise any other topics that may be confidential here." (*Id.*).

**C. Post-Hearing Correspondence**

On March 8, 2019, the day after the hearing, Apple's counsel sent a letter to Mr. Cotchett and Mr. Molumphy advising them of their violation of the Protective Order. (Chorba Decl. Ex. A, at 1.) Counsel pointed out that the documents read from bore "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" designations and had been filed under seal by Plaintiffs. (*Id.*) Counsel quoted from the Protective Order and stated that Apple "maintains its confidentiality designations regarding the documents at issue." (*Id.*) Counsel further advised that "Apple reserves all rights based on this plain violation of the Court's order, and demands that Plaintiffs immediately take steps to ensure that all counsel comply with the terms of the Protective Order." (*Id.* at 2.)

Mr. Cotchett responded on March 12, 2019. (Chorba Decl. Ex. B.) In sharp contrast to his agreement at the hearing to keep the transcript confidential, Mr. Cotchett denied any responsibility for the public disclosure of the documents. He first claimed that, consistent with the Protective Order, he had "advised the Court that [he] would quote from such information when [he] addressed the court, including [his] opposition to Apple's motion to dismiss, and [his] (Cotchett) Declaration attaching certain documents prior to argument." (*Id.* at 1.) Further, he wrongly claimed that "Apple did not raise any objection at the hearing itself" (*id.*), and that he had advised Apple's counsel of his intent to discuss the documents in advance of the hearing, blaming Apple's counsel for standing "at the podium and [raising] no objection to [his] reading the quotes from the document" (*id.*). He next incorrectly asserted that the "first and only time [counsel] voiced any issue was at the end of the hearing, and only after [the] client approached [counsel] from the back of the Courtroom and voiced displeasure that Apple's E-mails were being presented to the Court." (*Id.*)[4] Mr. Cotchett thereafter diverted attention away from his own misconduct, arguing that Apple had incorrectly designated these and other documents as confidential. (*Id.* at 2.) Finally, Mr. Cotchett cited the section of the Protective Order providing for sanctions for improper designations of confidential materials, and "suggest[ed] that the next time you

[4] Although it is irrelevant, neither Mr. Cotchett or Mr. Molumphy has ever provided any explanation for how either could know what Apple's counsel said to Mr. Chorba in a whispered, privileged conversation to which neither was a participant.

accuse [Mr. Cotchett] or Mark Molumphy of a 'blatant' violation of a Court Order that you consider the action we will take against you and your firm." (*Id.* at 2.)

Counsel for Apple promptly responded the next day, disputing Mr. Cotchett's account of any pre-hearing discussion, and pointing out, in any event, that the Protective Order requires the party introducing confidential material to "***advise the Court at the time of introduction that the information sought to be introduced is protected***." (Chorba Decl. Ex. C, at 1 (internal quotation marks omitted).) Counsel next noted that Mr. Cotchett's personal disagreement with Apple's designation of confidential material was not a valid basis for disregarding the Protective Order, and disputed Mr. Cotchett's assertion that there had been no contemporaneous objection. (*Id.* at 2.) Finally, counsel expressed his concern at Mr. Cotchett's threat of retaliatory sanctions, directing Mr. Cotchett to the applicable ethical rules prohibiting such disfavored tactics.

On March 15, Mr. Cotchett responded with a short letter disputing that he violated the Protective Order or that Apple's counsel had timely objected, without specifics. (Chorba Decl. Ex. D.)

On April 2, 2019, counsel for Apple met and conferred with Plaintiffs' counsel regarding their violations of the Protective Order and the relief that Apple would seek in this Motion. After discussion, the parties were unable to reach an agreement regarding the Motion. (Chorba Decl. ¶ 14.)

## III. ARGUMENT

There is no question Mr. Cotchett and Mr. Molumphy violated the Protective Order—both in publicly disclosing documents marked as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," and in failing to advise the Court at the time of introduction that the documents were confidential. That misconduct in and of itself is worthy of sanctions. But counsel's response to the violations is cause for more serious concern—rather than admitting the violations and agreeing to proceed more carefully in the future, Mr. Cotchett *denied* that he violated the Protective Order, *blamed* Apple's counsel for not making a timely objection (an assertion belied by the transcript), and *threatened* to bring his own sanctions motion as a form of retaliation. This response gives no assurance that either Mr. Cotchett or Mr. Molumphy intend to adhere to the Protective Order in the future, and such reckless misconduct is particularly inappropriate in light of their responsibilities as class counsel. The most appropriate remedy is to terminate Mr. Cotchett and Mr. Molumphy as class counsel in this action—

including as Interim Co-Lead Counsel—and to prohibit them from viewing Apple's confidential materials.

