UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE: APPLE INC. DEVICE
PERFORMANCE LITIGATION

Case No. 18-md-02827-EJD

**ORDER GRANTING MOTION FOR
RECONSIDERATION; GRANTING IN
PART AND DENYING IN PART
MOTION TO DISMISS**

Re: Dkt. Nos. 177, 236-1, 272, 281, 282,
285, 307, 308.

This putative class action against Apple Inc. ("Apple") is brought by Plaintiffs from across

the U.S. as well as multiple foreign countries. Presently before the Court are several pending

motions.

In its order granting in part and denying in part Apple's motion to dismiss the Consolidated

Amended Complaint (CAC), the Court denied Apple's motion with respect to the non-U.S.

Plaintiffs. Apple now asks the Court to reconsider its ruling on that issue. Dkt. No. 236-1. The

Court will GRANT Apple's motion for reconsideration.

Apple moves to dismiss claims in the Second Amended Complaint ("SAC"). Dkt. No. 272

("MTD"). The Court GRANTS in part and DENIES in part Apple's motion to dismiss.

Along with their Opposition to Apple's motion to dismiss, Plaintiffs separately filed

"Objections" to Apple's motion. Dkt. No. 282. Plaintiffs "request[ed] leave to file these objections

as a separate document" because of "the seriousness of Plaintiffs' objections and the large number

of irregularities in the MTD." *Id.* at 1. Plaintiffs' request is procedurally inappropriate. *See* Civ.

L.R. 7-3(a) ("Any evidentiary and procedural objections to the motion must be contained within

the brief or memorandum."). Plaintiffs' offer no compelling explanation for their attempt to

circumvent the page limits that this Court set for briefing on the motion to dismiss. Accordingly,

Plaintiffs' request is DENIED, and the Court will not consider this document. Plaintiffs shall not

submit any billing requests related to production of this extraneous document.

In addition, Plaintiffs' Opposition is accompanied by the Declaration of Joseph Cotchett, which includes as exhibits additional documents produced by Apple in discovery or allegedly downloaded from the Internet Archives as copies of Apple's own webpages. Dkt. No. 280-1. These documents are not properly before the Court as part of the motion to dismiss, so the Court does consider them. *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994) ("Generally, a district court may not consider any material beyond the pleadings in a ruling on a Rule 12(b)(6) motion." (citation omitted)) *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1123 (9th Cir. 2002).

The parties' requests for judicial notice are before the Court. Dkt. Nos. 177, 281. The Court GRANTS Apple's request to take judicial notice of the hardware warranty. Dkt. No. 177. The Court DENIES Plaintiffs' request to take judicial notice of documents produced during discovery. Dkt. No. 281.

Finally, the parties have each filed administrative motions for leave to file statements of recent decision. Dkt. Nos. 307, 308. These administrative motions are improper under Civil Local Rules 7-3(d)(2) and 7-11. The Court DENIES these administrative motions.

## I. BACKGROUND

In its order granting in part and denying in part the motion to dismiss, the Court discussed the background facts in detail. Dkt. No. 219. The Court will not repeat that discussion here and assumes familiarity with it. At a high level, this case involves allegations that Apple attempted to conceal iPhone battery defects and that Apple failed to adequately disclose that certain software updates would affect device performance.

On July 2, 2018, Plaintiffs filed the CAC, asserting 76 causes of action under one federal statute, all 50 states' statutes, and the common law, on behalf of a class including consumers from the 50 states and other territories of the United States as well as multiple foreign countries. Dkt. No. 145. After considering the parties' proposals for proceeding with a motion to dismiss a limited set of claims, the Court ordered that Apple's motion to dismiss the CAC would be limited to

counts one through six of the CAC and the threshold issues of whether Plaintiffs could assert claims on behalf of non-U.S. residents and whether Plaintiffs' claims extended to certain iPad devices. *See* Dkt. No. 163 at 1. On August 9, 2018, Apple filed its motion to dismiss the CAC. Dkt. No. 176. On October 1, 2018, the Court granted in part and denied in part Apple's motion to dismiss the CAC. Dkt. No. 219 ("Order").

With respect to the Foreign plaintiffs, the Court noted that "[m]any of the [practical and constitutional] concerns that Apple raises are substantial and potentially well-founded;" however, the Court explained that "[t]he issues identified by Apple are better addressed at a later stage of the proceedings, such as class certification." Dkt. No. 219 at 8. Except with respect to claims under the California False Advertising Law, the Court concluded that non-U.S. Plaintiffs could invoke California law. *Id.* at 13. The Court also determined that the Computer Fraud and Abuse Act applied extraterritorially, and denied Apple's request to dismiss the U.K. Plaintiffs' claims under the doctrine of international comity or forum non conveniens. *Id.* at 15, 17.

On November 15, 2018, Apple filed a motion for leave to file a motion for reconsideration of the Court's Order and motion for reconsideration. Dkt. No. 236 ("Mot. for Reconsideration"). Apple's motion is limited to the Court's choice-of-law conclusion that foreign Plaintiffs may invoke California law. On December 4, 2018, the Court granted Apple's motion for leave to file a motion for reconsideration. Dkt. No. 246. The Court deemed filed the attached motion for reconsideration and invited responsive briefing. *Id.* at 2. Plaintiffs filed an opposition, Dkt. No. 266 ("Opp. re Reconsideration"), and Apple filed a Reply to MTD, Dkt. No. 269 ("Reply re Reconsideration").

Apple filed the instant motion to dismiss on January 24, 2019. Dkt. 272. Plaintiffs opposed the motion to dismiss, requested the court take judicial notice of various documents, and sought leave to file additional objections to the motion to dismiss. Dkt. Nos. 280 ("Opp. To MTD"), 281, 282. Apple filed a reply. Dkt. No. 286. The Court heard oral argument from the parties on March 7, 2019. Dkt. No. 302.

## II.    LEGAL STANDARDS

Motions for reconsideration are disfavored and "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed *clear error*, or if there is an intervening change in the controlling law." *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (per curiam) (internal quotation and citation omitted). Furthermore, "[a] motion for reconsideration 'may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

The Northern District of California has local rules governing motions for reconsideration. Parties may only file a motion for reconsideration with leave of the Court. Civ. L.R. 7-9(a). A motion for reconsideration may be made on three grounds: (1) a material difference in fact or law exists from that which was presented to the court, which, in the exercise of reasonable diligence, the moving party did not know at the time of the order for which reconsideration is sought; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the court to consider material facts or dispositive legal arguments. Civ. L.R. 7-9(b). The moving party may not repeat any oral or written argument previously made. Civ. L.R. 7-9(c).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of claims alleged in the complaint. Fed. R. Civ. P. 12(b)(6); *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When deciding whether to grant a motion to dismiss, the court must construe the alleged facts in the light most favorable to the plaintiff. *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.  Dismissal "is proper only where there is no cognizable legal

theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court's review is limited to the pleadings, documents incorporated-by-reference in the pleadings, and matters of which the court may take judicial notice. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

Consumer-protection claims that sound in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003); *In re Apple & AT & T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1075 (N.D. Cal. 2011). Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The circumstances constituting the fraud must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (alteration in original) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). Therefore, a party alleging fraud must set forth "the who, what, when, where, and how" of the misconduct. *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

## III.     REQUESTS FOR JUDICIAL NOTICE

The Court has considered the parties' briefing regarding Apple's request for judicial notice in support of its motion to dismiss the CAC, Dkt. Nos. 177, 192, as well as Plaintiffs' request for judicial notice in support of the opposition to the motion to dismiss the SAC and Apple's reply, Dkt. Nos. 281, 287. The Court might properly consider these documents under the theory of judicial notice or the theory of incorporation by reference. Although the parties make arguments under both theories, they fail to distinguish between them.

Federal Rule of Evidence 201 "permits a court to notice an adjudicative fact if it 'not subject to reasonable dispute.' A fact is 'not subject to reasonable dispute if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Khoja*, 899 F.3d at 999 (quoting Fed. R. Evid. 201). However, "a

court cannot take judicial notice of disputed facts contained in such public records." *Id.*
"[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as
though they are part of the complaint itself." *Id.* at 1002. The court may incorporate a document
"if the plaintiff refers extensively to the document or the document forms the basis of the
plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Accordingly, a
document may be incorporated even if it is never referenced directly in the complaint if the claim
necessarily depended on the document. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.
1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem.
Co.*, 443 F.3d 676, 681-82 (9th Cir. 2006) (incorporating employee health plan where the claims
were premised upon plaintiff's coverage under the plan).

Apple requests the Court take judicial notice of the hardware warranty. Dkt. 177.
Incorporation by reference is proper here because Plaintiffs' battery defect theory necessarily
depends upon the hardware warranty, as discussed in more detail below with respect to Apple's
motion for reconsideration. The Court also finds persuasive other cases incorporating by reference
hardware warranties in cases alleging violations of consumer protection laws arising from use of
products. *See Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1103 (N.D. Cal. 2007); *Cover v.
Windsor Surry Co.*, 2016 WL 520991, at *1 n.1 (N.D. Cal. Feb. 10, 2016).

