UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE: APPLE INC. DEVICE
PERFORMANCE LITIGATION

Case No. 18-md-02827-EJD

**SPECIAL DISCOVERY MASTER
ORDER NO. 9 DENYING PLAINTIFFS'
MOTION FOR A PROTECTIVE ORDER
AND GRANTING DEFENDANT'S
REQUEST TO CONDUCT FORENSIC
INSPECTION OF DEVICES**

Hon. Rebecca Westerfield (Ret.)
Special Discovery Master

## I.   INTRODUCTION

Plaintiffs, who are domestic and international Apple cell phone users, bring this putative

class action against Apple Inc. ("Apple").  This case concerns Apple's alleged use of "iOS"

operating system updates to "throttle" and hamper device performance regarding certain of its

iPhone 6 devices; iPhone 6 and 6 Plus, iPhone 6s and iPhone 6s Plus (the "Devices").  At a high

level, Plaintiffs allege that two of Apple's updates, iOS 10.2.1 (installed beginning in January,

2017) and 11.2, have impaired the integrity, condition, quality, and usefulness of the Devices

without Plaintiffs' knowledge or consent.

Presently before the Special Discovery Master ("SDM") is Plaintiffs' motion for a

protective order denying Apple's [Proposed] Device Inspection Protocol dated May 8, 2019

("Protocol"). See Danitz Decl Ex 8.  According to Plaintiffs, the Protocol seeks to (1) make

multiple complete forensic copies of all domestic Plaintiffs' Devices, including all of the private

and personal data they contain; and (2) require Plaintiffs to turn over all of that information to

1

Apple's experts and attorneys for inspection.  Although the Plaintiffs' instant motion is styled as one seeking a protective order, it was filed in response to Apple's request for the forensic inspection at issue.

On April 22, 2019, the Court issued an Order granting Apple's motion for reconsideration of Apple's prior motion to dismiss Plaintiffs' Consolidated Amended Complaint (the "Order").  Upon reconsideration, the Court granted in part and denied in part Apple's motion to dismiss claims in the Second Amended Complaint ("SAC"). ECF No. 315.

The Order permitted multiple causes of action in the SAC to remain active.  One of the remaining causes of action relates to alleged computer intrusion ("throttling"), whereby Plaintiffs claim that Apple failed to disclose that its iOS updates at issue were designed to reduce the processing speed of their Devices in order to prevent unexpected power outages.  Other remaining causes of action include those brought under 18 U.S.C. § 1030(a)(5)(A) (the "Consumer Fraud and Abuse Act") and various California state laws.

## II.      REFERENCE TO THE SPECIAL MASTER

In an order dated August 22, 2018, the Court, pursuant to Federal Rule of Civil Procedure 53 and the parties' stipulation, appointed the undersigned as Special Discovery Master to adjudicate all pretrial discovery motions and disputes.

## III.     SUMMARY OF CONCLUSIONS

1.  Plaintiffs' motion for a protective order is denied.

2.  Defendant's request to conduct a forensic inspection of the Devices is granted in accordance with the below.

3.  The parties should continue to meet and confer along with their respective experts regarding modification of the terms of the protocol to govern the

2

1   forensic inspection.

2   ## IV.   FACTUAL AND PROCEDURAL HISTORY

3   In their response to Apple's Interrogatory No. 8, Plaintiffs asserted that they suffered

4
5   harm from the iOS updates at issue, including performance degradation, loss of use of the

6   Devices, battery draining, and malfunction.  *See*, *e.g.*, Declaration of Wesley Sze dated June 14,

7   2019 ("Sze Decl."), Ex. B.

8   In their Rule 26 Initial Disclosures served on September 5, 2018, Plaintiffs identified the

9   Devices as evidence that would be relevant to the parties' claims and defenses.  *See* Sze Decl.,

10  Ex. A.  On September 19, 2018, Apple served Request for Production No. 22 ("RFP No. 22"),

11
12  which asked all of the 104 domestic Plaintiffs in this action to produce their Devices for

13  inspection.

14  Over the next several months, the parties met and conferred as to whether and what

15  extent Plaintiffs would be willing to produce their Devices for inspection.  On March 20, 2019,

16  Apple circulated a draft protocol with respect to Plaintiffs' response to Interrogatory No. 8 and

17  RFP No. 22.  The parties then discussed the draft protocol on numerous occasions.  In those

18  discussions, Apple argued that obtaining a complete backup of the Devices was required to

19  conduct performance testing that would faithfully reflect their configurations.

20  The parties' meet and confer efforts continued.  Discussions centered on Plaintiffs'

21  concerns regarding their privacy rights and the extent to which Apple would be given access to

22  the information gathered from the Devices.  Apple unilaterally revised the draft protocol twice to

23  add further restrictions on access by outside counsel.  To date, Plaintiffs have not provided a

24  counterproposal regarding the Protocol and have taken the position that a forensic inspection is

25  not warranted.

26
27                                    3

28

On or about May 22, 2019, Plaintiffs' counsel wrote Apple's counsel, arguing that Apple was not entitled to a forensic inspection and that data from the Devices was irrelevant and non-responsive to any claims or defenses.  On June 6, 2019, Plaintiffs served a supplemental response to RFP No. 22, formally objecting to any inspection of the Devices.

Per Plaintiffs' reply, the 104 domestic Plaintiffs in this case have 115 Devices.  Two categories of Devices are relevant to this motion.  The first category consists of 79 Devices, which Plaintiffs have kept in their possession and have continued to use.  The remaining 26 Devices have been turned over to Plaintiffs' counsel for storage, pending further direction by the SDM.

Plaintiffs attached the current draft of the Protocol as Exhibit 8 to the declaration of counsel Brian Danitz dated June 6, 2019 ("Danitz Decl.").  Under the Protocol, Lighthouse Global ("Lighthouse") – a neutral computer forensic firm, which, according to Apple, was selected by Plaintiffs – would be given the Devices from Plaintiffs' counsel and create a separate forensic image of each of them.  Plaintiffs would provide Lighthouse with necessary login information to access the Devices and any backups made of them, including the Devices' passcode/password, Plaintiffs' Apple IDs and Apple ID password, and, if applicable, the iTunes backup encryption password.  No *ex parte* communications with Lighthouse would be allowed, and all communications would be discoverable subject to exceptions provided elsewhere in the Protocol.  With respect to hardware, Lighthouse would use one of its computers to perform an iTunes backup, as well as its syncing cables and a segregated Wi-Fi network.  With respect to software, Lighthouse would use the latest version of iTunes, Cellebrite Software, and Battery Life System Diagnostic User Profile.  *See* Danitz Decl., Ex. 8, ¶¶ 1, 4-12.

