1   JOSEPH W. COTCHETT (SBN 36324)
    *jcotchett@cpmlegal.com*
2   MARK C. MOLUMPHY (SBN 168009)
    *mmolumphy@cpmlegal.com*
3   BRIAN DANITZ (SBN 247403)
    *bdanitz@cpmlegal.com*
4   ANYA THEPOT (SBN 318430)
    *athepot@cpmlegal.com*
5   **COTCHETT, PITRE & McCARTHY LLP**
    840 Malcolm Road, Suite 200
6   Burlingame, CA 94010
    Telephone: 650.697.6000
7   Facsimile: 650.697.0577

8   LAURENCE D. KING (SBN 206243)
    *lking@kaplanfox.com*
9   MARIO M. CHOI (SBN 243409)
    *mchoi@kaplanfox.com*
10  **KAPLAN FOX & KILSHEIMER LLP**
    1999 Harrison Street, Suite 1560
11  Oakland, CA 94612
    Telephone: 415.772.4700
12  Facsimile: 415.772.4707

13  FREDERIC S. FOX (*pro hac vice*)
    *ffox@kaplanfox.com*
14  DONALD R. HALL (*pro hac vice*)
    *dhall@kaplanfox.com*
15  DAVID A. STRAITE (*pro hac vice*)
    *dstraite@kaplanfox.com*
16  **KAPLAN FOX & KILSHEIMER LLP**
    850 Third Avenue
17  New York, NY 10022
    Telephone: 212.687.1980
18  Facsimile: 212.687.7714

19  *Interim Co-Lead Counsel for Plaintiffs*

20                    **UNITED STATES DISTRICT COURT**
                    **NORTHERN DISTRICT OF CALIFORNIA**
21                         **SAN JOSE DIVISION**

22  IN RE: APPLE INC. DEVICE          Case No. 5:18-md-02827-EJD
    PERFORMANCE LITIGATION
23                                    **NOTICE OF MOTION AND MOTION**
                                      **FOR PRELIMINARY APPROVAL OF**
24  This Document Relates to:        **PROPOSED SETTLEMENT;**
                                      **MEMORANDUM OF POINTS AND**
25      ALL ACTIONS                  **AUTHORITIES IN SUPPORT THEREOF**

26                                    Judge: Hon. Edward J. Davila
                                      Courtroom: 4, 5th Floor
27                                    Date: April 3, 2020
                                      Time: 1:30 p.m.
28

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 3, 2020, at 1:30 p.m., in Courtroom 4 of the United States District Court for the Northern District of California, Robert F. Peckham Federal Building & United States Courthouse, 280 South First Street, San Jose, California 95113, the Honorable Edward J. Davila, presiding, Named Plaintiffs[1] will and hereby do move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule"): (i) preliminarily approving the proposed Settlement; (ii) certifying a class for settlement purposes ("Settlement Class"); (iii) approving the form and manner of notice to the Settlement Class; (iv) approving the selection of the Settlement Administrator; and (iv) scheduling a Final Hearing before the Court.

The proposed Settlement is within the range of what is fair, reasonable, and adequate such that notice of its terms may be disseminated to Settlement Class Members and a Final Hearing to finally approve the proposed Settlement scheduled.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the accompanying Joint Declaration of Joseph W. Cotchett and Laurence D. King in Support of Plaintiffs' Motion for Preliminary Approval of Proposed Settlement, dated February 28, 2020 ("Joint Declaration"), and the exhibits attached thereto, the Stipulation of Settlement dated February 28, 2020 ("Stipulation" or "Settlement"), and the exhibits attached thereto, the pleadings and records on file in this Action, and other such matters and argument as the Court may consider at the hearing of this motion.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the proposed Settlement is within the range of fairness, reasonableness, and adequacy as to warrant: (a) the Court's preliminary approval; (b) certification of a Settlement Class for settlement purposes; (c) the dissemination of Notice of its terms to Settlement Class Members; and (d) setting a hearing date for final approval of the Settlement as well as application of attorneys' fees, service awards, and reimbursement of expenses;

---

[1] All capitalized words are defined in the Stipulation unless otherwise noted.

2. Whether the proposed Notice adequately apprises the Settlement Class Members of the terms of the Settlement and their rights with respect to it;

3. Whether the selection of Angeion Group as Settlement Administrator should be approved;

4. Whether the proposed Plan to Allocate Settlement proceeds should be preliminarily approved; and

5. Whether the Claim Forms are sufficient.

**TABLE OF AUTHORITIES**

Page(s)

I.      INTRODUCTION ............................................................................................... 1

II.     THE PROPOSED SETTLEMENT ..................................................................... 2

III.    BACKGROUND ................................................................................................ 3

        A.      Summary of the Litigation ..................................................................... 3

        B.      Settlement Negotiations and Mediation ................................................. 4

IV.     SUMMARY OF AND REASONS FOR THE SETTLEMENT ........................... 4

V.      ARGUMENT ..................................................................................................... 5

        A.      Legal Standards on Preliminary Approval ............................................. 5

        B.      Conditional Class Certification of the Settlement Class is Warranted .... 6

                1.      Named Plaintiffs Satisfy Rule 23(a) Prerequisites ..................... 7

                2.      Plaintiffs Satisfy Rule 23(b) Standards ...................................... 8

        C.      The Proposed Settlement Should Be Preliminarily Approved ................ 9

                1.      The Proposed Settlement is the Product of an Arms-Length, Non-Collusive, Negotiated Resolution ............................................... 10

                        a.      The Proposed Settlement is the Product of a Mediator's Proposal and is Supported by Experienced Counsel ........ 10

                        b.      The Stage of the Proceedings and the Discovery Completed Support the Settlement ................................... 11

                2.      The Procedural Guidance for Class Action Settlements Factors are Satisfied ............................................................................... 12

                        a.      Guidance 1: Differences, Range, and Plan of Allocation .......... 12

                        b.      Guidance 2: The Proposed Settlement Administrator ........... 18

                        c.      Guidance 3: The Proposed Notices to the Settlement Class are Adequate ...................................................................... 18

                        d.      Guidance 4 and 5: Opt-Outs and Objections ...................... 20

                        e.      Guidance 6: The Intended Attorneys' Fees and Expenses Request ........................................................................... 20

                        f.      Guidance 7: The Proposed Settlement and Proposed Service Awards Do Not Unjustly Favor Any Class Members, Including Named Plaintiffs ................................................. 21

                        g.      Guidance 8: Cy Pres Awardees ........................................ 23

                        h.      Guidance 9: Proposed Timeline ....................................... 24

**TABLE OF CONTENTS (-cont.)**

Page

i.    Guidance 10: Class Action Fairness Act...........................................24

j.    Guidance 11: Past Distributions......................................................24

VI.    CONCLUSION ...........................................................................................25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Beck-Ellman v. Kaz USA, Inc.*,
No. 3:10-CV-02134-H-DHB, 2013 WL 1748729 (S.D. Cal. Jan. 7, 2013).................................17

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015).................................................................................................22

*Cohorst v. BRE Properties, Inc.*,
No. 3:10-cv-2666-JM-BGS, 2011 WL 13356361 (S.D. Cal. May 6, 2011)...............................12

*Cox v. Clarus Mktg. Group, LLC*,
291 F.R.D. 473 (S.D. Cal. 2013).................................................................................................22

*Ebarle v. Lifelock, Inc.*,
No. 15-cv-00258-HSG, 2016 WL 234364 (N.D. Cal. Jan. 20, 2016) ..............................7, 8, 10

*Eddings v. Health Net, Inc.*,
No. CV 10-1744-JST (RZX), 2013 WL 3013867 (C.D. Cal. June 13, 2013) ...........................23

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ........................................10

*Fulford v. Logitech, Inc.*,
No. 08-cv-02041 MMC, 2010 WL 807448 (N.D. Cal. Mar. 5, 2010)........................................22

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)......................................................................................................5

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992).........................................................................................................8

*In re Apple Inc. Device Perf. Litig.*,
No. 5:18-md-02827-EJD, 2019 WL 1993916 (N.D. Cal. May 6, 2019) ......................................4

*In re Apple Inc. Device Perf. Litig.*,
No. 5:18-md-02827-EJD, 2019 WL 3973752 (N.D. Cal. Aug. 22, 2019)....................................4

*In re Chrysler-Dodge-Jeep Ecodiesel Mkting, Sales Practices, and Prods. Liab. Litig.*,
No. 17-md-02777-EMC, 2019 WL 536661 (N.D. Cal. Feb. 11, 2019).....................................12

*In re Haier Freezer Consumer Litig.*,
No. 5:11-CV-02911-EJD, 2013 WL 2237890 (N.D. Cal. May 21, 2013)..............................6, 17

*In re Heritage Bond Litig.*,
No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ..........................................5

*In re Hyundai and Kia Fuel Economy Litig.*,
926 F.3d 539 (9th Cir. 2019).........................................................................................................5

