JOSEPH W. COTCHETT (SBN 36324)
*jcotchett@cpmlegal.com*
MARK C. MOLUMPHY (SBN 168009)
*mmolumphy@cpmlegal.com*
ELLE D. LEWIS (SBN 238329)
*elewis@cpmlegal.com*
BRIAN DANITZ (SBN 247403)
*bdanitz@cpmlegal.com*
**COTCHETT, PITRE & McCARTHY LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: 650.697.6000

LAURENCE D. KING (SBN 206243)
*lking@kaplanfox.com*
MARIO M. CHOI (SBN 243409)
*mchoi@kaplanfox.com*
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415.772.4700

FREDERIC S. FOX (*pro hac vice*)
*ffox@kaplanfox.com*
DONALD R. HALL (*pro hac vice*)
*dhall@kaplanfox.com*
DAVID A. STRAITE (*pro hac vice*)
*dstraite@kaplanfox.com*
MAIA C. KATS (*pro hac vice pending*)
*mkats@kaplanfox.com*
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue
New York, NY 10022
Telephone: 212.687.1980

*Interim Co-Lead Class Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| **IN RE: APPLE INC. DEVICE PERFORMANCE LITIGATION** | Case No. 5:18-md-02827-EJD |
| | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| This Document Relates to: **ALL ACTIONS** | |
| | Judge: Hon. Edward J. Davila |
| | Courtroom: 4, 5th Floor |
| | Date: December 4, 2020 |
| | Time: 10:00 a.m. |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 4, 2020, at 10:00 a.m., in Courtroom 4 of the United States District Court for the Northern District of California, Robert F. Peckham Federal Building & United States Courthouse, 280 South First Street, San Jose, California 95113, the Honorable Edward J. Davila, presiding, Named Plaintiffs[1] will and hereby move for an Order pursuant to Rules 23(h)(1) and 54(d)(2) of the Federal Rules of Civil Procedure ("Rule") awarding: (i) Attorneys' Fees to Class Counsel and JCCP Counsel in the amount of $87,730,000, which is 28.3% of the $310,000,000 non-reversionary Minimum Class Settlement Amount; (ii) unreimbursed expenses totaling $995,244.93 that Class Counsel and JCCP Counsel reasonably and necessarily incurred in furtherance of the prosecution of this Action; and (iii) Service Awards for Named Plaintiffs in the amount of $3,500 to each of the nine Named Plaintiffs who were deposed and $1,500 to each of the remaining Named Plaintiffs.

This motion is based upon this Motion, the Memorandum of Points and Authorities, the accompanying Joint Declaration of Joseph W. Cotchett and Laurence D. King ("Joint Decl.") and all exhibits attached thereto, including the Joint Declaration of Andrew J. Brown and Thomas J. Brandi ("JCCP Decl."), the Declaration of Mark J. Dearman ("Dearman Decl.") and all exhibits attached thereto, including declarations from each of the plaintiff firms working on this matter, the pleadings on file in this Action, and other such matters and argument as the Court may consider at the hearing on this motion.

## STATEMENT OF ISSUES TO BE DECIDED

1.  Whether the Court should award $87,730,000, which is 28.3% of the $310,000,000 Minimum Class Settlement Amount, to Class Counsel and JCCP Counsel as Attorneys' Fees;

2.  Whether the Court should award $995,244.93 in unreimbursed expenses that Class Counsel and JCCP Counsel reasonably and necessarily incurred in furtherance of the Action; and

3.  Whether the Court should award Service Awards to the Named Plaintiffs in the amount of $3,500 each to the nine Named Plaintiffs who were deposed and $1,500 to each of the remaining Named Plaintiffs, for their time and effort over the past two years in pursuing this Action.

---

[1] Capitalized nouns refer to terms defined in the Stipulation of Settlement ("Settlement") [Dkt. 416].

1

2

**TABLE OF CONTENTS**

3

I.     **INTRODUCTION**................................................................................1

4

    A.    Background of Litigation ................................................. 1

5

    B.    Requested Award ............................................................ 2

6

II.    **THE COURT SHOULD AWARD ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES ADVANCED FOR THE BENEFIT OF THE CLASS**......................4

7

8

    A.    Class Counsel Should Be Awarded Attorneys' Fees From The Common Fund ................................................................ 4

9

    B.    The Court Should Use The Percentage Of The Fund Method To Calculate Reasonable Attorneys' Fees ................................................................ 4

10

11

    C.    The Requested Fee Award is Reasonable ............................................. 6

12

        1.    Class Counsel Achieved an Exceptional Result for the Class Based on Total Damage Analysis ................................................................ 6

13

        2.    There Was Substantial Risk In This Litigation ........................................ 7

14

        3.    The Settlement Required Skill And High-Quality Work ........................... 9

15

        4.    Class Counsel Worked For Years On A Fully Contingency Basis .......... 10

16

        5.    The Award Requested Is On Par With Awards In Similar Cases ............ 11

17

III.    **A LODESTAR CROSS-CHECK CONFIRMS THE REASONABLENESS OF THE REQUESTED FEE AWARD**................................................................13

18

19

    A.    The Number of Hours Devoted to the Case was Reasonable ............................... 13

20

    B.    Pre-Appointment Hours ....................................................... 14

21

    C.    Reasonable Hourly Rate....................................................... 14

22

    D.    Lodestar and Implied Multiplier ......................................... 15

IV.    **THE LITIGATION EXPENSES ARE REASONABLE** ............................................16

23

V.    **THE POSITION OF THE SETTLEMENT CLASS**....................................17

24

VI.    **REQUEST FOR NAMED PLAINTIFF SERVICE AWARDS** ...................20

25

VII.    **CONCLUSION** ................................................................21

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Aboudi v. T-Mobile USA, Inc.*,
  No. 12cv2169 BTM (NLS), 2015 WL 4923602 (S.D. Cal. Aug. 18, 2015)............................4

5

6

*In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*,
  No. 09 MDL 2007-GW(PJWX), 2014 WL 12591624 (C.D. Cal. Jan. 10, 2014)......................5

7

*Allagas v. BP Solar Int'l, Inc.*,
  No. 3:14-cv-00560-SI (EDL), 2016 WL 9114162 (N.D. Cal. Dec. 22, 2016) ........................21

8

9

*Allapattah Servs., Inc. v. Exxon Corp.*,
  454 F. Supp. 2d 1185 (S.D. Fla. 2006) ...................................................................................12

10

11

*In re Am. Apparel, Inc. S'holder Litig.*,
  No. CV-1006352 MMM 2014 WL 10212865 (C.D. Cal. July 28, 2014)................................10

12

*In re Anthem, Inc. Data Breach Litig.*,
  No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ...............................11

13

14

*Barbosa v. Cargill Meat Solutions Corp.*,
  297 F.R.D. 431 (E.D. Cal. 2013) ...........................................................................................10

15

16

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015)......................................................................................10, 20

17

18

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)..................................................................................................................4

19

20

*Bower v. Cycle Gear, Inc.*,
  No. 14-CV-02712-HSG, 2016 WL 4439875 (N.D. Cal. Aug. 23, 2016) .................................8

21

*In re Capacitors Antitrust Litig.*,
  No. 3:17-md-02801-JD, 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018)................................13

22

23

*In re Celexa and Lexapro Mkting and Sales Practices Litig.*,
  MDL No. 09-2067-NMG, 2014 WL 4446464 (D. Mass. Sept. 8, 2014)...................................4

24

*Chavez v. PVH Corp.*,
  No. 13-CV-01797-LHK, 2015 WL 9258144 (N.D. Cal. Dec. 18, 2015) ...............................18

25

26

*In re Checking Account Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) ..................................................................................12

