JOSEPH W. COTCHETT (SBN 36324)
*jcotchett@cpmlegal.com*
MARK C. MOLUMPHY (SBN 168009)
*mmolumphy@cpmlegal.com*
ELLE D. LEWIS (SBN 238329)
*elewis@cpmlegal.com*
BRIAN DANITZ (SBN 247403)
*bdanitz@cpmlegal.com*
**COTCHETT, PITRE & McCARTHY LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: 650.697.6000

LAURENCE D. KING (SBN 206243)
*lking@kaplanfox.com*
MARIO M. CHOI (SBN 243409)
*mchoi@kaplanfox.com*
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415.772.4700

FREDERIC S. FOX (*pro hac vice*)
*ffox@kaplanfox.com*
DONALD R. HALL (*pro hac vice*)
*dhall@kaplanfox.com*
DAVID A. STRAITE (*pro hac vice*)
*dstraite@kaplanfox.com*
MAIA C. KATS (*pro hac vice pending*)
*mkats@kaplanfox.com*
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue
New York, NY 10022
Telephone: 212.687.1980

*Interim Co-Lead Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| IN RE: APPLE INC. DEVICE PERFORMANCE LITIGATION | Case No. 5:18-md-02827-EJD |
| | **JOINT DECLARATION OF JOSEPH W. COTCHETT AND LAURENCE D. KING IN SUPPORT OF MOTION FOR (1) FINAL APPROVAL OF SETTLEMENT; AND (2) MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES** |
| This Document Relates to: | |
| ALL ACTIONS | Judge: Hon. Edward J. Davila
Courtroom: 4, 5th Floor
Date: December 4, 2020
Time: 10:00 a.m. |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY OF WORK PERFORMED ................................... 1

II.   OVERVIEW OF THE LITIGATION ................................................................. 3

      A.    Consolidated Complaints and Motions to Dismiss ................................ 3

      B.    Discovery, Related Motion Practice and Negotiations and Appointment
            of Special Discovery Master ............................................................. 5

      C.    Plaintiffs' Document Review Efforts .................................................. 14

      D.    Class Counsel's Document Collection and Production ......................... 15

      E.    Depositions ................................................................................... 16

      F.    Nonparty Discovery ........................................................................ 18

III.  THE SETTLEMENT PROCESS ..................................................................... 19

      A.    Negotiations and Mediation ............................................................. 19

      B.    Preliminary Approval Granted .......................................................... 20

      C.    Benefits to Class and Plan of Distribution ........................................ 20

      D.    Service Awards and Attorneys' Fees ................................................. 21

IV.   CLASS NOTICE AND SETTLEMENT ADMINISTRATION ................................ 22

      A.    Class Notice Program ..................................................................... 22

      B.    The Notice ..................................................................................... 23

      C.    Responses of the Class to Date ........................................................ 24

V.    ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE AWARDS ......... 24

      A.    Attorneys' Fees Incurred by Class Counsel and other Plaintiffs' Counsel ... 24

      B.    Unreimbursed Costs and Litigation Expenses .................................... 26

      C.    Service Awards to Settlement Class Representatives ........................... 27

JOINT DECL. ISO MOT. FOR FINAL APPROVAL OF SETTLEMENT AND MOT. FOR AWARD OF ATTY FEES AND EXPENSES

We, Joseph W. Cotchett and Laurence D. King, declare and state as follows:

1.     I, Joseph W. Cotchett, am a member of the bar of the State of California and a partner at the law firm of Cotchett, Pitre & McCarthy LLP ("CPM").

2.     I, Laurence D. King, am a member of the bar of the State of California and a partner at the law firm of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox").

3.     We are interim co-lead counsel for the Named Plaintiffs.[1]  We have personal knowledge of the facts stated below and with the proceedings in this case.  If called as witnesses, we would and could competently testify thereto to all facts within our personal knowledge.

4.     We respectfully submit this joint declaration in support of Plaintiffs' Motion for Final Approval of the Settlement, in the above-captioned action, and the entry of the [Proposed] Order Granting Final Approval of the Class Action Settlement, and Final Certification of the Settlement Class.

5.     We also submit this declaration in support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards.

6.     The purpose of this declaration is to summarize (a) the factual and procedural history of the above-captioned action ("Action"), (b) the work performed by Class Counsel, (c) the Settlement Notice program and the Class responses; and (d) the fees and expenses incurred.

## I.     INTRODUCTION AND SUMMARY OF WORK PERFORMED

7.     After years of hard-fought and contentious litigation, the Parties have reached an agreement to resolve the proposed Settlement Class's claims against Apple pursuant to the Stipulation.[2]  The Settlement was reached only after extensive arm's-length negotiations between experienced counsel, including several in-person mediation sessions and additional negotiations facilitated by a highly respected mediator, Judge Layn R. Phillips (Ret.) of Phillips ADR.  Pursuant

---

[1] All capitalized words are defined in the Stipulation of Settlement unless otherwise noted.

[2] The fully-executed Stipulation of Settlement, ("Stipulation" or "Settlement"), was filed on February 28, 2020 [Dkt. 416].

to the Settlement, based upon a "mediator's proposal," Apple agreed to pay between $310 and $500 million, for the benefit of Settlement Class Members.

8. During the litigation, Class Counsel performed a significant amount of work, including:

- Conducting an initial investigation of the Action to develop the theories of liability and facts that formed the basis of the allegations against Defendant. The research included a review of publicly available information regarding the cellphone device and battery industry, and consultation with industry experts;

- Drafting and extensively researching two comprehensive consolidated complaints detailing Defendants' violations of consumer protection laws, computer intrusion and numerous other laws, naming and describing allegations of 122 plaintiffs in 53 U.S. states and territories, and 14 different countries;

- Successfully conducting exhaustive legal research and opposing Defendant's multiple hard-fought motions to dismiss, covering the geographic scope of the putative class, the sufficiency of the misrepresentation claims under standards imposed by Federal Rule of Civil Procedure ("Rule") 8(a), *Twombly, Iqbal*, and Rule 9(b), choice of law in relevant agreements with consumers, legal sufficiency of the California common law claims, and legal sufficiency of the claims under consumer protection statutes of numerous states and computer intrusion laws, among others;

- Drafting, negotiating, and entering into several case management documents, such as the Stipulation Appointing Special Discovery Master [Dkt. 171], Stipulation Selecting Private Mediator [Dkt. 183], Stipulated Protective Order [Dkt. 224], and several other similar documents that contribute to the effective and efficient administration of this Action;

- Propounding four sets of Requests for Production of Documents, conducting extensive meet and confers, and reviewing more than 7 million documents in addition to several gigabytes of electronic data;

- Engaging in extensive nonparty discovery, serving 24 subpoenas to nonparty multinational companies such as AT&T, Verizon, and other cellular wireless providers, LG, Samsung, and other mobile phone device manufacturers, Amazon, BestBuy and other retailers of mobile phones, among others, to obtain documents relating to: contracts with Apple to buy, sell, or promote Apple devices; policies concerning communications about technical specifications and studies of Apple devices; communications with Apple concerning device defects, advertising and promotions materials concerning Apple devices; and complaints by third parties, including regulators, about Apple devices, among many other topics;

