BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK (SBN 177786)
STEPHEN M. DUVERNAY (SBN 250957)
400 Capitol Mall, Suite 2530
Sacramento, CA  95814
Telephone: (916) 447-4900
Facsimile:  (916) 447-4904
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

DANIEL CAMERON
Attorney General of Kentucky
Philip R. Heleringer*
Assistant Attorney General
Office of the Kentucky Attorney General
700 Capitol Ave., Ste. 118
Frankfort, Kentucky 40601
Telephone: 502-696-5300
Facsimile: 502-564-2894
philip.heleringer@ky.gov

Attorneys for *Amicus Curiae*
Kentucky Attorney General's Office

*Pro hac vice* application to be submitted

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| IN RE: APPLE INC. DEVICE PERFORMANCE LITIGATION | Case No.: 5:18-md-02827-EJD |
| | **[PROPOSED] BRIEF *AMICI CURIAE* OF STATE ATTORNEYS GENERAL URGING REDUCTION OF ATTORNEYS' FEE REQUESTED BY CLASS COUNSEL** |
| | Judge: Hon. Edward J. Davila<br>Courtroom: 4, Fifth Floor<br>Date: December 4, 2020<br>Time: 10:00 a.m. |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................... 2

INTEREST OF AMICI CURIAE .......................................................................................... 5

INTRODUCTION.................................................................................................................. 6

ARGUMENT ........................................................................................................................ 7

I.   The Court should use the lodestar method to calculate a reasonable fee
     for class counsel. ...................................................................................................... 8

     A.  The lodestar method reasonably compensates class counsel for their efforts. .............. 8

     B.  The percentage-of-the fund approach would result in an unreasonable windfall
         to class counsel. ...................................................................................................... 9

         i.   The percentage method in general is inappropriate for this case. .................... 9

         ii.  The specific percentage requested is unreasonable. ....................................... 12

II.  The Court should not apply a multiplier to the lodestar........................................................ 15

     A.  There are no "rare and exceptional" circumstances to justify an upward
         adjustment to the base lodestar amount. ................................................................. 15

III. The lodestar should be reduced to correct errors in its calculation. ..................................... 18

     A.  State Attorneys General agree with Apple and other objectors that the
         lodestar must be accurate and supported by sufficient evidence. .............................. 18

CONCLUSION ................................................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Allen v. Bedolla*,

   787 F.3d 1218 (9th Cir. 2015) ........................................................................ 7, 17

*Amchem Prod., Inc. v. Windsor*,

   521 U.S. 591 (1997) ............................................................................................ 10

*Boeing Co. v. Van Gemert*,

   444 U.S. 472 (1980) ............................................................................................ 13

*Chambers v. Whirlpool Corp.*,

   ___ F. 3d ___, 2020 WL 6578223 (9th Cir. Nov. 10, 2020) ........................... passim

*Cunningham v. Cty. of Los Angeles*,

   879 F.2d 481 (9th Cir. 1988) ................................................................................ 8

*Gutierrez v. Wells Fargo Bank, N.A.*,

   No. C 07-05923 WHA, 2015 WL 2438274 (N.D. Cal. May 21, 2015) ................. 18

*In re Anthem, Inc. Data Breach Litig.*,

   No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ............. 10, 19

*In re Bluetooth Headset Prod. Liab. Litig.*,

   654 F.3d 935 (9th Cir. 2011) .............................................................. 7, 10, 13, 15

*In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*,

   109 F.3d 602 (9th Cir. 1997) ................................................................................ 9

*In re Google LLC St. View Elec. Commc'ns Litig.*,

   No. 10-MD-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ............. 13

*In re High-Tech Employee Antitrust Litig.*,

   No. 11-CV-02509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ............... 18

*In re HP Inkjet Printer Litig.*,

   716 F.3d 1173 (9th Cir. 2013) ............................................................................ 12

*In re Mercury Interactive Corp. Sec. Litig.*,

   618 F.3d 988 (9th Cir. 2010) ........................................................................ 7, 14

*In re Online DVD Rental*,

   779 F.3d 934 (9th Cir. 2015) ............................................................................ 14

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,

   895 F.3d 597 (9th Cir. 2018) .............................................................................. 7

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,

   19 F.3d 1291 (9th Cir. 1994) ................................................................ 7, 8, 9, 18

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,

   No. 16-2752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ....................... 18

