JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
Civil Division
DANIEL J. FEITH
Deputy Assistant Attorney General
GUSTAV W. EYLER
Director
ARTURO DECASTRO
Trial Attorney
Consumer Protection Branch
Civil Division
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044-0386
Telephone: (202) 353-3940
Fax: (202) 514-8742
arturo.a.decastro@usdoj.gov

*Counsel for the United States*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: APPLE, INC. DEVICE PERFORMANCE LITIGATION, | Case No. 5:18-md-02827-EJD |
| This Document Relates to: ALL ACTIONS | **STATEMENT OF INTEREST OF THE UNITED STATES**<br><br>Judge: Hon. Edward J. Davila<br>Courtroom: 4, 5th Floor<br>Date: December 4, 2020<br>Time: 10:00 A.M. |

In accordance with the Class Action Fairness Act of 2005 ("CAFA"), the United States submits this brief Statement of Interest regarding the proposed class action settlement in this matter. The United States does not raise an objection to the proposed settlement itself, but respectfully urges the Court to closely examine the attorneys' fee request in light of Ninth Circuit

case law and the numerous objections filed by class members. While the United States does not share the participants' close knowledge of this litigation, class counsel's request for more than $87 million in fees is difficult to square with prior precedent and the Ninth Circuit's typical benchmark in megafund cases. Because a windfall for the attorneys in this matter would work to the direct detriment of class members, the United States asks the Court, on behalf of unnamed consumer plaintiffs, to take a close, second look at the lodestar analysis and the factors relating to a reasonable percentage-of-the-fund cross check.

## INTEREST OF THE UNITED STATES

Congress has authorized the Attorney General to send "any officer of the Department of Justice . . . to any State or district in the United States to attend to the interests of the United States in a suit pending in a court in the United States." 28 U.S.C. § 517. CAFA requires class action defendants to notify the Attorney General and state officials of proposed class action settlements, a duty that contemplates a role in the settlement-approval process for the Attorney General. 28 U.S.C. § 1715. While the CAFA notice provision does not expressly grant specific authority or impose explicit obligations upon federal or state officials, 28 U.S.C. § 1715(f), the Act's legislative history shows that Congress intended the notice provision to enable public officials to "voice concerns if they believe that the class action settlement is not in the best interest of their citizens." The Class Action Fairness Act of 2005, S. Rep. No. 109-14, at 5 (2005) ("S. Rep."). Congress expected that CAFA notifications would "provide a check against inequitable settlements" and "deter collusion between class counsel and defendants to craft settlements that do not benefit injured parties." S. Rep. at 35.

The United States has a substantial interest in protecting consumers from harm. Through the Department of Justice's Consumer Protection Branch, the United States routinely litigates on behalf of consumer interests and has relevant experience in bringing consumer harm to light and

crafting appropriate remedies. The Consumer Protection Branch's work has included filing statement of interests concerning the structure of class action settlements and attorneys' fees awards. *See e.g.*, *In re Dial Complete Marketing and Sales Practices Litigation*, Case No. 1:11-md-2263-SM (D. N.H. May 13, 2019)(Dkt. 249); *Cowen vs. Lenny & Larry's, Inc.*, Case No. 1:17-CV-01530 (N.D. Ill. Feb. 15, 2019)(Dkt. 103).

## BACKGROUND

On July 2, 2018, the plaintiffs filed a class action against Apple Inc., alleging, among other things, that several iPhone models were defective due to unexpected power-offs and Apple's introduction of a performance management feature into the iOS 10.2.1 and iOS 11.2 operating systems of the devices to avoid the power-offs. Dkt. 145. During the litigation, the Court dismissed certain of the plaintiffs' claims. The parties subsequently reached a proposed settlement to resolve plaintiffs' remaining claims. Dkt. 416.

