1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6                        SAN JOSE DIVISION

7

8  IN RE:  APPLE INC. DEVICE                Case No.  5:18-md-02827-EJD
   PERFORMANCE LITIGATION

9                                           ORDER GRANTING NAMED
                                            PLAINTIFFS'  MOTION FOR FINAL
10                                          APPROVAL OF CLASS ACTION
                                            SETTLEMENT

11 This Document Relates To:               Re: Dkt. No. 470

12     ALL ACTIONS.

13

14         This matter is before the Court on Named Plaintiffs' Motion For Final Approval of

15 Proposed Settlement (hereinafter "Mot."). Dkt. No. 470. Specifically, Named Plaintiffs move for

16 an order: (i) granting final certification of the Settlement Class under Federal Rules of Civil

17 Procedure ("Rule") 23(a) and 23(b)(3); (ii) granting final approval of the proposed Settlement

18 reached between Named Plaintiffs and Apple Inc. ("Apple" or "Defendant"), under Rule 23(e);

19 (iii) finding that notice has been conducted in accordance with the Court-approved notice plan and

20 comports with due process and Rule 23; and (iv) dismissing with prejudice Named Plaintiffs' and

21 Settlement Class Members' claims against Apple. *Id.* The Court received numerous responses to

22 the Settlement, including requests for exclusions, as well as responses to Named Plaintiffs' related

23 Motion for Attorneys' Fees, Expenses, and Service Awards (Dkt. No. 468). Named Plaintiffs filed

24 a reply on November 11, 2020 (hereinafter "Reply"). Dkt. No. 549. Named Plaintiffs and Apple

25 submitted a joint proposed order granting final approval. Dkt. No. 554. Apple also filed a

26 Statement in Support of Final Settlement Approval and Response to Settlement Objections

27

28 CASE NO.: 5:18-MD-02827-EJD
   ORDER GRANTING NAMED PLAINTIFFS'  MOTION FOR FINAL APPROVAL OF CLASS
   ACTION SETTLEMENT
                                      1

*(left margin, vertical text)* United States District Court
Northern District of California

United States District Court
Northern District of California

("Statement"). Dkt. No. 555. The Motion was heard on December 4, 2020 and February 17, 2021. Based on pleadings filed to date and the comments made at the hearing, the Court grants Named Plaintiffs' Motion.

## I.    BACKGROUND

### A.    The Consolidated Actions

In 2015, reports of unexplained shutdowns of certain Apple devices began surfacing, with consumers complaining their devices were suddenly shutting down even though the batteries were more than 30% charged. Second Consol. Am. Compl. ("SCAC") ¶ 2, Dkt. No. 244. Complaints accelerated in the autumn of 2016 and were accompanied by reports of unexplained heating. *Id*. This affected, among other devices, the iPhone 6, 6 Plus, 6s, 6s Plus, 7, 7 Plus, and SE. *Id*. ¶ 1. In 2017, Apple released iOS 10.2.1 and iOS 11.2 to address the alleged defects but, rather than fix the defects, the software updates allegedly "concealed [them] by secretly throttling the Devices' performance to reduce the number of unexpected shutdowns to a more manageable volume." *Id*. ¶¶ 9-10.

On December 20, 2017, Apple released a statement regarding a performance management feature in its iOS 10.2.1 and iOS 11.2 software to prevent unexpected power-offs from occurring in its devices, stating, in relevant part:

> Our goal is to deliver the best experience for customers, which includes overall performance and prolonging the life of their devices. Lithium-ion batteries become less capable of supplying peak current demands when in cold conditions, have a low battery charge or as they age over time, which can result in the device unexpectedly shutting down to protect its electronic components.
>
> Last year we released a feature for iPhone 6, iPhone 6s and iPhone SE to ***smooth out*** the instantaneous peaks only when needed to prevent the device from unexpectedly shutting down during these conditions. We've now extended that feature to iPhone 7, with iOS 11.2, and plan to add support for other products in the future.

SCAC ¶ 16; *see also* Decl. of Joseph W. Cotchett and Laurence D. King in Supp. of Mot. for Settlement ("Decl. of Co-Lead Class Counsel") ¶ 9, Dkt. No. 471. On December 28, 2017, Apple

CASE NO.: 5:18-MD-02827-EJD
ORDER GRANTING NAMED PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

2

1   issued the following statement:

2           iOS 10.2.1 (released January 2017) includes updates for previous
        models of iPhone to  prevent them from unexpectedly shutting down.
3       This includes a feature for iPhone 6, iPhone 6 Plus, iPhone 6s, iPhone
        6s Plus, and iPhone SE to dynamically manage the instantaneous
4       performance peaks, only when needed, to prevent the device from
        unexpectedly shutting down. This capability was also extended to
5       iPhone 7 and iPhone 7 Plus with iOS 11.2, and we will continue
        improving our power management feature in the future. This feature's
6       only intent is to prevent unexpected shutdowns so that the iPhone can
        still be used.
7
        This power management works by looking at a combination of the
8       device temperature, battery state of charge, and battery impedance.
        Only if these variables require it, iOS will dynamically manage the
9       maximum performance of some system components, such as the CPU
        and GPU, in order to prevent unexpected shutdowns. As a result, the
10      device workloads will self-balance, allowing a smoother distribution
        of system tasks, rather than larger, quick spikes of performance all at
11      once. In some cases, a user may not notice any differences in daily
        device performance. The level of perceived change depends on how
12      much power management is required for a particular device.

13      In cases that require more extreme forms of this power management,
        the user may notice effects such as:
14
15      Longer app launch times

16      Lower frame rates while scrolling

17      Backlight dimming (which can be overridden in Control Center)

18      Lower speaker volume by up to -3dB

19      Gradual frame rate reductions in some apps

20      During the most extreme cases, the camera flash will be disabled as
        visible in the camera UI
21
        Apps refreshing in background may require reloading upon launch.

22  SCAC ¶ 22.

23          The allegedly diminished performance of iPhone 6s and iPhone 7s running these operating

24  systems led to sixty-six class action complaints filed against Apple between December 2017 and

25  June 2018 in federal district courts around the country (the "Federal Actions").  *Id*.  In the same

26  time, four class action complaints were filed against Apple in California Superior Courts in San

27

28  CASE NO.: 5:18-MD-02827-EJD
    ORDER GRANTING NAMED PLAINTIFFS'  MOTION FOR FINAL APPROVAL OF CLASS
    ACTION SETTLEMENT

United States District Court
Northern District of California

3

United States District Court
Northern District of California

Francisco, San Mateo, and Los Angeles (the "State Actions").  Decl. of Andrew J. Brown and Thomas J. Brandi in Supp. of Mot. for Settlement ("Decl. of JCCP Counsel") ¶ 10, Dkt. No. 471-2.

Beginning in 2018, the Federal Actions were consolidated by the U.S. Judicial Panel on Multidistrict Litigation in the Northern District of California pursuant to 28 U.S.C. § 1407, into MDL proceedings captioned *In re Apple Inc. Device Performance Litig.*, No. 8-md-2827-EJD. Decl. of Co-Lead Class Counsel ¶ 9; *See* Transfer Order, Dkt. No. 1.  By August 2, 2018, the four State Actions were coordinated into a single action in San Francisco Superior Court as JCCP No. 4976.  Decl. of JCCP Counsel ¶ 11.  The JCCP Action follows its own lengthy litigation history, including demurrers, amended complaints, discovery, etc., not repeated here.  *See id.* ¶¶ 12-33. The nationwide Settlement Class includes the California Class represented by JCCP Counsel.

**B.       Motions to Dismiss and the Operative Complaint**

On May 15, 2018, the Court granted in part and denied in part the motion to serve as interim lead counsel filed by Cotchett, Pitre & McCarthy LLP ("CPM") and Kaplan Fox & Kilsheimer LLP.  Order Consolidating Related Actions and Appointing Interim Co-Lead Pls.' Counsel at 4, Dkt. No. 99.  Class Counsel filed a Consolidated Amended Complaint ("CAC") on July 2, 2018.  CAC, Dkt. No. 145.  The CAC was a lengthy document, detailing the grievances of one hundred twenty-two Named Plaintiffs and including seventy-six causes of action.  Decl. of Co-Lead Counsel ¶ 10.  On August 9, 2018, Apple moved to dismiss the CAC.  Mot. to Dismiss Pls.' CAC, Dkt. No. 176.  On October 1, 2018, the Court granted in part and denied in part Apple's motion to dismiss the CAC, with leave to amend.  Order Granting in Part and Den. in Part Mot. to Dismiss, Dkt. No. 219.  On November 30, 2018, Class Counsel filed the SCAC.  On January 24, 2019, Apple filed a motion to dismiss.  Mot. to Dismiss Pls.' SCAC, Dkt. No. 272. The Court granted in part and denied in part this motion to dismiss on May 3, 2019 with leave to amend.  Order, Dkt. No. 331.[1]  Named Plaintiffs ultimately chose not to amend the SCAC and on

---

[1] This Order also resolved other issues, such as a pending motion to compel discovery, requests

1   July 31, 2019, Apple filed its Answer to the SCAC.  Answer, Dkt. No. 365.

2       **C.      Discovery and Other Matters**

3       Throughout 2018 and 2019, Named Plaintiffs and Defendants took part in a contentious

4   discovery process.  Ultimately, with the Parties' stipulation, the Court appointed the Honorable

5   Judge Rebecca J. Westerfield (Ret.) as Special Discovery Master.  Decl. of Co-Lead Counsel ¶ 18;

6   Order re: Appointment of Special Disc. Master, Dkt. No. 173.  Judge Westerfield issued ten

7   Discovery Master Orders concerning issues such as protective orders, motions to compel, the time

8   period governing discovery, preservation of certain documents, requests for production of

9   documents, a request to conduct forensic inspection of devices, and deposition of certain plaintiffs.

