1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7

| | |
|---|---|
| IN RE:  APPLE INC. DEVICE PERFORMANCE LITIGATION | Case No.  5:18-md-02827-EJD |
| | **ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |
| | Re: Dkt. No. 468 |
| This Document Relates to: ALL ACTIONS | |

This multi-district consumer class action settled.  The $310 million settlement is among the largest class action settlements in this Circuit, and one of the largest class action settlements under the California Data Access and Fraud Act ("CDAFA"), California Penal Code § 502, and the federal Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.  Pending before the Court is Named Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards ("Mot.").  Dkt. No. 468.  Named Plaintiffs seek (i) attorneys' fees in the amount of $87,730,000, which is 28.3% of the $310,000,000 non-reversionary Minimum Class Settlement Amount; (ii) unreimbursed expenses totaling $995,244.93 that Class Counsel and JCCP Counsel incurred in furtherance of the prosecution of this Action; and (iii) Service Awards for Named Plaintiffs in the amount of $3,500 to each of the nine Named Plaintiffs who were deposed and $1,500 to each of the remaining Named Plaintiffs.  On October 6, 2020, Defendant Apple Inc. ("Defendant" or "Apple") filed an Opposition to Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards ("Opp'n").

1    Dkt. No. 522.  On November 20, 2020, Named Plaintiffs filed a Reply in Further Support of

2    Motion for Attorneys' Fees, Expenses, and Service Awards ("Reply").  Dkt. No. 550.  The Court

3    has also received approximately seventy-five objections.  The Court conducted a hearing on

4    February 17, 2021.  Based on all pleadings filed to date, as well as the comments of counsel and

5    objectors, the Court grants in part Plaintiffs' Motion as explained below.

6    **I.    ATTORNEYS' FEES**

7         The background of the case is set forth in the Court's Order Granting Named Plaintiffs'

8    Motion for Final Approval of Class Action Settlement (Dkt. No. 608) filed concurrently with this

9    Order, and will not be restated herein.

10        In approving a settlement, "courts have an independent obligation to ensure that the award

11   [of attorneys' fees], like the settlement itself, is reasonable." *In re Bluetooth Headset Prod. Liab.*

12   *Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).  The Ninth Circuit has approved two different methods

13   for calculating a reasonable attorneys' fee depending on the circumstances:  the lodestar method or

14   the percentage-of-recovery method.  *Id.* at 942.  The lodestar method "is appropriate in class

15   actions brought under fee-shifting statutes (such as federal civil rights, securities, antitrust,

16   copyright, and patent acts), where the relief sought—and obtained—is often primarily injunctive

17   in nature and thus not easily monetized." *Id.*  The lodestar method is also appropriate for "claims-

18   made" settlements." *Gray v. BMW of N. Am., LLC*, 2017 WL 3638771, at *5 (D.N.J. Aug. 24,

19   2017).

20        In contrast, "[w]here a settlement produces a common fund for the benefit of the entire

21   class, courts have discretion to employ either the lodestar method or the percentage-of-recovery

22   method." *Id.* (citing *In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010)).

23   "Because the benefit to the class is easily quantified in common-fund settlements, we have

24   allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-

25   consuming task of calculating the lodestar." *Id.*  Although courts have discretion to choose which

26   methodology to use, "their discretion must be exercised in a way that achieves a reasonable

27

28   CASE NO.: 5:18-MD-02827-EJD
     ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES,
     EXPENSES, AND SERVICE AWARDS

     2

United States District Court
Northern District of California

result." *Id.* (citing *In re Coordinated Pretrial Proceedings*, 109 F.3d 602, 607 (9th Cir. 1997)).

Thus, the first question is whether to employ the lodestar or percentage-of-recovery method.

### A.    Method of Fee Calculation

Named Plaintiffs and almost all of the objectors assert that this case involves a common fund. Apple, however, argues that the parties negotiated a claims-made settlement and that there is no common fund. Opp'n at 3. Accordingly, Apple urges the Court to focus on a reasonable lodestar.[1] The Court finds that the Settlement involves a common fund as explained below, and therefore the Court will award fees based on a percentage of the $310 million Settlement amount.

For purposes of awarding attorneys' fees, a common fund is generally understood as one where "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf." *Id.* at 479; *see also Bodon v. Domino's Pizza, LLC*, 2015 WL 3889577, at *3 (E.D.N.Y. June 4, 2015) ("A common fund is a settlement 'fund from which members of a class are compensated for a common injury inflicted on the class.'").

Here, the Settlement provides for a minimum lump-sum of $310 million. Under no circumstances will any of the $310 million revert to Apple. Thus, the Settlement has the characteristics of a common fund insofar as the $310 million is fixed, certain, and non-reversionary.

There is an additional provision in the Settlement that requires Apple to pay up to $500 million depending on the number of valid claims submitted. Thus, each class member's claim to the Settlement is not mathematically ascertainable until after the claims process has been

---

[1] Named Plaintiffs assert that Apple lacks standing to object to the proposed award of fees. Reply at 3. In general, "a settling defendant in a class action has no interest in the amount of attorney fees awarded when the fees are to be paid from the class recovery rather than from the defendant's coffers." *Tennille v. Western Union Co.*, 809 F.3d 555, 559 (10th Cir. 2015) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 481, n. 7 (1980)). The Court agrees that Apple lacks standing because the fees are to be paid from the class recovery, not from Apple's coffers. Nevertheless, the Court finds it appropriate to consider whether there is a common fund, consistent with the Court's discretion to decide which methodology should be applied in calculating the award of attorneys' fees in this case.

1   completed.  The inclusion of this additional provision in the Settlement lends some support to the

2   argument that the Settlement should be characterized as a claims-made settlement rather than a

3   common fund settlement.

4          Nevertheless, the Court finds that the Settlement is more appropriately characterized as a

5   common fund for purposes of the instant motion.  That Named Plaintiffs' fee request is based on

6   the fixed, certain, and non-reversionary minimum Settlement amount of $310 million, rather than

7   the potential but uncertain $500 million amount, supports application of the percentage-of-the-

8   fund method.  *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016)

9   ("Because this case involves a common settlement fund with an easily quantifiable benefit to the

10  Class, the Court will primarily determine attorneys' fees using the percentage method . . ."); *see*

11  *also Thomas v. MagnaChip Semiconductor Corp.*, 2018 WL 2234598, at *3 (N.D. Cal. May 15,

12  2018).  Further, "[t]he use of the percentage-of-the-fund method in common-fund cases is the

13  prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus

14  on showing that a fund conferring benefits on a class was created through the efforts of plaintiffs'

15  counsel."  *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, 2013 WL 7985367, at *1 (C.D. Cal.

16  Dec. 23, 2013).  The percentage-of-the-fund method confers "significant benefits . . . including

17  consistency with contingency fee calculations in the private market, aligning the lawyers' interests

18  with achieving the highest award for the class members, and reducing the burden on the courts that

19  a complex lodestar calculation requires."  *Tait v. BSH Home Appliances Corp.*, 2015 WL

20  4537463, at *11 (C.D. Cal. July 27, 2015).

21         The cases relied upon by Apple do not dictate a different result.  In *Brazil v. Dell Inc.*,

22  2012 WL 1144303, at *1 (N.D. Cal. Apr. 4, 2012), the parties' settlement provided for a $50 per

23  claimant monetary award, with no class-wide cap or ceiling on recovery, and the court awarded

24  fees using the lodestar method.  Unlike the settlement in *Brazil*, the Settlement in this case has an

25  established minimum of $310 million as well as a $500 million cap or ceiling on recovery.

26         In *Create-A-Card, Inc. v. Intuit, Inc.*, 2009 WL 3073920, at *1 (N.D. Cal. Sept. 22, 2009),

27

28  CASE NO.: 5:18-MD-02827-EJD
    ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES,
    EXPENSES, AND SERVICE AWARDS

the settlement did not create a common fund, the attorneys' fees and costs were to be paid directly from defendant as opposed to the fund, and the amount of attorneys' fees awarded did not have any impact on the recovery available to the class.  Because there was no common fund, the *Create-A-Card* court concluded that the percentage-of-the-fund was not available as a way to calculate attorneys' fees.  *Id*.  Unlike in *Create-A-Card*, the Settlement in this case provides a minimum fund of $310 million from which attorneys are to be paid and which can be used to calculate a percentage-of-the-fund award.

Apple also relies on *Gray v. BMW of N. Am., LLC*.  In *Gray*, plaintiffs alleged certain BMW vehicles were produced with defects that prevented the convertible top from functioning properly.  2017 WL 3638771, at *1. The settlement provided three forms of relief: software updates for class vehicles; (2) a one-year unlimited-mileage extended warranty; and (3) reimbursement for out-of-pocket expenses.  *Id*.  The parties agreed that attorneys' fees and costs would be paid separate and apart from any relief provided to the settlement class.  *Id*. at *4.  The *Gray* court held that the settlement was not a common fund because no specific monetary figure was set aside to provide relief to the class.  *Id*. at *5.  Unlike in *Gray*, the Settlement in this case provides a specific monetary figure to provide relief to the class.

In *Bodon*, also relied on by Apple, the parties' settlement of the wage and hour suit called for monetary relief on a claims-made basis.  The settlement did not include a fixed total sum to be allocated to the class, nor did the settlement require that defendant pay a minimum amount into a settlement fund.  2015 WL 3889577, at *2.  Further, the settlement did not provide for the payment of attorneys' fees and costs.  *Id*.  Instead, the parties agreed that attorneys' fees and costs would be separately negotiated.  *Id*. The parties were unable to resolve their dispute, and ultimately, the *Bodon* court applied a "modified lodestar method."  *Id*. at *6.  Unlike in *Bodon*, the Settlement in this case includes a fixed minimum amount for the Class, without regard to the number of claims.

The Court finds that all of the above supports applying the percentage-of-the-fund method

1   in this case.

United States District Court
Northern District of California

2           **B.**      **The 25% Benchmark**

3           In applying the percentage-of-the-fund method, the Ninth Circuit has established 25% as a

4   "benchmark" percentage, which may be adjusted depending on the circumstances of a case.

5   *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150

6   F.3d 1011, 1029 (9th Cir. 1998).  The 25% benchmark rate is a starting point.  *Id.* at 1048.

7   "Selection of the benchmark or any other rate must be supported by findings that take into account

8   all of the circumstances of the case."  *Id.*  In determining whether and in what way to depart from

9   the 25% benchmark, courts consider: "(1) the results achieved; (2) the risk of litigation; (3) the

10   skill required and the quality of work; (4) the contingent nature of the fee and the financial burden

11   carried by the plaintiffs; and (5) awards made in similar cases."  *In re Lenovo Adware Litig.*, 2019

12   WL 1791420, at *8 (N.D. Cal. Apr. 24, 2019) (citing *Vizcaino*, 290 F.3d at 1050-51).  The "most

13   critical factor" in determining appropriate attorneys' fee awards "is the degree of success

14   obtained."  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

15                **1.**      **The Results Achieved**

16           The $310 million Settlement floor, with a maximum Settlement amount of $500 million, is

17   a substantial result.  According to Named Plaintiffs' damages calculations, the anticipated

18   damages if Named Plaintiffs had fully prevailed on every one of their claims would have

19   amounted to between $18 to $46 per device.  Mot. at 7.  A $25 per device recovery "represents

20   approximately between 54% and 137% recovery" per device.  *Id.*  Named Plaintiffs argue that the

21   enormity and complex facts of this case required substantial and creative investigation, preparation

22   and legal work that resulted in a substantial result for the class.  Named Plaintiffs argue that their

23   efforts and the result achieved support an upward adjustment to the benchmark.

24          Named Plaintiffs rely on *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *4 (N.D. Cal.

25   July 11, 2014), to support their request for an upward adjustment of the benchmark to 28.3%.  In

26   *Larsen*, the court concluded that an award of attorneys' fees equal to 28% of the settlement fund

27

28   CASE NO.: 5:18-MD-02827-EJD
ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

was warranted because, among other things, the amount offered in settlement was "50% of the recovery plaintiffs' could have received had the case gone to trial." *Id*. at *4.  Named Plaintiffs assert that *Larsen* supports their requested fees because the results achieved in this case, *i.e.*, a cash payment equal to between 54% and 137% of the estimated damages, is comparable to the 50% of estimated damages achieved in *Larsen*.  Mot. at 7.

The settlement in *Larsen*, however, included additional forms of relief: class members with proof of purchase received a full reimbursement for each product purchased during the class period; each class member without a proof of purchase was "remunerated up to 10 products with a maximum claim range from $27.00 to $39.90"; and any amounts left in the fund were distributed in the form of products to class members at Trader Joe's retail locations throughout the United States.  *Id*. at *4.  The settlement in *Larsen* also provided equitable relief.

The Settlement in this case, while substantial in amount, does not provide comparable comprehensive benefits to the Class.  Benefits to the Class in this case are limited, albeit fairly and reasonably, to claimants able to provide a serial number (or other identification) for their devices and to provide the required attestation.  Therefore the comparison to *Larsen*, although helpful, is not dispositive.

Based on the current claims information from the Claims Administrator, each claimant is likely to receive more than $25 per device, and therefore is likely to receive more than 54% of the estimated damages per device.[2]  While this recovery is significant and facially comparable to the result in *Larsen,* this increase in recovery is a result of the response rate[3]; it was not guaranteed to the Class.

---

[2] There are class members who are dissatisfied with the amount of recovery, as evidenced by numerous objections.  Those objections are addressed in the Court's Order Granting Named Plaintiffs' Motion for Final Approval of Class Action Settlement.

[3] Pursuant to the terms of the Settlement, "if the aggregate value of the valid claims submitted falls below $310 million (which is now very likely), Apple will increase each claimant's payment on a *pro rata* basis to ensure a minimum settlement amount of $310 million, after deducting the costs of notice and settlement administration and any award of attorneys' fees, costs, and service awards."  Apple's Opp'n at 6.

CASE NO.: 5:18-MD-02827-EJD
ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

### 2.     The Risks of Litigation

The risk of the litigation was significant in this case.  Named Plaintiffs' original complaint was expansive.  Apple vigorously challenged the sufficiency of the complaints and succeeded in substantially narrowing the scope of case.  After repeated challenges to the pleadings, only claims for trespass to chattels and claims under the CDAFA and CFAA survived.  If the litigation continued beyond the pleading stage, Named Plaintiffs faced risks attendant to prosecuting a case with relatively unique subject matter involving application of statutory computer intrusion and common law trespass to chattels to iPhone devices.  There was also a serious risk that a class would not be certified because the parties dispute whether the iOS systems at issue impacted all users, and even if it did, whether users were impacted in the same way.  According to Apple, not all devices were used in a way that would have activated the performance management feature.  Apple also contends that even if the feature was activated, users may not have noticed any differences in their device performance.  Without a settlement, Named Plaintiffs would also have faced risks at the summary judgment stage, at trial, and potentially on appeal.  *See Bower v. Cycle Gear, Inc.*, 2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016) (noting risks of litigation were substantial); *see also Destefano*, 2016 WL 537946, at *17 (noting "substantial" risk of "obtaining [and maintaining] class certification").  If litigation had continued, the Settlement Class also faced the prospect of receiving little to no recovery whatsoever.

Some objectors argue that there is always a risk when litigating against well-resourced companies such as Apple, but that Apple's willingness to settle and the number of firms desiring to be lead counsel suggest that the risk of the litigation was likely low.  Obj. of Class Members Sarah Feldman and Hondo Jan to Class Pls.' Motion for Final Approval of Proposed Settlement ("Feldman Obj.") at 14-15, Dkt. No. 512;  Obj. of Anna St. John (Corrected) ("Center for Class Action Fairness ("CCAF") Obj.") at 12, Dkt. No. 523 (citing *In re Anthem Inc. Data Breach Litig.*, 2018 WL 3960068, at *27 (N.D. Cal. Aug. 17, 2018).  Neither argument is persuasive.  Apple explained the reasons it was willing to settle.  Specifically, Apple stated:  "While Apple remains

United States District Court
Northern District of California

1   confident that it would have prevailed on its defense of all of Plaintiffs' claims if this litigation had

2   continued, Apple agreed to resolve this case to avoid the expenses, uncertainties, delays and other

3   risks inherent in continued litigation of the MDL."  Apple's Statement In Support of Final

4   Approval and Response to Settlement Objections at 7, Dkt. No. 555.  Not one of Apple's stated

5   reasons suggests Named Plaintiffs' risks were likely low if the litigation had continued.

6        Objectors' second argument takes the court's comments in *Anthem* out of context.  In

7   *Anthem*, the court concluded "there were substantial risks of litigation."  *Anthem*, 2018 WL

8   3960068, at *12.  Further, the *Anthem* court concluded that the risks were "compounded by the

9   robust opposition from Defendants."  *Id*. at 13.  The *Anthem* court observed that "[g]iven the

10  massive size of the putative class, Defendants had a powerful incentive to devote considerable

11  resources to this litigation and have zealously litigated the action since its inception."  *Id*.  The

12  same could be said of Apple's defense of the instant lawsuit.  The objectors are correct that the

13  *Anthem* court observed that the eighteen (18) separate motions to serve as lead counsel in the case

14  suggested the litigation was not as risky as the plaintiffs suggested.  The *Anthem* court "would not

15  expect to have such intense competition among experienced lawyers to undertake the case on a

16  contingency-fee basis if the case did not hold a sufficiently certain prospect of a sizeable

17  recovery."  *Id*.  Importantly, however, the *Anthem* court concluded that "the risks attendant to

18  maintaining [the] litigation" weighed in favor of granting counsel's request for a fee award "of

19  more than 25% but less than Plaintiffs suggest."  *Id*.

20        Here, as in *Anthem*, countless attorneys filed suits against Apple, which led to multi-

21  district consolidation.  Ultimately however, only three motions to serve as lead counsel were filed.

22  *See* Order Appointing Interim Co-Lead Counsel, Dkt. No. 99.  Moreover, here, as in *Anthem*,

23  Named Plaintiffs have identified other risks in the case that would have had to be overcome to

24  reach a favorable result in this litigation.

### 3.    Skill and Quality of Work

26        Class Counsel's skill and the quality of their work also favor a fee award.  The Settlement

27

28  CASE NO.: 5:18-MD-02827-EJD
    ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES,
    EXPENSES, AND SERVICE AWARDS

1    Class benefitted from Class Counsel's significant expertise in the prosecution of consumer class

2    action litigation.  That the case withstood two motions to dismiss is "some testament to [Class]

3    Counsel's skill." *In re Nexus 6P Products Liab. Litig.*, 2019 WL 6622842, at *12 (N.D. Cal. Nov.

4    12, 2019) (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008)).

5    Further, during the three years the case was pending, Class Counsel diligently developed the facts,

6    propounded discovery, took depositions, and engaged a damages consultant, all of which was of

7    great benefit to the Class.  *See Wallace v. Countrywide Home Loans, Inc.*, 2015 WL 13284517, at

8    *9 (C.D. Cal. Apr. 17, 2015) (noting factors reflecting counsel's skill, such as developing the facts

9    and legal claims, conducting discovery, reviewing documents, retaining experts, motion practice,

10   and negotiating and drafting the settlement).  The high quality of Class Counsel's representation is

11   also reflected in the favorable settlement achieved relatively early in the life of the case.  The

12   Settlement in this case "was not reached lightly."  *Moreyra v. Fresenius Med. Care Holdings, Inc.*

13   2013 WL 12248139, at *3 (C.D. Cal. Aug. 7, 2013).

14           Courts also consider "the quality of opposing counsel as a measure of the skill required to

15   litigate the case successfully." *In re American Apparel, Inc. S'holder Litig*., 2014 WL 10212865,

16   at *22 (C.D. Cal. 2014); *see also Wing v. Asarco,* 114 F.3d 986, 989 (9th Cir. 1997) (noting the

17   district court's evaluation of class counsel's "first-rate job").  Here, Class Counsel faced a

18   company with significant financial and legal resources.  As multiple objectors recognize, "[Apple]

19   has the largest market cap of any corporation in the world.  Apple's attorneys are highly qualified,

20   litigation savvy, and aggressive." *See, e.g.*, Feldman Obj. at 14.  Apple was represented in this

21   case by two national, highly respected law firms, Gibson, Dunn & Crutcher LLP and Covington

22   and Burling LLP, which weighs in favor of a fee award.  *In re Heritage Bond Litig.*, 2005 WL

23   1594403, at *20 (C.D. Cal. June 10, 2005) (noting that quality of opposing counsel is important in

24   evaluating the quality of plaintiff's counsel's work, and stating "[t]here is also no dispute that the

25   plaintiffs in this litigation were opposed by highly skilled and respected counsel with well-

26   deserved local and nationwide reputations for vigorous advocacy in the defense of their clients.").

27

28   CASE NO.: 5:18-MD-02827-EJD
     ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES,
     EXPENSES, AND SERVICE AWARDS

                                                      10

United States District Court
Northern District of California

United States District Court
Northern District of California

#### 4.     The Contingent Nature of the Representation

The contingent nature of representation in this case supports an award of attorneys' fees. Class Counsel took the matter on a contingency basis and advanced all necessary professional time and expenses for approximately three years. Mot. at 9.  "When counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015) (applying 25% benchmark).  "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

Courts differ on the adjustment to the benchmark that is warranted, if any, based on the contingent nature of representation.  *See, e.g.*, *Luna v. Universal City Studios, LLC*, 2016 WL 10646310, at *7 (C.D. Cal. Sept. 13, 2016) (awarding attorneys' fees in the amount of 29.6% of $1.8 million settlement in light of the results achieved, the risk of litigation, the contingent nature of the fee, and the financial burden carried by class counsel); *Nexus 6P*, 2019 WL 6622842, at *13 (approving award of attorneys' fees in the amount of 30% of $9,750,000 common fund); *Omnivision Techs.*, 559 F. Supp. 2d at 1047 (awarding attorneys' fees in the amount of 28% of $13.75 million settlement); *Ching v. Siemens Indus. Inc.*, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) (awarding attorneys' fees in the amount of 30% of $425,000 settlement).  Here, Named Plaintiffs' request for attorneys' fees equal to 28.3% of the $310,000,000 non-reversionary portion of the Settlement is within the range of the cases cited above.  Nevertheless, the Court finds that an upward adjustment of the benchmark to 28.3% is not warranted for reasons discussed below.

#### 5.     Awards in Similar Cases

That this case resolved with a "megafund" settlement is an important factor in assessing the reasonableness of attorneys' fees.  Named Plaintiffs assert that an extraordinarily large settlement warrants an award of attorneys' fees above the 25% benchmark, citing numerous cases

CASE NO.: 5:18-MD-02827-EJD
ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

1    awarding between 27%-36% of settlements ranging from $105 million to $1.075 billion.  Mot. at

2    11-12.  Although the cases cited by Named Plaintiffs provide some guidance, as the CCAF points

3    out, the cases cited are arguably "outlier megafund settlements" and most are from outside this

4    Circuit.  CCAF Obj. at 12.  Further, the CCAF asserts that the few cases Named Plaintiffs cite

5    from within this Circuit "are readily distinguished because of the fact that they involved

6    significantly lower lodestar multipliers than that proposed here."  *Id*.  By CCAF's calculations,

7    Named Plaintiffs are requesting a 2.41 multiplier—substantially above the 1.0 to 1.37 multiplier

8    range in Named Plaintiffs' cited cases.  *Id*.  To emphasize its point, CCAF cites "an equally

9    lengthy list of cases on the other side, counseling a much lower award."  CCAF Obj. at 13, n.11

10   (citing a string of 8 cases awarding between 7%-25.5% of settlements ranging from $100 million

11   to $346 million).

12           The better approach is to look to empirical research on megafund cases.  In *Alexander v.*

13   *FedEx Ground Package Sys.*, Judge Chen took this approach.  2016 WL 3351017, at *2 (N.D. Cal.

14   June 15, 2016).  Judge Chen began by observing that fee awards in megafund cases present

15   difficult questions because application of a benchmark or standard percentage may result in a fee

16   that is unreasonably large relative to the benefits conferred.  *Id*. at *1.  This is because in many

17   cases, the size of the settlement is merely a factor of the size of the class and has no direct

18   relationship to the efforts of counsel.  *Id*. (quoting *In re Prudential Ins. Co. Am. Sales Practice*

19   *Litig. Agent Actions*, 148 F.3d 283, 339 (3d Cir. 1998).  Next, Judge Chen found that "[a]lthough a

20   percentage award in a megafund case can be 25% or even as high as 30-40%, typically the

21   percentage award in such a case is substantially less than the 25% benchmark applicable to typical

22   class settlements in this Circuit."  *Id*.  Judge Chen also cited to Judge Koh's finding that there is

23   "persuasive evidence that the median attorney's fee award in a sample of 68 'megafund' class

24   action settlements over a 16-year period was 10.2%."  *Id*. (quoting *In re High-Tech Emp. Antitrust*

25   *Litig.*, 2015 WL 5158730, at *13 (N.D. Cal. Sept. 2, 2015)).  Judge Koh relied on an Eisenberg &

26   Miller study spanning sixteen (16) years of 68 "megafund" cases that found the median attorneys'

27

28

1   fees award in megafund cases was 10.2% of the fund and the mean was 12%.  *In re High-Tech*

2   *Emp. Antitrust Litig.*, 2015 WL 5158730, at \*13.  Notably, Judge Koh relied on the Eisenberg &

3   Miller study over another study, the Fitzpatrick study, because the Fitzpatrick study spanned only

4   two years (2006-2007) and eight class actions.  *Id.* at \*13 (citing Theodore Eisenberg & Geoffrey

5   P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993–2008*, 7 J. EMPIRICAL

6   LEGAL STUD. 248 (2010); Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements*

7   *and Their Fee Awards*, 7 J. EMPIRICAL L. STUD. 811 (2010) (finding a median percentage of

8   19.5% and a mean percentage of 17.8% for settlements ranging between $250 million and $500

9   million.)).[4]  In *Alexander*, Judge Chen ultimately applied a multiplier of 3 to the lodestar to arrive

10  at an attorneys' fees award representing 16.4% of the $226,500,000 common fund.  *Alexander*,

11  2016 WL 3351017, at \*3.

12                    **6.      The *Vizcaino* Factors Do Not Support an Upward Adjustment**

13          To summarize, Class Counsel obtained a significant benefit for the Class, whether

14  measured by the total recovery of $310 million or by reference to the estimated damages Named

15  Plaintiffs could have recovered if they had fully prevailed on every one of their claims at trial.

16  Moreover, a settlement of $310 million for computer intrusion and trespass to chattels claims

17  appears to be unprecedented, or at least exceptional.  Class Counsel provided diligent and highly

18  skilled representation of the Class, litigating two rounds of motions to dismiss and many discovery

19  disputes against equally diligent and highly skilled defense counsel.  While Class Counsel bore the

20  risk and expense throughout the case and at the end achieved a substantial result for their clients,

21  in the final analysis, the Court finds that no single factor or combination of factors supports the

22  requested 28.3%.  The requested 28.3% far exceeds the mean and median percentages reported in

23  both the Eisenberg & Miller study and the Fitzpatrick study.  Accordingly, the Court will proceed

24  with a lodestar calculation to evaluate whether there is a basis to deviate upward or downward

25

26  ────────────────

27  [4] In *In re High-Tech Emp.*, Judge Koh awarded attorneys' fees representing 10.5% of the $435 million combined settlements, resulting in a 2.2 multiplier for class counsel.

28  ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

from the 25% benchmark.  *See In re Bluetooth Headset*, 654 F.3d at 942 ("where awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, courts should adjust the benchmark percentage.").

### 7.    Lodestar

"As a final check on the reasonableness of requested attorneys' fees, courts often compare the amount counsel would receive under the percentage-of-recovery method with the amount counsel would have received under the lodestar method." *In re Nexus 6P Prods. Liab. Litig.*, 2019 WL 6622842, at *13; *see also Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award.").  In conducting a lodestar cross-check, a court takes the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018).  The aim is to "do rough justice, not to achieve auditing perfection." *Id.*; *see also In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) (the cross-check does not require "mathematical precision nor bean-counting") (citation omitted); *In re Toys R Us-Del., Inc. – Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 460 (C.D. Cal. 2014) ("In cases where courts apply the percentage method to calculate fees, they should use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award.").

Class Counsel has provided an extensive declaration as to their work and expenses, their billing process, and more.  Declaration of Mark J. Dearman ("Dearman Decl."), Dkt. No. 469.  In response to a variety of objections, Class Counsel submitted a supplemental declaration from Mr. Dearman.  Suppl. Decl. of Mark J. Dearman, Dkt. No. 553.  Originally, Class Counsel calculated their lodestar (combined with JCCP Counsel[5]) to be $36,408,575.05.  Mot. at 15 (combining Class Counsel's lodestar of $32,415,420.50, (Dearman Decl. ¶ 10), with JCCP Counsel's lodestar of

---

[5] JCCP Counsel provide their own billing information to the Court, which goes largely unchallenged by objectors. The only opposition to the inclusion of JCCP Counsel is by Apple.

CASE NO.: 5:18-MD-02827-EJD
ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

$3,993,154.55, (Decl. of JCCP Counsel ¶ 42, Dkt. No. 471-2)).  Mr. Dearman's supplemental

declaration includes "summaries, by law firm, that reflect each timekeeper's title, billing rate, and

total lodestar broken down by Court approved activity code," as well as summaries "reflecting the

total hours and total lodestar for all MDL Counsel broken down by Court-approved activity code."

Suppl. Decl. of Mark J. Dearman ¶¶ 3-4.  Mr. Dearman represents that only two timekeepers were

contract attorneys and not firm employees, and their total lodestar is $179,745.00.  *Id.* ¶ 4.  After

excluding all contract attorney time and capping all document review at $350/hour regardless of

the individual attorney's billing rate, Mr. Dearman arrived at a total revised lodestar of

$36,103,148.05.[6]  *Id.* ¶ 5 and Decl. of JCCP Counsel at ¶42.  This revised lodestar takes into

consideration the various objections that have been submitted to the Court.

The Court has reviewed the underlying records and is satisfied that the revised lodestar is

supported.  Class Counsel applied their customary professional rates.  Joint Decl. of Joseph W.

Cotchett and Laurence D. King In Support of Motion ¶ 66, Dkt. No. 471.  Those rates are

consistent with rates that have been awarded in this District.  *See*, *e.g.*, *Dickey v. Advanced Micro

Devices, Inc.*, 2020 WL 870928, at *8 (N.D. Cal. Feb. 21, 2020) (finding rates between $275 and

$1,000 for attorneys reasonable); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *2 (N.D.

Cal. Sept. 20, 2018) (finding rates between $300 and $1,050 for attorneys reasonable).  Further,

the Court finds that the 68,731 hours expended by Class Counsel (Joint Decl. ¶ 65) was reasonable

and necessary, taking into consideration the amount of substantive litigation activity.

Class Counsel's fee request of $87,730,000 represents a multiplier of 2.43 based on a

lodestar of $36,103,148.05.  The Court finds that a 2.43 multiplier is high.  If the Court were to

award the requested fees in full, the recovery for each class device would decrease precipitously.[7]

---

[6]  Time spent between July 31, 2020 and the present, including time spent working on the
settlement approval process, class notice, claims submissions, and responding to class inquiries,
has not been included.  *Id.* ¶ 5.

[7]  By Apple's estimates, awarding the total fees requested could reduce the recovery for each class
device by about $23.  Opp'n at 7-8.

CASE NO.: 5:18-MD-02827-EJD
ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND SERVICE AWARDS

1       Alternatively, applying a 2.232 multiplier to the adjusted lodestar of $36,103,148.05 would

2   yield $80,600,000—a figure that is well justified given the factors previously discussed, and in

3   particular, Class Counsel's tremendous efforts and success in achieving significant benefits for the

4   Class without the risks of protracted litigation.  The $80,600,000 figure is equal to about 26% of

5   the $310 million Settlement—the benchmark in the Ninth Circuit.  The Court finds that a

6   downward adjustment to the benchmark is not appropriate.

7       Nor is a larger upward adjustment warranted because this is a megafund settlement where

8   the size of the Settlement is a function of the number of devices at issue, estimated to be 90

9   million.  *See Alexander*, 2016 WL 3351017, at *2 (applying a multiplier of 3 to the lodestar);

10  *Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438274, at *5-7 (N.D. Cal. May 21, 2015)

11  (applying lodestar because "the large size of the recovery is due to the large size of the class rather

12  than counsel's specialized skill and efforts" and awarding attorneys' fees with a multiplier of 2.0

13  for one counsel and 5.5 for the other counsel who "pulled victory from the jaws of defeat").  Class

14  Counsel's work in litigating this case up to the point of reaching settlement would have been the

15  same whether there were 10,000, 100,000, 1,000,000 or more devices at issue.  Further, an award

16  exceeding a 2.232 multiplier would result in "windfall profits for class counsel in light of the

17  hours spent on the case."  *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d at 942.

18      In *In re National Collegiate Athletic Assoc. Athletic Grant-in-Aid Cap Antitrust Litig.*, the

19  Ninth Circuit affirmed an award of attorneys' fees equal to 20% of the megafund settlement and a

20  3.66 multiplier of the lodestar.  768 Fed. Appx. 651, 653 (9th Cir. 2019).  The *NCAA* case,

21  however, is distinguishable from the present case in that, among other things, the parties agreed to

22  a fund equaling nearly 100% of single damages at the time of settlement.  *In re National*

23  *Collegiate Athletic Assoc. Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *7

24  (N.D. Cal. Dec. 6, 2017).  As more class members became eligible to receive payment from the

25  settlement fund, the court estimated that class members would receive 50% of their damages—a

26  result the district characterized as "exceptional" for a large, complex antitrust case.  The *NCAA*

27

28  CASE NO.: 5:18-MD-02827-EJD
    ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES,
    EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

court also observed that the case "went from zero recovery to megafund **solely** because of counsel's efforts and expenditures of expert fees and other expenses," and a megafund was created in the case "despite the size of the class, not because of it."  *Id*. at *6 (emphasis in original).

Class Counsel in this case are among the very best in their practice area.  They are highly regarded in the Northern District and have earned and enjoy a reputation for zealously representing their clients in difficult and complex cases.  The leadership team exceeded the efficiencies in costs, efficiencies in communications, and efficiencies in the litigation that the Court expected.  Like counsel in *NCAA*, Class Counsel's strategic and efficient lawyering in the instant action encouraged a just and efficient determination of this litigation.  The results achieved in this case are laudable.  Nevertheless, unlike in *NCAA*, the megafund size of this case exists because of the sheer number of eligible devices.  Judge Donato's comment in a recent megafund case is noteworthy, "fairness and proportion" dictate some adjustment of the benchmark.  *In re Facebook Biometric Info. Priv. Litig.*, 2021 WL 757025, at *10 (N.D. Cal. Feb. 26, 2021) (awarding attorneys' fees in a biometric privacy class action that were equal to 15% of $650 million common fund and amounting to lodestar with a multiplier of 4.71).

For all the reasons discussed above, the Court finds that an attorneys' fee award equal to 26% of the $310 million fund is appropriate.

### 8.    Other Objections to the Attorneys' Fees Award

First, Apple opposes the inclusion of "the 9,679 hours logged by JCCP Counsel, whose work on the parallel action increased inefficiency and duplication without any benefit to the class members", in the lodestar.  Opp'n at 23. [8]  Although the objection has some merit, the inclusion of

---

[8] Apple also argues that the Settlement prohibits JCCP Counsel from seeking attorneys' fees.  The Settlement, however, is ambiguous, providing that "Class Counsel shall allocate from the Court's award of Attorneys' Fees and Expenses, if any, to JCCP Counsel an appropriate amount of attorneys' fees and expenses . . . [and JCCP Counsel] shall [not] make an independent claim for attorneys' fees or expenses in any federal or state court."  Stipulation § 9.1.  In any event, as discussed above, JCCP Counsel's attorneys' fees are not relevant to the Court's assessment of reasonable attorneys' fees under the percentage-of-the-fund method.

CASE NO.: 5:18-MD-02827-EJD
ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

17

United States District Court
Northern District of California

1   JCCP Counsel's hours does not have any bearing on the Court's percentage-of-the-fund

2   calculation.  JCCP Counsel's hours impact the lodestar; however, the lodestar is being used only

3   as a cross-check.  Even if JCCP Counsel's roughly $4 million in attorneys' fees are excluded from

4   the lodestar, the lodestar would decrease to $32,103,148.05 and this adjusted lodestar would have

5   an insignificant impact on the multiplier.  "Multipliers of 1 to 4 are commonly found to be

6   appropriate in common fund cases."  *Aboudi v. T-Mobile USA, Inc.*, 2015 WL 4923602, at *7

7   (S.D. Cal. Aug. 18, 2015) (citing *Vizcaino,* 290 F.3d at 1051 n.6).  Apple's objection as to the

8   JCCP Counsel's attorneys' fees is overruled.

9        Second, Alexis West ("West") objects to the "quick-pay" provision of the Settlement.  Dkt.

10   No. 514.  The term is subject to scrutiny under Fed. R. Civ. P. 23(e)(2)(C)(iii), requiring the Court

11   to consider "the terms of any proposed award of attorney's fees, including timing of payment."

12   West argues that (1) the quick-pay provision disregards the best interests of the Class because it

13   allows funds to revert to Apple, rather than the Class, in the event the Court's final approval or

14   attorneys' fees judgments are reversed, vacated, or rendered void; and (2) the fees subject to the

15   quick-pay provision should be placed in a client trust pursuant to Rule 1.15 of the California Rules

16   of Professional Conduct.  West Obj. at 8-11.  West asks that the quick-pay provision be stricken

17   from the Settlement. West Obj. at 3.

18        West's first objection is based on a misreading of the Settlement.  The quick pay provision

19   does not return funds to Apple.  Section 8.1 of the Settlement provides that "[a]ny award of

20   Attorneys' Fees and Expenses shall be decided by the Court and payable from the Minimum Class

21   Settlement Amount," and section 1.19 states that "[u]nder no circumstances shall any portion of

22   the Minimum Class Settlement Amount revert to Apple."  Reply at 14 (quoting Stipulation §§

23   1.19, 8.1).  Read together, sections 1.19 and 8.1 mean that if the fee award is overturned or

24   reversed, the attorneys' fees will be paid back into the common fund and distributed to the

25   Settlement Class.  *Id*.  Apple will only be paid back if the entire judgment is overturned on appeal.

26   *Id*.  West's first objection is overruled.

27   CASE NO.: 5:18-MD-02827-EJD

28   ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES,
     EXPENSES, AND SERVICE AWARDS

United States District Court
Northern District of California

United States District Court
Northern District of California

As to West's second objection, Class Counsel explains that it is unnecessary to place fees in a client trust because the risk of Class Counsel improperly retaining settlement funds "is already addressed by the parties, giving the Court authority to enforce the quick pay terms and impose fees in the event funds are not returned." *Id.* (citing Stipulation § 8.3).  The Court is satisfied the section 8.3 of the Stipulation is sufficient to protect the class.  Moreover, "[f]ederal courts . . . routinely approve settlements that provide for payment of attorneys' fees prior to final disposition in complex class actions." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *40 (N.D. Cal. July 22, 2020) (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 7575004, at *1 (N.D. Cal. Dec. 27, 2011)).  West's second objection is overruled.

Lastly, Apple requests confirmation from Class Counsel that they have "not submit[ted] any billing requests for any work related to [the sanctions] issue."  Opp'n at 24 (citing Order re Motion for Sanctions, Dkt. No. 350).  Apple received the requested confirmation during the hearing on Named Plaintiffs' Motion.  *See* Tr. of February 17, 2021 Hr'g at 51, Dkt. No. 605.

In summary, the objections discussed above do not warrant any further adjustments to the attorneys' fee award.

## II.        Expenses

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit[.]" *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (citation omitted).  In this case, Class Counsel has substantiated "$995,244.93 in unreimbursed litigation expenses, including costs advanced in connection with consultants, legal research, court reporting services, travel for depositions, copying and mailing, and other customary litigation expenses."  Mot. at 16 (citing Dearman Decl. ¶ 11, Exs. 41-42, and Decl. of JCCP Counsel, Ex. C).

There are a few objections to the expenses.  With the exception of the objection filed by Apple, however, they do not challenge any particular expense or category of expenses.  Apple argues that the expenses are not sufficiently documented and specifically questions the claimed

CASE NO.: 5:18-MD-02827-EJD
ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND SERVICE AWARDS

1    costs for "Travel-Airfare," "Travel-Hotel," "Travel-Mileage," "Meal," "Photocopies," and

2    "Miscellaneous" expenses.  Opp'n at 24.

3          The Court finds Class Counsel's declarations (*see* Dkt. No. 469) adequately support their

4    requests and "that the expenses are typical for this type of class litigation, including for experts,

5    mediations, legal research, court reporting services, travel, and copying."  *See In re Lending Club*

6    *Sec. Litig.*, 2018 WL 4586669, at *3 (N.D. Cal. Sept. 24, 2018).  The Court also accepts Class

7    Counsel's representation that the categories of expenses challenged by Apple "included travel

8    outside the district for multiple mediations, expert and deposition preparations, and copying

9    charges that could not be outsourced due to Apple's insistence on restricting access from third

10   parties," and that "[t]hey were necessarily incurred to advance the case."  Reply at 15.  Further, the

11   Court finds that the expenses are reasonable.

12   **III.        Service Awards**

13         Service awards are "intended to compensate class representatives for work undertaken on

14   behalf of a class" and "are fairly typical in class action cases."  *In re Online DVD-Rental Antitrust*

15   *Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (internal quotation marks and citation omitted).  Service

16   awards of $5,000 are "presumptively reasonable" in this district.  *Bellinghausen*, 306 F.R.D. at

17   266.  Here, Named Plaintiffs request $1,500 for those who were not deposed and $3,500 for the

18   nine Named Plaintiffs who were deposed.  "Named Plaintiffs were willing to step forward to

19   represent and protect the interests of the Settlement Class by actively monitoring the status of the

20   litigation, communicating regularly with Class Counsel, searching for and producing responsive

21   documents, responding to interrogatories, and reviewing significant pleadings prior to their filing."

22   Mot. at 20.

23         The Court finds that the requested service awards are reasonable in light of Named

24   Plaintiffs' efforts in this case.  The requested service awards are also below the presumptively

25   reasonable amount of $5,000 and are consistent with precedent.  *See Allagas v. BP Solar Int'l*,

26   2016 WL 9114162, at *4 (N.D. Cal. Dec. 22, 2016) (awarding $7,500 to named plaintiffs who

27

28   CASE NO.: 5:18-MD-02827-EJD
     ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES,
     EXPENSES, AND SERVICE AWARDS

were deposed and $3,500 to one named plaintiff who was not deposed).

Two objectors argue that *Trustees v. Greenough*, 105 U.S. 527 (1882) and *Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885) prohibit compensating Named Plaintiffs. Feldman Obj. at 6-8; Obj. of Deborah Pantoni to Proposed Class Action Settlement, Award of Attorneys' Fees and Service Awards; Notice of Intent to Appear at 9, Dkt. No. 519.  The Eleventh Circuit has noted *Greenough* and *Pettus* have never been overruled, and has held that "[a] plaintiff suing on behalf of a class can be reimbursed for attorneys' fees and expenses incurred in carrying on the litigation, but he cannot be paid a salary or be reimbursed for his personal expenses." *Johnson v. NPAS Sols., LLC*, 2020 WL 5553312 at *9 (11th Cir. Sept. 17, 2020).  Although *Johnson* raises a valid issue, service awards "have long been approved in the Ninth Circuit."  *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *24 n.24 (N.D. Cal. Dec. 10, 2020). This Court declines to follow *Johnson* and finds that the requested service awards are appropriate in this case.

## IV.   CONCLUSION

For the reasons stated above, the Court, GRANTS IN PART Named Plaintiffs' motion for attorneys' fees.  Named Plaintiffs are awarded $80,600,000 in attorneys' fees.  The Court GRANTS the motion for expenses and service awards as requested.  The parties are directed to submit a proposed judgment.

**IT IS SO ORDERED.**

Dated:  March 17, 2021

EDWARD J. DAVILA
United States District Judge

CASE NO.: 5:18-MD-02827-EJD
ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS