JOSEPH W. COTCHETT, SBN 36324
  jcotchett@cpmlegal.com
MARK C. MOLUMPHY, SBN 168009
  mmolumphy@cpmlegal.com
ELLE D. LEWIS, SBN 238329
  elewis@cpmlegal.com
COTCHETT, PITRE & McCARTHY LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:    650.697.6000

LAURENCE D. KING, SBN 206243
  lking@kaplanfox.com
KATHLEEN A. HERKENHOFF, SBN 168562
  *kherkenhoff@kaplanfox.com*
FREDERIC FOX, SBN (*pro hac vice*)
  ffox@kaplanfox.com
DONALD R. HALL (*pro hac vice*)
  dhall@kaplanfox.com
KAPLAN FOX & KILSHEIMER LLP
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:    415.772.4700

*Co-Lead Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: APPLE INC. DEVICE PERFORMANCE LITIGATION<br><br>This Document Relates to:<br><br>    ALL ACTIONS | Case No. 5:18-md-2827-EJD<br><br>**PLAINTIFFS' NOTICE OF RENEWED MOTION AND RENEWED MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Judge:        Hon. Edward J. Davila<br>Courtroom:  4, Fifth Floor<br>Date:        April 20, 2023<br>Time:       9:00 a.m. |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE THAT** on April 20, 2023 at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Edward J. Davila, in Courtroom 4, Fifth Floor, of the United States District Court for the Northern District of California in the San Jose Courthouse, 280 South First Street, San Jose, California 95113, Plaintiffs will, and hereby do, move this Court for an order approving attorneys' fees, expenses and service awards.

When the Ninth Circuit Court of Appeals vacated this Court's prior order granting final approval of the settlement, it also vacated the prior order approving an award of attorneys' fees, expenses and service awards, with directions on remand relating to any future award of attorneys' fees. Specifically, while the Ninth Circuit reaffirmed this Court's discretion to award fees under the percentage-of-recovery method, its application of the 25% benchmark and factors relevant to any adjustment, and the lodestar method to cross-check a fee award, it directed this Court to address two specific issues: (1) first, for any fee award based on a percentage-of-recovery method, this Court should "more clearly explain" how its balancing of relevant factors supported any adjustment to the 25% benchmark, and (2) second, for any lodestar cross-check, this Court should consider inclusion of JCCP work in the lodestar calculation.  Because both issues were the focus of extensive prior briefing and argument and can be fully addressed based on the existing evidentiary record, this Court should again approve a fee award representing 26% of the settlement recovery.

Plaintiffs' motion is based on this notice of renewed motion and renewed motion, the accompanying memorandum of points and authorities, other documents on file in this action, and if requested, any oral argument of counsel.

| | |
|---|---|
| Dated: November 11, 2022 | COTCHETT, PITRE & MCCARTHY LLP |
| | By: _/s/ Joseph W. Cotchett_<br>Joseph W. Cotchett |
| Dated: November 11, 2022 | KAPLAN FOX & KILSHEIMER LLP |
| | By: _/s/ Laurence D. King_<br>Laurence D. King |

i

PLAINTIFFS' NOTICE OF RENEWED MOTION AND RENEWED MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS
CASE NO. 5:18-MD-2827-EJD

# **TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I. INTRODUCTION .................................................................................................................. 1

II. BACKGROUND .................................................................................................................... 2

    A. The Procedural History and Approval Orders ................................................. 2

    B. The Ninth Circuit Appeal .................................................................................. 3

III. ARGUMENT ....................................................................................................................... 4

    A. The Ninth Circuit's Remand As It Relates To Attorneys' Fees Is Limited to Providing Further Explanation for Any Deviation from the 25% Benchmark Based on the *Vizcaino* Factors and Whether to Include JCCP Time in a Lodestar Crosscheck ................................................................................................ 4

    B. The *Vizcaino* Factors Support a Small Upward Adjustment of the 25% Benchmark ........................................................................................................... 4

IV. CONCLUSION ..................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Apparel, Inc. S'holder Litig.*,
   No. CV-1006352 MMM 2014 WL 10212865 (C.D. Cal. July 28, 2014) .................................. 6

*In re Anthem, Inc. Data Breach Litig.*,
   No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ............................... 7

*In re Apple Inc. Device Performance Litig.*,
   50 F.4th 769 (9th Cir. 2022) ........................................................................................... *passim*

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) ............................................................................................ 6

*Ching v. Siemens Indus. Inc.*,
   No. 11-cv-04838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014) ................................... 7

*In re Heritage Bond Litig.*,
   No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ...................................... 6

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2022) ........................................................................................ *passim*

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ................................................................................................... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Plaintiffs respectfully renew their prior motion for an order approving an award of attorneys' fees, reimbursement of advanced expenses, and service awards.[1]

In March 2021, after presiding over the action from its inception, and after considering arguments presented during two days of hearings, this Court issued separate orders approving the settlement ("Settlement Order") and granting in part Plaintiffs' request for attorneys' fees, expenses, and service awards ("Fee Order").  (Dkts. 608, 609.)  With respect to attorneys' fees specifically, this Court approved an award of $80.6 million, representing 26% of the $310 million settlement fund—less than the 28% requested and only 1% above the Ninth Circuit's 25% benchmark.  This Court applied percentage-of-recovery method to determine a reasonable award of fees, considering the Ninth Circuit's 25% benchmark and as well-established Ninth Circuit factors set forth in *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2022).  The Court also applied a lodestar cross-check and determined that there was no windfall to counsel.

Although several objectors appealed, the Ninth Circuit largely affirmed this Court's analytical approach.  Specifically, the Ninth Circuit found this Court acted within its discretion in using the percentage-of-recovery method to award fees, confirmed the "benchmark percentage is 25%" and subject to adjustment based on the various *Vizcaino* factors, as well as the use of a lodestar cross-check to confirm that a fee award is reasonable.  *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784-785 and fn. 11 (9th Cir. 2022).  However, after vacating the Settlement Order with instructions for this Court to apply the "heightened scrutiny" standard, the Ninth Circuit also vacated the Fee Order and directed this Court to address two specific points in any future fee award on remand.  *Id.*

---

[1] This motion only addresses the Ninth Circuit's directions on remand relating to attorneys' fees.  The Ninth Circuit affirmed this Court's discretion to approve service awards and there was no challenge to this Court's award of expenses.  Accordingly, Plaintiffs incorporate by reference all of their prior motion papers in support of this motion and request the Court to again approve the requested expenses and service awards for the same reasons it previously stated.

1

First, to the extent this Court awarded attorney's fees based on the <u>percentage-of-recovery</u> method, the Ninth Circuit directed this Court to "more clearly explain" how its analysis of the *Vizcaino* factors supported an upward adjustment to the 25% benchmark, and to do so "before proceeding to a lodestar cross-check." *Id.* at 784, fn. 11. As noted below, the Court's analysis of the *Vizcaino* factors in the Fee Order was extensive and permitted the Court to provide the additional finding on remand that, on balance, they support a slight 1% upward adjustment to the 25% benchmark.

Second, the Ninth Circuit directed this Court to determine whether JCCP work should be included in the <u>lodestar</u> cross-check, since the JCCP's time was reflected in the 2.232 multiplier that this Court previously found to be reasonable. *Id.* at 784-85. Again, this finding can be easily made based on the existing record, including declarations submitted by Class Counsel and JCCP Counsel. There can be little question that JCCP counsel provided valuable work, in close coordination with Class Counsel, which directly benefitted the Class and helped to result in this historic settlement. Thus, the Court should find on remand that JCCP time is properly included in its lodestar cross-check. Further, and in the event the Court again approves an award of $80.6 million in fees, or 26% of the settlement fund, the resulting implied multiplier of 2.232 including JCCP time confirms that the award will not result in a windfall.

## II.   BACKGROUND

### A.   The Procedural History and Approval Orders

The extensive procedural history of this action, including the time and effort spent by all Plaintiffs' Counsel – in both this MDL Action and the related JCCP Action – to obtain the extraordinary settlement achieved is detailed in the prior motions for final approval of the settlement and for attorneys' fees, expenses and service awards (see Dkts. 468-471, 549-553), all of which are incorporated by reference herein.

The motion papers included specific discussion by both Class Counsel in this action, and co-lead counsel appointed in the JCCP Action pending in California Superior Court ("JCCP Counsel), describing their coordinated efforts to litigate both cases. This coordination started early, following this Court's prescient appointment of a State Court liaison on the Executive Committee to coordinate with JCCP Counsel, and continued for the entire duration of the case, with specific projects assigned

to JCCP Counsel, including extensive document review and deposition examination. These coordinated efforts and work product were ultimately used to help negotiate a global settlement for the entire Class.

This Court ultimately held two lengthy fairness hearings, on December 4, 2020 and February 17, 2021. The second hearing was solely directed to consideration of an award of attorneys' fees, and included extensive briefing regarding JCCP Counsel's time and efforts. (*See* Dkt. 600). On March 17, 2021, the Court granted final approval of the settlement and awarded $80.6 million in attorneys' fees—26% of the $310 million settlement amount. (Dkt. 608, 609.)

The Court's Fee Order included extensive analysis of the *Vizcaino* factors as they applied to the unique circumstances of this case. However, there was no specific finding that the Court's balancing of the factors supported its slight 1% upward adjustment to the 25% benchmark. The Fee Order also included a lodestar cross-check, and a finding that a fee representing a 2.232 multiplier over Plaintiffs' Counsel's lodestar (including JCCP Counsel's time) was reasonable and would not result in a windfall. However, there was no specific finding that JCCP Counsel's time, used to arrive at a 2.232 multiplier, should be included in the lodestar. Finally, the Court approved costs and service awards as requested. (Dkt. 609.)

**B.     The Ninth Circuit Appeal**

Five objectors (Sarah Feldman, Hondo Jan, and Deborah Pantoni; Anna St. John; and Best Companies, Inc.) appealed the Court's settlement approval and/or award of attorneys' fees on various grounds. (Dkts. 614–18.) After hearing oral argument, the Ninth Circuit issued its opinion on September 28, 2022, vacating the Settlement Order and remanding with directions to this Court to apply "heightened scrutiny" on final approval since the settlement was reached prior to class certification. *Apple*, 50 F.4th at 782-83.

Additionally, "[i]n light of [the] vacatur of the settlement approval," the Ninth Circuit also "vacate[d] the district court's order awarding attorney's fees, expenses, and incentive payments," and provided additional "guidance" on "two issues . . . in the event the district court again approves the settlement." *Id.* at 783. As discussed below, both issues – i.e., further explanation of the *Vizcaino* factors supporting an adjustment to the 25% benchmark and a determination if JCCP time should be

included in the lodestar calculation – can be resolved on the existing record, and both support an order again approving an award of attorneys' fees of $80.6 million.

### III.   ARGUMENT

**A.   The Ninth Circuit's Remand As It Relates To Attorneys' Fees Is Limited to Providing Further Explanation for Any Deviation from the 25% Benchmark Based on the *Vizcaino* Factors and Whether to Include JCCP Time in a Lodestar Crosscheck**

The Ninth Circuit found no fault with the Court's order approving service awards and no objector challenged its approval of expenses. The Ninth Circuit also confirmed this Court's discretion to apply the percentage-of-recovery method to determine fees, use of the Ninth Circuit's 25% benchmark, and consideration of *Vizcaino* factors to support any upward or downward adjustment based on the unique circumstances in the case. Accordingly, these issues need not be relitigated on remand.

Rather, the remand as it related to attorneys' fees was limited to two specific issues. First, the Ninth Circuit directed the Court, to the extent it again awarded attorneys' fees based on the percentage-of-recovery method, to "more clearly explain" how its balancing of the *Vizcaino* factors supported any adjustment to the 25% benchmark. Second, while the Ninth Circuit confirmed the use of the lodestar method to cross-check any percentage-based fee award, the Ninth Circuit directed the Court to determine whether JCCP time should be included.

**B.   The *Vizcaino* Factors Support a Small Upward Adjustment of the 25% Benchmark**

The Ninth Circuit confirmed this Court's discretion to use the percentage-of-recovery method to determine an appropriate award of attorneys' fees, and the Court should again apply the same method again to award fees on remand. *Apple*, 50 F.4th at 784. Similarly, the Court should again determine that a fee award of $80.6 million, representing 26% of the $310 million settlement fund, is a fair and reasonable amount.

As the Ninth Circuit confirmed here, a district court can adjust the 25% benchmark upward or downward depending on the circumstances of the case. *Id.* at 784 and fn. 11 (citing *Vizcaino*, 290 F.3d 1043 (9th Cir. 2002). Here, while the prior Fee Order carefully considered each of the relevant *Vizcaino* factors, the Ninth Circuit directed this Court on remand to "more clearly explain" how its balancing of the factors warranted a slight upward adjustment. Such an explanation is easily provided here:

### 1. *Vizcaino* Factor One: The Results Achieved

In the Fee Order, this Court found that the settlement was "unprecedented" and provided a "substantial result" for the Class. (Dkt. 609 at 6-7, 13). Indeed, the settlement was truly remarkable in size, creating a non-reversionary minimum settlement amount of $310 million, and a maximum amount of $500 million, the largest computer intrusion settlement in history. The recovery also compares favorably with Plaintiffs' valuation of their own claims. Based on Plaintiffs' damages analysis, had Plaintiffs prevailed on every one of their remaining claims, their maximum damages would have amounted to between $18 and $46 per iPhone. Thus, with at least 90 million devices potentially at issue, even if one assumed *every* device downloaded and installed the subject software during the relevant time and *every* single user then experienced diminished performance, the maximum classwide damages would range from $1.6-4.1 billion. Here, the minimum $310 million recovery represents about 7.5-19.4% of damages, an exceptional result. As the Ninth Circuit noted, eligible class members may potentially receive $128 or more per device before any reduction for fees, expenses or service awards – more than twice their maximum possible damages. *Apple*, 50 F.4th at 778. Of course, not every device downloaded and installed the software and moreover Apple contended that its software update caused no damages. This factor supports an upward adjustment to the benchmark.

### 2. *Vizcaino* Factor Two: Risks of Continued Litigation

In the Fee Order, this Court found that "the risk of the litigation was significant in this case," and then identified many of the "serious risks" to recovery. (Dkt. 609 at 8-9). Of course, this Court was uniquely positioned to assess these risks after overseeing this case from its inception, including complex (and often novel) questions presented at virtually every turn – involving legal claims that lie at the intersection of technology, disclosure, and product defect law, and computer intrusion statutes that had not been widely litigated. Naturally, Plaintiffs faced substantial risk of success at the pleading stage, including challenges to Article III standing, and would face challenges later at the class certification, summary judgment, and trial stages. Indeed, the Court's rulings on any number of issues had potentially dispositive impact on the case. For the same reasons identified in the Fee Order, this Court should find that the litigation risks in this case – unique in both their novelty, complexity, and potentially dispositive impact on the case – support an upward adjustment to the benchmark.

PLAINTIFFS' RENEWED MOTIONS FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS
CASE NO. 5:18-MD-2827-EJD

### 3. *Vizcaino* Factor Three: Plaintiffs' Counsel's Skill and Quality of Work

In the Fee Order, this Court noted Class Counsel's "skill and the quality of their work" in this case and that the Class "benefitted from Class Counsel's significant expertise in the prosecution of consumer class action litigation." (Dkt. 609 at 9-10). This Court also found that "the high quality of Class Counsel's representation" was reflected in surviving multiple motions to dismiss, diligently finding facts in discovery, developing damages theories, and negotiating a favorable settlement. *Id.* Indeed, there can be no doubt that the Settlement negotiated was the product of years of aggressive litigation by highly skilled and determined counsel, experienced in the intricacies of privacy and consumer litigation. *See* Joint Declaration, Dkt. 471 ¶¶ 7-44 (detailing the significant amount of work successfully performed by Class Counsel). Such skill and determination were absolutely necessary here, against a well-resourced adversary, represented by scores of in-house and outside legal counsel. As expected, Apple contested liability at every stage, requiring an equally determined team of attorneys to prosecute claims against such experienced adversaries. *See In re Am. Apparel, Inc. S'holder Litig.*, No. CV-1006352 MMM (JCGx) 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) ("In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully."); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *20 (C.D. Cal. June 10, 2005) ("plaintiffs in this litigation were opposed by highly skilled and respected counsel with well-deserved local and nationwide reputations for vigorous advocacy in the defense of their clients."). Finally, not a single class member or objector challenged the skill and quality of work performed by Plaintiffs' Counsel in this complex case, and the Court should find that this factor supports an upward adjustment to the benchmark.

### 4. Vizcaino Factor Four: Fully Contingent Representation

In the Fee Order, this Court found that Plaintiffs' Counsel advanced all time and expenses for three years on this case on a fully contingent basis. (Dkt. 609 at 11). "When counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015). Rewarding attorneys who assume representation on a contingent basis with an enhanced fee serves the "public interest" and "fairly compensates them for the risk that they might be paid nothing at

all for their work." *Ching v. Siemens Indus. Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014); *see also In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."). While the Court previously noted that courts differ on the adjustment depending on the circumstances of a case, there is no question that the contingent representation here – including multiple firms, advancing tens of thousands of hours, and nearly one million dollars in expenses, over three years – supports an upward adjustment to the benchmark.

### 5. Vizcaino Factor Five: Awards in Similar Cases

This class action presented novel legal issues, including application of statutory computer intrusion and common law trespass to chattel claims to millions of devices widely held by Americans nationwide. The software updates at issue required highly technical analysis, discovery and expert testimony. Courts in the Ninth Circuit have awarded fees at or above the 25% benchmark in other large-scale, complex class actions. *See e.g.*, *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) (district court awarded 27% of $115 million settlement fund in class action involving technical issues about cybersecurity and industry best practices, citing *Vizcaino*, where Ninth Circuit's survey of awards in common-fund cases with recoveries from $50-200 million between 1996 and 2001 found majority were between 20-30%). In the Fee Order, the Court cited to these and other settlements resulting in fee awards both above and below the benchmark, as well as other empirical studies of class action settlements. (Dkt. 609 at 12-13). Plaintiffs submit that this factor supports a slight upward adjustment to the benchmark.

### 6. A Balancing of the *Vizcaino* Factors Supports a 1% Upward Adjustment

In the Fee Order, the Court summarized its analysis of the *Vizcaino* factors but concluded that "no single factor or combination of factors supports <u>the requested 28.3%</u>." (Dkt. 609 at 13) (emphasis added).[2] On appeal, the Ninth Circuit noted that the Court did not explain how the *Vizcaino* factors

---

[2] During oral argument on appeal, one objector misleadingly argued that this Court found the *Vizcaino* factors did not support *any* adjustment, even the 26% ultimately awarded, citing a heading

supported its ultimate fee award of 26%. Accordingly, the Ninth Circuit directed the Court on remand, to the extent it again awarded fees based on the percentage-of-recovery method, to explain how the *Vizcaino* factors supported any adjustment to the 25% benchmark and to do so "before proceeding to a lodestar cross-check." *Apple*, 50 F.4th at 784, fn. 11.

This can easily be performed based on the existing record. As noted above, the Court's existing analysis of the *Vizcaino* factors in the Fee Order, both individually and in combination, support a 1% upward adjustment to the 25% benchmark. Indeed, four of the five *Vizcaino* factors – the results achieved, the risks undertaken, the skill and quality of counsel's work, and the contingent nature of representation – were largely undisputed, and all five support an upward adjustment. The Court should find that its balancing of the *Vizcaino* factors supports a 26% award.

**C.    JCCP Counsel's Time and Efforts Should be Included in the Lodestar Cross-Check**

On remand, the Court should also determine that JCCP Counsel's time and efforts should be included in any lodestar cross-check. Indeed, the inclusion of JCCP Counsel's time was addressed at length during the final approval stage, including declarations from both Class Counsel and JCCP Counsel describing their coordinated efforts to benefit the Class. This included written discovery and document review to identify key exhibits used during deposition (and mediation). (*See* Dkt. 522 at 8). Governed by California discovery rules applicable to complex cases, including unlimited depositions without 7-hour time restrictions, Class Counsel leveraged JCCP Counsel's participation to maximize pressure on their common opponent and increase efficiency, with specific assignments to JCCP Counsel relating to document review and deposition examination of Apple witnesses. *Id*. Finally, work performed by JCCP counsel was closely coordinated with Class Counsel through the Court-appointed State Liaison Counsel, further ensuring that the actions were litigated efficiently and with the goal to maximize the potential for settlement. Dkt. 471-2 at 2-3.

---

in the Fee Order entitled, "6. The *Vizcaino* Factors Do Not Support an Upward Adjustment." (*See* Dkt. 609 at 13). However, as clear from the text of that section, this Court was referring to the 28.3% requested, not the 26% ultimately awarded.

Similarly, resolution of the JCCP action was a material term in the global settlement, and the Settlement Agreement explicitly provided that "Class Counsel shall allocate from the Court's award of Attorneys' Fees and Expenses . . . to JCCP Counsel an appropriate amount of attorneys' fees and expenses," and that JCCP Counsel would not "make an independent claim for attorneys' fees or expenses in any federal or state court." Dkt. 416 at § 9.1. JCCP Counsel also submitted detailed billing records in their declaration (Dkt. 471-2), which excluded any time prior to case coordination in June 2018, and demonstrated that their hard work was not wasteful, and in fact, necessary and instrumental in the global settlement achieved. Accordingly, the Court on remand should include JCCP Counsel's time – reflecting years of hard work that directly benefitted the Class – in any lodestar cross-check.

## IV.   CONCLUSION

Plaintiffs respectfully request that the Court should again approve attorneys' fees, expenses and service awards.

On remand, the Court can and should again apply the percentage-of-recovery method to approve fees in the amount of $80.6 million, or 26% of the $310 million settlement recovery. Further, to comply with the Ninth Circuit's guidance to "more clearly explain" why a deviation from the 25% benchmark is appropriate, *Apple*, 50 F.4th at 784, fn. 11, the Court should include additional findings in its discussion of the *Vizcaino* factors that they, both individually and collectively, support a minor upward adjustment to the 25% benchmark.

Further, on remand, the Court can and should again apply the lodestar method as a cross-check to confirm that its 26% fee award is reasonable and will not result in a windfall. Here, to comply with the Ninth Circuit's guidance to "consider whether the JCCP fees should be included in the lodestar," *Apple*, 50 F.4th at 785, the Court should find that JCCP Counsel's time and efforts should be included in the lodestar, in recognition of their significant efforts, working in close coordination with Class Counsel, to help secure this historic global settlement for all Class members.

|   |   |
|---|---|
| | Respectfully submitted, |
| Dated: November 11, 2022 | COTCHETT, PITRE & MCCARTHY LLP |
| | By:  */s/ Joseph W. Cotchett*  <br> Joseph W. Cotchett |
| Dated: November 11, 2022 | KAPLAN FOX & KILSHEIMER LLP |
| | By:  */s/ Laurence D. King*  <br> Laurence D. King |

*Co-Lead Counsel for Plaintiffs*

\*     \*     \*

**ECF ATTESTATION**

I, Joseph W. Cotchett, hereby attest that the concurrence in the filing of this document has been obtained from the above signatories.

Dated: November 11, 2022         */s/ Joseph W. Cotchett*
                                                       Joseph W. Cotchett