Kendrick Jan (SBN 105149)
Kendrick Jan, APC
402 West Broadway, Suite 1520
San Diego, CA 92101
Phone: (619) 231-7702
kj@jan-law.com

John J. Pentz, *pro hac vice*
18 Damon Street
Wayland, MA 01778
Phone: (978) 985-4668
jjpentz3@gmail.com

*Counsel for Objectors Sarah Feldman and Hondo Jan*

Jan L. Westfall (SBN 241106)
P.O. Box 711472
San Diego, CA 92171
Phone: (619) 940-2880
jlwestfall.esq@gmail.com

*Counsel for Objector Deborah Pantoni*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| **IN RE: APPLE INC. DEVICE PERFORMANCE LITIGATION** | Case No. 5:18-md-02827-EJD |
| | **FELDMAN OBJECTORS' JOINT OPPOSITION TO PLAINTIFFS' AND DEFENDANT'S JOINT RENEWED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| This document relates to: ALL ACTIONS | |

Objectors Deborah Pantoni, Sarah Feldman, and Hondo Jan oppose PLAINTIFFS' AND DEFENDANT'S JOINT RENEWED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Dkt. 631), as follows:

# I. BACKGROUND

After their objections[1] – made on behalf of the Class as to both settlement approval and fees – were overruled, objectors Pantoni, Feldman and Jan appealed this Court's orders granting Final Approval of Class Action Settlement ("Settlement Approval Order") and granting Attorneys' Fees, Expenses, and Service Awards ("Fee Award") to the Ninth Circuit.  Four appeals were consolidated in the Ninth Circuit, and objectors Pantoni, Feldman and Jan (referred to as the "Feldman objectors" in the Ninth Circuit opinion and herein) jointly briefed and argued their appeals.

The Feldman objectors' appeals were successful.  The Ninth Circuit vacated the Settlement Approval Order, finding this Court improperly "applied a presumption that the settlement was fair and reasonable" and had improperly stated it "should give 'proper deference to the private consensual decision of the parties.'"  *In Re Apple Inc. Device Perf. Litig.*, 50 F.4th 769, 782-3 (2022).  The Ninth Circuit likewise vacated the Fee Award.  Certification of the settlement class was likewise vacated as part of the Ninth Circuit's reversal.

Plaintiffs and Defendants now bring a Joint Renewed Motion for Final Approval of Class Action Settlement ("Renewed Final Approval Motion") and Class Counsel now bring a separate Renewed Motion for Attorneys' Fees, Expenses and Service Awards ("Renewed Fee Motion"). Issues related to attorneys' fees and service awards are addressed separately in the Feldman objectors' Joint Opposition to Plaintiffs' Renewed Motion for Attorneys' Fees, Expenses, and Service Awards.[2]  The instant Opposition addresses issues related to Settlement Class Certification and Settlement Approval, only.

---

[1] Dkt. 512 and 519.

[2] Plaintiffs and Defendants also filed an administrative motion seeking to expedite hearing on the two renewed motions, Feldman objectors filed an opposition to that administrative motion on November 15, 2022.  Dkt. 636.

1

2                                **II. ARGUMENT**

3          In their Renewed Final Approval Motion, the parties suggest the Court need merely change

4   a few words in one paragraph in its prior order where it "cited the wrong legal standard" and rubber

5   stamp approval of the Settlement.  Dkt. 631, p.4, l. 11-13 and p. 6, l. 25-27 ("[T]he Ninth Circuit

6   vacated and remanded because one paragraph in the "Standards" section of this Court's final

7   approval order erred by suggesting that a "presumption of reasonableness" applied to the

8   settlement." "All that stands between the settlement class and the material benefits under this deal

9   is another order approving the fairness, reasonableness, and adequacy of the settlement under Rule

10  23(e).")  As with their earlier motions for final approval (arguing the court should defer to the

11  views of counsel), the parties would again mislead the Court by urging it to defer to their

12  assessment of the Settlement and cherry-picked language from the Ninth Circuit's opinion.  The

13  parties ignore the District Court's obligation to carefully examine – with heightened scrutiny – the

14  fairness of the Settlement in keeping with controlling authority and the Ninth Circuit mandate.

15  **A.      The court should not rubber stamp approval of the Settlement**

16         Vacatur by the Ninth Circuit for failure to apply heightened scrutiny does not invite a simple

17  reprocessing of the Settlement Approval Order.  The parties' arguments in this regard, combined

18  with their motion seeking expedited processing of their motions, reflect disrespect for the Ninth

19  Circuit's clear statement of the District Court's duty to thoroughly scrutinize a class action

20  settlement and a further attempt to convince the Court to defer to the views of counsel in a case

21  where this has already proven problematic.

22         The errors identified by the Ninth Circuit were not limited to citing the wrong legal

23  standard.  The Ninth Circuit specifically determined the District Court erred by deferring to the

24  views of counsel and according those views a "presumption of reasonableness" and by describing

25  that it "should give 'proper deference to the private consensual decision of the parties' [ ] and that

26  the 'recommendations of plaintiffs' counsel should be given a presumption of reasonableness"

27  (citations omitted). 50 F.4th 782-783. The Ninth Circuit further found the District Court erred by

28

citing "'a presumption that the agreement is fair' given '[t]he involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place'." (Citations omitted). *Id.* An additional concern highlighted by the Circuit was the District Court's suggestion that "its scrutiny was limited to 'obvious deficiencies' [ ] rather than any 'subtle signs' of collusion." (Citations omitted). *Id.*

Owing to its determination that the Settlement Approval should be vacated, the Ninth Circuit did not address all of the arguments made by appellants. *See Id. at* 782 ("We need not reach these issues."). The vacatur of the Settlement obliges the District Court to review the facts and the law related to the Settlement again, without deference to the views of the parties. In complete disregard of the District Court's proper role in thoroughly analyzing the Settlement and duty to look for subtle signs of collusion, the parties go so far as to suggest the District Court may not review these issues. (See Dkt. 631, p.14-15, footnote 3). This is not the case; the obligation to review the facts and law related to the Settlement remains with the District Court. Further, consistent with case authority developed since the issuance of the Settlement Approval Order, the requirement that all Class members have standing at all stages of the case, including especially at settlement, must be thoroughly examined.

**B.      The Settlement presents problems with due process, and Rule 23(a), (b), and (e), and should not be approved**

Broadly stated, the Settlement presents two main issues: (1) Class member standing, which implicates due process and Rule 23(a) and (b) concerns; and (2) equitable treatment of Class members, which implicates Rule 23(e) concerns. The same distilled point applies to both issues: either all Class members suffered harm and should be compensated or the Class needs to be narrowed to only include members able to attest to injury.

The record in this case makes clear that at the settlement stage Class Counsel agreed to a Settlement that would compensate only a small segment of the class. This Court will recall that Plaintiff's opposition to Apple's motion to dismiss made clear that Class claims and damages did not depend on any Class member's subjective experience of the throttling effects of the iOS updates. Plaintiffs argued:

Apple instead is really complaining about the absence of two particular allegations, neither of which are relevant to Plaintiffs' theories of damages—first, whether any individual personally experienced a UPO, and second, whether any individual personally experienced a manifestation of the throttling software.  Apple premises both objections on a fundamental mischaracterization of plaintiffs' theory; ***Apple manufactures a straw-man at odds with the SAC***, and then attacks the SAC for not alleging facts to support Apple's preferred theory.  Apple's gambit should be rejected.

Oppo. to MTD, Dkt. 298, p. 32, l. 9-14 (emphasis added).

Plaintiffs stressed instead that their case was based on injury shared by all members of the proposed class: Apple now argues that plaintiffs must allege additional individualized experiences, beyond the uniform injury sustained by all Plaintiffs.  This mischaracterizes the theory of the case and mischaracterizes the data. … Apple's software Updates "impaired" the availability "of normal CPU performance, which is damage regardless of any particular customer's observations.   The previously available CPU performance was artificially reduced for everyone, uniformly – no Device was exempt from throttling.

Dkt. 298, p. 34, l. 18-25.

At the motion stage, this Court agreed and determined plaintiffs' allegations were sufficient and capable of Class-wide proof.  At the settlement stage, however, Class Counsel abandoned the claims of the overall Class and, with defendant, designed the Settlement to compensate only a small subset of the Class – those Apple owners who could attest to personal experience of performance issues.[3]  As a result, the proposed Settlement is not fair to the vast majority of the Class, whose

---

[3] Remarks by Apple's counsel at the preliminary approval hearing made clear that the parties had agreed to a compromise designed to exclude the vast majority of the class, and had agreed to compensate only those who could attest to the kinds of performance issues this Court had previously determined were not required.  Specifically, the parties agreed that a claim form would be required in which class members would need to attest to having experienced performance issues while running the software updates.  Apple's counsel explained that compensation would be limited to "a very, very narrow group." Dkt. 430, page 19.  By contrast, the release covers all Settlement Class members, even those not able to make a claim: "Now I need to stress the class is very broad. In Apple's view it will cover every single device that was potentially impacted." Dkt 430, p. 24.

claims for expert-calculated economic damages were by the terms of the Settlement extinguished for no consideration.

This Ninth Circuit has described that compensating only those Class members who complete the attestation is appropriate, because those unable to do so are relinquishing "valueless" claims, but this is entirely inconsistent with the evidence underlying the District Court's prior analysis of class-wide economic damages. What seems to have been forgotten is that Class Counsel proffered the testimony of a single expert in support of the Settlement, whose testimony was not contested by Apple. The Williams Declaration regarding uniform economic damage suffered by *all* Class members supplies evidence of injury suffered by every Settlement Class member. Class Counsel has tendered the proof necessary to satisfy *Transunion*'s standards as to the entire Class, but the parties elected to limit recovery to only a portion of the Class.

Class members have been neither adequately represented nor equitably treated within the meaning of Rules 23(e)(2)(A) and (D), and the Settlement should not be approved.

Further, where the interests of a narrow sub-set of the class are privileged such that the claims of a large portion of the class are released for no compensation so that the narrow subset can be compensated, Class Representatives have not fairly and adequately represented the Class as a whole as required by Rule 23(a)(4).

As well, by allowing injury to hinge on individual subjective experience, the Settlement violates the typicality requirements of Rule 23(a)(3) and the predominance demands of Rule 23(b)(3).

---

The attestation requirement was a critical piece of the settlement for Apple: "[a]nd that's why the claim form, frankly, has an attestation requirement as well. It's not just if you downloaded the software. The claim in [t]his case is that you experienced some sort of impact on performance ... So for us that was a very critical and material component to negotiating this settlement." Dkt. 430, page 22.

Class Counsel has not addressed the clear issue presented by the expert-supported uniform economic damages suffered by *all* Class members being coupled with the terms of Settlement that deny any benefit to the vast majority of these Class members.  Failure to provide some measure of compensation for all Class members in this instance is a clear indication of inadequate representation, lack of predominance of Class-wide claims, and unequal treatment of Class members.

**C.    The Class must comprise only those absent Class members who can establish standing through evidence**

The parties have asked this Court to recertify the same Settlement Class that they proposed in 2020 – namely, everyone who owned a subject iPhone and who downloaded the relevant iOS update.  The vast majority of such persons were not aware of impaired performance attributable to the updates, and thus – by the Panel's lights – did not suffer compensable injury.[4]  Therefore, in accordance with Supreme Court and Ninth Circuit law, that majority must be excluded from the Settlement Class.

In recent years, the Supreme Court has consistently affirmed the enduring importance of standing.  *See, e.g., Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) (overruling the Ninth Circuit where plaintiffs had not proven injury-in-fact) and *Frank v. Gaos*, 139 S.Ct. 1041 (2019) (vacating approval of *cy pres*-only settlement for determination of whether plaintiffs satisfied injury-in-fact required for Article III standing).

Shortly after this Court's now vacated approval of the Settlement, the Supreme Court overruled the Ninth Circuit in *Transunion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), a case where the Supreme Court determined a large portion of the certified class had not experienced a concrete harm and therefore lacked standing.  With that decision the Supreme Court stressed the importance of ensuring that all litigants have standing at all stages of litigation.  The Court reiterated certain fundamental requirements for standing.  First, plaintiffs must have a personal stake in the litigation, i.e., they must be able to sufficiently answer the question: "What's it to you?"  *Id.*, at 2203.  Further,

---

[4] This contradicts the Williams Declaration.  Dkt. 591.1

1   "As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they

2   have standing." *Id*, 2207-8*, citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

3        In *dicta*, the Ninth Circuit Panel opined that the matter of each Class member's standing

4   could be established based purely on the plaintiffs' *allegations*, and that the parties may elect to

5   settle the matter of each Class member's standing and the size of the Class as part of the overall

6   compromise of this case.

7        At the time the parties settled, prior to class certification or summary judgment,
         plaintiffs ***alleged*** that all putative class members experienced throttling from

8        Apple's allegedly unlawful intrusion into their phones.  That sufficed to establish
         standing.  Had the parties brought the case to trial, as in *TransUnion*, 141 S. Ct. at

9        2202, plaintiffs' allegation of classwide injury would have been either proven or
         disproven.  The risk that this uncertain outcome posed to the parties was one of the

10       factors that induced them to settle.

11

12  Panel Opinion at p. 21 (emphasis added).

13        To the contrary, the Ninth Circuit held in *Olean* that, at the certification stage, "plaintiffs

14  must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23

15  [which include injury and standing] are satisfied ***by a preponderance of the evidence***."  *Olean*

16  *Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022)

17  (emphasis added).[5]  The Ninth Circuit held in *Olean* that the issue of class member standing need

18  not be finally resolved at the class certification stage, *if* a future trial would provide, after expert

19  testimony is weighed by the factfinder, the opportunity to narrow the class to only persons with

20  Article III standing.

21

22  _____

23  [5] "'[P]laintiffs wishing to proceed through a class action must actually *prove*—not simply plead—

24  that their proposed class satisfies each requirement of Rule 23, including (if applicable) the

25  predominance requirement of Rule 23(b)(3),' and must carry their burden of proof 'before class

26  certification.'" *Olean* at 664, *quoting Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258,

27  275–76 (2014).

28

1      In the case of a class action *settlement*, however, there is no future opportunity to weigh

2  evidence in order to determine which putative class members actually have Article III standing.

3  Therefore, evidence – not allegations – sufficient to establish the standing of each settlement class

4  member must be presented at the time of settlement.

5      In *Drazen v. Pinto*, 41 F.4th 1354 (11th Cir. 2022), the 11th Circuit clarified that, in the case

6  of a settlement class, the District Court must determine through evidence at the time of settlement

7  that every class member has suffered an injury sufficient to confer Article III standing.

8      [W]hen a class seeks certification for the sole purpose of a damages settlement
       under Rule 23(e), the class definition must be limited to those individuals who have
9      Article III standing. If every plaintiff within the class definition in the class action
       in *TransUnion* had to have Article III standing to recover damages after trial,
10     logically so too must be the case with a court-approved class action settlement.

11  *Drazen, supra*, at 1361.

12      The Eleventh Circuit in *Drazen* grounded its holding on the U.S. Supreme Court's opinion

13  in *Frank v. Gaos*, 139 S. Ct. 1041 (2019), in which the Court side-stepped the *cy pres* issue briefed

14  by the parties to address the more fundamental issue of whether Article III's standing requirements

15  "extend to court approval of proposed class action settlements."  *Id*. at 1046.  The Supreme Court

16  held that they do, and reversed and remanded on that ground.

17      The Supreme Court explained that while ordinarily in non-class litigation parties
       may settle whenever they want without court intervention…not so in class litigation,
18     where a settlement may only be finalized with district court approval… Even at the
       settlement stage of a class action, we must assure ourselves that we have Article III
19     standing…

20

21  *Drazen, supra*, 41 F.4th at 1359-60.[6]

22

23  _____

24  [6] In *Gaos* and *Drazen*, as here, the parties had agreed on the definition of the settlement class as

25  part of their overall compromise, so clearly the issue of Article III standing is not something the

26  parties may, in the absence of supporting evidence, simply stipulate to or settle.  In *Gaos* and

27  *Drazen* the parties had stipulated to each settlement class member's standing as part of the overall

28

In examining standing, the Panel applied an outdated, no-harm-no-foul standard that was rejected by the United States Supreme Court in *Transunion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). The Panel stated: "If a class member did not perceive and could not otherwise detect the throttling, then the class member's inability to make the attestation relinquished a valueless claim."[7] Panel Opinion at p. 20. But the Supreme Court clarified in *Transunion* that a court has no jurisdiction to order a release of the valueless claims of uninjured persons. Without concrete harm one cannot have standing, and without standing one cannot be a class member. *See TransUnion* at 2208 ("Every class member must have Article III standing in order to recover individual damages."). [8] The parties cannot confer jurisdiction on this Court through settlement where it does not otherwise exist, any more than Rule 23 can. Contrary to the Panel's holding, federal court jurisdiction is not a matter amenable to compromise. It is not harmless error for a court to order the release of claims of persons who according to the terms of Settlement have no

_____

compromise, but the Supreme Court held that Article III standing and federal court jurisdiction could not be created through contractual stipulation.

[7] The Panel did not consider the expert's testimony regarding uniform economic damages among Class members underlying the District Court's Settlement Approval Order. Instead the Panel described as "valueless" the claims of Class members unable to make the attestation. While the Settlement ignores these claims as valueless, the economic losses of non-claimant Class members persist.

[8] "Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.' For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case – in other words, standing." *Transunion*, 141 S. Ct. 2203. "A regime where Congress could freely authorize *unharmed* plaintiffs to sue defendants who violate federal law not only would violate Article III but also would infringe on the Executive Branch's Article II authority." 141 S. Ct. 2207.

1    injury, or "valueless claims."  If a person is injured, by definition their claims have value; if they

2    are uninjured, then the court has no power to issue any orders regarding them.

3             Given the constraints of the Settlement, *TransUnion* and *Olean* require the Settlement Class

4    to be narrowed to those Class members who can establish through evidence that they were injured

5    after downloading the software updates, and in this case the only evidence of that injury is in the

6    form of attestations of Class members cognizant of their injury.  The Panel, however, held that

7    Class members who did not perceive impaired performance of their iPhones were not injured within

8    the meaning of Article III, and thus deserve no Settlement compensation; but at the same time

9    erroneously held that mere allegations of harm are sufficient to support Article III standing for

10   these uninjured Class Members.  If those Class members who perceived no impairment of their

11   iPhones are regarded as having no injury or "a valueless claim," then this Court has no power to

12   adjudicate their interests.

13            This Court must either insist the availability of compensation be extended to all Settlement

14   Class members (who have Article III standing based on uniform economic damages testified to by

15   plaintiffs' expert) without attestation, *or* narrow the Class to those members whose Article III

16   standing can be separately established through evidence in the form of an attestation.  The

17   Settlement Class as proposed should not be certified for lack of class-wide standing, the Settlement

18   should be expanded to make compensation available to all Class members, or the Class should be

19   narrowed to members able to attest to impairment.  The Settlement should not otherwise be

20   approved.

21                                             **III. CONCLUSION**

22            For the foregoing reasons, PLAINTIFFS' AND DEFENDANT'S JOINT RENEWED

23   MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT should be denied.

24

25                                        Respectfully submitted,

26                                        Objectors Sarah Feldman and Hondo Jan,
                                          by their attorneys:

27   Date: Nov. 25, 2022                  */s/ Kendrick Jan*_____
                                          Kendrick Jan
28                                        Kendrick Jan, APC

Date: Nov. 25, 2022                    /s/ John J. Pentz
                                       John J. Pentz, *pro hac vice*


                                       Objector Deborah Pantoni, by her
                                       attorney:

Date: Nov. 25, 2022                    /s/ Jan L. Westfall
                                       Jan L. Westfall

1

## **CERTIFICATE OF SERVICE**

2

3      I hereby certify that a true copy of the foregoing was filed with the Clerk of Court using

4  CM/ECF on November 25, 2022, and as a result has been served on all counsel of record via

5  transmission of Notices of Electronic Filing generated by CM/ECF.

6

7

8

9                                          By:  ___*/s/ Kendrick Jan*_____

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28