Kendrick Jan (SBN 105149)
Kendrick Jan, APC
402 West Broadway, Suite 1520
San Diego, CA 92101
Phone: (619) 231-7702
kj@jan-law.com

John J. Pentz, *pro hac vice*
18 Damon Street
Wayland, MA 01778
Phone: (978) 985-4668
jjpentz3@gmail.com

*Counsel for Objectors Sarah Feldman and Hondo Jan*

Jan L. Westfall (SBN 241106)
P.O. Box 711472
San Diego, CA 92171
Phone: (619) 940-2880
jlwestfall.esq@gmail.com

*Counsel for Objector Deborah Pantoni*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| IN RE: APPLE INC. DEVICE PERFORMANCE LITIGATION<br><br>This document relates to:<br>ALL ACTIONS | Case No. 5:18-md-02827-EJD<br><br>**FELDMAN OBJECTORS' JOINT OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |

Class members Sarah Feldman, Hondo Jan, and Deborah Pantoni (together "Feldman objectors") submit their joint Opposition to Plaintiffs' Renewed Motion for Attorneys' Fees, Expenses and Service Awards, as follows:

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................... i

TABLE OF AUTHORITIES ....................................................................................................... ii

I. INTRODUCTION ...............................................................................................................1

II. BACKGROUND .................................................................................................................1

III. ARGUMENT ......................................................................................................................1

    A. Legal standard: Court's fiduciary role .....................................................................1

    B. An upward adjustment in the Ninth Circuit benchmark is unwarranted ................2

        1. The Ninth Circuit benchmark ........................................................................2

        2. Results achieved .............................................................................................2

        3. Awards in similar cases do not support an upward adjustment..................4

        4. The *Vizcaino* factors do not support an upward adjustment......................5

    C. Class Counsel's proffered lodestar is overstated by millions of dollars................5

        1. JCCP Counsel fees should not be included in lodestar .................................5

        2. JCCP Counsel fees are not properly supported ............................................8

        3. International liaison counsel fees should not be included in lodestar .......................................................................................................10

        4. Paralegal fees should not be included in lodestar.................................10

        5. The Court's maximum 2.232 multiplier should be applied to a corrected lodestar..............................................................................11

    D. Non-Class members lack Rule 23 capacity to serve as Named Plaintiffs and should not receive incentive/service awards ...............................12

IV. CONCLUSION .................................................................................................................13

# TABLE OF AUTHORITIES

**CASES**

*Alexander v. FedEx Ground Package Sys.*,
  2016 WL 3351017 (N.D. Cal. June 15, 2016) .......................................................................... 4

*Chemical Bank v. Jaffe & Schlesinger, P.A.*,
  19 F.3d 1306 (9th Cir. 1994) .............................................................................................. 5, 12

*Churchill Village, LLC v. General Electric*,
  361 F.3d 566 (9th Cir. 2006) ................................................................................................... 6

*Democratic Party of Wash. State v. Reed*,
  388 F.3d 1282 (9th Cir. 2004) ................................................................................................. 9

*Florida v. Dunne*,
  915 F.2d 542 (9th Cir.1990) .................................................................................................... 2

*Garcia v. Resurgent Cap. Servs., L.P.*,
  2012 WL 3778852 (N.D. Cal. Aug. 30, 2012) ..................................................................... 8, 9

*Hensley v. Eckerhart*,
  461 U.S. 424, 433 (1983) ........................................................................................... 5, 7, 8, 10

*In re Apple Inc. Device Perf. Litig.*,
  50 F.4th 769 (9th Cir. 2022) ................................................................................................. 1, 5

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ............................................................................................. 5, 10

*In re High-Tech Emp. Antitrust Litig.*,
  2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ........................................................................... 4

*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2010) ................................................................................................... 1

*In re Washington Public Power Supply System Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 2017) ................................................................................................... 9

*Larsen v. Trader Joe's Co.*,
  2014 WL 3404531 (N.D. Cal July 11, 2014) ........................................................................... 3

*Missouri v. Jenkins*,
  491 U.S. 274 (1989) ............................................................................................................... 10

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................................................................... 2

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043, 1052 (9th Cir. 2002) ................................................................................. 1, 11

*Vogel v. Harbor Plaza Ctr., LLC*,
 893 F.3d 1152 (9th Cir. 2018) .................................................................................................8

**OTHER**

Eisenberg, Theodore and Miller, Geoffrey P., *Attorney Fees and Expenses in Class Action Settlements (1993-2008)*,
 7 J. Empirical Legal Studies 248 (2010) .............................................................................4

*Procedural Guidance for Class Action Settlements* (N.D. Cal) ......................................................9

Rubenstein, William B., 5 Newberg on Class Actions § 15:41 (5th Ed.). ..................................10

Rubenstein, William B. 5 Newberg on Class Actions § 15:87 (5th ed.) ....................................11

## I. INTRODUCTION

The matter of attorneys' fees in this class action is again before this Court on remand from the Ninth Circuit. By their pending fee motion, Class Counsel ask this Court to ignore certain aspects of the Ninth Circuit's analysis regarding fees, the extraneous and duplicative work of JCCP Counsel, the limitations on the acceptable lodestar multiplier in this case, and to disregard this Court's own prior findings relating to adjustments to the Ninth Circuit's benchmark.

## II. BACKGROUND

Feldman objectors appealed this Court's Order Granting Plaintiffs' Motion for Final Approval of Class Action Settlement ("2021 Settlement Approval Order") and Order Granting In Part Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards ("2021 Fee Order"). By its October 11, 2022 opinion, the Ninth Circuit vacated both the Settlement Approval Order and the Fee Order. *See In re Apple Inc. Device Perf. Litig.*, 50 F.4th 769, 782-3 (9th Cir. 2022).

Class Counsel now bring a Renewed Motion for Attorneys' Fees, Expenses and Service Awards ("Renewed Fee Motion"), and Plaintiffs and Defendants together bring a Joint Renewed Motion for Final Approval of Class Action Settlement ("Renewed Final Approval Motion"). The instant Opposition relates only to the Renewed Fee Motion. Regarding fees, the Ninth Circuit requires this Court address issues – some aspects of which are the subject of this Court's earlier findings and Class Counsel's own earlier submissions – relating to adjustments in the Circuit's benchmark and the inclusion of JCCP Counsel fees in Class Counsel's lodestar.

## III. ARGUMENT

A.   **Legal standard: Court's fiduciary role**

When class counsel are seeking a common fund fee, their interest is adverse to the interest of their class clients, and the Ninth Circuit has held the Court has a fiduciary duty to protect the interest of class members at the fee-setting stage. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002), and *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010). In ruling on the Renewed Fee Motion and determining Class Counsel's fee award, this Court – in its fiduciary role – must act in the best interest of the absent Class. This Court is "guided by the fundamental principle that fee awards out of common funds be 'reasonable under the

circumstances.'" *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), *quoting Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir.1990).

**B.     An upward adjustment in the Ninth Circuit benchmark is unwarranted**

The Ninth Circuit states: "It's not entirely clear how the district court arrived at [the 26% fee]. The [District Court] inaccurately characterized 26% as 'the benchmark in the Ninth Circuit...'" Although Feldman objectors' opposition to the Renewed Fee Motion is not limited to the $3.1M difference between a 25% benchmark fee and the earlier awarded 26% fee, it is necessary to address the District Court's description of 26% as the Ninth Circuit's benchmark and Class Counsel's effort to have the Court adjust its prior *Vizcaino* analysis in support of the 26% fee award earlier ordered.

**1.     The Ninth Circuit benchmark**

In its 2021 Fee Order, this Court uses the word *benchmark* 18 times; it refers specifically to the Ninth Circuit's 25% benchmark eight times, and refers to the benchmark as being 26% only one time, where it describes its fee award as at the benchmark. The Ninth Circuit describes the District Court's single use of 26% as the Circuit benchmark as "inaccurately characterized" and "more than the [Ninth Circuit] benchmark." The incorrect use of 26% as the Circuit benchmark, in a case where no upward adjustment from the actual 25% benchmark is warranted, results in an overcharge to the Class of at least $3.1M.

**2.     Results achieved**

In their Renewed Fee Motion, Class Counsel rely almost entirely on a reiteration of their analysis of the *Vizcaino* factors made in their original Motion for Attorneys' Fees filed August 26, 2020. *See* Dkt. 468, p. 6-12. As this Court states in the 2021 Fee Order, the "most critical factor" in determining appropriate attorneys' fee awards "is the degree of success obtained." Dkt. 609, p. 6, l. 12-14. The "degree of success obtained" is another way of describing "results achieved," the first *Vizcaino* factor.

In addressing the most critical *results achieved* factor and hoping to change the District Court's finding, the Renewed Fee Motion adds a new description of the gross Settlement amount as being "truly remarkable in size, creating a non-reversionary minimum settlement amount of $310

million, and a maximum amount of $500 million, the largest computer intrusion settlement in history." Dkt. 632, p. 9, l3-5. Class Counsel then proceed to describe the settlement recovery as "an *exceptional result*" in relative terms (i.e. the recovery as a percentage of available damages). In its ruling on the original Fee Motion, however, this Court recognized the plain difference between a large gross recovery (i.e., total number of dollars) and the modest relative recovery achieved in this case, and determined the Settlement's results achieved did not merit an upward adjustment from the Benchmark.

In their original Fee Motion, Class Counsel described "the overall result and the benefit to the class, including a recovery that will likely exceed the maximum recoverable damages, warrants a modest upward adjustment to the 25% benchmark." Class Counsel compared the instant Settlement to the settlement in *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *4 (N.D. Cal July 11, 2014); there the District Court approved a settlement amounting to "50% of the recovery plaintiffs could have received had the case gone to trial." As this Court has described, the instant Settlement provides nothing close to a 50% recovery of what plaintiffs might have received had they proceeded to trial; rather it is the net per claim recovery that Class Counsel has touted, and the Court has described the effort to equate the two as entirely impractical. *See* Dkt. 609, p. 7, l. 20-21. As the Fee Order describes, *Larsen* simply does not support any upward adjustment in this case. ("The Settlement in this case, while substantial in amount, does not provide comparable comprehensive benefits to the Class." *Id.*, p.7, l. 12-13. "While this recovery is significant and facially comparable to the result in *Larsen*, this increase in recovery is a result of the response rate; it was not guaranteed to the Class." *Id.*, p. 7, l. 19-20.) The Court's analysis of the results achieved underlies its finding the *Vizcaino* factors do not support an upward adjustment. *See* Dkt. 609, p. 13, l. 12.

This Court's earlier analysis of the first, and most important, *Vizcaino* factor does not support any upward adjustment from the Circuit's benchmark. Nothing in Class Counsel's Renewed Fee Motion can justify a change in this Court's finding in this regard.

### 3. Awards in similar cases do not support an upward adjustment

In their Renewed Fee Motion, Class Counsel "submit that [awards in similar cases support] a slight upward adjustment to the benchmark." Dkt. 632, p. 11, l. 21. There are no changed circumstances since the making of the 2021 Fee Order, and Class Counsel are incorrect.

The Court earlier determined the originally requested fee "*far exceeds* the mean and median percentages reported in both the Eisenberg & Miller study and the Fitzpatrick study." (Emphasis added.) Dkt. 609, p. 13, l. 22-23. In its Fee Order, when examining whether awards in similar cases would justify an upward adjustment, the District Court stated the "better approach is to look to empirical research on megafund cases." Dkt. 609, p. 12, l. 12. This is consistent with what Judge Chen did in *Alexander v. FedEx Ground Package Sys.*, No. 05-cv-00038, 2016 WL 3351017, at *2-3 (N.D. Cal. June 15, 2016). Judge Chen ultimately awarded fees of 16.4% of the $226,500,000 common fund, citing to *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509, 2015 WL 5158730, at *13 (N.D. Cal. Sept. 2, 2015), in which Judge Koh awarded fees of 10.5% of a $435 million settlement.[1] The $310 million Settlement fund in this case falls almost exactly in the middle of these two Northern District megafund cases cited by this Court, suggesting a reasonable fee would be somewhere in the 10.5%-16.4% range.

The empirical research and similar cases indicate a significant downward adjustment is warranted. Clearly, the awards in similar cases cannot be used to justify an upward adjustment in the Circuit benchmark.

---

[1] Judge Koh relied on Theodore Eisenberg and Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements (1993-2008)*, 7 J. Empirical Legal Studies 248 (2010) which reviewed 68 "megafund" settlements and found median attorney fees were 10.2% of the fund and the mean was 12%.

   **4.**  **The *Vizcaino* factors do not support an upward adjustment**

In their Renewed Fee Motion, Class Counsel argue against the findings of this Court and describe that "all five [*Vizcaino* factors] support upward adjustment." Dkt. 632, 12, l. 9-10. Class Counsel is entirely wrong on this point.

As this Court has already found, "The *Vizcaino* Factors Do Not Support an Upward Adjustment." Dkt. 609, p. 13, l. 12. Class Counsel's Renewed Fee Motion offers no new insight regarding the *Vizcaino* factors and polishing its earlier-made arguments that *Vizcaino* factors favor an upward adjustment in this case should be entirely disregarded.

**C.**  **Class Counsel's proffered lodestar is overstated by millions of dollars**

The Ninth Circuit's key focus relating to the lodestar issue was this Court's inclusion of JCCP Counsel's fees in its lodestar analysis. *See In re Apple Inc.*, 50 F.4th at 783-784 ("[W]e agree with objectors that the district court's explanation for considering JCCP-related work conflicted with the overall rationale for its fee award.").

In the 2021 Fee Order, the District Court determined that the *Vizcaino* factors did not support upward adjustment from the Ninth Circuit's benchmark, and that Class Counsel's original Fee Request was substantially beyond that awarded in similar cases. This Court then determined to:

> "proceed with a lodestar calculation to evaluate whether there is a basis to deviate upward or downward from the 25% benchmark. *See In re Bluetooth Headset*, 654 F.3d at 942 ('where awarding 25% of a 'megafund' would yield windfall profits for the class counsel in light of the hours spent on the case courts should adjust the benchmark percentage.')."

Dkt. 609, p. 13, l. 22-24.

   **1.**  **JCCP Counsel fees should not be included in lodestar**

The lodestar method requires the District Court to determine the "number of hours reasonably expended on the litigation" and multiply those hours by a "reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The product of this calculation "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley, id. See also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

Ninth Circuit precedent also establishes that work in parallel state actions not consolidated in an MDL should not be included in class counsel's fee award. In *Chemical Bank v. Jaffe & Schlesinger, P.A.,* 19 F.3d 1306, 1309 (9th Cir. 1994) this court affirmed the District Court's denial of fees to counsel for plaintiffs in parallel state action, where the district court held:

> The [state] action was never part of the MDL [ ] action, but instead was parallel litigation. By its terms, however, the settlement of MDL [ ] also resolved the [state] litigation...the state court proceeding was an independent, somewhat parallel action in a different forum. It was not undertaken by MDL Counsel. It was not waged on behalf of the entire Class, and the entire Class would not have shared all potentially attainable benefits. The two actions were distinct and detached. Thus, while the cases may have been 'related,' the relationship was attenuated.

*Id.,* at 1307-1309.

JCCP Counsel's efforts were not expended on the litigation of this case. Rather, as this Court has found, the JCCP Action was separately pursued and followed its "own lengthy litigation history, including demurrers, amended complaints, discovery, etc. …" Dkt. 608, p. 4, l. 9-10. Thus, *Chemical Bank* compels exclusion of the JCCP lodestar from the fee calculations in this MDL case. *See also Churchill Village, LLC v. General Electric*, 361 F.3d 566, 579 (9th Cir. 2006).

By way of declaration made under penalty of perjury, JCCP Counsel have themselves stated their work in the separate JCCP Action included their own: "wide ranging investigation into the JCCP Action," including a review of "publicly available information regarding the cellphone device and battery industry, and consultation with an industry expert"; drafting and extensively researching three "comprehensive Master Consolidated Complaints detailing Defendants' violations of California consumer protection laws, and including a novel theory based upon a defective product"; substantial law and motion efforts – including "exhaustive legal research to oppose and largely prevailing after Defendant's multiple hard-fought demurrers" to the JCCP complaints, drafting and litigating "three different Oppositions to Apple's Motion to Stay the [JCCP] proceedings," drafting, meeting and conferring, negotiating and entering agreements with Apple over JCCP Action specific "case management documents"; and "comprehensive discovery program" that included "two sets of

Case 5:18-md-02827-EJD   Document 638   Filed 11/25/22   Page 11 of 18

Requests for Production of Documents and Interrogatories"[2] and "10 depositions"[3] and "organizing a "team of lawyers that reviewed, searched, and extensively coded and analyzed" seven million pages of documents" obtained in the JCCP Action. Dkt. 471-2, p. 4, l. 3 through p.5, l. 2a-5. All of JCCP Counsel's efforts in investigations, expert consultations, drafting complaints, law and motion practice, negotiation and drafting of case management and administrative documents – though they may have provided some collateral benefit to the instant MDL action – were spent in pursuit of the separate JCCP litigation, and should not be included in Class Counsel's lodestar.

Further, JCCP Counsel's description that in the JCCP Action they "propounded two sets of Requests for Production" which "resulted in the production of more than 7 million documents" and they "reviewed, searched, and extensively coded and analyzed" those seven million documents[4]

---

[2] Class Counsel describes having "propounded four sets of Requests for Production." Dkt. 471, p. 4, l. 17.

[3] JCCP Counsel describes that "With [Class Counsel], JCCP Counsel took depositions of 10 Apple witnesses." Dkt. 471-2, p. 9, l. 13. This is a function of discovery coordination, but JCCP Counsel operated in pursuit of litigation of the JCCP Action and Class Counsel participated in pursuit of the instant MDL action. There is no basis for charging the Class for JCCP Counsel's work incurred in pursuit of unsuccessful and competing actions/claims, which efforts "cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'" *Hensley*, 461 U.S. at 435 (internal citations omitted).

[4] JCCP Counsel describe: "JCCP Counsel served dozens of document requests on Apple, and after several meet and confers, Apple ultimately produced more than seven million pages of documents. This is an enormous amount of document discovery, and required indexing, logging, and processing and uploading…" Dkt. 471-2, p. 9, l. 2-5. These seven million pages are the same documents Class Counsel takes credit for obtaining, indexing, reviewing, etc. See fn.4, below.

Case No. 5:18-md-0287-EJD                              7                        Opposition to Renewed Fee Motion

indicates the Class is being charged for duplicative effort. The reason being, Class Counsel describe that they themselves "propounded four sets of Requests for Production" and reviewed the same "more than 7 million documents." Dkt. 471, p. 4, l. 17-18.[5]

Clearly, JCCP Counsel's discovery and document coding, review and analysis, work in the JCCP Action is duplicative of Class Counsel's charges of $2,357,991.00 for "Written Discovery" and $4,566,693.50 for "Tier I Document Review" in the separate MDL action. Dkt. 553, p. 45. If the Court includes in Class Counsel's lodestar charges by JCCP Counsel for their work in discovering, coding, reviewing and analyzing the seven million documents produced by Apple, then it should remove Class Counsel's charges for duplicative "Written Discovery" and all charges for "Tier 1 Document Review" of those same seven million documents. If the Court accepts Class Counsel's charges for their Written Discovery and Tier 1 Document Review in the MDL action, then the duplicative efforts of JCCP Counsel in the JCCP Action should plainly not be included in Class Counsel's lodestar.

### 2.   JCCP Counsel fees are not properly supported

A District Court cannot "discharge its duty simply by taking at face value the word of the prevailing party's lawyer for the number of hours expended on the case." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018). The District Court must disallow inclusion of "excessive, redundant, or otherwise unnecessary" hours in lodestar. *Hensley*, 461 U.S. at 434. And the fee applicant bears the "burden of "documenting the appropriate hours expended" in the litigation and therefore must submit evidence supporting the hours worked." *Garcia v. Resurgent*

---

[5] Class Counsel also describe they were the ones who served "document requests on Apple, and after much contention, Apple ultimately produced more than seven (7) million pages of documents. This is an enormous amount of document discovery and required indexing, logging, and processing and uploading." Dkt. 471, p. 14, l. 27 through p. 15, l. 1. These seven million pages are the same documents JCCP Counsel takes credit for obtaining, indexing, reviewing, etc. See fn.3, above.

*Cap. Servs., L.P.*, No. 11-1253-EMC, 2012 WL 3778852, at *4 (N.D. Cal. Aug. 30, 2012) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 433 and 437).[6] The District Court must be provided sufficient details "to form a judgment on whether [the fee applicant's] fees were legitimate" in order to determine "whether the work was an appropriate basis for fees." *Democratic Party of Wash. State v. Reed*, 388 F.3d 1282, 1286 (9th Cir. 2004). *See also Garcia* at * 24 (Lodestar filings must "contain enough specificity as to individual tasks to ascertain whether the amount of time spent performing them was reasonable.")

As well, this District has produced a *Procedural Guidance for Class Action Settlements*[7] that requires:

> ATTORNEYS' FEES – All requests for approval of attorneys' fees must include detailed lodestar information, even if the requested amount is based on a percentage of the settlement fund. *Declarations of class counsel as to the number of hours spent on various categories of activities related to the action by each biller*, together with hourly billing rate information may be sufficient, provided that the declarations are adequately detailed. *Counsel should be prepared to submit copies of detailed billing records if the court orders.* (Emphasis added.)

In support of their nearly $3,993,154 addition to Class Counsel's lodestar, JCCP Counsel submitted only lump-sum totals by timekeeper; they provide no hours by category and it is impossible based on the provided information to adequately analyze whether their hours are necessary, redundant, or related to this action. Dkt. 471-2, p. 20-26. This minimalist approach to

---

[6] Whether in a fee shifting or common fund case, the same reasonable standards apply and lodestar must be precisely calculated and relate directly and intimately to the prosecution of the litigation at hand. *See In re Washington Public Power Supply System Sec. Litig.*, 19 F.3d 1291, 1304 (9th Cir. 2017) (principles developed in fee shifting cases are applicable to common fund fee awards when they make sense in common fund context). There is no "cogent argument" why the rules of lodestar calculation should differ in fee-shifting and common fund contexts, including the rule requiring sufficient detail to permit a court to determine whether particular hours furthered the litigation. *Id*.

[7] https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/

claiming lodestar fees is entirely insufficient. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Class Counsel have failed to provide the necessary minimum information required by the District's procedural guidelines. If the Court determines to include *any* JCCP Counsel fees in lodestar, the Court should require "detailed billing records" in support of any such fee amount or category share and permit review of same by Feldman objectors.

### 3. International liaison counsel fees should not be included in lodestar

International liaison counsel fees of $547,037 are included in Class Counsel's lodestar, and applying a 2.232 multiplier to this wrongfully included portion of Class Counsel's proffered lodestar would result in an unjustifiable charge to the Class of $1,220,986.

This Court has made no finding that efforts on the part of international liaison counsel were made on behalf of the Class or that they contributed anything to the litigation of the instant MDL action. In fact, these fees are undocumented, unsupported, and incurred in pursuit of unsuccessful and competing actions/claims and related efforts "cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'" (Internal citations omitted.) *See Hensley*, 461 U.S. at 435. International liaison counsel fees should be removed from Class Counsel's lodestar.

### 4. Paralegal fees should not be included in lodestar

In their proffered lodestar, Class Counsel include $2,846,443 in paralegal charges. While the case-related hourly fees charged for the work of paralegals employed by Class Counsel are recoverable within the context of an attorneys' fee order, these charges should not be subjected to a lodestar multiplier – whether for purposes of a lodestar-fee calculation or for crosscheck purposes. Feldman objectors cite to the Supreme Court's holding in *Missouri v. Jenkins*, 491 U.S. 274, 288-289 (1989), which allowed an award of paralegal fees in connection with an attorneys' fee award so as to "encourage [ ] cost effective delivery of legal services." As summarized by Professor Rubenstein, "the Court has held that, when "the prevailing practice in a given community [is] to bill paralegal time  separately  at  market  rates," a  reasonable  attorney's fee should  include compensation for those hours *at those market rates*." (Emphasis added.) Rubenstein, William B., 5 Newberg on Class Actions § 15:41 (5th Ed.).

At the Ninth Circuit, Class Counsel argued the "risk of losing employment if the partnership does not prosper" justifies the application of a risk multiplier to paralegal fees. The risk multiplier is available to "the *contingent fee lawyer* [ ] *investing her resources and time* in her clients' suit, forestalling payment to a future date and sharing the risk of losing that case with the client." (Emphasis added.) Rubenstein, William B. 5 Newberg on Class Actions § 15:87 (5th ed.). But it is only the attorneys' risk of nonpayment that can be considered in developing a risk multiplier. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051 (9th Cir. 2002) ("This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases.") Such risk does not extend to salaried, unlicensed employees like paralegals any more than it does to a law firm receptionist, secretary, librarian, technical support staffer or cafeteria worker. These employees are not exposed to the contingency risk to which counsel is exposed and their compensation is a matter of right that exists apart from any claim for attorneys' fees; their compensation is independent of any particular fee award. The lawyer's payroll expenses, including charges for paralegal services ought to be calculated and ordered in the same manner as a recoverable expense. Consistent with the rationale of *Missouri v. Jenkins*, and as explained by Professor Rubenstein, paralegal fees should be reimbursed at a reasonable market rate without any risk multiplier.

Subjecting paralegal fees to what the Court has determined is a case-specific maximum 2.232 multiplier will cost the Settlement Class $3,506,818.[8]

### 5. The Court's selected 2.232 multiplier should be applied against a corrected lodestar

In its earlier 2021 Fee Order the Court found Class Counsel's requested "2.43 multiplier is high" and any "award exceeding a 2.232 multiplier would result in 'windfall profits.'" Dkt. 609, p. 16, l. 15-17. Class Counsel included in their proffered $36,103,148 lodestar $3,993,154 incurred in the litigation of the parallel state JCCP Action, but those fees are improperly charged to *this* Class.

---

[8] I.e., $3,506,818 (i.e. ($2,846,443 x 2.232) - $2,846,443 = $3,506,818).

*See Chemical Bank v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1309 (9th Cir. 1994) (counsel who litigate a parallel state action are not entitled to a fee award where state counsel do "not formally represent [ ] [the federal] class," even though their "activities in representing others [may] incidentally benefit the class."). For the same reason, the $547,037 charged by international liaison counsel must be excluded from the lodestar charged[9] to this exclusively U.S. Class.

The permitted inclusion in lodestar of charges for the above-described unrelated, unnecessary, and duplicative services would support an unduly high percentage fee. Alternatively, removing these unrelated, unnecessary, and duplicative fees from lodestar while awarding a benchmark 25% fee would push the multiplier to 2.554 – far beyond the 2.232 found by this Court to be the case maximum permissible enhancement and beyond the earlier ruled-out 2.43 multiplier originally sought by Class Counsel.

By including the combined JCCP Counsel's and international liaison counsel's charges of $4,540,191, and in view of the maximum 2.232 multiplier set by this Court, Class Counsel seeks to overcharge the Class by at least $10,133,706.[10]

**D.    Non-Class members lack Rule 23 capacity to serve as Named Plaintiffs and should not receive incentive/service awards**

Although the Ninth Circuit vacated the District Court's order as to "attorney's fees, expenses, and incentive payments," the Renewed Fee Motion addresses incentive awards only in a foot note. As stated in their original objections, Feldman objectors oppose the award of any incentive/service award to Named Plaintiffs that are not Class members. Without limitation, it is

---

[9] Apple calculates that at least $7,100,000 of excessive and duplicative charges are included in Class Counsel's submitted lodestar. Dkt. 522, p. 8.

[10] Applying the district court's maximum 2.232 multiplier to a fully corrected lodestar, once JCCP Counsel's fees and international liaison fees are removed, and paralegal charges are treated as a cost, would reduce the fee to $66,959,474, representing a savings to the Class of $13,640,526.

Feldman objectors' position that the 11 foreign non-Class member Named Plaintiffs do not and cannot possess claims "typical of the claims or defenses of the" Settlement Class as required by Rule 23(a)(3) and all claims pursued or advocated by such foreign non-Class member Named Plaintiffs were international and/or competitive claims not common to the Class as required by Rule 23(b)(3), and thus such persons are not qualified to so serve the Class or receive incentive/service awards.

## IV. CONCLUSION

For the foregoing reasons, this Court should: (1) persist in its finding that Class Counsel's fee should not be subject to an upward adjustment in the Ninth Circuit 25% benchmark; (2) disallow inclusion of JCCP Counsel fees in Class Counsel's lodestar; (3) disallow inclusion of international liaison fees in Class Counsel's lodestar; (4) allow that Class Counsel be compensated for paralegal fees – without application of a multiplier; and (5) persist in the application of a multiplier of no greater than 2.232 against a corrected lodestar in the establishment and/or crosscheck of Class Counsel's fee.

Respectfully submitted,

Objectors Sarah Feldman and Hondo Jan,
by their attorneys:

Date: Nov. 25, 2022

/s/ Kendrick Jan
Kendrick Jan
Kendrick Jan, APC

Date: Nov. 25, 2022

/s/ John J. Pentz
John J. Pentz, Esq., *pro hac vice*

Objector Deborah Pantoni, by her attorney:

Date: Nov. 25, 2022

/s/ Jan L. Westfall
Jan L. Westfall

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing was filed with the Clerk of Court using CM/ECF on November 25, 2022, and as a result has been served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: ___/s/Kendrick Jan_____