1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Theodore H. Frank (SBN 196332)
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1629 K Street NW, Suite 300
Washington, DC 20006
Voice: 703-203-3848
Email: ted.frank@hlli.org

*Attorneys for Objector Anna St. John*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: APPLE, INC. DEVICE PERFORMANCE LITIGATION,<br><br>This Document Relates to:<br>ALL ACTIONS | Case No. 5:18-md-02827-EJD<br><br>**OBJECTION OF ANNA ST. JOHN TO PLAINTIFFS' RENEWED MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS**<br><br>Judge:  Hon. Edward J. Davila<br>Courtroom:  4, 5th Floor<br>Date:  April 20, 2023<br>Time:  9:00 A.M. |

1

**TABLE OF CONTENTS**

TABLE OF CONTENTS ...............................................................................................................i

INTRODUCTION ......................................................................................................................1

I.     The district court has a fiduciary duty to the absent class members at the fee-setting stage. .................2

II.    A percentage-of-recovery analysis applying the *Vizcaino* factors does not support the requested fee. ...............................................................................................................2

       A.     Results Achieved and Class Counsel's Skill and Quality of Work................................................4

       B.     Awards in Similar Cases........................................................................................6

III.   The lodestar crosscheck does not support class counsel's fee request of 26%. .....................................7

       A.     Time billed by JCCP counsel should be excluded from the lodestar. .........................................7

       B.     The lodestar was improperly withheld from the class and cannot be relied upon. ...................8

       C.     Only a modest risk multiplier is appropriate here because plaintiffs' counsel bore little risk of non-payment. ...............................................................................................9

CONCLUSION...........................................................................................................................9

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**INTRODUCTION**

2      Class member Anna St. John renews her objection to class counsel's renewed attorneys' fee motion,

3   which should fail for the same reasons that this Court previously identified and that St. John argued in her

4   initial objection. This Court already found that the "better approach" was to "look to empirical research on

5   megafund cases" (Dkt. 609 ("Order") at 12) that supports an award between 15% and 20%. Furthermore, the

6   lodestar is inflated with billings such as the JCCP fees addressed by the Ninth Circuit that, once removed,

7   confirms through a crosscheck that a fee award of 26% is excessive. This Court already found that "an award

8   exceeding a 2.232 multiplier would result in 'windfall profits for class counsel in light of the hours spent on

9   the case.'" Order 16 (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)).The

10  Court should reduce the fee request well below the 26%, equal to $80.6 million, of this megafund settlement

11  that plaintiffs request.

12      If the Court decides to base the fee award on class counsel's lodestar, then class members first must

13  have a chance to review the lodestar documentation, as that documentation may raise further questions about

14  the time spent on the matter and whether all of it should be billed to the class. St. John's initial objection

15  identified multiple queries about the nature and timing of the work performed that access to the documentation

16  would allow class members to address to ensure they are billed for a reasonable lodestar. Dkt. 523 at 21-22.

17      The Ninth Circuit's decision remanding to this Court agrees. The Ninth Circuit held that it was an

18  abuse of discretion not "to consider whether the JCCP fees should be included in the lodestar" when (i) this

19  Court agreed that there was "some merit" to the argument that the hours incurred by JCCP counsel increased

20  inefficiency and duplication and did not represent parties in this litigation, and (ii) excluding the $4 million of

21  JCCP hours in the lodestar increased the multiplier above the 2.51 this Court rejected as "high." *In re Apple Inc.*

22  *Device Performance Litig.*, Case No. 21-15763 (9th Cir. Sept. 28, 2022) ("Op.") at 27. The Ninth Circuit further

23  held that if the Court awards attorneys' fees using the percentage-of-recovery method on remand, "it should

24  more clearly explain why a deviation from the benchmark is or isn't appropriate before proceeding to a lodestar

25  cross-check." Op. 26 n.11. This Court's previous findings demonstrate that a downward adjustment from the

26  benchmark is necessary.

27      St. John incorporates by reference her previous filings in this case. Dkt. 523; Dkt. 607; and attachments

28  to both. She reserves the right to cross-examine any witnesses, and objects to any declarations submitted by

witnesses who were not made available in a timely fashion for objectors to depose. She also objects to the timing of requiring objections be due the day after Thanksgiving.

## I.     The district court has a fiduciary duty to the absent class members at the fee-setting stage.

"[A] district court can employ one of two methods—the lodestar or a percentage of the recovery" when calculating an attorneys' fee award.  Op. 25 (citing *Kim v. Allison*, 8 F.4th 1170, 1180 (9th Cir. 2021)). "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 941 (9th Cir. 2011). "Active judicial involvement in measuring fee awards is singularly important to the proper operation of the class action process." Advisory Committee Notes on 2003 Amendments to Rule 23.

The Court's independent role in setting a reasonable fee award under either method invokes its role as a fiduciary for absent class members. At the settlement and fee-setting stage, the relationship between class counsel and the class turns directly and unmistakably adversarial because counsel's "interest in getting paid the most for its work representing the class [is] at odds with the class' interest in securing the largest possible recovery for its members." *In re Mercury Interactive Corp.* 618 F.3d 988, 994-95 (9th Cir. 2010). Moreover, "in most common-fund cases, defendants have little interest in challenging class counsel's timesheets." *Gutierrez v. Wells Fargo, NA*, No. 07-cv-05923 WHA, 2015 WL 2438274, at *6, 2015 U.S. Dist. LEXIS 67298, at *16 (N.D. Cal. May 21, 2015). No individual class member has the financial incentive to object to an exorbitant fee request either; "[h]is gain from a reduction, even a large reduction, in the fees awarded the lawyers would be minuscule." *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992). The district court (and good-faith public-minded objectors) serve as the last line of defense against overreaching fee requests.

## II.     A percentage-of-recovery analysis applying the *Vizcaino* factors does not support the requested fee.

The Court set the initial fee award at $80.6 million by applying 26% to the $310 million settlement fund. Now on remand, class counsel seeks the same fee award; however, the requested fee award is not supported by the relevant factors or class counsel's purported lodestar. The Court previously recognized that

1    a larger upward adjustment to the lodestar was not warranted, and St. John respectfully suggests that close

2    review of the empirical data and case-specific factors warrant a significant downward adjustment.

3    As this Court appropriately found, and to tether fee awards to objective criteria that gives parties

4    information on which to base strategic litigation decisions, the "better approach" for setting a reasonable fee

5    is to "look to empirical research on megafund cases." Order 12. Because this is a megafund case, the 25%

6    benchmark for a reasonable fee award is excessive and would result in "windfall profits" to class counsel. *See*

7    *Bluetooth*, 654 F.3d at 942 (suggesting downward departure from the benchmark to prevent "windfall profits"

8    in "mega-fund" settlements). Empirical data show that to avoid such windfall profits, "courts typically decrease

9    the percentage of the fee as the size of the fund increases." *Rodman v. Safeway Inc.*, 2018 WL 4030558, 2018 U.S.

10   Dist. LEXIS 143867, *10-11 (N.D. Cal. Aug. 22, 2018) (cleaned up).

11   A downward adjustment to the percentage is particularly appropriate here because (1) class counsel

12   failed to maximize the total recovery that the defendant was willing to pay; and (2) as this Court previously

13   recognized, "the megafund size of this case exists because of the sheer number of eligible devices"—not

14   because of class counsel's lawyering. Order 17.

15   The Court previously recognized that class counsel's initial 28% fee request "far exceeds" the mean

16   and median awards and, now, it should follow through on this recognition by awarding a significantly reduced

17   amount. Order 13; *see* Section II.B below. A 26% fee request, and even the 25% benchmark, also "far exceeds

18   the mean and median awards." Based on the empirical data, and as St. John argued previously, a reasonable

19   fee and expense award is no more 17.7% of actual class recovery. With actual class recovery at $297.25 million

20   (the $310 million "floor" less $12.75 million in administrative costs), the fee would be no more than

21   approximately $52.6 million.

22   Although the court has discretion to include administrative expenses in the denominator,[1] it also has

23   the discretion to exclude them—which is the better approach. "[T]hose costs are part of the settlement but

24   not part of the value received from the settlement by the members of the class. The costs therefore shed no

25   light on the fairness of the division of the settlement pie between class counsel and class members." *Redman v.*

26   *RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014); *accord Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014)

27

28

---

[1] *In re Online DVD Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015).

1    (excluding administration expenses in fee calculation because such expenses are "costs, not benefits").

2    Especially here, where the feeble class notice procedure left millions of class members in the dark, and where

3    a superior claims rate would have led to Apple paying the notice *on top of* the common fund, the Court should

4    decline to include the costs of administration in the denominator for purposes of awarding fees.

5            St. John addresses the *Vizcaino* factors most directly relevant here: the results achieved, class counsel's

6    skill and quality of work, and the awards in similar cases. Just as the Court previously found (Order 13), these

7    factors do not support an upward adjustment; instead, these factors support significantly reducing class

8    counsel's fee award from the requested 26%.

9

10   **A.       Results Achieved and Class Counsel's Skill and Quality of Work**

11           With respect to the results achieved, this Court recognized that "the megafund size of this case exists

12   because of the sheer number of eligible devices" and thus stands in contrast to the exceptional results due to

13   exceptional lawyering in other high-value cases. *See* Dkt. 609 at 16-17. Even worse, here class counsel left

14   significant value for the class on the table. As a result of class counsel's notice program, the class did not file

15   enough claims to reach the maximum settlement payout of $500 million. Not only did the class miss out on

16   an additional $190 million, but because of the low claims rate, the settlement called for $12.75 million for

17   notice and administration costs to be drawn from the settlement fund—rather than paid by Apple. This

18   settlement mechanism thus reduced the class's ultimate recovery by another $12.75 million. *Compare* Settlement

19   ¶ 5.3.1 *with* Settlement ¶ 6.1.

20           The substandard claims rate is not happenstance.  It is a function of the defective email notice program

21   in this case, including the settlement administrator's failure to address the known problem of notices going to

22   class members' spam folders. *See Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1046 n.7 (9th Cir. 2019) (low

23   response rate "provides further indication that class members may not have received adequate notice of the

24   settlement"); *see also* Dkts. 523, 523-2. As noted above, this low claims rate reduced the total recovery by the

25   class and caused the class to incur substantial notice and administrative costs.

26           While the settlement administrator claimed *ipse dixit* that they avoided spam filters, they provided no

27   concrete evidence of doing so: they produced no communications with Google; and no evidence that they

28

performed basic white-listing to avoid the spam filter. *Compare* Dkt. 607 at 2 (Facebook achieving 22% claims rate by doing simple things class counsel and the settlement administrator failed to do here). Google provides notice of its settlements through email from the Google domain. Dkt. 523-2 ¶ 16 and Exh. B. Class counsel and the settlement administrator did not use the Apple domain to send notice. Apple has previously had claim forms resolving iPhone consumer disputes done through an app. "Apple officially launches iPhone 4 Case Program via App Store," *Apple Insider* (July 23, 2010). Plaintiffs failed to do so here, throttling claims further. iPhone users should not be treated worse than Google or Facebook users, especially when that disparity in treatment cost them $200 million in class recovery.

Further, because of the economies of scale present here that this Court recognized—due to the number of iPhones affected, a reasonable fee award should utilize a sliding scale percentage to prevent a windfall for plaintiffs' attorneys at the expense of the class. *See, e.g., Alexander v. FedEx Ground Package Sys.,* No. 05-cv-00038, 2016 WL 3351017 (N.D. Cal. Jun. 15, 2016). "[R]ote application of the 25% benchmark" is inappropriate here because it will "produce a windfall for Class Counsel because the recovery in the instant case is largely a function of the size of the Settlement Class." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-md-02752-LHK, 2020 U.S. Dist. LEXIS 129939, at *97 (N.D. Cal. Jul. 22, 2020). "[T]he increase [in fund size] is merely a factor of the size of the class and has no direct relationship to the efforts of counsel." *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 486 (S.D.N.Y. 1998) (quoting *In re First Fidelity Secs. Litig.*, 750 F. Supp. 160, 164 n.1 (D.N.J. 1990)). "It is generally not 150 times more difficult to prepare, try and settle a $150 million case than it is to try a $1 million case." *Id.* Thus, "[i]n cases with exceptionally large common funds, courts often account for these economies of scale by awarding fees in the lower range." *In re Citigroup Inc. Bond Litig.,* 988 F. Supp. 2d 371, 374 (S.D.N.Y. 2013) (cleaned up). "The existence of a scaling effect—the fee percent decreases as class recovery increases—is central to justifying aggregate litigation such as class actions. Plaintiffs' ability to aggregate into classes that reduce the percentage of recovery devoted to fees should be a hallmark of a well-functioning class action system." Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993–2008*, 7 J. EMPIRICAL LEGAL STUD. 248, 263 (2010).

**B.      Awards in Similar Cases**

Unsurprisingly, class counsel provides little support for their assertion that courts in this circuit "have awarded fees at or above the 25% benchmark in other large-scale, complex class actions." Dkt. 632 at 7. In fact, class counsel cites only one case in support of this claim—*In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068 (N.D. Cal. Aug. 17, 2018)—and the Court's initial fee award. But empirical research shows that in class actions "fee percentages tended to drift lower at a fairly slow pace until a settlement size of $100 million was reached, at which point the fee percentages plunged well below 20 percent." Brian Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. EMPIRICAL L. STUD. 811, 838 (2010). In class actions in which the settlement equaled $250-$500 million, the median fee award was 19.5% and the mean was 17.8%. *Id.* at 839. At $100-$250 million, the median award is 16.9% and the mean is 17.9%. Other surveys reach similar conclusions. *E.g.*, Logan, Stuart, et al., *Attorney Fee Awards in Common Fund Class Actions*, 24 Class Action Reports (March-April 2003) (empirical survey showed average recovery of 15.1% where recovery exceeded $100 million); Eisenberg & Miller, 7 J. EMPIRICAL LEGAL STUD. at 265 tbl.7 (mean percentage fee in 68 class action settlements with recovery above $175.5 million was 12% and median award was 10.2% with standard deviation of 7.9%).[2]

Percentage awards in megafund cases are "substantially less than the 25% benchmark applicable to typical class settlements in this Circuit." *Alexander*, 2016 WL 3351017, at *2-3 (awarding fees 16.4% of $226 million common fund). For example, in *In re High-Tech Employee Antitrust Litigation* ("*High-Tech*"), this Court rejected a 19.5% fee request and instead awarded 9.8% of a $415 million settlement because empirical research showed a 10.2% median for megafund cases over $175 million. No. 11-CV-02509-LHK, 2015 WL 5158730, at *13 (N.D. Cal. Sept. 2, 2015) (citing Eisenberg & Miller, 7 J. EMPIRICAL LEGAL STUD. at 265 tbl.7). And following *High-Tech*, in *Nitsch v. DreamWorks Animation SKG Inc.*, this Court awarded 11% of $150 million

---

[2] *See also* Theodore Eisenberg, Geoffrey P. Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. REV. 937, 947 (2017) (noting that mean and median for cases over $100 million ranged from 16.6% to 25.5%, but that such variation was "probably due to significantly smaller number of very large cases in [the] data set"); Federal Judicial Center, Manual for Complex Litigation—Fourth 188–89 (2004) (noting survey where "class actions with recoveries exceeding $100 million found fee percentages ranging from 4.1% to 17.92%").

settlement in order to avoid "windfall profits" to class counsel where class counsel "achieved economies of scale." 2017 WL 2423161, at *12 (N.D. Cal. June 5, 2017).

Other judges in this District also award lower percentages in megafund cases. *See In re Facebook Biometric Info. Priv. Litig.*, No. 15-cv-03747-JD, Dkt. 537 (N.D. Cal. Feb. 26, 2021) (attached to Dkt. 607 in this case) (15% of megafund, despite 22% claims rate); *Gutierrez*, 2015 WL 2438274, at *5 (rejecting 25% of $203 million; awarding only 9% in action alleging unfair banking practices) (Alsup, J.); *Alexander*, 2016 WL 3351017, at *2-3 (22% of a $226 million megafund settlement over wage-and-hour claims is "well above the typical range"; awarding instead 16.4%, "consistent with the higher end of awards in megafund cases") (Chen, J.); *In re Charles Schwab Corp. Secs. Litig.*, No. C 08–01510 WHA, 2011 WL 1481424, at *8 (N.D. Cal. Apr. 19, 2011) (awarding attorneys' fees of 9.25% where fund equaled $235 million) (Alsup, J.).

In short, a reasonable award for class counsel in this case is no more than 17.7% of the class recovery, or about $52.6 million. Such an award would appropriately compensate class counsel for the sizable $297.25 million fund that the settlement created. It also would increase relief to the class by more than $35 million.

## III.     The lodestar crosscheck does not support class counsel's fee request of 26%.

### A.     Time billed by JCCP counsel should be excluded from the lodestar.

The Ninth Circuit remanded for this Court to consider whether JCCP counsel's time for work in a different state court case should be considered in the lodestar for the present case. This is a simple issue: Only work on the present case should be counted toward the lodestar. There will often be similar cases litigated in parallel with each other. It would be absurd and highly prejudicial if the class were double-billed because their counsel achieved some increased efficiency through the cooperation of counsel in the other cases. But here, the problem is worse because class counsel likely realized *decreased* efficiency from JCCP counsel. The involvement of 41 firms in the MDL and another 6 firms in the parallel JCCP action portends near-certain duplication of effort and inefficient coordination.

The reasons for excluding of JCCP time are even stronger when one considers the purpose of the lodestar crosscheck. While a percentage-based award aligns the interests of the class and their counsel, the crosscheck helps uncover the "disparity between the percentage-based award and the fees the lodestar method would support." *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1124 n.8 (9th Cir. 2002). The lodestar cross-check

should "confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate." *Bluetooth*, 654 F.3d at 945. "[I]n megafund cases, the lodestar cross-check assumes particular importance" to ensure an award tethered to the result achieved. *Alexander*, 2016 WL 3351017, at *2; *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1298 (9th Cir. 1994) (describing how percentage-based awards become particularly arbitrary in a megafund context). Compensating counsel for hours spent on different cases simply doesn't ensure a reasonable fee to compensate counsel for the results at hand and accepting a bloated lodestar at face value encourages inefficient and slow litigation on behalf of absent class members.

**B.      The lodestar was improperly withheld from the class and cannot be relied upon.**

Because class counsel failed to provide any detail in their billing summaries, it is impossible for class members to estimate the lodestar overstatement beyond the inclusion of JCCP counsel's hours. Under this Court's Procedure Guidance, "All requests for approval of attorneys' fees awards must include detailed lodestar information, even if the requested amount is based on a percentage of the settlement fund." N.D. Cal. Procedural      Guidance      for      Class      Action      Settlements,      *available      at* http://cand.uscourts.gov/ClassActionSettlementGuidance; *see also In re Resistors Antitrust Litig.*, 2019 WL 5298143, 2019 U.S. Dist. LEXIS 174399, *9 (N.D. Cal. Sept. 6, 2019) (following Guidance and concluding that merely submitting names, rates and total hours is "plainly insufficient under well-established standards"). Lack of detailed billing submissions in class counsel's fee requests make it impossible for class members to precisely identify the duplication and inefficiencies. *See Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 623 (9th Cir. 1993) (time records should demonstrate "whether the time devoted to particular tasks was reasonable and whether there was improper overlapping of hours").

Here, plaintiffs' failure to submit any meaningful breakdown of aggregated lodestar information to class members,[3] let alone itemized billing records, deprives objectors of the opportunity to conduct a full lodestar review that is contemplated under Rule 23(h). "Allowing class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately

---

[3] For example, when lodestar is used for crosscheck purposes, it can be sufficient to provide categorical breakdowns of type of task. *See, e.g., Rose v. Bank of Am. Corp.*, 2014 WL 4273358, 2014 U.S. Dist. LEXIS 121641 (N.D. Cal. Aug. 29, 2014) (Davila, J.) (noting counsel's declaration broke down hours by categories such as "Initial case investigation, motions practice, discovery, settlement negotiations and mediations, drafting settlement and motion for approval papers, and overseeing settlement administration").

1   documented and supported is essential for the protection of the rights of class members." *Mercury Interactive*,

2   618 F.3d at 994.

3   Even so, the meager data class counsel provided confirms the excessiveness of plaintiffs' fee request.

4   In her initial objection St. John identified multiple ways in which the lodestar might have been inflated but

5   which class members were improperly stymied from investigating. Dkt. 523. Class members are likely to find

6   additional excesses and bloated billing practices if given access to the lodestar detail, particularly given the large

7   number of billers which suggests duplication. At the very least, the Court should allow for only a very modest

8   lodestar multiplier to address these likely inefficiencies and other billing problems.

9
10   **C.     Only a modest risk multiplier is appropriate here because plaintiffs' counsel bore little risk of non-payment.**

11   In its initial order setting a fee award, the Court rejected as "high" class counsel's original request for

12   a multiplier of 2.511 and likewise found that "a 2.43 multiplier is high." Dkt. 609 at 15. Even if one removes

13   only JCCP counsel's hours, the lodestar multiplier for an award of $80.6 million equals that same excessive

14   2.51 multiplier—before removing any of the other excesses in the lodestar. This crosscheck thus demonstrates

15   that an award of 26% is unreasonable.

16   In *Perdue v. Kenny A.*, the Supreme Court established a "strong presumption that the lodestar is

17   sufficient" without an enhancement multiplier. 559 U.S. 542, 546 (2010). A lodestar enhancement is justified

18   only in "rare and exceptional" circumstances where "specific evidence" demonstrates that a lodestar alone

19   "would not have been adequate to attract competent counsel." *Id.* at 554. That standard is not met here.

20   Instead, as the Court recognized in its initial fee order, only a small multiplier can be justified on the record;

21   this is especially true in the light of the Ninth Circuit remand order.

22   If the Court awards the $52.6 million that is in accord with empirical surveys, the lodestar multiplier is

23   a healthy 1.64—and the payout is certainly high enough to encourage attorneys to accept the representation

24   (and here multiple firms were vying for the opportunity).

25
26   **CONCLUSION**

27   The Court's Fee Order agreed with St. John's original objection in most material respects. Following

28   those premises dictates that a reasonable fee would be no more than $52.6 million, or 17.7% of the net fund.

1   The Court should consider awarding less than that because of class counsel's failure to control costs and failure

2   to implement successful notice that was effective in creating a claims rate more than a small fraction of other

3   cases in this district.

4

5   Dated: November 25, 2022                    Respectfully submitted,

6                                               /s/ Theodore H. Frank
                                                Theodore H. Frank (SBN 196332)
7                                               HAMILTON LINCOLN LAW INSTITUTE
                                                CENTER FOR CLASS ACTION FAIRNESS
8                                               1629 K Street NW, Suite 300
                                                Washington, DC 20006
9                                               Voice: 703-203-3848
                                                Email: ted.frank@hlli.org
10
11                                              *Attorneys for Objector Anna St. John*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN RE APPLE INC. DEVICE PERFORMANCE LITIGATION

1

2                                                PROOF OF SERVICE

3          I hereby certify that on this day I electronically filed the foregoing Objection using the CM/ECF filing

4   system thus effectuating service of such filing on all ECF registered attorneys in this case.

5          DATED this 25th day of November, 2022.

6                                                                    */s/ Theodore H. Frank*
                                                                    Theodore H. Frank
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28