# Exhibit 2

Nos. 21-15758 (L) and 21-15762 (C) (consolidated with 21-15761 and 21-15763)

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

In re: APPLE INC. DEVICE PERFORMANCE LITIGATION,

NAMED PLAINTIFFS AND
SETTLEMENT CLASS MEMBERS
*Plaintiffs-Appellees*,
v.
SARAH FELDMAN; HONDO JAN,
*Objectors-Appellants*, and

DEBORAH PANTONI,
*Objector-Appellant*
v.
APPLE INC.,
*Defendant-Appellee.*

---

On Appeal from the Northern District of California
Civil Action No. 5:18-md-02827
Hon. Edward J. Davila

---

## JOINT REPLY BRIEF OF APPELLANTS SARAH FELDMAN,
## HONDO JAN, AND DEBORAH PANTONI

---

Kendrick Jan
Kendrick Jan, APC
402 W. Broadway, Ste. 1520
San Diego, CA  92101
(619) 231-7702
kj@jan-law.com

John J. Pentz
Law Offices of John J. Pentz
19 Widow Rites Lane
Sudbury, MA 01776
(978) 985-4668
jjpentz3@gmail.com

Jan L. Westfall
P.O. Box 711472
San Diego, CA  92171
(619) 940-2880
jlwestfall.esq@gmail.com

*Attorneys for Feldman & Jan*

*Attorney for Pantoni*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES ....................................................................... iii

INTRODUCTION .......................................................................................... 1

ARGUMENT ................................................................................................... 2

I.      The district court failed to give the pre-certification Settlement
the heightened scrutiny required and abused its discretion when
it approved a settlement designed to exclude large numbers of
Class members ....................................................................................... 2

         A.     The district court abused its discretion by applying an
incorrect legal standard ............................................................. 2

         B.     The district court failed to recognize that Named
Plaintiffs unfairly abandoned the interests of a vast
majority of the Class by agreeing with Apple to restrict
compensation to only a "very narrow" subset of
Class members .......................................................................... 5

               1.     The claim form excludes Class members unable
to attest to subjective awareness of performance
issues ............................................................................. 5

               2.     The Claim Form violates terms of the Settlement
by restricting claims to current owners .................... 11

         C.     Appellees' arguments implicate Article III standing
and if sustained would require decertification of the
Settlement Class for lack of jurisdiction ............................ 12

II.     The district court abused its discretion by failing to scrutinize
Class Counsel's revised lodestar, and by applying a multiplier
to paralegal work .............................................................................. 14

A.     The district court used the lodestar method to calculate its fee award..................................................................14

B.     The district court's lodestar analysis...................................15

C.     The district court erred by applying a risk multiplier to paralegal fees..................................................................19

D.     The district court erred by awarding Class Counsel a fee Greater than the Ninth Circuit's 25% benchmark for non-megafund cases ........................................................22

       1.     The *Vizcaino* factors..................................................22

       2.     The district court's unwarranted deviation ...............22

III.   Class Counsel fail to meaningfully address the propriety of incentive awards granted by the district court................................24

A.     This Court has previously forbidden incentive awards, A position consistent with the 11th Circuit's holding in *Johnson* and the Supreme Court's holdings in *Greenough* and *Pettus* ........................................................24

B.     None of the cases cited by Class Counsel authorize Incentive awards to individuals clearly outside the Settlement Class ........................................................26

CONCLUSION.......................................................................29

CERTIFICATE OF COMPLIANCE......................................31

CERTIFICATE OF SERVICE .............................................32

# TABLE OF AUTHORITIES

## Cases

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591 (1997)..................................................................................3, 6

*Calif. v. IntelliGender,*
    771 F.3d 1169, 1179 (9th Cir. 2014) ............................................................10

*Central Railroad & Banking Co. v. Pettus,*
    113 U.S. 116 (1885)................................................................................24, 26

*Chambers v. Whirlpool Corp.,*
    980 F.3d 645 (9th Cir.2020) ..................................................................24, 28

*Chemical Bank v. Jaffe & Schlesinger, P.A.,*
    19 F.3d 1306 (9th Cir. 1994) ........................................................................18

*Comcast Corp. v. Behrend,*
    569 U.S. 27 (2013)...........................................................................................9

*Davis v. City and County of San Francisco,*
    976 F.2d 1536 (9th Cir. 1992) ......................................................................21

*Flinn v. FMC Corp.,*
    528 F.2d 1169 (4th Cir. 1975) ................................................................24, 25

*Grace v. Apple, Inc.,*
    328 F.R.D. 320 (N.D. Cal. 2018)............................................................6, 8, 9

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983)................................................................................15, 16

*Innovation Law Lab v. Wolf,*
    951 F.3d 1073 (9th Cir. 2020) ......................................................................26

*In re Bluetooth Headset Prod. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ..................................................5, 15, 16, 17, 23

*In re Equity Funding Corp. of America Sec. Litig.*,
  438 F.Supp. 1303 (C.D. Cal. 1977) .............................................................19

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ......................................................................23

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  779 F. Supp. 1063 (D. Ariz. 1990) ..............................................................18

*Johnson v. NPAS Sols. LLC*,
  975 F.3d 1244 (11th Cir.2020) .......................................................1, , 24, 25

*Kincade v. General Tire & Rubber Co.*,
  635 F.2d 501 (5th Cir. 1981) ......................................................................25

*Kumar v. Salov N. Am. Corp.*,
  No. 14-cv-2411, 2017 WL 2902898, (N.D. Cal. July 7, 2017),
  aff'd 737 Fed. App'x. 341 (9th Cir. 2018) ...............................................9, 10

*Manufactured Home Cmtys. Inc. v. City of San Jose*,
  420 F.3d 1022 (9th Cir. 2005) .......................................................................4

*Missouri v. Jenkins*,
  491 U.S. 274 (1989)...............................................................................19, 21

*Officers for Justice v. Civil Service Commission of the
City and County of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) .......................................................5, 24, 25, 26

*Paul, Johns & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ......................................................................14

*Roes 1-2 v. SFBSC Mgmt., LLC*,
  944 F.3d 1035 (9th Cir. 2019) ...................................................................3, 4

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
  314 F.3d 1180 (10th Cir. 2002) ...................................................................12

*Saucillo v. Peck*,
Nos. 20-55119, 20-55159, 2022 WL 414692,
--- F.4th ----, (9th Cir. February 11, 2022) ................................................. 3, 4

*SEB Inv. Mgmt. v Symantec*,
No. C 18-02902 WHA, 2022 WL 409702
(N.D. Cal., Feb. 10, 2022) ................................................................................ 25

*State of Florida v. Dunne*,
915 F.2d 542 (9th Cir.1990) ............................................................................ 14

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ........................................................ 5, 26, 27, 29

*Transunion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ............................................................................. 12, 13

*Trustees v. Greenough*,
105 U.S. 527 (1882) ................................................................................... 24, 26

*Van Buren v. United States*,
141 S. Ct. 1648 (2021) ...................................................................................... 12

*Vizcaino v. Microsoft Corp.*,
290 F. 3d 1043 (9th Cir. 2002) .................................................... 20, 22, 23

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2nd Cir. 2005) ............................................................................ 15

## Rules and Statutes

California Rules of Professional Conduct, Rule 5.4(a) ................................. 21

Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2) ........................... 12

Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(A) ...................... 12

Fed. R. Civ. Proc. 23(a) ............................................................................ 6, 28

Fed. R. Civ. Proc. 23(e) ..........................................................................*passim*

Fed. R. Civ. Proc. 23(e)(2)(A-D)..........................................................1, 25

**Other Authorities**

Rubenstein, William B. 5 Newberg on Class Actions,
    §15:41 (5th ed. 2020) ......................................................................19

Rubenstein, William B. 5 Newberg on Class Actions,
    §15:87 (5th ed. 2020) ......................................................................20

# INTRODUCTION

Appellees ask the Court to defer to the district court's "detailed findings" and ignore the broader Rule 23(e) fairness concerns the Settlement implicates. The district court's analysis was infected by a presumption of reasonableness that is prohibited in this Circuit. The Settlement limits recovery to those able to attest to performance issues related to a software download – requiring cognizance of a technical cause and effect beyond the ken of most Class members – even though the Settlement is based on damages suffered uniformly by *all* Class members. The abandonment of Class-wide damages demonstrates Named Plaintiffs' and Class Counsel's failure to adequately represent the interests of the Settlement Class. This lack of adequate representation renders the Settlement unfair, unreasonable and inadequate within the meaning of Rule 23(e)(2)(A) and (D). The district court's failure to apply heightened scrutiny was an abuse of discretion.

Regarding attorneys' fees, Appellee-Plaintiffs' argument misconstrues the district court's fee-analysis, and ignores the court's failure to accurately calculate the lodestar before using it to set the fee award. The lodestar approach requires close examination of submitted lodestar and application of a reasonable multiplier to a properly calculated lodestar, neither of which occurred in this case.

When discussing incentive awards, Appellee-Plaintiffs ask this Court to regard district court practice as being of greater weight than Supreme Court precedent. They do not meaningfully address controlling Supreme Court opinion or this Court's prohibition of preferential treatment of named plaintiffs, neither do they respond to the Eleventh Circuit's reasoning in *Johnson.*

By this reply we address Appellees' arguments and reiterate the need for reversal of final approval of the Settlement, and, barring that, reversal of the award of attorneys' fees to Class Counsel and incentive awards to Named Plaintiffs.

# ARGUMENT

## I. The district court failed to give the pre-certification Settlement the heightened scrutiny required and abused its discretion when it approved a settlement designed to exclude large numbers of class members

### A. The district court abused its discretion by applying an incorrect legal standard

Appellees insist this Court should conduct only a "limited" review of the Settlement and defer to the district court's detailed findings. Apple AB, page 24; Plaintiffs AB, page 29.[1] Specifically, Plaintiffs assert: "Applying the correct legal standards to the facts, the District Court finally certified the class and found the settlement was fair, reasonable, and adequate in accordance with Rule 23(e)." Plaintiffs AB, page 26. Appellees are wrong. The district court applied an incorrect legal presumption that has no basis in this Circuit's jurisprudence, and failed to fulfill its duty to apply heightened scrutiny to this pre-certification settlement. Neither the Appellees nor the district court acknowledge the heightened scrutiny requirement.

Instead of applying heightened scrutiny to the Settlement, the district court improperly deferred to the recommendations of counsel and applied a presumption of reasonableness that has been repeatedly rejected by this Court. The district court, when appraising whether the Settlement was fair, reasonable and adequate to all concerned, was under the mistaken impression it "should give 'proper deference to the private consensual decision of the parties", accord "a presumption of reasonableness" to "the recommendations of plaintiffs' counsel," and attribute "significant weight" to "counsel's belief that settlement is in the best interest of the [the class]." ER-42-43.

---

[1] "AB" refers to Answering Brief. "OB" and "ER" refer, respectively, to the Joint Opening Brief and Excerpts of Record of Appellants Feldman, Jan, and Pantoni. "St. John ER" refers to Appellant Anna St. John's Excerpts of Record.

In keeping with *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) this Court has long required heightened scrutiny of a pre-certification settlement, and in *Roes 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) definitively rejected the presumption relied on here by the district court. This Court most recently reiterated the required approach in *Saucillo v. Peck*, Nos. 20-55119, 20-55159, 2022 WL 414692, --- F.4th ----, (9th Cir. February 11, 2022).

> But such a presumption of fairness is not supported by our precedent, and the district court cites no Ninth Circuit case which adopted this standard. … we not only have never endorsed applying a broad presumption of fairness, but have actually required that courts do the opposite—by employing extra caution and more rigorous scrutiny – when it comes to settlements negotiated prior to class certification, the district court's declaration that a presumption of fairness applied was erroneous, a misstatement of the applicable legal standard which governs analysis of the fairness of the settlement.

*Saucillo* at *9, quoting *Roes,* at 1048.

In the instant case, the Settlement was entered prior to class certification and the district court applied exactly the same presumption of reasonableness and deference to the views of counsel that was rejected in *Roes* and *Saucillo*. Thus, the district court ignored the "undiluted, even heightened, attention in the settlement context" required by *Amchem* (at 620), this Circuit's long-standing precedent, and revised Rule 23(e). Instead it relied on exactly the improper presumption that required reversal in *Roes* and *Saucillo*.[2]

As in the instant case, in both *Roes* and *Saucillo* the district court failed to apply the heightened scrutiny required. The following summary from *Saucillo* applies equally in this case.

---

[2] This Circuit generally does not apply "a harmless error standard in class action settlement review." *Saucillo* at *11 (internal citation omitted).

Nowhere in the final approval order, however, did the district court cite or otherwise acknowledge our longstanding precedent requiring a heightened fairness inquiry prior to class certification. To the contrary, the district court declared that, "[w]here a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable.

Saucillo at *9, *quoting Roes* at 1048.

Misapplication of a presumption of reasonableness is sufficient grounds for reversal. As the court noted in *Saucillo*, "'[a]pplying the incorrect legal standard is an abuse of discretion'." *Id.* at *7, *quoting Manufactured Home Cmtys. Inc. v. City of San Jose*, 420 F.3d 1022, 1037 (9th Cir. 2005). This was not harmless error, because, as in *Saucillo*, the district court "overlayed its entire discussion of the settlement agreement with the erroneous presumption." *Saucillo* at *11.[3]

---

[3] For instance, the district court describes "Each Settlement Class member will receive $25 or more for each eligible iPhone. Indeed Class Counsel estimates that each Settlement Class Member will receive $65 or more per Approved Claim." ER-55-56. These numbers do not come close to reflecting the Settlement amount in terms of the number of "eligible iPhones" or "Settlement Class Members," but are a reflection of the deference the court showed to Class Counsel's grossly inaccurate descriptions and estimates. The district court's lack of meaningful scrutiny swept through a Settlement that actually excluded millions of eligible iPhones and restrained millions of other Class members from making claims.

**B.** **The district court failed to recognize that Named Plaintiffs unfairly abandoned the interests of a vast majority of the Class by agreeing with Apple to restrict compensation to only a "very narrow" subset of Class members**

The "primary concern of [Rule 23(e)] is the protection of those class members … whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Service Commission of the City and County of San Francisco*, 688 F.2d 615, 623-24 (9th Cir. 1982). The "Rule 23(e) reasonableness inquiry is designed precisely to capture instances of unfairness not apparent on the face of the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003). Rule 23(e) requires examination of the Settlement in terms of adequacy of representation and equality of treatment of Class members. It is evident the "interests of some class members" – in this case the majority of the Class – have been unfairly "sacrificed" in pursuit of Settlement. *See Officers for Justice*, 688 F.2d at 624. The Settlement unfairly traded a uniform recovery by every Class member for inflated payments to a small subclass. The Settlement's disregard of the interests of a vast majority of the Class – accomplished by Class Counsel's abandonment of a uniform Class-wide damages theory – renders the Settlement unreasonable, unfair and inadequate within the meaning of Rule 23(e).

**1.** **The claim form excludes Class members unable to attest to subjective awareness of performance issues**

After alleging and pursuing uniform economic damages suffered by each member of the Class, in the course of settlement negotiations Class Counsel ceased advocating the interests of the entire Class, and capitulated to Apple's straw-man theory of injury by agreeing to confine settlement compensation to only a small

subset of Class members.[4]  This failure of representation rendered them inadequate under both Rule 23(a) and (e)(2)(A).

All Class members shared the experience of downloading software updates designed to throttle their phones' performance, and all equally experienced the resulting decline in value identified by plaintiffs as the measure of economic damages.  Subjective awareness of impaired performance, however, was not common to the Class.  Nonetheless, Class members unable or unwilling to attest under penalty of perjury to performance issues beyond their knowledge or understanding are excluded from the benefits of the Settlement.

Each of the answering briefs devotes significant space to arguing that courts routinely approve attestation requirements.  Appellants acknowledge attestation requirements are not prohibited *per se*, but the attestation in this case divides the Class into separate groups that were not separately or adequately represented as required under *Amchem*, and requires each claimant to attest to something beyond the ken of the average Class member, which was neither an element of plaintiffs' theory of the case nor fundamental to claims surviving Apple's motion to dismiss.

Although multiple performance issues were described in the complaint – including those related to battery performance and unexplained shut downs – they were not required components of damage claims on causes that survived Apple's motions to dismiss.  *Cf. Grace v. Apple, Inc*., 328 F.R.D. 320, 333 (N.D. Cal. 2018)

---

[4] *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 (1997) ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.").  Appellees suggest *Amchem* does not apply in this case because there is no conflict between present and future claimants, but *Amchem*'s holdings have never been construed so narrowly, and provide general guidance to help identify fundamental conflicts of interest between subclasses created by settlements that make critical allocation choices between class members.

(arguments over impact on performance of device "irrelevant" in context of lawsuit pursuing trespass to chattel and California UCL causes of action).

Indeed, early on Plaintiffs acknowledged the average Class member is unable to determine whether any performance issues experienced on their phones were a result of the software downloads. ER-248. By contrast, throughout the litigation Apple argued the software updates did not harm class members' phones – making the individual experience of performance issues a straw man it then tried to defeat.

Consistent with its prior arguments, Apple "stands by the performance management feature as a solution that delivered a better experience for customers [and] most users may not have even noticed any differences in daily device performance." Apple AB, p. 8. Apple made similar argument in its motions to dismiss, where it argued the performance issues alleged by plaintiffs were not capable of proof on a class-wide basis. The lawsuit survived those motions to dismiss because the district court's order clarified that individualized performance issues were not required or even relevant to Plaintiffs' case. See ER-226-227 ("As to damages, Apple argues that Plaintiffs fail to allege … reduced performance of their devices. … the Court [previously] explicitly [held]: 'The Complaint's allegations that the iOS updates slowed processor speeds in Plaintiffs' iPhones readily fit [the definition of damage under the CFAA.]'").

Plaintiffs contend Appellants read too much into the district court's orders narrowing the case, arguing they could have provided the court with "deposition testimony wherein [plaintiffs] testified at length that they experienced performance issues." Plaintiffs AB, p. 36-37. But Appellants cite the court's orders for their legal determination that individual plaintiffs' experience of performance issues is

irrelevant given plaintiffs' theory of the case, not to argue that the court had made a factual determination that no such experiences occurred. OB, pages 19-21.[5]

Although Plaintiffs misstate the issue, their response is a concession that nothing in the record indicates Named Plaintiffs had subjective awareness of individual performance issues, confirming that such was not required to establish their Article III standing.

In another case alleging trespass to chattels and violations of California's Unfair Competition Law, Apple sought to avoid class certification by arguing that alleged performance issues were incapable of proof on a class-wide basis and that individual issues predominated. The district court rejected those arguments, holding "individual inquiries are not necessary for Plaintiffs' trespass to chattels claim…" *Grace v. Apple, Inc.*, 328 F.R.D. 320, 331 (N.D. Cal. 2018).

In *Grace*, Apple also challenged the named plaintiffs' typicality, focusing on their individual circumstances. The court, however, determined:

> Apple's argument is also irrelevant. California recognizes three ways to establish an injury in the context of a trespass to a computer system or similar device. Specifically, injury exists where "the purported trespass: … (2) impaired the condition, quality, or value of the personal property." … Plaintiffs are [ ] proceeding under an impaired value theory, which means that Apple's argument is beside the point. (Internal citation omitted.)

*Id.* at 333.

Apple employs the same tactic here – by focusing on a straw man, Apple seeks to divert the Court's attention from the real issue. Plaintiffs based their theory of

---

[5] Indeed, Section 8.4 of the Settlement Agreement *requires* Named Plaintiffs who are Settlement Class members to submit claim forms. St. John ER_190. Therefore, it isn't clear whether Named Plaintiffs filed Claims because they had individual awareness of impaired performance or because they were contractually obligated to do so.

damages on impairment of value, as in *Grace*.  Following the motion to dismiss, individual performance issues were no longer the central focus of the case, nor did they provide the measure of damages on which the Settlement was based.

Incredibly, after successfully resisting Apple's efforts to reduce the case to individual performance issues not capable of class-wide proof, Plaintiffs agreed to a settlement that makes individual performance issues the touchstone of recovery, and restricts compensation to a narrow subset of the Class willing to attest under penalty of perjury to having experienced the very performance issues the district court previously found irrelevant.

Appellees fail to address the fundamental issue Appellants have raised: the attestation required is irrelevant to the harms alleged and damage suffered by the class as a whole.  *Cf. Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) (class certification reversed because damages model did not correspond to theories court found tenable).  Although the district court used diminution in value as the measure of damages and justification for the Settlement's fairness, the Claim Form attestation requirement does not at all correspond to Dr. Williams' court-approved measure of damages.[6]

Both Plaintiffs and Apple cite to *Kumar v. Salov N. Am. Corp.*, No. 14-cv-2411, 2017 WL 2902898, (N.D. Cal. July 7, 2017), aff'd 737 Fed. App'x. 341 (9th Cir. 2018), in support of their general argument that attestations are appropriate and that class members can be excluded if they are not willing to attest to injury.  Unfairly likening this case to *Kumar,* Plaintiffs state "[t]he claim form attestation simply requires class members to confirm that they experienced the harms complained of in this case."  Plaintiffs AB, p. 39.

---

[6] "Here, the record includes sufficient facts for the Court to make an informed, just, and reasoned decision. *The Settlement is based upon a well-reasoned calculation of potential damages by Dr. Williams*." (Emphasis added.)  ER-55.

In *Kumar*, class members had purchased olive oil mislabeled 'Imported from Italy' and were required to attest that, but for the mislabeling, they "would not have made the purchase(s) or paid the price(s) charged." *Kumar,* at *5. The attestation required no technical knowledge and was directly related to damage claims. Had the *Kumar* settlement required class member attestation that, for example, the olive oil made them sick, the attestation would have created a claim barrier that had nothing to do with the theory of economic damage underlying the complaint, rendering the settlement unreasonable. In *Kumar, there was no way to obtain the required information other than to poll the class members.* Here, Class member claimants are not being asked to confirm they experienced the harms that survived the motions to dismiss – rather they are being asked to attest to an experience of harm that is generally unknowable by them and *irrelevant* to the lawsuit.

Here, all the information necessary to establish each Class member's right to damages had already been presented by Plaintiffs – i.e., Dr. Williams' expert declaration that each Class iPhone suffered a loss of market value. The uniform loss of market value makes individual recollection of impaired performance an improper criterion for making a claim.

Both Plaintiffs and Apple point to this court's holding in *Calif. v. IntelliGender*, 771 F.3d 1169, 1179 (9th Cir. 2014) to support their argument that exclusion of the bulk of the class is appropriate. "Consistent with *IntelliGender*, courts in this Circuit routinely approve settlements that apportion compensation to only those class members who were actually harmed." Apple AB, p. 50. But *Intelligender* can be distinguished from the instant case because there the harm was not uniformly experienced by all class members – only people given wrong information about their babies' gender could recover. Unlike here, *Intelligender* class members could easily and objectively determine for themselves if they had experienced the harm that entitled them to make a claim.

10

## 2. The Claim Form violates terms of the Settlement by restricting claims to current owners

The Claim Form by its literal terms excludes former owners. Appellees insist Class members should have ignored that they are asked to attest "I AM the owner of [a subject iPhone]."

Appellees argue Class members should have read other Settlement documents – which contradict the Claim Form – and then concluded the Settlement Notice is accurate and the court-approved Claim Form is wrong. Plaintiffs' AB, p.44. But the Claim Form requires a signature under pain and penalty of perjury, and reasonable Class members should not be asked to assume that some language other than that contained in the attestation is controlling.

Plaintiffs argue the Claim Form itself was "sufficient to inform class members that current ownership is not required" and point to "innumerable other statements in the notice and settlement website which clearly identify both current and former owners of eligible devices as entitled to recover." Plaintiffs AB, p. 43-44. Apple states "the claim form did not limit recovery to 'current owners' or require the claimant to state they still had the phone in their possession – it only asked the claimant to confirm they *were* the 'owner' of an affected iPhone." Apple AB, p. 53. This is plainly wrong. The attestation does not include the word "*were*." Class members cannot be required to read into a claim form interpretations based on information found elsewhere in the record. The statement "I AM the owner of…." clearly excludes former owners.[7]

---

[7] As with most items of personal property, ownership follows the device. One would not claim to be the owner of a car that one sold or traded in years ago, even if one still had the original invoice lying around. Likewise, the fact that the serial number could be retrieved from an old iPhone box does not convert former ownership to current ownership. The district court made an obvious error in approving the claim form, and, in a world where people hold onto their iPhones an average of less than

Had more former owners filed claim forms, the Settlement might have exceeded the $310 million minimum, and class members would have paid a lower percentage fee, to the benefit of all Class members. Named Plaintiffs and Class Counsel failed to adequately represent the interests of the Class when they agreed to a settlement and related claim form designed to exclude vast portions of the Class.[8]

### C.  Appellees' arguments implicate Article III standing and if sustained would require decertification of the Settlement Class for lack of jurisdiction

Apple argues that most of the Class was not injured, citing *Transunion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) for the proposition that "[e]very class member must have Article III standing in order to recover individual damages." Apple AB, page 51.[9] But Apple fails to appreciate the full implications of that argument. Under *TransUnion*, the district court lacks jurisdiction over uninjured

---

33 months, the simple error may have effectively kept tens of millions of Class members who formerly owned subject iPhones from making a claim.

[8] Appellees sidestep basic fairness issues by simply claiming they were waived, ignoring Appellants' citations to the record identifying where issues were raised. OB 14-15. Adequacy of representation, in particular, was raised by Appellant Pantoni, see ER-126, 132. Appellees also question Appellants standing on various issues. Appellants' interest in the claims of former owners, *inter alios,* is based on their own interest in minimizing proportionate attorneys' fees. *See also Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1183, n. 1 (10th Cir. 2002) (objectors who have objected to settlement are entitled to raise all issues relating to settlement fairness with respect to entire class).

[9]  Apple also cites *Van Buren v. United States*, 141 S. Ct. 1648 (2021), construing 18 U.S.C. §1030 (a)(2), to support its contention the settlement should be upheld, but that case does not interpret the same section of the CFAA at issue in this lawsuit, i.e., 18 U.S.C. §1030(a)(5)(A), so does not affect the viability of this lawsuit.

persons without Article III standing *for all purposes*, not just at the settlement claim-filing stage. In *Transunion*, the Supreme Court made clear that uninjured members of a purported class have no standing, and so a federal court has no jurisdiction to release their claims.[10] *Id.* at 2214 ("No concrete harm, no standing."). Rather than merely holding the uninjured could not be compensated, *Transunion* held the court had no jurisdiction *ab initio* over those uninjured class members.

Apple and Plaintiffs are on extremely thin ice when they choose to recognize injury to only a "very, very narrow group" within the Settlement Class. If, consistent with Appellees' position, the broader group has not suffered concrete harm, then they lack Article III standing and the district court lacks jurisdiction over them. In which case, consistent with *Transunion,* the certification of the Settlement Class must be reversed and the district court instructed to certify instead the "very, very narrow" group consisting only of those class members with Article III standing according to Apple's preferred definition of injury.

---

[10] In *Transunion*, 6,332 members of a purported class of 8,185 individuals lacked Article III standing – because their credit files were not disclosed to third parties, precluding concrete harm – and could not be included in the class. *Transunion* at 2212-2214.

## II. The district court abused its discretion by failing to scrutinize Class Counsel's revised lodestar and permitting inclusion of charges unrelated to this case, and by applying a multiplier to paralegal work

Class Counsel disingenuously assert that Appellants do "not challenge the District Court's choice of the percentage method, only its application." Plaintiffs' AB, p. 48. This is rank distortion. Appellants *do not* agree the district court used the percentage-of-fund method to calculate Class Counsel's fee award. In fact, as stated in Appellants' Opening Brief, "The court used the lodestar methodology to back into a 26% fee award, but failed to scrutinize a proffered lodestar loaded with redundant, unnecessary, and unproductive work." OB, p. 52.

### A. The district court used the lodestar method to calculate its fee award

In the Ninth Circuit "either the lodestar or the percentage-of-the-fund approach 'may, depending upon the circumstances, have its place in determining what would be reasonable compensation for creating a common fund.'" *State of Florida. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990) (*citing Paul, Johns & Hunt v. Graulty,* 886 F.2d 268, 271 (9th Cir. 1989)).

The district court first rejected the percentage fee requested by Class Counsel, finding that "no single factor or combination of factors" supports the 28.3% fee requested by Class Counsel. ER-24. It then determined to "proceed with a lodestar calculation to evaluate whether there is a basis to deviate upward or downward from the 25% benchmark." ER-24-25. This was not a crosscheck. When the court began

14

its lodestar analysis, it had not set a percentage fee to crosscheck against a lodestar number; rather, it used the lodestar as the primary method to calculate an $80,600,000 fee, thereafter expressing the fee amount as a percentage equivalent. ER-27 ("applying a 2.232 multiplier to the adjusted lodestar of $36,103,148.05 would yield $80,600,000 … The $80,600,000 figure is equal to about 26% of the $310 million Settlement – the benchmark in the Ninth Circuit.").

### B.    The district court's lodestar analysis

Using the lodestar method obligates the district court to determine the "number of hours reasonably expended on the litigation" and multiply those hours by "a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). This "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id. See also In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 941 (9th Cir. 2011).

The lodestar method requires a thorough examination of timekeeper documents. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2nd Cir. 2005) (the lodestar method "compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits").   In the instant case, the district court could not possibly have adequately assessed the *number of hours reasonably expended on the litigation,* because JCCP Counsel submitted only lump-sum totals by timekeeper – without adequate documentation in the form of daily time entry records evidencing

the nature of the work purportedly performed. ER-177-183. *See Bluetooth*, 654 F.3d at 941 (the lodestar figure is calculated by multiplying the number of hours "reasonably expended on the litigation (*as supported by adequate documentation*)…"). Instead, the court chose to blindly adopt a lodestar revision proposed by attorney Mark Dearman that reduced lodestar by a mere $305,427 (or 0.8%). ER-25-26. Dearman's revised lodestar included all of the undocumented JCCP Counsel fees, international liaison fees, and paralegal fees. The district court itself made no adjustments to Class Counsel's modestly revised lodestar, and essentially deferred to Class Counsel's review of its own charges.

By simply adopting Class Counsel's revised $36,103,148.05 number, the district court approved the inclusion of JCCP Counsel's fees of $3,993,154.55 and international liaison counsel's fees of $547,037 in Class Counsel's lodestar. No plausible argument can be made that these attorneys' services were expended on the litigation or were of benefit to the Class. JCCP Counsel and international liaison counsel's charges were incurred in pursuit of unsuccessful and competing actions/claims and these efforts "cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'" *Hensley*, 461 U.S. at 435 (internal citations omitted). Remarkably, the district court's only response to this issue was "Even if JCCP Counsel's roughly $4 million in attorneys' fees are excluded from the lodestar, the lodestar would decrease to $32,103,148.05 and this adjusted lodestar would have

an insignificant impact on the multiplier." ER-29. The "insignificant impact" of JCCP Counsel's fees alone will cost the Class $8,912,720.71. This is both a disregard of the court's fiduciary duty to protect the financial interests of the dependent Class, and in direct conflict with the district court's own finding that "an award exceeding a 2.232 multiplier would result in 'windfall profits for class counsel in light of the hours spent on the case.'" ER-27 (quoting *Bluetooth,* 654 F.3d at 942).[11]

Class Counsel argue that Apple's desire for global peace "required a global U.S. Settlement, which necessitated including the JCCP." Plaintiffs' AB, p. 61. While Class Counsel may have agreed to share their fees with JCCP counsel to achieve a settlement, JCCP work should not be included in the lodestar on which the court based its fee award. The claims alleged in the JCCP action will be released by the settlement of this litigation, and there is nothing JCCP counsel can do to alter that. In fact, Apple specifically stipulated it would pay no additional fees to any outside counsel, including JCCP. Of course, Class Counsel remain free to share their fees with JCCP counsel, if they so choose. But they are not free to increase the fees charged to the class in this litigation based upon fees claimed by JCCP counsel in

---

[11] Maintaining the $80,600,000 fee after decreasing lodestar by JCCP Counsel's fees of $3,993,154.55 would necessitate increasing the multiplier to 2.51, a multiplier that would, by the district court's own description, "result in windfall profits for class counsel." ER-27.

their separate action.[12]   The JCCP Action was never formally coordinated with the MDL action and the district court had no jurisdiction over the JCCP Action.  The prosecution of the JCCP Action had nothing to do with the prosecution of the case here on appeal, neither did it increase the size of the Settlement.[13]   That Apple negotiated a conclusion to the pending JCCP Action to coincide with settlement of the instant case does not obligate the Settlement Class to pay for the unrelated, unproductive, and duplicative time spent by JCCP Counsel in the JCCP Action.

---

[12]  In  *Chemical Bank v. Jaffe & Schlesinger, P.A.,*  19 F.3d 1306, 1309 (9th Cir. 1994) this court affirmed the district court's denial of fees to counsel for plaintiffs in parallel state action, where the district court held:

> [T]he state court proceeding was an independent, somewhat parallel action in a different forum. It was not undertaken by MDL Counsel. It was not waged on behalf of the entire Class, and the entire Class would not have shared all potentially attainable benefits. The two actions were distinct and detached. Thus, while the cases may have been "related," the relationship was attenuated.

*Id., quoting In re Wash. Pub. Power Supply Sys. Sec. Litig*., 779 F. Supp. 1063, 1225 (D. Ariz. 1990).

[13]  The Judgment also provides for the release of all claims of "Named Plaintiffs (*including the non-U.S. Named Plaintiffs*)." ER-6 (emphasis added).  These non-U.S. Named Plaintiffs have settled their personal claims, but they are not Class members of nor have their efforts provided any benefit to the Settlement Class.  In the same way, foreign liaison counsel for these non-U.S. Named Plaintiffs brought no benefit whatsoever to the Settlement Class, and their time/charges are likewise wrongfully included in Class Counsel's lodestar.

Basing the fee award on a lodestar that includes time incurred in extraneous work of JCCP Counsel and international liaison counsel was an abuse of discretion and a breach of the district court's fiduciary duty to jealously protect the interests of the Class in the common fund. This error, if uncorrected, will cost the Class $10,134,377.

### C. The district court erred by applying a risk multiplier to paralegal fees

Class Counsel discount *In re Equity Funding Corp. of America Sec. Litig.,* 438 F. Supp. 1303 (C.D. Cal. 1977) based on its age and "dubious reasoning,"[14] but entirely neglect Appellants' citation to the Supreme Court's holding in *Missouri v. Jenkins*[15] which allowed an award of paralegal fees in connection with an attorneys' fee award so as to "encourage [ ] cost effective delivery of legal services." As summarized by Professor Rubenstein, "the Court has held that, when "the prevailing practice in a given community [is] to bill paralegal time separately at market rates," a reasonable attorney's fee should include compensation for those hours *at those market rates*."[16] (Emphasis added.) Rubenstein, William B., 5 Newberg on Class Actions § 15:41 (5th ed.).

---

[14] Plaintiffs AB, p. 64.

[15] *Missouri v. Jenkins,* 491 U.S. 274, 288-289 (1989).

[16] It should be noted, Appellants left to the court the determination of a reasonable hourly charge for paralegal time. Neither do they specifically challenge that

Class Counsel argue that the "risk of losing employment if the partnership does not prosper" justifies the application of a risk multiplier to paralegal fees. But it is only the attorneys' risk of nonpayment that can be considered in developing a risk multiplier. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051 (9th Cir. 2002) ("This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases.") That risk does not extend to salaried, unlicensed employees like paralegals any more than it does to a law firm receptionist, secretary, librarian, technical support staffer or cafeteria worker. These employees are simply not exposed to the contingency risk to which counsel is exposed. Their compensation is a matter of right that exists apart from any claim for attorneys' fees, and their compensation is independent of any particular attorneys' fee award. It is "the *contingent fee lawyer* [ ] *investing her resources and time* in her clients' suit, forestalling payment to a future date and sharing the risk of losing that case with the client." (Emphasis added.) Rubenstein, William B. 5 Newberg on Class Actions § 15:87 (5th ed.). Those "resources" include the lawyer's payroll expenses, which in connection with paralegal services ought to be treated as

_____

paralegals have been billed at up to $475/hour in this case, but they do object to such an hourly rate being "subjected to a 2.232 multiplier … [resulting] in an hourly charge to the Class of up to $1,060 for paralegal services." OB, p. 61.

a recoverable expense. The paralegal has no such resources at risk. Consistent with the rationale of *Missouri v. Jenkins* [17] and *Davis v. City and County of San Francisco*,[18] paralegal fees should be reimbursed at a reasonable market rate without any risk multiplier.

There is no indication that the windfall resulting from the application of a multiplier to paralegal fees inures to the benefit of the paralegal employees. Indeed, if such were the case, it would be a violation of California Rules of Professional Conduct, Rule 5.4(a), which states "A lawyer or law firm* shall not share legal fees directly or indirectly with a nonlawyer." Further, Comment 1 to the rule states "a nonlawyer employee's bonus or other form of compensation may not be based on a percentage or share of fees in specific cases or legal matters."

Subjecting paralegal fees to a multiplier was an error of law which cost the Settlement Class $3,506,818.

---

[17] *Missouri v. Jenkins,* 491 U.S. 274 (1989).

[18] *See Davis v. City and County of San Francisco* 976 F.2d 1536, 1543 (9th Cir. 1992).

**D.    The district court erred by awarding Class Counsel a fee greater than Ninth Circuit's 25% benchmark for non-megafund cases**

Even if the district court had used 25% as a starting place for its percentage-of-fund analysis, the district court made no finding that justified an award greater than this circuit's 25% benchmark.

   **1.    The *Vizcaino* Factors:** Class Counsel misleadingly state the "District Court ultimately concluded that no single *Vizcaino* factor was determinative and proceeded with a lodestar crosscheck." In fact, the district court found that *in toto* "The *Vizcaino* Factors Do Not Support an Upward Adjustment." ER-24. Whereupon the court proceeded "with a lodestar calculation to evaluate whether there is a basis to deviate upward or downward from the 25% benchmark." ER-24.

   **2.    The district court's unwarranted deviation:** After noting this Circuit's 25% benchmark, and finding the *Vizcaino* factors do not support an upward adjustment of the 25% benchmark (ER-24), the district court awarded the amount of $80,600,000, a "figure equal to about 26% of the $310 million Settlement – *the benchmark in the Ninth Circui*t." ER-27 (emphasis added).

The suggestion that 26% is the "benchmark in the Ninth Circuit" is plainly wrong – the generic benchmark is 25%.[19] The district court found no basis for a charge exceeding the circuit's 25% benchmark, yet it awarded a fee $3.1 million greater than the benchmark percentage would allow.[20] This is a plain error, a violation of the district court's fiduciary duty to jealously protect the financial interests of the dependent Class, and an abuse of the court's discretion in setting Class Counsel's fee. At a minimum, this Court should correct this plain error by reducing the fee to no more than 25%.

---

[19] *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048 (9th Cir. 2002) ("The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases."). *See also In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 942 (9th Cir. 2011) ("[W]here awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours spent on the case, court should adjust the benchmark percentage or employ the lodestar method instead."). *See also In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1298 (9th Cir. 1994) ("courts cannot rationally apply any particular percentage – whether 13.6 percent, 25 percent or any other number – in the abstract, without reference to all the circumstances of the case.").

[20] The awards in similar cases factor militates in favor of a fee significantly below the benchmark. *See In re Wash. Pub. Power Supply,* 19 F.3d at 1298. The district court misapplied this factor in failing to find that the average percentage fee in cases of this size is 17%. "In most cases it may be more appropriate to examine lawyers' reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size." *Vizcaino* at 1050. The district court's disregard of this factor is further indication the court employed the lodestar method in calculating Class Counsel's fee.

**III. Class Counsel fail to meaningfully address the propriety of incentive awards granted by the district court**

**A. This Court has previously forbidden incentive awards, a position consistent with the 11th Circuit's holding in *Johnson* and the Supreme Court's holdings in *Greenough* and *Pettus***

Plaintiffs claim this Court "continues to reject arguments against service awards," Plaintiffs AB, page 65, but ignore that this Court explicitly rejected preferential treatment of named plaintiffs in *Officers for Justice v. Civil Service Comm'n.*, 688 F.2d 615, 632 (9th Cir. 1982).

Plaintiffs cite no Ninth Circuit case that actually addresses the Supreme Court's holdings in *Trustees v. Greenough*, 105 U.S. 527 (1882) and *Central Railroad & Banking Co. v. Pettus* (1885).[21] These cases specifically prohibit recovery of any amounts by representative plaintiffs for personal services and private expenses, e.g. incentive awards. The decision of the first panel of this Court to confront a request for preferential treatment was in line with these Supreme Court cases. *See Officers for Justice* 688 F.2d at 632 (by joining in class action named plaintiff "disclaim[s] any right to a preferred position in the settlement") (*citing Flinn v. FMC Corp.*, 528 F.2d 1169, 1176 (4th Cir. 1975) and *Kincade v. General*

---

[21] Class Counsel cite *In re Google Inc. Street View Elec. Commc'ns Litig.,* 21 F.4th 1102 (9th Cir. 2021), and *Chambers v. Whirlpool Corp.,* 980 F.3d 645 (9th Cir. 2020) as cases that "reject arguments against service awards." Neither of these cases addressed the availability of incentive awards in view of the Supreme Court's rulings in *Greenough* and *Pettus*.

*Tire & Rubber Co.*, 635 F.2d 501, 506 n.5 (5th Cir. 1981)[22]).[23]  The Eleventh Circuit in *Johnson* found that granting a service award to a named plaintiffs is "tantamount to giving a preferred position to a class representative simply by reason of his status." *Johnson v. NPAS Solutions LLC*, 975 F.3d 1244, 1259 n.9 (11th Cir. 2020).  By this reasoning, this Court's holding in *Officers for Justice* that a plaintiff disclaims any right to a preferred position should be read to include incentive awards.  *See also SEB Inv. Mgmt. v Symantec*, No. C 18-02902 WHA, 2022 WL 409702, at *7 (N.D. Cal., Feb. 10, 2022) ("An incentive payment for a representative or lead plaintiff is a red flag because it does not 'treat[ ] class members equitably relative to each other.' Rule 23(e)(2)(D)].").  No subsequent Ninth Circuit case overruled *Officers for Justice*, which remains controlling. *See Innovation Law Lab v. Wolf*, 951 F.3d 1073,

---

[22] "A related issue, not explicitly raised by this appeal but nevertheless underlying it, is whether the named plaintiffs should have been accorded preferential treatment rather than treated as any other class member in the distribution of the settlement fund.  As the Fourth Circuit stated in *Flinn v. FMC Corp.*, 528 F.2d 1169, 1176 (4th Cir. 1975), by choosing to bring their action as a class action, the named plaintiffs "disclaimed any right to a preferred position in the settlement." While this rule clearly does not require that all class members participate equally in a settlement (indeed, the settlement in this case did not so provide), it does negate any claim a named plaintiff might have to preferred treatment simply by reason of his status as a class representative." *Kincade,* 635 F.2d at 506 n. 5 (5th Cir. 1981).

[23] The Eleventh Circuit in *Johnson* found that awarding an incentive award to a named plaintiff is "tantamount to giving a preferred position to a class representative simply by reason of his status."  975 F.3d at 1259, n.9.  Therefore, this Court's holding in *Officers for Justice* that a plaintiff disclaims any right to a preferred position encompasses an incentive award.

1095 (9th Cir. 2020) ("the first panel to consider an issue sets the law not only for all the inferior courts in the circuit, but also future panels of the court of appeals.").[24]

In keeping with the Supreme Court's holdings in *Trustees v. Greenough*, and *Central Railroad & Banking Co. v. Pettus*, and with Rule 23(e)(2)(D), this Court should end the practice of giving lead plaintiffs preferential treatment in the form of incentive awards.[25] More specifically, the controlling precedent of *Officers for Justice*, as well as Supreme Court precedent in *Greenough* and *Pettus*, require reversal of the district court's approval of preferential payments to the 132 Named Plaintiffs.

---

[24] Subsequent cases like *Staton* are not to the contrary, because only an en banc court can overturn a prior panel decision, and this Court has never issued an en banc decision on incentive awards. *See Gonzalez v. Arizona*, 624 F.3d 1162, 1202-1203 (9th Cir. 2010).

[25] The Settlement Agreement actually gives Named Plaintiffs a preferred position by requiring them to file claims. "The Named Plaintiffs who are Settlement Class Members also *shall be required to submit Claim Forms* as specified in paragraph 6.3." (Emphasis added.) Settlement Agreement, para. 8.4., Dkt. 416, p. 21. St John ER_190. In this same paragraph Class Counsel promise to seek service awards of $1,500 or $3,500 for each Named Plaintiff.

**B.    None of the cases cited by Class Counsel authorize incentive awards to individuals clearly outside the Settlement Class**

Neither of the cases cited by Plaintiffs in support of the service awards to the non-U.S.-based Named Plaintiffs supports those payments.  In *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003), this Court held:

> All these concerns about incentive or risk payments to certain class members are exacerbated in this case by the allegation, and in one case [ ] the apparent reality, that [service] awards went to individuals who were not proper members of the class.  Again, if those individuals rendered compensable services to the lawyers, then the lawyers should pay for those services from the amount of the fund properly awarded for costs or fees, as appropriate.  ***But if one or more of these individuals is clearly not a member of the class, and therefore not entitled to any damages award, any proposed decree should be approved only if the provision awarding that person or those persons damages is deleted.***  If, alternatively, an individual's class membership is debatable, then the award to him or her can be considered an element of the compromise.

*Id.* at 977-78 (emphasis added).

Here, there is no debate about the nationality of the eleven foreign Named Plaintiffs.  The Settlement Agreement identifies these individuals as "non-U.S.-based Named Plaintiffs."  Dkt. 416, p. 22.  Each of the non-U.S.-based Named Plaintiffs[26] is *clearly* not a member of the Settlement Class,[27] and *Staton* disallows

---

[26] These non-U.S.-based Named Plaintiffs are identified by Appendix B to the Settlement Agreement as being from Belgium, Brazil, Canada (x2), China, Colombia, India, Japan, Mexico, Netherlands, and Norway.

[27] "Settlement Class" means all former or current U.S. owners …"  Dkt. 416, p. 5.

payment of any amount out of the Settlement to such persons, whether by incentive award or otherwise.

Plaintiffs' citation to *Chambers v. Whirlpool Corp.,* 980 F.3d 645 (9th Cir. 2020) is misplaced. In *Chambers*, the settlement provided "overlapping benefits on a claims-made basis to both class and non-class members – with the difference being that class members are entitled to more coupons." "[N]on-class members" were required to "execute a separate release as consideration for receiving settlement compensation," and their service awards were not drawn from the common fund and were challenged only in terms of destroying their "Rule 23(a) typicality and adequacy." *Id.,* at 670. The instant case does not involve a coupon settlement or separate compensation pools, and all of the incentive awards are taken out of the common fund recovery. In *Chambers v. Whirlpool Corp.*, 980 F.3d 645 (9th Cir. 2020), this Court noted that "non-class compensation is independent of the class recovery," unlike here where all the service awards will be deducted from the $310 million Settlement Amount.[28] *Id*. at 670. The facts of *Chambers* are a far cry from those of the instant case.[29]

---

[28] St. John ER_180: "5.1 Cash Payment to Settlement Class Members. … The actual amount of payment may differ, depending on the amount of any Attorneys' Fees and Expenses, *Named Plaintiff Service Awards* …" (Emphasis added.)

[29] Indeed, appellants lacked standing to challenge the non-class-member incentive awards in *Chambers* because they were paying no portion of them. *See Knisley v. Network Associates, Inc.*, 312 F.3d 1123 (9th Cir. 2002).

In short, there is nothing in this Court's class action jurisprudence, let alone Plaintiffs' Brief, that would countenance the use of the common fund Settlement Amount to compensate non-class-member strangers to the litigation.[30]

## CONCLUSION

The Settlement is unreasonable, unfair, and inadequate by virtue of the unacceptable exclusion of a large portion of Class members from the right to make a claim. The district court's reliance on a presumption of Settlement reasonableness and deference to the views of counsel was an abuse of discretion requiring reversal. Further, the district court's acceptance of Class Counsel's revised lodestar, including JCCP Counsel fees, international liaison counsel fees, and paralegal fees – and applying a risk multiplier to each – likewise warrants reversal.

---

[30] The lack of benefit brought by the non-U.S. Named Plaintiffs extends also to the lack of contribution by the bulk of all Named Plaintiffs. *Cf. Staton, supra* at 976 ("[t]he two hundred-odd [plaintiffs] who were not class representatives were not essential to the litigation, although they may have been helpful to it").

Dated: March 1, 2022

Respectfully submitted,

Appellants Sarah Feldman
and Hondo Jan,
by their attorneys:

_s/ Kendrick Jan_
Kendrick Jan
Kendrick Jan, APC
402 West Broadway, Ste. 1520
San Diego, CA 92101
Tel: (619) 231-7702
kj@jan-law.com

_s/ John J. Pentz_
John J. Pentz, Esq.,
19 Widow Rites Lane
Sudbury, MA 01776
Phone: (978) 261-5725
jjpentz3@gmail.com

and

Appellant Deborah Pantoni,
by her attorney:

_s/ Jan L. Westfall_
Jan L. Westfall
P.O. Box 711472
San Diego, CA 711472
Phone: (619) 940-2880
jlwestfall.esq@gmail.com

## <u>CERTIFICATE OF COMPLIANCE</u>

9th Cir. Case Number:  21-15758 and No. 21-15762

I am the attorney or self-represented party.

**This Joint Reply Brief contains 7,837 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).  (Note:  This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman font.)

I certify that this brief complies with the longer length limit permitted by Cir. R. 32-2(b) because it is a joint brief submitted by separately represented parties.

Signature:   s/Kendrick Jan                 Date: 3/1/2022

## <u>CERTIFICATE OF SERVICE</u>

**9th Cir. Case Numbers: 21-15758 and No. 21-15762**

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Description of Documents**:

Joint Reply Brief of Appellants' Sarah Feldman,
Hondo Jan, and Deborah Pantoni

Signature: ___s/Kendrick Jan_____          Date: 3/1/2022