**A. The Court Should Terminate Mr. Cotchett's And Mr. Molumphy's Appointment As Class Counsel**

"Rule 37 of the Federal Rules of Civil Procedure grants courts the authority to impose sanctions where a party has violated a discovery order, including a protective order . . . ." *Life Techs. Corp. v. Biosearch Techs., Inc.*, No. 12-CV-852-WHA, 2012 WL 1600393, at *8 (N.D. Cal. May 7, 2012) (citations omitted); *see also Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.*, 992 F.2d 932, 934–35 (9th Cir. 1993) ("Rule 37(b)(2) should provide comprehensively for enforcement of all [discovery] orders, including Rule 26(c) protective orders." (internal quotation marks omitted)). "A court need not find bad faith before imposing sanctions for violations of Rule 37." *Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 545 (N.D. Cal. 2009) (citation omitted); *see also Penk v. Or. State Bd. of Higher Educ.*, 816 F.2d 458, 466 (9th Cir. 1987). A court may also issue sanctions under Rule 16 where "a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1). Courts further retain the inherent authority to sanction parties or counsel before them where there is "willful disobedience of a court order" or there is "bad faith or conduct tantamount to bad faith." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012) (internal quotation marks omitted).

Disqualification of an attorney is appropriate "[w]here there exists (1) a clear violation of the professional rules of conduct, (2) which affects the public view of the judicial system or the integrity of the court, and (3) which is serious enough to outweigh the parties' interests in counsel of their choice." *Hernandez v. Best Buy Stores, L.P.*, No. 13-CV-2587, 2015 WL 7176352, at *3 (S.D. Cal. Nov. 13, 2015) (internal quotation marks omitted); *see also In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 658 F.2d 1355, 1360–61 (9th Cir. 1981) ("In order that the court may in fact control the conduct of attorneys appearing before it, the court should have the ability to disqualify attorneys if their conduct actually interferes with the integrity of the court . . . ."). However, where there is attorney misconduct "in a class action context, disqualification is more likely because putative class counsel are subject to a 'heightened standard' which they must meet if they are to be

allowed by the Court to represent absent class members." *Huston v. Imperial Credit Commercial Mortg. Inv. Corp.*, 179 F. Supp. 2d 1157, 1167 (C.D. Cal. 2001). Each of these considerations weighs in favor of sanctions terminating Mr. Cotchett's and Mr. Molumphy's appointment as interim class counsel.

**1. *Mr. Cotchett And Mr. Molumphy Have Violated The Protective Order And The Professional Rules Of Conduct.***

There are several apparent violations of the professional rules of conduct here. Rule 3.4(f) provides that an attorney may not "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Cal. Rules of Prof'l Conduct R. 3.4(f) (2018). Contrary to their suggestions otherwise, there is no serious dispute here that Mr. Cotchett and Mr. Molumphy violated the Protective Order. The documents discussed and quoted at the March 7 hearing were produced by Apple and marked as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." Pursuant to the Protective Order, the contents of those documents could be disclosed only to a highly select group of individuals, including counsel, the Court, and certain witnesses. (Protective Order at 15–16, § 8.3.) Members of the public, obviously, are not included in that limited group, yet opposing counsel quoted *verbatim* from these confidential documents in open court at a hearing in which individuals unassociated with this case were present. (Hr'g Tr. 29–31.) Nothing in Mr. Cotchett's letters to Apple's counsel explains or justifies this unambiguous violation of the Protective Order.

Separate from the improper disclosure of confidential information, Mr. Cotchett and Mr. Molumphy further violated the Protective Order by failing to "advise the Court *at the time of introduction* that the information sought to be introduced is protected." (Protective Order at 24, § 14.7 (emphasis added).) While opposing counsel filed (some) of these documents under seal, they gave no indication to the Court at the hearing that they intended to rely on or quote from these documents until it was too late.[5]

[5] Specifically, counsel quoted directly from two "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" documents, both of which were attached under seal to Mr. Cotchett's Declaration filed on February 14, 2019 (Dkt. 280-1). Only one of those documents had been quoted in the Second Amended Complaint. (Dkt. 244-1, ¶ 374.) As noted above, however, counsel also divulged other information that it could have obtained only from confidential documents produced by Apple in this litigation.

Mr. Cotchett's defense of his misconduct is untenable. First, he claims that he "advised the Court that I would quote from such information when I addressed the court, including our opposition to Apple's motion to dismiss, and my (Cotchett) Declaration attaching certain documents prior to argument." (Chorba Decl. Ex. B, at 1.) That is a charitable description of Mr. Cotchett's representations before the Court, reproduced more fully below:

> I submitted a declaration and the declaration is very, very important here because although this is not a summary judgment proceeding, it's a claim by counsel, respectfully, that we have not pled a case that fits within the law.
>
> So I want to just quickly—the reason I submitted a declaration in support here is to show you all of the documents they have submitted to show you just the tip of the iceberg, and I want to take 30 seconds to quickly go over that.

(Hr'g Tr. 27–28.) Nowhere did Mr. Cotchett advise the Court that he intended to describe or quote from those documents, but more critically, he never "advise[d] the Court at the time of introduction that the information sought to be introduced is protected." (Protective Order at 24, § 14.7.) And Mr. Cotchett gave no realistic opportunity for the Court or Apple's counsel to address the confidentiality issues. The Protective Order is clear as to the disclosures that must be made when protected material is sought to be introduced at a hearing, and Mr. Cotchett failed to abide by those procedures. It must be noted that no such remarks (insufficient even as they are) preceded *Mr. Molumphy*'s citations to confidential documents. (Hr'g Tr. 19–20.)

But notably, even if Mr. Cotchett's alleged disclosure was sufficient to satisfy Section 14.7's notice requirements (it was not), that would not insulate either him or Mr. Molumphy from scrutiny for *publicly disclosing* the contents of these documents in open court in violation of Sections 8.2 and 8.3 of the Protective Order. The Protective Order nowhere contemplates that merely by notifying the Court of an intent to rely on confidential documents in a hearing, those documents lose their confidential status for all purposes. In fact, the Protective Order provides the exact opposite, directing the Court to resolve disputes about the designation of confidential documents sought to be introduced (Protective Order at 24, § 14.7), and elsewhere making clear that until and unless the Court rules otherwise, "*all parties shall continue to afford the material in question the level of protection to which it is entitled under the Designating Party's designation*" (*id.* at 13, § 7.3 (emphasis added)).

Plaintiffs have persisted in this backwards reading of the Protective Order in their opposition to

Apple's motion to file the March 7 transcript under seal.  (Dkt. 312.)  There, Plaintiffs' counsel contends that the information should not be sealed because counsel read the material into the record at the hearing (*id.* at 1)—an interpretation that would eviscerate the protections of the Protective Order. They also argue (once again) that they fulfilled their obligations under Section 14.7 simply by identifying the materials as confidential in their papers and then proceeding to "identif[y] the source" at the hearing—i.e., the Second Amended Complaint or Mr. Cotchett's declaration.  (*Id.*)  That is not the process that the Protective Order requires; instead, the party introducing the material must "advise the Court at the time of introduction that the information sought to be introduced *is protected*." (Protective Order at 24, § 14.7 (emphasis added).)  And counsel is incorrect that Apple failed to object—it did so immediately on rebuttal  (Hr'g Tr. 30–31.)  The notion that Mr. Cotchett's and Mr. Molumphy's obligations under the Protective Order evaporated the moment they filed some (but not all) of these documents under seal—or announced their intention to quote the documents moments before doing so—is completely unsupportable.

Another court in this District has rejected a similarly misguided defense of a protective order violations in an analogous, non-class context.  In that case, counsel for Oracle disclosed sensitive information—marked as confidential pursuant to a protective order—at a hearing in open court.  Like Mr. Cotchett and Mr. Molumphy, counsel for Oracle disclaimed any responsibility for their open violation of the protective order, arguing that public disclosure was necessary because the documents related to issues being argued at the hearing.  *See* Pl.'s Opp'n to Mot. for Finding of Civil Contempt & for Sanctions at 7–9, *Oracle Am., Inc. v. Google Inc.*, No. 10-CV-3561-WHA (N.D. Cal. Aug. 8, 2016), ECF No. 2026.  Judge Alsup rejected that argument, explaining that "when a lawyer wishes to reveal in open court information whose disclosure is restricted by a protective order, the lawyer must first explain the restriction to the judge and (i) ask to seal the courtroom and transcript or (ii) hand up a copy of the restricted information to the judge."  Order re Protective Order & Mot. for Contempt, *Oracle Am.*, No. 10-CV-3561-WHA (N.D. Cal. Sept. 23, 2016), ECF No. 2065.  Judge Alsup further stated that "[t]he special handling required by protective orders is not mere boilerplate," but rather "[t]he special handling is the quid pro quo for gaining access to sensitive information.  Those who need to maintain their information in privacy will resist even court orders to allow discovery if the lawyers

who want access can brush off the special handling as boilerplate. We must honor our word that the information will be kept secure." *Id.* at 1–2. Those fundamental principles resonate with even greater force here, and require termination of Mr. Cotchett's and Mr. Molumphy's appointment as interim class counsel.[6]

Mr. Cotchett's next defense is that Apple has *waived* its rights under the Protective Order by "rais[ing] no objection" to his or Mr. Molumphy's quoting from the Confidential Document, claiming that he advised Apple's counsel prior to argument and "indicated [he] was going to discuss the documents to [his] declaration." (Chorba Decl. Ex. B, at 1.) This argument misses the mark in several ways. In the first instance, it is wrong as a factual matter: Apple's counsel *did* object, and did so in his first statement to the Court after Mr. Cotchett and Mr. Molumphy had violated the Protective Order. (Hr'g Tr. 30–31.) Apple's counsel (Mr. Chorba) rose to the podium immediately after Mr. Molumphy concluded his presentation to raise the issue of the confidentiality of the materials Mr. Molumphy had just discussed. (*Id*. at 27.) But before Apple's counsel began speaking, Mr. Cotchett interjected that he "just wanted to add one thing." (*Id.*) Counsel understandably did not object in the middle of Plaintiffs' counsel's presentation, and in fact explained his reasons on the record: "I, with care, I did not object. I did not want to interrupt counsel while they were proceeding. I never like to do that. *But I don't want my failure to do so to be used as a waiver*. It's really important to us." (*Id.* at 31 (emphasis added).) There was no suggestion by Plaintiffs' counsel at that time that Apple had waived its rights, and in fact, Mr. Cotchett was asked by the Court whether he had an objection to sealing the transcript and said that he had "None whatsoever." (*Id.*) It also is irrelevant as a legal matter: The Protective Order does not require contemporaneous objections when evidence is introduced. Rather, the burden is on the party *introducing the confidential material* to alert the Court that it seeks to use confidential material and to prompt resolution of any disputes. (Protective Order at 13, 24, §§ 7.3, 14.7.) And finally, to the extent it is relevant (which it is not under the Protective Order), Apple's counsel disputes that Mr. Cotchett or Mr. Molumphy gave any indication prior to the hearing that they intended to violate the Protective Order. (Chorba Decl. ¶ 6; Nierlich Decl. ¶ 4.)

---

[6] Because it was not a class action, that relief was not sought in *Oracle America*. The dispute regarding the protective order violation was thereafter resolved without further intervention from the court. *See* Joint Status Report, *Oracle Am.*, No. 10-CV-3561-WHA (N.D. Cal. Sept. 26, 2016), ECF No. 2067.

The last defense offered by Mr. Cotchett is that Apple has itself mis-designated these and other documents as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." (Chorba Decl. Ex. B, at 2.) This is perhaps the most misguided of Plaintiffs' counsel's responses: The Protective Order does not permit the parties to engage in "self-help" when they feel a document has been mis-designated. Rather, there is an established process for challenging confidentiality designations. (Protective Order at 13, § 7.3.) That same provision makes clear that "[u]ntil the Court rules on the challenge, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Designating Party's designation." (*Id.*) The Confidential Documents were produced on August 6, 2018, and until March 12, 2019 (over seven months later and only after Apple had raised the issue of the Protective Order violation), Plaintiffs never challenged the confidentiality designations of any documents through the procedures outlined in the Protective Order. That Plaintiffs take issue with Apple's confidentiality designations plainly does not entitle their counsel to disregard those designations unless and until the Court rules that those designations were in error. Threatening retaliatory sanctions is no answer to the barefaced violations of the Protective Order here.

Rule 3.4(f) is violated only when an attorney's disobedience of a court-imposed obligation is knowing. There can be no serious dispute that these violations of the Protective Order were knowing—Plaintiffs filed three of these documents *under seal*, and stated in that motion that sealing was sought in order "[t]o comply with the Protective Order and Civil Local Rule 79-5." (Mot. to Seal at 2.) At the hearing, Apple's counsel gave Mr. Cotchett and Mr. Molumphy the benefit of the doubt solely in an abundance of caution and as a professional courtesy, telling the Court, "I know counsel did not do this intentionally." (Hr'g Tr. 31.) That caution and courtesy was misplaced—Mr. Cotchett's correspondence confirms that the disclosure of the confidential information was both deliberate and premediated. As set forth above, Mr. Cotchett's defenses of his and his colleague's misconduct are entirely specious, and were there any lingering doubt, it bears repeating that the Protective Order was *stipulated* between the parties: "Courts are particularly unsympathetic to purported excuses for less-than-substantial compliance when the contemnor participated in drafting the order against which compliance is measured, because a party who participates in drafting the order should do so with an understanding of what it can reasonably accomplish." *Clarke v. First Transit, Inc.*, No. 07-CV-6476,

2012 WL 12877865, at *12 (C.D. Cal. Nov. 2, 2012) (internal quotation marks omitted).

But Mr. Cotchett's and Mr. Molumphy's knowing violations of the Protective Order are not the only ethical violations here. Rule 3.10(a) provides that "[a] lawyer shall not threaten to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute." Cal. Rules of Prof'l Conduct R. 3.10(a); *see also id.* at R. 8.4(d) ("It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice . . . ."). When faced with evidence of violations of the Protective Order, Mr. Cotchett responded by threatening retaliatory action: "Plaintiffs reserve all rights based on Apple's plain violation of the Court's order, and suggest that the next time you accuse me or Mark Molumphy of a 'blatant' violation of a Court Order *that you consider the action we will take against you and your firm*." (Chorba Decl. Ex. B, at 2 (emphasis added).) While Plaintiffs are of course entitled to reserve their rights, that reservation was accomplished in the first half of the above sentence. The second half is gratuitous and abundantly clear in its implications—Mr. Cotchett and his firm intend to retaliate with their own sanctions motion if they are called to account for their misconduct. Such a threat is inappropriate, particularly because the Protective Order makes clear that disputes about the proper designation of confidential material are unrelated to the obligation of the receiving party to keep designated documents confidential. (Protective Order at 13, § 7.3.)

There have thus been multiple violations of ethics rules—most notably, the knowing violations of the Protective Order. And even if Mr. Cotchett's and Mr. Molumphy's misconduct does not technically rise to the level of an ethical violation, their disregard for the Protective Order and refusal to take responsibility is in and of itself worthy of substantial sanctions.

**2. *Mr. Cotchett's And Mr. Molumphy's Misconduct Impairs The Integrity Of These Proceedings.***

These unapologetic violations of this Court's order threaten the integrity and fairness of these proceedings. Serious sanctions are needed.

*First*, Mr. Cotchett's and Mr. Molumphy's violations of the Protective Order, while serious in and of themselves, are only the start of the problem. Equally concerning is the brazen response from Mr. Cotchett denying that he or Mr. Molumphy violated the Protective Order (despite all evidence to

the contrary), and deflecting blame onto Apple.  This blatant disregard for the provisions of the Protective Order gives Apple—and should give this Court—no confidence that Mr. Cotchett or Mr. Molumphy have any intention to abide by the Protective Order in the future.

The threat of future violations is perhaps best exemplified by Mr. Cotchett's and Mr. Molumphy's misconduct at the hearing.  *After* Apple's counsel alerted opposing counsel and the Court to the confidentiality of the information being publicly disclosed, Mr. Molumphy, in sur-rebuttal, *again* recited information and quotes taken from the Confidential Documents.  (Hr'g Tr. 36–37.)  It was only through this Court's intervention—telling Mr. Molumphy that it did not "want to raise any other topics that may be confidential here" (Hr'g Tr. 37)—that the bleeding was stopped.

This pattern has persisted since then.  Although Mr. Cotchett affirmatively disclaimed any objection at the hearing to the designation of the transcripts as "CONFIDENTIAL" (Hr'g Tr. 31), he and Mr. Molumphy have opposed Apple's efforts to seal those pieces of the transcript discussing Apple's confidential information, which has delayed the finalization of the transcript of that hearing.  Yet again, though, this is not the procedure contemplated by the Protective Order.  Hearing transcripts, like documents, may be designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."  (Protective Order at 8, § 5.3(b).)  The process for challenging such a designation is the same as challenging documents so designated—the challenging party must levy a written objection to the designating party, with resort to judicial intervention if and when the parties are unable to resolve the dispute themselves.  (*Id.* at 12–13, §§ 7.1, 7.2, 7.3.)  But as with the documents, hearing transcripts designated as "CONFIDENTIAL" remain so until ruled otherwise by the Court.  (*Id.* at 13, § 7.3.)  This Court therefore does not have to guess how Mr. Cotchett and Mr. Molumphy will conduct themselves going forward—they have already made that clear in their conduct before the Court, in their correspondence with Apple, and with their actions since then.

These violations are made all the more serious by the fact that they involve the sensitive and confidential materials of Apple.  In stipulating to the Protective Order, the parties agreed that "[d]isclosure and discovery activity in this action are likely to involve production of certain confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted."  (Protective

Order at 2, § 1.) The Confidential Documents fit that description—they relate to internal discussions among Apple employees about how to respond to reports of issues with the iPhone's battery life. Those discussions include proposed plans of action (some of which were never carried out), and speculation by employees about the cause of the issues and Apple's response. These documents also included individual employees' names and contact information. Other confidential documents produced by Apple in this litigation include similarly sensitive information about employees and individual consumers. There is no serious question that public dissemination of such information is harmful to Apple, its employees, and its customers, or that those documents contain proprietary information. In light of the sensitivity of this information, Apple must have confidence that counsel will follow the rules set forth by this Court. Mr. Cotchett and Mr. Molumphy have shown that they cannot or will not provide such assurance.

*Second*, Mr. Cotchett's and Mr. Molumphy's misconduct threatens to impair the interests of the class they represent. While disqualification of an attorney is a substantial sanction, the bar is lower in the class context because "putative class counsel are subject to a 'heightened standard.'" *Huston*, 179 F. Supp. 2d at 1167; *see also Palumbo v. Tele-Commc'ns, Inc.*, 157 F.R.D. 129, 132 (D.D.C. 1994) ("The fact that Mr. Snyder and his firm seek to represent a national class of plaintiffs makes the decision to disqualify even more compelling."). "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). A district court therefore has an "affirmative duty to renew its stringent examination of the adequacy of class representation throughout the entire course of the litigation." *Pigford v. Johanns*, 416 F.3d 12, 27 (D.C. Cir. 2005) (internal quotation marks omitted); *see also Davis v. Abercrombie*, No. 11-CV-144, 2014 WL 7366685, at *3 (D. Haw. Dec. 24, 2014) ("The prophylactic power accorded to the court presiding over a putative class action under Rule 23(d) is broad; the purpose of Rule 23(d)'s conferral of authority is not only to protect class members in particular but to safeguard generally the administering of justice and the integrity of the class certification process."). It therefore is necessary to consider whether Mr. Cotchett and Mr. Molumphy are capable of effectively representing the interests of the class.

Their conduct over the last several weeks has answered that question. Not only have Mr. Cotchett and Mr. Molumphy themselves violated the Protective Order, but also they have given every indication that they intend to disregard the Protective Order. In addition to impairing Apple's confidentiality interests, *see supra*, Mr. Cotchett's and Mr. Molumphy's misconduct risks injuring the class. Apple has sought here sanctions targeted only at counsel and designed to remedy the violations of the Protective Order at the March 7 hearing. Future violations of the Protective Order by Mr. Cotchett and Mr. Molumphy, however, may open the class itself up to sanctions, including the exclusion of evidence, *see Knox v. City of Fresno*, No. 14-CV-799, 2016 WL 10647198, at *3 (E.D. Cal. June 2, 2016), or termination of counsel at a later stage in the proceedings (where it would be more disruptive), *see Clarke*, 2012 WL 12877865, at *16. Moreover, future misconduct by Mr. Cotchett and Mr. Molumphy will further delay these proceedings—as already has occurred—and require judicial resolution of disputes, like this one, that could have been avoided through adherence to the Protective Order. Termination of Mr. Cotchett and Mr. Molumphy as class counsel would therefore protect the integrity of these class proceedings by ensuring the class has adequate representation throughout.

**3. *Deference To Plaintiffs' Preference For Counsel Is Inappropriate Here.***

These violations are sufficient to outweigh Plaintiffs' interest in counsel of their choice. Indeed, it is not even clear to what extent there is such an interest in the class action context. While Mr. Cotchett and Mr. Molumphy were initially retained by individual plaintiff Robert Gilson, their representation of the *class* occurred only by order of this Court. The traditional respect for a party's chosen counsel arguably does not apply where, as here, Mr. Cotchett's and Mr. Molumphy's representation of the class is a product of this Court's action and not informed client choice.

Nor will there be any prejudice to the class if Mr. Cotchett and Mr. Molumphy are terminated from their appointment as class counsel. This Court has already appointed Mr. King from Kaplan Fox & Kilsheimer LLP as Interim Co-Lead Counsel. (Appointment Order at 4.) In so doing, the Court noted Mr. King's and his firm's "extensive knowledge of and experience in prosecuting complex litigation and class actions." (*Id.*) The Court further appointed twenty-three attorneys to the Plaintiffs' Executive Committee (*id.* at 4–6), and fourteen attorneys to the Steering Committee (*id.* at 6–7). There is no scarcity of qualified attorneys on Plaintiffs' side competent to represent the class's interests.

Termination of Mr. Cotchett and Mr. Molumphy as class counsel will leave intact the bulk of the current representation structure, and will insulate the class from the very real possibility that future infractions by Mr. Cotchett and Mr. Molumphy will impair the class's interests. *See supra*.

* * *

Termination as counsel is a significant sanction, and it is not one Apple requests lightly. But Mr. Cotchett and Mr. Molumphy have not only knowingly violated the Protective Order entered by this Court, they also have evinced in writing their disregard for the importance of the protections set forth in that order. They have given every indication that they intend to continue to defy this Court's orders and refuse to afford Apple's confidential documents the protections agreed to by the parties. Whether under Rule 37 and Rule 16 or under the inherent authority of the Court, termination of Mr. Cotchett's and Mr. Molumphy's appointment as class counsel, including as Interim Co-Lead Counsel, is the most appropriate remedy.

**B. The Court Should Prohibit Mr. Cotchett And Mr. Molumphy From Viewing Apple's Confidential Documents**

In addition, Mr. Cotchett and Mr. Molumphy should be prohibited from viewing Apple's confidential documents. This lesser sanction does not require violation of any particular ethical rule, but rather requires this Court only to acknowledge the facts before it—Mr. Cotchett and Mr. Molumphy have openly violated the Protective Order and have refused to acknowledge those violations. As detailed above, their expressed disregard for the procedures and protections set forth in the Protective Order leaves Apple with the firm and reasonable belief that they will not adhere to the Protective Order in the future. Only by shielding Apple's documents from Mr. Cotchett and Mr. Molumphy can their confidentiality be preserved.

Similar sanctions were sought and awarded in *Life Technologies*, 2012 WL 1600393. There, the receiving party's attorney forwarded documents designated by the producing party as "Outside Attorneys' Eyes Only" to the CEO of his client. *Id*. at *1. The CEO thereafter disseminated copies of those documents to other parties and non-parties. *Id.* Upon realizing the mistake, the receiving party's attorney immediately instructed the client's CEO to cease use of the documents and destroy all copies of the documents. *Id.* The CEO largely did so, and instructed those individuals to whom he had

disseminated the materials to do the same. *Id.* at *2. Upon entry of a protective order and disclosure of the issue to the producing party, the producing party moved for sanctions, seeking, among other things, to preclude the receiving party's attorney from further access to confidential documents. *Id.* at *3–5. The district court granted that relief, explaining that even in the absence of evidence of bad faith and willfulness, barring the attorney's access to further confidential information was the most appropriate remedy. *Id.* at *11.

Likewise, in *Visto Corp. v. Seven Networks, Inc.*, No. 03-CV-333, 2006 WL 3741891 (E.D. Tex. Dec. 19, 2006), the court barred two attorneys from viewing confidential documents where one attorney had used confidential materials to participate in the prohibited prosecution of a related patent, and the other had shared the documents with the client after redacting the information she believed to be confidential. *Id.* at *8. As for the second attorney, the district court acknowledged the party's contention that its attorney had "operated in good faith" in redacting the confidential information, but held that "a lawyer operating under the terms of a Protective Order issued by this court has no right to resort to self-help when he or she views the provisions of that order to be burdensome or onerous." *Id.*

Mr. Cotchett's and Mr. Molumphy's misconduct here is comparable to, and even more egregious than, that of the attorneys in *Life Technologies* and *Visto*. As in those cases, here, there have been unambiguous violations of the Protective Order. Mr. Cotchett's protestations to the breadth of Apple's confidentiality designations are of no import, because the Protective Order gives neither party the "right to resort to self-help when he or she views the provisions of that order to be burdensome or onerous." *Id.* But unlike in those cases, Mr. Cotchett and Mr. Molumphy have neither admitted their misconduct nor agreed to follow the Protective Order in their future. Rather, they have levied attacks against Apple's counsel in a transparent attempt to deter Apple from exercising its rights under the Protective Order. And, as further detailed above, they have continued to ignore the procedures set forth in the Protective Order for challenging confidentiality designations, objecting to redactions of the transcript from the March 7 hearing despite there being an established procedure for resolving such disputes. (Protective Order at 8, § 5.3(b).) Such misconduct goes well beyond that in *Life Technologies* and *Visto*, and warrants at least the sanctions levied in those cases.

Such a sanction, again, would do little harm to the class. There are dozens of other attorneys

appointed by the Court to assist the class in the prosecution of this case. Indeed, there is a discrete committee—the "Offensive Discovery and ESI Coordination Committee"—responsible for "coordinating all discovery propounded on behalf of the Plaintiffs" and capable of working with lead counsel to filter out confidential information for Mr. Cotchett and Mr. Molumphy. (Appointment Order at 10–11.) And of course, Mr. King of Kaplan Fox would still retain access to confidential information. The class would not be deprived of Mr. Cotchett's and Mr. Molumphy's strategic advice and cooperative leadership, and instead would be protected from future misconduct by Mr. Cotchett and Mr. Molumphy that could harm the class's interests. *See supra*. Thus, the Court should also prohibit them from viewing Apple's confidential documents and information.[7]

## IV. CONCLUSION

For the foregoing reasons, Apple requests that its Motion for Sanctions be GRANTED and that this Court enter an order:

1. Terminating Mr. Cotchett and Mr. Molumphy as class counsel, including as Interim Co-Lead Counsel, in this action; and

2. Prohibiting Mr. Cotchett and Mr. Molumphy from viewing, sending, receiving, sharing, handling, or otherwise interacting with any material designated by Apple as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to the Protective Order (Dkt. 224).

Respectfully submitted,

DATED: April 9, 2019

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Theodore J. Boutrous, Jr.*
Theodore J. Boutrous, Jr.

*Attorneys for Defendant Apple Inc.*

[7] Apple reserves its rights to seek its attorneys' fees and costs incurred in bringing and litigating this Motion. *See, e.g.*, *Clearly Food & Beverage Co. v. Top Shelf Beverages, Inc.*, No. 13-CV-1763, 2015 WL 1263338, at *2–3 (W.D. Wash. Mar. 18, 2015) (awarding attorneys' fees for violations of protective order); *LifeScan Scotland, Ltd. v. Shasta Techs. LLC*, No. 11-CV-4494-WHO, 2013 WL 5949629, at *4 (N.D. Cal. Nov. 6, 2013) (awarding attorneys' fees for violations of protective order).

**CERTIFICATE OF SERVICE**

I, Theodore J. Boutrous, Jr., hereby certify that on April 9, 2019, the foregoing **NOTICE OF MOTION AND MOTION FOR SANCTIONS AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**, attachments thereto, and Proposed Order therefor were filed electronically through the CM/ECF system, copies of which were sent by First Class Mail to the following individuals unable to accept them via the electronic filing system:

Abdul Mohammed
258 East Bailey Rd Apt. C
Naperville, IL 60565

Andrew Kierstead
Hobson Bernardino & Davis LLP
444 South Flower Street
Suite 3100
Los Angeles, CA 90071

Brian Hogue
103158
c/o ISC C
H-3
P.O. Box 70010
Boise, ID 83707

Cathleen M. Combs
Edelman Combs Latturner & Goodwin, LLC
120 South LaSalle Street
18th Floor
Chicago, IL 60603

Noah Benjamin Novogrodsky
Univ Toronto/Faculty Of Law
84 Queen's Park
Toronto ON M5S 2C5

Peter Wasylyk
Hobson Bernardino & Davis, LLP
444 South Flower Street, Suite 3100
Los Angeles, CA 90071

Randall Robinson Renick
Hadsell, Stormer, Richardson & Renick, LLP
128 N. Fair Oaks Ave.
Pasadena, CA 91103

Richard Brian Rosenthal
Law Offices of Richard B. Rosenthal, PA
169 E Flagler St. Ste 1422
Miami, FL 33131-1212

Richard I Woolf
Boyle Brasher LLC
One Metropolitan Square
211 North Broadway, Suite 2300
St. Louis, MO 63102

Richard S. Wayne
Strauss & Troy
Federal Reserve Building
150 E. Fourth St.
Cincinnati, OH 45202-4018

Steven Saul
Eggnatz Pascucci
5400 S. University Drive, Ste. 417
Davie, FL 33328

By: *<u>/s/ Theodore J. Boutrous, Jr.</u>*
Theodore J. Boutrous, Jr.