Plaintiffs argue that judicial notice is improper because the authenticity of the hardware
warranty is subject to dispute. Dkt. No. 192 at 3. However, Plaintiffs do not actually dispute the
only fact that Apple seeks to rely on: the fact that the hardware warranty selects the law of the
country of purchase. Thus, Plaintiffs argument against judicial notice is unpersuasive. *Cf. Kohja*,
899 F.3d at 1001-02 (judicial notice was proper when the court only took notice of an undisputed
filing date on an application). Plaintiffs also argue that judicial notice is improper because
Plaintiffs do not state any warranty claims, and therefore the hardware warranty is not relevant.
Dkt. No. 192 at 4-5. As discussed further below with respect to Apple's motion for
reconsideration, the Court finds that Plaintiffs' battery defect claims arise under the hardware

warranty. Accordingly, Plaintiffs' argument against judicial notice on this basis is unpersuasive. Finally, the case relied upon by Plaintiffs for the proposition that courts have declined to take notice of Apple's hardware warranty is distinguishable because in that case, the plaintiffs only alleged that their devices' software did not function as advertised. *See In re: iPhone 4S Consumer Litig.*, 2013 WL 3829653, *7 (N.D. Cal. Jul. 23, 2013) (declining to take judicial notice of Apple's hardware warranty where the complaint did not allege any warranty claims).

Plaintiffs request the Court take judicial notice of (1) an email produced by Apple during discovery, and (2) versions of Apple's "Battery Service and Recycling" webpage from 2014-2017, available from the Internet Archive's Wayback Machine. Dkt. No. 281. As to the email, this is not a proper subject of judicial notice because the meaning of the email is subject to reasonable dispute. Assuming that content from the Internet Archive's Wayback Machine may properly be the subject of judicial notice, such content is not a proper subject of judicial notice at the motion to dismiss stage when it is not referenced or relied upon in the complaint. *See Durgin v. Sharer*, 2017 WL 2214618, at *4 (C.D. Cal. Jan. 10, 2017) ("Even documents properly subject to judicial notice . . . cannot be used to amend the complaint."). The SAC references the statement contained on the Battery Service and Recycling page but contains no allegations as to the history of that statement. Plaintiffs request for judicial notice appears to be an attempt to amend the pleadings to add more allegations related to reliance and materiality. *See, e.g., Freeney v. Bank of Am. Corp.*, 2015 WL 4366439, at *17 (C.D. Cal. July 16, 2015) ("Plaintiffs' attempt to amend their complaint through judicial notice to include facts purportedly demonstrating [elements of their legal theory] is improper"); *Oklahoma Firefighters Pension & Ret. Sys. V. IXIA*, 50 F. Supp. 3d 1328, 1350 (C.D. Cal. 2014) ("Plaintiffs cannot utilize the [judicially noticeable] documents to amend the complaint and defeat defendants' motion to dismiss."). Even if the Court were to take judicial notice of the documents requested by Plaintiffs, that would not change the Court's analysis of the motion to dismiss the SAC.

On March 15, 2019, Plaintiffs filed a statement of recent decision, and three days later,

Apple filed a statement of recent decision. Dkt. Nos. 307, 308. The Court will not consider any arguments attached to these statements by either party. *See* Civ. L.R. 7-3(d)(2) (allowing a statement of recent decision "containing a citation to and providing a copy of the new opinion—*without argument*.") (emphasis added). The Court has considered the opinions that both parties refer it to, and they do not change the Court's analysis. In *Zaragoza v. Apple Inc.*, 2019 WL 1171161, at *10 (N.D. Cal. Mar. 13, 2019) the court reasoned that incorporation by reference was improper because "the complaint does not rely on [the iTunes contract] at all—implicitly or explicitly." Here, in contrast, the battery defect theory in the SAC directly relies on the hardware warranty. In *Golub v. Gigamon Inc.*, 2019 WL 1130478, at *6 (N.D. Cal. Mar. 12, 2019), the court took judicial notice over plaintiffs' objections of several documents because the documents were referenced in the complaint and plaintiffs did "not raise doubts about the authenticity or accuracy of the [documents]." *Golub* is consistent with this Court's reasoning in the instant case.

For the foregoing reasons, the Court GRANTS Apple's request for judicial notice of the hardware warranty, Dkt. No. 177, and DENIES Plaintiffs' request for judicial notice of emails and webpages from the Internet Archive, Dkt. No. 281.

## IV.    MOTION FOR RECONSIDERATION

Apple argues that the Court should reconsider its ruling denying Apple's motion to dismiss the non-U.S. Plaintiffs' claims for three reasons: (1) the Court failed to consider the entirety of the both the hardware warranty and the Software License Agreement ("SLA"), which demonstrate that the hardware warranty's choice of the law of the country of purchase should apply; (2) even if the SLA applies, the Court failed to consider whether California law was "contrary to a fundamental policy" of foreign jurisdictions that have a "materially greater interest" in having their law applied; and (3) if it was unclear whether the SLA or hardware warranty applied, under general California choice-of-law principles, California law should not apply. Mot. for Reconsideration at 7. Except as noted below with respect to the additional foreign law expert declarations that Apple submitted with its motion, all of Apple's arguments assert a manifest

Case No.: 18-md-02827-EJD
ORDER GRANTING MOTION FOR RECONSIDERATION; GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

failure by the Court to consider material facts or dispositive legal arguments. In order to successfully argue for reconsideration on this basis, Apple must show that the arguments "were presented to the Court before such interlocutory order." Civ. L.R. 7-9(b)(3).

In its previous Order, the Court granted with leave to amend Apple's motion to dismiss the FAL claims of non-U.S. Plaintiffs. Order at 17. Apple's motion for reconsideration does not apply to that part of this Court's Order, which remains undisturbed.

### A. Whether the SLA Applies to Plaintiffs' Claims

In its previous Order, the Court concluded that *Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148 (Cal. 1992) governed the choice of law analysis. Order at 9. The Court reasoned that Plaintiffs' causes of action arise from or relate to the SLA, and that "[t]he language of the choice-of-law clause at issue in *Nedlloyd* is indistinguishable from the language" of the choice-of-law clause in the SLA. *Id.* at 10-11. In addition, the Court concluded that the hardware warranty "explicitly exempts 'consumable parts, such as batteries' from its coverage." *Id.* at 12. Accordingly, the Court concluded that the SLA's choice of California law applied to all of Plaintiffs' claims.

Apple argues that there was a manifest failure by the Court to consider material facts showing that (1) Plaintiffs' claims fell within the scope of the hardware warranty rather than the SLA, and (2) the SLA did not indicate that California law would govern all aspects of Apple's relationship with its customers. Mot. for Reconsideration at 8.

### B. Whether Plaintiffs' Claims Fall Within the Scope of the SLA

Apple argues that "Plaintiffs' core theory . . . is based on an alleged problem with their devices' *hardware*," and that "their Apple devices' software clearly plays a secondary role in their theory of liability." Mot. for Reconsideration at 11. Apple argues that this is not a license dispute, and the SLA does not give rise to any of Plaintiffs' causes of action. *Id.* at 12. In addition, Apple challenges the Court's previous conclusion that the hardware warranty does not apply to batteries. Apple argues that the Court failed to consider the full relevant provision which states that the

warranty does not apply "to consumable parts, such as batteries . . . *unless failure has occurred due to a defect in materials or workmanship*." Dkt. No. 177-1 Ex. A (emphasis added). Thus, Apple argues, the hardware warranty governs all battery issues and specifies that only defects to design or workmanship entitle the customer to the remedy of a free replacement battery. Mot. for Reconsideration at 13.

Apple's argument is persuasive. Specifically, the Court agrees that there was a manifest failure in its earlier order to consider the entirety of the hardware warranty. Properly construed, the hardware warranty appears to apply to all battery issues, and the express limitations appear to be with respect to Apple's liability rather than with respect to the coverage of the warranty. Plaintiffs offer no persuasive argument to the contrary. In addition, the Court failed to consider whether some of Plaintiffs' causes of action were primarily about their devices' hardware. On reconsideration, the Court concludes that Plaintiffs' battery defect claims are based on a problem with their devices' hardware and thus arise under the hardware warranty. As discussed below with respect to Apple's motion to dismiss the SAC, the Court will grant Apple's motion to dismiss Plaintiffs' battery defect claims.

The surviving claims relate to Plaintiffs' theory that Apple failed to adequately disclose the function of the iOS updates. These claims directly arise from the scope of the authorization in the SLA and are thus governed by the SLA's choice of law provision. The Court notes that in its motion to dismiss the second amended complaint, Apple cites approvingly an opinion dismissing a breach of implicit contract claim related to an iOS update because the SLA "is an express contract that governs the same subject matter." MTD at 25-26 (citing *Wofford v. Apple Inc.*, 2011 WL 5445054, at *2, *4 (S.D. Cal. Nov. 9, 2011)). Apple cannot have it both ways. If the SLA defeats Plaintiffs' claims of implicit contract related to iOS updates, the SLA is also applicable to Plaintiffs' computer intrusion claims arising from the same iOS updates. Because the Court concludes that the only surviving claims relate to the SLA, the Court need not reach Plaintiffs' argument that the hardware warranty is not a contract.

Case No.: 18-md-02827-EJD
ORDER GRANTING MOTION FOR RECONSIDERATION; GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

### C. Whether the SLA Selects California Law

In *Nedlloyd*, two commercial entities had entered into a single shareholders' agreement to establish a joint venture.[1] 834 P.2d at 1149-50. That agreement defined the entirety of the parties' relationship and their obligations to each other, and it contained a single, "unrestricted" choice-of-law provision that pointed unequivocally to Hong Kong law. *Id.* at 1154. Under those circumstances, the court interpreted the choice-of-law provision broadly based on the parties' intent to have a single jurisdiction's law govern all causes of action arising out of the agreement.

Apple attempts to distinguish the SLA from the contract at issue in *Nedlloyd* on two grounds: (1) Apple's relationship with its customers is governed by the SLA *and* the hardware warranty, which have their own separate choice-of-law provisions; and (2) the SLA contains at least seven provisions that expressly recognize local law. Mot. for Reconsideration at 10.

As an initial matter, Apple failed entirely to raise these arguments in its briefing on the motion to dismiss the CAC. Because Apple could have raised these arguments, this Court need not consider them on a motion for reconsideration. *See Marlyn Nutraceuticals*, 571 F.3d at 880 ("A motion for reconsideration may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." (internal quotation and citation omitted)). Even proceeding to consider the arguments, they are not persuasive. As to Apple's first argument, the Court acknowledges that the parties' relationship in *Nedlloyd* was governed entirely by a single contract, whereas the SLA only governs Apple's relationship with its customers as to their use of the software. But this is a distinction without a meaning. As the Court has already explained, Plaintiffs' computer intrusion claims arise from or relate to the SLA. Thus, the fact that the SLA might not govern other aspects of Apple's relationship with Plaintiffs is irrelevant. As to Apple's second argument, Sections 2(f) and 5(j) of the SLA require customers to use iOS software in accordance with local law. Dkt. No. 145 Ex. 5. Sections 7.1, 7.6, and 8 advise

---

[1] Neither party contests that *Nedlloyd* applies to the analysis of a consumer adhesion contract. *See Washington Mut. Bank, FA v. Super. Ct.*, 15 P.3d 1071, 1079 (Cal. 2001) (applying *Nedlloyd* to a consumer adhesion contract).

customers that local law may prohibit the application of the SLA's limitations on warranties and damages. *Id*. Section 10 notes that the customer's right to export is controlled by U.S. law and the laws of the jurisdiction where the iOS software was obtained. *Id.* And Section 13 provides that the English version of the SLA controls, unless prohibited by local law. *Id.* Contrary to Apple's characterization of these provisions, nothing indicates that they were intended to alter the SLA's selection of California law. At most, these provisions indicate that the SLA's limitations on warranties and damages do not apply when they conflict with local law.

## D. Whether California Law is Contrary to a Fundamental Policy of a Foreign Jurisdiction

Under *Nedlloyd*, once the Court concludes that the parties selected California law pursuant to the SLA, the Court must consider whether California law would be contrary to a fundamental policy of a foreign jurisdiction that has a materially greater interest in having its law applied. *See Nedlloyd*, 834 P.2d at 1152. In its previous order, this Court acknowledged this prong of *Nedlloyd*, but concluded that "the Court has not located or been pointed to a fundamental policy of a foreign jurisdiction that would be undermined by applying California law in this case." Order at 12-13.

The Court's order on the motion to dismiss the CAC failed to acknowledge the declarations from experts on foreign law that Apple previously submitted. *See* Dkt. Nos. 176-1, 176-2, 176-3, 176-7, 176-9, and 176-10. These declarations explain key differences between California law and the laws of Nigeria, Turkey, Italy, Japan, Peru, and China, including specific foreign procedures regulating (1) jurisdiction over consumer disputes, (2) the ability of parties to contract around each country's laws, and (3) the structure and availability of class actions. In addition, along with its motion for reconsideration, Apple has submitted an additional 39 declarations. *See* Dkt. No 236, Appendix and Exs. 1-39.[2] Apple's additional foreign law

---

[2] Apple argues that "time constraints of the original briefing" precluded it from obtaining declarations regarding every foreign country, "and [Apple] reserved the right to supplement the declarations" submitted with the motion to dismiss the CAC. Mot. for Reconsideration at 14 n.4. Plaintiffs include two objections to these declarations. Opp. re Reconsideration at 2. The Court may consider on a motion for reconsideration documents which "in the exercise of reasonable

declarations identify additional potential conflicts between California law and the laws of foreign jurisdictions, including (1) whether foreign countries would enforce a choice-of-law provision that points to the law of a country with less robust consumer protection laws, (2) whether foreign countries use the preponderance of the evidence standard, and (3) whether foreign countries recognize punitive damages. Mot. for Reconsideration at 15. These declarations appear to show a conflict with fundamental policies of a foreign jurisdiction. *See e.g., Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012) (identifying differences between the consumer protection laws of California and other states).

In response, Plaintiffs argue that even if there is a conflict between California law and a fundamental policy of a foreign jurisdiction, Apple fails to identify any foreign jurisdiction with a greater interest in having its law applied. *See Nedlloyd*, 834 P.2d at 1152 (reasoning that if there is a conflict with a fundamental policy of a foreign jurisdiction, the Court must consider whether that jurisdiction has a materially greater interest in having its law applied). California has a strong policy interest favoring the enforcement of freely negotiated choice-of-law clauses. *See Wash. Mut. Bank*, 15 P.3d at 1078; *Nedlloyd*, 834 P.2d at 1150-51. Moreover, Plaintiffs argue that Apple is a California corporation and all of the key activity in this case occurred in California. Opp. re Reconsideration at 11. Plaintiffs argue that Apple sells its devices in foreign countries through separate entities that are not parties to the present action, and thus the foreign countries might have no interest in application of their consumer protection laws. Opp. re Reconsideration at 11-12. Finally, Plaintiffs argue that Apple's foreign law declarations "contain serious deficiencies." Opp. re Reconsideration at 13.

The Court's previous conclusion that it had not been pointed to a conflict with a fundamental policy of a foreign jurisdiction was in error. However, it is premature to conduct a

---

diligence" the moving party did not know about at the time of the order for which reconsideration is sought. *See* Civ. L.R. 7-9(a). Because the Court concludes that it is premature to conduct a choice-of-law analysis, the Court need not decide whether to rely on the additional declarations and need not consider Plaintiffs' objections.

detailed choice-of-law analysis at this stage of the litigation. Courts have declined to conduct such an analysis at the motion to dismiss stage where further development of the record is necessary to properly decide the choice-of-law question. *See Fonseca v. Goya Foods, Inc.*, 2016 WL 4698942, at *3 (N.D. Cal. Sept. 8, 2016) (collecting cases). It is not even clear that the Court can properly consider Apple's declarations without converting the motion to dismiss into a motion for summary judgment. *See Khoja*, 899 F.3d at 998 ("When matters outside the pleadings are presented to and not excluded by the court, the 12(b)(6) motion converts into a motion for summary judgment." (internal quotation and citation omitted)). Even if the Court could consider these declarations, the record and the parties' briefing are inadequate at this stage for the Court to determine whether any foreign jurisdiction has a greater interest in having its law applied and, if so, whether there is a conflict with a fundamental policy of any foreign jurisdiction. In this vein, the Court also reiterates its earlier conclusion that the practical and constitutional "concerns that Apple raises are substantial and potentially well-founded." Order at 8. As with the complete choice-of-law analysis, the practical and constitutional concerns are also better addressed at a later stage in the litigation.

### E. Conclusion

Apple's motion for reconsideration is GRANTED. On reconsideration, Apple's motion to dismiss the foreign plaintiffs is DENIED WITHOUT PREJUDICE.[3]

## V.   MOTION TO DISMISS

### A. Sufficiency of Individual Pleadings

As a threshold issue to the motion to dismiss the SAC, Apple contends that Plaintiffs fail to include sufficient individualized allegations about any named Plaintiffs.[4] MTD at 6. Apple

---

[3] Apple's motion to dismiss includes a condensed version of the arguments presented in its motion for reconsideration. MTD at 34-35. Because the Court dealt with these arguments in addressing the motion for reconsideration, the Court will not address this section of Apple's motion to dismiss.

[4] Plaintiffs contend, by reference to their separately filed Objections, that Apple waived this argument by failing to raise it in its motion to dismiss the CAC. Opp. to MTD at 23. Because Plaintiffs' Objections are not properly before this Court, this Court need not consider Plaintiffs'

contends that no named Plaintiff pleads an injury-in-fact, and Plaintiffs' claims should be dismissed for lack of Article III standing or for failure to comply with Rules 8(a) and 9(b). *Id.*

### 1. Legal Standard

Article III standing requires the plaintiff to have suffered an injury-in-fact. *See Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). Even at the pleading stage, the plaintiff must clearly allege facts demonstrating an injury that is both concrete and particularized. *See Spokeo*, 136 S.Ct. at 1547. "In class actions, the named representatives must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) (quoting *Pence v. Andrus*, 586 F.2d 733, 736-37 (9th Cir. 1978)).

### 2. Allegations Regarding Named Plaintiffs

There is no dispute that Plaintiffs include *some* specific allegations about each named plaintiff. Specifically, Plaintiffs argue that they allege the device used, the date of purchase, the state or country of residence, the iOS version(s) used, and—for at least some named plaintiffs— when specific updates were downloaded and the location where devices were purchased. Opp. to MTD at 23; *see* SAC ¶¶ 31-270.

Plaintiffs concede that they do not plead that any named plaintiff personally experienced an Unexpected Power Off ("UPO"), and they do not plead that any named plaintiff experienced manifestations of the throttling software. Opp. to MTD at 23. Plaintiffs argue that their theory of damages does not require them to make such individual pleadings. *Id.* Plaintiffs also do not challenge Apple's contention that Plaintiffs fail to plead which representations any individual

---

argument. Even if the Court were to consider this argument, a motion to dismiss for lack of subject matter jurisdiction may be made at any time, and Apple is entitled to raise additional Rule 12(b)(6) defenses in its motion to dismiss the SAC. *See Wilson-Combs v. Cal. Dep't of Consumer Affairs*, 555 F. Supp. 2d 1110, 1113 n.3 ("[U]nder Rule 12(g), a party does not waive a ground for moving to dismiss for failure to state a claim by not including that ground in an earlier motion to dismiss." (citation omitted))

1    plaintiff was exposed to or relied on. MTD at 7; Reply to MTD at 3. From the Court's own

2    review, the allegations appear consistent with Apple's contention that Plaintiffs do not plead

3    which, if any, representations individual plaintiffs were exposed to or relied upon. As discussed

4    further below, Plaintiffs appear to concede their affirmative misrepresentation theory on this basis,

5    and Plaintiffs argue that reliance can be presumed for their omissions theory. Because the parties

6    agree that Plaintiffs fail to make any individual allegations regarding UPOs, throttling, and

7    reliance, the parties' arguments are about whether Plaintiffs were required to make such individual

8    allegations.

9         The Court will address Plaintiffs' failure to make individual allegations regarding UPOs

10   and throttling in this section. The Court will address reliance in subsequent sections with respect

11   to Apple's motion to dismiss Plaintiffs' specific claims.

12            **3.  The Defect Theory (UPOs)**

13        Apple argues that Plaintiffs defect theory is fatally flawed because no named plaintiff

14   pleads that their iDevice had any performance issues. MTD at 7. Instead, Apple argues, Plaintiffs

15   improperly rely on benchmark tests to support an inference that all or nearly all devices

16   experienced reduced performance. MTD at 7. In addition, Apple argues that Plaintiffs rely on

17   conclusory allegations that, but for Apple's conduct, they would not have purchased an Apple

18   device or would have paid less for it. MTD at 7. Plaintiffs affirmatively state "[n]owhere does any

19   Plaintiff in this MDL base claims on *additional* damages caused by a [post-purchase] UPO." Opp.

20   to MTD at 24. Instead, Plaintiffs argue that the SAC adequately pleads damages for the defect

21   theory based on Plaintiffs' overpayment for devices at the moment of purchase. Specifically,

22   Plaintiffs argue that they adequately plead benefit of the bargain damages, overpayment, and full

23   price of the devices ¶¶ 523, 551, 615. Opp. to MTD at 24. According to Plaintiffs, none of these

24   theories require them to plead that any named plaintiff suffered any UPOs.

25        Apple identifies this Court's recent Order in *In re Apple Processor Litig.*, 2019 WL 79035

26   (N.D. Cal. Jan. 2, 2019) as persuasive authority. MTD at 6-7; Hr'g Tr. at 40:2-41:6. Plaintiffs

27

28   Case No.: 18-md-02827-EJD
     ORDER GRANTING MOTION FOR RECONSIDERATION; GRANTING IN PART AND
     DENYING IN PART MOTION TO DISMISS

argue that *Apple Processor* is distinguishable and therefore supports Plaintiffs' argument that they adequately plead damages in the instant case. In *Apple Processor*, this Court dismissed plaintiffs' claims for lack of standing because plaintiffs there relied on benchmark test results that showed that only some users experienced slower performance, and no plaintiffs alleged that they personally experienced slowing of their iDevices. *Id.* at *3-4. This Court contrasted the studies relied on in *Apple Processor* to cases where plaintiffs properly alleged injury based on studies showing that *all* consumers were affected uniformly by a defendant's conduct. *See John v. Whole Foods Mkt. Group, Inc.*, 858 F.3d 732, 737-38 (2d Cir. 2017) (plaintiff reasonably alleged injury based on study showing Whole Foods routinely and systemically mislabeled and overpriced products that plaintiff had a history of purchasing); *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1030 (N.D. Cal. 2016) (plaintiffs reasonably alleged injury based on allegation that *all* lattes were uniformly underfilled). *Apple Processor* also found that plaintiffs lacked standing based on plaintiffs' conclusory allegations that they would have paid less for their iDevices because plaintiffs failed to allege any facts about the market for their iDevices that would support a diminution in value theory. 2019 WL 79035, at *5-6.

Plaintiffs do not attempt to distinguish *Apple Processor* with respect to their failure to plead that any named plaintiff's device experienced performance issues. As in *Apple Processor*, here Plaintiffs identify evidence showing that *some* iPhones experienced performance issues. Plaintiffs explicitly disclaim any reliance on a theory based on their personal devices being defective. *See* Opp. to MTD at 24 ("Nowhere does any Plaintiff in this MDL base claims on *additional* damages caused by a later UPO.").

As to their theory of overpaying for their devices, Plaintiffs attempt to distinguish *Apple Processor* by arguing that, unlike plaintiffs there, in the instant case Plaintiffs allege numerous specific facts related to a price premium. Opp. to MTD at 26. In support, Plaintiffs identify three sets of allegations in the SAC: (1) Apple management knew about the battery issues. SAC ¶¶ 386, 399. (2) Of 2,063 iPhone users surveyed by Plaintiffs' counsel, 66.12% answered that they would

consider buying a different brand of smartphone if they knew their iPhone would experience UPOs and 88.51% answered that they would be unwilling to pay the same price for their iPhone if they knew it would experience UPOs.[5] SAC ¶¶ 410-14. (3) Apple offered discounted replacement batteries for iPhones. SAC ¶ 23.

The Court finds Plaintiffs attempt to distinguish *Apple Processor* unpersuasive. Plaintiffs fail to plead facts showing "a demonstrable effect on the market for their specific [phones.]" *Cahen v. Toyota Motor Corp.*, 717 F. App'x 720, 723 (9th Cir. 2017). In particular, Plaintiffs fail to plead any facts that show that they are unwilling or unable to use their devices, that they sold their devices at a loss, or any other facts that plausibly show any reduction in the actual market value of their devices. *See Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 973 (C.D. Cal. 2014) (finding that allegations of diminished value were insufficient to establish standing when plaintiffs did not claim that vehicles failed to work as described, did not claim that they were unwilling to use vehicles, and did not claim that they sold vehicles at a loss). As this Court noted in its order on Apple's motion to dismiss the CAC, "consumers are fully aware of the facts regarding software capability and battery capacity." Order at 33. Thus, the fact that battery life is important to consumers, as shown by Plaintiffs' allegations regarding their survey results, does not show "a demonstrable effect on the market for their specific [phones.]" *Cahen*, 717 F. App'x at 723 (noting that nearly all cars on the market included technologies that were potentially vulnerable to hacking, and accordingly this fact alone was insufficient to show loss in market value of a specific car). Plaintiffs' additional cases do not address this issue. *See Dickey v. Advanced Micro Devices, Inc.*, 2019 WL 251488, at *6 (N.D. Cal. Jan. 17, 2019) (addressing class certification predominance inquiry with respect to damages); *Hasemann v. Gerber Prod. Co.*,

---

[5] Because the Court must accept the truth of Plaintiffs' allegations at this stage, the Court accepts the survey results as true. However, the Court notes that "Plaintiffs cannot manufacture standing" based on conclusory allegations of diminution in value. *In re Apple Processor Litig.*, 2019 WL 79035, at *4. Plaintiffs' survey results are essentially conclusory allegations of diminution in value, except on behalf of additional, unidentified, iPhone users rather than on behalf of named Plaintiffs.

2016 WL 5477595, at *21 (E.D.N.Y. Sept. 28, 2016) (addressing pleading requirements under the Florida Deceptive and Unfair Trade Practices Act).

Plaintiffs theory of economic loss depends upon the presence of a defect which caused their iPhones to be worth less than what they paid for them. However, as discussed below, Plaintiffs fail to sufficiently allege any defect. Plaintiffs plead that their devices functioned exactly as expected at the time of purchase. Thus, Plaintiffs' injury theory is also not that they overpaid because their products did not actually function as advertised. Rather, their injury theory is that they overpaid due to concealment of what they label as a defect: the erosion over time of the battery. Because Plaintiffs fail to adequately plead the presence of any defect, their theory of economic harm similarly collapses. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009) (concluding that "the alleged loss in value does not constitute a distinct and palpable injury that is actual or imminent because it rests on a hypothetical risk . . . to other consumers.").

For the foregoing reasons, the Court GRANTS Apple's motion to dismiss for lack of standing Plaintiffs' claims that rely on their battery defect theory. For the reasons discussed below with respect to Plaintiffs' omissions theory, the Court will not grant leave to amend.

### 4. The Computer Intrusion Claims (Throttling)

In its previous Order, the Court largely denied Apple's motion to dismiss the computer intrusion claims (counts 1, 5, 6). Specifically, the Court concluded that the CAC adequately pleaded that Apple caused damage without authorization to Plaintiffs' devices based on allegations that iOS updates slowed processor speeds in the devices. Order at 19.

To the extent that Apple fashions its renewed attack on the SAC as raising the issue of standing rather than specificity of the pleadings, the Court DENIES Apple's motion to dismiss Plaintiffs' computer intrusion claims. Unlike with the defect theory, here the Court concludes that Plaintiffs adequately plead injury based on allegations that iOS updates were designed to reduce the processing speed of their phones in order to prevent UPOs. While Apple characterizes this as a power management feature, Apple does not contest that the iOS updates performed this function.

Case No.: 18-md-02827-EJD
ORDER GRANTING MOTION FOR RECONSIDERATION; GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
19

Because the SAC adequately alleges that the iOS updates affected all Plaintiffs alike, Plaintiffs have standing to bring these claims. *See Strumlauf*, 192 F. Supp. 3d at 1030 (plaintiffs reasonably alleged injury based on allegation that *all* lattes were uniformly underfilled).

## B. Affirmative Misrepresentation Theory

In its previous Order, this Court granted with leave to amend Apple's motion to dismiss Plaintiffs' claims under the CLRA, the "fraudulent" prong of the UCL, and the FAL to the extent that those claims are predicated upon an affirmative misrepresentation theory. Order at 29. Apple argues that the SAC fails to allege any actionable misrepresentation and fails to add any allegation of reliance on a specific alleged misrepresentation by any named plaintiff. MTD at 9. Plaintiffs offer no argument in support of their affirmative misrepresentation theory and appear to affirmatively concede the viability of the theory. Opp. to MTD at 20. Specifically, after noting the Court's Order dismissing the affirmative misrepresentation theory, Plaintiffs only argue "that these statements are also actionable as omissions." Opp. to MTD at 20 n.24. Moreover, Plaintiffs explain that "[f]or deceptive advertising, a plaintiff is not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements." Opp. to MTD at 22 n.26. As discussed above, Plaintiffs do not plead individual reliance by any named plaintiff on any alleged misrepresentation or false statement. Because Plaintiffs do not plead individual reliance and appear to concede their affirmative misrepresentation theory, the Court will grant Apple's motion to dismiss the affirmative misrepresentation theory.

Apple's motion to dismiss the CAC did not apply to Plaintiffs' common law fraud theories (Counts 7-9 and 13-15). However, because the elements of common law fraud are essentially identical to the statutory claims, courts frequently analyze them together. *See, e.g., Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 977-78 (N.D. Cal. 2016); *Elias v. Hewlett-Packard Co.*, 2014 WL 493034 at *5 (N.D. Cal. 2014). Plaintiffs agree that the Court's analysis of their statutory fraud theories also applies to their common law fraud theories. Opp. to MTD at 8 n.14. Accordingly, in the instant Order, the Court's discussion of Plaintiffs' affirmative

misrepresentation theory applies equally to the statutory and common law fraud claims.

Leave to amend is generally granted liberally, but it is properly denied when the amendments would be futile or when plaintiff has failed to cure deficiencies by amendments previously allowed. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, Plaintiffs have not requested leave to amend with respect to their affirmative misrepresentation theory. Plaintiffs have not cured the deficiencies in their theory despite previously being given the opportunity to do so. Most importantly, amendment would be futile. In the SAC, Plaintiffs now focus on Apple's statement that the batteries would retain up to 80% of its original capacity at 500 charging cycles. SAC ¶ 381. As discussed in more detail below, this statement says nothing about the occurrence of UPOs and thus cannot form the basis of an affirmative misrepresentation theory. Accordingly, the Court GRANTS without leave to amend Apple's motion to dismiss Plaintiffs' claims based on an affirmative misrepresentation theory as to Counts 2-4, 7-9, and 13-15.

### C.  Omissions Theory

In its previous Order, the Court granted with leave to amend Apple's motion to dismiss Plaintiffs' claims under the CLRA, the "fraudulent" prong of the UCL, and the FAL to the extent those claims are predicated upon a fraudulent omissions theory. Order at 37. Apple moves to dismiss these same claims in the SAC because Plaintiffs "have not fixed the problems with their omissions-based claims." MTD at 14. Plaintiffs concede that the Court's analysis of the omissions theory as to the statutory claims applies equally to Plaintiffs' common law claims (counts 7-9, 13-15). Opp. to MTD at 8 n.14. *See Elias*, 2014 WL 493034 at *5 (analyzing statutory and common law omissions claims together).

#### 1.  Legal Standard

To state a claim for fraudulent omission, "the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006); *accord Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012). Plaintiffs' omission theory is

premised upon Apple having a duty to disclose the defect—namely, the alleged premature aging of the batteries. Opp. to MTD at 10.

Apple argues that a duty to disclose is only triggered by an "unreasonable safety hazard." MTD at 15. Plaintiffs argue that a manufacturer has a duty to disclose a defect when it affects the central functionality of a product. Opp. to MTD at 10. This Court previously addressed this dispute, concluding that "[t]he state of the law on the duty to disclose [in] California is in some disarray." Order at 30. In its previous order, this Court declined to determine whether California law required an unreasonable safety hazard because this Court concluded that Plaintiffs' theory failed under either analysis. With the benefit of additional briefing and argument from the parties, the Court now concludes that California law, as interpreted by the Ninth Circuit, does not require pleading a safety hazard in all omission cases. *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 864 (9th Cir. 2018) ("The recent California cases show that *Wilson*'s safety hazard pleading requirement is not necessary in *all* omission cases.").

In *Wilson*, 668 F.3d 1136, the Ninth Circuit concluded that in the absence of affirmative misrepresentations, a plaintiff must "allege that the design defect caused an unreasonable safety hazard." In *Hodsdon*, the Ninth Circuit noted that more "recent California cases do cast doubt on whether *Wilson*'s safety-hazard requirement applies in all circumstances." 891 F.3d at 861-62. Specifically, *Hodsdon* explained that *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249 (2011), and *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th (2015), appeared to call into question *Wilson*'s holding. While *Hodsdon* declined to formally overrule *Wilson*, *Hodsdon* concluded that *Collins* and *Rutledge* "show that *Wilson*'s safety hazard pleading requirement is not necessary in *all* omission cases. . . . *Collins* and *Rutledge* are not necessarily irreconcilable with *Wilson* because, where the challenged omission does not concern a central functional defect, the plaintiff may still have to plead a safety hazard." 891 F.3d at 864.

This Court has reviewed all the cases that counsel referred it to that cite *Hodsdon*, and conducted its own search. Most of these cases appear to conclude that either a safety hazard or a

central function defect trigger a duty to disclose, and none of these cases specifically conclude that a safety hazard is required to trigger a duty to disclose. *See, e.g.*, *Sud v. Costco Wholesale Corp.*, 731 F. App'x 719, 720 (9th Cir. 2018) (finding no duty to disclose where the defect did not relate to the central functionality of a product); *Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 980 (N.D. Cal. 2018) (concluding that plaintiff "sufficiently alleges the Defects are central of the function of the Affected Products"). The Court finds persuasive the reasoning in *Norcia v. Samsung Telecomms. Am., LLC*: "Although *Hodsdon* declined to 'consider whether the later state-court cases have effectively overruled *Wilson*,' it made crystal clear that '*Wilson*'s safety hazard pleading requirement is not necessary in *all* omission cases." 2018 WL 4772302, at *1 (N.D. Cal. Oct. 1, 2018) (citing *Hodsdon*, 891 F.3d at 862-64).

Following *Hodsdon*, this Court concludes that when a defect does not relate to an unreasonable safety hazard, a defendant has a duty to disclose when (1) the omission is material; (2) the defect is central to the product's function; and (3) at least one of the following four factors is met: the defendant is the plaintiff's fiduciary; the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; the defendant actively conceals a material fact from the plaintiff; or the defendant makes partial representations that are misleading because some other material fact has not been disclosed. *Hodsdon*, 891 F.3d at 863; *Collins*, 202 Cal. App. 4th at 256-57.

Claims of fraud by omission are subject to the heightened pleading standards of Rule 9(b), though courts apply the Rule differently than in affirmative misrepresentation claims. "Alleging fraudulent omission or concealment is somewhat different from pleading an affirmative misrepresentation in that a plaintiff cannot generally plead either the specific time of an omission or the place it occurred." *Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 906-07 (E.D. Cal. 2018); *see also Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007) ("Clearly, a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation

Case No.: 18-md-02827-EJD
ORDER GRANTING MOTION FOR RECONSIDERATION; GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
23

claim."). "Despite this distinction, claims sounding in fraud, even concealment or omission claims, still must be pled with particularity." *Stewart*, 304 F. Supp. 3d at 907 (citing *Kearns*, 567 F.3d at 1127 ("the contention that . . . nondisclosure claims need not be pleaded with particularity is unavailing")).

Plaintiffs must also plead actual reliance on Apple's omission. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1111-12 (N.D. Cal. 2015).

For the reasons discussed below, the Court concludes that Plaintiffs fail to allege a duty to disclose, regardless of the legal standard that applies.

### 2. Unreasonable Safety Hazard

It is undisputed that Plaintiffs do not plead an unreasonable safety hazard. Accordingly, Plaintiffs can only plead a duty to disclose based on the central function theory.

### 3. Central Function

#### a. Materiality

A fact is "material" if "a reasonable consumer would deem it important in determining how to act in the transaction at issue." *Gutierrez v. Carmax Auto Superstores Cal.*, 228 Cal. Rptr. 3d 699, 720 (Ct. App. 2018) (CLRA); *see also Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) (UCL and FAL). Materiality is typically a question of fact. *See In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009).

In its previous Order, this Court found that Plaintiffs did not define the defect in such a way "that disclosure would affect a reasonable consumer's decision about whether to purchase the product at the stated price." Order at 33. Specifically, the Court explained that "Plaintiffs' theory appears to be that Apple was duty-bound to disclose that their batteries will eventually need replacement because increasing software capability puts more demands on hardware and battery capacity degrades over time. . . . [However, a]s Plaintiffs' own allegations demonstrate, consumers are fully aware of the facts regarding software capability and battery capacity." Order at 33. Moreover, the Court concluded that Apple's hardware warranty, which only lasts for one year,

makes clear that "consumers cannot realistically expect their batteries to last for the lifetime of their devices." Order at 34. The Court acknowledged that materiality is typically a question of fact, but concluded that Plaintiffs' own allegations in the CAC showed that consumers were fully aware of the alleged defect. Order at 33.

Apple argues that the Court should dismiss Plaintiffs' omissions theory because the underlying defect theory is essentially unchanged. Mot at 14. Apple argues that the only alleged defect is that Plaintiffs' devices did not function as well or as long as Plaintiffs would prefer, which does not create a material omission to trigger Apple's duty to disclose. Reply to MTD at 8-9. Plaintiffs argue that they "do not complain about batteries that age as designed by Apple or [argue] that [batteries] should last forever." Opp. to MTD at 12. Instead, Plaintiffs argue that the alleged defect is that batteries age prematurely and are susceptible to UPOs. *Id.* At the hearing, Plaintiffs stressed that the SAC includes additional allegations regarding Apple's knowledge of and response to the occurrence of UPOs. Hr'g Tr. at 19:10-20:18.

In the CAC, Plaintiffs defined the defect as the "mismatch between the Devices' hardware, including their processing chips and rechargeable lithium-ion batteries, and the ever-increasing demands placed on the Devices via Apple's constantly-updating iOS software platform." CAC ¶ 9. In the SAC, Plaintiffs now state that "[t]he nature of the Defect was that Apple had designed its Devices in such a way that the power-hungry software strained the Devices battery thereby causing it to prematurely age – *i.e.*, rapidly develop very high resistance levels – and significantly increased susceptibility to a [UPO]." SAC ¶ 370; *id.* ¶ 4 ("Apple's power-hungry operating software . . . and its applications strained the battery powering the Device, thereby causing the battery to age and degrade prematurely"). Plaintiffs allege that "[a] battery and processor must be designed such that even as the battery ages and loses performance, it will still be capable of meeting the processor's peak power demands for years to come." SAC ¶ 423.

The core problem with the CAC, as identified in this Court's previous Order, was that it essentially labeled as a defect the typical aging process of a lithium-ion battery—an aging process

United States District Court
Northern District of California

which the CAC itself recognized that consumers were aware of. The Court agrees with Apple that Plaintiffs' theory of the defect is materially unchanged from the CAC, and that this core problem continues to infect the SAC. The SAC itself explains that the alleged defect is part of the typical aging process of a lithium-ion battery. Specifically, the SAC explains that as a battery chemically ages, its ability to deliver maximum power decreases due to an increase in internal resistance. SAC ¶ 378. A UPO occurs when a Device is unable to manage the maximum power demands placed on it. *Id.* ¶ 379. Plaintiffs explain that "the shutdown is intentional from the device perspective, [but] it is unexpected by the user." *Id.* Moreover, the SAC alleges that "[t]he speed for which Apple's products are known and marketed to consumers comes from powerful processing units which are supposed to perform calculations and render graphics on its smart-phones at top speeds." *Id.* ¶ 421. Plaintiffs allege that consumers purchase Apple's devices because of these processors; however, "[a]s these processing units become faster and more powerful . . . [they] require more power from the phone's battery." *Id*. Thus, the SAC lays out the defect as the result of the normal battery aging process, and in part as a result of the power-hungry features that the SAC alleges consumers value in Apple products in the first place.

The Court is not persuaded that Plaintiffs have alleged anything that is different from normal aging of the battery. Plaintiffs direct the Court's attention to their specific allegations regarding allegedly premature UPOs. For example, the SAC alleges that ████████████████ ████████████████████████████████████████████████████████ ████. SAC ¶¶ 387-88. The SAC alleges that Apple was aware of complaints from users whose Apple devices experienced UPOs despite showing battery levels of 50-60%, and that internal email communications between Apple engineers show that ████████████████████ ██████████████████████████████. SAC ¶¶ 383, 390. In their briefing, Plaintiffs state that the batteries age "twice as fast." Opp. to MTD at 12. At the hearing, Plaintiffs argued ████████████████████████████████████ ██████████████████████████████████ Hr'g Tr. 36:2-11, 37:8-9.

Taking these allegations as true, as the Court must at this stage, Plaintiffs allege that ██ ███████████████████████████████████████████████████████████████████████████ ██████████████. Plaintiffs do not allege that all, or even most, iPhones experienced UPOs at such a low charge cycle. Quite the contrary. They allege that most UPOs occurred on devices with fewer than 500 charge cycles. Moreover, as previously discussed, Plaintiffs make no allegations regarding whether they ever experienced UPOs on their own devices. These allegations say nothing about whether the batteries were still within the one-year hardware warranty when they experienced UPOs. As the Court explained in its previous Order, that warranty makes clear that consumers cannot expect batteries to last for the lifetime of their devices. Order at 34. Beyond their conclusory allegation that the batteries aged prematurely, Plaintiffs do not allege facts showing that the batteries malfunctioned or suffered from any design or manufacturing defect or were otherwise not as expected when produced. Plaintiffs do not allege that there was any fundamental flaw in the batteries themselves that caused UPOs. Rather, in Plaintiffs' own words, "the power-hungry software strained the Devices battery." This amounts to an allegation that the devices functioned as expected, but that the batteries did not last as long as Plaintiffs believe that they should.

Setting aside the failure of the SAC to plead anything more than the usual battery aging process, the Court finds that the defect is not material for another reason. California law is clear that its consumer fraud statutes cannot be used to extend a product's warrant. *See Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 257 (2011) ("To allow a CLRA claim in these circumstances would be to supplant warranty law; failure of a product to last forever would become a defect and a manufacturer would no longer be able to issue limited warranties." (internal quotation and citation omitted)); *see also Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1029 (9th Cir. 2017) ("[T]he fact that the alleged defect concerns premature, but usually post-warranty, onset of a natural condition raises concerns about the use of consumer fraud statutes to impermissibly extend a product's warranty period."). Here, Plaintiffs have not alleged that any

UPOs occurred on devices that were still under warranty.

### b. Centrality

Plaintiffs argue that the defect goes to the central functionality of the devices. Opp. to MTD at 14; Hr'g Tr at 24:1-9. Apple does not dispute this. The Court agrees with Plaintiffs. *Cf. Norcia*, 2018 WL 4772302, at *2 ("No reasonable person could disagree that speed and performance go to the heart of a smartphone's central function." (internal quotation omitted)).

### c. Additional Factors

As to the additional factors required under *Collins*, Plaintiffs do not allege that Apple was in a fiduciary relationship with Plaintiffs. In its previous order, the Court concluded that Plaintiffs failed to adequately plead that Apple had exclusive knowledge of material facts not known to Plaintiffs because "common sense and Plaintiffs' own allegations demonstrate that consumers know about the degradation of batteries and the increasing capability of software." Order at 35. The Court finds that the SAC fails to correct this error. The Court acknowledges that the SAC adds several paragraphs regarding Apple's internal knowledge of and response to UPOs. SAC ¶¶ 369-409. The Court agrees with Plaintiffs insofar as they argue that these allegations show that Apple gathered substantial data on its batteries' performance that was not available to consumers. Plaintiffs cite two cases using language that the defendant had superior, rather than exclusive, knowledge. Opp. to MTD at 16. But even so, Plaintiffs had knowledge of the basic facts of battery degradation over time. These factual allegations are unlike allegedly defective laptop keyboards that unexpectedly and suddenly fail within a year of purchase. *See In re MacBook Keyboard Litig.*, Case No. 5:18-cv-02813-EJD, slip op. at 11-12 (N.D. Cal. Apr. 22, 2019).

The third and fourth circumstances that give rise to a duty are active concealment of a defect and making partial representations while also suppressing material facts. Plaintiffs argue that the SAC alleges "active concealment" based on Apple's use of iOS updates to throttle device performance. Opp. to MTD at 18-19. Plaintiffs argue that the SAC alleges partial misrepresentations based on Apple's statement that devices would retain 80% of their battery

capacity at 500 charging cycles. Opp. to MTD at 19-21. The flaw in Plaintiffs' arguments is that, as discussed, Plaintiffs are aware of the basic function of batteries and their decay over time. Apple's own hardware warranty makes clear that consumers cannot reasonably expect their batteries to last forever. While the Court agrees that Plaintiffs allege secrecy around the function of the iOS updates, here, Plaintiffs attempt to shoehorn that secrecy into something that it is not: concealment of the basic fact that Apple's batteries would degrade over time.

### d. Conclusion as to Omissions Theory

The SAC fails to fix the problem in Plaintiffs' omission theory. Most importantly, Plaintiffs theory of the defect defeats their own argument of materiality. Plaintiffs define the defect as the aging of the battery and the occurrence of UPOs due to power-hungry software and hardware. In other words, the alleged defect is the natural aging of the battery as a result of use of the device. The failure of the battery to last as long as Plaintiffs would prefer does not constitute a material omission. In addition, Plaintiffs fail to plead any of the additional factors required: fiduciary relationship, exclusive knowledge, active concealment, or misleading partial representations. Because Plaintiffs' omissions theory is fundamentally flawed, the Court does not need to reach the parties' arguments regarding whether Plaintiffs adequately pleaded reliance.

To the extent that the Court finds that Plaintiffs' theory is inadequate, Plaintiffs request leave to amend. Opp. to MTD at 22 n.26. At the hearing, Plaintiffs stated that they could amend to add additional details regarding the alleged defect based on the report that Plaintiffs' technical expert prepared. Hr'g. Tr. at 21:11-18.

As an initial matter, the Court notes that it previously granted leave to amend with respect to this same theory. As discussed above, Plaintiffs' defect theory is essentially unchanged from the CAC. More fundamentally, the problem with Plaintiffs' request is that the defect in their pleading cannot be cured by merely adding more factual allegations. As explained above, Plaintiffs' theory is essentially that normal use of Apple devices leads to battery aging and UPOs, and that the batteries do not last for the life of the product. More factual allegations will not change the nature of the theory. Based on Plaintiffs' current allegations, it does not appear to the Court that they

United States District Court
Northern District of California

could allege a defect based on battery malfunctioning, poor design, or some other cause that did not result from normal wear and tear. Even if Plaintiffs could make such an allegation, the Court notes that such a theory would be inconsistent with the detailed allegations in both the CAC and the SAC. Because Plaintiffs would be held to the concessions in their current pleadings, the Court concludes that Plaintiffs would be unable to amend their complaint in any meaningful way such that they could plead an actionable omissions theory. Accordingly, the Court GRANTS without leave to amend Apple's motion to dismiss Plaintiffs' claims based on an omissions theory.

### D. California Unfair Competition Law

In its previous Order, the Court denied Apple's motion to dismiss Plaintiffs' claims under the "unlawful" prong of the UCL, except with respect to the iPhone 5 and iPad models, because Plaintiffs' claim under the CDAFA could support the claim under the "unlawful" prong of the UCL. Order at 37. The Court denied Apple's motion to dismiss Plaintiffs' claims under the "unfair" prong of the UCL because Plaintiffs' only argument was that the "unfair" prong could not survive if the claims under the "unlawful" and "fraudulent" prongs do not survive. Order at 38.

In a cursory section of the present motion to dismiss, Apple repeats these arguments. MTD at 20. As discussed below with respect to the computer intrusion claims, Plaintiffs' claims under the CDAFA survive. Accordingly, Plaintiffs' claims under the "unlawful" prong of the UCL also survive. Apple makes no additional arguments that this Court can consider regarding the "unfair" prong of the UCL.[6]

The Court DENIES Apple's motion to dismiss Plaintiffs' claims under the UCL.

### E. Claims Related to iPhone 5 Models

The parties submit that Plaintiffs' claims related to the iPhone 5, 5S, and 5C models rise or fall with Plaintiffs' defect theory. MTD at 21, Opp. to MTD at 27, Reply to MTD at 3. Specifically, Plaintiffs do not dispute that the power management feature in iOS software never applied to these iPhone models. Because the power management feature never applied to these

---

[6] Apple cites with little argument two cases concluding that Apple's design choices are not "unfair." MTD at 20. These citations are insufficient to present any argument that the Court can consider.

Case No.: 18-md-02827-EJD
ORDER GRANTING MOTION FOR RECONSIDERATION; GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

models, Plaintiffs' throttling theory cannot apply to these models. Thus, the Court GRANTS without leave to amend Apple's motion to dismiss Plaintiffs' claims related to the iPhone 5, 5S, and 5C models. The Court DENIES AS MOOT Plaintiffs' request for an order compelling Apple to produce documents related to the iPhone 5, 5S, and 5C devices. *See* Dkt. No. 285 at A-1-1 to A-1-4.

### F. The "Computer Intrusion" Claims

#### 1. Unauthorized Access

In its previous Order, the Court dismissed Plaintiffs' CFAA claim under 18 U.S.C. § 1030(a)(5)(C). Order at 20. The Court explained that this section requires unauthorized access to Plaintiffs' devices. However, in their pleadings, Plaintiffs admitted to voluntarily downloading the iOS updates. Order at 20 (citing CAC ¶¶ 386-89, 527). In the SAC, Plaintiffs include the same, unmodified claim under § 1030(a)(5)(C). Plaintiffs also include the same unmodified paragraphs admitted to voluntarily downloading the iOS updates. SAC ¶¶ 415-18; 561.

The Court GRANTS Apple's motion to dismiss Plaintiffs' CFAA claim under § 1030(a)(5)(C). Because amendment would be futile, the Court will not grant leave to amend this claim.

#### 2. Unauthorized Damages and Consent

In its previous Order, the Court denied Apple's motion to dismiss Plaintiffs' CFAA claim under § 1030(a)(5)(A), CDAFA claim, and Trespass to Chattels claim. Order at 19-20, 23-25. The crux of the Court's ruling on all of these claims was that Plaintiffs consented to install iOS updates, but Plaintiffs adequately alleged that the throttling of their devices' power supply constituted damage and that Plaintiffs did not and could not consent to this damage because Apple never disclosed the intended effects of the iOS updates.

Apple now seeks to reargue these same issues. MTD at 21-24; Opp. to MTD at 26. Apple acknowledges the Court's previous Order, but argues that dismissal is proper "for additional reasons the Court did not previously consider." MTD at 26. For the reasons discussed below, the

Court finds unpersuasive Apple's arguments. Moreover, even if it were to newly consider the issues, the Court would reach the same result.

As to consent, Apple now argues that Rule 9(b)'s heightened pleading standard applies because Plaintiffs' claims sound in fraud. MTD at 22; Reply to MTD at 15. In its previous Order, the Court did not explicitly address the relevant pleading standard, and the Court agrees with Apple that Rule 9(b) applies to Plaintiffs' Computer Intrusion claims. *See Kearns*, 567 F.3d at 1125 (Rule 9(b) applies to claims of fraud under California's consumer protection statutes); *Oracle Am., Inc. v. Serv. Key, LLC*, 2012 WL 6019580, at *6 (N.D. Cal. Dec. 3, 2012) (applying Rule 9(b) to CFAA claim). Rule 9(b) requires Plaintiffs to state the circumstances constituting fraud with particularity, which should include the "who, what, when, where, and how of the misconduct charged." *Kearns*, 567 F.3d at 1124-25.

However, this does not change the Court's conclusion that Apple seeks to reargue the same issue that was already decided. In essence, Apple now argues that Plaintiffs cannot allege that they did not consent to any alleged damage done by the iOS updates when Plaintiffs also alleged that they consented to the installation of the updates. MTD at 22-23. In its previous Order addressing this precise issue, the Court concluded that "even though Plaintiffs voluntarily installed the iOS updates, they never gave permission for Apple to cause damage to their iPhones." Order at 19-20. *See San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1085-86 (N.D. Cal. 2018) (upholding CFAA claim against motion to dismiss where plaintiffs alleged they authorized software update, not that they authorized damage to their devices). At heart, Apple does not raise an argument about the specificity of the pleadings, but rather attempts to reargue the legal question of whether Plaintiffs can state a claim for unauthorized damages when Plaintiffs consented to install the iOS updates. Applying Rule 9(b) does not change the Court's conclusion that Plaintiffs have adequately alleged that Apple concealed the throttling effect of the iOS updates, and that these allegations are sufficient at the pleading stage. SAC ¶¶ 402-05, 432-34.

As to damages, Apple argues that Plaintiffs fail to allege any individualized damages such

as reduced performance of their devices. MTD at 23-24. In its previous Order, the Court explicitly addressed this issue: "The Complaint's allegations that the iOS updates slowed processor speeds in Plaintiffs' iPhones readily fit [the definition of damage under the CFAA.]" Order at 19; *see also* Order at 23, 25 (addressing damages with respect to claims under the CDAFA and Trespass to Chattels). Apple fails to raise any argument that the Court has not previously considered. Apple cites caselaw regarding the statutory threshold for damages to state a claim under the CFAA, but Apple does not make any argument that Plaintiffs fail to satisfy the statutory threshold. *See Wichansky v. Zowine*, 150 F. Supp. 3d 1055, 1072 (D. Ariz. 2015); *Halperin v. Int'l Web Servs., LLC*, 70 F. Supp. 3d 893, 899 (N.D. Ill. 2014); *Mintz v. Mark Bartelstein & Assocs.*, 906 F. supp. 2d 1017, 1029 (C.D. Cal. 2012).

In a footnote, Apple argues that the economic loss rule should bar Plaintiffs' trespass to chattels claim. MTD at 24 n.4. Apple makes no argument regarding the economic loss rule in the main text of its motion. Even if the Court considered this argument, it fails because the Court already addressed this issue. *See* Order at 25-26 (concluding that the economic loss rule does not bar Plaintiffs' trespass to chattels claim because "Plaintiffs plead their trespass to chattels claim with its attendant damages separate and apart from any breach of contract.").

For the foregoing reasons, the Court DENIES Apple's motion to dismiss Plaintiffs' CFAA claim under § 1030(a)(5)(A), CDAFA claim, and Trespass to Chattels claim.

### G. Breach of Contract Claims (Counts 10-12, 16)

The Court concludes that Plaintiffs fail to state a claim for any of their contract claims for the threshold reason that they fail to specify what the contract is, what its terms are, or how Apple allegedly breached it. *See iPhone Application Litig.*, 2011 WL 4403963, at *9 (N.D. Cal. Sept. 20, 2011) (Because "Plaintiffs do not actually identify the contract upon which they are relying . . . the Court cannot determine whether Plaintiffs were deprived of the benefits of the contract at issue."). As an initial matter, it is not clear whether Plaintiffs' contract claims depend upon an implicit warranty, the hardware warranty, the SLA, or some combination thereof. *See Coffen v. Home*

*Depot U.S.A. Inc.*, 2016 WL 4719273, *5 (N.D. Cal. Sept. 9, 2016) ("Nor is it clear from the complaint whether plaintiff is pursuing a theory based on a written, oral, or implied-in-fact contract (or some combination thereof)."). The only alleged terms that the SAC identifies are "promises and affirmations made by Apple on its website and through marketing that the Devices would perform as advertised." SAC ¶ 609. But this allegation does not identify any of the terms of the alleged contract. Any amended complaint must remedy this deficiency.

In addition, Plaintiffs fail to allege how Apple breached any alleged contract. The SAC alleges that "Apple's Devices did not perform as advertised or promised," SAC ¶ 614, but without identifying the terms of the contract, the Court cannot evaluate this allegation. Moreover, as discussed above with respect to Plaintiffs' battery defect theory, Plaintiffs acknowledge that their phones functioned as expected when purchased. Plaintiffs concede that the "defect" is the normal aging of the battery. Plaintiffs rely heavily on Apple's statement that its batteries are "designed to retain up to 80% of its original capacity at 500 complete charging cycles." SAC ¶ 381. However, as discussed above, no Plaintiff alleges that their device failed to live up to this representation. In fact, no Plaintiff makes any allegation of reliance on any of Apple's representations, and no Plaintiff makes any allegation regarding the performance of their device.

Because the Court concludes that Plaintiffs fail at the threshold level of identifying the contracts, the Court does not need to reach the additional issues briefed by the parties. It is not clear to the Court whether any amended contract claims could overcome the defects discussed above with respect to the battery defect theory. However, because the Court has not previously addressed Plaintiffs' contract claims, the Court will grant leave to amend.

For the foregoing reasons, the Court GRANTS with leave to amend Apple's motion to dismiss Plaintiffs' contract claims (Counts 10-12, 16).

### H. Foreign Plaintiffs

#### 1. U.K. Plaintiffs

Counts 17 and 18 of the SAC allege claims under U.K. law on behalf of a subclass of U.K.

United States District Court
Northern District of California

Case No.: 18-md-02827-EJD
ORDER GRANTING MOTION FOR RECONSIDERATION; GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS
34

citizens. In its previous Order, the Court denied Apple's motion to dismiss these claims under the theory of international comity or forum non conveniens because Apple failed to clearly indicate that it is amenable to process in the U.K. Order at 17. Specifically, the Court concluded that Apple indicated that "it *or one of its subsidiaries*" would be subject to service in the U.K. *Id.* (emphasis in original). Apple now unequivocally submits that it will make itself subject to jurisdiction in the U.K. *See* Decl. of G. Charles Nierlich, Dkt. No. 272-1 ¶¶ 2-3 ("Apple Inc. confirms that it will submit to the jurisdiction of U.K. courts for the purposes of Counts 17 and 18."). At the hearing, Apple explained that its earlier statement was not meant to represent that Apple itself would not be willing to submit to jurisdiction in the U.K. Hr'g. Tr. at 15:24-16:5. Rather, Apple explained that the statement was meant to be inclusive of whichever party might be the proper defendant in a U.K. action. *Id.*

Based on Apple's representations, the Court agrees with Apple that the existence of an adequate alternative forum is no longer a bar to dismissing the U.K. Counts on forum non-conveniens grounds. *See Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001) ("[A]n [adequate] alternative forum ordinarily exists when the defendant is amenable to service of process in the forum forum."). However, the Court concludes that it is premature to conduct a forum non conveniens analysis for the same reasons as the choice of law analysis. Specifically, the forum non conveniens analysis requires considering factors such as the forum's convenience to the parties; access to evidence and sources of proof; costs and enforceability of the litigation; the court's familiarity with the governing law; and the burden on local courts and juries. *See id.* at 1145-47. The Court declines to consider Apple's declarations regarding these topics, which are not properly before the Court on a motion to dismiss. Thus, full consideration of these issues requires a more developed record.

The Court DENIES WITHOUT PREJUDICE Apple's motion to dismiss the U.K. claims.

## 2. Extraterritorial Application of the CDAFA

Apple argues that the CDAFA does not apply extraterritorially. MTD at 33-34. However,

Apple previously argued that the California and Federal laws at issue do not apply extraterritorially, Dkt. No. 176 at 13-14, and the Court previously addressed this issue, Order at 13-15. Because the Court has already addressed this issue, it will not reconsider its previous ruling.[7]

The Court DENIES Apple's motion to dismiss the non-California Plaintiffs' claims under the CDAFA.

## VI.    CONCLUSION

For the reasons set forth above, the Court rules as follows:

The Court GRANTS Apple's request to take judicial notice of the hardware warranty. Dkt. No. 177. The Court DENIES Plaintiffs' request to take judicial notice of documents produced during discovery. Dkt. No. 281.

Apple's motion for reconsideration is GRANTED. Dkt. 236-1. On reconsideration, Apple's motion to dismiss the foreign plaintiffs is DENIED WITHOUT PREJUDICE.

Plaintiffs' request to file additional "objections" to Apple's motion to dismiss is DENIED. Dkt. No. 282. The Court has not considered this document, and Plaintiffs shall not submit any billing requests related to production of this document.

Apple's motion to dismiss is GRANTED in part and DENIED in part. Specifically, the Court rules as follows:

- The Court GRANTS without leave to amend Apple's motion to dismiss for lack of standing Plaintiffs' claims that rely on their battery defect theory.

- The Court DENIES Apple's motion to dismiss for lack of standing Plaintiffs' computer intrusion claims.

- The Court GRANTS without leave to amend Apple's motion to dismiss Plaintiffs' claims based on an affirmative misrepresentation theory.

---

[7] Even if the Court were to consider this issue, neither party cites any cases involving extraterritorial application of the CDAFA. The current cursory briefing before the Court would be insufficient to resolve the issue.

- The Court GRANTS without leave to amend Apple's motion to dismiss Plaintiffs' claims based on an omissions theory.

- The Court DENIES Apple's motion to dismiss Plaintiffs' claims under the UCL.

- The Court GRANTS without leave to amend Apple's motion to dismiss Plaintiffs' claims related to the iPhone 5, 5S, and 5C models. The Court DENIES AS MOOT Plaintiffs' request for an order compelling Apple to produce documents related to the iPhone 5, 5S, and 5C devices.

- The Court GRANTS without leave to amend Apple's motion to dismiss Plaintiffs' CFAA claim under § 1030(a)(5)(C).

- The Court DENIES Apple's motion to dismiss Plaintiffs' CFAA claim under § 1030(a)(5)(A), CDAFA claim, and Trespass to Chattels claim.

- The Court GRANTS with leave to amend Apple's motion to dismiss Plaintiffs' contract claims.

- The Court DENIES WITHOUT PREJUDICE Apple's motion to dismiss the U.K. claims.

- The Court DENIES Apple's motion to dismiss the non-California Plaintiffs' claims under the CDAFA.

The Court has filed this order under seal because it contains material subject to sealing orders. Within 10 days of the filing date of this order, the parties shall provide the Court a stipulated redacted version of this order, redacting only those portions of the order containing or referring to material for which the Court has granted a motion to seal and for which the parties still request the material be sealed. The Court will then issue a redacted version of the order.

Plaintiffs shall amend their complaint within 21 days of the date of this order.

**IT IS SO ORDERED.**

Dated: April 22, 2019

EDWARD J. DAVILA
United States District Judge