As to extraction methods, Lighthouse would externally inspect and photograph the

4

1   Devices to record identifying information, such as the model, serial number, and International

2   Mobile Equipment Identity number.  Lighthouse would eject any SIM (subscriber identity

3   module/subscriber identification module) cards present to isolate the Devices from the network

4   and for documentation purposes.  Lighthouse would also turn on the Devices and set them to

5   "Airplane Mode" to avoid causing any modifications.  *See* Danitz Decl., Ex. 8, ¶ 13.  Lighthouse,

6   which would document any changes it would be required to make to the Devices in preparation

7   for inspection, would photograph the following screens on the Devices: "About"; "Software

8   Update"; "Battery"; and "Battery Health."  Lighthouse would provide copies of such

9   documentation and photographs to outside counsel for the parties, which would be treated as

10  "Highly Confidential – Attorneys' Eyes Only" under the stipulated protective order in place in

11  this case.  *Id.* at ¶ 14-15. ECF No. 224.

12

13          Lighthouse would also make forensic images of the Devices using industry-standard

14  Cellebrite software.  Lighthouse would conduct three preservations of the Devices, using

15  Cellebrite's Advanced Logical Methods 1 and 2, and a Filesystem acquisition method.

16  Lighthouse would preserve the contents of any SIM card present using Cellebrite.  Upon request,

17  Lighthouse would provide duplicate copies of those forensic images to the parties' experts.

18  Nonetheless, the parties' experts would not be permitted to provide copies of these materials to

19  outside counsel.  Rather, the experts would be permitted to provide outside counsel with their

20  analyses derived from review of these materials and the underlying data considered by the

21  experts in their analyses.  In addition, counsel would not be permitted to receive text messages,

22  emails, photos, or videos.  *See* Danitz Decl., Ex. 8, ¶ 16.

23

24          Lighthouse would also use the native iTunes backup functionality to create iTunes

25  backups of each of the Devices using a process detailed in paragraph 17 of the Protocol.  Upon

26

27

28

Case No.: 18-md-02827-EJD
SPECIAL DISCOVERY MASTER ORDER DENYING PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER
AND GRANTING DEFENDANT'S REQUEST TO CONDUCT FORENSIC INSPECTION OF DEVICES

request, Lighthouse would provide copies of these backups to the parties' experts. The experts would not be permitted to provide copies of these backups to outside counsel, but would be able to provide outside counsel with analyses derived from review of these materials and the underlying data considered by the experts in forming their analyses. Similar to the above, such materials provided to outside counsel would not include text messages, emails, photos, or videos. *See* Danitz Decl., Ex. 8, ¶ 18.

To access additional data regarding the Devices' batteries, Lighthouse would install a user profile to the Devices to capture a second iTunes backup and iTunes sync under procedures described in paragraphs 23-29 of the Protocol. Distribution procedures and limitations applicable to the parties' experts and counsel would be similar to those described above. *See* Danitz Decl., Ex. 8, ¶¶ 23-29.

The Protocol also would permit Lighthouse to deviate from the specific procedures described therein as necessary, so long as such deviation would not result in changes to the configuration of, or data stored on, the Devices. Lighthouse would document such changes and provide same to the parties at the conclusion of the data collection process. In the event a more substantial deviation would be required, Lighthouse would notify the parties, who would meet and confer to resolve that issue. *See* Danitz Decl., Ex. 8, ¶¶ 33-34.

Although Plaintiffs have acknowledged that they agreed to use Lighthouse as a neutral third-party vendor in the event any technical work or inspection would be required, as noted above, Plaintiffs have maintained that they have not agreed to any inspection or specific procedures related thereto. Plaintiffs have objected to Apple's proposal on the grounds that Apple has insufficiently explained what information is actually needed and why such information could not be obtained in a less obtrusive manner so as to avoid infringing upon

6

Plaintiffs' privacy rights.

In the instant motion, Plaintiffs request issuance of a protective order denying Apple's proposed Protocol.  Apple opposes Plaintiffs' motion on the basis of waiver and on the merits. The parties' legal contentions and other factual arguments not recited above – including each party's respective expert submissions – are discussed below where appropriate.

## V.    ANALYSIS

Serious concerns regarding Plaintiffs' privacy rights are raised in this motion.  As the U.S. Supreme Court has recognized, "[m]odern cell phones are not just another technological convenience.  With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.'"  *Riley v. California*, 134 S. Ct. 2473, 2494-95 (2014) (citation omitted). Although Plaintiffs rely, in part, upon decisions analyzing Fourth Amendment rights in the context of criminal cases to raise their privacy objections, the Special Master acknowledges the importance of avoiding – or to the extent possible, limiting – exposure of Plaintiffs' private information under similar concepts applicable to this civil action.

Here, although Plaintiffs appear to claim that the requested inspection would not be likely to lead to the discovery of relevant information, the crux of the parties' impasse focuses on how and to what extent Plaintiffs should be required to produce relevant data that is contained on their Devices.  Thus, the core issue in dispute is whether a complete forensic imaging of the Devices would constitute an impermissible violation of Plaintiffs' privacy rights.  As discussed elsewhere, the Special Discovery Master's primary concern in resolving this motion relates to avoiding unnecessary exposure (particularly to Apple, its counsel, and its experts) of *content and other private information* stored on the Devices.  The *volume* and *performance consequences* attendant to such actual content and private information do not raise the same level of concern

Case No.: 18-md-02827-EJD
SPECIAL DISCOVERY MASTER ORDER DENYING PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER
AND GRANTING DEFENDANT'S REQUEST TO CONDUCT FORENSIC INSPECTION OF DEVICES

about individual privacy rights.

Under Federal Rule of Civil Procedure 26(b), parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.  Under Rule 26(c)(1), the Court may issue a protective order to prevent certain discovery for good cause or to protect a party or individual from annoyance, embarrassment, oppression, undue burden, or expense.  In this regard, Plaintiffs contend that the Protocol would allow Apple to obtain a complete, forensic copy of Plaintiffs' Devices (most of which are still being used by Plaintiffs and their family members), and thus permit Apple and its experts to obtain all of Plaintiffs' private, confidential, and privileged information contained on the Devices that is both irrelevant to the parties' claims and defenses and not proportional to the needs of the litigation.

Notwithstanding the above, Rule 34(a) permits the Court to contemplate requests to produce and permit a requesting party or its representative to inspect, copy, test, or sample any designated documents or electronically stored information stored in any medium from which information can be obtained.  Furthermore, a party seeking a protective order bears the burden of showing that specific prejudice or harm will result if no protective order is granted.  *See Foltz v. State Farm. Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003).  Nonetheless, the 2006 Amendment to the Advisory Committee Notes on Rule 34 (which specifically addresses Rule 34(a)(1)) counsels against allowing forensic examinations unless special circumstances exist: "[i]nspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy.  The addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information is not meant to create a routine right of direct access to a party's electronic

8

information system, although such access might be justified in some circumstances. Courts should guard against undue intrusiveness resulting from inspecting or testing such systems."[1]

Rule 26(b)(2)(B) limits the scope of electronically stored discovery, providing that a party need not provide such discovery from sources that the party identifies as not reasonably accessible because of undue burden or cost. Nevertheless, even upon a showing that the information is not reasonably accessible, the court may order discovery from such sources if the requesting party shows good cause.

When evaluating a request for such discovery, the court must consider the limitations of Rule 26(b)(2)(C). This rule provides that the court must limit the frequency or extent of such discovery if it determines that the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . [or] the party seeking discovery has had ample opportunity to obtain the information by [other forms of] discovery in the action."

The proponent of a forensic inspection must demonstrate that the inspection is proportional to the needs of the case. *See Henson v. Turn, Inc.*, 2018 WL 5281629, at *5 (N.D. Cal. October 22, 2018). When a party seeks inspections or forensic images of phone or computer systems, federal courts have required that the propounding party demonstrate a heightened showing of good cause. *See, e.g., Cefalu v. Holder*, 2013 WL 4102160, at *1 (N.D. Cal. Aug. 12, 2013); *Brocade Communications Systems, Inc. v. A10 Networks, Inc..*, 2012 WL 70428, at *1 (N.D. Cal. Jan. 9, 2012).

Generally, the court may compel an inspection or forensic image of an opposing party's

---

[1] Subsequent Amendments to the Advisory Committee Notes adopted in 2007 and 2015 did not further address or modify the Advisory Committee's 2006 Amendment regarding Rule 34(a)(1).

Case No.: 18-md-02827-EJD
SPECIAL DISCOVERY MASTER ORDER DENYING PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER
AND GRANTING DEFENDANT'S REQUEST TO CONDUCT FORENSIC INSPECTION OF DEVICES

computer system only in an "extreme situation" where the content on the hardware is "intricately related" to the very basis of the action. *See Memry Corp. v. Kentucky Oil Tech.*, 2007 WL 832937, at *3 (N.D. Cal. Mar. 19, 2007). Under California law applicable to civil actions, the proponent of a request involving an obvious invasion of an interest fundamental to personal autonomy must demonstrate a "compelling need" for the discovery. *See Williams v. Sup. Ct.*, 3 Cal. 5th 531, 556 (2017).

### A. Waiver

Apple contends that Plaintiffs' motion should be denied on the basis that Plaintiffs waived any objections to the inspection of the Devices. A party's failure to object timely to discovery requests may constitute a waiver of any objections. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992).

Apple points to Plaintiffs' conduct in response to RFP No. 22, which Apple served in September, 2018. According to Apple, Plaintiffs did not initially object to the proposed inspection. Rather, Plaintiffs agreed in their original responses that they would produce responsive materials subject to further discussion regarding issues such as a mutually agreeable date, time, and location for inspection. *See* Danitz Decl., Ex. 3. In addition, in Apple's view, Plaintiffs' counsel confirmed on numerous occasions thereafter that some sort of inspection would be appropriate. *See* Opposition at 5-6. Apple thus takes issue with Plaintiffs' May 22, 2019 global objection to any type of inspection, given that such objection was only asserted for the first time more than eight months after Apple served RFP No. 22.

The SDM is unpersuaded by Apple's waiver contentions. Under Rule 34(b)(2)(A), Plaintiffs had 30 days to serve objections to RFP No. 22. On October 18, 2018, and thus within 30 days, Plaintiffs served their initial objections. In those objections, Plaintiffs maintained that

10

Apple's request was overbroad, unduly burdensome, not proportional, and that Apple was improperly seeking data equally available to it.  Moreover, Plaintiffs have consistently maintained that Apple has not precisely defined "inspection" as it relates to RFP No. 22.  Thus, and despite the fact that Plaintiffs did not formally object to an inspection on a global basis, there was no waiver or failure to comply with the deadline imposed by Rule 34.

The SDM further finds that Plaintiffs' conduct during the meet and confer process did not constitute any waiver of objections.  The meet and confer process consisted of complex negotiations surrounding the definitions and scope of terms such as "relevance" and "inspection."  For example, the parties disputed (and continue to dispute) as to what information is relevant and whether an "inspection" would include full forensic imaging.  At most, Plaintiffs acknowledged that some "inspection" *could* be appropriate, but only if the parties were able to later reach agreement on the scope, type, and other protections related to same.

This Special Discovery Master has been and remains cognizant of Plaintiffs' significant privacy concerns regarding the proposed inspection.  Given the privacy issues at stake, the complexity regarding any type of appropriate inspection, and the SDM's preference for a mutual agreement on a forensic inspection, it is unsurprising that the meet and confer process has stretched out over several months.  There is no evidence that Plaintiffs have acted in bad faith during the meet and confer process.  As such – and because the Special Discovery Master has consistently requested and endorsed the meet and confer process – the Special Discovery Master finds that Plaintiffs did not waive any rights to oppose Apple's request for a forensic inspection.

Accordingly, the parties' substantive contentions on the merits are addressed below.

**B.  Whether (and What Kind of) Inspection is Appropriate**

As noted above, the SDM finds that the instant motion for a protective order is better

Case No.: 18-md-02827-EJD
SPECIAL DISCOVERY MASTER ORDER DENYING PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER
AND GRANTING DEFENDANT'S REQUEST TO CONDUCT FORENSIC INSPECTION OF DEVICES

1    classified, for practical purposes, as a dispute concerning Apple's request to compel a forensic

2    inspection.  Thus, whether or not this motion is evaluated as one seeking a protective order, the

3    analysis boils down to whether an inspection (and if so, what type of inspection) should be

4    required in light of applicable concepts of relevance and privacy concerns.

5

6          Plaintiffs submit two expert declarations (one in support of their motion and one in reply)

7    by Mary Frantz.  Frantz is the Managing Partner of Enterprise Knowledge Partners, LLC, and

8    has substantial experience in cyber-forensic examinations and cyber-incident responses.  [2]

9          Frantz opines that Apple's proposed Protocol would result in an irrelevant and, at best,

10   redundant extraction.  Frantz asserts that Plaintiffs' Devices are not necessary, because Apple is

11   able to extract relevant information from iTunes and iCloud (the "cloud") without needing to

12   examine individual Devices.  Further, Frantz maintains that based upon her own testing, the

13   proposed Protocol may result in generating historical logs only extending back a few days when

14   Devices have been powered off at prior points.  Here, Frantz notes that the iOS updates were

15   implemented over two years ago and that most of the Devices have been used – and likely

16   powered off and restarted at various points – since then.  Thus, in Frantz's view, the Devices'

17   usage, applications, and other details have likely significantly changed at various points since the

18   iOS updates were installed.  Frantz asserts that a forensic inspection (including one performed

19   via Cellebrite, as discussed above) would likely only provide insight as to current or very recent

20   usage, and would be unlikely to provide meaningful information as to "throttling" events,

21   including as to when such events may have occurred in the past.  Thus, adherence to the Protocol

22   would likely produce false or misleading results with regard to historical performance and

23

24

25

26   _____

27   [2] Neither Plaintiffs' nor Defendant's expert verified subject to perjury either their credentials or opinion. The SDM
     proceeds on the assumption that they will do so.

28                                                    12
     Case No.: 18-md-02827-EJD
     SPECIAL DISCOVERY MASTER ORDER DENYING PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER
     AND GRANTING DEFENDANT'S REQUEST TO CONDUCT FORENSIC INSPECTION OF DEVICES

whether the Devices were "throttled." *See* Danitz Decl., Ex. 10 at 1-2.

Frantz asserts that Apple's internal databases such as collected historical diagnostics, support, and potentially archived cloud of backup files would be a preferred and sufficient method to determine historical performance. Frantz opines that there is no difference between what would be found on any specific Devices and what could be found via iTunes and iCloud analysis (which Apple could test without a forensic inspection). *See* Danitz Decl., Ex. 10 at 2. Also, Frantz maintains that any Device that remained in use and installed subsequent iOS updates would skew the overall evaluation of the original problem. *Id.* at 5.

In addition, Frantz opines that a forensic examination would intrude into Plaintiffs' privacy rights. Frantz asserts that several types of data would be captured in what would be an unencrypted iPhone iTunes backup such as that proposed in the Protocol. Such data goes beyond those elements specifically enumerated in the Protocol, and includes items such as security tokens; web bookmarks; web history; cookies; user accounts; iPhone network data usage; installed applications; voicemails; application data files; content of applications; text messages and chats; messages sent via platforms on websites and applications; calendars; call logs; contacts; device locations; stored passwords; fitbit activity; banking and other health information; and searched items. *See* Danitz Decl., Ex. 10 at 6-7.

In opposition, Apple submits the declaration of Paul D. Martin, Ph.D. (Computer Science) dated June 14, 2019 ("Martin Decl."). Dr. Martin has worked in software engineering, cybersecurity, and applied cryptographs for ten years. He also has experience in performance testing and benchmarking of computer and other technological programs.

Dr. Martin explains that the word "performance" as raised in this action can have a broad variety of meanings for a device such as the Devices at issue. Performance testing can similarly

Case No.: 18-md-02827-EJD
SPECIAL DISCOVERY MASTER ORDER DENYING PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER
AND GRANTING DEFENDANT'S REQUEST TO CONDUCT FORENSIC INSPECTION OF DEVICES

be conducted on a broad scale, by examining application launch times, memory usage, scrolling

speed, and animation performance. To assess performance conditions, Dr. Martin asserts that it

is important to perform tests on a device that is configured in a way that matches, as closely as

possible, the configuration of the user's device. Configuration depends both on the hardware and

on what is installed on the hardware, including operating system, applications, and data. As to

installed items, Dr. Martin notes that all iOS devices (including the Devices at issue) contain a

complex combination of user-installed software and unique software configurations. Thus, each

user controls the state of his or her Device to the extent that it deviates from the basic iOS

configuration. Based upon configuration, a user may have installed software that uses more or

fewer iOS resources than another user's software. Martin Decl., ¶¶ 4-9.

In addition, Dr. Martin asserts that specific device usage patterns also impact

performance. For example, a user who visits many websites that have large images and other

media files may experience different performance than a user who never uses a web browser at

all, or who visits simpler websites. Martin Decl., ¶ 10. Also, third-party software applications

are updated in ways that affect performance of the applications on devices, regardless of the iOS

version installed at the time. Such updated applications may use more processing cores,

memory, and storage space than earlier versions of the same applications. *Id.*, ¶ 11.

Also, Dr. Martin states that network conditions may affect perceived performance. For

example, devices can be used on different Wi-Fi and cellular networks, which have different

bandwidth restrictions that impact perceived performance. A network that does not have much

available bandwidth will cause a user to perceive slower performance. Martin Decl., ¶ 12.

Pending software or operating system updates can also affect performance. *Id.*, ¶ 13.

Given the above, Dr. Martin opines that it is preferable to set up a test device with the

14

same applications, settings, and data corresponding to each Plaintiff's Device.  In this regard, Dr. Martin asserts that the best record of what is installed on a particular Device is the Device itself. By creating a full backup of that Device and using that backup to set up the test device, relevant details of the configuration would not be lost or overlooked.  Martin Decl., ¶¶ 14-15.

As to privacy concerns, Dr. Martin notes that although data is *collected* as part of the backup process, that does not mean such data will actually be *reviewed* during performance testing.  For example, were Dr. Martin to conduct the type of inspection contemplated by the Protocol, he would not review (or need to review) the contents of personal communications, photos, or videos obtained from the backup.  Martin Decl., ¶ 15.

Thus, to recreate the relevant conditions of use, Dr. Martin asserts that a backup under the Protocol would capture logs pertaining to usage history, customary use, applications that have been installed (and have not been uninstalled by the user), and records such as browsing history indicating the types of websites accessed by the user.  Such logs would also capture information about what applications have been used, the environment during use (*e.g.*, network conditions, temperature, and power status), and any problems (*e.g.*, application crashes and network-related errors or timeouts) that have occurred during use. Such logs would also provide information about other factors such as hardware problems that impact performance.  According to Dr. Martin, the logs can be obtained through the use of a forensic backup tool, Apple's backup and synchronize functions, as well as through built-in Apple utilities such as SysDiagnose.  Martin Decl., ¶ 16.  In sum, Dr. Martin concludes that the proposed forensic inspection of the Plaintiffs' Devices would provide information relevant to an analysis of Device performance with respect to Apple's arguments at class certification, dispositive motions, and trial.  *Id.*, ¶ 17.

In reply, Plaintiffs submit a supplemental declaration from Ms. Frantz dated June 17,

2019.  *See* Supplemental Declaration of David Straite dated June 17, 2019, Ex. 2.  Frantz maintains that Apple and Dr. Martin have failed to establish why the proposed inspection is necessary and how it would result in meaningful information as to the Plaintiffs' claims, including the issue of throttling.  Frantz reiterates several of her contentions related to the purported difficulty of taking data and information from the Devices (including various versions of applications and other programs) and conducting reliable tests, years after the iOS updates at issue were installed.  For example, Frantz notes potential problems of overlaying current applications and services onto an older version of iOS.  Frantz further asserts that any current image captures of the Devices would not address the environment under which the Devices were subjected in the past (along with all usage, applications, network conditions, and applications that were similarly performed and used in the past).  In connection with these assertions, Frantz maintains that Apple is able to obtain the information it needs via less intrusive means.

The Special Discovery Master denies Plaintiffs' motion for protective order and is inclined to permit a forensic inspection. The most recent version of the Protocol is a reasonable starting point at resolving the instant dispute, however, a revised version along the lines and for the reasons discussed below should be substituted.

The SDM declines to adopt Plaintiffs' and Ms. Frantz's proposal relating to alternative methods of extracting data because it does not appear that it would adequately provide Apple with a sufficient basis of information to complete relevant and necessary analysis.  Relying upon Ms. Frantz's proposed extraction methods would appear to be insufficient at this stage.  For example, it is unclear whether certain Devices and applications were connected to iCloud and various other backup programs, and if so, when and to what degree.  Only a complete forensic examination will allow the parties to gain a full understanding of relevant usage and other

Case No.: 18-md-02827-EJD
SPECIAL DISCOVERY MASTER ORDER DENYING PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER
AND GRANTING DEFENDANT'S REQUEST TO CONDUCT FORENSIC INSPECTION OF DEVICES

circumstances to analyze their claims and defenses.  Here, the Devices themselves – and their

performance – are directly at issue in this litigation.  Apple persuasively contends that the

Devices must be produced so that Lighthouse (the neutral inspector agreed to by Plaintiffs) can

attempt to replicate what it was that Plaintiffs did with their Devices to see if, for example, they

were doing something different than other users, or going on websites that required more power

than others.

The Devices have a sufficient and direct nexus to the parties' claims and defenses.  The

Devices and the requested forensic inspection are "intricately related" to the core of this action.

*See Memry Corp. v. Kentucky Oil Tech.*, 2007 WL 832937, at *3 (N.D. Cal. Mar. 19, 2007).  The

Devices and their performance – which the parties agree has a wide-ranging definition and

meaning – are directly at issue.  It is clear that Device performance encompasses myriad

different factors.  Permitting the forensic examination at issue appears to be the only feasible

method by which Apple and its experts can obtain complete and sufficient information to

effectively test each Plaintiff's specific usage and settings, as well as other factors that may

affect performance and perceptions of performance.  In this regard, and despite Plaintiffs' valid

concerns as to privacy rights, the Special Discovery Master notes that it is Plaintiffs, by bringing

the instant action, who have put the condition and performance of their Devices at issue.  *See*

*Verma v. Am. Express*, 2009 WL 1468720, at *1 (N.D. Cal. May 26, 2009) (in finding that the

plaintiff's physician was required to produce records related to plaintiff's alleged physical and

emotional distress injuries given that her employment discrimination action appeared to

encompass claims for such damages, the court noted that "[a] plaintiff's right to privacy under

California and federal law similarly must be balanced against the right of civil litigants to

discovery relevant facts").

Case No.: 18-md-02827-EJD
SPECIAL DISCOVERY MASTER ORDER DENYING PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER
AND GRANTING DEFENDANT'S REQUEST TO CONDUCT FORENSIC INSPECTION OF DEVICES

The decisions cited by Plaintiffs in opposition to Apple's request for production are distinguishable from the instant case. *Brocade Communications Systems*, cited by Plaintiffs, actually supports Apple's position. In *Brocade*, the plaintiff moved to compel forensic inspection of the defendant's computer's hard drives in a case concerning claims of trade secret misappropriation and copyright infringement. The court found that a forensic inspection was appropriate because the electronically stored information on the defendant's computer's hard drive was directly relevant to the plaintiff's claims. In reaching this finding, the court cited *Ameriwood Industries, Inc. v. Liberman*, 2006 WL 3825291 (E.D. Missouri, Dec. 27, 2006). In *Ameriwood*, the court found that "[c]onsidering the close relationship between plaintiff's claims and defendants' computer equipment and having cause to question whether defendants have produced all responsive documents, the Court will allow an independent expert to obtain and search a mirror image of defendant's computer equipment." *Id.* at *1. The *Brocade* court also cited *Balboa Threadworks, Inc. v. Stucky*, 2006 WL 763668, at *3 (D. Kan. Mar. 24, 2006) in which the court found that such mirror imaging was justified because the computer equipment at issue would likely contain electronic data directly related to the claims brought in that case. *See Brocade Communications Systems*, 2012 WL 70428, at *1.

And although *Cefalu v. Holder* provides an informative summary of the legal standards applicable to the instant dispute, it is factually distinguishable. In *Cefalu*, the court denied the defendant's request to produce hard drives of his personal computers for forensic inspection, but only because the defendant failed to identify any particular document or subject which he had reasonable cause to believe existed that the plaintiff had failed to produce. *See Cefalu*, 2013 WL 4102160, at *2. There was no indication in *Cefalu* of a close nexus actually existing between the computers and claims/defenses at issue.

18

*Henson v. Turn, Inc.*, 2018 WL 5281629, at * 5 (N.D. Cal. October 22, 2018) is also

distinguishable.  *Henson* concerned a data-privacy class action.  The plaintiffs, Verizon cell

phone and data users, claimed that the defendant was illegally using cookies (lines of software

code that monitor and gather information about users' browsing and app use) on their cell phones

and brought claims under New York General Business Law § 349 (which made unlawful any

deceptive acts or practices in the conduct of any business) and trespass to chattels.  The

defendant moved to compel a forensic inspection or, alternatively, have plaintiffs produce

complete forensic images of the cell phones at issue, their full web browsing history, and all

cookies stored on or deleted from their phones.  The plaintiffs objected to the inspection as being

overly broad and also on the basis that it would constitute an untoward invasion of privacy

rights.  The plaintiffs argued that they should only be required to produce their web browsing

history and cookies associated with the defendant's partner websites and the date fields of all

other cookies.  The defendant argued that forensic inspection was needed to show the following:

whether the defendant placed or replaced cookies on the phones; what kind of cookies were

placed on the phone and when; whether the plaintiffs regularly deleted cookies and their

browsing history from their phones; whether the defendant circumvented device settings on the

phones; and what information if any was gathered from the phones.  The defendant also argued

that the phones were the exact chattels plaintiffs alleged had been trespassed.  *See Henson* 2018

WL 5281629, at *1-5.

The court in *Henson* denied the defendant's motion, finding that the requested inspection

would be disproportionate to the needs of the case because it would likely sweep in documents

and information not relevant to the issues in the case such as text messages, emails, contact lists,

and photographs.  Critically, and pertinent to the SDM's reading that *Henson* is distinguishable,

Case No.: 18-md-02827-EJD
SPECIAL DISCOVERY MASTER ORDER DENYING PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER
AND GRANTING DEFENDANT'S REQUEST TO CONDUCT FORENSIC INSPECTION OF DEVICES

the court further noted that the defendant essentially sought to examine the phones at issue directly – and not via a neutral inspector – and that forensic imaging was not at issue because the plaintiffs had represented that they had already forensically imaged the phones (and would be producing information from those images). *See Henson* 2018 WL 5281629, at *5.

*Henson* distinguished itself from *Lifetouch Nat'l Sch. Studios, Inc. v. Moss-Williams*, 2013 WL 11235928, at *2 (N.D. Cal. Oct. 15, 2013). In *Lifetouch*, the court adopted a protocol that a neutral third-party forensic expert would image computers and produce responsive information therefrom to the parties, but that neither the requesting party's personnel, nor counsel, would inspect or otherwise handle the responding party's computers. The court in *Lifetouch* found that the record demonstrated a sufficient nexus between defendant's computers and the plaintiff's cause of action for trade secret misappropriation. The only other means of obtaining the information at issue would have been via a thumb drive that had been destroyed. As such, the requesting party's only recourse was to examine the actual computers that were used to view the contents of the thumb drive. *Id.*

*In re Premera Blue Cross Customer Data Security Breach Litigation*, 329 F.R.D. 656 (D. Oregon 2019) is also distinguishable. In *Premera*, the defendant moved to compel a forensic inspection of the plaintiffs' tablets in a data breach case involving claims of potential identity theft. The defendant argued that the plaintiffs had to establish a causal link between the defendant's data breach and their alleged harm, and that the plaintiffs could not demonstrate this link if their devices had malware or evidence of other intrusions (the inspection at issue would have indicated whether or not malware or other intrusions affected the tablets). In denying the defendant's motion, the court noted that the only real damages theories brought by plaintiffs concerned a market price premium (benefit of the bargain) theory and a loss of value theory, and

20

that neither theory involved incidents of identity theft/fraud or raised the issue of whether there

was any causal link between such incidents and the data breach at issue.  The court also rejected

the defendant's alternative basis for inspection – that even if the plaintiffs were not pursuing

damages as a result of the alleged data breach, the plaintiffs asserted that their data was misused

as a result thereof.  In this regard, the defendant had argued that inspection would help determine

whether data breach exfiltration or some other cause resulted in the alleged misuse.  The court

found that although the defendant's alternative contention indicated that a forensic inspection

would likely produce relevant discovery, such inspection would fail under a proportionality

analysis.  This was because among other things the data at issue lacked a sufficiently close nexus

vis-à-vis the plaintiffs' claims unlike the case under consideration here. *See Premera*, 329 F.R.D.

at 670.

Plaintiffs' reliance on *Memry Corp. v. Kentucky Oil Technology, N.V.*, 2007 WL 832937

(N.D. Cal. Mar. 19, 2007) is also unpersuasive.  In *Memry Corp.*, the court denied a motion to

compel a forensic inspection of computers and storage media by a third-party consultant because,

*inter alia*, the computers and storage media at issue were not intricately related to the basis of the

action, given that the action primarily related to an intellectual property portfolio regarding

bistable cell technology and not the computers and storage media themselves.

*Capitol Records, Inc. v. Alaujan*, 2009 WL 1292977 (D. Mass. May 6, 2009), relied upon

by Apple, is more instructive.  In *Capitol Records*, a copyright infringement case regarding the

defendant's alleged illegal downloading of songs, the plaintiffs sought to inspect the defendant's

computers for evidence supporting their claims by creating mirror-images of the hard drives for

inspection by a forensic computer expert.  The court granted the plaintiffs' request in part,

finding that "where the computer itself is at the heart of the litigation – where it is, in effect, an

Case No.: 18-md-02827-EJD
SPECIAL DISCOVERY MASTER ORDER DENYING PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER
AND GRANTING DEFENDANT'S REQUEST TO CONDUCT FORENSIC INSPECTION OF DEVICES

instrumentality of the alleged copyright infringement – it is plainly relevant under Rule 26(b)."

*Id.* at *1. The court also noted that other types of discovery would not provide sufficient

information on the issue at hand. Notably, the court found that the defendant's privacy concerns

could be addressed through a robust protective order containing the following: the plaintiffs

would select a neutral forensic expert to produce a mirror image of the computer's hard drive;

that expert would execute a confidentiality agreement and also abide by the protective order in

place in the action; that expert would make a mirror image of the computer's hard drive in timely

fashion; only that expert would be authorized to inspect or handle the computer or the mirror

image (the plaintiffs and their counsel would not inspect or handle the mirror image; the expert

would not examine any non-relevant files or data on the computer, or anything designated as

privileged or work-product protected information; that expert would produce a report based upon

his or her inspection that describes the music files found and any relevant file-sharing

information; and that expert would disclose his or her report only to the defendant's counsel,

who could then lodge objections to the report based on privilege. *Id.* at *2-3.

    *Herskowitz/Juel v. Apple, Inc.*, 12-CV-02131-LHK; 12-CV-03124-LHK (N.D. Cal. Feb.

12, 2014) further supports Apple's position. In *Herskowitz/Juel*, the court ordered the plaintiffs

to deposit computers and devices at issue with a third-party vendor for forensic inspection,

because the "data contained on Plaintiffs' computers and devices is likely to be highly relevant,

and admissible evidence under Federal Rule of Civil Procedure 26(b)(1)." The court further

noted in that case that only the defendant's (Apple's) experts may access the information stored

on the plaintiffs' computers and devices (and not Apple or its counsel) mirroring the Protocol

currently proposed by Apple in this matter.

    It is worth mentioning that *Herskowitz/Juel* only concerned a request to conduct a

22

forensic inspection of two devices.  Here, Apple has requested a forensic inspection of all 115

Devices.  Thus, the potential privacy intrusions in *Herskowitz/Juel* were not as widespread as

they are in the instant case.   Given Plaintiffs' concerns regarding the potential of a broad

intrusion, the SDM in this case will permit forensic inspection of a limited number of Devices as

discussed below.

   Although the instant case does not concern claims of copyright infringement or

misappropriation of trade secrets, and the parties' submissions do not indicate that Plaintiffs have

failed to comply with other discovery requests and obligations, the Devices themselves and their

performance are squarely at issue.  As previously acknowledged, the Special Discovery Master is

concerned about Plaintiffs' privacy rights at stake, but believes no less intrusive means exist that

would provide Apple with adequate information by which to defend against Plaintiffs' claims in

this case. *See Doe v. A.J. Boggs & Co.*, 2019 WL 1517567, at *6 ("[w]hen evidence is

particularly important to a claim or defense, a party's right to discovery of that evidence is more

likely to outweigh competing privacy claims").

   Because the performance issues at stake in this action appear to touch on a host of types

of Device usage, inspection of the Devices has a direct and complete nexus to the parties' claims

and defenses.  Thus, the Special Discovery Master finds that the outcome warranted here is

informed by more factually similar decisions such as *Capitol Records*, *Herskowitz/Juel*,

*Ameriwood*, and *Lifetouch*.  In terms of proportionality, a forensic inspection, subject to

limitations discussed below, is appropriate and is not outweighed by Plaintiffs' privacy concerns.

   The Special Discovery Master is also unpersuaded that Apple could obtain sufficient

information regarding Plaintiffs' user habits and experiences with the Devices via written

discovery and depositions.  A forensic examination at this time would best allow the parties to

Case No.: 18-md-02827-EJD
SPECIAL DISCOVERY MASTER ORDER DENYING PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER
AND GRANTING DEFENDANT'S REQUEST TO CONDUCT FORENSIC INSPECTION OF DEVICES

capture information related to performance, as the Devices have been used.

Accordingly, the Special Discovery Master finds that Apple has met its heightened burden to warrant a forensic inspection of the Devices.

A portion of the requested inspection should be relatively non-controversial.  For example, nothing appears to indicate that the inspection, to the extent it will allow Lighthouse to obtain Device configuration data, would likely delve into issues of content and usage patterns.  The inspection, to the extent it will touch upon and potentially expose Plaintiffs' content and usage patterns as well as the identity of third parties who have communicated with Named Plaintiffs, is obviously more concerning.

The Special Discovery Master acknowledges Plaintiffs' and Ms. Frantz's assertions that the proposed Protocol would result in an unnecessary inspection and unreliable/unscientific testing, but finds that Dr. Martin's declaration establishes, at this juncture, that an inspection is necessary for Apple to be able to effectively test the Devices under similar circumstances.  Further, as to Plaintiffs' claim that the inspection will entail unreliable and unscientific testing, the SDM finds that such contention is akin to a motion *in limine* that would be better reserved for the Court at or closer to trial.  Whether or not Apple's expert's report and opinions are ultimately accepted as persuasive evidence is not at issue, nor would it properly be before the Special Discovery Master at this time.  What is important is that, as is pertinent to the instant dispute, the Special Master finds that the requested inspection will provide information relevant to issues such as class certification and the merits of Plaintiffs' claims.  Plaintiffs are not left without recourse to challenge Apple's expert's opinions at a later time.

# ORDER

The Special Discovery Master finds that the requested forensic inspection shall proceed with a sampling of the two categories of Devices at issue. As to the Devices that have already been turned over to Plaintiffs' counsel, Lighthouse shall be entitled to examine eight of them. As to the Devices that remain in Named Plaintiffs' possession, the neutral inspector shall be entitled to examine two of them. Apple shall designate the Named Plaintiffs whose Devices will be inspected and who should be the same as the Named Plaintiffs whose depositions will be taken first by Apple.

Such initial limit on inspections will allow the parties and experts to receive Lighthouse's report and findings as to a reasonable number of Devices and thus result in less intrusion and disruption than permitting inspection of all Devices. Moreover, it will allow for a more streamlined and cost-effective approach to testing. This sampling will allow the parties to gain substantial insight as to performance factors and issues, and will put the parties in the position of being able to determine later whether inspection of additional Devices is warranted. Accordingly, this finding is made without prejudice to the parties' rights to request additional testing upon a showing of good cause and lack of undue burden.

In connection with these findings, the parties shall have Lighthouse and the parties' experts execute the stipulated protective order in place in this action (if they have not done so already). See ECF No. 224. The stipulated protective order clearly contemplates disclosure of protected material to third-party vendors such as Lighthouse and the parties' experts. In addition, paragraph 3 of the Protocol provides that Lighthouse would sign the protective order. Lighthouse's and the parties' experts' execution of the stipulated protective order would thus provide Plaintiffs with further assurances with regard to their privacy concerns.

Case No.: 18-md-02827-EJD
SPECIAL DISCOVERY MASTER ORDER DENYING PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER
AND GRANTING DEFENDANT'S REQUEST TO CONDUCT FORENSIC INSPECTION OF DEVICES

The Special Discovery Master further orders that the parties and their experts meet and confer at the earliest possible date to discuss potential modifications to the Protocol as a way of further addressing privacy concerns.  Such concerns touch upon issues of content and user habits, as the Protocol in its current form does not, for example, appear to prohibit disclosure to counsel of information beyond text messages, emails, photos, and videos.  The Protocol should thus be modified to include items such as other types of chats, websites visited, and other applications/materials indicative of private content.

Apple and its counsel (both in-house and outside) should not be permitted to gain access to texts, chats, emails, photos, videos, identification of the websites that were browsed, any caller information, and any other information indicating any sort of such specific "private content" downloaded or otherwise accessed or identifying third parties with whom the user communicated.  Apple's counsel should be permitted to be informed of items such as the amount of data/power used by apps, photos, websites, and browsers, but all efforts should be made to protect from disclosure of any information as to the actual content.  For example, Apple and its counsel may be informed that a certain Plaintiff viewed many videos of certain length or used his or her Device in a manner that entailed more data and processing usage than a typical user, but such information should not detail specific content of videos or usage was performed.

Additionally, the parties and their experts will discuss whether and to what extent the experts will be permitted to access and review any underlying information indicative of private content.  The current Protocol appears to allow the parties' experts to have unfettered access to such information.  As noted throughout this Order, the Special Discovery Master is endeavoring to limit exposure of personal and private information to the extent feasible and practical given the legitimate discovery needs discussed.

Before the inspection is to proceed, Plaintiffs is granted the opportunity to submit proposed revisions to the Protocol to address the above issues and concerns with more particularity. The parties – and their experts – should further meet and confer as soon as possible to determine methods by which the inspection may proceed to avoid unnecessary exposure of private content, and other financial or personal information. Moreover, the parties should meet and confer to generate agreeable methods by which their respective experts can communicate with Lighthouse and obtain information in the least intrusive way possible. As stated above, the parties and their experts should discuss ways by which their experts can avoid if possible being given much, if any, knowledge regarding the underlying content captured by Lighthouse. In addition, the parties should meet and confer to determine a method by which exposure of the names of any third-parties referenced in any emails, texts, and photos can be avoided to the greatest extent possible.

Given the above direction and following Apple's designation of specific Devices to be examined, the meet and confer process is likely to be more productive than the parties' past efforts. In this regard, the parties and their experts are in the best position to meet and confer on a proposal that minimizes exposure of content and private information to Apple, the parties' experts, and Apple's outside and inside attorneys and provides an appropriate tailored approach to discovery from these Devices.

Nonetheless, if the parties are unable to reach agreement on a revised Protocol, they are directed to tender to the Special Discovery Master their respective modifications of the Protocol for consideration and ultimate determination by the Special Discovery Master.

If counsel are not able to agree upon a schedule for the meet and confer sessions referred to above, a schedule will be addressed and set at the July 11, 2019 regularly scheduled telephonic

27

conference.

The Special Discovery Master finds that no sanctions, costs or attorneys' fees be awarded in connection with this proceeding.  The parties acted with substantial justification in litigating this issue under the circumstances, where the relevant legal and technical issues are complex.

**IT IS SO ORDERED.**

Dated:          July 9, 2019

Respectfully submitted,

Hon. Rebecca Westerfield (Ret.)
Special Discovery Master

Case No.: 18-md-02827-EJD
SPECIAL DISCOVERY MASTER ORDER DENYING PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER
AND GRANTING DEFENDANT'S REQUEST TO CONDUCT FORENSIC INSPECTION OF DEVICES

## PROOF OF SERVICE BY E-Mail

Re: In re: Apple Inc. Device Performance Litigation vs. USDC Case No 18-md-02827-EJD
Reference No. 1100090686

I, Elizabeth Magana, not a party to the within action, hereby declare that on July 9, 2019, I served the attached SPECIAL DISCOVERY MASTER ORDER NO. 9 DENYING PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER AND GRANTING DEFENDANT'S REQUEST TO CONDUCT FORENSIC INSPECTION OF DEVICES on the parties in the within action by electronic mail at San Francisco, CALIFORNIA, addressed as follows:

Laurence D. King Esq.
Mario M. Choi Esq.
Kaplan Fox & Kilsheimer LLP
350 Sansome St.
Suite 400
San Francisco, CA 94104
Phone: 415-772-4700
lking@kaplanfox.com
MChoi@kaplanfox.com
    Parties Represented:

David A. Straite Esq.
Aaron Schwartz Esq.
Frederic S. Fox Esq.
Kaplan Fox & Kilsheimer LLP
850 Third Ave.
14th Floor
New York, NY 10022
Phone: 212-687-1980
dstraite@kaplanfox.com
aschwartz@kaplanfox.com
ffox@kaplanfox.com
    Parties Represented:

Joseph W. Cotchett Jr. Esq.
Mark C. Molumphy Esq.
Ms. Elle D. Lewis
Cotchett, Pitre & McCarthy
840 Malcolm Rd.
Suite 200
Burlingame, CA 94010
Phone: 650-697-6000
jcotchett@cpmlegal.com
mmolumphy@cpmlegal.com
elewis@cpmlegal.com
    Parties Represented:
    Robert Gilson

Christopher Chorba Esq.
Timothy W. Loose Esq.
Cynthia Chen McTernan Esq.
Gibson Dunn & Crutcher
333 S. Grand Ave.
52nd Floor
Los Angeles, CA 90071-3197
Phone: 213-229-7000
cchorba@gibsondunn.com
tloose@gibsondunn.com
cmcternan@gibsondunn.com
    Parties Represented:
    Apple Inc.

G. Charles Nierlich Esq.
Alexander N. Harris Esq.
Gibson Dunn & Crutcher
555 Mission St.

Karin B. Swope Esq.
Keller Rohrback L.L.P
1201 Third Ave.
Suite 3200

Suite 3000
San Francisco, CA   94105
Phone: 415-393-8200
gnierlich@gibsondunn.com
aharris@gibsondunn.com
    Parties Represented:
    Apple Inc.

Ariana J. Tadler Esq.
Melissa Ryan Clark Esq.
Tadler Law LLP
One Pennsylvania Plaza
New York, NY   10119
atadler@tadlerlaw.com
mclark@tadlerlaw.com
    Parties Represented:


Cassandra Lee Gaedt-Sheckter Esq.
Harper L. Gernet-Girard Esq.
Ms. Brooke Wallace
Gibson Dunn & Crutcher
333 S. Grand Ave.
52nd Floor
Los Angeles, CA   90071-3197
Phone: 213-229-7000
cgaedt@gibsondunn.com
hgernetgirard@gibsondunn.com
bwallace@gibsondunn.com
    Parties Represented:
    Apple Inc.

Brian Danitz Esq.
Tyson Redenbarger Esq.
Cotchett, Pitre & McCarthy
840 Malcolm Rd.
Suite 200
Burlingame, CA   94010
Phone: 650-697-6000
bdanitz@cpmlegal.com
tredenbarger@cpmlegal.com
    Parties Represented:
    Robert Gilson

Seattle, WA   98101-3052
Phone: 206-623-1900
kswope@kellerrohrback.com
    Parties Represented:


Diana M. Feinstein Esq.
Gibson Dunn & Crutcher
200 Park Ave.
47th Floor
New York, NY   10166-0193
Phone: 212-351-4000
DFeinstein@gibsondunn.com
    Parties Represented:
    Apple Inc.

Beth S. Brinkmann Esq.
Covington & Burling LLP
One City Center
850 Tenth St. NW
Washington, DC   20001-4956
Phone: 202-662-6000
NOT AVAILABLE
    Parties Represented:
    Apple Inc.

Nicholas B. Scheiner Esq.
Gibson Dunn & Crutcher
1881 Page Mill Rd.
Palo Alto, CA   94304-1125
Phone: 650-849-5300
nscheiner@gibsondunn.com
    Parties Represented:

Ms. Kristina Eckert
Gibson Dunn & Crutcher
333 S. Grand Ave.
52nd Floor
Los Angeles, CA   90071-3197
Phone: 213-229-7000
keckert@gibsondunn.com
   Parties Represented:
   Apple Inc.

Winslow Taub Esq.
Covington & Burling LLP
415 Mission Street
Ste. 5400, Salesforce Tower
San Francisco, CA   94105
Phone: 415-591-6000
wtaub@cov.com
   Parties Represented:
   Apple Inc.

Donald R. Hall Esq.
Kaplan Fox & Kilsheimer LLP
850 Third Ave.
14th Floor
New York, NY   10022
Phone: 212-687-1980
dhall@kaplanfox.com
   Parties Represented:

I declare under penalty of perjury the foregoing to be true and correct. Executed at San Francisco,

CALIFORNIA on  July 9, 2019.

_____
Elizabeth Magana
JAMS
EMagana@jamsadr.com