*In re Linkedin User Privacy Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015).................................................................................................22

*In re Magsafe Apple Power Litig.*,
No. 5:09-cv-01911-EJD, 2015 WL 428105 (N.D. Cal. Jan. 30, 2015) ......................................22

NOTICE OF MOT. AND MOT. FOR PRELIM. APPROVAL; MPA ISO THEREOF

*In re Netflix Privacy Litig.*,
No. 5:11-CV-00379 EJD, 2012 WL 2598819 (N.D. Cal. July 5, 2012) ................................ 12

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) .................................................................................... 21, 22

*In re Portal Software Sec. Litig.*,
No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ................................ 11

*In re Portal Software, Inc. Sec. Litig.*,
No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ................................ 23

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................................ 6

*In re TD Ameritrade Account Holder Litigation*,
No. C 07-2852 SBA, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) ................................ 17

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
No. 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ................................ 11

*In re: Apple Inc. Device Perf. Litig.*,
347 F. Supp. 3d 434 (N.D. Cal. 2018) .................................................................................. 3

*In re: Apple Inc. Device Perf. Litig.*,
386 F. Supp. 3d 1155 (N.D. Cal. 2019) .................................................................. 3, 13, 14

*In re: Lenovo Adware Litig.*,
No. 15-md-02624-HSG, 2018 WL 6099948 (N.D. Cal. Nov. 21, 2018) ............................ 18

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ................................................................................................ 19

*Lemus v. H & R Block Enterprises LLC.*,
No. C 09-3179 SI, 2012 WL 3638550 (N.D. Cal. Aug. 22, 2012) .................................... 17

*Lewis v. Green Dot Corporation*,
No. CV 16-3557 FMO (AGRx), 2017 WL 4785978 (C.D. Cal. June 12, 2017) .................... 17

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) .............................................................................................. 15

*McNeal v. RCM Technologies USA Inc.*,
No. 2:16-cv-05170-ODW(SSx), 2017 WL 1807595 (C.D. Cal. Mar. 16, 2017) .................... 17

*Noll v. eBay, Inc.*,
309 F.R.D. 593 (N.D. Cal. 2015) ................................................................................ 7, 8, 9, 20

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) .......................................................................................... 5, 9

*Peel v. Brooksamerica Mortg. Corp.*,
No. SACV 11-00079-JLS (RNBx), 2014 WL 12589317 (C.D. Cal. Nov. 13, 2014) ............... 12

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) .............................................................................................. 15

*Radcliffe v. Experian Info. Solutions, Inc.*,
   715 F.3d 1157 (9th Cir. 2013).............................................................. 21, 22, 23

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009)....................................................................... 5

*Roe v. Frito-Lay, Inc.*,
   No. 14-cv-00751-HSG, 2016 WL 4154850 (N.D. Cal. Aug. 5, 2016)............... 15

*Rosado v. Ebay Inc.*,
   No. 5:12-cv-04005-EJD, 2016 WL 3401987 (N.D. Cal. June 21, 2016) ........... 22

*Russell v. Kohl's Dept. Stores, Inc.*,
   No. ED CV 15-1143 RGK (SPx), 2016 WL 6694958 (C.D. Cal. Apr. 11, 2016)... 20

*Schaffer v. Litton Loan Serv., LP.*,
   No. CV 05-07673 MMM (JCx), 2012 WL 10274679 (C.D. Cal. Nov. 13, 2012) ... 15

*Schneider v. Chipotle Mexican Grill, Inc.*,
   No. 16-cv-02200-HSG, 2020 WL 511953 (N.D. Cal. Jan. 31, 2020) ........... 12, 18

*Smith v. CRST Van Expedited, Inc.*,
   No. 10-CV-1116-IEG (WMC), 2013 WL 163293 (S.D. Cal. Jan. 14, 2013) ........... 21

*Spann v. JC Penney Corp.*,
   314 F.R.D. 312 (C.D. Cal. 2016) ...................................................... 9, 10, 12

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003)............................................................ 5, 22, 23

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976).......................................................................... 5

*Villegas v. J.P. Morgan Chase & Co.*,
   No. CV 09–00261 SBA (EMC), 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ... 11

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002)..................................................................... 21

*Vizcaino v. U.S. Dist. Ct. for W.D. Wash.*,
   173 F.3d 713 (9th Cir. 1999)....................................................................... 15

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)....................................................................................... 7

*Wang v. Chinese Daily News, Inc.*,
   737 F.3d 538 (9th Cir. 2013)........................................................................... 7

*Williamson v. McAfee, Inc.*,
   No. 5:14-cv-00158-EJD, 2016 WL 4524307 (N.D. Cal. Aug. 30, 2016)............ 20

*Wright v. Linkus Enters., Inc.*,
   259 F.R.D. 468 (E.D. Cal. 2009) .................................................................... 5

Case No. 5:18-md-02827-EJD

NOTICE OF MOT. AND MOT. FOR PRELIM. APPROVAL; MPA ISO THEREOF

**Statutes**

18 U.S.C.
  § 1030, Computer Fraud Abuse Act ("CFAA") ....................................................... 3, 4

28 U.S.C.
  § 1407 ........................................................................................................................... 3

28 U.S.C.
  § 1711, *et seq.* "Class Action Fairness Act" ............................................................ 24

California Penal Code
  § 502, Computer Data Access and Fraud Act ("CDAFA") ...................................... 3, 4


**Rules**

Federal Rules of Civil Procedure
  Rule 23 ............................................................................................................... passim
  Rule 23(a) ....................................................................................................................... 6
  Rule 23(a)(1) .................................................................................................................. 7
  Rule 23(a)(2) .................................................................................................................. 7
  Rule 23(a)(3) .................................................................................................................. 7
  Rule 23(a)(4) .................................................................................................................. 8
  Rule 23(b) ...................................................................................................................... 7
  Rule 23(b)(3) ......................................................................................................... 7, 8, 9
  Rule 23(c)(2)(B) ...................................................................................................... 18, 19
  Rule 23(e)(1) ................................................................................................................ 19
  Rule 23(e)(5) ................................................................................................................ 20
  Rule 23(h)(1) ................................................................................................................ 19
  Rule 30(a) ..................................................................................................................... 11


**Other Authorities**

Federal Trade Commission,
  CONSUMERS AND CLASS ACTIONS: A RETROSPECTIVE AND ANALYSIS OF SETTLEMENT
  CAMPAIGNS (Sept. 2019) at p. 21 .............................................................................. 18

Northern District of California's Procedural Guidance for Settlement of
  Class Action Settlements ...................................................................................... *passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

Named Plaintiffs respectfully submit this Memorandum of Points and Authorities in support of their Motion for Preliminary Approval of the Settlement in the above-captioned action ("Action"), and entry of the [Proposed] Order Certifying Settlement Class; Granting Preliminary Approval of Class Action Settlement; and Approving Form and Content of Class Notice ("Preliminary Approval Order"), attached as Exhibit D to the Stipulation.  The Preliminary Approval Order will: (i) grant preliminary approval of the proposed class action settlement on the terms set forth in the Stipulation; (ii) certify a provisional Settlement Class; (iii) approve the form and manner of notice of the proposed Settlement to the Settlement Class; and (iv) schedule a hearing date for the final approval of the Settlement ("Final Approval Hearing") and a schedule for various deadlines in connection with the Settlement.

## I.      INTRODUCTION

After two years of hard-fought and contentious litigation, the Parties have reached an agreement to resolve the proposed Settlement Class's claims against Defendant Apple Inc. ("Defendant" or "Apple") pursuant to the accompanying Stipulation.  The Settlement was reached only after extensive, aggressive litigation and prolonged, well-informed, and extensive arm's-length negotiations—including several in-person mediation sessions and additional negotiations—between experienced and knowledgeable counsel facilitated by mediator Judge Layn R. Phillips (Ret.) of Phillips ADR.  The Settlement, based upon a mediator's proposal, was reached after extensive motion practice and discovery.

During the course of the litigation, Named Plaintiffs, through co-lead counsel Cotchett, Pitre & McCarthy, LLP, and Kaplan Fox & Kilsheimer LLP ("Class Counsel"), and/or their agents had, among other things: (i) conducted a wide-ranging investigation into the Settlement Class's claims; (ii) filed two comprehensive complaints; (iii) successfully opposed Defendant's motions to dismiss as to certain theories of liability; (iv) engaged in a comprehensive discovery program, including 19 depositions, responding to hundreds of discovery requests, reviewing more than 7 million pages of documents, and engaging in extensive motion practice over discovery issues; and (v) consulted with expert consultants.  As a result, Named Plaintiffs and Class Counsel had a

1  thorough understanding of the relative strengths and weaknesses of the claims asserted at the time

2  the Settlement was reached.

3  Named Plaintiffs submit that, as demonstrated below, this is an excellent recovery for the

4  Settlement Class considering the substantial risks at class certification and trial.  Based on an

5  informed evaluation of the facts and governing legal principles, and their recognition of the

6  substantial risk and expense of continued litigation, the Parties respectfully submit that the proposed

7  Settlement is fair, reasonable, and adequate under Rule 23.  Accordingly, Named Plaintiffs move for

8  preliminary approval and submit this Memorandum of Points and Authorities in support thereof.

9  **II.**     <u>**THE PROPOSED SETTLEMENT**</u>

10  The Settlement provides for a non-reversionary Minimum Class Settlement Amount of

11  $310 million, with a Maximum Class Settlement Amount of $500 million, in cash, for the benefit of

12  the proposed Settlement Class, comprised of all former or current U.S. iPhone[2] owners.[3]

13  For a release of their claims, Settlement Class Members will receive $25.00 for each iPhone

14  owned, the amount of which may increase or decrease depending on the amount of any Attorneys'

15  Fees and Expenses, Named Plaintiff Service Awards, notice expenses, and the aggregate value of

16  Approved Claims.  If payment of $25.00 for each iPhone device identified as Approved Claims, plus

17  the payment of Attorneys' Fees and Expenses, Named Plaintiff Service Awards, and notice and

18  administration fees would not reach the Minimum Class Settlement Amount, the Residual will be

19  allocated according to the Stipulation, including increasing payments to Settlement Class Members

20  on a pro rata basis up to a maximum of $500.  Conversely, if the number of iPhone devices identified

21  as Approved Claims, multiplied by $25.00, exceeds the Maximum Class Settlement Amount, then

22  the cash payment for each iPhone will be reduced on a pro rata basis in order to not exceed the

23  Maximum Class Settlement Amount.

24

25  [2] "iPhone" means Apple iPhone 6, 6 Plus, 6s, 6s Plus, 7, 7 Plus, and SE devices.  Stip. § 1.16.

26  [3] This Settlement will also encompass the California JCCP Action, captioned *In re Apple OS Cases*,
    JCCP No. 4976 (Cal. Super. Ct., S.F. Cty.).  If the Court approves the proposed Settlement, the
27  California JCCP Action will be dismissed.  Stip. § 9.1.  There will not be a classwide settlement for
    non-U.S. Named Plaintiffs, who will be releasing their individual claims only.  Because Non-U.S.
28  iPhone owners' claims will not be released, they may pursue their own claims outside the Settlement.

Named Plaintiffs will also seek Service Awards of $3,500 for those who were deposed in the Action and $1,500 for all others.  Finally, Class Counsel intend to seek up to 30% of the Minimum Class Settlement Amount, or $93 million, as reasonable attorneys' fees, and no more than $1.5 million for out-of-pocket expenses.  The Settlement is not conditioned upon the Court's approval of the full (or any) amount of Service Awards or Attorneys' Fees and Expenses.

## III.     **BACKGROUND**

### A.     **Summary of the Litigation**

On December 20, 2017, Apple released a statement regarding a performance management feature in its iOS 10.2.1 and iOS 11.2 software to avoid unexpected power-offs ("UPOs") from occurring in its devices.  Between December 2017 and June 2018, the Federal Actions, consisting of 66 underlying class action complaints, were filed against Apple.  Beginning on April 4, 2018, the Federal Actions were consolidated by the U.S. Judicial Panel on Multidistrict Litigation in the Northern District of California pursuant to 28 U.S.C. § 1407, into MDL proceedings captioned *In re Apple Inc. Device Performance Litigation*, No. 18-md-2827-EJD [Dkt. 1].

After their appointment [Dkt. 99], on July 2, 2018, Class Counsel filed a Consolidated Amended Complaint ("CAC") in the Action [Dkt. 145].  On October 1, 2018, the Court granted in part and denied in part Apple's motion to dismiss the CAC [Dkt. 219].  *See In re: Apple Inc. Device Perf. Litig.*, 347 F. Supp. 3d 434 (N.D. Cal. 2018).

On November 30, 2018, Class Counsel filed the operative Second Consolidated Amended Complaint ("2CAC") [Dkt. 244].  The 2CAC asserted claims for fraud, breach of contractual relations, violation of the consumer protection laws, "trespass to chattels," and violations of the California Computer Data Access and Fraud Act ("CDAFA") and the federal Computer Fraud Abuse Act ("CFAA").  *Id.*  On April 22, 2019, the Court granted in part and denied in part Apple's motion to dismiss the 2CAC [Dkt. 331].  *See In re: Apple Inc. Device Perf. Litig.*, 386 F. Supp. 3d 1155 (N.D. Cal. 2019).[4]  The Court dismissed, with prejudice, claims that the iPhones were "defective," claims based on certain iPhone devices, and common law and statutory fraud claims (whether based

---

[4] Defendant also sought reconsideration of the Court's first motion to dismiss order as to issues concerning a worldwide class [Dkt. 236], which the Court resolved in this order.  *Id.*

NOTICE OF MOT. AND MOT. FOR PRELIM. APPROVAL; MPA ISO THEREOF

1   on a theory of affirmative misrepresentation or omission).  *Id*.  The Court also dismissed, without

2   prejudice, claims related to Named Plaintiffs' theory that Apple had breached contractual

3   obligations.  *Id*.  The Court upheld the claims for trespass to chattels and claims under the CDAFA

4   and CFAA.  *Id*.  Defendant answered the 2CAC on July 31, 2019 [Dkt. 365].

5          The Parties engaged in extensive discovery in the Action.  Class Counsel served more than

6   170 document requests on Apple, in response to which Apple produced more than seven million

7   pages of documents.  Apple served written discovery and document requests to each of the Named

8   Plaintiffs, who produced more than 6,000 pages of documents.  The Parties deposed 19 individuals,

9   including 10 Apple witnesses and nine Named Plaintiffs.  The Parties also litigated several discovery

10  motions before the Hon. Rebecca Westerfield (Ret.) as Special Discovery Master, as well as before

11  this Court.  *See, e.g.*, *In re Apple Inc. Device Perf. Litig.*, No. 5:18-md-02827-EJD, 2019 WL

12  1993916 (N.D. Cal. May 6, 2019); *id.*, 2019 WL 3973752 (N.D. Cal. Aug. 22, 2019).

13          **B.**     **Settlement Negotiations and Mediation**

14          The Parties engaged in extensive, arms-length negotiations over the course of many months,

15  including several all-day, in-person mediation sessions and numerous additional discussions with

16  Judge Phillips, a former United States District Judge and highly respected mediator.  After the third

17  in-person mediation with Judge Phillips on September 27, 2019, Judge Phillips made a mediator's

18  proposal to the Parties.  The Parties accepted the proposal, with continued involvement by the

19  mediator throughout the process of negotiating a term sheet and long-form settlement agreement.

20  **IV.**     **SUMMARY OF AND REASONS FOR THE SETTLEMENT**

21          It is respectfully submitted that the Settlement meets the legal standards for preliminary

22  approval and the Northern District of California's Procedural Guidance for Settlement of Class

23  Action Settlements (the "Guidance").[5]  Based upon their investigation, Named Plaintiffs and Class

24  Counsel concluded that the terms and conditions of the Stipulation are fair, reasonable, and adequate

25  to the Settlement Class and in their best interests.  The Parties agreed to settle the Action pursuant to

26  the terms and provisions of the Stipulation, after considering: (i) the substantial benefits that

27  _____

28  [5]    https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/   (last
     visited Feb. 10, 2020).

1  Settlement Class Members will receive from resolution of the Action; (ii) the risks of continued

2  litigation; and (iii) the desirability of permitting the Settlement to be consummated as provided by

3  the terms of the Stipulation.  *See* Stip. § 2.

4        The Parties accepted the mediator's proposal and settled the claims with an understanding

5  of the strengths and weaknesses of their claims and defenses.  Because the Settlement easily falls

6  within the range of possible approval and is otherwise fair and reasonable, the Court should grant

7  preliminary approval of the Settlement.

8  **V.**       **ARGUMENT**

9      **A.**     **Legal Standards on Preliminary Approval**

10        In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong

11  judicial policy that favors settlements, particularly where complex class action litigation is

12  concerned." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *Officers*

13  *for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *In re Heritage Bond Litig.*, No.

14  02-ML-1475 DT, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005).  "[T]here is an overriding

15  public interest in settling and quieting litigation," and this is "particularly true in class action suits."

16  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

17        When the parties to a putative class action reach a settlement agreement prior to class

18  certification, "courts must peruse the proposed compromise to ratify both the propriety of the

19  certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir.

20  2003).  First, the Court must assess whether a Rule 23 class exists. *Id.* (citing *Amchem Prods. Inc. v.*

21  *Windsor*, 521 U.S. 591, 620 (1997)).

22        If the Court determines that a Rule 23 class exists, the Court must then determine whether

23  the proposed Settlement "is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler*

24  *Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  At this stage, the Court "evaluate[s] the terms of the

25  settlement to determine whether they are within a range of possible judicial approval."  *Wright v.*

26  *Linkus Enters., Inc.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009).  The Court does not need to "specifically

27  weigh[] the merits of the class's case against the settlement amount and quantif[y] the expected value

28  of fully litigating the matter." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Instead, the Court may only evaluate whether the Settlement is "the product of an arms-length, non-collusive, negotiated resolution[]." *Id.*

The Court may grant preliminary approval of the Settlement and direct notice to the Settlement Class if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing MANUAL FOR COMPLEX LITIGATION, 2d § 30.44 (2d ed. 1985)).  The Court will also "schedule[] a fairness hearing where it will make a final determination of the class settlement."  *In re Haier Freezer Consumer Litig.*, No. 5:11-CV-02911-EJD, 2013 WL 2237890, at *3 (N.D. Cal. May 21, 2013) (citation omitted).

**B.**     **Conditional Class Certification of the Settlement Class is Warranted**

The Settlement is conditioned upon the approval, for settlement purposes only, of the following Settlement Class definition:

> "Settlement Class" means all former or current U.S. owners of iPhone 6, 6 Plus, 6s, 6s Plus, 7, 7 Plus, and SE devices running iOS 10.2.1 or later (for iPhone 6, 6 Plus, 6s, 6s Plus, and SE devices) or iOS 11.2 or later (for iPhone 7 and 7 Plus devices), and who ran these iOS versions before December 21, 2017.  For purposes of this definition, "U.S. owners" shall include individuals who owned, purchased, leased, or otherwise received an eligible device, and individuals who otherwise used an eligible device for personal, work, or any other purposes.  An individual qualifies as a "U.S. owner" if his or her device was shipped to the United States, its territories, and/or its possessions.  The Settlement Class shall not include iPhone owners who are domiciled outside of the United States, its territories, and/or its possessions.  Additionally, excluded from the Settlement Class are (a) directors, officers, and employees of Apple or its subsidiaries and affiliated companies, as well as Apple's legal representatives, heirs, successors, or assigns, (b) the Court, the Court staff, as well as any appellate court to which this matter is ever assigned and its staff, (c) any of the individuals identified in paragraph 1.36, as well as their legal representatives, heirs, successors, or assigns, (d) Defense Counsel, as well as their immediate family members, legal representatives, heirs, successors, or assigns, and (e) any other individuals whose claims already have been adjudicated to a final judgment.

Stip. § 1.32.

Class certification under Rule 23 is a two-step process.  First, the plaintiff must demonstrate that numerosity, commonality, typicality, and adequacy are met.  Fed. R. Civ P. 23(a).  "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a)

has been satisfied." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).  A plaintiff must then establish that one of the bases for certification in Rule 23(b) is met.  Here, Named Plaintiffs must demonstrate that "questions of law or fact common to Class Members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### 1.   Named Plaintiffs Satisfy Rule 23(a) Prerequisites

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Here, it is undisputed that millions of iPhones have been purchased and/or sold in the United States.  There can be no doubt that numerosity is satisfied in this litigation.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  For the purposes of Rule 23(a)(2), even a single common question is satisfactory.  *Wal-Mart*, 564 U.S. at 359.  The common contention, however, "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.  "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (citation omitted); *see also Noll v. eBay, Inc.*, 309 F.R.D. 593, 603 (N.D. Cal. 2015).  Here, the proposed Settlement Class satisfies the commonality requirement because, at a minimum, it is a common issue whether the UPOs and the performance management feature that Apple introduced in iOS 10.2.1 and iOS 11.2 to avoid UPOs affected the iPhones.  Commonality is satisfied.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Ebarle v. Lifelock, Inc.*, No. 15-cv-00258-HSG, 2016 WL 234364, at *4 (N.D. Cal. Jan. 20, 2016) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of

conduct." *Hanon*, 976 F.2d at 508 (internal quotation marks omitted).  Here, Named Plaintiffs are typical of the Settlement Class they seek to represent.  Like other Settlement Class Members, Named Plaintiffs purchased Apple's iPhones, and were affected by the UPOs and the performance management feature Apple introduced in iOS 10.2.1 and iOS 11.2 to avoid the UPOs.  2CAC ¶¶ 31-270.  Named Plaintiffs' claims arise from Defendant's iPhones and, as such, Named Plaintiffs are typical of the Settlement Class Members.

Finally, under Rule 23(a)(4), Named Plaintiffs must demonstrate that they and their counsel do not have any conflicts of interest with other Settlement Class Members and, further, that Named Plaintiffs and their counsel will prosecute the action vigorously on behalf of the class.  *See Ebarle*, 2016 WL 234364, at *4 (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000)). Here, Named Plaintiffs have no conflicts of interest with other Settlement Class Members; indeed, Named Plaintiffs are equally interested in demonstrating Apple's alleged violations.  Moreover, Class Counsel, who also do not have any conflicts with Settlement Class Members, have substantial experience prosecuting class actions.  *See* Joint Decl., Exs. 1 and 2.  Named Plaintiffs and Class Counsel have prosecuted this Action vigorously, and successfully, on behalf of the Settlement Class, and will continue to do so.

### 2.    Plaintiffs Satisfy Rule 23(b) Standards

Named Plaintiffs seek conditional certification under Rule 23(b)(3), which provides that a class action can be maintained where: (1) the questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (2) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. *eBay*, 309 F.R.D. at 604.  Here, every Settlement Class Member alleged that they were subjected to the performance management feature that slowed down their iPhone and otherwise caused harm to each Settlement Class Member.  This common question can be resolved for all members of the proposed Settlement Class in a single adjudication.

Named Plaintiffs must also demonstrate that a class action is the "most efficient and effective means of resolving the controversy."  *eBay*, 309 F.R.D. at 604 (quoting *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010)).  A "class action mechanism is

superior to individual actions in consumer cases with thousands of members as 'Rule 23(b)(3) was designed for situations such as this . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate.'" *Id.* (quoting *Holloway v. Full Spectrum Lending*, No. 06–cv–5975, 2007 WL 7698843, at *9 (C.D. Cal. June 26, 2007)).  Here, the class action mechanism is superior for resolving this matter given the very large size of the proposed class weighed against the expense and burden of individual actions.  Any Settlement Class Member who wishes to opt out may do so.[6]

Because Named Plaintiffs satisfy the Rule 23 requirements, the Court should grant conditional certification of the Settlement Class.

### C.   The Proposed Settlement Should Be Preliminarily Approved

As the Ninth Circuit has articulated, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice*, 688 F.2d at 624 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

> [I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

*Id.* at 625.  As demonstrated below, Named Plaintiffs submit that the proposed Settlement is fair and just.  Given the complexity of this litigation, the potential difficulty of proving certain elements of the Settlement Class's claims, and the continued risks if the Parties proceeded to class certification, dispositive motions, and trial, the Settlement provides an immediate and substantial cash benefit to Settlement Class Members, represents a favorable resolution of this Action, and eliminates the risk that the Settlement Class might otherwise recover nothing.

---

[6] "[I]n the context of settlement, the other requirements of Rule 23(b)(3) such as 'the desirability or undesirability of concentrating the litigation of the claims in the particular forum' and 'the likely difficulties in managing a class action[,]' *see* Fed. R. Civ. P. 23(b)(3)(C)–(D), 'are rendered moot and are irrelevant.'"  *Spann v. JC Penney Corp.*, 314 F.R.D. 312, 323 (C.D. Cal. 2016) (quoting *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 444 (E.D. Cal. 2013); *Amchem Prods.*, 521 U.S. at 620).

1.   **The Proposed Settlement is the Product of an Arms-Length, Non-Collusive, Negotiated Resolution**

a.   **The Proposed Settlement is the Product of a Mediator's Proposal and is Supported by Experienced Counsel**

Courts recognize that the opinion of experienced counsel supporting settlement after vigorous arm's-length negotiations is entitled to considerable weight. *See, e.g.*, *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); *Spann*, 314 F.R.D. at 323-24.   Courts also recognize that agreements based upon a mediator's proposal demonstrate non-collusive conduct. *See, e.g.*, *Ebarle*, 2016 WL 234364, at *6 (finding that acceptance of a mediator's proposal following mediation sessions "strongly suggests the absence of collusion or bad faith"); *Spann*, 314 F.R.D. at 324 (same).

Here, the Parties actively and aggressively litigated the Action, and Class Counsel conducted an extensive investigation into and prosecution of the alleged claims.   Class Counsel also engaged in a rigorous negotiation process with Defense Counsel, and fully considered and evaluated the fairness of the Settlement to the Settlement Class.   The Parties' settlement negotiations were protracted and hard-fought and included the determined assistance of an experienced mediator.   At Judge Phillips' direction, the Parties submitted comprehensive mediation and supplemental statements.   After submitting their statements, counsel for all Parties attended in-person mediations before Judge Phillips on January 7, 2019, August 28, 2019, and on September 27, 2019.   The Parties gave detailed and thoughtful presentations of their respective cases.   And, Judge Phillips gave the Parties a reasonable assessment of the strengths and weaknesses of their case.   It was only after several months of intense discussions and a meditator's proposal that the Parties were ultimately able to reach an agreement, and several more months of further negotiations and the mediator's intervention that the Parties were able to agree on the terms of the Settlement.

Additionally, throughout the Action and settlement negotiations, Apple has been vigorously represented by Gibson, Dunn & Crutcher LLP and Covington & Burling LLP, their representation of Defendant being no less rigorous than Class Counsel's representation of the Settlement Class. Because the Settlement is the product of serious, informed, and non-collusive negotiations among

1   experienced counsel and the product of a mediator's proposal, it deserves preliminary approval. *See*

2   *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09–00261 SBA (EMC), 2012 WL 5878390, at *6

3   (N.D. Cal. Nov. 21, 2012) (noting that private mediation "tends to support the conclusion that the

4   settlement process was not collusive").

5               **b.    The Stage of the Proceedings and the Discovery Completed**
                       **Support the Settlement**

6

7           In a class action setting, courts also look for indications that the parties carefully

8   investigated the claims before reaching a resolution, including propounding and reviewing discovery.

9   *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB

10  (JSC), 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016) ("extensive review of discovery materials

11  indicates [Plaintiffs have] sufficient information to make an informed decision about the Settlement.

12  As such, this factor favors approving the Settlement."); *see also In re Portal Software Sec. Litig.*,

13  No. C-03-5138 VRW, 2007 WL 4171201, at *4 (N.D. Cal. Nov. 26, 2007).

14          As discussed above, Class Counsel (or their agents) engaged in extensive investigation,

15  research, and analysis of the Settlement Class's claims, resulting in the Court upholding in part the

16  CAC and 2CAC.  Named Plaintiffs thereafter aggressively pursued discovery from Apple through

17  multiple requests for production of documents and interrogatories, intensive meet and confers, and

18  discovery motion practice before Judge Westerfield and this Court.  Apple produced over seven

19  million pages of fact-related material for review.  Named Plaintiffs also took the depositions of 10

20  Apple witnesses, the presumptive limit under Rule 30(a).  The witnesses included software and

21  hardware engineers who had detailed knowledge of the relevant issues.  In addition, Named Plaintiffs

22  subpoenaed documents from several non-parties, such as cell phone carriers, engaged in multiple

23  discussions concerning the subpoenas with both the non-parties as well as with Apple, and obtained

24  documents in connection with the subpoenas.  This discovery allowed Named Plaintiffs to adequately

25  evaluate the merits of their claims.

26          Moreover, as set forth above, the Parties engaged in no less than three in-person mediations

27  and received a reasonable assessment of the strengths and weaknesses of their case and a mediator's

28

proposal.  Considering this, the litigants had sufficient bases to make informed decisions about the relative merits of the case and the fairness of the Settlement.

> **2.      The Procedural Guidance for Class Action Settlements Factors are Satisfied**

On November 1, 2018, the Northern District of California adopted the Guidance, which is applicable to this Action.  We set forth below, in the order of the Guidance for the Court's convenience, a discussion of how the Guidance applies to the proposed Settlement.

> **a.      Guidance 1: Differences, Range, and Plan of Allocation**

> **i.      Guidance 1a.-d.: Differences in the Proposed Settlement Class and the Class Proposed in the 2CAC**

Section 1 of the Guidance requires a discussion as to any differences between the Settlement Class and that proposed in the operative complaint, as well as any differences between the claims to be released and the claims to be certified for class treatment.  Courts have routinely approved such changes between the proposed settlement class definition and that proposed in the complaint, or changes between the claims to be released in the settlement and claims to be certified for class treatment.  *See, e.g.*, *In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2012 WL 2598819, at *1 (N.D. Cal. July 5, 2012) (different settlement class definition than that in the Consolidated Class Action Complaint, filed Sep. 12, 2011 [Dkt. 61]).[7]

Here, the proposed Settlement Class is different from that proposed in the 2CAC. Specifically, while the 2CAC included non-U.S. owners, the proposed Settlement Class is defined as to only include former or current U.S. owners of the relevant Apple devices, and does not include non-U.S. owners.  But importantly, the non-U.S. owners will NOT release any class claims in this

---

[7] *See also, e.g.*, *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG, 2020 WL 511953, at *5-6 (N.D. Cal. Jan. 31, 2020) (approving modified settlement class definition from classes certified); *Spann*, 314 F.R.D. at 318-25 (same); *In re Chrysler-Dodge-Jeep Ecodiesel Mkting, Sales Practices, and Prods. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 536661, at *3-7 (N.D. Cal. Feb. 11, 2019) (approving settlement class definition that was different from complaint); *Peel v. Brooksamerica Mortg. Corp.*, No. SACV 11-00079-JLS (RNBx), 2014 WL 12589317, at *3-4 (C.D. Cal. Nov. 13, 2014) (approving modified settlement class definition from classes certified); *Cohorst v. BRE Properties, Inc.*, No. 3:10-cv-2666-JM-BGS, 2011 WL 13356361, at *2 (S.D. Cal. May 6, 2011) (approving settlement class definition that was different from complaint).

1    Settlement.[8]  Stip. § 1.32.

2        The reason for this difference in the scope of the class in the 2CAC and the proposed

3    Settlement Class is the substantial uncertainty as to the propriety of a worldwide class.  To Named

4    Plaintiffs' knowledge, a court has not certified a worldwide class in any U.S. litigation.  And, as

5    Apple argued, among other things, Named Plaintiffs are not entitled to pursue claims on behalf of

6    non-U.S. claimants, that California law does not apply nationwide (or beyond U.S. borders), and that

7    Named Plaintiffs and the putative class are not entitled to any relief.  Indeed, in multiple motions,

8    Defendant argued that the claims brought by Non-U.S. Plaintiffs should be dismissed for lack of

9    jurisdiction, contending that the contracts at issue require that the law of the country of purchase

10   govern, that California and federal law do not apply extraterritorially, and that "fundamental policy

11   interests" and choice-of-law principles require dismissal.[9]

12       Specifically, Defendant has argued that the laws of the various countries should apply

13   because each country has "fundamental policy interests" that are different from California's interests

14   and that the laws of the foreign country should apply.  *See* Dkt. 176 at 7-13; Dkt. 236-1 at 13-20;

15   Dkt. 272 at 34-35.  Citing to a number of scholars' declarations, Apple contends that there are a

16   number of substantive and procedural differences between the laws of the foreign countries and that

17   of California's, and that the foreign jurisdictions have an interest in applying their laws to the alleged

18   injuries that occurred within their borders.  *See id.*

19       The Court took notice of Apple's arguments.  In its April 22, 2019 Order Granting Motion

20   for Reconsideration; Granting in Part and Denying in Part Motion to Dismiss (Dkt. 315), the Court

21   denied the motion to dismiss on conflict-of-laws grounds without prejudice, finding that it was

22   "premature to conduct a detailed choice-of-law analysis at this stage of the litigation.  Courts have

23   declined to conduct such an analysis at the motion to dismiss stage where further development of the

24   record is necessary to property decide the choice-of-law question."  *In re Apple Inc.*, 386 F. Supp.

25   _____

     [8] With the exception that Non-U.S. Named Plaintiffs will release their claims to receive a Service
26   Award.

27   [9] *See* Def. Apple Inc.'s Not. of Mot. and Mot. to Dismiss Pls' 2d Consol. Am. Compl, filed Jan. 24,
     2019 [Dkt. 272]; Def. Apple Inc.'s Mot. for Reconsideration or, in the Alt., for Cert. of Interlocutory
28   Appeal, filed Nov. 15, 2018 [Dkt. 236-1]; Def. Apple Inc.'s Not. of Mot. and Mot. to Dismiss Pls'
     Consol. Am. Compl., filed Aug. 9, 2018 [Dkt. 176].

3d at 1170 (citation omitted).  However, the Court pointed out that the declarations submitted by Apple "appear to show a conflict with fundamental policies of a foreign jurisdiction." *Id.*  Indeed, the Court noted the conflicts such as "(1) whether foreign counties would enforce a choice-of-law provision that points to the law of a country with less robust consumer protection laws, (2) whether foreign countries use the preponderance of the evidence standard, and (3) whether foreign countries recognize punitive damages." *Id.*  And although the Court denied the motion to dismiss, the Court determined and "reiterated its earlier conclusion that the practical and constitutional 'concerns that Apple raises are substantially and potentially well-founded.'" *Id.*

As the Court itself foreshadowed, whether Named Plaintiffs would have succeeded in obtaining class certification or surviving a motion for summary judgment as to the Non-U.S. Plaintiffs and for the countries they seek to represent is questionable at best.  *Id.*  Thus, the proposed Settlement Class agreed to by the Parties does not include non-U.S. residents.  While the non-U.S. *Named Plaintiffs* will be releasing their individual claims, no other claims will be released on behalf of non-U.S. residents, and they will be free to pursue their own claims outside the Settlement if they wish to do so.

### ii.    Guidance 1e.: The Proposed Settlement Provides a Favorable Recovery and Falls Within a Range of Possible Approval

The Guidance also requires an analysis of the anticipated class recovery under the Settlement and the potential class recovery if Named Plaintiffs fully prevailed on their claims, and an explanation as to the differences.  Here, the non-reversionary Minimum Class Settlement Amount of $310 million (and Maximum Class Settlement Amount of $500 million) is substantial by any measure, and certainly falls within a range of possible approval.  Based on a damage analysis by Named Plaintiffs' consultant, had Named Plaintiffs fully prevailed on every one of their remaining claims, Named Plaintiffs anticipate that damages would have amounted to between $18 and $46 per iPhone.  As such, a $25 per iPhone recovery is considerable by any degree, amounting to about a 54% recovery per iPhone.

However, there is the real and substantial risk that Named Plaintiffs would not be able to obtain any recovery at all.  Because class certification had not been briefed, and no dispositive

motions had been made, there is the possibility that the Court may ultimately determine that either class certification is unwarranted or find for Defendant at summary judgment.  For example, Apple has argued throughout the litigation that even if a plaintiff downloaded iOS 10.2.1 software on his or her iPhone, it does not automatically follow that that individual experienced any problems whatsoever.  That is because, according to Apple, whether a particular iPhone user was damaged depended upon how that person used the iPhone.  And given the above arguments concerning, among other things, the viability of a worldwide class, although Named Plaintiffs firmly believe that their liability case is strong and that class certification is warranted, it is uncertain whether the Court would ultimately grant certification of a litigation class, deny Defendant's motion for summary judgment, or make a finding that Named Plaintiffs are entitled to any damages.  *See Vizcaino v. U.S. Dist. Ct. for W.D. Wash.*, 173 F.3d 713, 721 (9th Cir. 1999).  Even if Named Plaintiffs were able to obtain class certification for trial and could successfully oppose any motion for summary judgment, and even if Named Plaintiffs could have successfully proven liability at trial, Named Plaintiffs could still recover nothing because the fact and amount of damages that could be recovered in this case are still uncertain.  *Accord Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 986 (9th Cir. 2015).

Compared with cases where courts have preliminarily approved settlements with amounts lower than potential damages, the Class Settlement Amounts here constitute a substantial percentage of recoverable damages in this Action.  *See, e.g.*, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (citation omitted); *Schaffer v. Litton Loan Serv., LP.*, No. CV 05-07673 MMM (JCx), 2012 WL 10274679, at *11 (C.D. Cal. Nov. 13, 2012) ("Estimates of a fair settlement figure are tempered by factors such as losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years).");  *Roe v. Frito-Lay, Inc.*, No. 14-cv-00751-HSG, 2016 WL 4154850, at *7 (N.D. Cal. Aug. 5, 2016) (noting that "the risks and costs associated with class litigation weigh strongly in favor of settlement" where "Plaintiff would [have been] required to successfully move for class certification under Rule 23, survive summary judgment, and receive a favorable verdict capable of withstanding a potential appeal").

Given the anticipated disputes that would inevitably lie ahead, including class certification and summary judgment and given Defendant's vigorous arguments as to the merits, it is not an overstatement to say that Named Plaintiffs faced significant risk.  And, even if Named Plaintiffs successfully proved their case at trial, the amount of recovery, if any, could vary widely depending on other factors, including the Court's discretion.  Importantly, even if anything were recovered, it would take years to secure, as Apple would undoubtedly appeal any adverse judgment.  In comparison, the Settlement provides a guaranteed, fixed, immediate, and substantial cash recovery of at least $310 million.

### iii.  Guidance 1f.-g.: The Plan to Allocate Should Be Preliminarily Approved

Section 1 further requires Named Plaintiffs to detail their proposed allocation plan, an expectation as to the number of claims to be made, and whether there is any reversion of the Class Settlement Amounts.  Here, only U.S. owners will be provided relief of at least the $310 million non-reversionary Minimum Class Settlement Amount.[10]  And, claims will be computed using the method described in the Settlement.  Stip. §§ 5.1-5.3; *see also id.*, Ex. A (Claim Form).

Settlement Class Members who make a claim will receive cash, the actual amount received depending on the amount of any Attorneys' Fees and Expenses, Named Plaintiff Service Awards, notice and administration expenses, and the number of Approved Claims.  Each Settlement Class Member is eligible to obtain $25 per iPhone.  *Id.* § 5.1.  The actual amount may increase or decrease, depending on whether the aggregate value of Approved Claims, minus various deductions, reaches the Minimum Class Settlement Amount of $310 million or the Maximum Class Settlement Amount of $500 million.  If the aggregate cash payment does not reach the non-reversionary Minimum Class Settlement Amount, the Residual will be allocated according to the provisions of the Settlement, including giving pro rata increases of up to $500 per Approved Claim.  *Id.* §§ 5.3.1-5.3.2.  If the aggregate cash payment to Settlement Class Members exceeds the $500 Maximum Class Settlement Amount, the actual cash payment for each iPhone identified in the Approved Claims will be reduced

---

[10] Except Non-U.S. Named Plaintiffs, whose claims will be released in the Settlement, other non-U.S. owners may seek relief separately.

pro rata to ensure that the aggregate cash payment does not exceed $500 million. *Id.* § 5.2. In the unlikely event that the total amount calculated does not reach the Minimum Class Settlement Amount following any pro rata adjustments up to $500 per Device, the Parties would confer on the distribution of the remaining amount. *Id.* § 5.3.3. In no event would any of the Residual revert to Apple. The Plan has a reasonable and rational basis for distribution and provides a cash payment to any Settlement Class Member who purchased an iPhone.

Courts have approved similar settlement terms and allocation plans in class actions alleging consumer deception. For instance, this Court has approved a settlement with terms similar to those the Parties are entering into here. In *In re Haier*, the plaintiffs there alleged that the defendant's product allegedly had a defect and asserted claims under, among others, the state consumer protection acts. *Id.*, 2013 WL 2237890, at *1. This Court approved the proposed allocation plan whereby the defendant guaranteed a minimum settlement amount but would contribute up to a maximum settlement amount, basing actual payments "on the number and amount of authorized claims submitted." *Id.* at *2. The defendant further agreed to pay for the costs and expenses for notice and for settlement administration, and for reasonable attorneys' fees and expenses. *Id.*

Similarly, in *Beck-Ellman v. Kaz USA, Inc.*, No. 3:10-CV-02134-H-DHB, 2013 WL 1748729, at *3 (S.D. Cal. Jan. 7, 2013), the court approved a settlement in which the plaintiffs brought claims under California's consumer protection acts for misleading product information. The defendants there, in addition to injunctive relief, guaranteed a minimum settlement amount for class members who submitted valid and timely claims, up to a maximum settlement amount. *Id.* at *2-3. The defendants also agreed to pay the costs of providing notice and for the administration of the settlement, separate and apart from the settlement amount. *Id.* at *3.

Other cases where courts have approved similar minimum and maximum settlement amount terms as in this Action include *Lewis v. Green Dot Corporation*, No. CV 16-3557 FMO (AGRx), 2017 WL 4785978 (C.D. Cal. June 12, 2017), *McNeal v. RCM Technologies USA Inc.*, No. 2:16-cv-05170-ODW(SSx), 2017 WL 1807595 (C.D. Cal. Mar. 16, 2017), *Lemus v. H & R Block Enterprises LLC.*, No. C 09-3179 SI, 2012 WL 3638550 (N.D. Cal. Aug. 22, 2012), and *In re TD Ameritrade Account Holder Litigation*, No. C 07-2852 SBA, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011).

Concerning claims rates, a recent study by the Federal Trade Commission, based on data from 124 consumer class actions gathered from claims administrators, calculated the weighted mean claims rate between 4%-5%.[11]  Here, Class Counsel expect the claims rate to be at the high end of the range, or greater, taking into consideration not only Defendant's brand recognition, but also the fact that the Settlement Administrator will be providing direct notice to Settlement Class Members, as well as the substantial media coverage of the issues in the case.

### b.    Guidance 2: The Proposed Settlement Administrator

In connection with preliminary approval, the Parties request that the Court authorize the retention of Angeion Group ("Angeion") as Settlement Administrator for the Settlement.   Stip. § 1.29.  Angeion—which is currently serving as administrator in two of Class Counsel's class action settlements[12]—is a nationally recognized notice and claims administration firm and has extensive experience in class actions and on notice issues.  Based on information obtained from Defendant, Angeion was selected over two other administrators that submitted bids.

Based on information provided by Apple, it will cost up to $12.75 million for Angeion to fully administer the Settlement in this Action.  Pursuant to the Settlement, Apple will pay the reasonable costs and expenses of notice and administration. *Id.* § 6.1.  Angeion's costs and expenses will not affect the amount to be paid to Settlement Class Members in the Settlement unless the Minimum Class Settlement Amount is not reached, whereupon Angeion's costs and expenses may come from the Minimum Class Settlement Amount. *Id.* § 5.3.1.

### c.    Guidance 3: The Proposed Notices to the Settlement Class are Adequate

Under Rule 23(c)(2)(B), settlement notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through

---

[11] *See* Federal Trade Commission, CONSUMERS AND CLASS ACTIONS: A RETROSPECTIVE AND ANALYSIS OF SETTLEMENT CAMPAIGNS (Sept. 2019) at p. 21.  Accessible at https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf (last reviewed Feb. 9, 2020).

[12] Kaplan Fox & Kilsheimer LLP recently retained Angeion as claims administrator in connection with the settlement that was preliminarily approved by the court in *Schneider*, 2020 WL 511953. Cotchett, Pitre & McCarthy, LLP had retained Angeion as claims administrator in connection with the settlement approved by the court in *In re: Lenovo Adware Litig.*, No. 15-md-02624-HSG, 2018 WL 6099948 (N.D. Cal. Nov. 21, 2018).

reasonable effort." *See also* Rule 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement].").  Notice "must generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (citation omitted).

The proposed direct notice procedure and the information to be posted on a Settlement Website meet the requirements under Rules 23(c)(2)(B) and 23(e)(1).  Specifically, Apple will provide the Settlement Administrator with the email address of record on the Apple ID account of the members of the Settlement Class, as well as names, mailing addresses, and relevant iPhone serial numbers. Stip. § 6.2.2.  Emails of the Summary Notice will be sent by the Settlement Administrator to those whose email addresses are valid; otherwise, the Settlement Administrator will mail a copy of the Summary Notice to that Settlement Class Member. *Id.*; *see also id.*, Ex. C.  A copy of the Class Notice, together with the Claim Form and various Court orders and other filings, will be posted and available for download on the Settlement Website. *Id.* § 6.2.1.  Finally, the Parties may jointly agree to provide additional notice with approval from the Court. *Id.* § 6.2.5.

Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."  The proposed Class Notice satisfies the requirements of Rule 23(h)(1), as it notifies Settlement Class Members that Class Counsel will apply to the Court for attorneys' fees and costs as a percentage of the Minimum Class Settlement Amount and its impact on Settlement Class Members, if any. *See* Stip., Ex. B.  The proposed Class Notice further describes the proposed Settlement and sets forth, among other things: (1) the nature, history, and status of the litigation; (2) the definition of the Settlement Class and who is excluded from the Settlement Class; (3) the reasons the Parties propose the Settlement; (4) the Minimum and Maximum Class Settlement Amounts; (5) the estimated reimbursement per individual; (6) the Settlement Class's claims and issues; (7) the Parties' disagreement over damages and liability; (8) the amount of Service Awards for Named Plaintiffs; (9) the plan for allocating the Settlement proceeds to the Settlement Class; and (10) the date, time, and place of the Final Hearing. *See id.*

The notice program proposed in connection with the Settlement and the form and content of the Class Notice and Claim Form, therefore, satisfy the requirements of Rule 23.  *Accord eBay*, 309 F.R.D. at 604-5.  Courts routinely find that comparable notice procedures meet the requirements of due process and Rule 23.  *See id.*; *see Williamson v. McAfee, Inc.*, No. 5:14-cv-00158-EJD, 2016 WL 4524307, at *7-8 (N.D. Cal. Aug. 30, 2016); *Russell v. Kohl's Dept. Stores, Inc.*, No. ED CV 15-1143 RGK (SPx), 2016 WL 6694958, at *5 (C.D. Cal. Apr. 11, 2016).  Accordingly, in granting preliminary approval of the Settlement, Named Plaintiffs similarly request that the Court approve the proposed form and method of giving notice to the Settlement Class.

### d.   Guidance 4 and 5: Opt-Outs and Objections

The proposed Class Notice complies with Rule 23(e)(5) in that it discusses the rights Settlement Class Members have concerning the Settlement.  The proposed Class Notice includes information on a Settlement Class Member's right to: (1) request exclusion and the manner for submitting such a request; (2) object to the Settlement, or any aspect thereof, and the manner for filing and serving an objection; and (3) participate in the Settlement and instructions on how to complete and submit a Claim Form to the Settlement Administrator.  *See* Stip., Ex. B.  The Notice also provides contact information for Class Counsel, as well as the postal address for the Court.  *Id.*

### e.   Guidance 6: The Intended Attorneys' Fees and Expenses Request

As set forth in the proposed Notice, Class Counsel anticipate seeking attorneys' fees up to 30% of the Minimum Class Settlement Amount, or $93 million, plus out-of-pocket expenses of up to $1.5 million.

As of January 31, 2020, Class Counsel and committee members have devoted approximately 56,533 hours to litigating this Action, for a lodestar of $29,465,005.  *See* Joint Decl. ¶ 8.[13]  Class Counsel's request for a fee up to 30% of the Minimum Class Settlement Amount thus

---

[13] These hour and lodestar figures include the time spent by all Court-appointed counsel in the MDL from the date of appointment through November 30, 2019, the latest quarterly reporting period. These figures do not include time spent since December 1, 2019, certain pre-appointment time deemed compensable by the Court's July 3, 2018 Case Management Order No. 3 [Dkt. 148], or time spent by counsel in the JCCP Action.  Similarly, the expenses do not include those advanced by JCCP Counsel.  Class Counsel will provide this information in their reply brief.

represents a multiplier of 3.16 on their current lodestar.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (noting multipliers of between 1.0 and 4.0 are "frequently awarded"); *Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116-IEG (WMC), 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013) ("Under the percentage method, California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent.") (citing *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556 n. 13 (2009)).  The Court has been provided quarterly reports with precise information about the hours and lodestar for Class Counsel and committee members, which Class Counsel and others carefully reviewed prior to their submission.  And Class Counsel will continue to submit quarterly reports with such information to the Court.  Prior to submission of Class Counsel's request for an award for Attorneys' Fees and Costs, Class Counsel will disclose their lodestar and the amount of fees they intend to seek to Apple, which Apple reserves the right to object and oppose.  Stip. §§ 8.1-8.2.

Class Counsel will also seek reimbursement for expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour.  These expenses include, among others, court fees, service of process, consultant fees, mediation costs, online legal and factual research, travel costs, reproduction costs, database expenses, and messenger, courier, and overnight mail expenses.  These expenses were critical to Class Counsel's success in achieving this Settlement.

       **f.**    **Guidance 7: The Proposed Settlement and Proposed Service Awards Do Not Unjustly Favor Any Class Members, Including Named Plaintiffs**

Class Counsel intends to seek a Service Award of $1,500 for each Named Plaintiff who was not subjected to deposition and $3,500 for the nine Named Plaintiffs who were deposed in the Action. Stip. § 8.4.  The Service Awards do not unjustly favor any Settlement Class Members.

In evaluating whether the Settlement grants preferential treatment to Named Plaintiffs, the Court may consider whether there is a "significant disparity between the incentive award[] and the payments to the rest of the class members" such that it creates a conflict of interest.  *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013).  Important considerations are "the number of class representatives, the average incentive award amount, and the proportion of the total settlement that is spent on incentive awards."  *In re Online DVD-Rental Antitrust Litig.*, 779

F.3d 934, 947 (9th Cir. 2015) (quoting *Staton*, 327 F.3d at 977).  A court may also consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977; *In re Magsafe Apple Power Litig.*, No. 5:09-CV-01911-EJD, 2015 WL 428105, at *15 (N.D. Cal. Jan. 30, 2015).  Finally, the Court must evaluate whether a conflict exists due to the incentive award being conditioned on the class representative's approval and support of the Settlement.  *Radcliffe*, 715 F.3d at 1161.

The Service Awards requested here for most of the Named Plaintiffs are below the accepted range.  "Incentive awards typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (collecting cases).  Courts in the Northern District of California have found that a $5,000 incentive award is presumptively reasonable.  *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015); *Rosado v. Ebay Inc.*, No. 5:12-cv-04005-EJD, 2016 WL 3401987, at *9 (N.D. Cal. June 21, 2016).  And, because the Settlement is not conditioned on the Court's approval of the full (or any) amount of a Service Award, the Settlement does not grant preferential treatment to Named Plaintiffs.  Stip. § 8.6.

While the amount requested per Named Plaintiff represents several times more than the estimated monetary benefit per Settlement Class Member, this does not rise to the level of unduly preferential treatment.  Courts have approved similar or greater disparities between incentive awards and individual class member payments.  *See Linkedin*, 309 F.R.D. at 582 (approving a $5,000 incentive award where class members would receive approximately $14.81); *Cox v. Clarus Mktg. Group, LLC*, 291 F.R.D. 473, 483 (S.D. Cal. 2013) (approving a $5,000 incentive award where class members would receive a maximum payment of $36); *Fulford v. Logitech, Inc.*, No. 08-cv-02041 MMC, 2010 WL 807448, at *3 n.1  (N.D. Cal. Mar. 5, 2010) (collecting cases awarding incentive award payments ranging from $5,000 to $40,000).

More importantly, Named Plaintiffs seek, at most, only $216,000 (0.0007%) of the $310 million Minimum Class Settlement Amount.  This amount is reasonable considering how minuscule the award is in relation to the full amount of the Settlement Fund.  *See Online DVD-Rental*, 779 F.3d at 947-948 (approving incentive awards that were roughly 417 times larger than

$12 individual awards because the awards were reasonable, the number of representatives were relatively small, and the total amount of incentive awards "ma[d]e up a mere 0.17% of the total settlement fund"); *cf. Staton*, 327 F.3d at 976-77 (reversing approval of incentive awards that averaged $30,000 each for 29 class representatives, totaling $890,000, or roughly 6% of a potential $14.8 million settlement). Thus, the Settlement does not improperly grant preferential treatment to Named Plaintiffs or segments of the Settlement Class. *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007).

The amount requested is also appropriate given the time and risk of Named Plaintiffs' participation in this Action. Named Plaintiffs spent more two years prosecuting this Action, and have spent many hours reviewing pleadings, responding to hundreds of discovery requests, reviewing and producing documents, and, for some, preparing for, traveling from out of state to, and sitting for all-day depositions in Palo Alto, California. These factors further support and justify the amount requested. *See, e.g.*, *Eddings v. Health Net, Inc.*, No. CV 10-1744-JST (RZX), 2013 WL 3013867, at *7 (C.D. Cal. June 13, 2013) (approving $6,000 service award from $600,000 settlement to compensate the named plaintiff for her time, effort and risk in prosecuting the action).

Named Plaintiffs' interests do not conflict with or diverge from the interests of the Settlement Class. *Radcliffe*, 715 F.3d at 1161. Accordingly, the Court should preliminarily approve the request for Service Awards.

### g.      **Guidance 8: Cy Pres Awardees**

The Parties will confer on the distribution of any remaining amount in the unlikely event the Minimum Class Settlement Amount is not reached, even at payments of $500 per device. Stip. § 5.3.3. Based on the manner in which payments will be made, including potentially a pro rata increase of payments for each Approved Claim up to $500, the Parties do not anticipate any Residual funds remaining in the otherwise non-reversionary Minimum Class Settlement Amount. Nonetheless, if the total amount calculated does not reach the Minimum Class Settlement Amount following the pro rata adjustment, the Parties will confer further, "with resolution subject to Court approval." *Id.* However, none of any Residual would revert to Apple under any circumstances.

1

### h.    Guidance 9: Proposed Timeline

2

In connection with preliminary approval of the Settlement, the Court must also set dates for

3

certain events.  The Parties suggest a schedule based on the following intervals:

4

| Event | Proposed Time for Compliance |
|---|---|
| Deadline for Apple to provide names, emails, addresses, mailing addresses, and serial numbers to Settlement Administrator. | Not later than thirty (30) days following entry of the Preliminary Approval Order (*see* Preliminary Approval Order, ¶ 6). |
| Deadline for Settlement Administrator to complete email and/or postcard notice (the "Notice Date"). | Not later than seventy-five (75) days of receipt of information from Apple (*see* Preliminary Approval Order, ¶ 7). |
| Deadline for Class Members to submit Proof of Claim and Release Forms. | Postmarked or submitted no later than forty-five (45) days from the Notice Date (*see* Preliminary Approval Order, ¶ 10). |
| Deadline for objectors to either deliver written objections by hand or postmarked/sent by First Class Mail. | Postmarked or submitted no later than forty-five (45) days from the Notice Date (*see* Preliminary Approval Order, ¶ 11). |
| Deadline for Class Members to submit a Request for Exclusion, if desired. | Postmarked or submitted no later than forty-five (45) days from the Notice Date (*see* Preliminary Approval Order, ¶ 12). |
| Deadline to submit opening briefs and supporting documents in favor of Final Approval of Settlement. | Not later than sixty-five (65) days before the Final Hearing (*see* Preliminary Approval Order, ¶ 15) |
| Deadline to submit opening briefs and supporting documents for motion for attorneys' fees and incentive awards. | Not later than sixty-five (65) days before the Final Hearing (*see* Preliminary Approval Order, ¶ 15) |
| Final Hearing | The Court's discretion (*see* Preliminary Approval Order, ¶ 13). |

5

6

7

8

9

10

11

12

13

14

15

16

17

### i.    Guidance 10: Class Action Fairness Act

18

Pursuant to Section 10 of the Guidance, and as required by the Class Action Fairness Act,

19

28 U.S.C. § 1711, *et seq.*, notice will be borne and provided for by Apple upon the filing of this

20

motion.  Stip. § 7.3.

21

### j.    Guidance 11: Past Distributions

22

Pursuant to Section 11 of the Guidance, Class Counsel submits that the settlements in *In re:*

23

*Pre-Filled Propane Tank Marketing and Sales Practices Litigation*, No. 4:09-md-02086-GAF (W.D.

24

Mo.), and *In re: Vizio, Inc., Consumer Privacy Litigation*, No. 8:16-ml-02693-JLS-KES (C.D. Cal.),

25

provide useful comparisons to this Settlement.

26

27

28

|  | *In re: Pre-Filled Propane Tank Mktg and Sales Practices Litig.* No. 4:09-md-02086-GAF (W.D. Mo.) | *In re: Vizio, Inc., Consumer Privacy Litig.* No. 8:16-ml-02693-JLS-KES (C.D. Cal.) |
|---|---|---|
| **Settlement Fund** | $15 million (min) - $35 million (max); injunctive relief | $17 million |
| **Number of Class Members** | Unknown | 16 million devices |
| **Number of Class Members Notice Was Sent** | 234,282 (via direct mail notice) | 7,828,308 via direct email notice; 5 million via direct notice on Vizio Smart TVs |
| **Methods of Notice** | Direct mail notice; summary notice publication; circulation on product; press release; website; toll-free information line | Direct display on TVs; email notice; digital media campaign; nationwide press release; settlement website |
| **Claim Forms Submitted (Number and %)** | 11,175+ (4+%) (timely submissions were also submitted after final approval) | 511,562 (3.2%) |
| **Avg. Recovery** | Unknown; $7.50/product, up to $150 maximum | $18/device |
| **Amounts Distributed to Cy Pres Recipients** | none | To be determined |
| **Administrative Costs** | Unknown (paid by defendants, separate and apart from settlement fund) | $200,000 estimated total, $122,823 incurred as of Dec. 2019 |
| **Attorneys' Fees and Costs** | $9.45 million (separate and apart from settlement fund) | $5,610,000 and $181,808.59 |

As noted above, given Defendant's name recognition and the manners of notice in which Settlement Class Members will be informed of this Settlement, Class Counsel expects a higher claims rate than those in *In re Pre-Filled Propane* and *In re Vizio*.

## VI.    CONCLUSION

For the reasons discussed herein, Named Plaintiffs respectfully request the Court certify a Class for settlement purposes, preliminarily approve the proposed Settlement, approve Notice and the selection of the Settlement Administrator, and set a hearing for final approval.

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

DATED:  February 28, 2020

*s/ Laurence D. King*
Laurence D. King

Laurence D. King (SBN 206423)
Mario M. Choi (SBN 243409)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415-772-4700
Facsimile:   415-772-4707

lking@kaplanfox.com
mchoi@kaplanfox.com

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (*pro hac vice*)
Donald R. Hall (*pro hac vice*)
David A. Straite (*pro hac vice*)
850 Third Avenue
New York, NY 10022
Telephone:  212-687-1980
Facsimile:  212-687-7714
ffox@kaplanfox.com
dhall@kaplanfox.com
dstraite@kaplanfox.com

**COTCHETT, PITRE & MCCARTHY, LLP**

DATED:  February 28, 2020        _s/ *Joseph W. Cotchett*_____
                                          Joseph W. Cotchett

Joseph W. Cotchett (SBN 36324)
Mark C. Molumphy (SBN 168009)
Brian Danitz (SBN 247403)
Tyson Redenbarger (SBN 294424)
Anya Thepot (SBN 318430)
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: 650-697-6000
Facsimile: 650-697-05777
jcotchett@cpmlegal.com
mmolumphy@cpmlegal.com
bdanitz@cpmlegal.com
tredenbarger@cpmlegal.com
athepot@cpmlegal.com

*Interim Co-Lead Counsel for Plaintiffs*

1

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

2

I, Laurence D. King, attest that concurrence in the filing of this document has been

3

obtained from the other signatory.  I declare under penalty of perjury under the laws of the United

4

States of America that the foregoing is true and correct.

5

Executed this 28th day of February 2020, at Oakland, California.

6

7

*/s/ Laurence D. King*
Laurence D. King

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28