27

28

*Ching v. Siemens Indus. Inc.*,
  No. 11-cv-04838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014) ..................................11

*In re Combustion, Inc.*,
  968 F. Supp. 1116 (W.D. La. 1997)....................................................................................12

*Destefano v. Zynga, Inc.*,
  No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016)....................................5, 8

*Dickey v. Advanced Micro Devices, Inc.*,
  No. 15-cv-04922-HSG, 2020 WL 870928 (N.D. Cal. Feb. 21, 2020)....................................15

*In re Domestic Drywall Antitrust Litig.*,
  MDL No. 2437, 2018 WL 3439454 (E.D. Pa. July 17, 2018) ...................................................12

*Dugan v. Lloyds TSB Bank, PLC*,
  No. C 12-02537-WHA, 2014 WL 1647652 (N.D. Cal. Apr. 24, 2014)....................................12

*Eashoo v. Iovate Health Sciences U.S.A., Inc.*,
  No. CV-01726-BRO, 2016 WL 6205785 (C.D. Cal. Apr. 5, 2016) ...........................................7

*In re Equifax Inc.*,
  2020 WL 256132 .....................................................................................................................17

*Fischel v. Equitable Life Assur. Society of U.S.*,
  307 F.3d 997 (9th Cir. 2002).....................................................................................................15

*Fowler v. Wells Fargo Bank, N.A.*,
  No. 17-CV-02092-HSG, 2019 WL 330910 (N.D. Cal. Jan. 25, 2019)....................................15

*Gergetz v. Telenav, Inc.*,
  No. 16-CV-04261-BLF, 2018 WL 4691169 (N.D. Cal. Sept. 27, 2018)................................16

*Hanlon v. Chrysler Group, Inc.*,
  150 F.3d 1011 (9th Cir. 1998).....................................................................................................6

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994).........................................................................................................16

*Hefler v. Wells Fargo & Co.*,
  No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ............................13, 15

*In re Heritage Bond Litig*,
  No. 02-ML-1475-DT(RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005) ..........................10

*In re Informix Corp. Sec. Litig.*,
  No. 97-1289 (N.D. Cal. Nov. 23, 1999).....................................................................................11

*In re Initial Public Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009).........................................................................................12

*In re iPhone Application Litig.*,
  6 F. Supp. 3d 1004 (N.D. Cal. 2013) ..........................................................................................7

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
  No. 16-CV-03698-NC, 2018 WL 2183253 (N.D. Cal. May 11, 2018) ...................................20

*Kakani v. Oracle Corp.*,
  No. 06-06493WHA, 2007 WL 4570190 (N.D. Cal. Dec. 21, 2007) ..........................................7

*King Drug Co. of Florence, Inc. v. Cephalon, Inc.*,
  No. 2:06-cv-01797-MSG, 2015 WL 12843830 (E.D. Pa. Oct. 15, 2015) ...............................12

*In re Korean Air Lines Co., Ltd. Antitrust Litig.*,
  No. CV 07-05107 SJO ..............................................................................................................5

*Larsen v. Trader Joe's Co.*,
  No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014)....................................7

*In re LendingClub Sec. Litig.*,
  No. C 16-02627 WHA, 2018 WL 4586669 (N.D. Cal. Sept. 24, 2018)...................................16

*In re Lenovo Adware Litig.*,
  No. 15-md-02624-HSG, 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) ...................6, 9, 10, 20

*In re Lidoderm Antitrust Litig.*,
  No. 14-md-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018)...................11, 15, 16

*In re: Lumber Liquidators Chinese-Manufactured Flooring Products Mkting,*
  *Sales Pract. and Prods. Liab. Litig.*,
  No. 1:15-md-02627-AJT (E.D. Va.) .........................................................................................9

*Luna v. Universal City Studios, LLC*,
  No. CV 12-9286 PSG, 2016 WL 10646310 (C.D. Cal. Sept. 13, 2016) ..................................10

*McKibben v. McMahon*,
  No. EDCV 14-2171.................................................................................................................14

*In re Media Vision Tech. Sec. Litig.*,
  913 F. Supp. 1362 (N.D. Cal. 1995) ......................................................................................16

*Moreyra v. Fresenius Med. Care Holdings, Inc.*,
  No. SACV-10-517 JVS, 2013 WL 12248139 (C.D. Cal. Aug. 7, 2013)....................................9

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Antitrust Litig.*,
  768 F. App'x 651 (9th Cir. 2019) ..........................................................................................15

*In re Nexus 6P Prods. Liab. Litig.*,
  No. 17-cv-02185-BLF, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019)........................... *passim*

*Noll v. eBay, Inc.*,
  309 F.R.D. 593 (N.D. Cal. 2015) (Davila, J.) ........................................................................20

*Nwabueze v. AT & T Inc.*,
  No. C 09-01529 SI, 2013 WL 6199596 (N.D. Cal. Nov. 27, 2013) ........................................17

*In re Omnivision Techs., Inc.,*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................6, 10, 11

*In re Online DVD-Rental Antitrust Litig.,*
    779 F.3d 934 (9th Cir. 2015) ..........................................................................20

*Patel v. Trans Union, LLC,*
    No. 14-CV-00522-LB, 2018 WL 1258194 (N.D. Cal. Mar. 11, 2018) ..................12

*Pennsylvania v. Delaware Valley Citizens' Council,*
    483 U.S. 711 (1987) ........................................................................................14

*In re Portal Software, Inc. Sec. Litig.,*
    No. C 03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ...................20

*Powers v. Eichen,*
    229 F.3d 1249 (9th Cir. 2000).............................................................................6

*In re Pre-Filled Propane Tank Marketing and Sales Practices Litig.,*
    No. 4:09-md-2086 (W.D. Mo.) .............................................................................9

*Roberti v. OSI Sys., Inc.,*
    No. CV13-09174 MWF, 2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) ...................8

*Rodriguez v. West Publishing Corp.,*
    563 F.3d 948 (9th Cir. 2009)...........................................................................16

*Sheikh v. Tesla, Inc.,*
    No. 17-CV-02193-BLF, 2018 WL 5794532 (N.D. Cal. Nov. 2, 2018)...................15

*Stanger v. China Elec. Motor, Inc.,*
    812 F.3d 734 (9th Cir. 2016)......................................................................14, 15

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003)..............................................................................4

*Steiner v. Am. Broad. Co.,*
    248 F. App'x 780 (9th Cir. 2007) .....................................................................15

*Tait v. BSH Home Appliances Corp.,*
    No. SACV10-0711 DOC, 2015 WL 4537463 (C.D. Cal. July 27, 2015)..................5

*In re TFT–LCD (Flat Panel) Antitrust Litig.,*
    No. M 07-1827 SI, 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013)...........................11

*Thomas v. MagnaChip Semiconductor Corp.,*
    No. 14-CV-01160-JST, 2018 WL 2234598 (N.D. Cal. May 15, 2018) ..............5, 16

*In re Toys R Us-Del., Inc. – Fair and Accurate Credit Transactions Act (FACTA)
    Litig.,*
    295 F.R.D. 438 (C.D. Cal. 2014) ......................................................................13

*In re Urethane Antitrust Litig.*,
  MDL No. 1616, 2016 WL 4060156 (D. Kan. July 29, 2016)....................................................12

*In re Vitamins Antitrust Litig.*,
  MDL No. 1285, 2001 WL 34312839 (D.D.C. July 16, 2001)..................................................12

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002)........................................................................................ *passim*

*Wallace v. Countrywide Home Loans, Inc.*,
  No. SACV-08-1463 JLS, 2015 WL 13284517 (C.D. Cal. Apr. 17, 2015)...............................9

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994).................................................................................................11

*Williams v. MGM-Pathe Commc'ns Co.*,
  129 F.3d 1026 (9th Cir. 1997)..................................................................................................6

*Williamson v. McAfee, Inc.*,
  No. 5:14-cv-00158-EJD, 2017 WL 6033070 (N.D. Cal. Feb. 3, 2017).....................................5

*Wolf v. Red Bull GmBH*,
  No. 1:13-cv-08008 (S.D.N.Y.)...................................................................................................9

*Yastrab v. Apple Inc.*,
  173 F. Supp. 3d 972 (N.D. Cal. 2016) .......................................................................................8

**Statutes**

Cal. Pen. Code § 502...........................................................................................................................1

CDAFA ...........................................................................................................................................3, 8

CFAA ............................................................................................................................................1, 3, 8

**Other Authorities**

5 W. Rubenstein, NEWBERG ON CLASS ACTIONS §§ 15:62, 15:65 (5th ed. 2020) ...........................5

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Class Counsel respectfully move the Court for an attorneys' fee award of 28.3% of the $310 million, non-reversionary Minimum Class Settlement Amount (the "maximum" is $500 million) that Defendant Apple Inc. ("Defendant" or "Apple") has agreed to pay to settle this hard-fought litigation.[2]  The $310 million - $500 million amount represents one of the largest consumer class action settlements in this Circuit, and one of the largest class action settlements under the California Computer Data Access and Fraud Act ("CDAFA"), Cal. Pen. Code § 502, and the federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, the principal claims upheld by the Court in this Multidistrict litigation.

The negotiated $25 per claim amount, which is subject to pro-rata increase or decrease, represents more than a **50% recovery** of the **maximum** per device damage amount of $46 calculated by Plaintiffs' damage consultant.[3]  Moreover, at this stage of the Claims process, it appears likely that Settlement Class Members will recover substantially higher amounts, representing **100% or more of their actual damages**.

Accordingly, under Ninth Circuit and other relevant authority, a fee award of 28.3% of the $310 million Minimum Class Settlement Amount is fair and reasonable given the tremendous results achieved in the case.

### A.    Background of Litigation

Almost three years after this litigation was filed in December 2017, the Parties seek final approval of the Settlement, which will resolve the Settlement Class's claims against Apple.  The Settlement was reached only after extensive, aggressive litigation and prolonged, well-informed, and extensive arm's-length negotiations—including three in-person mediation sessions and months of additional negotiations—between experienced and knowledgeable counsel facilitated by highly respected and experienced mediator, Judge Layn R. Phillips (Ret.), a retired Federal Judge very well

---

[2] As discussed herein, the proposed awards for attorneys' fees and expenses include both Class Counsel in this MDL Action and Class Counsel in the coordinated California state court proceedings ("JCCP Counsel").

[3] Plaintiffs' damages consultant calculated a range of $18-$46 per device in damages.

versed in complex and class litigation.

The Settlement, based upon a <u>mediator's proposal</u>, was reached only after extensive motion practice, discovery, including over 7 million documents, and consultation with experts in various fields.  Indeed, during the course of the litigation, Plaintiffs, through co-lead counsel Cotchett, Pitre & McCarthy, LLP and Kaplan Fox & Kilsheimer LLP ("Class Counsel"), as well as other law firms that were appointed by the Court: (i) conducted a wide-ranging investigation into Plaintiffs' claims; (ii) filed two comprehensive complaints; (iii) successfully opposed Defendant's motions to dismiss as to certain theories of liability; (iv) engaged in a comprehensive discovery program, including 19 depositions, responding to thousands of discovery requests, reviewing more than 7 million pages of documents, and engaging in extensive motion practice over discovery issues before a jointly-retained Special Master, Judge Rebecca Westerfield (Ret.) of JAMS; and (v) consulted with expert consultants.  Thus, Plaintiffs and Class Counsel had a thorough understanding of the relative strengths and weaknesses of the claims asserted at the time the Settlement was reached.

All told, Class Counsel devoted thousands of hours and advanced significant out-of-pocket expenses to develop and prosecute the litigation and be in a position to negotiate a favorable settlement for the Settlement Class.  A more detailed summary of the litigation and pertinent work is provided in the concurrently filed Plaintiffs' Motion for Final Approval of Settlement, the accompanying Joint Declaration and Dearman Declaration filed in support of both Motions, and time records provided to the Court on a quarterly basis pursuant to the Court's July 3, 2018 Case Management Order [Dkt. 148].

**B.**  **<u>Requested Award</u>**

Given these achievements after years of hard-fought litigation on challenging legal and factual grounds, Class Counsel respectfully move for an order granting: (1) Attorneys' Fees in the amount of $87,730,000 from, or 28.3% of, the non-reversionary Minimum Class Settlement Amount of $310 million; (2) reimbursement of $995,244.93 in litigation expenses that were reasonably and

necessarily incurred in prosecuting this Action;[4] and (3) Service Awards totaling $216,000 for the Named Plaintiffs.

The requested fee amount is fair and reasonable in light of the recovery, the challenges Plaintiffs faced in this consumer class action, the risk to their counsel in representing them on a contingent basis, and prevailing attorneys' fee jurisprudence in this District and Circuit.  As the Court is aware, consumer class actions are risky to prosecute.  Defendant Apple, one of the largest and most well-resourced companies in the world, was represented by two national law firms that vigorously defended Apple throughout the litigation.  Plaintiffs withstood multiple motions to dismiss, reviewed millions of pages of documents, took and defended a total of 19 depositions, and filed and defended numerous discovery and other motions.  Moreover, there was no guarantee that Plaintiffs would have succeeded at class certification, summary judgment, or at trial.  Given the risks in this Action, Class Counsel's efforts in bringing this Action to a favorable result, culminating in one of the largest consumer product settlements in the Ninth Circuit and one of the largest settlements under the CDAFA and CFAA, required a substantial amount of time and resources with no guarantee of a recovery.  A lodestar cross-check further supports the reasonableness of the requested fee, which represents a multiplier of approximately 2.4 on Class Counsel's and JCCP Counsel's post-appointment lodestar, and approximately 2.2 on their lodestar including pre-appointment time.

In addition, Named Plaintiffs respectfully request that the Court approve Service Awards of $3,500 to each of the nine Named Plaintiffs who were subjected to deposition and $1,500 to each of the remaining Named Plaintiffs, in recognition of their significant time and effort over nearly three years in pursuing the litigation and assisting with extensive discovery in order to obtain a positive outcome for the Settlement Class.

For the reasons articulated below, the requested fee, expense award, and service awards are fair and reasonable, and should be approved.

---

[4] This figure includes $891,949.02 in expenses incurred by Class Counsel in the prosecution of this Action, and $103,295.91 incurred in the prosecution of the related JCCP Action.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.   THE COURT SHOULD AWARD ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES ADVANCED FOR THE BENEFIT OF THE CLASS

### A.   Class Counsel Should Be Awarded Attorneys' Fees From The Common Fund

Class Counsel negotiated a resolution that provides a common fund with a non-reversionary Minimum Class Settlement Amount of **$310 million** and a Maximum Class Settlement Amount of **$500 million** for members of the Settlement Class. Accordingly, Class Counsel respectfully submit that an award of attorneys' fees in the amount of **28.3%** of the $310 million Minimum Class Settlement Amount is fair and reasonable.

Under the "common fund" doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Where Class Counsel's efforts have helped create a common fund, the doctrine of unjust enrichment entitles them to reasonable attorneys' fees from the fund. *See Staton v. Boeing Co.*, 327 F.3d 938, 267 (9th Cir. 2003) ("the common fund doctrine permits the court to award attorneys' fees from monetary payments that the prevailing party recovered in the lawsuit"); *Boeing*, 444 U.S. at 478; *Aboudi v. T-Mobile USA, Inc.*, No. 12cv2169 BTM (NLS), 2015 WL 4923602, at *3 (S.D. Cal. Aug. 18, 2015) (providing for minimum and maximum settlement fund, of which attorneys requested 25% of the minimum as attorneys' fees, provided that the defendant did not pay in excess of the minimum payment, and allowing attorneys to seek fees "not to exceed 25% of the excess sum over the Minimum Payment"); *In re Celexa and Lexapro Mkting and Sales Practices Litig.*, MDL No. 09-2067-NMG, 2014 WL 4446464, at *1 (D. Mass. Sept. 8, 2014) (providing for minimum and maximum settlement fund, of which attorneys requested 37% of the minimum fund as attorneys' fees).

### B.   The Court Should Use The Percentage Of The Fund Method To Calculate Reasonable Attorneys' Fees

The percentage-of-the-fund method is the best method to determine the reasonableness of attorney's fees requested here. "The use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the

Court to focus on showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, No. CV 07-05107 SJO AGRX, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013).  Under Ninth Circuit law, "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *see also Williamson v. McAfee, Inc.*, No. 5:14-cv-00158-EJD, 2017 WL 6033070, at *1 (N.D. Cal. Feb. 3, 2017).  But as Judge George Wu of the Central District has noted, "use of the percentage method in common fund cases appears to be dominant." *In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*, No. 09 MDL 2007-GW(PJWX), 2014 WL 12591624, at *5 (C.D. Cal. Jan. 10, 2014).  Courts prefer the percentage method because it confers "significant benefits … including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires." *Tait v. BSH Home Appliances Corp.*, No. SACV10-0711 DOC (ANx), 2015 WL 4537463, at *11 (C.D. Cal. July 27, 2015); *see* 5 W. Rubenstein, NEWBERG ON CLASS ACTIONS §§ 15:62, 15:65 (5th ed. 2020).

The nature of this action warrants application of percentage-of-the-fund approach, the principal and "prevailing practice in the Ninth Circuit" to determine the reasonableness of Class Counsel's fee request. *Korean Air Lines*, 2013 WL 7985367, at *1.  As Judge Jon Tigar of the Northern District determined, where the "benefit to the class is easily quantified in common-fund settlements," district courts may "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2018 WL 2234598, at *3 (N.D. Cal. May 15, 2018) (citing *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)).  Here, Class Counsel seek a percentage from the non-reversionary Minimum Class Settlement Amount of $310 million, and therefore the amount is fixed and easily quantifiable.  This weighs in favor of employing the percentage of the fund method. *Id; see also Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016) ("Because this case involves a common settlement fund with an easily quantifiable benefit to the Class, the Court will primarily determine attorneys'

1   fees using the percentage method . . .”).

2         **C.**     **The Requested Fee Award is Reasonable**

3         In applying the percentage of the fund method, the Ninth Circuit has established 25% as a

4   benchmark percentage, which may be adjusted depending on the circumstances of a case. *Vizcaino*,

5   290 F.3d at 1047; *Powers v. Eichen*, 229 F.3d 1249, 1257 (9th Cir. 2000); *Hanlon v. Chrysler Group,*

6   *Inc.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026,

7   1027 (9th Cir. 1997). The 25% benchmark represents "**a starting point for analysis**" and

8   "[s]election of the benchmark or any other rate must be supported by findings that take into account

9   all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048 (emphasis added). Here, the

10  requested fee amount of 28.3% is within "the usual range" in common fund cases. *Vizcaino*, 290

11  F.3d at 1048; *see In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008)

12  (observing that "in most common fund cases, the award exceeds that [25 percent] benchmark").

13        In determining whether to depart from the 25% benchmark, courts consider: "(1) the results

14  achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent

15  nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar

16  cases." *In re Lenovo Adware Litig.*, No. 15-md-02624-HSG, 2019 WL 1791420, at *8 (N.D. Cal.

17  Apr. 24, 2019) (citing *Vizcaino*, 290 F.3d at 1050-51); *In re Nexus 6P Prods. Liab. Litig.*, No. 17-

18  cv-02185-BLF, 2019 WL 6622842, at *11 (N.D. Cal. Nov. 12, 2019) (same). Careful consideration

19  of each of these factors supports the conclusion that an upward adjustment of the benchmark to

20  28.3% is warranted.

21        **1.**     **Class Counsel Achieved an Exceptional Result for the Class Based on**
22                **Total Damage Analysis**

23        "The overall result and benefit to the class from the litigation is the most critical factor in

24  granting a fee award." *Omnivision Techs.*, 559 F. Supp. 2d at 1046. Here, the overall result and the

25  benefit to the class, including a recovery that will likely exceed the maximum recoverable damages,

26  warrants a modest upward adjustment to the 25% benchmark.

27        The Settlement creates a Minimum Class Settlement Amount of $310 million, a non-

28  reversionary common fund, with a Maximum Class Settlement Amount of $500 million. Based on

a damage analysis by Plaintiffs' consultant, had Plaintiffs fully prevailed on every one of their remaining claims, Plaintiffs anticipate that damages would have amounted to between $18 and $46 per iPhone. Thus, a $25 per iPhone recovery thus represents approximately between 54% and 137% recovery per iPhone. This clearly supports the requested fee award. For example, Judge William Orrick approved attorney's fees of 28% for a settlement amounting "to 50% of the recovery plaintiffs' could have received had the case gone to trial." *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014).

With respect to individual recoveries, members of the Settlement Class who make valid claims will receive $25 per qualifying iPhone, with no limit as to the number of iPhones that can be claimed so long as the Settlement Class Member owned the qualifying iPhone and experienced diminished performance when running a certain version of iOS. Settlement § 5.1. Moreover, based on current claims information, Settlement Class Members will likely receive more per qualifying iPhone. *Id.*; *see* Joint Decl. ¶¶ 47-48. Whether $25 per device or the expected higher amount, the payment will be substantial relative to recoverable damages.

### 2. There Was Substantial Risk In This Litigation

The risk associated with the litigation is also a key consideration in determining whether a requested fee award is reasonable. *Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance" in applying the percentage of the fund method); *see Eashoo v. Iovate Health Sciences U.S.A., Inc.*, No. CV-01726-BRO (PJWx), 2016 WL 6205785, at *9 (C.D. Cal. Apr. 5, 2016) ("The risk that further litigation might result in no recovery is a significant factor in assessing the fairness and reasonableness of an award of attorneys' fees.") (internal quotation marks and citation omitted).

Here, Class Counsel faced numerous hurdles over the course of the litigation that could have substantially narrowed or precluded any recovery in this case, supporting the requested fee. As Judge William Alsup has pointed out, there is inherent risk in pursuing consumer fraud class actions. In the *Oracle* case, Judge Alsup noted that consumer fraud cases are more uncertain than certain other types of class actions. *See Kakani v. Oracle Corp.*, No. 06-06493WHA, 2007 WL 4570190, at *4 (N.D. Cal. Dec. 21, 2007). Indeed, consumer cases against device manufacturers such as Apple are routinely dismissed and classes are rarely certified. *See, e.g.*, *In re iPhone Application Litig.*, 6

F. Supp. 3d 1004, 1007 (N.D. Cal. 2013) (granting summary judgment and denying class certification as moot in case involving Apple's data collection practices); *Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 976 (N.D. Cal. 2016) (dismissing with prejudice claims based on software updates that purportedly removed features from iPhones).

Class Counsel assumed the risk of challenging Apple, a well-resourced defendant that would have continued to vigorously defend its business practices had the litigation gone forward.  Apple contested its liability from the very beginning, asserting that members of the Settlement Class had failed adequately to allege any viable claims, filing multiple motions to dismiss, and seeking reconsideration of the Court's orders.  Indeed, it was only through Class Counsel's legal ability and perseverance that Plaintiffs' claims for trespass to chattels and claims under the CDAFA and CFAA survived Defendant's motions to dismiss.  This was all the more important given that the Court, in this consumer protection class action, dismissed all of Plaintiffs' traditional consumer protection and fraud-based claims.

Absent settlement, Apple would have had the opportunity to file a motion for summary judgment and oppose Plaintiffs' motion for class certification, increasing the possibility members of the Settlement Class might recover nothing had litigation continued.  Indeed, Plaintiffs would have faced an uphill battle on Plaintiffs' eventual motion for class certification, with no guarantee that any claims would be certified.  And even if Plaintiffs were to have successfully obtained class certification, there is no assurance that Plaintiffs would have secured a victory at trial and maintained it on appeal.  The risk of little or no recovery weighs in favor of the requested fee award.  As Judge Haywood Gilliam has concluded, there are considerable risks related to obtaining class certification, surviving summary judgment, prevailing at trial, and "withstanding a potential appeal." *See Bower v. Cycle Gear, Inc*., No. 14-CV-02712-HSG, 2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016); *see also Destefano*, 2016 WL 537946, at *17 (noting the "substantial" risk associated with "obtaining [and maintaining] class certification"); *Roberti v. OSI Sys., Inc.*, No. CV13-09174 MWF (MRWx), 2015 WL 8329916, at *6 (C.D. Cal. Dec. 8, 2015) (the defendant's "vigorous opposition" represented a "substantial" risk weighing in favor of the requested attorney's fees).

### 3.     The Settlement Required Skill And High-Quality Work

Class Counsel's experience, and the skill they brought to bear in this case also favor the fee award. Judge Beth Freeman has stated "Class Counsel are experienced in the prosecution of consumer class actions, and '[s]uch expertise proved particularly beneficial in this action…. This factor, therefore, favors an upward adjustment." *Nexus 6P*, 2019 WL 6622842, at *12 (quoting *Zepeda v. PayPal, Inc.*, No. C 10-1668 SBA, 2017 WL 1113293, at *20 (N.D. Cal. Mar. 24, 2017)). Class Counsel have significant expertise in consumer class actions. *See* Dkt. Nos. 415-3, 415-4; *see, e.g.*, *Wolf v. Red Bull GmBH*, No. 1:13-cv-08008 (S.D.N.Y.); *In re Pre-Filled Propane Tank Marketing and Sales Practices Litig.*, No. 4:09-md-2086 (W.D. Mo.); *In re Lenovo Adware Litig.*, No. 15-md-02624-HSG; *In re: Lumber Liquidators Chinese-Manufactured Flooring Products Mkting, Sales Pract. and Prods. Liab. Litig.*, No. 1:15-md-02627-AJT (E.D. Va.).

The quality of Class Counsel's representation is reflected in the work they performed throughout the case and, ultimately, in the favorable settlement for the Settlement Class. *See Moreyra v. Fresenius Med. Care Holdings, Inc.*, No. SACV-10-517 JVS (RZx), 2013 WL 12248139, at *3 (C.D. Cal. Aug. 7, 2013) (noting that the result is "[t]he single clearest factor reflecting the quality of class counsels' services") (quoting *In re Heritage Bond Litig*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005)); *see Wallace v. Countrywide Home Loans, Inc.*, No. SACV-08-1463 JLS (MLGx), 2015 WL 13284517, at *9 (C.D. Cal. Apr. 17, 2015) (noting customary factors reflecting counsel's skill such as developing the facts and legal claims, conducting discovery, reviewing documents, retaining experts, motion practice, and negotiating and drafting the settlement).

As discussed above, "[t]he settlement was not reached lightly," as Apple's aggressive defense required significant skill and experience to effectively navigate. *Moreyra*, 2013 WL 12248139, at *3 (observing that counsel's skill was reflected in "diligently investigating and developing the claims"; "efficient discovery"; and "well-researched legal arguments"). Over the course of nearly three years, Class Counsel advanced the litigation in the face of multiple motions to dismiss and other roadblocks. Class Counsel also aggressively pursued discovery, resulting in the review and analysis of millions of pages of internal documents from Apple, and depositions of

many of its employees.  All this effort put Class Counsel in the best possible position to negotiate a favorable resolution for the class.  *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) (class counsel used their "specialized skill" in the particular area of law which represented an asset to class members and weighed in favor of the fee request); *Omnivision Techs.*, 559 F. Supp. 2d at 1047 ("That Plaintiffs' case withstood two such motions, despite other weaknesses, is some testament to Lead Counsel's skill.  This factor also supports the requested fee."); *Heritage Bond*, 2005 WL 1594403, at *19 (fact investigation, detailed complaints, extensive motion practice, review of numerous documents, and the taking of multiple depositions demonstrated class counsel's legal skills); *Lenovo*, 2019 WL 1791420, at *8 (noting favorable result given that the case had "been actively litigated for the past four years, and required complex legal and factual research and analysis by Class Counsel").

The quality of opposing counsel should also be considered when evaluating the performance of Class Counsel.  *See In re Am. Apparel, Inc. S'holder Litig.*, No. CV-1006352 MMM (JCGx) 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) ("In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully.") (citing *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997)).  Apple was represented in this case by two national, highly respected law firms (Gibson, Dunn & Crutcher LLP and Covington and Burling LLP) with significant resources and substantial experience defending consumer class actions.  This factor, therefore, weighs in favor of the requested fee award.  *See Heritage Bond*, 2005 WL 1594403, at *20 ("There is also no dispute that the plaintiffs in this litigation were opposed by highly skilled and respected counsel with well-deserved local and nationwide reputations for vigorous advocacy in the defense of their clients.").

### 4.   Class Counsel Worked For Years On A Fully Contingency Basis

"When counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award."  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015). For example, Judge Phillip Gutierrez of the Central District has concluded, "the duration of the case—lasting now for over three years—counsels in favor of a larger attorneys' fees award."  *Luna v. Universal City Studios, LLC*, No. CV

12-9286 PSG (SSx), 2016 WL 10646310, at *7 (C.D. Cal. Sept. 13, 2016).  Here, Class Counsel took this matter on a contingency basis and advanced all necessary professional time and expenses for nearly <u>three</u> years.  Joint Decl. ¶¶ 60-61.  "This substantial outlay, when there is a risk that none of it will be recovered, further supports the award of the requested fees."  *Nexus 6P*, 2019 WL 6622842, at *13 (quoting *Omnivision Techs.*, 559 F. Supp. 2d at 1047).  "Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work."  *Ching v. Siemens Indus. Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014); *see also In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.").

### 5.    <u>The Award Requested Is On Par With Awards In Similar Cases</u>

In cases where the total settlement value is extraordinarily large, and class members will recover a high percentage of their possible damages, courts grant fee awards <u>above 25%</u> of the common fund.  For example, in the *LCD Antitrust* class action, Judge Susan Illston awarded 28.6% for a $571 million settlement.  *In re TFT–LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 1365900, at *20 (N.D. Cal. Apr. 3, 2013).  Former Judge Samuel Conti has observed, "in most common fund cases, the award exceeds the benchmark."  *Omnivision Techs.*, 559 F.Supp.2d at 1047; *see also In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2018 WL 4620695, at *1 (N.D. Cal. Sept. 20, 2018) (awarding 1/3 of $105 million settlement as attorneys' fees); *In re Informix Corp. Sec. Litig.*, No. 97-1289 (N.D. Cal. Nov. 23, 1999) (awarding 29.2% of $137 million settlement fund); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *15, 34 (N.D. Cal. Aug. 17, 2018) (noting that "27% [of a settlement fund] appears to be in line with the vast majority of megafund settlements," and awarding 27% of the $115 million settlement).

Courts in multidistrict and other litigations, with similar results, have approved fee awards in excess of 25%.  For example, Judge Michael Baylson awarded "one-third of the $190,059,056

Combined Settlement Fund as attorneys' fees." *In re Domestic Drywall Antitrust Litig.*, MDL No. 2437, 2018 WL 3439454, at *20 (E.D. Pa. July 17, 2018); *see also, e.g., In re Urethane Antitrust Litig.*, MDL No. 1616, 2016 WL 4060156, at *8 (D. Kan. July 29, 2016) (awarding 1/3 of settlement fund of $835 million as attorneys' fees); *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, No. 2:06-cv-01797-MSG, 2015 WL 12843830, at *5-6 (E.D. Pa. Oct. 15, 2015) (awarding 27.5% of $512 million settlement as attorneys' fees); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1336-38 (S.D. Fla. 2011) (awarding 30% of $410 million settlement as attorneys' fees and citing cases); *In re Initial Public Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515 (S.D.N.Y. 2009) (awarding 1/3 of net settlement fund of $586 million); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) (awarding 31.3 percent of $1.075 billion settlement fund); *In re Vitamins Antitrust Litig.*, MDL No. 1285, 2001 WL 34312839 (D.D.C. July 16, 2001) (awarding 34% of $365 million settlement fund); *In re Combustion, Inc.*, 968 F. Supp. 1116 (W.D. La. 1997) (awarding 36% of $127 million).

Here, the requested fee award of 28.3% is within the usual range in similar, high recovery, common fund cases. *Vizcaino*, 290 F.3d at 1047. The requested amount is also within the range awarded in consumer class actions. In a consumer protection case involving Google and Hauwei's joint venture to develop and sell the "Nexus 6P" smartphone, Judge Freeman concluded that "Plaintiffs' request for a 30% fee falls within the usual range of common fund cases." *Nexus 6P*, 2019 WL 6622842, at *13. Judge William Alsup has held that a 35% fee was reasonable in an action alleging consumer protection claims. *Dugan v. Lloyds TSB Bank, PLC*, No. C 12-02537-WHA, 2014 WL 1647652, at *3 (N.D. Cal. Apr. 24, 2014). Magistrate Judge Laurel Beeler awarded one-third of the settlement fund in a consumer class action matter involving erroneous information on credit reports. *Patel v. Trans Union, LLC*, No. 14-CV-00522-LB, 2018 WL 1258194, at *5 (N.D. Cal. Mar. 11, 2018). Accordingly, Class Counsels' request for 28.3% of the Minimum Class Settlement Amount is well within the range of fees awarded in other cases, obtaining similarly exceptional results.

### III.   A LODESTAR CROSS-CHECK CONFIRMS THE REASONABLENESS OF THE REQUESTED FEE AWARD

"As a final check on the reasonableness of requested attorneys' fees, courts often compare the amount counsel would receive under the percentage-of-recovery method with the amount counsel would have received under the lodestar method." *Nexus 6P*, 2019 WL 6622842, at *13; *see Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). As recently articulated by Judge Jon Tigar, under a lodestar cross-check, "a court takes the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (citations omitted).

In performing the cross-check, however, courts "should not, become green-eyeshade accountants" but rather "do rough justice, not to achieve auditing perfection." *Id.* (citations omitted); *see In re Capacitors Antitrust Litig.*, No. 3:17-md-02801-JD, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) (the cross-check does not require "mathematical precision nor bean-counting") (citation omitted); *In re Toys R Us-Del., Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 460 (C.D. Cal. 2014) ("In cases where courts apply the percentage method to calculate fees, they should use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award.").

#### A.   The Number of Hours Devoted to the Case was Reasonable

Pursuant to the Court initial appointment order, Class Counsel maintained contemporaneous time records, and provided monthly reporting of their time that was audited and reviewed by the Court-appointed Chair of the Plaintiffs' Executive Committee ("PEC") and by Class Counsel. Following this review, quarterly time reports were then submitted to the Court during the duration of this Action.[5]

As reflected in these reports, Class Counsel performed a significant amount of work in this Action, including research and preparing the complaints, defending against multiple motions to

---

[5] Of course, not all hours worked were billed. *See* Section III(B) *infra*.

dismiss and other motions, engaging and working with consultants, engaging in extensive formal, hard fought discovery, taking and defending multiple depositions, and participating in several mediations and settlement negotiations.  Joint Decl. ¶¶ 62-63.  Moreover, Class Counsel and the PEC Chair closely oversaw and monitored the work assignments given to PEC members, as well as the need to assign additional work to the Plaintiffs' Steering Committee ("PSC"), ensuring efficiency and minimizing duplication.  *Id.* ¶ 63.  Class Counsel also worked cooperatively with JCCP Counsel in their respective case against Apple to ensure a coordinated effort.  *Id.* ¶ 63; *see also* JCCP Decl. ¶ 9, 14.  In total, following the respective appointment of lead counsel, Class Counsel and JCCP Counsel collectively spent 68,731.1 hours on this matter through July 31, 2020. Joint Decl. ¶ 65.

**B.      Pre-Appointment Hours**

Notably, the time above **excludes** time spent by Class Counsel and JCCP Counsel prior to their respective appointments, as well as time spent in connection with final approval and going forward in this Action.  Indeed, Plaintiffs' Counsel spent hundreds, if not thousands of hours on investigation, legal research, and review of technical data prior to filing the complaint, which are not included in the hours submitted as part of this award requested.  *See McKibben v. McMahon*, No. EDCV 14-2171 JGB (SPx), 2019 WL 1109683, at *13 (C.D. Cal. Feb. 28, 2019) (noting that class counsel's hours did not include "ongoing work with the Class Administrator and class members" and time in connection with final approval).

**C.      Reasonable Hourly Rate**

As the Supreme Court has stated, "[w]hen plaintiffs' entitlement to attorney's fees depends on success, their lawyers are not paid until a favorable decision finally eventuates, which may be years later….   Meanwhile, their expenses of doing business continue and must be met." *Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 716 (1987) (citations omitted). Accordingly, "[a]ttorneys in common fund cases must be compensated for any delay in payment." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 740 (9th Cir. 2016) (quoting *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002)).  As the Ninth Circuit in *Washington Public Power* provides, "[f]ull compensation requires charging current rates [for attorneys still at

the firm] for all work done during the litigation, or by using historical rates [for those who left the firm prior to the filing of the fee petition] enhanced by an interest factor." *Id.*, 307 F.3d at 1305. Here, because Class Counsel has waited almost three years for any fee in this matter, and the resulting expense outlays required to prosecute this Action, the Court should cross-check the percentage request utilizing a lodestar based on the hourly rates most recently reported to the Court during the pendency of this Action.

The reasonable hourly rate is "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Fowler v. Wells Fargo Bank, N.A.*, No. 17-CV-02092-HSG, 2019 WL 330910, at *6 (N.D. Cal. Jan. 25, 2019). Judge Jon Tigar has held that rates "from $650 to $1,250 for partners or senior counsel, from $400 to $650 for associates, and from $245 to $350 for paralegals" were reasonable. *Hefler*, 2018 WL 6619983, at *14. Here, Class Counsel's rates, as well as the rates of all members of the PEC and PSC, are in line with the rates that have been recently awarded to similarly experienced counsel in this District. Joint Decl. ¶ 66; *see, e.g.*, *Dickey v. Advanced Micro Devices, Inc.*, No. 15-cv-04922-HSG, 2020 WL 870928, at *8 (N.D. Cal. Feb. 21, 2020) (rates between $275 and $1,000 for attorneys found reasonable); *In re Lidoderm*, 2018 WL 4620695, at *2 (rates between $300 and $1,050 for attorneys found reasonable).

### D.   Lodestar and Implied Multiplier

Based on Class Counsel and JCCP Counsel's collective hours spent after their appointment, and their reasonable and customary hourly rates, they have a combined lodestar of $36,408,575.05. Thus, the requested award of fees of $87.73 million represents a multiplier of 2.41 of their lodestar. Including both the pre and post-appointment time spent, the requested fee represents a multiplier of 2.19 of the combined lodestar. Joint Decl. ¶ 65. "Multipliers of 1 to 4 are commonly found to be appropriate in common fund cases." *Sheikh v. Tesla, Inc.*, No. 17-CV-02193-BLF, 2018 WL 5794532, at *8 (N.D. Cal. Nov. 2, 2018) (citation omitted); *see also In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019) (approving 3.66 multiplier in $200 million settlement); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (even a multiplier of 6.85 was "well within the range of multipliers that courts have allowed").

Here, Class Counsel has obtained a significant benefit for the Settlement Class, who will recover between 54% and 137% of approximate damages per iPhone.  Given the number of claims to date, it is entirely likely that class members will recover 100% of their actual damages or greater. That amount is significant "no matter how you slice it."  *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 964-65 (9th Cir. 2009); *In re Lidoderm*, 2018 WL 4620695, at *2 (noting that 46% recovery of damages is a "significant benefit for the" class).  Judge Beth Freeman has held that for fee awards, "the benchmark should be increased based on the exceptional results achieved, the risk of litigation, the fine quality of Class Counsel's work, and the contingent nature of the fee." *Gergetz v. Telenav, Inc.*, No. 16-CV-04261-BLF, 2018 WL 4691169, at *7 (N.D. Cal. Sept. 27, 2018).

Class Counsel respectfully submit that the reasonableness of the requested fee is confirmed by a cross-check of their lodestar, as well as the very favorable result for the Settlement Class, the skill required to reach the Settlement, the significant risks assumed and the contingent nature of their representation over the nearly three-year duration of the case.

## IV.    THE LITIGATION EXPENSES ARE REASONABLE

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit[.]"  *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (citation omitted).  Class Counsel and JCCP Counsel have incurred $995,244.93 in unreimbursed litigation expenses, including costs advanced in connection with consultants, legal research, court reporting services, travel for depositions, copying and mailing, and other customary litigation expenses.  Dearman Decl. ¶ 11, Exhs. 41-42; JCCP Decl., Exh. C.

An attorney is also entitled to recover as part of the award of attorney's fees "those out-of-pocket expenses that would normally be charged to a fee paying client."  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted).  The expenses incurred were reasonable and necessary for prosecuting this case and courts have frequently found such expenses to be recoverable.  *See, e.g., In re LendingClub Sec. Litig.*, No. C 16-02627 WHA, 2018 WL 4586669, at *3 (N.D. Cal. Sept. 24, 2018) (expenses such as expert and consultant fees, court fees, travel and lodging costs, legal research fees, and copying expenses were reasonable and recoverable); *Thomas*,

2018 WL 2234598, at *4 (granting requests for costs consisting of "court fees, online research fees, postage and copying, travel costs, electronic discovery expenses, deposition costs, mediation charges, and travel costs").  The Court should therefore allow reimbursement of counsels' reasonable litigation expenses advanced on behalf of the class.

## V.        THE POSITION OF THE SETTLEMENT CLASS

The reaction of the Settlement Class has been very favorable to date.  While the deadline to respond is October 6, 2020, the Settlement Administrator has already received about 1.4 million claims as of August 24, 2020.  Angeion Decl. ¶ 26.  Conversely, only **ten objections** concerning attorneys' fees have been submitted to the Court, and most of them without any explanation of their position or support for the award of a different amount.

For example, Mark G. Wilson (letter received on July 17, 2020 [Dkt. 435]) objected to the "excessive attorneys' fees" and claimed that the "representation of the attorney's was inadequate" due to the burden required of members of the Settlement Class to obtain payment.  However, even if one assumed that the burden to submit a claim is relevant to a fee award, the burden here was minimal and also necessary to ensure that each claimant is eligible to participate in the Settlement, based on accurate information.  "[T]here is nothing unfair about requiring a claimant to meet the eligibility requirements for a particular benefit."  *In re Equifax Inc.*, 2020 WL 256132, at *30 (citing MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.66 ("Class members must usually file claims forms providing details about their claims and other information needed to administer the settlement.")).

Terrence J. O'Toole (letter received on July 17, 2020 [Dkt. 437]) also objected to the Settlement and the amount of attorneys' fees and expenses requested.  However, Mr. O'Toole failed to provide proof of membership in the Class as required to object to the Settlement.  *See* Order Certifying Settlement Class; Preliminary Approval of Class Action Settlement; and Approving Form and Content of Class Notice, filed May 27, 2020 ("Preliminary Approval Order"), ¶ 11 [Dkt. 429]. The Court should reject this objection.  *See Nwabueze v. AT & T Inc.*, No. C 09-01529 SI, 2013 WL 6199596, at *6-7 (N.D. Cal. Nov. 27, 2013) (overruling objections on the basis that the objections submitted "failed to comply with the Court's procedural requirements for objecting to the

Settlement"); *Chavez v. PVH Corp.*, No. 13-CV-01797-LHK, 2015 WL 9258144, at *3 (N.D. Cal. Dec. 18, 2015) (explaining that court may reject "procedurally improper" objections on that basis alone). As to Mr. O'Toole's statement that he has no information about the amount of attorney's fees proposed to be paid or the amount of expenses proposed to be reimbursed, or whether the amounts "are reasonably proportioned to the amount of the settlement and whether they reasonably reflect fair compensation," the Notice provided to all members of the Settlement Class specifies that information. *See* Settlement, Ex. B (long-form notice) [Dkt. 416-2]. Class Counsel, in filing this motion, have also articulated the reasons for the request of fees.

Eric P. Van Winkle (letter received on July 17, 2020 [Dkt. 438]) did "not agree with the attorney fees" and Mark Stoker (letter received August 19, 2020 [Dkt. 462]) argued that "[t]here are no amount of billable hours to justify" the fee request. First, both Mr. Van Winkle and Mr. Stoker have failed to provide proof of membership in the Settlement Class as required to object to the Settlement. *See* Preliminary Approval Order, ¶ 11. The Court should reject these objections. In any case, contrary to Mr. Van Winkle's and Mr. Stoker's assertions, Class Counsels' work for the Settlement Class has allowed for a substantial payment of between 54% and 137% of damages to members of the Settlement Class. Given the efforts made by Class Counsel in advancing the Action to this stage, Class Counsel should be compensated for the work done for the Settlement Class.

Dennis Liu (letter received on July 24, 2020 [Dkt. 443]), Jon Troy (letter received on August 11, 2020 [Dkt. 453]), and Simon Andrew Popecki (letter received on August 10, 2020 [Dkt. 455]) protested Class Counsels' request for attorneys' fees and advocated compensating Class Counsel at lower rates. However, for the reasons described above, and in the Joint Declaration and accompanying exhibits, the hourly rates are reasonable and consistent with each firm's customary, professional rates. Joint Decl. ¶ 66; *see also* Dearman Decl., Exhs. 3-39. Similarly, Class Counsels' request for unreimbursed Expenses is based on the books and records of the firms and represent an accurate recordation of costs and expenses incurred in connection with this Action. Joint Decl. ¶ 67. Finally, Mr. Popecki's argument that fees are excessive given Apple's gross profit margin on iPhones misses the mark; based on expert analysis, damages in this action are near the $25 per device recovery proposed making this an exceptional result. The Court should overrule the objections by

Mr. Liu, Mr. Troy and Mr. Popecki.

Loi Le (letter received on August 17, 2020 [Dkt. 460]) objected to the "excessive attorney fees," and argues that the "individuals who are truly affected by these events should collect more money." Although he states he purchased "2 iphone 6's," Mr. Le has failed to provide proof of membership in the Class as required to object to the Settlement. *See* Preliminary Approval Order, ¶ 11. Accordingly, the Court should reject this objection. In any case, contrary to Mr. Loi's assertions, Class Counsels' work for the Settlement Class has allowed for a substantial payment of damages to members of the Settlement Class and, assuming Mr. Loi actually purchased the iPhones at issue, Mr. Loi would be able to obtain at least $25 per iPhone.

Lawrence Sharnak (letter received on August 17, 2020 [Dkt. 461]) objected to the amount of attorneys' fees, stating that he would "like to see [Class Counsels'] justification for" their fees and argued that a "blended rate of $400/hr is more reasonable." Similarly, Michael Baxter (letter received August 24, 2020 [Dkt. 463]), argued that Class Counsel should be awarded fees and expenses "in the amount not to exceed 3% of the $310,00,000 [sic] Floor." But, as noted above, Class Counsel are seeking a percentage of the Minimum Class Settlement Amount based on almost three years of extensive work on a contingency basis. When cross-checked by Class Counsels' lodestar using the hourly rates in line with the rates that have been recently awarded to similarly experienced counsel in this District, the requested amount is reasonable. Class Counsel have also clearly articulated the reasons for their request, as well as the hours spent litigating this Action. As this filing will be placed on the Settlement Website, Mr. Sharnak will have the opportunity to review and respond.

Finally, Louis Greenberg (letter received on July 24, 2020 [Dkt. 445]) sought to be excluded from the Settlement, but then also objected to the "excessive attorneys fees applied for." To the extent Mr. Greenberg seeks to exclude himself from the Settlement, he no longer has the right to object to the Settlement. To the extent Mr. Greenberg seeks to remain and object to Class Counsels' request for attorneys' fees, he failed to provide proof of membership in the Class as required to object. *See* Preliminary Approval Order, ¶ 11. To the extent Mr. Greenberg objects to attorneys' fees on the grounds that this Action is not concerning "pub[l]ic hea[l]th, safety, etc.," that is not a

1   reasonable basis to reduce an award of attorneys' fees.  The Court should reject this letter.

2   **VI.     REQUEST FOR NAMED PLAINTIFF SERVICE AWARDS**

3        Service awards are "intended to compensate class representatives for work undertaken on

4   behalf of a class" and "are fairly typical in class action cases."  *In re Online DVD-Rental Antitrust*

5   *Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (internal quotation marks and citation omitted).  Service

6   awards of $5,000 are "presumptively reasonable" in this District.  *Bellinghausen*, 306 F.R.D. at 266.

7   Here, Class Counsel request Service Awards for Named Plaintiffs of $3,500 for each of the nine

8   Named Plaintiffs who were deposed in this Action, and $1,500 to each of the remaining Named

9   Plaintiffs.  The request is lower than the "presumptively reasonable" incentive award.  *Id.*; *Noll v.*

10  *eBay, Inc.*, 309 F.R.D. 593, 611 (N.D. Cal. 2015) (Davila, J.).

11       In considering whether to make a service award, courts consider "the actions the plaintiff

12  has taken to protect the interests of the class, the degree to which the class has benefitted from those

13  actions, … and the amount of time and effort the plaintiff expended in pursuing the litigation."

14  *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-CV-03698-NC, 2018 WL 2183253, at *8 (N.D.

15  Cal. May 11, 2018) (alterations and citation omitted); *Lenovo*, 2019 WL 1791420, at *9-10 (same).

16  Here, Named Plaintiffs were willing to step forward to represent and protect the interests of the

17  Settlement Class by actively monitoring the status of the litigation, communicating regularly with

18  Class Counsel, searching for and producing responsive documents, responding to interrogatories,

19  and reviewing significant pleadings prior to their filing.  Joint Decl. ¶¶ 69-71.  Nine Named Plaintiffs

20  (Romeo Alba, Denise Bakke, Alisha Boykin, Steven Connolly, Alvin Davis, Loren Haller, Charlene

21  Lowery, Cynthia Stacy, and Trent Young) were deposed in California, requiring them to travel from

22  their homes and places of employment.  *Id.* ¶¶ 70- 71.

23       Courts have awarded service awards for similar work on behalf of the class and time

24  commitments.  Moreover, Named Plaintiffs seek a total of $216,000 or 0.0007% of the $310 million

25  Minimum Class Settlement Amount.  This amount is reasonable considering how small the award

26  is in relation to the full amount of the Settlement Fund.  Finally, the Settlement does not improperly

27  grant preferential treatment to Named Plaintiffs or segments of the Settlement Class.  *In re Portal*

28  *Software, Inc. Sec. Litig.*, No. C 03-5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007).

Because Named Plaintiffs' Service Awards request "is in line with precedent," *Allagas v. BP Solar Int'l, Inc.*, No. 3:14-cv-00560-SI (EDL), 2016 WL 9114162, at *4 (N.D. Cal. Dec. 22, 2016) (citations omitted), the Court should therefore grant Service Awards.

## VII.    CONCLUSION

As stated above, Class Counsel devoted tens of thousands of hours to the litigation, including substantial time spent before they were appointed in a leadership capacity.  As a result of their hard work, against one of the largest and most formidable adversaries in the world, they successfully negotiated a settlement of historic proportion which is now expected to provide a recovery of 100% or more of damages suffered by class members who submit claims.  Based on these circumstances, and consistent with the factors applied by federal courts, including in the Northern District of California, Class Counsel respectfully request that the Court issue an Order awarding $87,730,000 in attorneys' fees, approving reimbursement of $995,244.93 in advanced litigation expenses, and awarding Services Awards of $3,500 to each of the Nine Named Plaintiffs who were deposed and $1,500 to each of the remaining Named Plaintiffs.

Respectfully submitted,

DATED:  August 26, 2020          **COTCHETT, PITRE & MCCARTHY, LLP**

 */s/ Joseph W. Cotchett*
        Joseph W. Cotchett

Joseph W. Cotchett (SBN 36324)
Mark C. Molumphy (SBN 168009)
Brian Danitz (SBN 247403)
Elle D. Lewis (SBN 238329)
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: 650-697-6000

DATED:  August 26, 2020          **KAPLAN FOX & KILSHEIMER LLP**

 */s/ Laurence D. King*
        Laurence D. King

Laurence D. King (SBN 206423)
Mario M. Choi (SBN 243409)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415-772-4700

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (*pro hac vice*)
Donald R. Hall (*pro hac vice*)
David A. Straite (*pro hac vice*)
Maia C. Kats (*pro hac vice pending*)
850 Third Avenue
New York, NY 10022
Telephone:  212-687-1980

*Interim Co-Lead Class Counsel for
the Settlement Class*

NOTICE OF MOT. AND MOT. FOR ATTY FEES, EXPENSES, AND SERVICE AWARDS; MPA

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

I, Joseph W. Cotchett, attest that concurrence in the filing of this document has been obtained from the other signatory.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of August 2020, at Burlingame, California.

*/s/ Joseph W. Cotchett*
Joseph W. Cotchett