- Contending with near-constant discovery disputes, requiring the retention and ongoing involvement of a Special Discovery Master and several conferences to reach resolutions concerning the Parties' proposed Protective Order, ESI Protocol, motion to compel expedited discovery, and determination of the relevant date range to govern discovery;

- Organizing teams of lawyers that reviewed, searched, and extensively coded and analyzed these documents, many of which included technical and computer programming language;

- Deposing 10 Apple witnesses, including Apple's "Director of Engineering," "Senior Director of Communications," and "Senior Director in Worldwide Product Marketing";

- Preparing for and defending the depositions of nine (9) Named Plaintiffs;

- Retaining forensics and cyber experts to review Apple's proposed Device Inspection Protocol and determine the appropriate categories of information that may be accessed and whether the Protocol would be successful in retrieving any relevant information while also protecting the privacy of the Named Plaintiffs;

- Engaging in protracted settlement discussion and mediations with Defendant, including participation in three separate in-person mediations, and five months of continued negotiations thereafter;

- Documenting the settlement terms with Defendant, briefing preliminary approval and final approval motions, and engaging class action notice experts, to create and oversee one of the largest class notice programs in class action history;

## II. OVERVIEW OF THE LITIGATION

### A. Consolidated Complaints and Motions to Dismiss

9. On December 20, 2017, Apple released a statement regarding a performance management feature in its iOS 10.2.1 and iOS 11.2 software to avoid unexpected power-offs ("UPOs") from occurring in its devices. Between December 2017 and June 2018, 66 class action complaints were filed against Apple, including complaints by CPM and Kaplan Fox, in federal district courts around the country ("Federal Actions"). Beginning on April 4, 2018, the Federal Actions were consolidated by the U.S. Judicial Panel on Multidistrict Litigation in the Northern District of California pursuant to 28 U.S.C. § 1407, into MDL proceedings captioned *In re Apple Inc. Device Performance Litigation*, No. 18-md-2827-EJD [Dkt. 1].

10. After CPM and Kaplan Fox were appointed Class Counsel [Dkt. 99] on May 15, 2018, they filed a Consolidated Amended Complaint ("CAC") on July 2, 2018 in this Action [Dkt. 145]. The CAC was the result of considerable work. Class Counsel spent significant time researching both legal and factual issues. The final CAC filed was a 381 page, factually detailed document, which described the allegations of 122 individual plaintiffs residing in 53 U.S. states and territories, and 15 countries. The CAC alleged violations of federal computer fraud laws, all states' consumer protection statutes, and various California common law causes of action (*e.g.*, fraud, trespass to chattels, breach of contract, fraudulent misrepresentation, unfair competition, and false advertising). In all, the CAC alleged 76 causes of actions.

11.     The CAC also alleged that the claims of all consumers, both U.S. and international, were governed by California law because Apple's software license agreements, to which consumers must consent in order to use the Devices, include a California choice-of-law clause.

12.     On August 9, 2018 Defendant moved to dismiss the CAC [Dkt. 176].   Apple challenged the:

> (1)     violations of the federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030, *et seq.*;
>
> (2)     violations of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1770, *et seq.*;
>
> (3)     violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*;
>
> (4)     violations of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*;
>
> (5)     violations of the California Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code §§ 502, *et seq.*; and
>
> (6)     trespass to chattels under California common law.

Apple also moved to dismiss the non-U.S. plaintiffs' claims and all claims related to the generation of iPhone 5's and iPads.

13.     On October 1, 2018, the Court granted in part and denied in part Apple's motion to dismiss the CAC [Dkt. 219].   *See In re: Apple Inc. Device Perf. Litig.*, 347 F. Supp. 3d 434 (N.D. Cal. 2018).   The Court upheld non-U.S. Plaintiffs' claims that Apple's California choice-of-law clause controls for all Device users, including non-U.S. Plaintiffs.   The Court further denied Apple's motion to dismiss the CFAA claim, the UCL claim under the unlawful and unfair prongs, the CDAFA claim, and the trespass to chattels claim.   The Court dismissed Plaintiffs' claims pertaining to the iPads and the iPhone 5's but granted leave to amend as to each.   Further, Plaintiffs' claims based on fraudulent misrepresentations and omissions were dismissed with leave to amend.

14.     On November 30, 2018, Class Counsel filed the operative Second Consolidated Amended Complaint ("2CAC") [Dkt. 244].   The 2CAC asserted claims for fraud, breach of

contractual relations, violation of the consumer protection laws, "trespass to chattels," and violations of the CDAFA and the CFAA. *Id*. The Second Consolidated Amended Complaint largely maintained the substance of the CAC but includes extensive details, drawn largely from Apple's own documents, regarding Plaintiffs' Defect allegations. [Dkt. 244 (2CAC) at ¶¶ 369-405] Plaintiffs clarified the Device Defect, using Apple's internal investigations and assessments from their battery, power, and software engineering teams and executive teams. *Id*.

15. On May 3, 2019, the Court granted in part and denied in part Apple's motion to dismiss the 2CAC [Dkt. 331]. *See In re: Apple Inc. Device Perf. Litig.*, 386 F. Supp. 3d 1155 (N.D. Cal. 2019).[3] The Order essentially maintained the status quo, upholding the Court's original rulings made in its October 1 Order. Specifically, the Court again denied Apple's motion to dismiss the claims of the non-U.S. plaintiffs. Similarly, the Court again denied Apple's motion to dismiss the UK plaintiffs' claims, the CFAA claim, the UCL claim under the unlawful and unfair prongs, the CDAFA claim, and the trespass to chattels claim. The Court granted the motion to dismiss the contract claims, claims pertaining to the iPads and the iPhone 5's, claims based on the battery Defect theory, claims based on an affirmative misrepresentation theory, and claims based on an omissions theory.

16. Plaintiffs undertook extensive research and analysis about whether to file a further amended complaint, however Plaintiffs ultimately chose not to amend the 2CAC [Dkt. 347], and, on July 31, 2019, Apple filed its Answer to the 2SAC [Dkt. 365].

17. Plaintiffs thereafter aggressively pursued discovery from Apple through multiple requests for production of documents and interrogatories, intensive meet and confers, and discovery motion practice.

**B.** **Discovery, Related Motion Practice and Negotiations and Appointment of Special Discovery Master**

18. Plaintiffs served Defendant with four sets of Requests of Production of Documents (RFPDs) on July 6, 2018, September 19, 2018, January 18, 2019, and March 22, 2019. Plaintiffs

---

[3] Defendant also sought reconsideration of the Court's first motion to dismiss order as to issues concerning a worldwide class [Dkt. 236], which the Court resolved in this order. *Id.*

also served two sets of Interrogatories on July 6, 2018 and September 19, 2019. Defendant vigorously opposed Plaintiffs' discovery requests, requiring the intervention of the Court for even routine matters such as meet and confer scheduling. For example, on June 8, 2018, Plaintiffs filed a Motion to Compel Defendant's Compliance with Federal Rule of Civil Procedure 26(f), moving the Court for an expedited order compelling Defendant to meet and confer in the ordinary course pursuant to Rule 26(f). Plaintiffs argued that Apple refused to set a date consistent with Rule 26(f) until after filing of the CAC, in effect, attempting to grant a discovery stay without a Court order. [Dkt. 117; Straite Decl. Exh. D]. Ultimately, after meeting and conferring on the appointment, the Parties stipulated to and the Court appointed the Honorable Judge Rebecca J. Westerfield (Ret.) as Special Discovery Master on August 2, 2018 to resolve the many discovery disputes which arose. [Dkt. 173, 173-1].

19. Class Counsel spent significant time and effort negotiating the ground rules for discovery and the complex litigation broadly. The Parties and the Court entered a Stipulation Appointing Special Discovery Master [Dkt. 171], Stipulation Selecting Private Mediator [Dkt. 183] and Stipulated Protective Order [Dkt. 224]. In addition, the Parties made over 20 joint submissions to Judge Westerfield between September 2018 to September 2019. In some instances, Plaintiffs were forced to return to the Court or Judge Westerfield to seek modification or supplement the foregoing documents due to changed circumstances.

20. As detailed below, the Parties submitted a number of disputes to Judge Westerfield. Resolving discovery disputes with Judge Westerfield required hours of preparation, meet and confers, and the drafting of joint submission letters. Moreover, the Parties held weekly or biweekly conferences with Judge Westerfield to discuss and resolve the many discovery issues in the case. The Parties submitted multiple letters to Judge Westerfield outlining the seemingly endless discovery disputes.

21. Specifically, the Parties submitted the following joint (and individual) submissions and discovery issues to the Special Discovery Master for hearing and/or resolution:

a) On September 12, 2018, the Parties submitted their first joint submission of discovery disputes and status report to Judge Westerfield for a telephonic

hearing on September 14, 2018. This submission included discussion over issues concerning battery and device preservation, the ESI/Discovery Protocol, Defendant's objections to Plaintiffs' initial discovery requests, and wording in the protective order.

b) The Parties made their next joint submissions to Judge Westerfield on October 18, 2018 and October 19, 2018 for a telephonic hearing on October 23, 2018. This submissions concerned the Parties' disputes over the ESI/Discovery Protocol, the Parties' discovery obligations, ESI disclosures, search terms, and redactions. The second submission concerned the procedure for making joint submissions.

c) The Parties submitted a joint submission to Judge Westerfield on November 5, 2018 for a telephonic hearing on November 8, 2018. This submission concerned the Parties' continued disputes over redactions and the ESI/Discovery Protocol.

d) The Parties made their fifth joint submission to Judge Westerfield on November 13, 2018 pursuant to Judge Westerfield's request for the Parties' views as to the relevant time period to govern discovery and a summary of discovery items at issue in Plaintiffs' September 21, 2018 Motion to Compel Discovery [Dkts. 206, 217, 220]. Pursuant to a request by Judge Westerfield, Plaintiffs made a supplemental submission concerning the relevant time period to govern discovery.

e) On November 26, 2018, pursuant to Judge Westerfield's request at the November 16, 2018 telephonic hearing, the Parties made their sixth joint submission to Judge Westerfield concerning discovery date ranges. Judge Westerfield held a telephonic hearing on November 27, 2018.

f) On January 22, 2019, the Parties made a joint submission to Judge Westerfield concerning the status of discovery, issues over the extent of Judge Westerfield's November 16, 2018 Order as to Plaintiffs'

September 21, 2018 Motion to Compel Discovery [Dkt. 240], issues concerning the Court's Case Management Order No. 4 [Dkt. 163], and Apple's confidentiality designations.  The Special Discovery Master held a telephonic hearing on January 24, 2019.

g)      On February 5, 2019, the Parties submitted their joint submission to Judge Westerfield for a hearing on February 7, 2019, concerning the extent of Judge Westerfield's November 16, 2018 Order, confidentiality designations, and redactions.

h)      On February 26, 2019, the Parties made a joint submission to Judge Westerfield for a hearing on February 28, 2019, updating Judge Westerfield as to issues concerning the disclosure and negotiation of custodian lists and ESI search terms, document production schedules, the extent of Judge Westerfield's November 16, 2018 Order, confidentiality designations, the Court's Case Management Order No. 4, and Plaintiffs' Rule 30(b)(6) deposition notice to Apple.

i)      On March 13, 2019, the Parties made a joint submission to Judge Westerfield for a hearing on March 14, 2019.  This submission concerned the disclosure of and negotiation of custodian lists and ESI search terms, scheduling for the rolling production of documents and supplemental responses to interrogatories, the extent of Judge Westerfield's November 16, 2018 Order, confidentiality designations, briefing schedules for various discovery disputes, and the overall joint submission process.

j)      On March 18, 2019, Plaintiffs sought an emergency hearing with Judge Westerfield concerning Apple's document preservation and the list of custodians sent document retention notices.  At the request of Judge Westerfield, Apple responded to Plaintiffs' request on March 19, 2019 with information concerning the list of custodians sent document retention notices.  Judge Westerfield held a telephonic hearing on March 19, 2019.

k)    On April 9, 2019, the Parties submitted a joint submission to Judge Westerfield concerning custodian lists and ESI search terms, Apple's rolling production of documents and supplemental responses to interrogatories, Plaintiffs' document production and supplemental interrogatory responses, the extent of Judge Westerfield's November 16, 2018 Order, issues concerning Plaintiffs' depositions of Apple and deposition limits, confidentiality designations, end dates governing interrogatories and document production requests, and Apple's physical inspection protocol. The Special Discovery Master held a telephonic hearing on April 11, 2019.

l)    On April 25, 2019, the Parties made another joint submission to Judge Westerfield. This submission concerned Apple's and Plaintiffs' rolling discovery productions, ESI search terms, the scope and definition of "custodian," the costs of discovery, confidentiality designations, Plaintiffs' response to Apple's discovery requests and physical inspection protocol, deposition dates and procedures, and redactions. The Parties also made separate supplemental submissions concerning these issues. The Special Discovery Master held an in-person hearing on April 29, 2019.

m)    On May 22, 2019, the Parties submitted a joint submission to Judge Westerfield, updating Judge Westerfield on issues concerning ESI search terms, ESI custodians, confidentiality designations, the physical inspection protocol, deposition dates and procedures, relevancy redactions, and end dates governing interrogatories and requests for document production. The Special Discovery Master held a telephonic hearing on May 23, 2019.

n)    On June 4, 2019, the Parties made a joint submission to Judge Westerfield concerning ESI search terms, ESI custodians and non-custodians, confidentiality designations, the physical inspection protocol, deposition dates and procedures, redactions, document production, and end dates to govern interrogatories and requests for document production. At this

hearing, Judge Westerfield ordered the Parties to brief the issue of the physical inspection of Plaintiffs' devices.   Judge Westerfield held a telephonic hearing on June 6, 2019.

o)   On June 18, 2019, Plaintiffs submitted a letter to Judge Westerfield concerning the relevant time period for discovery of certain sets of documents.  On June 20, 2019, the Parties submitted to Judge Westerfield an email concerning agreed upon and disputed ESI Search Terms.   Judge Westerfield held a telephonic hearing on June 20, 2019.

p)   On June 27, 2019, the Parties submitted to Judge Westerfield a joint submission concerning ESI search terms, ESI custodians and non-custodian sources, confidentiality designations, physical device inspection protocol, audio files, Apple's objections and responses to Plaintiffs' requests for production, deposition dates and procedures, redactions, rolling production of documents, and end dates concerning requests for production and interrogatories.   The Parties also made separate submissions.   Judge Westerfield held a telephonic hearing on June 28, 2019.

q)   On July 2, 2019, the Parties emailed Judge Westerfield concerning ESI Search Terms and updated "hit count" information.  Judge Westerfield held a telephonic hearing on July 3, 2019.

r)   On July 12, 2019, the Parties jointed provided a three-part submission to Judge Westerfield concerning the status of the ESI Search Term impasse. The Special Discovery Master held a telephonic hearing on July 15, 2019.

s)   On July 30, 2019, the Parties submitted a joint report to Judge Westerfield for a telephonic hearing on July 31, 2019.  The submission concerned ESI search terms, ESI custodians, Plaintiffs' motion to compel compliance with the protective order concerning confidentiality designations, the device inspection protocol, Apple's objections and responses to Plaintiffs' requests for production, deposition dates and procedures, further depositions

including Apple's "apex" witnesses, locations of Plaintiffs' depositions, and Apple's privilege logs.

t)   On August 5, 2019, in addition to separately submitting briefing on the issue of "apex" depositions to Judge Westerfield, the Parties jointly submitted a draft device inspection protocol for discussion and review.

u)   On August 7, 2019, the Parties submitted a joint submission to Judge Westerfield for a telephonic hearing on August 8, 2019, concerning ESI search terms, ESI custodians, confidentiality designations, the draft device inspection protocol, deposition dates and procedures, further depositions, and the end date for discovery.

v)   On August 14, 2019, Plaintiffs submitted to Judge Westerfield a request for discussion concerning the issue of privilege challenges and procedure. Apple responded later that day. The Parties also made a joint submission concerning discovery from withdrawn/withdrawing plaintiffs, Plaintiffs' motion to compel depositions of "apex" witnesses, next wave of Apple employee depositions, and privilege issues. Judge Westerfield held a telephonic hearing on August 15, 2019.

w)   On August 21, 2019, the Parties made a joint submission to Judge Westerfield for a telephonic hearing on August 22, 2019. The submission concerned the September 11, 2019 in-person discovery hearing and written prehearing submissions, deposition dates, number, and locations, ESI custodians, ESI search terms, and alleged deficiencies in Plaintiffs' productions. On the same day, the Parties separately submitted briefing on whether absent class members could be deposed by Apple.

x)   On September 5, 2019, the Parties submitted a joint submission to Judge Westerfield concerning the September 11, 2019 in-person discovery hearing. The submission concerned the agenda for the hearing, including Plaintiffs' motion to compel, Plaintiffs' motion to compel compliance with the ESI

Protocol (concerning the search terms), Apple's audio recordings with its customers, privilege challenges, additional ESI custodians, production deficiencies, and deposition scheduling and questions.

y)      On September 24, 2019, the Parties made a joint submission to Judge Westerfield for telephonic hearing on September 26, 2019, concerning Named Plaintiff deposition dates and locations, alleged deficiencies in Plaintiffs' productions, the inspection of Apple accessories, procedures for challenging privilege designations, Rule 30(b)(6) deposition of Apple, a subpoena to a former Apple employee, ESI custodians, ESI search terms, reproduction of certain discovery, and the production of documents from one of Apple's databases.

z)      On September 25, 2019, the Parties made a supplemental joint submission to Judge Westerfield concerning procedures for challenging privilege designations and Rule 30(b)(6) deposition of Apple.

22.     In 2019 alone, Judge Westerfield held more than 20 telephonic conferences and several all-day, in-person hearings to resolve discovery disputes. In total, Judge Westerfield issued ten Discovery Master Orders concerning the various issues indicated above [Dkts. 229-232, 240, 246, 310, 323, 354, 389].

23.     In addition, throughout the litigation, the Parties briefed several discovery-related motions before Judge Westerfield and this Court. Named Plaintiffs filed and/or submitted the following motions for resolution:

a)      On June 8, 2018, Plaintiffs filed their Motion to Compel Expedited Production of Documents, including the production of documents Apple exchanged with regulators or private litigators in related matters [Dkt. 116]. On September 21, 2018, Plaintiffs filed a Revised and Updated Motion to Compel Defendant to produce documents already produced in other litigation to relevant regulators, including to compel Defendant to answer two interrogatories asking Apple to identify any related litigation or

government investigations [Dkt. 206]. On September 28, 2018, Defendant filed its opposition, and on October 3, 2018, Plaintiffs filed their reply [Dkt. 220]. After a telephonic hearing on November 8, 2018, Judge Westerfield resolved the issue in a decision dated November 16, 2018 [Dkt. 240].

b)    On April 25, 2019, Plaintiffs filed a Motion to Compel Compliance with Protective Order, where Apple designated more than 98% of the documents it produced confidential, which created procedural difficulties for the Named Plaintiffs to use the discovery effectively in the case [Dkt. 319]. The Court referred the matter to the Special Discovery Master [Dkt. 321]. The Parties eventually resolved the issue and were conferring on language to memorialize the Parties' agreement.

c)    Motion for Protective Order to Prevent Invasive and Unnecessary Discovery Practices (Complete Forensic Imaging and access to All Content on Plaintiffs' iPhones)—Apple sought to take complete forensic images of Named Plaintiffs' iPhones. Class Counsel objected as such discovery would invade Named Plaintiffs' privacy and the complete forensic images was unnecessary and would not provide relevant information about the claims in the case. Class Counsel filed a motion for protective order with the Discovery Master June 6, 2019. Briefing was completed on an expedited basis (Apple responded on June 14, 2019 and Plaintiffs submitted their reply on June 18, 2019) and heard by Judge Westerfield on June 20, 2019. On July 3, 2019, the Special Discovery Master authorized the forensic imaging of the phones in Special Discovery Master Order No. 9, which Plaintiffs objected to and later filed a motion with this Court to modify the Order No. 9 [Dkt 359]. Despite Class Counsel's efforts to protect Plaintiffs' privacy, the Court denied the motion, and Apple was permitted to forensically image Plaintiffs' iPhones. *See* 2019 WL 3973752 (N.D. Cal. Aug. 22, 2019).

d)      Motion to Compel Compliance with ESI Protocol (ESI Search Terms)—the Parties could not reach an agreement on the number or language of the search.  While the Parties made separate submission to Judge Westerfield on this issue on June 18, 2019 and again on July 12, 2019, the Parties still could not reach an agreement after multiple hearings on the issue.  Accordingly, and Class Counsel filed a motion to compel discovery with the Special Discovery Master on August 2, 2019.  Apple submitted its opposition on August 23, 2019, and Plaintiffs submitted their reply on September 5, 2019.  This motion was pending at the time of settlement.

e)      Motion to Compel Depositions of Five Witnesses or in the Alternative to Depose Additional Witnesses First—the Parties could not reach an agreement concerning the depositions of five of Apple's senior management personnel, including Apple CEO Tim Cook.  While the Parties, on August 5, 2019, separately submitted briefing on the issue of "apex" depositions to Judge Westerfield, the Parties still could not reach agreement after telephonic hearings with the Special Discovery Master.  Accordingly, Class Counsel moved to compel on August 19, 2019.  Apple submitted its opposition on September 3, 2019, and, on September 9, 2019, Plaintiffs submitted their reply.  This motion was pending at the time of settlement.

24.      The parties also extensively briefed motions concerning the procedure to file the SAC, which made allegations relating to certain of Apple's highly confidential documents, and other documents and motions, under seal.  *See* Dkts. 243, 247, 249, 250, 251, 255, 256, 257, 258, 262, 269, 271, 273, 279, 283, 289, etc.

C.      **Plaintiffs' Document Review Efforts**

25.      Class Counsel served more than 170 document requests on Apple, and after much contention, Apple ultimately produced more than seven (7) million pages of documents.  This is an enormous amount of document discovery, and required indexing, logging, and processing and

uploading to Class Counsel's document review platform and required extensive communications with IT professionals.

26.     In order to depose Apple's witnesses, Class Counsel had to organize teams of reviewers responsible for preparing counsel for upcoming depositions.  The tasks included identifying custodial files, creating "proof charts" and other work product aimed at summarizing the deposition target's best documents.

27.     Plaintiffs also reviewed Apple's privilege logs at length, which included the review of more than 21,000 entries.  Entries on the privilege logs, along with documents produced in the case, aided in Plaintiffs' requests for depositions beyond the initial ten depositions, including Plaintiffs' request to depose five apex witnesses, including Apple CEO Tim Cook.

### D.     Class Counsel's Document Collection and Production

28.     Apple served written discovery and document requests to each of the over 100 Named Plaintiffs in the 2CAC, who collectively produced more than 6,000 pages of documents.

29.     Responding to written discovery requests and collecting documents from more than 100 Named Plaintiffs was a significant amount of work.  Class Counsel spent time and resources with their clients researching and responding to Defendant's interrogatories.  Class counsel also worked with Named Plaintiffs to collect their documents, either by instructing Named Plaintiffs on how to conduct their own diligent search or by assisting in the collection of Named Plaintiffs' documents by technicians who used remote access to perform the searches for Named Plaintiffs.

30.     Class counsel then reviewed the information collected by the Named Plaintiffs and Class Counsel made productions on December 31, 2018, January 17, 2019, April 3, 2019, April 25, 2019, May 8, 2019, May 22, 2019, June 3, 2019, June 18, 2019, June 20, 2019, June 24,  2019, July 19, 2019, September 3, 2019, September 5, 2019, September 6, 2019, September 9, 2019, September 12, 2019, September 16, 2019, September 23, 2019, September 25, 2019, and September 27, 2019.  In total, providing written responses and responding to Apple's document requests was a major undertaking.

31.     Class Counsel also went to great lengths to protect the Named Plaintiffs' privacy in this case.  In particular, one highly contested issue involved Apple's request to forensically image

each Named Plaintiffs' iPhone.  Class Counsel objected as the forensic image would result in a serious invasion of each Named Plaintiffs' privacy.  Class Counsel also objected as experts had advised the parties that a forensic image was unlikely to provide any relevant information.  In an effort to compromise, Named Plaintiffs offered to produce all relevant diagnostic data, instead of *all* data, which included personal photos, internet history, apps, and anything else the Named Plaintiffs maintained on their iPhones.  The Parties were unable to resolve the dispute and the issue was submitted to the Special Discovery Master for resolution.  On June 6, 2019, Plaintiffs moved for a protective order, which Apple opposed in a submission dated June 14, 2019.  On June 18, 2019, Plaintiffs submitted their reply in further support of a protective order.  The Special Discovery Master, after briefing and argument, on July 3, 2019, ordered that the full forensic imaging could proceed [Dkt. 354].  Class Counsel filed a motion with the Court to modify that order on privacy grounds; however, that motion was denied.  *See* 2019 WL 3973752 (N.D. Cal. Aug. 22, 2019).  On August 12, 2019, after further submissions by the Parties concerning a procedure to image Named Plaintiffs' devices, Judge Westerfield signed a Phone Inspection Protocol.  On August 21, 2019, ten Named Plaintiffs provided their iPhones to a third party for forensic imaging.

### E. <u>Depositions</u>

32.    Class Counsel spent significant time preparing and taking depositions of Defendant's employees.  Class Counsel took depositions of 10 Apple witnesses (the presumptive limit under Rule 30(a)), including software and hardware engineers who had detailed knowledge of the relevant issues.   The deponents included Anand Ramadurai, Apple's "Director of Engineering" and Sean Gordoni, Apple's "Technical Lead." Other witnesses included Kaiann Drance, Apple's "Senior Director in Worldwide Product Marketing," and Trudy Muller "Senior Director of Communications."

33.    Following the completion of the first 10 depositions, Plaintiffs noticed the deposition of 10 additional Apple witnesses. Five of those witnesses were so called "apex witnesses" including Apple CEO Tim Cook and Apple COO Jeff Williams. Apple strongly objected to the 10 depositions, and in particular the apex witness depositions, with Apple ultimately refusing to produce any of the witnesses identified in the second set of 10 witnesses.  As a result, Class Counsel

filed a motion to compel the depositions with Judge Westerfield. The parties fully briefed a motion to compel, however, the case settled before the motion was heard.

34. Class Counsel also prepared for and defended depositions of nine of the Named Plaintiffs. These depositions included extensive negotiations about the depositions' place and manner, including discussion with Judge Westerfield. Ultimately, eight of the Named Plaintiffs were required to travel to Northern California from all over the United States, which increased the amount of time and effort needed to coordinate the depositions.

35. Specifically, the following Named Plaintiffs were deposed by Apple:

a) Romeo Alba, a sales and applications engineer, traveled from Lake Balboa, CA, for his deposition in Palo Alto, CA on September 9, 2019.

b) Denise Bakke, a family development specialist, traveled from Spearfish, SD, for her deposition in Palo Alto, CA on August 12, 2019.

c) Alisha Boykin, a contracts reviewer, traveled from Huntsville, AL, for her deposition in Palo Alto, CA on August 19, 2019.

d) Steven Connolly, a mechanical engineer, traveled from Post Falls, ID, for his deposition in Palo Alto, CA on August 23, 2019.

e) Alvin Davis, a GIS engineer, traveled from Hermanville, MS, for his deposition in Palo Alto, CA on September 23, 2019.

f) Loren Haller, a worker at a UPS, traveled from Wasilla, AK, for his deposition in Palo Alto, CA on September 20, 2019.

g) Cynthia Stacy, a homeworker, traveled from Ward, AR, for her deposition in Palo Alto, CA on August 22, 2019.

h) Trent Young, a worker for Federal Express, traveled from Phoenix, AZ, for his deposition in Palo Alto, CA on September 6, 2019.

i) The ninth Plaintiff, Charlene Lowery, who was caring for her six month old daughter at the time, was deposed in Charlotte, North Carolina. Ms. Lowery had to travel two hours from her home in Greer, South Carolina, to attend her deposition.

36.     These Named Plaintiffs were required to take time off from work or other duties in order to prep and attend their depositions.  The Named Plaintiffs' depositions lasted all day long. Apple questioned each Named Plaintiff in detail about their use of their iPhone and the case. Careful preparation of each Named Plaintiff for their deposition was critical, as Plaintiffs were subjected to numerous legal, technical, and hypothetical questions.  Ultimately, the deposed Named Plaintiffs provided helpful testimony and the case settled before Apple proceeded with taking further depositions.  Each of the 120 US Named Plaintiffs has indicated their support for the Settlement by personally signing the Stipulation of Settlement.

**F.     <u>Nonparty Discovery</u>**

37.     In addition, Plaintiffs investigated non-parties with discoverable information and issued nearly two dozen subpoenas for documents from business associates and purveyors of Apple's iPhones.  The subpoenas were generally issued in groups to: (1) the four major wireless service providers (AT&T, Sprint, T-Mobile, and Verizon); (2) manufacturing entities such as Foxconn, LG Chem America, Inc., Samsung SDI America, Inc., Hon Hai Precision Industry Co., Ltd., and Simplo Technology Co., Ltd.; (3) major retailers such as Best Buy, Costco, and Target; and (4) "resellers" like Gazelle who bought and sold used and refurbished iPhones.

38.     Class Counsel sought to obtain documents relating to: contracts with Apple to manufacture, buy, sell, or promote Apple devices; communications about technical specifications and studies of Apple devices (including the issues raised in the litigation); communications with Apple concerning device defects, advertising, and promotions materials concerning Apple devices; complaints by third parties, including regulators, about Apple devices; and retail, trade-in, and resale pricing data, among many other topics.

39.     After issuing the subpoenas and analyzing the responses and objections thereto, Class Counsel engaged in ongoing meet and confers with the entities to ascertain the scope of potentially responsive documents and data and obtained and reviewed subsequent productions. Class Counsel also had to negotiate threshold issues with Apple to obtain unique product identification information so that the subpoenaed entities could pull responsive records from their

databases.  Class Counsel also reviewed and objected to subpoenas Apple issued to entities to obtain information on Plaintiffs' consumer surveys' and communications with complaining consumers.

## III.  THE SETTLEMENT PROCESS

### A.  Negotiations and Mediation

40.  The Parties engaged in extensive, arms-length negotiations over the course of many months, including several all-day, in-person mediation sessions and numerous additional discussions with Hon. Layn Phillips, a former United States District Judge and highly respected mediator.

41.  At Judge Phillips' direction, the Parties submitted comprehensive mediation and supplemental statements.  The Parties further submitted responses to issues and questions raised by Judge Phillips.  After submitting their statements, counsel for all Parties attended in-person mediations before Judge Phillips on January 7, 2019, August 28, 2019, and on September 27, 2019.  The Parties gave detailed and thoughtful presentations of their respective cases.  And, Judge Phillips gave the Parties a reasonable assessment of the strengths and weaknesses of their case.

42.  After the third in-person mediation with Judge Phillips on September 27, 2019, Judge Phillips made a mediator's proposal to the Parties.  The Parties accepted the proposal, with continued involvement by the mediator throughout the process of negotiating a term sheet and long-form settlement agreement.  The Parties' settlement negotiations were protracted and hard-fought and included the determined assistance of an experienced mediator.

43.  It was only after several months of intense discussions and a meditator's proposal that the Parties were ultimately able to reach an agreement, and several more months of further negotiations and the mediator's intervention that the Parties were able to agree on the terms of the Settlement.  The Parties negotiated vigorously and continuously from the date of accepting the proposal in September 2019, until the Settlement was executed in February 2020.

44.  Judge Phillips prepared a declaration describing the negotiations, his role in the process, and recommendation approving the Settlement.  *See* Declaration of Hon. Layn Phillips in Support of Motion for Final Approval of Settlement, filed concurrently herewith.

## B. Preliminary Approval Granted

45. On February 28, 2020, Named Plaintiffs filed their motion for preliminary approval of the Settlement. [Dkt. 415]. The parties attended the preliminary approval hearing on May 15, 2020. [Dkt. 426]. On May 27, 2020, the Court granted Plaintiffs' motion for preliminary approval, provisionally certified the nationwide settlement Class, and directed notice to be issued to Class members pursuant to the Settlement and preliminary approval motion. [Dkt. 429].

## C. Benefits to Class and Plan of Distribution

46. The Settlement provides for a non-reversionary Minimum Class Settlement Amount of $310 million, with a Maximum Class Settlement Amount of $500 million, in cash, for the benefit of the proposed Settlement Class, comprised of all former or current U.S. iPhone[4] owners.[5]

47. For a release of their claims, Settlement Class Members who make a claim will receive $25.00 for each iPhone owned, the amount of which may increase or decrease depending on the amount of any Attorneys' Fees and Expenses, Named Plaintiff Service Awards, notice expenses, and the aggregate value of Approved Claims. If payment of $25.00 for each iPhone device identified as Approved Claims, plus the payment of Attorneys' Fees and Expenses, Named Plaintiff Service Awards, and notice and administration fees would not reach the Minimum Class Settlement Amount, the Residual will be allocated according to the Stipulation, none of which will return to Apple.[6] Conversely, if the number of iPhone devices identified as Approved Claims, multiplied by $25.00, exceeds the Maximum Class Settlement Amount, then the cash payment for each iPhone will be reduced on a pro rata basis in order to not exceed the Maximum Class

---

[4] "iPhone" means Apple iPhone 6, 6 Plus, 6s, 6s Plus, 7, 7 Plus, and SE devices. Stip. § 1.16.

[5] This Settlement will also encompass the California JCCP Action, captioned *In re Apple OS Cases*, JCCP No. 4976 (Cal. Super. Ct., S.F. Cty.). If the Court gives final approval of the proposed Settlement, the California JCCP Action will be dismissed. Stip. § 9.1. There will not be a class wide settlement for non-U.S. Named Plaintiffs, who will be releasing their individual claims only to the extent they signed on to the Settlement. All but one of the non-U.S. Named Plaintiffs (Corporacion Nacional de Consumidores y Usuarios de Chile) did sign on. As to Non-U.S. iPhone owners who were not Named Plaintiffs, their claims will not be released and they may pursue their own claims outside the Settlement.

[6] Based on the claims filed to date, the per-device payment is likely to be substantially higher than the negotiated $25 per device amount.

1  Settlement Amount. Only U.S. iPhone owners will be eligible to make claims.[7] And, claims will
2  be computed using the method described in the Settlement. Stip. §§ 5.1-5.3; *see also id.*, Ex. A
3  (Claim Form).

4  48. Settlement Class Members' recovery here is excellent in light of the risks. The non-
5  reversionary Minimum Class Settlement Amount of $310 million (and Maximum Class Settlement
6  Amount of $500 million) is substantial by any measure, and certainly falls within a range of possible
7  approval. Based on a damage analysis by Named Plaintiffs' consultant, had Named Plaintiffs fully
8  prevailed on every one of their remaining claims, Named Plaintiffs anticipate that damages would
9  have amounted to between $18 and $46 per iPhone. As such, a $25 per iPhone recovery is
10  considerable by any degree, amounting to about a 54% recovery per iPhone.

11  **D.    Service Awards and Attorneys' Fees**

12  49. Class Counsel seek a Service Award of $1,500 for each Named Plaintiff who was
13  not subjected to deposition and $3,500 for the nine Named Plaintiffs who were deposed in the
14  Action. Stip. § 8.4. Because the Settlement is not conditioned on the Court's approval of the full
15  (or any) amount of a Service Award, the Settlement does not grant preferential treatment to Named
16  Plaintiffs. Stip. § 8.6. Named Plaintiffs seek, at most, only $216,000 (0.0007%) of the $310 million
17  Minimum Class Settlement Amount.

18  50. Finally, Class Counsel seek 28.3% of the Minimum Class Settlement Amount, or
19  $87.73 million, as reasonable attorneys' fees for Class Counsel and JCCP Counsel, and
20  reimbursement of $995,244.93 in expenses reasonably and necessarily incurred in the prosecution
21  of the MDL and JCCP actions. The Settlement is not conditioned upon the Court's approval of the
22  full (or any) amount of Service Awards or Attorneys' Fees and Expenses.

23
24
25
26
27
28

---

[7] Except Non-U.S. Named Plaintiffs whose claims will be released in the Settlement (all but one), other non-U.S. owners may seek relief separately. *See* n.5, *supra*.

JOINT DECL. ISO MOT. FOR FINAL APPROVAL OF SETTLEMENT AND MOT. FOR AWARD OF ATTY FEES AND EXPENSES

## IV. CLASS NOTICE AND SETTLEMENT ADMINISTRATION

### A. Class Notice Program

51.     Plaintiffs' notice program included (1) direct email and/or postcard notices, (2) a case-specific website, and (3) a case-specific toll-free number to handle inquiries. *See* Declaration of Settlement Administrator ("Angeion Decl.") ¶¶ 6-25; Motion for Preliminary Approval, at 18-20. The multi-part Notice Program was designed to provide the "best notice that is practicable under the circumstances." *See* Fed. R. Civ. P. 23(c)(2)(B); *see also* Angeion Decl. ¶¶ 13-16. The notice program proposed by Plaintiffs in their motion for preliminary approval of the Settlement (Dkt. 415-416) and approved by the Court in the preliminary approval order (Dkt. No. 429) has been implemented by Angeion Group, the claims administrator.

52.     The direct notice procedure and the information posted on a Settlement Website meet the requirements under Rules 23(c)(2)(B) and 23(e)(1). Specifically, Apple provided the Settlement Administrator with the email address of record on the Apple ID account of the members of the Settlement Class, as well as names, mailing addresses, and relevant iPhone serial numbers. Angeion Decl. ¶ 4. Emails of the Summary Notice were sent by the Settlement Administrator to those whose email addresses are valid; otherwise, the Settlement Administrator mailed a copy of the Summary Notice to that Settlement Class Member. Angeion Decl. ¶ 8. A copy of the Class Notice, together with the Claim Form and various Court orders and other filings, were posted and available for download on the Settlement Website. *Id.* As the Court found in its Order Granting Preliminary Approval, Plaintiffs' notice plan was the best practicable notice [Dkt. No. 429].

53.     The Notice Program was extremely successful, with direct notice provided to 99% of Class members. As of August 24, 2020, the Settlement Administrator completed the distribution of 90,119,272 emails and 5,617,563 postcard notices to the members of the Settlement Class, in compliance with the Preliminary Approval Order. [Dkt. 429]. An additional 2.1 million postcards were mailed shortly after August 12, 2020. Angeion Decl. ¶¶ 9-11. Additionally, as of August 24 2020, there have been 10,454,787 page views of the case website and 6,273,769 sessions (which represents the number of individual sessions initiated by all users on the website), further indicia that the notice program was successful. *Id.* ¶ 24. Moreover, there has been broad media coverage

of the settlement, with information on how to submit a claim, adding to the overall likelihood that Class Members were provided notice.[8]

## B. The Notice

54. The notices included all the information required under Rule 23(c)(2)(B): (1) the nature, history, and status of the litigation; (2) the definition of the Settlement Class and who is excluded from the Settlement Class; (3) the reasons the Parties propose the Settlement; (4) the Minimum and Maximum Class Settlement Amounts; (5) the estimated reimbursement per individual; (6) the Settlement Class's claims and issues; (7) the Parties' disagreement over damages and liability; (8) the amount of Service Awards for Named Plaintiffs; (9) the plan for allocating the Settlement proceeds to the Settlement Class; and (10) the date, time, and place of the Final Hearing. *See* Angeion Decl., Exhibits A-B.

55. The Class Notice satisfies the requirements of Rule 23(h)(1), as it notifies Settlement Class Members that Class Counsel will apply to the Court for attorneys' fees and costs as a percentage of the Minimum Class Settlement Amount and its impact on Settlement Class Members, if any. *See Id.* The proposed Class Notice complies with Rule 23(e)(5) in that it discusses the rights Settlement Class Members have concerning the Settlement. The proposed Class Notice includes information on a Settlement Class Member's right to: (1) request exclusion and the manner for submitting such a request; (2) object to the Settlement, or any aspect thereof, and the manner for filing and serving an objection; and (3) participate in the Settlement and instructions on how to complete and submit a Claim Form to the Settlement Administrator. *Id.* The Notice also provides contact information for Class Counsel, as well as the postal address for the Court. *Id.* The notice further conveys all information necessary for class members to make informed decisions relating to the Settlement, and all information called for under the Northern District guidelines. *Id.*

---

[8] *See e.g.*, Iyvenger, Rishi, "*Apple customers can now submit claims as part of settlement over slowing down iPhones,*" https://www.cnn.com/2020/07/14/tech/apple-slow-iphone-settlement-payouts/index.html.

**C.** **Responses of the Class to Date**

2        56.    As of the date of this filing, 1,398,731 valid claims have been submitted.[9] *Id.* ¶ 26.

3        57.    While the notice program reached approximately 95 million consumers, only 78

4  requests for exclusion have been received as of August 24, 2020, and only 22 objections.

5  Additionally, the majority of the letters submitted to the Court are not objections to the Settlement,

6  but rather objections to the claim process or individual issues submitting a valid claim.  Those

7  objections do not criticize the amount of consideration provided in the Settlement, and do not weigh

8  against final approval or detract from the overall success of the notice and claim process, which

9  strongly supports granting final approval.[10]

10        58.    Finally, the number of claims submitted to date supports the adequacy of the Court-

11  approved notice program and also illustrates Class members' approval of the settlement.  As of

12  August 24, 2020, 1,398,731 claims have been submitted.  Angeion Decl. ¶ 26.  Class Counsel

13  expects that more claims will be filed before the October 6, 2020 deadline.  Thus, to date, the Class's

14  reaction to the Settlement has been overwhelmingly favorable and weighs in favor of final approval.

15        59.    Class Counsel have also received numerous telephone calls, emails and letters from

16  Named Plaintiffs and other members of the Class expressing their favorable views of the Settlement

17  and the claims process.  Examples of the letters and emails are attached hereto as **Exhibit 1.**

18  **V.    ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE AWARDS**

19        **A.**    **Attorneys' Fees Incurred by Class Counsel and other Plaintiffs' Counsel**

20        60.    Class Counsel's efforts in this case over the course of nearly three years, including

21  over 60,000 hours of work in the face of vigorous opposition from Apple, have resulted in a

22  Minimum Class Settlement Amount of $310 million – and a Maximum Class Settlement Amount

23  of $500 million – for Settlement Class Members.

24

25  _____

26  [9] Class Response information is provided pursuant to the Court's Procedural Guidance for Class
Actions, available at https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-
settlements/.

27  [10] If a claim was not accepted by the Settlement website, the cause may have been that the particular
28  device was not a part of the class.

61.     Class Counsel worked on a contingency basis and assumed the risk of challenging Apple, a well-resourced defendant that would have continued to vigorously defend its business practices had the litigation gone forward. Apple contested its liability from the very beginning, asserting that Settlement Class Members had failed to adequately allege any viable claims, filing multiple motions to dismiss, and seeking reconsideration of the Court's orders. Indeed, it was only through Class Counsels' ingenuity and diligence that Named Plaintiffs' claims for trespass to chattels and claims under the CDAFA and CFAA survived Defendant's motions to dismiss. This was all the more remarkable given that the Court, in this consumer protection class action, dismissed all of Named Plaintiffs' traditional consumer protection claims.

62.     Class Counsel have significant expertise in consumer class actions. The quality of their representation is reflected in the work they performed throughout the case and, ultimately, in the favorable settlement for the Settlement Class. Over the course of two years, Class Counsel advanced the litigation in the face of multiple motions to dismiss, discovery issues, and other roadblocks.

63.     Class Counsel performed a significant amount of work in this Action, including research and preparing the complaints, defending against multiple motions to dismiss and other motions, engaging and working with consultants, engaging in extensive formal, hard-fought discovery, taking and defending multiple depositions, and participating in several mediations and settlement negotiations. Moreover, Class Counsel, with the Chair of the Plaintiffs' Executive Committee ("PEC"), closely monitored the work and assignments of members of the PEC and any work assigned to members of the Plaintiffs' Steering Committee ("PSC") in order to ensure fairness and order, as well as to minimize any work duplication. And, Class Counsel worked cooperatively with JCCP Counsel in their respective case against Apple.

64.     Class Counsel and JCCP Counsel together request an award of **$87.73** million in attorneys' fees, which represents **28.3%** of the **$310 million** Minimum Settlement Amount that Apple is required to pay in the Settlement.

65.     The reasonableness of the proposed fee award, based on a percentage of the settlement funds obtained for the Class, is supported by a cross-check against the total lodestar of

Class Counsel and JCCP Counsel. Excluding time spent prior to appointment, Class Counsel and JCCP Counsel collectively spent **68,731** hours on this matter through July 31, 2020, with a collective lodestar of **$36,408,575**. *See* Declaration of Mark J. Dearman in Support of Motion for Final Approval and Motion for Attorneys' Fees ("Dearman Decl."), filed herewith, ¶¶ 10-11; Joint Declaration of Andrew J. Brown and Thomas J. Brandi in Support of Motion for Approval and Motion for Attorneys' Fees ("JCCP Decl."), attached hereto as **<u>Exhibit 2</u>**, ¶¶ 37, 42-43. Thus, the requested fee award of $87.73 million represents a multiplier of **2.41** of Class Counsel's and JCCP Counsel's post-appointment lodestar. Including Class Counsel' pre-appointment time, Class Counsel's and JCCP Counsel's collective lodestar is **$40,102,716**. See Dearman Decl. ¶¶ 10, 12. Thus, the requested fee award of $87.73 million represents a multiplier of **2.19** of the Class Counsel's and JCCP Counsel's lodestar, including Class Counsel's pre-appointment and post-appointment time.

66.     As confirmed in the respective declarations from each of the firms involved in this Action, the hourly rates used to determine lodestar represent Class Counsel's customary professional rates. Dearman Decl., Exhs. 3-39. In the MDL Action, the number of hours included by Class Counsel were subjected to audit and extensive review by the Court-appointed Chair of the Plaintiffs' Executive Committee. *Id.* ¶¶ 6-8. In the JCCP Action, the number of hours included by JCCP Counsel were subjected to review by the Court-appointed JCCP Co-Lead Counsel. JCCP Decl. ¶¶ 44-45.

## B.     Unreimbursed Costs and Litigation Expenses

67.     Class Counsel have incurred **$891,949.02** and JCCP Counsel have incurred **$103,295.91** in unreimbursed litigation expenses to date, or a total of **$995,244.93** in expenses. Dearman Decl. ¶ 11, Exhs. 41-42; JCCP Decl. ¶ 46, Exh. C. These include costs advanced in connection with mediations, the discovery special master, consultants, legal research, court reporting services, travel for depositions, copying and mailing, and other customary litigation expenses. *Id.* As confirmed in the respective firm declarations, these expenses are based on the books and records of the firms and represent an accurate recordation of costs and expenses incurred

in connection with this Action and the related JCCP action.  Dearman Decl., Exhs. 3-39; JCCP Decl. ¶ 47.

## C.    Service Awards to Settlement Class Representatives

68.    Named Plaintiffs request Service Awards of **$3,500** for each of the nine Named Plaintiffs who were deposed in this Action, and **$1,500** to each of the remaining Named Plaintiffs.

69.    Named Plaintiffs spent more two years prosecuting this Action, and have spent many hours reviewing pleadings, communicating regularly with Class Counsel, responding to hundreds of discovery requests, and reviewing and producing documents.

70.    As discussed above, Apple required that Named Plaintiffs be deposed in Palo Alto, California, requiring at least eight of them to travel to California from their homes and places of employment throughout the United States.  Those plaintiffs include Romeo Alba from Lake Balboa, CA, Denise Bakke from Spearfish, SD, Alisha Boykin from Huntsville, AL, Steven Connolly from Post Falls, ID, Alvin Davis from Hermanville, MS, Loren Haller from Wasilla, AK, Cynthia Stacy from Ward, AR, and Trent Young from Phoenix, AZ.  The ninth Plaintiff, Charlene Lowery, was deposed in Charlotte, North Carolina, which was two hours from her home in Greer, South Carolina, and only because she had a newborn child.  These Named Plaintiffs were required to take time off from work or other duties in order to prep and attend their depositions.

71.    All of the Named Plaintiffs, and particularly the nine who were deposed, were instrumental in the success of this case, and the service awards requested are warranted, given the considerable Settlement they each helped achieve for the benefit of Settlement Class Members.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 26th day of August 2020 in Oakland, and Burlingame, California.

| _/s/ Laurence D. King_ | _/s/ Joseph W. Cotchett_ |
|---|---|
| Laurence D. King | Joseph W. Cotchett |

## ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)

I, Laurence D. King, attest that concurrence in the filing of this document has been obtained from the other signatory. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 26th day of August 2020, at Pleasanton, California.


_/s/ Laurence D. King_
Laurence D. King