*Knisley v. Network Assocs., Inc.*,

   312 F.3d 1123 (9th Cir. 2002) ............................................................................. 7

*Morales v. City of San Rafael*,

   96 F.3d 359 (9th Cir. 1996) ................................................................................. 8

*Parsons v. Ryan*,

   949 F.3d 443 (9th Cir. 2020) ............................................................................. 16

*Perdue v. Kenny A. ex rel. Winn*,

   559 U.S. 542 (2010) .......................................................................... 8, 9, 14, 16, 17

*Powers v. Eichen*,

   229 F.3d 1249 (9th Cir. 2000) ........................................................................ 8, 13

*Six (6) Mexican Workers v. Arizona Citrus Growers*,

   904 F.2d 1301 (9th Cir. 1990) ........................................................................... 15

*Skelton v. Gen. Motors Corp.*,

   860 F.2d 250 (7th Cir. 1988) ............................................................................... 7

*Staton v. Boeing Co.*,

   327 F.3d 938 (9th Cir. 2003) ............................................................... 7, 8, 12, 13

*Van Gerwen v. Guarantee Mut. Life Co.*,

   214 F.3d 1041 (9th Cir. 2000) ........................................................................... 16

*Vizcaino v. Microsoft Corp.*,

   290 F.3d 1043 (9th Cir. 2002) ............................................................ 7, 10, 13, 14

*Williams v. MGM-Pathe Commc'ns Co.*,

    129 F.3d 1026 (9th Cir. 1997) ............................................................................. 13

*Wininger v. SI Mgmt. L.P.*,

    301 F.3d 1115 (9th Cir. 2002) ............................................................................. 15

**STATUTES**

28 U.S.C. 1750 ............................................................................................................ 5


**RULES**

Fed.R.Civ.P. 23(e) ........................................................................................................ 7


**OTHER AUTHORITIES**

S. REP. 109-14, 2005 U.S.C.C.A.N. 3 .......................................................................... 5

## INTEREST OF AMICI CURIAE[1]

The undersigned Attorneys General are their respective states' chief legal officers. Their interest in this case stems from two responsibilities: (1) the duty to protect their states' consumers; and (2) the responsibility to protect class members under the Class Action Fairness Act, which gives a role for state Attorneys General to play in the class action settlement approval process. *See* 28 U.S.C. § 1715; *see also* S. REP. 109-14, 2005 U.S.C.C.A.N. 3, 6.

The Attorneys General submit this brief to further these interests and to speak for consumers who will be harmed by the proposed attorneys' fee of approximately $87,730,000—a fee that is wildly excessive (at least 2.4 times what would be awarded under a base lodestar method)[2], out of step with precedent in this Circuit, and which represents a dollar-for-dollar reduction of the total settlement amount available to compensate class members for their injuries.

---

[1]    No counsel for a party authored this brief in whole or in part, and no person other than *amici curiae* and their counsel made a monetary contribution to fund the preparation or submission of this brief.

[2]    For the reasons explained in more detail in the briefs of other objectors, the plaintiffs' stated lodestar, $36,408,575.05, is inaccurate and will need to be revised downward. However, unless stated otherwise, and for the sake of argument, this brief uses the $36,408,575.05 amount.

## INTRODUCTION

This is a textbook case for the Court's exercise of its fiduciary role in managing class actions. In the interests of class members, the Court should reject class counsel's request for $87.73 million in fees under a percentage-of-the-fund approach. This is hardly the "rare or exceptional" case that justifies departure from the tried-and-true lodestar approach. To the contrary, this is a compelling case for applying the lodestar, with no multiplier. Doing so will reduce the fee by at least $51 million—every dollar of which will go directly to compensate class members for their injuries—while still compensating counsel fairly.

Applying the percentage-of-the-fund approach is inappropriate and would result in an unreasonable windfall. Due to the structure of the settlement agreement, the $310 million mandatory minimum Apple has agreed to pay is not the "true benefit" to the class. Therefore, basing the award on a percentage of that minimum, as class counsel urges (28.3% to be exact), would be arbitrary. Further, there is no basis, especially under the Ninth Circuit's recent decision in *Chambers v. Whirlpool Corp.*, to apply a multiplier or upward adjustment to an already excessive fee request. The base amount calculated under the lodestar is sufficient. ___ F. 3d ___, 2020 WL 6578223 (9th Cir. Nov. 10, 2020).

In short, the lodestar method will provide counsel with a reasonable fee—no more and no less than what they are entitled to receive—while protecting the interest of class members, many of whom are citizens of the states represented by amici.

## ARGUMENT

Settlements in class actions pose unique risks. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 610 (9th Cir. 2018) (remarking on "the uncommon risks posed by class action settlements"). One such risk is that counsel representing a class will be unjustly enriched at the expense of the class members for whom the lawsuit was brought. *See Staton v. Boeing Co.*, 327 F.3d 938, 972 (9th Cir. 2003) (noting the "inherent tensions among class representation, defendant's interests in minimizing the cost of the total settlement package, and class counsel's interest in fees"); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994) (noting that "the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage").

These risks are mitigated, in part, through judicial oversight of class action settlements. *See Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1125 (9th Cir. 2002) (citing Fed.R.Civ.P. 23(e)). Exercising this oversight, however, is not a "casual" task; a "serious review" is "demand[ed]." *In re Volkswagen*, 895 F.3d at 610. So serious is the review that courts must act as fiduciaries for absent class members and "protect" their interests. *See id.* ("An entire jurisprudence has grown up around the need to protect class members…we impose upon district courts 'a fiduciary duty to look after the interests of…absent class members.'") (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)).

Serving as a fiduciary means "carefully monitor[ing] disbursement to the attorneys," "scrutinizing the fee applications," and generally "act[ing] with a jealous regard to the rights of those who are interested in the fund." *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 253 (7th Cir. 1988); *see also In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010). Ultimately, the court's objective is to arrive at an attorneys' fee award that is "reasonable." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) ("[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable…").

What is "reasonable" depends on the specific circumstances of each case. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). And while reasonableness will always be the touchstone of the court's analysis, that does not mean that the two main ways in which courts

calculate attorneys' fees in class actions—the lodestar method or the percentage-of-the-fund method—will always apply with equal force. *See Staton*, 327 F.3d at 964 ("Importantly, the test of reasonableness applies regardless of whether fees are paid from a common fund or otherwise."); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (noting that although a court has discretion in choosing what method to use, it can still abuse that discretion if the method results in an unreasonable award). In fact, in certain cases, the lodestar method will be superior to the percentage-of-the-fund approach. *See, e.g.*, *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1298 (upholding decision to use the lodestar over the percentage approach). This is one of those cases, in large part, because the incentives of class counsel and class members are not aligned as they should be when a percentage approach is applied—every dollar used to pay for the fee for class counsel is one less dollar available to pay class members.

I.     **The Court should use the lodestar method to calculate a reasonable fee for class counsel.**

A.     **The lodestar method reasonably compensates class counsel for their efforts.**

The Court should employ the lodestar method for at least two reasons. First, this case is simply not a "rare or exceptional" one that warrants departing from the lodestar method. Second, even if the Court were inclined to believe otherwise, a cross-check of the lodestar amount against the fee calculated under the percentage method shows that the lodestar method is eminently appropriate.

The lodestar method has long been a tried-and-true method of calculating a reasonable attorneys' fee in class action settlements, including ones involving a common fund. *See Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997). And for good reason. Ordinarily, "a plaintiff's degree of success or the results obtained should be adequately accounted for in the lodestar." *Cunningham v. Cty. of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988). In other words, the reasonableness analysis is already baked into the calculation. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010) ("[T]he lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee."). That means "[o]nly in rare or exceptional cases will an attorney's *reasonable* expenditure of time on a case not be commensurate with the fees to which he is entitled." *Cunningham*, 879 F.2d at 488

(emphasis in original). Because of this fact, the lodestar method enjoys a "strong presumption" that it is appropriate. *Perdue*, 559 U.S. at 554.

Nothing in this case overcomes that strong presumption. Simply put, this case is not a "rare or exceptional" one that would warrant departing from the lodestar method. To the contrary, from the perspective of the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment, this class action is unremarkable. Even if the Court were inclined to look beyond the lodestar, a cross-check of it shows that it is appropriate. The purpose of cross-checking the lodestar amount is to see if "the lodestar amount overcompensates the attorneys according to the 25% benchmark standard . . . ." *In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997). Comparing the two figures in this case—the lodestar ($36,408,575.05) and the percentage benchmark ($77,500,000)[3]—it is clear that the lodestar is not overcompensating the attorneys in relation to the percentage standard.

**B.** **The percentage-of-the fund approach would result in an unreasonable windfall to class counsel.**

**i.** **The percentage method is inappropriate for this case.**

On the other hand, the Court should avoid using the percentage-of-the-fund method because it would lead to an unreasonable award. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1294 n.2 ("…arbitrary, and thus unreasonable, fee awards are to be avoided…"). Class counsel urge this court to use a percentage method for essentially two reasons: (1) convenience (courts are familiar with the approach and it is "easily quantifiable"), and (2) efficiency (it allegedly aligns the interest of the lawyers with the class members). (Fee Request, DN 468, p 12-14). Neither argument is convincing.

First, just because the percentage method may be easy to calculate does not mean it is appropriate to use in this case. Nor does it relieve this court from its fiduciary duty (owed to class

---

[3]     As explained *infra*, the Minimum Class Settlement Amount should not be viewed as the "true benefit" to the class, nevertheless, for purposes of this cross-check (and to stay consistent with class counsel's theory of reasonableness), the percentage value is calculated as taking 25% of the Minimum Class Settlement Amount ($310 million).

members) to undertake a thorough review of all the relevant circumstances in calculating a reasonable fee. *See Vizcaino*, 290 F.3d at 1048. To hold otherwise would be to employ an impermissible "mechanical or formulaic approach" in calculating an award. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 944 ("[W]e have said many times that it abuses that discretion when it uses a mechanical or formulaic approach that results in an unreasonable reward."). This court should refuse that invitation.

Second, contrary to what may be ordinarily true in common fund cases, here, the interests of class counsel and class members do not align. *Cf. In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *5 (N.D. Cal. Aug. 17, 2018) (electing to use the percentage method, in part, because "[b]y tying the award to the recovery of the Class, Class Counsel's interests are aligned with the Class, and Class Counsel are incentivized to achieve the best possible result"). That is so because under the settlement agreement, class counsel's right to a fee is guaranteed, while the class's right to (and, more importantly, the amount of) a pro rata increase is entirely contingent upon the claims rate. Meaning, counsel has no financial incentive to ensure the maximum amount of recovery *for the greatest number of class members*, which is the goal of every class action. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (explaining that the "policy at the very core of the class action mechanism" is the aggregation of numerous recoveries on behalf of numerous claimants). To make matters worse, if the claims rate is such that a pro rata increase is possible, then counsel's fee and class members' recovery are in direct competition with one another—every dollar used to pay for the fee for class counsel is one less dollar available to pay class members.

A brief explanation of the agreement's key terms demonstrates why this is. The agreement sets a maximum ($500 million) and a minimum ($310 million) amount that Defendant will pay as settlement. (Stipulated Settlement, DN 416, Section 1.17; 1.19). Generally speaking, if the total value of approved claims exceeds the maximum or falls short of the minimum, then each class member's settlement payment is adjusted pro rata (either downward, in the case of the settlement exceeding the maximum, or upward, in the case of the settlement falling short of the minimum). Importantly, however, the pro rata *increase* for class members will only occur if the total value of

approved claims, plus service awards, *plus attorneys' fees and expenses* does not reach the $310 million minimum. (Stipulated Settlement, DN 416, Section 5.3).

Including attorneys' fees into the minimum calculation means that if there is a difference between the total value of approved claims and the $310 million minimum (and it appears likely there will be, given the claims rate in this case), attorneys' fees are used *first* to bridge that gap. If and only if there is still a gap to reach the $310 million, then—and only then—will class members receive a pro rata increase on that remaining difference.[4] Thus, the greater the fee, the smaller the remainder there is to be used in calculating a pro rata increase for the class. And the smaller the remainder, the less money in the pockets of class members. That is, every dollar spent paying the lawyers in this case is one less dollar spent paying the class.

According to the most recent claims data, approximately 3.149 million claims (out of an approximate 90 million), or about 3.5%, have been made, with 70% of those claims being "preliminarily approved for payment." (Reply, DN 549, p. 8). Based on those numbers, class counsel estimates "that each Settlement Class Member will receive $65 or more per Approved Claim." (*Id.* at p. 16). Notably absent, however, from the Reply in Support of the Motion for Attorney Fees (DN 550), the Reply in Support of the Motion for Settlement (DN 549), and the Declaration of Settlement Administrator (DN 551), is any statement (including even a preliminary estimate) on what will be the total dollar amount of approved claims.[5] For the reasons explained in this brief, the total value of approved claims plus a residual, if any, and not the $310 million minimum, should be the basis

---

[4]     For example, and setting aside all other costs and expenses for the moment, if approved claims total $210 million, then there would be a gap of $100 million to reach the $310 million minimum. Under the settlement agreement, attorneys' fees are added first to try to close the gap. If class counsel are awarded what they are seeking – approximately $87.7 million – that still leaves a gap of approximately $12.3 million to reach the minimum. The pro rata increase would then be calculated based on that $12.3 million, as opposed to the original difference of $100 million. And if the costs of notice and administration *are* included in this example, then there would be no remainder upon which to base a pro rata increase. See Settlement, DN 416, Section 5.31, p. 12 (requiring settlement notice and administration costs of up to $12.75 million to be applied first to reach the $310 million minimum, before any amount could be used to award a pro rata increase).

[5]     *See Procedural Guidance for Class Action Settlements*, Section entitled "Attorneys' Fees" ("In a common fund case, the parties should include information about the relationship among the amount of the award, *the amount of the common fund*, and counsel's lodestar calculation.") (emphasis added) (available at: https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/) (last accessed November 22, 2020).

for evaluating what is a reasonable attorneys' fee in this case. As a result, it is imperative that class counsel inform the Court of the total dollar amount of approved claims, and if they do not, then their request should be denied outright.[6]

ii.      The specific percentage requested is unreasonable.

When measured against the "true benefit" to the class, the fee amount requested will be actually higher than 28.3% and well beyond this Circuit's 25% benchmark. In general, "[i]n order for attorneys to obtain an award of fees from a common fund, the court must be able to…*accurately trace the benefits*." *Staton*, 327 F.3d at 967 (emphasis added). In other words, "courts aim to tether the value of an attorneys' fees award to the value of the class recovery." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013). In *Staton*, for example, the Ninth Circuit reversed a percentage-of-the fund award that had been calculated based on a total fund value that included an amount for injunctive relief. 327 F.3d at 972-73 The Court determined that the "true benefit" of the injunctive relief was too speculative to determine. *Id.* As a result, the erroneous value assigned to it should not have been included in the calculation and it was an abuse of discretion to do so. *Id.*

Likewise, here, the "true benefit" of the $310 million minimum is not that it actually guarantees that class members will receive a minimum of $310 million for their injuries. Instead, the minimum guarantees that class members will receive a pro rata share of a residual, *if any*, that exists after the value of approved claims, service awards, attorneys' fees and expenses, and notice and administrative costs are totaled. In reality, the total monetary benefit to the class is the total value of the approved claims plus the residual (if any), not $310 million. Thus, to base class counsel's fee off the $310 million is to *untether* "the value of an attorneys' fees award to the value of the class recovery," and award a fee that will be higher than 28.3%. *See In re HP Inkjet Printer Litig.*, 716 F.3d at 1178 (noting the goal is to "tether" the two).

To be sure, this analysis of the "true benefit" to the class is not an instance of quibbling over using "gross recovery" versus "net recovery" to determine the "denominator" in the attorneys' fee

---

[6]      *See id.* ("Parties submitting class action settlements for preliminary and final approval in the Northern District of California should review and follow these guidelines to the extent they do not conflict with a specific judicial order in an individual case. *Failure to address the issues discussed below may result in unnecessary delay or denial of approval*.") (emphasis added).

calculation. *See, e.g.*, *Staton*, 327 F.3d at 975 ("Our case law teaches that the reasonableness of attorneys' fees is not measured by the choice of the denominator."). Nor is it an attempt to base the fees on only the value of the claims made. *Cf. Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("We conclude that the district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar."). Instead, it is an effort to determine the true amount of the "entire common fund created for the class." *See id.*; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980) (fee awarded "against the entire judgment fund"). And pinpointing the "true benefit" to the class is critical to determining what fee amount is reasonable, which is at the heart of the fee request inquiry. *See Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000) ("We note that the choice of whether to base an attorneys fee award on either net or gross recovery should not make a difference *so long as the end result is reasonable*.") (emphasis added). Plus, even if the "true benefit" of the settlement were analogous to a "net recovery," this Court has a "longstanding preference for using the net" value in the attorney fee calculation. *In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-MD-02184-CRB, __ F. Supp. 3d. __, 2020 WL 1288377, at *7 (N.D. Cal. Mar. 18, 2020).

\*   \*   \*

Class counsel advance three additional arguments for why their specific proposed percentage of recovery (28.3%) is reasonable: (1) the percentage is within the usual range awarded in common fund cases; (2) the upward adjustment from the 25% benchmark to 28.3% is permitted under the *Vizcaino* factors; and (3) the percentage is in line with a lodestar cross-check. All three arguments miss the mark.

To start, and as explained above, simply because the award requested in this case is "within the usual range" awarded in other cases is not reason enough, by itself, to explain how that same or similar fee is reasonable under the circumstances *of this case*. Indeed, ignoring the specific and unique circumstances of this case would be a quintessential "mechanical or formulaic approach" that the Ninth Circuit has repeatedly, and categorically, condemned. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 944.

1    Next, class counsel maintain that an upward adjustment to the percentage is warranted under

2   *Vizcaino v. Microsoft*. But this argument misses the larger point. Aside from one factor (the 28.3%

3   being in the "usual range" of fees awarded), all of the factors cited by class counsel—"exceptional

4   results," "substantial risk," "skill and high-quality work," and "contingency basis"—are either

5   already subsumed in a base lodestar calculation or simply do not apply under these facts. *See, e.g.*,

6   *Perdue*, 559 U.S. at 553 ("[T]he lodestar figure includes most, if not all, of the relevant factors

7   constituting a 'reasonable' attorney's fee…an enhancement may not be awarded based on a factor

8   that is subsumed in the lodestar calculation."); *Chambers*, 2020 WL 6578223, at *11-15  (reversing

9   award of a multiplier to the lodestar because all factors—"extraordinary amount of time and labor,"

10  "difficult and complex legal questions," "substantial litigation risks," "impressive" results, and

11  contingent nature of the case—were already included in the base lodestar calculation).

12    This raises the question: if a *base* lodestar calculation adequately accounts for most of these

13  factors already, then why is an upward adjustment needed on top of an already higher (higher than

14  the lodestar) percentage-of-the-fund method? The answer: it is not. Especially in a case, like this

15  one, where fees for class counsel and benefits to class members are in direct competition with one

16  another and where every dollar spent on lawyers is one dollar less spent on the class. A "jealous

17  regard" for the interests of the class members, and not class counsel, requires the Court to reject any

18  upward adjustment to the percentage. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d at

19  994 (holding that a court must have a "jealous regard" for class members' interest in the fund).

20    Third, and contrary to class counsel's position, the 28.3% fails the lodestar cross-check. *See*

21  *In re Online DVD Rental*, 779 F.3d 934, 949 (9th Cir. 2015) ("One way that a court may demonstrate

22  that its use of a particular method or the amount awarded is reasonable is by conducting a cross-

23  check using the other method."). First, a proper lodestar cross-check compares the percentage of the

24  fund amount to the lodestar, not to the lodestar *plus a multiplier*, which is what class counsel

25  proposes. *Cf. Vizcaino*, 290 F.3d at 1050 ("Calculation *of the lodestar*, which measures the lawyers'

26  investment of time in the litigation, provides a check on the reasonableness of the percentage

27  award.") (emphasis added); (Fee Request, DN 468, p. 23) ("Thus, the requested award of fees of

28  $87.73 million represents a multiplier of 2.41 of their lodestar.").

Even if a multiplier is permitted in general in a lodestar cross-check, it has no place in the calculation for this case. For the reasons discussed *infra*, none of the factors raised by class counsel supports the use of a multiplier. Stripped of a multiplier, the lodestar cross-check reveals two things: 1) a staggering difference of $51,321,425 between the two methods;[7] and 2) that the amount awarded under the percentage method would equate to an hourly rate more than double the rate under the lodestar.[8] *See In re Bluetooth*, 654 F.3d at 945 (holding that a lodestar cross-check can "confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate"); *see also Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1127 (9th Cir. 2002) (finding the percentage amount "unwarranted" because it would have equated to a rate of $4,000/hr). Thus, the cross-check confirms the percentage requested is inappropriate. *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors.").

\*   \*   \*

Simply stated, using the percentage method in this case, and especially 28.3%, results in a wildly excessive and unreasonable fee.

## II.   The Court should not apply a multiplier to the lodestar.

### A.   There are no "rare and exceptional" circumstances to justify an upward adjustment to the base lodestar amount.

As demonstrated above, the Court should use the lodestar method because it is the best way to ensure class counsel receive a reasonable fee. Equally important is that this Court not award a

---

[7]   Percentage of the fund ($87,730,000) minus the lodestar ($36,408,575.05) equals $51,321,425. The results are similar if the "benchmark" 25% is used, instead of the requested 28.3%, to calculate the percentage of the fund portion of the equation: Percentage of the fund ($77,500,000) minus the lodestar ($36,408,575.05) equals $41,091,425. In both calculations, the difference between the two numbers is likely to be even larger once class counsel's stated lodestar is reduced to remove inaccuracies and redundancies. *See infra* Section III.

[8]   Percentage of the fund ($87,730,000) divided by the stated hours on the matter (68,731) equals approximately $1,276 per hour. That is compared to an hourly rate under the lodestar of approximately $529.72 ($36,408,575 / 68,731 hours).  *See* Joint Declaration, DN 471, ¶ 65 (stating hours and lodestar).

multiplier to the base lodestar amount because, as shown below, there are no "rare" and "exceptional" circumstances to warrant one. *Perdue*, 559 U.S. at 554.

In their fee request, the plaintiffs' counsel set forth several factors they claim support an increase to their fee. In *Chambers*, however, the Ninth Circuit recently held that almost all of those factors do not justify using a multiplier. *See* 2020 WL 6578223, at *11-14. As a general rule, "[a] multiplier may not be awarded based on a factor that is subsumed in the lodestar calculation." *Perdue*, 559 U.S. at 553. In addition, a multiplier must be "supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). "Any reliance on factors that have been held to be subsumed in the lodestar determination will be considered an abuse of the trial court's discretion." *Parsons v. Ryan*, 949 F.3d 443, 467 (9th Cir. 2020) (citation omitted).

Here, plaintiffs cite five factors—achieving an exceptional result, dealing with substantial litigation risk, exercising skill and performing high-quality work, working on a contingent basis, and asking for a fee "on par" with awards in other cases—to justify their fee request. (Fee Request, DN 468, pp. 14-20). Many, if not most, of these are remarkably similar to the factors *Chambers* held were subsumed in the lodestar. *See Chambers*, 2020 WL 6578223, at *11. As a result, to the extent there is overlap among the factors, the Court's analysis in *Chambers* applies equally here. Below is a factor-by-factor comparison between this case and *Chambers*, respectively:

*(1)     Achieving an exceptional result / Achieving impressive results*

Like the claimed "impressive" results in *Chambers*, the "exceptional results" in this case are insufficient to justify a multiplier. In general, "a success-based multiplier could not be awarded simply because of a trial court's finding that the relief secured 'was substantial' or 'of significant import.'" *Chambers*, 2020 WL 6578223, at *13. There must be "greater specificity in the relationship between the amount of the fee awarded and the results obtained." *Id.* The plaintiffs' counsel's explanation of what makes their work "exceptional" lacks a meaningful link between the fee requested and the results obtained for the class. To be sure, the plaintiffs' counsel does tout the fact that the settlement includes a maximum and minimum payment from Apple, and they do point

to what they call is a per device recovery percentage of "between 54% and 137%." (Fee Request, DN 468, pp. 14-15). But for reasons discussed *supra*, the $310 million minimum is not a "true benefit" to the class. And the percentage recovery they cite is based on a "damage analysis" performed by their own expert. That analysis may be correct, but plaintiffs' fee request provides no insight on how the expert reached those figures, so neither the Court nor anyone else can verify (even preliminarily) the expert's work. As a result, plaintiffs' counsel's classification of "exceptional" is akin to the generic labeling of "substantial" or "significant" that *Chambers* rejected.

### (2)    Substantial risk

In *Chambers*, and in this case, the plaintiffs maintain that the risky nature of the litigation justifies an upward adjustment. However, as *Chambers* explained, "because of the perverse incentives it would create, a multiplier should not be based on the legal or factual merits of a claim." *Chambers*, 2020 WL 6578223, at *13. "[T]he lodestar typically reflects the difficulty of establishing the merits of a claim." *Id.* Plus, it is not enough that the plaintiffs say they faced risk in challenging a well-heeled opponent. *See id.* ("If the mere fact that the defendants are 'large corporations' were sufficient, then most class action fee awards would automatically qualify for enhancement—contrary to the rule that multipliers are for 'rare and exceptional circumstances.'") (quoting *Perdue*, 559 U.S. at 552).

### (3)    Skill and High Quality Work / Extraordinary time and labor and difficult and complex legal questions

What the plaintiffs' counsel label "skill and high quality work" is what *Chambers* calls either "extraordinary time and labor" or "difficult and complex legal questions." No matter what it is labeled, what the plaintiffs argue counts under this category is "the work they performed throughout the case." (Fee Request, DN 468, p. 17). As *Chambers* explains, however, "because the time and labor spent by class counsel were subsumed within this lodestar figure, they could not justify an upward multiplier" and "the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors presumably are fully reflected in the number of billable hours recorded by counsel." *Chambers*, 2020 WL 6578223, at *12-13. Thus, whatever category it falls under, the plaintiffs' evidence for this factor does not weigh in favor of a multiplier.

*(4)   Working on contingent basis / attorneys' fees hinged on success*

Both here and in *Chambers* the contingent nature of counsel's compensation was raised as a factor in support of a multiplier. Although in general the Ninth Circuit permits a contingency multiplier in common fund cases, *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1300–01, that general rule should be weighed against the reality that the plaintiffs' bar clearly did not view this case as a risky proposition, as several firms competed to represent the class. *See Chambers*, 2020 WL 6578223, at *13 ("And indeed, the record here undercuts the notion of undesirability, as five different law firms pursued these claims against Whirlpool and collectively litigated this case for many years.").

*(5)   The requested award being "on par" with others in similar cases*

As for the last factor, *Chambers* did not speak to the value of comparing awards with those in other cases; however, one need not look far to find evidence indicating that the fee the plaintiffs request, if awarded, would be an outlier. *See, e.g.*, *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1297 ("[T]he mounting empirical evidence [shows] that the percentage of an award generally decreases as the amount of the fund increases."); *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *8 (N.D. Cal. Sept. 2, 2015) ("Although Class Counsel can point to some 'megafund' cases allowing large multipliers, that is far from the norm."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-2752-LHK, 2020 WL 4212811, at *39 (N.D. Cal. July 22, 2020) (citing an empirical study showing that "as recovery amount increases, the ratio of the size of the attorneys' fee relative to the size of the recovery…tends to decrease," and determining that a 10.5% recovery was appropriate for a fund valued at $435 million); *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *8 (N.D. Cal. May 21, 2015) (approving fees equal to 9% of the settlement value).

**III.   The lodestar should be reduced to correct errors in its calculation.**

**A.   State Attorneys General agree with Apple and other objectors that the lodestar must be accurate and supported by sufficient evidence.**

The amici State Attorneys General agree with the objection of Apple and others to the fee request on the basis that the plaintiffs' counsel's lodestar figure is fundamentally inaccurate, and the

amici support an appropriate reduction by this Court so as to reach a reasonable fee. *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *20 (N.D. Cal. Aug. 17, 2018) ("Accordingly, the Court may excise from the calculation any hours that are duplicative, excessive, or otherwise unnecessary."). For that reason, the amici adopt as their own Apple's arguments[9] regarding the accuracy of the stated lodestar of $36,408,575.05. Importantly, the arguments made in this amicus brief regarding the proprietary and impropriety of the lodestar and percentage methods, respectively, are only strengthened if the plaintiffs' counsel's stated lodestar is reduced.

## CONCLUSION

The interests of the class members must come first in determining what is a reasonable fee for class counsel in this case. In practice, that means using the lodestar method over the percentage-of-the- fund approach, foregoing the application of a multiplier, and ensuring the lodestar calculation is accurate and well documented. By taking these steps, the Court will simultaneously trim an excessive and unreasonable fee request and maximize, dollar-for-dollar, the amount of recovery payable to class members.

Respectfully submitted,

Dated:  November 27, 2020          BENBROOK LAW GROUP, PC


                                   By  */s/ Bradley A. Benbrook*
                                       BRADLEY A. BENBROOK


                                   DANIEL CAMERON
                                   ATTORNEY GENERAL

                                   By  */s/ Philip R. Heleringer*
                                   PHILIP R. HELERINGER
                                       *Assistant Attorney General*
                                   Office of the Kentucky Attorney General


                                   Attorneys for *Amici Curiae*

---

[9] *See* Apple's Opposition, DN 522, pp. 23-29.

**ALSO SUPPORTED BY:**

| | |
|---|---|
| **STEVE MARSHALL**<br>**Attorney General of Alabama**<br>Office of Alabama Attorney General<br>501 Washington Avenue<br>Montgomery, Alabama 36104 | **DAVE YOST**<br>**Attorney General of Ohio**<br>Ohio Attorney General's Office<br>30 E. Broad St., 14th Floor<br>Columbus, Ohio 43215 |
| **MARK BRNOVICH**<br>**Attorney General of Arizona**<br>Office of the Arizona Attorney General<br>2005 N. Central Ave.<br>Phoenix, Arizona 85004 | **MIKE HUNTER**<br>**Attorney General of Oklahoma**<br>Office of the Oklahoma Attorney General<br>313 NE 21st Street<br>Oklahoma City, Oklahoma 73105 |
| **LESLIE RUTLEDGE**<br>**Attorney General of Arkansas**<br>Office of the Arkansas Attorney General<br>323 Center Street, Suite 200<br>Little Rock, Arkansas 72201 | **SEAN D. REYES**<br>**Attorney General of Utah**<br>Office of the Attorney General<br>PO Box 142320<br>Salt Lake City, Utah 84114-2320 |

**LAWRENCE G. WASDEN**
**Attorney General of Idaho**
P.O. Box 83720
Boise, Idaho 83720-0010

**CURTIS T. HILL, JR.**
**Attorney General of Indiana**
Office of the Attorney General
200 West Washington Street, Room 219
Indianapolis, Indiana 46204

**JEFF LANDRY**
**Attorney General of Louisiana**
Office of the Attorney General
1885 North Third St.
Baton Rouge, Louisiana 70802

**KEITH ELLISON**
**Attorney General of the State of Minnesota**
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, Minnesota 55155

**DOUGLAS J. PETERSON**
**Attorney General of Nebraska**
Nebraska Attorney General's Office
2115 State Capitol
PO Box 98920
Lincoln, Nebraska 68509

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of November, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California using the CM/ECF filing system. Counsel for all parties are registered CM/ECF users and will be served by the CM/ECF system pursuant to the notice of electronic filing.

*/s/Philip R. Heleringer*
Philip R. Heleringer