Generally, the proposed settlement provides that each member of the settlement class would receive at least $25 for each iPhone the member owned. Dkt. 416 at 11-12. The proposed settlement establishes a minimum settlement amount of $310 million from which the settlement class would receive compensation, and permits class counsel to seek attorneys' fees and litigation expenses payable from the same fund. *Id.* at 12. On August 26, 2020, class counsel filed a motion asking the Court to grant final approval of the parties' proposed settlement. Dkt. 470. That same day, class counsel also filed a motion asking the Court to award attorneys' fees in the amount of $87,730,000, or 28.3 percent of the $310 million minimum settlement amount, as well as reimbursement of $995,244.93 in litigation expenses. Dkt. 468. Class counsel calculated the fee request using the lodestar method, applying a 2.42 multiplier to a $36 million lodestar amount.

In response to class counsel's motion for attorneys' fees, dozens of settlement class members and the defendant filed objections denouncing the requested fees as excessive. *See* Dkts. 522 at 8, 17-18 (defendant's objection citing class member objections); 523. The objectors argued, *inter alia*, that the requested fees exceed the Ninth Circuit's typical 25 percent benchmark for a reasonable attorneys' fees award in cases alleging economic injury, would provide an unfair windfall to class counsel, and would significantly reduce the amount of the settlement class' recovery under the settlement. *See* Dkt. 522 at 15-17; 523 at 3-4, 10-14. Moreover, according to objectors, class counsel miscalculated the requested fees by relying on an erroneous risk multiplier methodology, and failed to provide adequate substantiation in support of their request. *See* Dkts. 522 at 9-20; 523 at 15-23.

## ARGUMENT

### I.     Legal Standard.

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 942 (9th Cir. 2011) (citing *In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010)). Courts must exercise this discretion so as to achieve a reasonable result. *Id.* (citing *In re Coordinated Pretrial Proceedings*, 109 F.3d 602, 607 (9th Cir. 1997)). The Court has "an independent obligation to ensure that the [attorneys' fee] award, like the settlement itself, is reasonable." *Id.* at 941. As noted in objections to class counsel's request for attorneys' fees, courts in the Ninth Circuit typically calculate 25 percent of the settlement fund as the "benchmark" for a reasonable attorneys' fee award in class-action matters. *See Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

## II.   The Court Should Closely Examine Class Counsel's Fee Request to Avoid an Unjust Windfall.

The objections concerning class counsel's lodestar analysis raise serious concerns about whether the requested fees would yield a financial windfall to class counsel to the detriment of the settlement class. Class counsel represents that numerous legal professionals from a wide assortment of law firms spent more than 68,000 hours pursuing this case. Dkt. 522 at 7. Class counsel states that this effort resulted in a lodestar of $36 million, and that even this significant sum should be increased by a multiplier of 2.4 to $87 million. Dkt. 550 (Pl. Reply) at 13. That figure represents 28.3 percent of the total fund. Class counsel argues that this amount is reasonable, representing only a "modest" increase above typical Ninth Circuit benchmark for reasonable attorneys' fees of 25 percent. *Id.* at 4-6. But there are good reasons to question that conclusion.

*First*, this is not a typical case—it is a megafund case where it is not clear that a percentage-of-fund benchmark results in a reasonable fee, or even a reliable cross-check. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). As the Ninth Circuit has stated, "where awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage or employ the lodestar method instead." *Bluetooth Headset*, 654 F.3d at 942–43 (citing *Six (6) Mexican Workers*, 904 F.2d at 1311; *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 339 (3d Cir. 1998)). As the settlement amount increases to "megafund" status, a percentage of that amount becomes a number untethered to any rational basis for awarding fees. *See In re Prudential Ins.*, 148 F.3d at 339 ("[I]n many instances the increase [in recovery] is merely a factor of the size of the class and has no direct relationship to the efforts of counsel.").

The pending settlement here sets up a true megafund worth hundreds of millions of dollars. The size of the fund means that any simple percentage fee calculation will be impressively large. In evaluating attorneys' fee requests in such a case, "courts cannot rationally apply any particular percentage—whether 13.6 percent, 25 percent or any other number—in the abstract, without reference to all the circumstances of the case." *Vizcaino*, 290 F.3d at 1048 (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1298 (9th Cir. 1994)). Those relevant circumstances include the results achieved for the class, litigation risk, burdens to counsel given the length of the representation, and the complexity of the issues. *See Six (6) Mexican Workers*, 904 F.2d at 1311; *Vizcaino,* 290 F.3d at 1048-50. Examination of such circumstances, while specific to the facts of each case, often result in attorneys' fee awards significantly below the 25 percent benchmark in the megafund context. *See, e.g.*, *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5158730, at *12-13 (N.D. Cal. Sept. 2, 2015) ("Although the benchmark in the Ninth Circuit for common fund cases is 25%, a percentage recovery of 9.8% or 10.5% is far from unreasonable for a settlement of this size."); *Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015)(rejecting 25% of $203 million and awarding only 9% of the fund); *Alexander v. FedEx Ground Package Sys., Inc.*, 2016 WL 3351017, at *2-3 (N.D. Cal. June 15, 2016) (awarding 16.4% as "consistent with the higher end of awards in megafund cases"); *In re Charles Schwab Corp. Secs. Litig.*, 2011 WL 1481424, at *8 (N.D. Cal. Apr. 19, 2011) (awarding attorneys' fees of 9.25% of $235 million fund).

*Second*, even if this were a typical case where application of the 25 percent benchmark was appropriate, the requested fees of 28.3 percent of the total fund still seem excessive, as the 3.3 percentage point bump above the benchmark equates to around $10 million by itself. As the Ninth Circuit has noted, "[i]f the lodestar amount overcompensates the attorneys according to the 25% benchmark standard, then a second look to evaluate the reasonableness of the hours worked

and rates claimed is appropriate." *Bluetooth Headset*, 654 F.3d at 945 (quoting *In re Coordinated Pretrial Proceedings*, 109 F.3d at 607). That second look is all the more important where, as class counsel acknowledges here, the excess millions ultimately would reduce the amount paid to class members allegedly harmed by the defendant's conduct. Dkt. 550 (Pl. Reply) at 4.

To avoid a potential windfall to class counsel at the expense of unnamed class members, the United States respectfully urges the Court to examine closely, in the context of its own extensive experience with the case, the attorneys' fees request and underlying documentation provided by class counsel. Even where a settlement provides real value to the class, courts must also ensure that the attorneys' fee award is reasonable. *See Bluetooth Headset*, 654 F.3d at 941. A second look to evaluate attorney hours, rates, and the claimed lodestar multiplier is especially appropriate here, where small changes to the calculation necessarily would lead to large amounts of money being shifted between the attorneys and consumer plaintiffs.

Class counsel discounts arguments such as these, raised by numerous objectors on the docket, as the contentions of disingenuous professionals or the position of a tiny minority of the sizable class. Dkt. 550 at 4-6. But the simple fact is that most consumer class members in this case and others like it do not have the time or the knowledge of legal process to file objections. Even a relatively small percentage of objectors is meaningful in a class action, and the objections raised here are serious. Class counsel's proposed multiplier would more than doubles the requested fees above the lodestar number and result in an award millions of dollars above the Ninth Circuit benchmark, even assuming that benchmark were appropriate in a megafund case such as this. On its face, the fee request does not seem reasonable.

//

//

//

**CONCLUSION**

For the foregoing reasons, and in light of numerous objections filed by class members, the United States respectfully urges the Court to closely examine the attorneys' fee request in this megafund matter to prevent any unreasonable windfall award to plaintiffs' counsel.


December 2, 2020                          Respectfully submitted,

                                          JEFFREY BOSSERT CLARK
                                          Acting Assistant Attorney General

                                          DANIEL J. FEITH
                                          Deputy Assistant Attorney General

                                          GUSTAV W. EYLER
                                          Director
                                          Consumer Protection Branch

                                          s/Arturo DeCastro
                                          ARTURO DECASTRO
                                          Trial Attorney
                                          Consumer Protection Branch
                                          Department of Justice, Civil Division
                                          P.O. Box 386
                                          Washington, D.C. 20044
                                          202-353-3940
                                          arturo.a.decastro@usdoj.gov

                                          *Counsel for the United States*

1

**CERTIFICATE OF SERVICE**

2

I certify that on this 2nd day of December, 2020, I electronically filed the foregoing with

3

the Clerk of the Court for the United States District Court for the Northern District of California

4

using the CM/ECF system. All counsel will be notified through that system.

5

6

s/Arturo DeCastro
7
Arturo DeCastro
Trial Attorney
8
Consumer Protection Branch

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28