10  Dkt. Nos. 229-232, 240, 245, 310, 323, 354, 389.

11      Apple produced over seven million pages of documents.  Decl. of Co-Lead Counsel ¶ 25.

12  Named Plaintiffs produced over 6,000 pages of documents.  *Id.* ¶ 28.  Class Counsel took

13  depositions of ten Apple witnesses, including software and hardware engineers, and moved to

14  compel the depositions of ten additional witnesses.  *Id.* ¶¶ 32-33.  The case was settled before

15  Judge Westerfield ruled on the Motion to Compel the depositions of the ten additional witnesses.

16  *Id.* ¶ 33.  Apple deposed nine of the Named Plaintiffs.  *Id.* ¶ 34.  Both Parties also issued and

17  objected to subpoenas to third parties, such as service carriers, manufacturing entities, and

18  retailers.  *Id.* ¶¶ 37-39.

19      **D.      Settlement Negotiations and Mediation**

20      The Parties selected the Honorable Judge Layn Phillips (Ret.), a former United States

21  District Judge and "the founder and lead mediator at Phillips ADR Enterprises, P.C.", to facilitate

22  mediation and settlement discussions.  Decl. of Hon. Layn Phillips in Supp. of Settlement

23  ("Phillips Decl.") ¶¶ 1-4, Dkt. No. 470-1.  At Judge Phillips' direction, the Parties submitted

24  mediation and supplemental statements.  Decl. of Co-Lead Counsel ¶ 41, Dkt. No. 471.  After

25  submitting their statements, counsel for all Parties attended in-person mediations before Judge

26

27  for judicial notice, and a motion for reconsideration.

CASE NO.: 5:18-MD-02827-EJD

28  ORDER GRANTING NAMED PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Phillips on January 7, 2019, August 28, 2019, and September 27, 2019.  *Id.*

2         On September 27, 2019, Judge Phillips made a mediator's proposal to the Parties, which

3  was accepted with Judge Phillips' continued involvement in negotiating a term sheet and longform

4  settlement agreement.  *Id.* ¶ 42; Phillips Decl. ¶ 9.  After several months more of negotiation, in

5  February 2020, the Parties executed the Settlement.  Decl. of Co-Lead Counsel ¶ 43.

6         **E.       Settlement Terms**

7         The Settlement is a comprehensive resolution of all claims in this Action and the JCCP

8  Action.  The Settlement provides for a non-reversionary Minimum Class Settlement Amount of

9  $310 million, with a Maximum Class Settlement Amount of $500 million, in cash for the benefit

10  of the Settlement Class.  Decl. of Co-Lead Counsel ¶ 46.  In exchange for a release of their claims,

11  Settlement Class Members will receive $25 for each eligible iPhone, although the amount of that

12  payment may increase or decrease depending on any Attorneys' Fees and Expenses, Named

13  Plaintiff Service Awards, Notice expenses, and the aggregate value of Approved Claims.  *Id.* ¶ 47.

14  In particular, if the payment of $25 for each iPhone device identified as Approved Claims plus the

15  payment of Attorneys' Fees and Expenses, Named Plaintiff Service Awards, and Notice and

16  administration fees does not reach the Minimum Class Settlement Amount, then the "Residual"

17  will be allocated according to the Stipulation of Settlement (Dkt. No. 416), including increasing

18  payments to Settlement Class Members on a pro rata basis.  *Id.*  Conversely, if the number of

19  iPhone devices identified as Approved Claims, multiplied by $25, exceeds the Maximum Class

20  Settlement Amount of $500 million, then the cash payment for each device will be reduced on a

21  pro rata basis so as not to exceed the Maximum Class Settlement Amount of $500 million.  *Id.*

22         Under the Settlement, Named Plaintiffs may also seek Service Awards of $3,500 for

23  Named Plaintiffs who were deposed in the Action and $1,500 for all Named Plaintiffs.  *Id.* ¶ 49.

24  Class Counsel may also seek an award of attorneys' fees and expenses.  *Id.* ¶ 50. The Settlement is

25  not conditioned upon the Court's approval of the full (or any) amount of Service Awards or

26  attorneys' fees and expenses.  *Id.*

27  CASE NO.: 5:18-MD-02827-EJD

28  ORDER GRANTING NAMED PLAINTIFFS'  MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

United States District Court
Northern District of California

### F.     Settlement Terms

On February 28, 2020, Named Plaintiffs filed a motion for preliminary approval of the Settlement.  Motion for Preliminary Approval, Dkt. No. 415.  On May 27, 2020, the Court granted preliminary approval, provisionally certified the nationwide Settlement Class, and directed notice to be issued to Settlement Class Members pursuant to the Settlement and preliminary approval motion.  Order Granting Prelim. Approval of Class Action Settlement ("Prelim. Approval Order"), Dkt. No. 429.

The Court granted preliminary certification to a settlement class of:

> [a]ll former or current U.S. owners of iPhone 6, 6 Plus, 6s, 6s Plus, 7, 7 Plus, and SE devices running iOS 10.2.1 or later (for iPhone 6, 6 Plus, 6s, 6s Plus, and SE devices) or iOS 11.2 or later (for iPhone 7 and 7 Plus devices), and who ran these iOS versions before December 21, 2017.

Prelim. Approval Order at 2 (reciting the definition of Stipulation § 1.32).  "U.S. owners" is defined to "include all individuals who owned, purchased, leased, or otherwise received an eligible device, and individuals who otherwise used an eligible device for personal, work, or any other purposes.  An individual qualifies as a "U.S. owner" if his or her device was shipped to the United States, its territories, and/or its possessions.  *Id*.  "The Settlement Class shall not include iPhone owners who are domiciled outside of the United States, its territories, and/or its possessions."  *Id*. "Additionally, excluded from the Settlement Class are (a) directors, officers, and employees of Apple or its subsidiaries and affiliated companies, as well as Apple's legal representatives, heirs, successors, or assigns, (b) the Court, the Court staff, as well as any appellate court to which this matter is ever assigned and its staff, (c) any of the individuals identified in paragraph 1.36 of the Settlement Agreement, as well as their legal representatives, heirs, successors, or assigns, (d) Defense Counsel, as well as their immediate family members, legal representatives, heirs, successors, or assigns, and (e) any other individuals whose claims already have been adjudicated to a final judgment."  *Id*. at 2-3.

///

1

### G.    Notice to the Class

2        Court-approved Settlement Administrator Angeion Group ("Angeion") disseminated

3   Notice to the Class via (1) direct email and/or postcard notices, (2) a case-specific website, and (3)

4   a case-specific toll-free number.  Decl. of Settlement Adm'r ("Angeion Decl.") ¶¶ 4-12, Dkt. No.

5   470-2; *see also* Stipulation § 6.2.  Specifically, 90,119,272 class notices were emailed to potential

6   Class Members, with 2,611,071 returned undeliverable.  Angeion Decl. ¶¶ 6-7, 11.  Angeion re-

7   deployed 340,289 email notices that had a technical error during the initial distribution.  Suppl.

8   Decl. of Settlement Adm'r ("Suppl. Angeion Decl.") ¶ 5, Dkt. No. 551.  Of the 340,289 email

9   notices that were re-deployed, 320,329 were delivered and 19,960 were not delivered.  *Id*. ¶ 6.

10  Between August 24, 2020 and September 9, 2020, Angeion sent a second round of email notices

11  to 89,395,480 Class Members.  *Id*. ¶ 18.[2]

12        Angeion also sent 5,609,281 postcard notices to potential Settlement Class Members.  *Id*. ¶

13  11.  On September 4, 2020, Angeion mailed an additional 72,282 notices.  *Id*. ¶ 13.  After

14  conducting address verification searches ("skip traces"), Angeion identified and re-mailed notices

15  to 275,292 updated addresses, including the records which the USPS returned with a forwarding

16  address.  *Id*. ¶ 14.  Angeion also sent a second round of post card notices to 5,609,277 Class

17  Members.  *Id*. ¶ 17.  These efforts resulted in notice being sent to ninety-nine (99) percent of the

18  Class.  Tr. of Dec. 4, 2020 Hr'g at 153, Dkt. No. 589.

19        The case-specific website devoted to the Settlement had 16,440,243 pageviews and

20  9,891,698 sessions through November 16, 2020.  *Id*. ¶ 22.  The toll-free information line for the

21  case received approximately 31,647 calls through November 16, 2020.  *Id*. ¶ 24.  The extensive

22  _____

23  [2] During the December 4, 2020 hearing, it was reported that many email notices to Class Members
    were redirected to a spam folder, and that as result, many Class Members may not have received
24  notice if they didn't know to look in their spam folders.  Tr. of Dec. 4, 2020 Hr'g at 102.
    Although this is disappointing, it is not surprising in a case of this magnitude and does not mean
25  the notice program failed to comport with due process.  Angeion employed other methods of
    notice, including establishing a case-specific website and a case-specific toll-free number.  And as
26  noted previously, the extensive media coverage of the Settlement has also increased the likelihood
    that Settlement Class Members learned of the Settlement and the process for submitting a claim.

27  CASE NO.: 5:18-MD-02827-EJD
    ORDER GRANTING NAMED PLAINTIFFS'  MOTION FOR FINAL APPROVAL OF CLASS
28  ACTION SETTLEMENT
                                         8

United States District Court
Northern District of California

media coverage of the Settlement has also increased the likelihood that Settlement Class Members learned of the Settlement and the process for submitting a claim.  Angeion Decl. ¶ 26.[3]

### H.    Claims Process

Settlement Class Members had up to 92 days to submit a claim, object, or opt out.  Def.'s Statement at 5.  The chart below tabulates the total number of claims submitted, approved, and not approved (including the reasons for the provisional rejections) as of January 22, 2021:

| | Claims Submitted | Claims Withdrawn | Claims Approved (Pending Deduplication) | Claims Pending Validation Regarding Device Eligibility | Claims Not Approved | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Device Not Eligible – Could Not Be Matched to Class List | Attestation Missing or Insufficient | Duplicate | Other (e.g., missing signature) |
| **Online** | 2,152,228 | 137 | 2,094,916 | 0 | 0 | 0 | 57,175 | 0 |
| **Hard Copy** | 74,543 | 43 | 20,698 | 57 | 44,430 | 3,549 | Pending | 5,766 |
| **Corporate** | 1,058,214 | 66 | 153,246 | 41,522 | 664,675 | 164,053 | 32,533 | 2,119 |
| **Total** | 3,284,985 | 246 | 2,268,860 | 41,579 | 709,105 | 167,602 | 89,708 | 7,885 |

Updated Joint Status Report In Supp. of Final Settlement Approval at 1, Dkt. No. 596.  "The Settlement Administrator approved all claims that could be matched to eligible devices, provided that the other settlement requirements were satisfied."  *Id.* at 2.  "For claims that could not be approved as initially submitted, the Settlement Administrator sent deficiency notices to inform the claimants of the reason(s) their claims could not be approved."  *Id.*  All claimants had an opportunity to submit additional information.  *Id.*

The Court later provided guidance regarding the attestation requirement for corporate and non-natural person claims (Dkt. No. 598), and as of February 21, 2021, the claims process is

---

[3] Notice of the Settlement was also provided to federal and state officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715.  Pls.' Reply at 9.

CASE NO.: 5:18-MD-02827-EJD
ORDER GRANTING NAMED PLAINTIFFS'  MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

9

United States District Court
Northern District of California

1  ongoing.  Tr. of Feb. 17, 2021 Hr'g at 8, Dkt. No. 605.  The Settlement Administrator will submit

2  a final report to the Court once the claims administration process is complete.  *Id.*

3  **II.  STANDARDS**

4      Federal Rule of Civil Procedure 23(e) requires judicial approval of a settlement as fair,

5  reasonable, and adequate. The procedure for judicial approval is well established:

> (1)  Certification of a settlement class and preliminary approval of the proposed settlement after submission to the court of a written motion for preliminary approval.
>
> (2)  Dissemination of notice of the proposed settlement to the affected class members.
>
> (3)  A final approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement are presented.

12  *See* Manual for Complex Litig. (Fed. Jud. Center, 4th ed. 2004), § 21.63.

13      "[T]he decision to approve or reject a settlement is committed to the sound discretion of

14  the trial judge because that judge is 'exposed to the litigants, and their strategies, positions and

15  proof.'"  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (quoting *Officers for*

16  *Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 626 (9th Cir. 1982)).  In reviewing class action

17  settlements, the court should give "proper deference to the private consensual decision of the

18  parties." *Id.*  "[T]he court's intrusion upon what is otherwise a private consensual agreement

19  negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a

20  reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion

21  between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and

22  adequate to all concerned." *Id.* (quoting *Officers for Justice*, 688 F.2d at 625); *see also In re*

23  *Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *8-11 (N.D. Cal. Oct. 27, 2015) (granting

24  preliminary approval after finding proposed settlement was "noncollusive," "lacks obvious

25  deficiencies," and was "within the range of possible approval").  In making this determination,

26  courts in the Ninth Circuit consider and balance a number of factors, including:

United States District Court
Northern District of California

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026); *Officers for Justice,* 688 F.2d at 625 (citing same).  Further, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009); *see also In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement.") (citation omitted); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair.") (citation omitted).

## III.   DISCUSSION

### A.   Certification of the Class

On May 27, 2020, the Court preliminarily approved the Class.  Nothing has occurred that changes this Court's previous determination that class certification is appropriate under Rule 23.  The requirements of Rule 23(a) and (b) are fully satisfied.  Accordingly, the Court grants final certification of the Settlement Class.

### B.   Final Approval of the Settlement

For the reasons discussed below, the Court finds that the Settlement is fair, reasonable and adequate.

#### 1.   Strength of Plaintiffs' Case

The parties actively and aggressively litigated this action and Class Counsel conducted a thorough investigation and prosecution of the claims.  The Named Plaintiffs firmly believe that

CASE NO.: 5:18-MD-02827-EJD
ORDER GRANTING NAMED PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1    their liability case is strong and that class certification is warranted.  Mot. at 9.  In their SCAC,

2    Named Plaintiffs supported their claims with allegations that users of Apple devices began

3    reporting reduced functionality after installing iOS 10.2.1, and began experiencing marked

4    decrease in battery life after downloading iOS 11.  SCAC ¶¶ 435, 436.  Further, a study "revealed

5    that existing iPhones operating on the iOS 10 software on average drained to 0% battery after 240

6    minutes (4 hours), whereas those operating on iOS 11 on average drained to 0% battery after only

7    96 minutes (just over 1½ hours)."  *Id*. ¶ 438.  "In other words, iOS 11 reduced the average

8    iPhone's battery life by more than 60%."  *Id*.  Named Plaintiffs alleged that "[t]he study

9    demonstrates the substantially increased power demands that Apple foist upon users' Devices

10   through its iOS update."  *Id*.  Another report based on an analysis of 100,000 iPhones concluded

11   that "the decrease in performance of the affected iPhones was caused by the iOS 10.2.1 and iOS

12   11.2 updates, and not the normal decreased function that would be caused by an aging battery."

13   *Id*. ¶ 440.  A software engineer charted phone performance before and after the iOS updates at

14   issue were installed, and concluded that there was a "real loss of performance."  *Id*. ¶¶ 441-42.

15   Another researcher opined that the iOS updates at issue slowed the iPhone 6s by nearly 60%, and

16   thus "effectively turn[ed] the device's performance into that of a device 1-2 generations older."

17   *Id*. ¶ 442.  Named Plaintiffs also cited to an article indicating that "tests run by iPhone 6 users

18   following the iOS 10.2.1 update revealed a processor speed of 600MHz; which was less than half

19   the device's advertised speed.  *Id*. ¶ 443.  Named Plaintiffs further alleged that Apple never asked

20   its purchasers for their authorization to slow down their device, nor informed them of this change.

21   *Id*. ¶ 447.

22          Nevertheless, Named Plaintiffs recognized the real and substantial risk that they might not

23   be able to obtain any recovery at all given the significant legal challenges they would have to face

24   if the case did not settle.  Apple has consistently maintained and continues to maintain that "[the]

25   software update prolonged the life of devices with aged batteries and allowed loyal Apple

26   customers to continue using the iPhone devices that they love."  Def.'s Statement at 1.  Further,

27

28   CASE NO.: 5:18-MD-02827-EJD
     ORDER GRANTING NAMED PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
     ACTION SETTLEMENT

United States District Court
Northern District of California

1  Apple has maintained and continues to maintain that "[t]he performance management feature was

2  only activated when the device was at risk of shutting down when power demands were high in

3  some temporary conditions based on environmental temperature, state of charge, and customer

4  usage." *Id*.  "In such circumstances, some users may have noticed changes in performance, such

5  as longer app launch times, lower speaker volume, gradual frame rate reductions in some apps, or

6  other potential effects." *Id*.  "Apple disputes that all devices were used in a way that would have

7  activated the performance management feature; and even when it was activated, users may not

8  have even noticed any differences in daily device performance." *Id*.  "Apple stands by the

9  performance management feature as a solution to a complex technological problem that delivered

10  a better experience for customers and prolonged the life of older iPhone devices." *Id*.

11        The first factor weighs in favor of approval.

12              **2.        Extent of Discovery Completed and the Stage of Proceedings**

13        As discussed previously, Class Counsel pursued discovery through requests for production

14  of documents and interrogatories.  Apple produced over seven million pages of material for

15  review.  Named Plaintiffs deposed ten Apple witnesses.  Named Plaintiffs also sought discovery

16  from several non-parties.  This extensive discovery allowed Named Plaintiffs to evaluate the

17  merits of their claims. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab.*

18  *Litig.*, 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016) ("[E]xtensive review of discovery

19  materials indicates [Plaintiffs have] sufficient information to make an informed decision about the

20  Settlement.  As such, this factor favors approving the Settlement.").  Class Counsel also benefited

21  from Judge Phillips' objective assessment of the relative strengths and weaknesses of the parties'

22  positions.  Thus, Class Counsel and the Named Plaintiffs were well informed before entering into

23  the Settlement.

24        This factor weighs in favor of approving the Settlement.

25              **3.        Risk, Expense, Complexity, and Likely Duration of Further Litigation**

26        The complexity, expense, and likely duration of further litigation also weigh in favor of

27

28  CASE NO.: 5:18-MD-02827-EJD
   ORDER GRANTING NAMED PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
   ACTION SETTLEMENT

1    approving the Settlement.  Absent a settlement, the parties would have to proceed with more

2    discovery, including the unresolved motions regarding additional depositions (*see* Decl. of Co-

3    Lead Counsel ¶ 33), to the summary judgment stage, to a lengthy trial including disputes over

4    damages, post-trial motions, and potentially to an appeal.  And as Class Counsel observed, "even

5    if anything were recovered, it would take years to secure, as Apple would undoubtedly appeal any

6    adverse judgment."  Mot. at 10.  The litigation is complex, requiring the appointment of a Special

7    Discovery Master, and expensive, with Class Counsel claiming nearly $1 million in litigation

8    expenses alone.  The related JCCP Action further multiplies the complexity and expense.

9            The Settlement reached here with the assistance of Judge Phillips saves the parties and

10   Class members time, and avoids the additional expenditures of monies and the anxiety of

11   substantial prolonged litigation.  Thus, the risk, expense, complexity, and likely duration of further

12   litigation weigh in favor of approving the Settlement.

13                   **4.      Risk of Maintaining Class Action Status Throughout the Trial**

14           This Court granted preliminary certification of the Settlement Class which, per the

15   Stipulation of the parties, is solely for the purpose of the Settlement.  If the litigation proceeded,

16   however, there was a risk that a class would not be certified.  Class Counsel anticipated a dispute

17   over "whether a particular iPhone user was affected [based] upon how that person used the iPhone,

18   including what "apps" were on the phone, etc."  *Id*. at 9.  The resolution of that issue and

19   additional potential factual disputes posed great risk to Plaintiffs maintaining a viable class. The

20   Settlement avoids that risk in favor of great benefit to the Settlement Class.

21           This risk of maintaining a class action weighs in favor of approving the Settlement.

22                   **5.      Amount Offered in Settlement**

23           The Settlement is within the range of reasonableness.  "Based on a damages analysis by

24   Named Plaintiffs' consultant, if Named Plaintiffs fully prevailed on every one of their remaining

25   claims, damages would have amounted to between $18 and $46 per iPhone."  *Id.* at 9.  The $25

26   cash payment per eligible device is comfortably in the middle of this estimated damages range.

27

28   CASE NO.: 5:18-MD-02827-EJD
     ORDER GRANTING NAMED PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
     ACTION SETTLEMENT

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

Some objectors contend that there is insufficient information in the record to substantiate the estimated $18 to $46 range of damages.  Obj. of Alexis West ("West Obj.") at 7-8, Dkt. No. 514.  For example, West objects that "Class counsel have not attached a declaration or report from the mystery consultant.  Nor have they even indicated that the individual has the requisite qualifications to opine, and if so, what they are."  West Obj. at 7; *see also* Obj. of Kevin Saunders ("Saunders Obj.") at 5, Dkt. No. 513 ("Plaintiffs give almost no information on how they calculated the value of the claims.  Relying on a single sentence that describes liability 'between $18 and $46 per iPhone,' . . . they provide no information at all on how many Class Members there are, so there is no way to calculate Defendant's total potential liability.").

Although the information initially presented was thin, on December 11, 2020, Named Plaintiffs submitted a Supplemental Brief providing the underlying analysis for their calculation of potential damages.  Pls.' Suppl. Br. Regarding the Calculation of Estimated Damages ("Pls.' Suppl. Br. re Calculation of Estimated Damages"), Dkt. No. 591.  Class Counsel's consultant, Dr. Michael A. Williams of Competition Economics, LLC, estimated damages by determining the decline in the resale value of eligible devices compared to what the resale value would have been but for the alleged "throttling" of the devices upon the installation of iOS 10.2.1 and 11.2.  *See* Suppl. Joint Decl. of Joseph W. Cotchett and Laurence D. King in Supp. of Mot. for Settlement (" Suppl. Decl. of Co-Lead Class Counsel") ¶ 6, Dkt. No. 552.  Dr. Williams used actual sales data in the secondary market for both the resale value of eligible devices during the relevant period and resale of previous models of iPhones.  Pls.' Suppl. Br. re Calculation of Estimated Damages at 1-2.  He then performed a "difference-in-difference" regression analysis of the data to compare the resale value of used iPhone 6 devices prior to and after the release of iOS 10.2.1 (January 2017).  *Id*. at 2.  The regression model controlled for price differences attributed to differences in iPhone models, storage capacity, carrier, condition and months after release.  *Id*.  Dr. Williams determined that the resale value of eligible devices was 6.2-9.8% lower than expected when compared to decline in value of previous iPhone models, and thus could be attributed to the "throttling" of

1    performance by iOS 10.2.1 and 11.2.  Decl. of Michael A. Williams, PH.D., Dec. 11, 2020, ¶¶ 25-

2    26, Dkt. No. 591-1.  Dr. Williams concluded that the range of damages per eligible device was

3    between $12.29 and $18.99.  *Id.* ¶ 27.

4           Class Counsel performed an additional calculation to determine an upper range of

5    estimated damages due to iOS 10.2.1 and 11.2 based on Dr. Williams' regression and the

6    estimated 6-10% of impact.  Suppl. Decl. of Co-Lead Class Counsel, ¶ 6.  Specifically, Class

7    Counsel calculated the average monthly sales price of all used eligible devices during the relevant

8    period at $460.  Pls.' Suppl. Br. re Calculation of Estimated Damages at 2.  Class Counsel applied

9    the 6-10% price impact range to the $460 average price, and concluded that the upper range of

10   damages is $27.60-$46.00 per device.  *Id.*

11          A $25 recovery per Approved Claim is in the middle of the upper range, representing 54%

12   of $46 and 137% of $18.  Moreover, because of the likely pro rata increase, the actual payout will

13   exceed $25.  Considering the risks of further litigation and the substantial recovery amount, this

14   factor weighs in favor of approving the Settlement.  *See, e.g.*, *Linney v. Cellular Alaska P'ship*,

15   151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a

16   fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is

17   grossly inadequate and should be disapproved.") (citation omitted); *Schaffer v. Litton Loan Serv.,*

18   *L.P.*, 2012 WL 10274679, at *11 (C.D. Cal. Nov. 13, 2012) ("Estimates of a fair settlement figure

19   are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the

20   expected delay in recovery (often measured in years.)"); *Roe v. Frito-Lay, Inc.*, 2016 WL

21   4154850, at *7 (N.D. Cal. Aug. 5, 2016) (noting that "the risks and costs associated with class

22   litigation weigh strongly in favor of settlement" where "Plaintiff would [have been] required to

23   successfully move for class certification under Rule 23, survive summary judgment, and receive a

24   favorable verdict capable of withstanding a potential appeal").

25   ///

26   ///

27   CASE NO.: 5:18-MD-02827-EJD
     ORDER GRANTING NAMED PLAINTIFFS'  MOTION FOR FINAL APPROVAL OF CLASS
28   ACTION SETTLEMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

### 6.    Experience and Views of Counsel

Class Counsel has significant experience with consumer class-actions.  Mot. for Att'ys' Fees, Expenses, and Service Awards ("Mot. for Att'ys' Fees") at 9, Dkt. No. 468 (citing a string of cases prosecuted by Class Counsel, including *Zepeda v. PayPal, Inc.*, 2017 WL 1113293, at *20 (N.D. Cal. Mar. 24, 2017)).  The Settlement was reached only after extensive arm's-length negotiations between experienced counsel, including several in-person mediation sessions and additional negotiations facilitated by Judge Phillips.  Decl. of Co-Lead Counsel ¶ 7.  That the Settlement was based upon Judge Phillips' proposal demonstrates non-collusive conduct.  *See, e.g.*, *Ebarle v. Lifelock, Inc.*, 2016 WL 234364, at *6 (N.D. Cal. Jan. 20, 2016) (finding that acceptance of a mediator's proposal following mediation sessions "strongly suggests the absence of collusion or bad faith"); *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (noting that private mediation "tends to support the conclusion that the settlement process was not collusive").

Class Counsel also believes the Settlement is fair, adequate and reasonable, taking into account the risks, burdens, and expense of continued litigation.  The experience and views of well-informed and experienced Class Counsel favor approval of the Settlement.  *See, e.g.*, *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight").

Therefore, the experience and views of Class Counsel and the absence of collusion weigh in favor of approving the settlement.

### 7.    Reaction of the Class Members

For the Settlement Class Members for whom an email address was present and the email address was determined to be valid, the Settlement Administrator disseminated 90,119,272 email notices and 5,609,281 mail notices.  As of the date Named Plaintiffs first sought final approval, 3,148,999 claims had been submitted, for a response rate to the notice of approximately 3.5%.  As

of January 22, 2021, the total number of submitted claims grew to 3,284,985, for a response rate of approximately 3.6%.

Angeion received 314 timely requests for exclusion.  Reply at 3.  The number of requests for exclusion compared to the number of notices sent is 0.00035%, and the number of requests for exclusion when compared to the number of claims filed is 0.01%.

There have been over 75 timely objections (including Apple's opposition to the attorneys' fees requested) filed with the Court.  Some of these letters are on behalf of multiple objectors, with a total of 145 objectors representing significantly below 0.01% of the participation.  By Apple's calculations, only a miniscule 0.00007% of Responding Class Members submitted any formal or informal objection.  Def.'s Statement at 2.  Of these objections, most do not take issue with the adequacy of the settlement terms or the fairness of the process at all.  Instead, the main concern relates to the issue of Class Counsel's request for attorneys' fees and expenses, which will be the subject of a separate court order.

"The fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."  *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 320 (N.D. Cal. 2018); *see also In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2005) (The "low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval."); *Churchill Vill.*, 361 F.3d at 577; *In re Toyota Motor Corp. Unintended Acceleration Mkting, Sales Pract., and Prods. Liab. Litig.*, 2013 WL 3224585, at *12 (C.D. Cal. June 17, 2013) (finding the terms of the settlement favorable to class members where, out of 22 million class notices sent, "fewer than 2,000" sought exclusion and "fewer than 100" objected to the settlement).  Further, Class Counsel have provided 57 examples of especially positive reactions by class members.  *See* Decl. of Co-Lead Counsel, Ex. 1, Dkt. No. 471-1.

However, "[t]he relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought,

1    and the unique facts and circumstances presented by each individual case." *Carter v. McDonald's*

2    *Restaurants*, 2017 WL 5634300, at *2 (C.D. Cal. Mar. 15, 2017) (quoting *Officers for Justice*, 688

3    F.2d at 625).  "It is the settlement taken as a whole, rather than the individual component parts,

4    that must be examined for overall fairness, and the settlement must stand or fall in its entirety."

5    *Id.* (quoting *Staton*, 327 F.3d at 960 (9th Cir. 2003)).  Therefore, despite the exceedingly low

6    number of objections relative to the total number of responses, it is appropriate for the Court to

7    give consideration to some, not all, of the more serious, common, and representative objections.[4, 5]

8        "[O]nce the court is satisfied that the decree was the product of good faith, arms-length

9    negotiations, a negotiated decree is presumptively valid and the objecting party 'has a heavy

10   burden of demonstrating that the decree is unreasonable.'"  *United States v. Oregon*, 913 F.2d 576,

11   581 (9th Cir. 1990); *see also Schechter v. Crown Life Ins. Co.*, 2014 WL 2094323, at *2 (C.D.

12   Cal. May 19, 2014) (objector bears burden of showing that settlement approval would contravene

13   its equitable objectives).  "The standard for approval of a proposed settlement is whether it is fair,

14   adequate, reasonable, and free from collusion – not whether the class member could have received

15   a better deal in exchange for the release of their claims."  *Rosado v. Ebay Inc.*, 2016 WL 3401987,

16   at *9 (N.D. Cal. June 21, 2016) (citing *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 583

17   (N.D. Cal. 2015)).

18   ///

19

20   [4] Objections to Attorneys' Fees, Expenses, and Service Awards are not considered herein because
     the Settlement provides that "[t]he Court's award(s) of Attorneys' Fees and Expenses and/or
21   Named Plaintiff Service Awards, if any, shall be separate from its determination of whether to
     approve the Settlement.  In the event the Court approves the Settlement, but declines to award
22   Class Counsel's Attorneys' Fees and Expenses and/or Named Plaintiff Service Awards in the
     amounts requested by Class Counsel, the Settlement will nevertheless be binding on the Parties."
23   Stipulation § 8.6.

24   [5] In their Reply, Named Plaintiffs argue that "a number of objections were filed with the Court
     without any proof that the objector owned a relevant iPhone at issue in this litigation.  Because
25   'only class members may object to a class action settlement,' the Court should overrule these
     objections for lack of standing."  Reply at 5 (quoting *Moore v. Verizon Commc'ns Inc.*, 2013 WL
26   4610764, at *9 (N.D. Cal. Aug. 28, 2013)).  However, because some of the objections are to the
     claims process and specifically to the required proof, and are largely duplicative of objections
27   repeated by class members with proper standing, the Court has considered them.

     CASE NO.: 5:18-MD-02827-EJD
28   ORDER GRANTING NAMED PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
     ACTION SETTLEMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

### a.    Objections to Amount of Compensation

A number of objectors argue that the amount of compensation promised by the Settlement was too low.  *See, e.g.,* Dkt. Nos. 432, 433, 436, 457, 473, 480, 483, 486, 489, 490, 494, 497, 506, 509, 534, 537, 540.  For example, one objector asserts that "Apple should not be able to settle this case after knowingly altering the lifespan of [the class members'] mobile phones" and that they "must be held accountable to a price deeper than money."  Obj.ection of Erik Summers, Dkt. No. 433.  Others propose that Class Members should receive $29 per eligible Device as reimbursement for the price of new batteries (Obj. of Evan Nayee, Dkt. No. 436), or $1,500-$3,000 (Obj. of Dominique Morgan, Dkt. No. 457), or at least "10 times what it is" (Obj. of Jeff Mohlenbrok, Dkt. No. 483), or half the cost of a replacement device (Obj. of Andrew Whitfield, Dkt. No. 486).  Common themes in these types of objections are that "it is highly unlikely Apple was unaware of [its] product[s'] shortcomings", that "when companies do unethical things, the court MUST PUNISH THEM," and that "Apple is a $2 Trillion company and should compensate its customers for this treachery."  Obj. of Brian Zahnstecher, Dkt. No. 540; Obj. of Wade Ritche, Dkt. No. 490; and Obj. of Audrey Duncan, Dkt. No. 494, respectively.

All of these objections are based upon assumptions about what the evidence in this case might show and what a jury might find at trial, without taking into consideration the strength of any of Apple's potential defenses.  Apple denies any wrongdoing, contending that the performance management feature at issue was a solution, not a shortcoming, that delivered a better experience for customers and prolonged the life of older iPhone devices.  And even if a jury ultimately concluded that the relevant iOS systems diminished rather than enhanced performance, Apple's conduct can hardly be considered treacherous.  According to Apple, the relevant iOS systems potentially caused conditions such as longer app launch times, lower frame rates while scrolling, backlight dimming and lower speaker volume—conditions that may have been imperceptible to users and arguably did not cause any injury whatsoever.  The Ninth Circuit has stated that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is not to be

CASE NO.: 5:18-MD-02827-EJD
ORDER GRANTING NAMED PLAINTIFFS'  MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

United States District Court
Northern District of California

1   judged against a hypothetical or speculative measure of what *might* have been achieved by the

2   negotiators." *Officers for Justice,* 688 F.2d at 625 (emphasis in original).

3       Furthermore, no matter how much aggrieved Settlement Class Members might wish to

4   punish Apple, punishment is not the purpose of a settlement.  "Rather, 'the very essence of a

5   settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'" *Schaffer*,

6   2012 WL 10274679, at \*11 (quoting *Id*. at 624).  As Named Plaintiffs argue, "there is no basis to

7   support a larger recovery . . . [and] 'no guarantee that the class would receive a better deal' than

8   the one reached in this Settlement."  Reply at 11 (quoting *Hanlon*, 150 F.3d at 1027).

9       Kevin Saunders ("Saunders") complains that the Notice "does not provide Class Members

10  with any clue as to the value of the claims they are releasing, the actual amount Defendant will

11  pay, the number of Class Members who will share that payment, or the actual value of payment

12  they might receive."  Saunders Obj. at 1.  This is inaccurate.  The first bullet point in the Notice

13  clearly states: "Under the proposed settlement, Apple will make a minimum, non-reversionary

14  payment of $310,000,000 and a maximum payment of $500,000,000, depending on the number of

15  claims submitted."  Dkt. No. 416-2 at 2.  The Notice includes the following:

16      **Amount of Case Payment**:  The cash payment per eligible device
        depends on the actual number of approved claims and other factors,
17      including the award of attorneys' fees and expenses and named
        plaintiff service awards. Under the proposed settlement, Apple shall
18      pay a minimum of $310,000,000 (the "Floor") and a maximum of
        $500,000,000 (the "Ceiling"). Under no circumstances shall any of
19      the Floor revert to Apple.

20      Apple will provide a cash payment of approximately $25 per eligible
        device, provided that Apple will not pay more than $500 million in
21      aggregate to the Settlement Class Members. If the total value of
        approved claims submitted exceeds the $500 million Ceiling, the
22      value of each approved claim (per eligible device) will be reduced on
        a pro rata basis. Additionally, under the proposed settlement, if the
23      total value of approved claims submitted by Settlement Class
        Members does not exceed the $310 million Floor, the value of each
24      approved claim (per eligible device) may be increased on a pro rata
        basis, up to a maximum of $500 per device.  For more details, please
25      refer to the more detailed Settlement Agreement available at
        www.SmartphonePerformanceSettlement.com.
26
    *Id*. at 7.  Thus, the Notice clearly conveys that the amount of the cash payment was approximately
27
    CASE NO.: 5:18-MD-02827-EJD
28  ORDER GRANTING NAMED PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
    ACTION SETTLEMENT

1    $25 per eligible device and that the actual amount would depend on the number of approved

2    claims.  At the time the Notice was sent, there was no way to know how many claims would

3    ultimately be approved.[6]  Moreover, to the extent Saunders contends that more information should

4    have been included in the notice, the argument is not supported by Federal Rule of Civil Procedure

5    23(b)(3).  "A settlement notice need not 'provide an exact forecast' of the award each class

6    member would receive, let alone a detailed mathematical breakdown."  *In re Hyundai and Kia*

7    *Fuel Eco. Litig.*, 926 F.3d 539, 567-68 (9th Cir. 2019).  Rather, the notice must give class

8    members "enough information so that those with 'adverse viewpoints' could investigate and

9    'come forward and be heard.'"  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th

10   Cir. 2015) (quoting *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012)).

11          Saunders also asserts that the $310 million dollar Settlement is too low compared to the

12   upper end of Apple's potential liability, which he calculates to be over $4 billion ($46 per device

13   multiplied by 90,119,272 Class Members equals $4,145,486,512).  Saunders Obj. at 5-6.  By

14   Saunders' calculations, a $310 million dollar settlement represents just over 7% of the total

15   liability.  *Id*. at 6.  However, courts have approved settlements that recovered a similar, or smaller,

16   percentage of maximum damages.  *See, e.g.*, *McPhail v. First Command Fin. Planning, Inc.*, 2009

17   WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a $12 million settlement recovering 7% of

18   estimated damages was fair and adequate); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036,

19

20   [6] Saunders also challenges the "Settlement Range" of $310-500 million as "illusory" because
     "[u]nder the terms of the Settlement, it would take a response rate three times higher than the

21   maximum predicted by Named Plaintiffs for Defendant to pay a penny more than the $310 million
     minimum." Saunders Obj. at 7 (citing a "predicted between four and five percent (4%-5%)"

22   response rate by Plaintiffs in Motion for Preliminary Approval at 18:3, Dkt. No. 415).  The Court
     disagrees.  This case is unique in that it involves ubiquitous products, a massive class, and one of

23   the largest cash recoveries in U.S. history.  As such, the response rate in this case could very well
     have surpassed the predicted percentage response rate.  Indeed, at the preliminary approval stage,

24   Class Counsel expressed the expectation that the response rate would be "at the high end of the
     range, or greater, taking into consideration not only Defendant's brand recognition, but also the

25   fact that the Settlement Administrator will be providing direct notice to Settlement Class
     Members, as well as the substantial media coverage of the issues in the case." Pls.' Mot. for

26   Prelim. Approval at 18:3-6.  It may be that the likelihood of the response rate reaching three times
     higher than 4-5% was low, but that does not mean the Settlement range is illusory.

27   CASE NO.: 5:18-MD-02827-EJD

28   ORDER GRANTING NAMED PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
     ACTION SETTLEMENT

1042 (N.D. Cal. 2008) (approving of a $13.75 million settlement yielding 6% of potential damages after deducting fees and costs) (citation omitted); *Int'l Bd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc*., at *3 (D. Nev. Oct. 19, 2012) (approving $12.5 million settlement recovering about 3.5% of the maximum damages that plaintiffs believe could be recovered at trial); *Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*, 2016 WL 5938722, at *5 (C.D. Cal. May 16, 2016) (granting final approval where recovery was as low as 3.21% of potential recovery).

Relatedly, Saunders requests that "[a]t an absolute minimum, the situation requires that objectors be allowed to take further discovery as to the fairness of the proposed settlement." Saunders Obj. at 5 (relying on *Girsh v. Jepson*, 521 F. 2d 153, 157 (3rd. Cir 1975)).  The Ninth Circuit, however, has disapproved of *Girsh*, stating that, "[t]he growing rule is that the trial court may limit its proceeding to whatever is necessary to aid it in reaching an informed, just[,] and reasoned decision."  *United States v. Oregon.*, 913 F.2d at 582 (agreeing with *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977), over *Girsh*).  A court is not expected "to convert settlement agreement hearings into trials on the merits."  *Id*. (quoting *Plummer v. Chem. Bank,* 668 F.2d 654, 656 (2d Cir. 1982)).  "The fundamental question is whether the District Judge has sufficient facts before him to intelligently approve or disapprove the settlement."  *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 619-20 (S.D. Cal. 2005).  Here, the record includes sufficient facts for the Court to make an informed, just, and reasoned decision.  The Settlement is based upon a well-reasoned calculation of potential damages by Dr. Williams.  The damages calculation model employed was recently approved by Judge Koh in *Grace v. Apple, Inc.*, 328 F.R.D. 320, 337-43 (N.D. Cal. 2018).  Class Counsel also used Dr. Williams' calculations to determine an upper range of damages.  Importantly, the proposed Settlement was the product of a mediator's proposal.

The Court concludes that there is a strong evidentiary basis for the $310 million sum and that it is adequate, fair, and reasonable.  Each Settlement Class Member will receive $25 or more for each eligible iPhone.  Indeed, Class Counsel estimates that each Settlement Class Member will

1   receive $65 or more per Approved Claim.  Reply at 6.  The possibility that "the settlement could

2   have been better . . . does not mean the settlement presented [is] not fair, reasonable, or adequate,"

3   and the question before this Court is "not whether the final product could be prettier, smarter or

4   snazzier."  *Hanlon,* 150 F.3d at 1011.

5          The objections to the amount of the settlement are overruled.

6                          **b.        Objections to the Lawsuit Altogether**

7          Other objectors argue that Apple has done nothing wrong, and that the Settlement should

8   be reduced as much as possible or the lawsuit dismissed entirely.  *See, e.g.,* Dkt. Nos. 441, 451,

9   456, 479, 484, 492, 531.  For example, one objector writes that in software development, "[t]here

10  are always trade-offs, but . . . that Apple was honestly trying to make sure that devices worked as

11  well as they could as the batteries aged."  Obj. of Martin MacKerel, Dkt. No. 441.  Another

12  objector feels "that to complain of the performance of these, in [their] experience, very reliable

13  and efficient devices is a pettiness of an exceeding spleenful nature."  Obj. of Leonardo Mendoza

14  III, Dkt. No. 492.

15         These objections are unpersuasive for the reasons already discussed above as to the

16  previous category of objections.  Apple's wrongdoing or innocence is not relevant, as the parties

17  have determined that, for a host of factors, settlement and compromise are in their best interest.

18  Apple has explained that even though it stands by the challenged performance management

19  feature, it "recognized that some customers felt let down by the way it communicated with them

20  about the performance management feature.  After hard-fought litigation and several rulings by

21  this Court narrowing Plaintiffs' claims, the parties agreed to resolve this litigation."  Def.'s

22  Statement at 1.  Furthermore, as Named Plaintiffs have aptly observed, "class members do not

23  have standing to object that the settlement is unfair to *Defendants* rather than the class."  *Friedman*

24  *v. Guthy-Renker, LLC,* 2017 WL 6527295 at *8 (C.D. Cal. Aug. 21, 2017) (emphasis in original)

25  (citation omitted).

26         The objections to the lawsuit do not bar final approval.

27

28

United States District Court
Northern District of California

CASE NO.: 5:18-MD-02827-EJD
ORDER GRANTING NAMED PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

United States District Court
Northern District of California

### c.   Objection to the Attestation Requirements

Some individual objectors object to the attestation requirement.  *See* Dkt. Nos. 435, 444, 448.  That is, they object to the requirement that they attest, under penalty of perjury, that their phone ran the relevant iOS systems or suffered diminished performance.  One objection describes the attestation requirement as "an impossible burden for all but the most knowledgeable of eligible members of the class. . . . How could any member without particular test data on their particular phone have any standard with which to judge their iPhone's performance[?]"  Obj. of Mark Wilson, Dkt. No. 435.  In a similar vein, another objector argues that "[t]here is no way for me to know or verify that more than 2 years ago my iPhone ran version 10.2.1 or later of iOS. . . . I would need to get a screenshot of my iPhone on January 201[7], take a note of the date, and keep doing this every time a new version of the iOS was released."  Obj. of Frank Olozaga, Dkt. No. 448.

Although the concerns of these objectors are understandable, "there is nothing unfair about requiring a claimant to meet the eligibility requirements for a particular benefit."  *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *30 (N.D. Ga. Mar. 17, 2020) (citing Manual for Complex Litig. (Fed. Jud. Center, 4th ed. 2004), § 21.66 ("Class members must usually file claims forms providing details about their claims and other information needed to administer the settlement.")).  Some potential class members may have owned and operated one of the listed eligible devices without ever installing the appropriate iOS, and thus would not be eligible to recover under the Settlement.  Only those devices which ran the relevant iOS systems at the relevant time, and which experienced diminished performance, are the subject of this lawsuit.

At the time of the settlement, whether anyone experienced diminished performance was a critical factual issue in dispute.  Def.'s Statement at 11.  In light of this factual dispute, the parties negotiated a settlement that requires proof of the alleged harm before a claimant is entitled to a settlement payment.  *Id*.  That compensation under the Settlement "[is] limited to those who [experienced diminished performance]" is simply "a reflection of the bargaining and compromise

1    inherent in settling disputes." *Calif. v. IntelliGender*, 771 F.3d 1169, 1179 (9th Cir. 2014)).

2          An attestation is a reasonable means to ensure payments are made to only claimants who

3    were harmed.  *In re Hyundai and Kia Fuel Eco. Litig.*, 926 F.3d at 568 ("[S]ome sort of claims

4    process is necessary in order to verify . . . that the claimant is a current owner, former owner, or

5    current or former lessee of a qualifying [device]."); *see also Kacsuta v. Lenovo (U.S.) Inc.*, 2014

6    WL 12585787, at *4 (C.D. Cal. Dec. 16, 2014) (requiring a declaration under penalty of perjury is

7    "widely accepted procedure of claims-based class action settlements"); *Perkins v. LinkedIn Corp.*,

8    2016 WL 613255, at *9 (N.D. Cal. Feb. 16, 2016) (citing *IntelliGender, LLC*, 771 F.3d at 1175);

9    *In re Sony PS3 "Other OS" Litig.*, 2017 WL 5598726, at *28 (N.D. Cal. Nov. 21, 2017)

10   (approving settlement requiring attestation under penalty of perjury, of injury as a result of a

11   firmware update that disabled certain software functionalities); *Moore v. Verizon Commc'ns Inc.*,

12   2013 WL 4610764, at *12–13 (N.D. Cal. Aug. 28, 2013) (overruling objection to requirement to

13   "aver under penalty of perjury" that they were harmed).  Furthermore, swearing under oath does

14   not imply perfect, completely verifiable knowledge but only that, as the Claim Form makes clear,

15   "the information above is true and correct *to the best of my knowledge and belief*."  *See*

16   Stipulation, Ex. A ("Claim Form") 6, Dkt. No. 416-1 (emphasis added).

17         The objections to the attestation requirement are overruled.

18                  **d.**       **Objection to Serial Number Requirement**

19         Other objectors take issue with the requirement to provide a serial number.  *See* Dkt. Nos.

20   438, 449, 452, 464, 465, 476, 477, 501, 536, 539.  Many objectors explain that "[p]roviding the

21   required information regarding serial numbers is impossible" because they "no longer have the

22   phones, the receipts, or the original boxes."  Obj. of Candace Fager, Dkt. No. 501; and Obj. of

23   Juliet Belko, Dkt. No. 464, respectively.  One objector complains that using the settlement address

24   to attempt to locate the serial number based on email and physical address "is not useful and does

25   not work as intended."  Obj. of Jane Kim, Dkt. No. 449.  These objectors raise the concern that

26   "millions of totally valid claims are rejected by the settlement process and millions of users are

27

28   ORDER GRANTING NAMED PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
     ACTION SETTLEMENT

United States District Court
Northern District of California

1   unable to submit their valid claims" because of the inability to locate a serial number, despite

2   lengthy attempts to do so.  *See, e.g.,* Obj. of Tyler Worthington, Dkt. No. 536.

3        Like the attestation requirements, the serial number requirement serves an important

4   purpose: the identification of eligible devices.  As Apple has explained throughout the litigation:

> . . . not every iPhone 6, 6 Plus, 6s, 6s Plus, 7, 7 Plus, or SE device was
> eligible. Rather, it is only those devices that installed iOS 10.2.1 (for
> iPhone 6, 6 Plus, 6s, 6s Plus, or SE) or iOS 11.2 (for iPhone 7 or 7
> Plus) before December 21, 2017 that are eligible. (Dkt. 416 ¶ 1.32.)
> Requiring claimants to provide a device identifier ensures that each
> claim can be matched to a device that appears in Apple's records as
> having downloaded the relevant iOS version during the applicable
> time period. Providing proof of eligibility thereby safeguards the
> integrity of the claims process by ensuring only claims for eligible
> devices are approved, and that those eligible claims are not diluted by
> ineligible claims.

11  Def.'s Statement at 3.  The serial number requirement is a reasonable means to confirm eligibility.

12  *See, e.g.*, *In re Magsafe Apple Power Adapter Litig.*, 2015 WL 428105, at *4 (N.D. Cal. Jan. 30,

13  2015) (approving settlement requiring claimants to provide serial number); *Carlotti v. ASUS

14  Comput. Int'l*, 2020 WL 3414653, at *3 (N.D. Cal. June 22, 2020) (same); *Corzine v. Whirlpool

15  Corp.*, 2019 WL 7372275, at *2 (N.D. Cal. Dec. 31, 2019) (same).  Moreover, the serial number

16  requirement is a means to safeguard against fraudulent claims.  Tr. of Dec. 4, 2020 Hr'g at 155.

17       The serial number can be ascertained from the device itself, the device packaging, or

18  purchase receipts, as well as through cellular service carriers.  Def.'s Statement at 9.  Nevertheless,

19  some claimants have had difficulty providing their serial number.  This is to be expected given the

20  enormous size of the Class, and Apple has worked with the Settlement Administrator to provide

21  detailed instructions on how to locate the serial number and to provide multiple methods to assist

22  Class Members.  *Id.* at 7.

23       Furthermore, it is not accurate that all Class Members were required to provide a serial

24  number in order to submit a claim.  Class Members could use the search tool available through the

25  settlement website to enter their name, Apple ID, mailing address, and iPhone model.  *Id.* at 8.  If

26  the claimant was eligible, the webpage would pre-populate the device serial number into the

United States District Court
Northern District of California

CASE NO.: 5:18-MD-02827-EJD
ORDER GRANTING NAMED PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

1    online Claim Form.  *Id*.; Angeion Decl. ¶¶ 20-23.  Thus, a claimant who no longer possessed an

2    eligible device, packaging for the device, a purchase receipt, or cellular service carrier records,

3    could use the search tool to prepopulate a valid serial number for an eligible device and submit a

4    claim.  Alternatively, potential claimants unable to provide a serial number had the option of

5    mailing in a paper claim form with additional documentation that they believed established their

6    ownership of an eligible device.  Angeion Decl. ¶ 23; Tr. of Dec. 4, 2020 Hr'g at 149 ("Where we

7    found out about an issue, we worked to resolve it."), 151 ("if people had difficulty with the serial

8    numbers there were alternatives.").

9         Finally, Class Counsel has assured the Court that they have spent and will continue to

10   spend significant time and resources working with claimants to resolve any issues claimants may

11   have had regarding submission of a serial number.  Reply at 10.  Apple has made similar

12   representations.  Specifically, Apple's counsel represented that Apple has spent countless hours

13   taking the information submitted—names, addresses, IMEI numbers, other numbers, device

14   identifying information—and running it through Apple's database to confirm a device was

15   eligible.  Tr. of Dec. 4, 2020 Hr'g at 155.  Further, Apple's counsel represented that as long as

16   there was some "subjective indicia" that a claimant was part of the Class, "those claims were

17   processed and permitted, and those claims will be approved if this Settlement is approved."  *Id*.

18        The objections to the serial number requirement are overruled.

19              **e.        Objections of Non-Natural Persons ("NNPs")**

20        Objections have also been filed by non-natural persons (collectively "NNP objectors").

21   *See* Obj. of Best Companies, Inc. ("Best Companies Obj."), Dkt. No. 517; Obj. to Pls.' Mot. for

22   Final Approval of Proposed Settlement on behalf of 66 NNPs ("66 NNPs Obj."), Dkt. No. 518;

23   Howard Yellen's Letter dated Oct. 5, 2020, asserting objection on his own behalf as well as on

24   behalf of his companies Florange Rental Management LLC and Spectrum Settlement Recovery,

25   LLC ("Spectrum Obj."), Dkt. No. 541.  These objections, which are particular to issues faced by

26   NNPs, challenge three facets of the Settlement: the class definition, notice, and claims process.

27   CASE NO.: 5:18-MD-02827-EJD
     ORDER GRANTING NAMED PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
28   ACTION SETTLEMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In light of the perceived deficiencies, Best Companies asks that either NNPs be excluded

2    from the Settlement Class, or that the Settlement be rejected and revised to fix the deficiencies

3    before another round of notice is conducted.  Best Companies Obj. at 8.  Spectrum asks that the

4    Court withhold final approval until the class definition is clarified, the attestation requirement is

5    relaxed, the deadline for NNPs to file claims or opt-out are extended, the claims-splitting process

6    is removed, the Court considers creating a subclass, the website is revised to provide guidance to

7    NNPs, and the Court "[d]etermine[s] that all benefits from the settlements redound to the

8    companies that purchased or leased Qualifying Devices on behalf of their employees, and remove

9    the illogical splitting of recoveries between the employers and employees."  Spectrum Obj. at 9.

10   Finally, the 66 NNPs only request that the Court withhold final approval until the claims process is

11   amended to better accommodate NNPs.  66 NNPs Obj. at 15.

12   As to the first challenge, NNP objectors assert that corporations or NNPs are ineligible to

13   participate.  Best Companies Obj. at 2, 7; Spectrum Obj. at 5.  By its plain terms, however, the

14   Settlement does not exclude corporations.  Rather, the Settlement Agreement provides that

15   "former or current U.S. owners" of eligible devices are included in the settlement.  Eligibility is

16   determined based on the device; whether the owner is a natural or non-natural person does not

17   matter.  The Settlement defines "U.S. owners" to include all "individuals who owned, purchased,

18   leased, or otherwise received an eligible device, and individuals who otherwise used an eligible

19   device for personal, work, or any other purposes."  Dkt. 416 ¶ 1.32.  The term "individuals" is not

20   restricted in any way to natural persons.  Def.'s Statement at 17.  The Court recognizes that

21   initially, there may have been some uncertainty about whether NNPs were included in the Class.

22   The issue, however, has been resolved.  The deadline for NNPs was extended, Angeion is

23   accepting claims from NNPs, and the claim review process is ongoing.

24   Second, Best Companies, a company that purchased approximately thirty phones, asserts

25   that it is unfair to include NNPs in the class, citing *In re Graphics Processing Units Antitrust*

26   *Litig.*, 253 F.R.D. 478 (N.D. Cal. 2008).  Best Companies Obj. at 6.  Best Companies argues

27

28   CASE NO.: 5:18-MD-02827-EJD
ORDER GRANTING NAMED PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

1    among other things, that "Named Plaintiffs all used one or few devices; NNPs purchased many."

2    *Id*. at 6.  In *In re Graphics Processing Units Antitrust Litig.*, the court denied certification of the

3    class because "[t]he wholesale purchasers therefore came to the negotiating table in a

4    fundamentally different position than the representative plaintiffs", and therefore the typicality

5    requirement was not satisfied.  *In re Graphics Processing Units*, 253 F.R.D. at 490.  The present

6    case is distinguishable.  Unlike in *In re Graphics Processing Units Antitrust Litig.*, "there is no

7    suggestion that the Best Companies' purchases were different in any way from individual

8    purchasers other than the number of iPhones purchased."  Reply at 15.

9        Next, NNP objectors assert that the notice process was deficient for them.  Best Companies

10   Obj. at 2; Spectrum Obj. at 5.  The objection is without merit.  Angeion Group undertook a

11   comprehensive notice campaign.  A company that registered an eligible device would have

12   received direct notice of the Settlement, whether by email or postcard.  Reply at 8.  Indeed

13   "[n]otice was disseminated to hundreds of thousands of corporate email addresses."  *Id*. at 7.  The

14   66 corporations that filed a joint objection acknowledge that they received notice of the

15   Settlement.  Decl. of Rosa M. Morales in Supp. of Obj. to Pls.' Mot. for Final Approval of

16   Proposed Settlement ¶ 4, Dkt. No. 518-1.  That NNPs submitted claims for more than 922,000

17   devices also speaks to the effectiveness of the notice.  The notice program was well executed, far-

18   reaching, and exceeded both Federal Rule of Civil Procedure 23(c)(2)(B)'s requirement to provide

19   the "best notice that is practicable under the circumstances" and Rule 23(e)(1)(B)'s requirement to

20   provide "direct notice in a reasonable manner."  There is no reason to believe that there has been

21   any systematic exclusion of NNPs from the notice campaign.

22       Fourth, NNP objectors take issue with the claims process, asserting that "the claims

23   process 'should be as simple, straightforward, and nonburdensome as possible' and avoid 'such

24   strict eligibility conditions or cumbersome claims procedures that [will render] many members []

25   unlikely to claim benefits.'"  66 NNPs Obj. at 7 (quoting 4 Newberg on Class Actions § 12:21 (5th

26   ed. June 2020 Update) and *Keller v. Nat'l Collegiate Athletic Ass'n (NCAA)*, 2015 WL 5005901,

27   

28   CASE NO.: 5:18-MD-02827-EJD
     ORDER GRANTING NAMED PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
     ACTION SETTLEMENT

United States District Court
Northern District of California

at *5 (N.D. Cal. Aug. 19, 2015)).  In particular, NNP objectors challenge the attestation and serial number requirements.  Best Companies Obj. at 7-8; 66 NNPs Obj. at 2; Spectrum Obj. at 4.  The objectors argue that NNPs cannot attest under penalty of perjury that they experienced diminished performance because employees, not NNPs, used the devices and so, at best, this would require them to track down all individuals who used the company-provided devices during the relevant period, and at worst, would prevent them from making the attestations entirely.  *See* Best Companies Obj. at 3; 66 NNPs Obj. at 14; Spectrum Obj. at 4.  As the 66 NNPs state, "the ability for a corporation or university to obtain thousands of sworn attestations from former and current employees for devices they possessed over three years ago is vastly more difficult than a single individual's ability to meet the same requirements for a single-device purchase that may still be within their control."  66 NNPs Obj. at 14.  The objectors present similar arguments regarding the serial number requirement (e.g., the impossibility of tracking down thousands of old devices or boxes), and the 66 NNPs describe their lengthy attempts to submit other data to prove ownership (such as the aforementioned IMEIs, ESNs, receipts and/or phone service statements) which "Class and Apple counsel nonetheless have repeatedly (and wrongly) ignored or denied." *Id.* at 6.  The 66 NNPs' proposal to remedy the claim process facing NNPs is "to give every class member the benefit of the doubt that a portion of their devices were affected."  Tr. of Dec. 4, 2020 Hr'g at 75.

As discussed above, the serial number and attestation requirements are a material part of the Settlement and are reasonable methods for confirming that a device is eligible.  The requirements are neutral and have been, appropriately, enforced equally across all claimants, whether the claimant is a natural person or a corporation.  A settlement should not "treat[] class members differently." *Cohen v. Resol. Tr. Corp.*, 61 F.3d 725, 729 (9th Cir. 1995); *Ferrington v. McAfee, Inc.*, 2012 WL 1156399, at *8 (N.D. Cal. Apr. 6, 2012) ("[D]isparate treatment between class members increases the likelihood that the settlement agreement does not meet the Rule 23(e) standard.").

To be sure, it is more burdensome to submit multiple claims for large quantities of

CASE NO.: 5:18-MD-02827-EJD
ORDER GRANTING NAMED PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

United States District Court
Northern District of California

1    potentially eligible devices than it is to submit a single claim for a single device.  However,

2    Angeion worked with NNPs that made inquiries to provide streamlined methods to submit large

3    numbers of claims.  Def.'s Statement at 21, n.4.  As to the 66 NNPs in particular, Angeion

4    confirmed that claimants may submit "bulk claims" using a "claim submission spreadsheet."  66

5    NNPs Obj. at 4, n.9; *see also* Tr. of Dec. 4, 2020 Hear'g at 151 ("there were corporate claimants

6    who were able to put their hands on the IMEI number but not the serial number, and in those

7    instances they were permitted to provide the IMEI number, and that information will be sent to

8    Apple to convert the serial number.").

9            The Court also appreciates that the attestation requirement is challenging for NNPs.  In

10   recognition of this challenge and after receiving briefing on the issue, the Court issued an order

11   providing guidance regarding the attestation requirement for corporate and non-natural person

12   claims as follow:

13           Accordingly, corporate claimants must submit an attestation signed
             by an authorized representative, such as a corporate information
14           technology professional or in-house counsel, who is employed by the
             corporation and has personal knowledge after reasonable
15           investigation.  Enforcing the attestation requirement in this manner is
             consistent with standard practice for corporations when providing
16           deposition testimony or verifying interrogatory responses, which
             "must be signed by the person answering the interrogatory, not only
17           by the party's attorney."  *Villareal v. El Chile, Inc.*, 266 F.R.D. 207,
             211 (N.D. Ill. 2010) (citing *Hindmon v. Nat'l-Ben Franklin Life Ins.
18           Corp.*, 677 F.2d 617, 619 (7th Cir. 1982)); *see also Perdana Capital
             Inc. v. Chowdry*, 2010 WL 11475933, at *4 (N.D. Cal. Sept. 2, 2010)
19           ("under Rule 33(b)(1)(B), only an 'officer or agent' of a corporate
             party may execute the verifications for that party's interrogatory
20           responses); *Aaron v. Dickinson*, 2006 WL 734881, at *2 (E.D. Cal.
             Mar. 23, 2006) ("the answering party is required to sign the
21           interrogatory answer or provide a verification that the answer is true
             and correct").  Neither Plaintiffs nor the corporate claimants have
22           explained why an authorized corporate representative cannot sign the
             attestation.
23
             The Settlement Administrator is directed to, at this time, reject the
24           164,053 claims submitted by corporations that are not accompanied by
             attestations signed by outside counsel (or an individual employed by a
25           third-party claims filing firm).  Claims rejected on this basis may be
             resubmitted to the Settlement Administrator with an attestation signed
26           by an authorized representative, such as a corporate information
             technology professional or in-house counsel, who is employed by the
27

28   CASE NO.: 5:18-MD-02827-EJD
     ORDER GRANTING NAMED PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
     ACTION SETTLEMENT

1      corporation and has personal knowledge after reasonable investigation.
       The deadline for resubmissions is February 8, 2021.

2    Dkt. No. 598.  The February 8, 2021 extended deadline allows sufficient time for "a diligent class

3    member to evaluate their injury and compare it to the benefits that the settlement has to offer."

4    *See Friedman*, 2017 WL 6527295, at *10.  The claims review process for NNPs is ongoing.  Tr. of

5    Feb. 17, 2021 Hr'g at 8, Dkt. No. 605.

6            Relatedly, Spectrum suggests that NNPs were not adequately represented.  Spectrum Obj.

7    at 3-4 (quoting *In re Mego Fin. Corp. Securities Litig*., 213 F.3d 454, 462 (9th Cir. 2000)); *see*

8    *also* Tr. of Dec. 4, 2020 Hr'g at 40 (Best Companies' assertion that from the beginning of the

9    case, there has not been a corporate representative with a seat at the table).  The Court disagrees.

10   There is no prohibition against a natural person representing non-natural persons in a class action

11   so long as the natural person is an adequate representative.  *Local Joint Exec. Bd. of*

12   *Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 n.2 (9th Cir. 2001)

13   ("[T]he adequacy-of-representation requirement is satisfied as long as one of the class

14   representatives is an adequate class representative.").  Here, the Named Plaintiffs include natural

15   persons who purchased devices for other people (*see* Dkt. 244 ¶¶ 233, 85, 91, 109, 179, 193, 235),

16   and several others testified that they had used their devices for work purposes (*see* Chorba Decl.,

17   Ex. A).  Thus, the Named Plaintiffs were sufficiently similarly situated to NNPs to act as

18   representatives for the Class.

19           Finally, there is no unfair windfall to employees or individuals over NNP owners under the

20   Settlement.  The Settlement does not allow users "who did not even purchase iPhones to reap

21   windfalls while NNPs that bought thousands of dollars worth of iPhones receive nothing" (Best

22   Companies Obj. at 5-6) because the Claim Form requires all claimants to make the same

23   attestation under penalty of perjury.  Claim Form at 3, 5.  To the extent that both a company and a

24   natural person submit a claim for the same eligible device, there is a set procedure to split the

25   value.  Reply at 14 (citing Stipulation, § 6.10).  Alternatively, a company may seek repayment

26   from an employee.  *Id*. at 14.

27
     CASE NO.: 5:18-MD-02827-EJD
28   ORDER GRANTING NAMED PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
     ACTION SETTLEMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1  The NNP objections are overruled and their requested relief is denied.

2  ### f.        Miscellaneous Objections

3  A few additional objections remain as to other aspects of the Settlement.  Terrence

4  O'Toole ("O'Toole") objects that he has no information relating to the substance of the claim or

5  about how the class representatives were chosen.  Dkt. No. 437.  The basic filings are public,

6  however, and to the extent that O'Toole seeks something more akin to discovery, he is not entitled

7  to it.  *See United States v. Oregon*, 913 F.2d at 582.

8  Sherry Cassedy is dissatisfied with nearly everything about the claims process and

9  compensation, and writes "to record [her] frustration with this process and the result, for what it's

10  worth."  Dkt. No. 499.  Her frustration is noted and, though not detailed enough in substance to

11  evaluate, contributes to a clearer picture of the class members' reaction.

12  Saunders and Deborah Pantoni object to the breadth of the release.  Dkt. Nos. 513, 519.

13  The objection is without merit.  The release is appropriate because it is "rooted in the factual

14  allegations of Plaintiffs' Complaint" concerning iOS 10.2.1 or later (for iPhone 6, 6 Plus, 6s, 6s

15  Plus, and SE devices), and iOS 11.2 or later (for iPhone 7 and 7 Plus devices), running these

16  operating systems prior to December 21, 2017.  *Cody v. SoulCycle Inc.*, 2017 WL 6550682, at *7

17  (C.D. Cal. Oct. 3, 2017); *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 957 (9th Cir.

18  2009) (affirming settlement that provided for "release [of] all claims . . . related to conduct alleged

19  in the complaint"); *Bey v. Mosaic Sales Solutions US Operating Co., LLC*, 2019 WL 7940584, at

20  *11 (C.D. Cal. June 20, 2019) (approving settlement which released defendant "from all claims . .

21  . and any additional claims that could have been brought based on the facts alleged in the 5AC . .

22  .").

23  Kimberly Rosetta ("Rosetta") objects to the October 6 deadlines and to the fact that the

24  Claim Form does not have an area to submit additional information.  Dkt. No. 524-1.  Rosetta is a

25  disabled veteran under the ADA and requests more time to evaluate whether to exclude herself

26  from the settlement.  But she does not provide any information about her disability or how it

27
28
CASE NO.: 5:18-MD-02827-EJD
ORDER GRANTING NAMED PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT

1    impacts her ability to submit a claim or request for exclusion.

2        Steven Helfand ("Helfand") objects to almost everything: conflict of interest with Class

3    Counsel, the Settlement amount, Class Counsel's violation of a protective order, the Claim Form's

4    deceptiveness, the claim rejection reasons, the written Claim Form, the deadline's receipt

5    requirement rather than a postmark requirement, all deadlines (due to COVID-19), and the

6    absence of Zoom information to attend the hearing.  Dkt. No. 530.  Helfand's objections have

7    largely been addressed elsewhere in this Order, except for the specific request to extend deadlines

8    due to COVID-19 and for Zoom information.  The deadlines, however, were set during the

9    pandemic in May, when preliminary approval was granted and Zoom information is available on

10   the Court website.  As such, there is no reason for an extension.

11       Finally, James Ryan objects to the Settlement because it provides no assurances of privacy.

12   However, the Stipulated Protective Order (Dkt. 224) and the Stipulation (§ 6.2.3) provide that the

13   information provided by Settlement Class Members will remain private and used "solely for the

14   purposes of providing notice, processing requests for exclusion, and administering payment."

15       These objections are overruled and the requested relief is denied.

16               **g.    Objection to CPM as Plaintiffs' Counsel**

17       Edward and Darlene Orr assert that CPM has a conflict of interest because of the firm's

18   current and its past representation of Apple in *In re Lithium Ion Antitrust Litigation*, Case No.

19   4:13-md-02420 (YGR), and request disqualification of CPM as Class Counsel.  Objs. of Edward

20   and Darlene Orr, Dkt. Nos. 423, 504.  They argue that CPM had unfair access to Apple's

21   confidential files about its battery business because of the firm's representation of Apple in the

22   prior lawsuit, and that this has contributed to a "cavalier" attitude that has garnered sanctions in

23   the instant action.  *Id.* at 3 (citing "Order Re Mot. for Sanctions," Dkt. No. 350).

24       Class Counsel responds that "these assertions are false.  CPM does *not* represent Apple and

25   has never had access to Apple's confidential battery business files in the *Lithium Ion* case."  Mot.

26   at 17.  The Court has reviewed the Docket Report for the *Lithium Ion* case, which confirms that

27

28   CASE NO.: 5:18-MD-02827-EJD
     ORDER GRANTING NAMED PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS
     ACTION SETTLEMENT
                                       35

United States District Court
Northern District of California

CPM represented the plaintiffs in that case, not Apple.  *See* Docket Report for Case No. 4:13-md-02420 (YGR).  Furthermore, Apple was not a party to the *Lithium Ion* case.  Apple's involvement in the case was limited to an appearance as a third party deponent.  *Id*.

As to the Orr's second grounds for their objection, the Court has already determined that counsel's conduct did not warrant disqualification.  Order re Mot. for Sanctions at 5.  Instead, the Court imposed a monetary sanction and established clear protocols for introducing confidential materials during a hearing to eliminate any chance of future misunderstanding related to the issue. *Id*. at 4-6.  The Court did not impose a sanction against any specific counsel.  Tr. of Feb. 17, 2021 Hr'g at 53.

The Orr's objection is overruled.

## IV.   CONCLUSION

The Settlement is fair, adequate, and reasonable.  Named Plaintiffs' Motion is GRANTED.


**IT IS SO ORDERED.**

Dated: March 17,  2021

EDWARD J. DAVILA
United States District Judge

CASE NO.: 5:18-MD-02827-EJD
ORDER GRANTING NAMED PLAINTIFFS'  MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT