1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE: APPLE INC. DEVICE
PERFORMANCE LITIGATION

Case No.   5:18-md-02827-EJD

**ORDER GRANTING RENEWED
MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT;
GRANTING RENEWED MOTION FOR
ATTORNEYS' FEES, EXPENSES, AND
SERVICE AWARDS**

Re: ECF Nos. 631, 632

Pending before the Court are Plaintiffs' and Defendant's Joint Renewed Motion for Final Approval of Class Action Settlement (hereinafter "Renewed Mot. for Final Approval," ECF No. 631), and Plaintiffs' Renewed Motion for Attorneys' Fees and Expenses, and Service Awards (hereinafter "Renewed Mot. for Fees & Costs," ECF No. 632).  On January 11, 2023, the Court heard arguments from the parties on both motions.  *See* ECF No. 646.

Having considered the Ninth Circuit's mandate, the renewed motion briefing, the parties' prior motions and briefing, the terms of the settlement agreement, the objections and response thereto, the arguments of counsel, and the other matters on file in this action, the Court APPROVES the settlement as fair, adequate, and reasonable and GRANTS the parties' joint renewed motion for final approval.  The provisional appointments of the class representatives and class counsel are confirmed.  Class Counsel's renewed requests for attorneys' fees, expenses, and incentive awards are also GRANTED.

## I.     BACKGROUND

In light of this case's procedural posture, the Court will not reiterate the entirety of the lengthy factual background.  This action arises from certain software updates released by Defendant Apple, Inc. ("Apple") for its iPhones' system software ("iOS") that allegedly diminished performance of the iPhone 6s and 7s running these operating systems (iOS 10.2.1 and iOS 11.2).  Second Consol. Am. Compl. ("SCAC") ¶ 2, ECF No. 244.  The consolidated amended complaint ("CAC") alleged 76 claims against Apple, including fraud-based theories, breach of contract, trespass to chattels, and violation of federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and California's Data Access and Fraud Act, Cal. Penal Code § 502.  *See generally* CAC, ECF No. 145.  Many of these claims did not survive the two rounds of motions to dismiss.  *See* Order Granting in Part and Den. in Part Mot. to Dismiss, ECF No. 219; Order, ECF No. 331.

On February 28, 2020, Named Plaintiffs moved for preliminary approval of the Settlement prior to class certification.  Mot. for Prelim. Approval of Settlement, ECF. No. 415.  The nationwide Settlement Class includes the California Class represented by JCCP Counsel.  On May 27, 2020, the Court granted preliminary approval, provisionally certified the nationwide Settlement Class, and directed notice to be issued to Settlement Class Members pursuant to the Settlement and preliminary approval motion (hereinafter "Prelim. Approval Order," ECF No. 429).  The Court granted preliminary certification to a settlement class of:

> All former or current U.S. owners of iPhone 6, 6 Plus, 6s, 6s Plus, 7, 7 Plus, and SE devices running iOS 10.2.1 or later (for iPhone 6, 6 Plus, 6s, 6s Plus, and SE devices) or iOS 11.2 or later (for iPhone 7 and 7 Plus devices), and who ran these iOS versions before December 21, 2017.

Mot. for Prelim. Approval of Settlement at 2; Stipulation of Settlement § 1.32, ECF No. 416.  "U.S. owners" is defined to "include all individuals who owned, purchased, leased, or otherwise received an eligible device, and individuals who otherwise used an eligible device for personal, work, or any other purposes.  Stipulation of Settlement § 1.32.  The Settlement Class does not include "iPhone owners who are domiciled outside of the United States, its territories, and/or its possessions."  *Id.*  It excludes "(a) directors, officers, and employees of Apple or its subsidiaries

United States District Court
Northern District of California

1    and affiliated companies, as well as Apple's legal representatives, heirs, successors, or assigns, (b)

2    the Court, the Court staff, as well as any appellate court to which this matter is ever assigned and

3    its staff, (c) any of the individuals identified in paragraph 1.36 of the Settlement Agreement, as

4    well as their legal representatives, heirs, successors, or assigns, (d) Defense Counsel, as well as

5    their immediate family members, legal representatives, heirs, successors, or assigns, and (e) any

6    other individuals whose claims already have been adjudicated to a final judgment." *Id.*

7         Named Plaintiffs moved for final approval of class action settlement (hereinafter "Mot. for

8    Final Approval," ECF No. 470) and attorneys' fees and costs (hereinafter "Mot. for Fees &

9    Costs," ECF No. 468) on August 26, 2020.  The Court heard arguments presented during two days

10   of fairness hearings on December 4, 2020 and February 17, 2021, the second hearing focusing on

11   the attorneys' fees and costs.  *See* ECF Nos. 585, 600.  In March 2021, the Court issued separate

12   orders approving the Settlement (hereinafter "Settlement Order," ECF No. 608) and granting in

13   part Plaintiffs' request for attorneys' fees, expenses, and service awards (hereinafter "Fees &

14   Costs Order," ECF No. 609).  The Court approved an award of $80.6 million for attorney's fees,

15   representing 26% of the $310 million Settlement Fund.

16        Five objectors appealed the Court's settlement approval and/or award of attorneys' fees on

17   various grounds.  *See* ECF Nos. 614–618.  The orders granting final approval of the settlement and

18   approving an award of attorneys' fees, expenses and service awards were vacated and remanded

19   on appeal.[1]  *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769 (9th Cir. 2022).  On remand

20   the Ninth Circuit stated that, while "[the Court's] probing analysis suggests that it may have

21   applied heightened scrutiny" in finding the Settlement was fair and reasonable, *Apple*, 50 F.4th at

22   783, its written order did not cite to the correct "higher level of scrutiny" articulated in *Roes* that is

23

24   ───────────────

     [1]The Ninth Circuit vacated the Court's order granting final approval, finding that although it
25   appeared the Court engaged in the thoughtful and deliberate analysis, it cited the wrong legal
     standard in presuming that the settlement was fair and reasonable.  Consequently, the order
26   granting attorneys' fees was also vacated.  The Ninth Circuit also held that non-natural persons
     received sufficient notice of proposed settlement and that the settlement's requirement of
27   attestation to an injury in order to obtain recovery was reasonable.

     Case No.: 5:18-md-02827-EJD
28   ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
     SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
     AWARDS

                                              3

1    required in cases where settlement precedes class certification.  *Roes, 1-2 v. SFBSC Mgmt., LLC*,

2    944 F.3d 1035, 1049 (9th Cir. 2019).  The Ninth Circuit also provided directions on remand

3    relating to any future award of attorneys' fees, instructing the Court to more thoroughly explain

4    how the *Vizcaino* factors support an upward adjustment from 25% benchmark and that the Court

5    "reconsider the inclusion of JCCP work in the lodestar calculation."  *Id.* at 783–84 n.11.

6         **A.    Terms of the Settlement Agreement**

7         The Settlement Agreement is a comprehensive resolution of all claims in this Action and in

8    the California JCCP Action, *In re Apple OS Cases*, JCCP No. 4976 (Cal. Super. Ct., S.F. Cty.).

9    Stipulation of Settlement § 9.  The Settlement provides for a non-reversionary Minimum Class

10   Settlement Amount of $310 million, with a Maximum Class Settlement Amount of $500 million,

11   in cash for the benefit of the Settlement Class without admitting liability or wrongdoing.  *Id.*;

12   Decl. of Joseph W. Cotchett and Laurence D. King in Supp. of Mot. for Settlement ("Decl. of Co-

13   Lead Class Counsel"), Ex. 1 ¶ 46, ECF No. 471-1.  This amount includes the cost of class notice

14   and settlement administration, the class representative's incentive award, attorneys' fees and costs,

15   and "whether the aggregate value of Approved Claims reaches the Minimum Class Settlement

16   Amount or Maximum Class Settlement Amount . . . ."  Stipulation of Settlement § 5.2.

17        **1.    Attorneys' Fees and Costs, Service Awards, and Costs of Settlement
18              Administration**

19        The Settlement Agreement provides that:

20            The Parties have not yet agreed upon the amount of Attorneys' Fees
             and Expenses that Class Counsel will seek, and Apple, while
21           recognizing that the Settlement entitles Class Counsel to seek
             reasonable fees and expenses, reserves the right, if any, to object to
22           and oppose Class Counsel's requests for Attorneys' Fees and
             Expenses.

23   Stipulation of Settlement § 8.2.  The Agreement also provides that Named Plaintiffs may seek

24   service awards that will not exceed $1,500 for "each Named Plaintiff who was not deposed in the

25   Actions," and it will not exceed $3,500 "for each Named Plaintiff who was deposed in the Actions

26   (i.e., Romeo Alba, Denise Bakke, Alisha Boykin, Steven Connolly, Alvin Davis, Loren Haller,

27   Case No.: 5:18-md-02827-EJD
     ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
28   SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
     AWARDS

United States District Court
Northern District of California

1    Charlene Lowery, Cynthia Stacy, and Trent Young)." *Id.* at § 8.4.  The Named Plaintiffs who are

2    Settlement Class Members must also submit Claim Forms.  *Id.*

3           Pursuant to the Agreement, the aggregate cash payment to the Settlement Class Members

4    shall not exceed the Maximum Class Settlement Amount of $500 million.  If the number of

5    eligible devices in the approved claims multiplied by $25.00 exceeds the Maximum Class

6    Settlement Amount, then the cash payment for each shall be reduced on a pro rata basis.

7           If the $25 payment for each eligible device identified in the approved claims as well as the

8    fees, expenses, and awards do not meet the Minimum Class Settlement Amount, the residual, or

9    the "difference between the value of the Approved Claims and the Minimum Settlement Amount,"

10   will first pay the costs of settlement notice and administration up to $12,750,000, plus any postage

11   expense incurred after the $12,750,000 cap has been reached.  *Id.* §§ 1.27, 5.3.1.  If there is

12   residual after paying the costs of Settlement notice and administration, then the cash payments for

13   each approved claim will be increased on a pro rata basis until the aggregate value equals the

14   Minimum Class Settlement Amount.  *Id.* § 5.3.2.  However, the pro rata payments for approved

15   claims are capped at $500.  *Id.*

16                    **2.       Class Relief**

17          In exchange for a release of their claims against Apple set forth in the Settlement

18   Agreement, Settlement Class Members will receive approximately $25 cash for each eligible

19   iPhone, although the amount of that payment may increase or decrease depending on any

20   Attorneys' Fees and Expenses, Named Plaintiff Service Awards, notice expenses, and whether the

21   aggregate value of Approved Claims reaches the Minimum Class Settlement Amount or the

22   Maximum Class Settlement Amount.  Stipulation of Settlement § 5.1; Decl. of Co-Lead Class

23   Counsel, Ex. 1 ¶ 47.  According to the Stipulation of Settlement, if the payment of $25 for each

24   iPhone device identified as Approved Claims plus the payment of Attorneys' Fees and Expenses,

25   Named Plaintiff Service Awards, and Notice and administration fees does not reach the Minimum

26   Class Settlement Amount, then the "Residual" will be allocated according to the Stipulation of

27   Case No.: 5:18-md-02827-EJD
     ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
28   SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
     AWARDS

United States District Court
Northern District of California

Settlement (ECF No. 416), including increasing payments to Settlement Class Members on a pro rata basis.  *Id.*

Conversely, if the number of iPhone devices identified as Approved Claims, multiplied by $25, exceeds the Maximum Class Settlement Amount of $500 million, then the cash payment for each device will be reduced on a pro rata basis so as not to exceed the Maximum Class Settlement Amount of $500 million.  *Id.*

### 3.   Residual Funds

The Settlement Agreement does not provide a *cy pres* recipient; Rather, it provides that, if the settlement fund is not exhausted by the end of the claims period, the Parties will confer on the distribution of any remaining funds in the unlikely event the Minimum Class Settlement Amount is not reached, subject to Court approval.  Prelim. Approval Order at 23; *see also* Stipulation of Settlement § 5.3.3. B.

### B.   Class Notice

The Settlement Administrator shall provide settlement notice and administration services, in accordance with the terms of the Settlement Agreement and the Settlement Administration Protocol.  Stipulation of Settlement at § 6.1.  Court-approved Settlement Administrator Angeion Group ("Angeion") disseminated Notice to the Class via (1) direct email to the email address of record on the Apple ID account of the members of the Settlement Class and/or postcard notices, (2) a case-specific website, and (3) a case-specific toll-free number.  ECF No. 470-2 ¶¶ 4–12; *see also* Stipulation of Settlement § 6.2.  Specifically, 90,119,272 class notices were emailed to potential Class Members, with 2,611,071 returned undeliverable.  ECF No. 470-2 ¶¶ 6–7, 11.  Angeion re-deployed 340,289 email notices that had a technical error during the initial distribution.  ECF No. 551 ¶ 5.  Of the 340,289 email notices that were re-deployed, 320,329 were delivered and 19,960 were not delivered.  *Id.* ¶ 6.  Between August 24, 2020 and September 9,

United States District Court
Northern District of California

United States District Court
Northern District of California

2020, Angeion sent a second round of email notices to 89,395,480 Class Members.[2]  *Id.* ¶ 18.

Angeion also sent 5,609,281 postcard notices to potential Settlement Class Members.  *Id.* ¶ 11.  On September 4, 2020, Angeion mailed an additional 72,282 notices.  *Id.* ¶ 13.  After conducting address verification searches ("skip traces"), Angeion identified and re-mailed notices to 275,292 updated addresses, including the records which the USPS returned with a forwarding address.  *Id.* ¶ 14.  Angeion also sent a second round of post card notices to 5,609,277 Class Members.  *Id.* ¶ 17.  These efforts resulted in notice being sent to 99% percent of the Class.  ECF No. 589 at 153.

The case-specific website devoted to the Settlement had 16,440,243 pageviews and 9,891,698 sessions through November 16, 2020.  *Id.* ¶ 22.  The toll-free information line for the case received approximately 31,647 calls through November 16, 2020.  *Id.* ¶ 24.  The extensive media coverage of the Settlement has also increased the likelihood that Settlement Class Members learned of the Settlement and the process for submitting a claim.  ECF No. 470-2 ¶ 26.

### C.     Claims Process

Settlement Class Members had up to 92 days to submit a claim, object, or opt out.  Def.'s Statement at 5.  The chart below tabulates the total number of claims submitted, approved, and not approved (including the reasons for the provisional rejections) as of January 22, 2021:

---

[2] During the December 4, 2020 hearing, it was reported that many email notices to Class Members were redirected to a spam folder, and that as result, many Class Members may not have received notice if they didn't know to look in their spam folders. 12/4/20 Hr'g Tr. at 102.  Although this is disappointing, it is not surprising in a case of this magnitude and does not mean the notice program failed to comport with due process.  Angeion employed other methods of notice, including establishing a case-specific website and a case-specific toll-free number.  And as noted previously, the extensive media coverage of the Settlement has also increased the likelihood that Settlement Class Members learned of the Settlement and the process for submitting a claim.

Case No.: 5:18-md-02827-EJD
ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
AWARDS

7

| | Claims Submitted | Claims Withdrawn | Claims Approved (Pending Deduplication) | Claims Pending Validation Regarding Device Eligibility | Device Not Eligible – Could Not Be Matched to Class List | Claims Not Approved | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Attestation Missing or Insufficient | Duplicate | Other (e.g., missing signature) |
| **Online** | 2,152,228 | 137 | 2,094,916 | 0 | 0 | 0 | 57,175 | 0 |
| **Hard Copy** | 74,543 | 43 | 20,698 | 57 | 444,430 | 3,549 | Pending | 5,766 |
| **Corporate** | 1,058,214 | 66 | 153,246 | 41,522 | 664,675 | 164,053 | 32,533 | 2,119 |
| **Total** | 3,284,985 | 246 | 2,268,860 | 41,579 | 709,105 | 167,602 | 89,708 | 7,885 |

ECF No. 596 at 1.  "The Settlement Administrator approved all claims that could be matched to eligible devices, provided that the other settlement requirements were satisfied."  *Id.* at 2.  "For claims that could not be approved as initially submitted, the Settlement Administrator sent deficiency notices to inform the claimants of the reason(s) their claims could not be approved." *Id.*  All claimants had an opportunity to submit additional information.  *Id.*

The Court later provided guidance regarding the attestation requirement for corporate and non-natural person claims.  ECF No. 598.  The Settlement Administrator shall submit a final report to the Court once the claims administration process is complete.  *Id.*

## II.     FINAL APPROVAL OF SETTLEMENT

### A.     Legal Standard

A court may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification.  Fed. R. Civ. P. 23(e)(2).  In reviewing the proposed settlement, a court must balance a number of factors to gauge fairness and adequacy, including the following:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

Case No.: 5:18-md-02827-EJD
ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
AWARDS

United States District Court
Northern District of California

*Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Furthermore, class settlements reached prior to formal class certification require a "heightened fairness inquiry." *Roes*, 944 F.3d at 1049. When reviewing such a pre-certification settlement, the district court must not only explore the *Churchill* factors but also "look[] for and scrutinize[] any subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *Id.* at 1043 (internal quotation marks omitted).

### B.    Analysis

#### 1.    The Settlement Class Meets the Rule 23(a) and (b)(3) Prerequisites for Certification

According to Rule 23(a), all class actions must satisfy the following prerequisites: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a). In addition, Named Plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). While the Ninth Circuit did not mandate this Court to make detailed written findings on remand that Rule 23(a) and (b)(3)'s prerequisites were satisfied, the Court nonetheless memorializes its previous findings.[3] The Court affirms the bases for the conditional class certification in the Court's preliminary approval order per the prerequisites in Rule 23(a)(1)–(4). *See* ECF No. 429.

Numerosity. The Settlement Class satisfies Rule 23(a)(1) because it includes millions of iPhones have been purchased and/or sold in the United States, making it so numerous that joinder of all members is impracticable. ECF No. 470 at 7; *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'") (quoting Fed. R. Civ. P. 23(a)(1)).

---

[3] The Ninth Circuit rejected appellants' argument that the Court should have made detailed findings that the Rule 23(a) and (b)(3)'s prerequisites were satisfied where "the record provides more than adequate foundation" for review. *Apple*, 50 F.4th at 780 n.7.

Case No.: 5:18-md-02827-EJD
ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
AWARDS

9

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Commonality.  Rule 23(a)(2) commonality requires "questions of fact or law common to the class," though "[e]ven single common question of law or fact that resolves a central issue will be sufficient to satisfy this mandatory requirement."  *Castillo v. Bank of Am., NA*, 980 F.3d 723, 728 (9th Cir. 2020).  "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted); The focus of this action—whether the performance management feature that Apple introduced in iOS 10.2.1 and iOS 11.2 to avoid unexpected power-offs affected the iPhones—is common to all class members.  ECF No. 470 at 7.

Typicality.  Next, Rule 23(a)(3) requires that the plaintiff show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted).  The Court finds that the Named Plaintiffs are typical of the Settlement Class they seek to represent because they purchased Apple's iPhones and were affected by the unexpected power-offs and the performance management feature Apple introduced in iOS 10.2.1 and iOS 11.2 to avoid unexpected power-offs.  ECF No. 470 at 7; *see generally* SCAC.

Adequacy of Representation.  With respect to Rule 23(a)(4), the Court finds the representative parties and class counsel have fairly and adequately represented the interests of the Class.  No conflicts of interest appear as between Named Plaintiff and the members of the Settlement Class, nor is there any evidence that Class Counsel has any conflicts of interests with Settlement Class Members.  Class Counsel have substantial experience prosecuting class actions. *See* ECF Nos. 415-3 (firm résumé of Kaplan Fox & Kilsheimer LLP);415-4 (firm résumé of Cotchett, Pitre & McCarthy LLP).  Named Plaintiffs are equally interested in demonstrating

Case No.: 5:18-md-02827-EJD
ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV. AWARDS

1   Apple's alleged violations, and Plaintiffs and Class Counsel have litigated this Action vigorously

2   on behalf of the Settlement Class.  Mot. for Final Approval at 7.

3       Predominance.  Finally, the Settlement Class further satisfies Rule 23(b)(3) in that

4   common issues predominate and "a class action is superior to other available methods for fairly

5   and efficiently adjudicating" the claims here.  First, every Settlement Class Member alleged that

6   their iPhones were subjected to the performance management feature that slowed it down and

7   caused harm.  Mot. for Prelim. Approval of Settlement at 8.  The Court agrees that "this common

8   question can be resolved for all members of the proposed Settlement Class in a single

9   adjudication."  Mot. for Final Approval at 8.

10       Superiority.   Moreover, to satisfy the superiority requirement it must be shown that a class

11   action is the "most efficient and effective means of resolving the controversy. . . . Where recovery

12   on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor

13   weighs in favor of class certification."  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168,

14   1175 (9th Cir. 2010) (quotation marks and citation omitted).  The class action mechanism is

15   superior for resolving this matter given the "the individual remedy for each Class Member is

16   relatively small, making the expense and burden of continued individual litigation economically

17   and procedurally impracticable."  *Noll v. eBay, Inc.*, 309 F.R.D. 593, 603 (N.D. Cal. 2015).  In

18   these situations, a "class action mechanism is superior to individual actions in consumer cases

19   with thousands of members . . . in which the potential recovery is too slight to support individual

20   suits, but injury is substantial in the aggregate.'"  *Id.*

21       Based on the foregoing, the Court found that the Settlement Class satisfies the pre-

22   requisites of Rule 23.

23       **2.    Adequate Notice Was Provided**

24       A court must "direct notice [of a proposed class settlement] in a reasonable manner to all

25   class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  The notice must

26   be "reasonably calculated, under all the circumstances, to apprise interested parties of the

27   Case No.: 5:18-md-02827-EJD
ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION

28   SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
AWARDS

United States District Court
Northern District of California

1    pendency of the action and afford them an opportunity to present their objections." *Apple*, 50

2    F.4th at 779.  However, "neither Rule 23 nor the Due Process Clause requires actual notice to each

3    individual class member."  *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017).

4            The Court found that adequate notice providing the best notice practicable and reasonably

5    calculated to apprise Class members of the settlement and their rights to object or exclude

6    themselves pursuant to Rule 23(e)(1).  While appellants challenged the adequacy of the notice

7    provided to nonnatural persons, the Ninth Circuit concluded that "[t]he notice here satisfied both

8    Rule 23 and due process."  *Apple*, 50 F.4th at 779.

9                         **3.      The Settlement Is Fair and Reasonable**

10           The Court was thorough in its discussion but cited the incorrect legal standard in finding

11   the settlement "fair, adequate, and reasonable."  The Court reiterates its findings as to the Rule

12   23(e)(2) and *Churchill* factors in order "to evaluate the settlement under the correct standard."

13   *Apple*, 50 F.4th at 783; *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

14                         **a.      Strength of Plaintiff's Case**

15           The parties actively and aggressively litigated this action and Class Counsel conducted a

16   thorough investigation and prosecution of the claims.  The Named Plaintiffs firmly believe that

17   their liability case is strong and that class certification is warranted.  ECF No. 470 at 9.  In their

18   SCAC, Named Plaintiffs supported their claims with allegations that users of Apple devices began

19   reporting reduced functionality after installing iOS 10.2.1, and began experiencing marked

20   decrease in battery life after downloading iOS 11.  ECF No. 244 ¶¶ 435, 436.  Further, a study

21   "revealed that existing iPhones operating on the iOS 10 software on average drained to 0% battery

22   after 240 minutes (4 hours), whereas those operating on iOS 11 on average drained to 0% battery

23   after only 96 minutes (just over 1½ hours)."  *Id.* ¶ 438.  "In other words, iOS 11 reduced the

24   average iPhone's battery life by more than 60%."  *Id.*  Named Plaintiffs alleged that "[t]he study

25   demonstrates the substantially increased power demands that Apple foist upon users' Devices

26   through its iOS update."  *Id.*  Named Plaintiffs cited to multiple reports and studies finding that he

27   Case No.: 5:18-md-02827-EJD
     ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
28   SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
     AWARDS

United States District Court
Northern District of California

1    iOS 10.2.1 and iOS 11.2 updates caused a decrease in the iPhones' performance.  *Id.* ¶¶ 440–43.

2    Named Plaintiffs further alleged that Apple never asked its purchasers for their authorization to

3    slow down their device, nor informed them of this change.  *Id.* ¶ 447.

4         Nevertheless, Named Plaintiffs recognized the real and substantial risk that they might not

5    be able to obtain any recovery at all given the significant legal challenges they would have to face

6    if the case did not settle.  Apple has consistently maintained and continues to maintain that "[the]

7    software update prolonged the life of devices with aged batteries . . . ."  Apple's Statement In

8    Support of Final Approval & Response to Settlement Objections ("Def.'s Statement") at 1, ECF

9    No. 555.  Further, Apple has maintained and continues to maintain that "[t]he performance

10   management feature was only activated when the device was at risk of shutting down when power

11   demands were high in some temporary conditions based on environmental temperature, state of

12   charge, and customer usage."  *Id.*  "Apple disputes that all devices were used in a way that would

13   have activated the performance management feature; and even when it was activated, users may

14   not have even noticed any differences in daily device performance."  *Id.*  "Apple stands by the

15   performance management feature as a solution to a complex technological problem that delivered

16   a better experience for customers and prolonged the life of older iPhone devices."  *Id.*

17        The first factor therefore weighs in favor of approval.

18                           **b.        The Extent of Discovery**

19        The extent of discovery also weighs in favor of approving settlement.  Apple produced

20   over seven million pages of material for review and Plaintiffs deposed ten Apple witnesses.

21   Plaintiffs also sought discovery from several non-parties.  ECF No. 470 at 11.  This extensive

22   discovery allowed Plaintiffs to evaluate the merits of their claims.  *In re Volkswagen "Clean*

23   *Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2016 WL 6248426, at *14 (N.D. Cal. Oct.

24   25, 2016) ("[E]xtensive review of discovery materials indicates [Plaintiffs have] sufficient

25   information to make an informed decision about the Settlement.  Class Counsel also benefitted

26   from Judge Phillips' objective assessment of the relative strengths and weaknesses of the parties'

27   Case No.: 5:18-md-02827-EJD
     ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
28   SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
     AWARDS

United States District Court
Northern District of California

positions.  Thus, Class Counsel and Named Plaintiffs were well-informed before entering into the Settlement.

### c.   Risk, Expense, Complexity, and Likely Duration of Further Litigation

The risk, expense, complexity, and likely duration of further litigation also weigh in favor of approving the Settlement.  Absent a settlement, the parties would have to proceed with more discovery, including the unresolved motions regarding additional depositions (*see* ECF No. 471 ¶ 33), to the summary judgment stage, to a lengthy trial including disputes over damages, as well as post-trial motions.  And as Class Counsel observed, "even if anything were recovered, it would take years to secure, as Apple would undoubtedly appeal any adverse judgment."  ECF No. 470 at 10.  The litigation is complex, requiring the appointment of a special Discovery Master, and expensive, with Class Counsel claiming nearly $1 million in litigation expenses alone.  The related JCCP Action further multiplies the complexity and expense.  The Settlement reached here with the assistance of Judge Phillips saves the parties and Class Members time, and avoids the additional financial expenditures of prolonged litigation.

### d.   Risk of Maintaining Class Action Status Throughout the Trial

This Court granted preliminary certification of the Settlement Class which, per the Stipulation of the parties, is solely for the purpose of the Settlement.  If the litigation proceeded, however, there was a risk that a class would not be certified.  Class Counsel anticipated a dispute over "whether a particular iPhone user was affected [based] upon how that person used the iPhone, including what 'apps' were on the phone, etc."  ECF No. 470 at 9.  The resolution of that issue and additional potential factual disputes posed great risk to Plaintiffs maintaining a viable class.  The Settlement avoids that risk in favor of great benefit to the Settlement Class.  This risk of maintaining a class action therefore weighs in favor of approving the Settlement.

### e.   Amount Offered in Settlement

The Settlement is within the range of reasonableness.  "Based on a damages analysis by

Named Plaintiffs' consultant, if Named Plaintiffs fully prevailed on every one of their remaining claims, damages would have amounted to between $18 and $46 per iPhone." ECF No. 470 at 9. The $25 cash payment per eligible device is comfortably in the middle of this estimated damages range. Although the information initially presented was thin, on December 11, 2020, Named Plaintiffs submitted a Supplemental Brief providing the underlying analysis for their calculation of potential damages. ECF No. 591. Class Counsel's consultant, Dr. Michael A. Williams of Competition Economics, LLC, estimated damages by determining the decline in the resale value of eligible devices compared to what the resale value would have been but for the alleged "throttling" of the devices upon the installation of iOS 10.2.1 and 11.2. *See* ECF No. 552 ¶ 6. Dr. Williams used actual sales data in the secondary market for both the resale value of eligible devices during the relevant period and resale of previous models of iPhones. ECF No. 591 at 1–2. He then performed a "difference-in-difference" regression analysis of the data to compare the resale value of used iPhone 6 devices prior to and after the release of iOS 10.2.1 (January 2017). *Id.* at 2. The regression model controlled for price differences attributed to differences in iPhone models, storage capacity, carrier, condition and months after release. *Id.* Dr. Williams determined that the resale value of eligible devices was 6.2-9.8% lower than expected when compared to decline in value of previous iPhone models, and thus could be attributed to the "throttling" of performance by iOS 10.2.1 and 11.2. ECF No. 591-1 ¶¶ 25–26. Dr. Williams concluded that the range of damages per eligible device was between $12.29 and $18.99. *Id.* ¶ 27.

Class Counsel performed an additional calculation to determine an upper range of estimated damages due to iOS 10.2.1 and 11.2 based on Dr. Williams' regression and the estimated 6-10% of impact. ECF No. 552 ¶ 6. Specifically, Class Counsel calculated the average monthly sales price of all used eligible devices during the relevant period at $460. ECF No. 591 at 2. Class Counsel applied the 6-10% price impact range to the $460 average price, and concluded that the upper range of damages is $27.60-$46.00 per device. *Id.*

A $25 recovery per Approved Claim is in the middle of the upper range, representing 54%

Case No.: 5:18-md-02827-EJD
ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
AWARDS

15

United States District Court
Northern District of California

United States District Court
Northern District of California

of $46 and 137% of $18.  Moreover, because of the likely pro rata increase, the actual payout will exceed $25.  Considering the risks of further litigation and the substantial recovery amount, this factor weighs in favor of approving the Settlement.  *See, e.g., Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (citation omitted); *Roe v. Frito-Lay, Inc.*, 2016 WL 4154850, at *7 (N.D. Cal. Aug. 5, 2016) (noting that "the risks and costs associated with class litigation weigh strongly in favor of settlement" where "Plaintiff would [have been] required to successfully move for class certification under Rule 23, survive summary judgment, and receive a favorable verdict capable of withstanding a potential appeal").

### f.       Experience and Views of Counsel

Moreover, the experience and views of counsel also weigh in favor of approving settlement.  Class Counsel has significant experience with consumer class-actions.  ECF No. 468 at 9 (citing a string of cases prosecuted by Class Counsel, including *Zepeda v. PayPal, Inc.*, 2017 WL 1113293, at *20 (N.D. Cal. Mar. 24, 2017)).  As discussed, the Settlement was reached only after extensive arm's-length negotiations facilitated by Judge Phillips.  Class Counsel also believes the Settlement is fair, adequate and reasonable, taking into account the risks, burdens, and expense of continued litigation.  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) (finding that the experience of counsel in the field and counsel's view that the settlement is fair, adequate, and reasonable weigh in favor of approving the settlement at the pre-certification stage).

### g.       Reaction of Class Members

The Settlement Administrator disseminated 90,119,272 email notices to valid emails and 5,609,281 mail notices.  As of the date Named Plaintiffs first sought final approval, 3,148,999 claims had been submitted, for a response rate to the notice of approximately 3.5%.  As of January 22, 2021, the total number of submitted claims grew to 3,284,985, for a response rate of

Case No.: 5:18-md-02827-EJD
ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
AWARDS

16

1    approximately 3.6%.

2        Angeion received 314 timely requests for exclusion.  ECF No. 549 at 3.  The number of

3    requests for exclusion compared to the number of notices sent is 0.00035%, and the number of

4    requests for exclusion when compared to the number of claims filed is 0.01%.

5        Initially, 75 timely objections (including Apple's opposition to the attorneys' fees

6    requested at ECF No. 522) were filed with the Court in response to the motions for final approval

7    and attorneys' fees .[4]  In response to the renewed motion for final approval, the Court received

8    three objections from four objectors (three of whom filed joint objections), which the Court

9    addresses in detail in Section II.B.5.  *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 589

10   (N.D. Cal. 2005) (The "low number of opt-outs and objections in comparison to class size is

11   typically a factor that supports settlement approval."); *Churchill Vill.*, 361 F.3d at 577.  Further,

12   Class Counsel provided 57 examples of especially positive reactions to the Settlement by class

13   members.  *See* ECF No. 471-1.

14       For the foregoing reasons, the Court finds that both Named Plaintiffs and Class Counsel

15   have adequately represented the class.

16               **4.      There is No Evidence of Collusion Between Class Counsel and Apple**

17       The Ninth Circuit has articulated the following "subtle signs" of collusion of which a court

18   should be "particularly vigilant" when scrutinizing settlements achieved prior to class

19   certification: (1) "when counsel receive a disproportionate distribution of the settlement, or when

20   the class receives no monetary distribution but class counsel are amply rewarded;" (2) "clear

21   sailing" arrangements; and (3) "when the parties arrange for fees not awarded to revert to

22   defendants rather than be added to the class fund."  *In re Bluetooth Headset Prod. Liab. Litig.*, 654

23   F.3d 935, 947 (9th Cir. 2011) (internal quotations and citations omitted).

24       Here, there is no evidence of conflicts of interest nor are there "subtle signs" of collusion.

25   _____

26   [4] The Court previously considered all arguments raised by objectors but did not revisit duplicative
     objections.  Settlement Order at 19 n.5, 20–36.

27   Case No.: 5:18-md-02827-EJD
     ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
28   SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
     AWARDS

United States District Court
Northern District of California

1    *Id.* at 956; ECF No. 470 at 10.  The non-reversionary Settlement was reached only after extensive

2    arm's-length negotiations between experienced counsel, including several in-person mediation

3    sessions and additional negotiations facilitated by Judge Phillips.  That the Settlement was based

4    upon Judge Phillips' proposal demonstrates, in part, non-collusive conduct.  *See, e.g., Ebarle v.*

5    *Lifelock, Inc.*, 2016 WL 234364, at *6 (N.D. Cal. Jan. 20, 2016) (finding that acceptance of a

6    mediator's proposal following mediation sessions "strongly suggests the absence of collusion or

7    bad faith").  Furthermore, Class Counsel did not reach an agreement with Apple regarding the

8    amount of attorney's fees to which they were entitled.  *See In re Hyundai & Kia Fuel Econ. Litig.*,

9    926 F.3d 539, 570 (9th Cir. 2019).  Rather, the attorneys' fees will be provided from the

10   Settlement Fund, indicating that the parties have not negotiated a "clear sailing" arrangement,

11   which "carries the potential of enabling a defendant to pay class counsel excessive fees and costs

12   in exchange for counsel accepting an unfair settlement on behalf of the class."  *Bluetooth*, 654

13   F.3d at 947.  To the contrary, Apple opposed Plaintiffs' initial request for $87,730,000 in

14   attorneys' fees as excessive, requesting a $7.1 million reduction of the requested fees.  *See* Apple

15   Opp'n, ECF No. 522.

16                      **5.      Objections to Final Approval Are Overruled**

17          Objectors Feldman, Jan, and Pantoni ("Feldman Objectors") jointly oppose the parties'

18   renewed motion for final approval of settlement.  *See* Feldman Objectors' Joint Opp'n to Pls.' and

19   Def.'s Joint Renewed Mot. for Final Approval of Class Action Settlement ("Feldman Obj. to Final

20   Approval"), ECF No. 637.  The Feldman Objectors previously objected to final approval of

21   settlement and appealed this Court's orders to the Ninth Circuit.[5]  *See* ECF Nos. 512, 519.  The

22   _____

23   [5] The Court's previous order responded to the 75 objections to the motion for final approval of
     settlement (ECF No. 470), dividing the objections into 7 categories: (1) objections to the amount

24   of compensation; (2) objections to the lawsuit altogether; (3) objections to the attestation
     requirement; (4) objection to the serial number requirement; (5) objections of non-natural persons

25   ("NNPs"); (6) miscellaneous objections; and (7) objection to CPM as Plaintiff's Counsel.  With
     respect to objections to the attestation requirement and objections of NNPs, on appeal the Ninth

26   Circuit held that "[NNPs] received sufficient notice of proposed settlement in satisfaction of both
     Rule 23(b) and due process; [and] the Settlement's requirement of attestation to an injury in order

27   Case No.: 5:18-md-02827-EJD
     ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION

28   SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
     AWARDS

United States District Court
Northern District of California

Court heard from the Feldman Objectors on January 11, 2023.  For the reasons discussed below, the Court OVERRULES each of these objections.

*First*, the Feldman Objectors argue that the Court should not "rubber stamp" approval of the Settlement as allegedly suggested by the parties.  Feldman Obj. to Final Approval at 2.  Class Counsel and Apple jointly responds that the Feldman Objectors mischaracterize their brief.  Pls.' and Def.'s Reply Brief in Support of Final Approval of Class Action Settlement ("Reply ISO Final Approval"), ECF No. 641 at 1.  Rather than advocating for a rubber stamp of approval, the parties' brief asks the Court to approve settlement based on its previous analysis, stating: "[T]his Court's approval of the settlement comports with heightened scrutiny: It conducted a 'probing analysis' of the settlement, carefully analyzed each of the Ninth Circuit's settlement approval factors, provided reasoned responses to each objection, and probed for subtle signs of collusion and found none." *Id.* at 2; *see also* 1/11/23 Hr'g Tr. 8:21–23 ("[W]e know the Court did a thorough analysis.  We're not suggesting that the court should not do a thorough analysis again.  We're not asking for a rubber stamp . . . .").  The Court acknowledges the Feldman Objectors' concern, and its approval of the Settlement is predicated on its thorough review of the Settlement.

*Second*, the Feldman Objectors assert that "the Settlement presents two main issues: (1) Class member standing, which implicates due process and Rule 23(a) and (b) concerns; and (2) equitable treatment of Class members, which implicates Rule 23(e) concerns."  Feldman Obj. to Final Approval at 3.  The Feldman Objectors specifically ask the Court to "recertify" the class and require either removal of the attestation or the narrowing of the class definition to only those who can attest to injury.  *Id.* 6–10.  This objection is an iteration of what the Feldman Objectors have already raised on appeal.  The Feldman Objectors objected to the attestation requirement based on

---

to obtain recovery was reasonable."  *See* Settlement Order at 20–36.

As to the remaining overruled objections, the Ninth Circuit did not disturb the Court's findings, stating that "[t]he district court properly resolved most of the objections at issue on appeal" with the exception of those identified in its opinion.  *Apple*, 50 F.4th at 776.  Accordingly, the Court does not revisit them on remand.

Case No.: 5:18-md-02827-EJD
ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
AWARDS

United States District Court
Northern District of California

1   Article III standing and under Fed. R. Civ. P. 23(e)(2)(A), (C), (D), which the Ninth Circuit

2   unequivocally rejected.  *Apple*, 50 F.4th at 781.  The Ninth Circuit noted that: "[M]ost of [the

3   Feldman Objectors'] arguments boil down to the same core complaint: The Settlement

4   extinguishes the claims of 'all former or current U.S. owners' of certain devices who downloaded

5   iOS software before Apple disclosed potential defects but limits recovery to only the subset of

6   owners who can attest that 'they experienced' the alleged defects after updating their iPhone."

7   *Apple*, 50 F.4th at 781.  On remand, the Feldman Objectors attempt to relitigate the issue of

8   standing and the attestation requirement, arguing that "either all class members suffered harm and

9   should be compensated, or the Class must be narrowed to only those able to attest to injury" since

10  the release of claims includes all iPhones that were potentially impacted regardless of whether that

11  Settlement Class Member could attest to injury.  Feldman Obj. to Final Approval at 3–4.

12          In concluding that the attestation requirement did not render the settlement unfair under

13  Rule 23(e)(2)(A), (C), (D), the Ninth Circuit reasoned that "the parties agreed to the attestation

14  requirement as a compromise" and that "[t]he settlement allowed Apple to limit its exposure while

15  ensuring that compensation was available to every class member who suffered a compensable

16  injury."  *Id.*  The Ninth Circuit found the allegations sufficient to establish standing, noting that

17  "[a]t the pleading stage, general factual allegations of injury resulting from defendant's conduct

18  may suffice, . . . . [a]t the time the parties settled, prior to class certification or summary judgment,

19  plaintiffs alleged that *all* putative class members experienced throttling from Apple's allegedly

20  unlawful intrusion into their phones."  *Id.* at 782 (emphasis added).  It explicitly distinguished

21  *TransUnion*—relied on by the Feldman Objectors—from the present case, stating "[h]ad the

22  parties brought the case to trial, as in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2202 (2021),

23  plaintiffs' allegation of classwide injury would have been either proven or disproven."  *Apple*, 50

24  F.4th at 782.  Accordingly, as these objections were raised and addressed on appeal, the Court

27  Case No.: 5:18-md-02827-EJD
28  ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV. AWARDS

20

1   cannot and will not reconsider an issue decided by the panel on remand.[6]  *United States v.*

2   *Kellington*, 217 F.3d 1084, 1093 (9th Cir. 2000) (quoting *In re Sanford Fork & Tool Co.*, 160 U.S.

3   247, 255 (1895); *see also Hall v. City of L.A.*, 697 F.3d 1059, 1067 (9th Cir. 2012) ("The law of

4   the case doctrine . . . precludes a court from reconsidering an issue decided previously . . . by a

5   higher court in the identical case.").

### 6.      Certification is Granted and the Settlement is Approved

7              After reviewing all required factors under the correct standard of heightened scrutiny, the

8   Court is satisfied that the Settlement was not the result of collusion between the parties and finds

9   the Settlement Agreement to be fair, reasonable, and adequate, and certification of the Settlement

10  Class as defined therein to be proper.

### III.    MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE AWARDS

12             Attorneys' fees and costs may be awarded in a certified class action under Federal Rule of

13  Civil Procedure 23(h).  Such fees must be found "fundamentally fair, adequate, and reasonable" in

14  order to be approved.  Fed. R. Civ. P. 23(e); *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir.

15  2003).  To "avoid abdicating its responsibility to review the agreement for the protection of the

16  class, a district court must carefully assess the reasonableness of a fee amount spelled out in a

17  class action settlement agreement."  *Id.* at 963.  "[T]he members of the class retain an interest in

18  assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high

19  fees are a likely indicator that the class has obtained less monetary or injunctive relief than they

20  might otherwise."  *Id.* at 964.

21             Here, Named Plaintiffs seek the Court's previously awarded $80.6 million in attorneys'

---

[6] The Feldman Objectors do not raise any "subsequent factual discoveries or changes in the law" that would enable the Court to revisit the Ninth Circuit's rulings. *United States v. Thongsouk Theng Lattanaphom*, 159 F. Supp. 3d 1157, 1160 (E.D. Cal. 2016) (quoting *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 796 (7th Cir. 2005)); *see* 1/11/23 Hr'g Tr. 17:12–13 ("[W]e believe that the Ninth Circuit got this wrong."); 24:3–7 ("[W]e believe this panel made a fundamental error . . . ."); 26:25–27:1 ("[Y]ou asked am I bound by the panel's – and in our opinion it's dicta, your Honor.") .

1  fees and $995,244.93 in unreimbursed expenses.  ECF No. 632.  Each Named Plaintiff who was

2  not deposed will receive $1,500 and each Named Plaintiff who was deposed will receive $3,500 as

3  Class Representative Service Awards.  Stipulation of Settlement at § 8.4.  The residual, or the

4  "difference between the value of the Approved Claims and the Minimum Settlement Amount,"

5  will pay the costs of settlement notice and administration up to $12,750,000, plus any postage

6  expense incurred after the $12,750,000 cap has been reached.  *Id.* §§ 1.27, 5.3.1.

7      **A.**    **Attorneys' Fees**

8      Named Plaintiffs request $80.6 million in attorneys' fees.  ECF No. 632.  Defendants do

9  not oppose the renewed fee request.[7]

10      The Court analyzes an attorneys' fee request based on either the "lodestar" method or a

11  percentage of the total settlement fund made available to the class, including costs, fees, and

12  injunctive relief.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  The Ninth

13  Circuit encourages courts to use another method as a cross-check in order to avoid a "mechanical

14  or formulaic approach that results in an unreasonable reward."  *Bluetooth*, 654 F.3d at 944 (citing

15  *Vizcaino*, 290 F.3d at 1050–51).

16      Under the lodestar approach, a court multiplies the number of hours reasonably expended

17  by the reasonable hourly rate.  *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court

18  calculates the lodestar figure by multiplying the number of hours reasonably expended on a case

19

20

21  [7] Apple opposed Class Counsel's previously requested fee award of $87,730,000, arguing that the

22  parties negotiated a claims-made settlement and that there is no common fund because the
Settlement is not mathematically ascertainable until after the claims process has been completed.
*See* Apple Opp'n.  This Court found that Apple lacks standing to object to the proposed fee

23  awards as "a settling defendant in a class action [that] has no interest in the amount of attorney
fees awarded when the fees are to be paid from the class recovery rather than the defendant's

24  coffers."  *Tennille v. Western Union Co.*, 809 F.3d 555, 559 (10th Cir. 2015) (citing *Boeing Co. v.
Van Gemert*, 444 U.S. 472, 481, n.7 (1980)).  Nevertheless, the Court addressed Apple's

25  arguments, finding that the Settlement is more appropriately characterized as a common fund
because the fee request is based on the fixed, certain, and non-reversionary Minimum Class

26  Settlement Amount of $310 million, rather than the potential but uncertain $500 million.  The
Ninth Circuit did not disturb the Court's findings as to the selection of the percentage-of-the-fund
method, and the Court does not revisit it on remand.

27  Case No.: 5:18-md-02827-EJD

28  ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
AWARDS

1    by a reasonable hourly rate.  A reasonable hourly rate is ordinarily the 'prevailing market rate [] in

2    the relevant community.'").  Under the percentage-of-the-fund method, courts in the Ninth Circuit

3    "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing

4    adequate explanation in the record of any 'special circumstances' justifying a departure."

5    *Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d

6    1301, 1311 (9th Cir. 1990)).

7         The Settlement Agreement does not contemplate the attorneys' fee award.  Instead, Apple

8    reserved the right to object to and oppose Class Counsel's requests for Attorneys' Fees and

9    Expenses, which it exercised in opposing Class Counsel's original fee request.  *See* Stipulation of

10   Settlement § 8.2; *see also* Apple Opp'n.  Class Counsel previously sought an award of

11   $87,730,000 in attorneys' fees that constituted 28.3% of the Minimum Class Settlement Fund

12   ($310,000,000).  In their renewed motion, Class Counsel seeks an award of $80.6 million in

13   attorneys' fees constituting 26% of the Minimum Class Settlement Fund—the amount awarded by

14   the Court in the previous fee award.  Using both the percentage-of-the-fund and the lodestar

15   methods as a cross-check, the Court finds an award of $80.6 million in attorneys' fees to be

16   reasonable.

17        Here, the Settlement provides for a non-reversionary minimum lump-sum of $310 million.

18   Thus, the Settlement has the characteristics of a common fund insofar as the $310 million is fixed,

19   certain, and non-reversionary.  *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *17 (N.D. Cal. Feb.

20   11, 2016) ("Because this case involves a common settlement fund with an easily quantifiable

21   benefit to the Class, the Court will primarily determine attorneys' fees using the percentage

22   method . . ."); *see also Thomas v. MagnaChip Semiconductor Corp.*, 2018 WL 2234598, at *3

23   (N.D. Cal. May 15, 2018).  Further, "[t]he use of the percentage-of-the-fund method in common-

24   fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits

25   the Court to focus on showing that a fund conferring benefits on a class was created through the

26   efforts of plaintiffs' counsel."  *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, 2013 WL

27   Case No.: 5:18-md-02827-EJD

ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
28   AWARDS

23

United States District Court
Northern District of California

7985367, at *1 (C.D. Cal. Dec. 23, 2013).  Accordingly, the Court applies the percentage-of-the-fund method.

### 1.        Departure from the 25% Benchmark

In applying the percentage-of-the-fund method, the Ninth Circuit has established 25% as a "benchmark" percentage, which may be adjusted depending on the circumstances of a case. *Vizcaino*, 290 F.3d at 1047; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). "Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Id.*  The benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers*, 904 F.2d at 1311.  When using the percentage-of-recovery method, courts consider a number of factors, including whether class counsel "'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (*e.g.*, cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015).  "[T]he most critical factor [in determining appropriate attorney's fee awards] is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

While Class Counsel seek only 26% of the percentage-of-the-fund on remand, the Court clarifies its reasoning in denying Named Plaintiffs' previous request of 28.3% of the Settlement Fund.[8]  The Ninth Circuit provided directions on remand relating to any future award of attorneys' fees, mandating that the Court more thoroughly explain how the *Vizcaino* factors support an upward adjustment from 25% benchmark: "If, on remand, the district court again awards

---

[8] Because the Ninth Circuit did not disturb the Court's findings with respect to objections based on the *Vizcaino* factors and/or awarding a percentage of the recovery fund above the benchmark, the Court addresses prior objections only to the extent necessary in this order.

1    attorney's fees and uses the percentage-of-recovery method, it should more clearly explain why a

2    deviation from the benchmark is or isn't appropriate before proceeding to a lodestar cross-check."

3    *Apple*, 50 F.4th at 784.  The Court restates its prior findings with respect to these factors and

4    provides additional clarification where warranted.

5                                            a.    *Vizcaino* Factors

6                                            i.    **The Results Achieved Support an Upward Adjustment**

7            The $310 million Settlement floor, with a maximum Settlement amount of $500 million, is

8    a substantial result.  According to Named Plaintiffs' damages calculations, the anticipated

9    damages if Named Plaintiffs had fully prevailed on every one of their claims would have

10   amounted to between $18 to $46 per device.  ECF No. 468 at 7.  A $25 per device recovery

11   "represents approximately between 54% and 137% recovery" per device.  *Id.*  Named Plaintiffs

12   argued that their efforts and the result achieved support an upward adjustment of 3.3% to the

13   benchmark.  To support their request for an upward adjustment of the benchmark to 28.3%,

14   Named Plaintiffs relied on *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *4 (N.D. Cal. July

15   11, 2014).  In *Larsen*, the court concluded that an award of attorneys' fees equal to 28% of the

16   settlement fund was warranted because, among other things, the amount offered in settlement was

17   "50% of the recovery plaintiffs' could have received had the case gone to trial."  *Id.* at *4.  Named

18   Plaintiffs relied on *Larsen* to support their requested fee award because the results achieved in this

19   case, *i.e.*, a cash payment equal to between 54% and 137% of the estimated damages, is

20   comparable to the 50% of estimated damages achieved in *Larsen*.  ECF No. 468 at 7.

21           In determining whether this factor supported an upward adjustment from the benchmark—

22   and if so, to what extent—the Court distinguished *Larsen*'s results from this action.  The Court

23   found that the Settlement in this case, while substantial in amount, does not provide comparable

24   comprehensive benefits to the Class as the results achieved in *Larsen*.  The settlement in *Larsen*

25   included additional forms of relief: class members with proof of purchase received a full

26   reimbursement for each product purchased during the class period; each class member without a

27   Case No.: 5:18-md-02827-EJD
     ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
28   SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
     AWARDS

United States District Court
Northern District of California

United States District Court
Northern District of California

1  proof of purchase was "remunerated up to 10 products with a maximum claim range from $27.00

2  to $39.90"; and any amounts left in the fund were distributed in the form of products to class

3  members at Trader Joe's retail locations throughout the United States.  *Id.* at *4.  The settlement in

4  *Larsen* also provided equitable relief.  In contrast, benefits to the Class in this case are limited,

5  albeit fairly and reasonably, to only claimants able to provide a serial number (or other

6  identification) for their devices and to provide the required attestation.

7  Based on the claims information from the Claims Administrator, each claimant is likely to

8  receive more than $25 per device, and therefore is likely to receive more than 54% of the

9  estimated damages per device.  While this recovery is significant and facially comparable to the

10  result in *Larsen*, this increase in recovery may be a result of the response rate; it was not

11  guaranteed to the Class.[9]  Based on these differences, the Court concluded that the results achieved

12  did not support Named Plaintiffs' initial request for 28.3% of the Settlement Fund.  Nonetheless,

13  the results achieved are an excellent result for the size of the class given the harm, and thus weigh

14  in favor of a slight upward adjustment from the benchmark.

15              **ii.     The Risks of Litigation Supports an Upward Adjustment**

16  Next, the Court found that the risk of the litigation was significant in this case.  Named

17  Plaintiffs' original complaint was expansive.  Apple vigorously challenged the sufficiency of the

18  complaints and succeeded in substantially narrowing the scope of case.  After repeated challenges

19  to the pleadings, only claims for trespass to chattels and claims under the CDAFA and CFAA

20  survived.  If the litigation continued beyond the pleading stage, Named Plaintiffs faced risks

21  attendant to prosecuting a case with relatively unique subject matter involving application of

22  statutory computer intrusion and common law trespass to chattels to iPhone devices.  There was

23

24  [9] Pursuant to the terms of the Settlement, "if the aggregate value of the valid claims submitted falls
below $310 million (which is now very likely), Apple will increase each claimant's payment on a

25  pro rata basis to ensure a minimum settlement amount of $310 million, after deducting the costs of
notice and settlement administration and any award of attorneys' fees, costs, and service awards."

26  Def. Apple Inc.'s Opp'n to Pls.' Mot. for Att'ys' Fees, Expenses, and Serv. Awards ("Apple
Opp'n") at 6.

27  Case No.: 5:18-md-02827-EJD
ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION

28  SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
AWARDS

United States District Court
Northern District of California

1  also a serious risk that a class would not be certified because the parties dispute whether the iOS

2  systems at issue impacted all users, and even if it did, whether users were impacted in the same

3  way.[10]  Without a settlement, Named Plaintiffs would also have faced risks at the summary

4  judgment stage, at trial, and potentially on appeal.  *See Bower v. Cycle Gear, Inc.*, 2016 WL

5  4439875, at *7 (N.D. Cal. Aug. 23, 2016) (noting risks of litigation were substantial); *see also*

6  *Destefano*, 2016 WL 537946, at *17 (noting "substantial" risk of "obtaining [and maintaining]

7  class certification").  If litigation had continued, the Settlement Class also faced the prospect of

8  receiving little to no recovery whatsoever.

9       Apple explained the reasons it was willing to settle.  Specifically, Apple stated: "While

10  Apple remains confident that it would have prevailed on its defense of all of Plaintiffs' claims if

11  this litigation had continued, Apple agreed to resolve this case to avoid the expenses, uncertainties,

12  delays and other risks inherent in continued litigation of the MDL."  ECF No. 555 at 7.  Not one of

13  Apple's stated reasons suggests Named Plaintiffs' risks were likely low if the litigation had

14  continued.  Based on the foregoing, this factor favors an upward adjustment to the benchmark.

15       ### iii.    Skill and Quality of the Work Supports an Upward Adjustment

16

17       Class Counsel's skill and the quality of their work also support a fee award above the

18  benchmark.  The Settlement Class benefitted from Class Counsel's significant expertise in the

19  prosecution of consumer class action litigation.  That the case withstood two motions to dismiss is

20  "some testament to [Class] Counsel's skill."  *In re Nexus 6P Products Liab. Litig.*, 2019 WL

21  6622842, at *12 (N.D. Cal. Nov. 12, 2019) (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d

22  1036, 1047 (N.D. Cal. 2008)).  Further, during the three years the case was pending before

23  Settlement, Class Counsel diligently developed the facts, propounded discovery, took depositions,

24  and engaged a damages consultant, all of which was of great benefit to the Class.  *See Wallace v.*

25

26  [10] According to Apple, not all devices were used in a way that would have activated the performance management feature. Apple also contends that even if the feature was activated, users may not have noticed any differences in their device performance.

27  Case No.: 5:18-md-02827-EJD
ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION

28  SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV. AWARDS

1    *Countrywide Home Loans, Inc.*, 2015 WL 13284517, at *9 (C.D. Cal. Apr. 17, 2015) (noting

2    factors reflecting counsel's skill, such as developing the facts and legal claims, conducting

3    discovery, reviewing documents, retaining experts, motion practice, and negotiating and drafting

4    the settlement).  The high quality of Class Counsel's representation is also reflected in the

5    favorable settlement achieved relatively early in the life of the case.  The Settlement in this case

6    "was not reached lightly."  *Moreyra v. Fresenius Med. Care Holdings, Inc.*, 2013 WL 12248139,

7    at *3 (C.D. Cal. Aug. 7, 2013).

8        Courts also consider "the quality of opposing counsel as a measure of the skill required to

9    litigate the case successfully."  *In re American Apparel, Inc. S'holder Litig.*, 2014 WL 10212865,

10   at *22 (C.D. Cal. 2014); *see also Wing v. Asarco*, 114 F.3d 986, 989 (9th Cir. 1997) (noting the

11   district court's evaluation of class counsel's "first-rate job").  Here, Class Counsel faced a

12   company with significant financial and legal resources.  Apple was represented in this case by two

13   national, highly respected law firms, Gibson, Dunn & Crutcher LLP and Covington and Burling

14   LLP, which weighs in favor of a fee award.  *In re Heritage Bond Litig.*, 2005 WL 1594403, at *20

15   (C.D. Cal. June 10, 2005) (noting that quality of opposing counsel is important in evaluating the

16   quality of plaintiff's counsel's work, and stating "[t]here is also no dispute that the plaintiffs in this

17   litigation were opposed by highly skilled and respected counsel with well-deserved local and

18   nationwide reputations for vigorous advocacy in the defense of their clients.").

19                    **iv.    The Contingent Nature of the Representation Supports
                               an Upward Adjustment**

20       The contingent nature of representation in this case—in combination with the

21   aforementioned factors—supports an award of attorneys' fees above the benchmark.  Class

22   Counsel took the matter on a contingency basis and advanced all necessary professional time and

23   expenses for approximately three years.  ECF No. 468 at 9. "When counsel takes cases on a

24   contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation

25   justifies a significant fee award." *Bellinghausen*, 306 F.R.D. at 261 (applying 25% benchmark).

26

27   Case No.: 5:18-md-02827-EJD
     ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
28   SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
     AWARDS

United States District Court
Northern District of California

1    "It is an established practice in the private legal market to reward attorneys for taking the risk of

2    non-payment by paying them a premium over their normal hourly rates for winning contingency

3    cases." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

4          Courts differ on the adjustment to the benchmark that is warranted, if any, based on the

5    contingent nature of representation. *See, e.g.*, *Luna v. Universal City Studios, LLC*, 2016 WL

6    10646310, at *7 (C.D. Cal. Sept. 13, 2016) (awarding attorneys' fees in the amount of 29.6% of

7    $1.8 million settlement in light of the results achieved, the risk of litigation, the contingent nature

8    of the fee, and the financial burden carried by class counsel); *Nexus 6P*, 2019 WL 6622842, at *13

9    (approving award of attorneys' fees in the amount of 30% of $9,750,000 common fund);

10   *Omnivision Techs.*, 559 F. Supp. 2d at 1047 (awarding attorneys' fees in the amount of 28% of

11   $13.75 million settlement); *Ching v. Siemens Indus. Inc.*, 2014 WL 2926210, at *8 (N.D. Cal. June

12   27, 2014) (awarding attorneys' fees in the amount of 30% of $425,000 settlement).  Here, Named

13   Plaintiffs' request for attorneys' fees equal to 28.3% of the $310,000,000 non-reversionary portion

14   of the Settlement is within the range of the cases cited above.  Nevertheless, the Court finds that,

15   while a slight upward adjustment is appropriate in light of the *Vizcaino* factors, an upward

16   adjustment of the benchmark to 28.3% is not warranted.

17                    **v.    Awards in Similar Cases Weigh Neutral**

18          That this case resolved with a "megafund" settlement is an important factor in assessing

19   the reasonableness of attorneys' fees.  Named Plaintiffs assert that an extraordinarily large

20   settlement warrants an award of attorneys' fees above the 25% benchmark, citing numerous cases

21   awarding between 27% to 36% of settlements ranging from $105 million to $1.075 billion.  ECF

22   No. 468 at 11–12.  Although the cases cited by Named Plaintiffs provide some guidance, the cases

23   cited are arguably "outlier megafund settlements" and most are from outside this Circuit.

24          The Court found that the better approach is to look to empirical research on megafund

25   cases.  *In Alexander v. FedEx Ground Package Sys.*, Judge Chen took this approach.  2016 WL

26   3351017, at *2 (N.D. Cal. June 15, 2016).  Judge Chen began by observing that fee awards in

27   Case No.: 5:18-md-02827-EJD
     ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
28   SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
     AWARDS

United States District Court
Northern District of California

1   megafund cases present difficult questions because application of a benchmark or standard

2   percentage may result in a fee that is unreasonably large relative to the benefits conferred.  *Id.* at

3   *1.  This is because in many cases, the size of the settlement is merely a factor of the size of the

4   class and has no direct relationship to the efforts of counsel.  *Id.* (quoting *In re Prudential Ins. Co.*

5   *Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 339 (3d Cir. 1998).  Next, Judge Chen

6   found that "[a]lthough a percentage award in a megafund case can be 25% or even as high as 30-

7   40%, typically the percentage award in such a case is substantially less than the 25% benchmark

8   applicable to typical class settlements in this Circuit."  *Id.*  Judge Chen also cited to Judge Koh's

9   finding that there is "persuasive evidence that the median attorney's fee award in a sample of 68

10  'megafund' class action settlements over a 16-year period was 10.2%."  *Id.* (quoting *In re High-*

11  *Tech Emp. Antitrust Litig.*, 2015 WL 5158730, at *13 (N.D. Cal. Sept. 2, 2015)).  Judge Koh

12  relied on an Eisenberg & Miller study spanning sixteen (16) years of 68 "megafund" cases that

13  found the median attorneys' fees award in megafund cases was 10.2% of the fund and the mean

14  was 12%.  *In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5158730, at *13.  Notably, Judge Koh

15  relied on the Eisenberg & Miller study over another study, the Fitzpatrick study, because the

16  Fitzpatrick study spanned only two years (2006–2007) and eight class actions.  *Id.* at *13 (citing

17  Theodore Eisenberg & Geoffrey P. Miller, Attorney Fees and Expenses in Class Action

18  Settlements: 1993–2008, 7 J. EMPIRICAL LEGAL STUD. 248 (2010); Brian T. Fitzpatrick, An

19  Empirical Study of Class Action Settlements and Their Fee Awards, 7 J. EMPIRICAL L. STUD.

20  811 (2010) (finding a median percentage of 19.5% and a mean percentage of 17.8% for

21  settlements ranging between $250 million and $500 million.)).  In *Alexander*, Judge Chen

22  ultimately applied a multiplier of 3 to the lodestar to arrive at an attorneys' fees award

23  representing 16.4% of the $226,500,000 common fund.  *Alexander*, 2016 WL 3351017, at *3.

24          In light of case law supporting both upward and downward departures from the 25%

25  benchmark, the Court finds that this factor neither weighs for nor against Named Plaintiffs.

26

27  Case No.: 5:18-md-02827-EJD
    ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
28  SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
    AWARDS

United States District Court
Northern District of California

1

### vi. The *Vizcaino* Factors Weigh in Favor of an Upward Adjustment

2       In sum, four of the five *Vizcaino* factors support an upward adjustment from the 25%

3  benchmark.  In weighing the *Vizcaino* factors, however, the Court found that they did *not* support

4  an upward adjustment to 28.3% as the Named Plaintiff's had initially requested.

5       Class Counsel obtained a significant benefit for the Class, whether measured by the total

6  recovery of $310 million or by reference to the estimated damages Named Plaintiffs could have

7  recovered if they had fully prevailed on every one of their claims at trial.  Moreover, a Settlement

8  of $310 million for computer intrusion and trespass to chattels claims was exceptional at the time

9  of Settlement.  Class Counsel provided diligent and highly skilled representation of the Class,

10 litigating two rounds of motions to dismiss and many discovery disputes against equally diligent

11 and highly skilled defense counsel.  While Class Counsel bore the risk and expense throughout the

12 case and at the end achieved a substantial result for their clients, in the final analysis, the Court

13 found that no single factor or combination of factors supports the requested 28.3%.  The requested

14 28.3% exceeds the mean and median percentages reported in both the Eisenberg & Miller study

15 and the Fitzpatrick study.

16      Accordingly, the Court finds that a modest 1% upward departure from the benchmark, or

17 26% of the Settlement Fund, is more appropriate.  *See Bluetooth*, 654 F.3d at 942 ("where

18 awarding 25% of a 'megafund' would yield windfall profits for class counsel in light of the hours

19 spent on the case, courts should adjust the benchmark percentage.").

20              ### 2.   Lodestar Cross-Check

21      "As a final check on the reasonableness of requested attorneys' fees, courts often compare

22 the amount counsel would receive under the percentage-of-recovery method with the amount

23 counsel would have received under the lodestar method."  *In re Nexus 6P Prods. Liab. Litig.*, 2019

24 WL 6622842, at *13; *see also Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which

25 measures the lawyers' investment of time in the litigation, provides a check on the reasonableness

26 of the percentage award.").  The aim is to "do rough justice, not to achieve auditing perfection."

27 Case No.: 5:18-md-02827-EJD
ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
28 SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
AWARDS

United States District Court
Northern District of California

1   *Id.*; *see also In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018)

2   (the cross-check does not require "mathematical precision nor bean-counting") (citation omitted).

3       Class Counsel provided an extensive declaration as to their work and expenses, their

4   billing process, and more.  Declaration of Mark J. Dearman ("Dearman Decl."), ECF No. 469.  In

5   response to a variety of objections, Class Counsel submitted a supplemental declaration from Mr.

6   Dearman.  Suppl. Decl. of Mark J. Dearman, ECF No. 553.  Originally, Class Counsel calculated

7   their lodestar (combined with JCCP Counsel) to be $36,408,575.05.  ECF No. 468 at 15

8   (combining Class Counsel's lodestar of $32,415,420.50, (Dearman Decl. ¶ 10), with JCCP

9   Counsel's lodestar of $3,993,154.55, (Decl. of Andrew J. Brown and Thomas J. Brandi in Supp. of

10  Mot. for Settlement ("Decl. of JCCP Counsel") ¶ 42, ECF No. 471-2).  Mr. Dearman's

11  supplemental declaration includes "summaries, by law firm, that reflect each timekeeper's title,

12  billing rate, and total lodestar broken down by Court approved activity code," as well as

13  summaries "reflecting the total hours and total lodestar for all MDL Counsel broken down by

14  Court-approved activity code."  Suppl. Decl. of Mark J. Dearman ¶¶ 3–4.  Mr. Dearman represents

15  that only two timekeepers were contract attorneys and not firm employees, and their total lodestar

16  is $179,745.00. *Id.* ¶ 4.  After excluding all contract attorney time and capping all document

17  review at $350/hour regardless of the individual attorney's billing rate, Mr. Dearman arrived at a

18  total revised lodestar of $36,103,148.05.[11]  *Id.* ¶ 5 and Decl. of JCCP Counsel at ¶ 42.  This

19  revised lodestar takes into consideration the various objections that were previously submitted to

20  the Court.

21      The Court reviewed the underlying records and is satisfied that the revised lodestar is

22  supported.  Class Counsel applied their customary professional rates.  Joint Decl. of Joseph W.

23  Cotchett and Laurence D. King In Support of Motion ¶ 66, ECF No. 471.  Those rates are

[11] At the time of drafting the order, time spent between July 31, 2020 and the present, including time spent working on the settlement approval process, class notice, claims submissions, and responding to class inquiries, has not been included. *Id.* ¶ 5

Case No.: 5:18-md-02827-EJD
ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV. AWARDS
32

1   consistent with rates that have been awarded in this District.  *See, e.g.*, *Dickey v. Advanced Micro*

2   *Devices, Inc.*, 2020 WL 870928, at *8 (N.D. Cal. Feb. 21, 2020) (finding rates between $275 and

3   $1,000 for attorneys reasonable); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *2 (N.D.

4   Cal. Sept. 20, 2018) (finding rates between $300 and $1,050 for attorneys reasonable).  Further,

5   the Court finds that the 68,731 hours expended by Class Counsel (Joint Decl. ¶ 65) was reasonable

6   and necessary, taking into consideration the amount of substantive litigation activity.

7          Further, the Court acknowledges that Class Counsel in this case are among the very best in

8   their practice area.  They are highly regarded in the Northern District and have earned and enjoy a

9   reputation for zealously representing their clients in difficult and complex cases.  The leadership

10  team exceeded the efficiencies in costs, efficiencies in communications, and efficiencies in the

11  litigation that the Court expected.  Class Counsel's strategic and efficient lawyering in the instant

12  action encouraged a just and efficient determination of this litigation.  The results achieved in this

13  case are laudable.

14         Class Counsel's initial fee request of $87,730,000 represented a multiplier of 2.43 based on

15  a lodestar of $36,103,148.05.  Alternatively, $80,600,000 in attorneys' fees (26%-of-the-fund)

16  with the adjusted lodestar of $36,103,148.05 yields a lodestar multiplier of 2.232.  "Multipliers of

17  1 to 4 are commonly found to be appropriate in common fund cases."  *Aboudi v. T-Mobile USA,*

18  *Inc.*, 2015 WL 4923602, at *7 (S.D. Cal. Aug. 18, 2015) (citing *Vizcaino*, 290 F.3d at 1051 n.6).

19                      **a.       Inclusion of JCCP Work in the Lodestar Calculation**

20         Class Counsel included 9,679 hours of JCCP time in the lodestar presented in its original

21  fee motion.  On appeal, the Ninth Circuit noted that "the district court's explanation for

22  considering JCCP-related work conflicted with the court's overall rationale for its fee award."

23  *Apple*, 50 F.4th at 783–84.  The Court had previously found that a "2.43 multiplier is high" when

24  analyzing Class Counsel's original unadjusted fee request of $87,730,000, but if the JCCP time is

25  excluded, the lodestar multiplier increases to 2.51.  *Id.* at 785.  The Court found that an award

26  exceeding a 2.232 multiplier would result in "windfall profits for class counsel in light of the

27  Case No.: 5:18-md-02827-EJD

28  ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
    SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
    AWARDS

1    hours spent on the case." *Bluetooth*, 654 F.3d at 942.  The order subsequently stated that "JCCP

2    Counsel's hours does not have any bearing on the Court's percentage-of-the-fund calculation,"

3    noting that "[e]ven if JCCP Counsel's roughly $4 million in attorneys' fees are excluded from the

4    lodestar, the lodestar would decrease to $32,103,148.05 and this adjusted lodestar would have an

5    insignificant impact on the multiplier."  In light of these conflicting findings, the Ninth Circuit

6    noted that the Court should reconsider whether the JCCP time should be included in the lodestar

7    without "express[ing] [] [an] opinion as to whether the inclusion of JCCP-related work was

8    reasonable." *Apple*, 50 F.4th at 783.

9              The Court finds ample evidence in the record that JCCP Counsel contributed to this action

10   to the benefit of the class such that their time is properly included in the lodestar.  Class Counsel

11   has repeatedly emphasized JCCP Counsel's significant assistance with document review and

12   deposition examination of Apple witnesses to maximize efficiency.  *See, e.g.*, Renewed Mot. for

13   Fees & Costs at 8; Pls. Reply in Support of Renewed Mot. for Fees & Costs ("Reply") at 4–5,

14   ECF No. 642 ("JCCP counsel assisted in, among other ways, the coordinated review of documents

15   and in the preparation and taking of joint depositions, as well as in pursuing potential additional

16   claims that were included in the Stipulation . . . ."); 1/11/23 Hr'g Tr. 47:7–20.  At least one other

17   court in this district included JCCP time in calculating the lodestar under similar facts where JCCP

18   counsel "filed a consolidated complaint [asserting overlapping causes of action], opposed a motion

19   to stay, opposed a demurrer, and filed a motion for class certification. . . . [and] coordinated

20   discovery across the JCCP Case and MDL Case, including through shared depositions and

21   document production." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-

22   LHK, 2020 WL 4212811, at *28 (N.D. Cal. July 22, 2020) (finding that Class Counsel in the

23   JCCP Case benefitted from the work of Class Counsel in the MDL Case), *aff'd*, No. 20-16633,

24   2022 WL 2304236 (9th Cir. June 27, 2022).  Similarly, during the course of this litigation, JCCP

25   Counsel reportedly:

26                   (i) conducted a wide-ranging investigation into the JCCP Action
                     Class's claims; (ii) filed three comprehensive complaints; (iii)

27   Case No.: 5:18-md-02827-EJD
     ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
28   SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
     AWARDS

United States District Court
Northern District of California

1

2

3

> successfully opposed Defendant's demurrers as to certain theories of liability, as well as three separate motions to stay the proceedings (iv) engaged in a comprehensive discovery program, including 10 depositions and reviewing more than 7 million pages of documents; and (v) coordinating with counsel for all parties among the JCCP Action and this MDL action.

4      Decl. of JCCP Counsel ¶ 8.

5            Class Counsel further contends "resolution of the JCCP action was a material term in the

6      global settlement."  Renewed Mot. for Fees & Costs at 9; *see also* Reply at 4–5.  "[T]he

7      Stipulation was designed to be a global resolution of the MDL Action and the JCCP action.  The

8      consideration to be paid as a result of the Settlement . . . was designed to include resolution of

9      theories and claims that were still pending in the JCCP action."  Reply at 4.  At the hearing, Class

10     Counsel explained that during the rounds of motions to dismiss, this Court dismissed multiple

11     claims with leave to amend which were ultimately not included in the SCAC, but the same claims

12     were alive in the state case at the time of Settlement.  1/11/23 Hr'g Tr. 46:9–17.  Class Counsel

13     asserts that JCCP Counsel's joint prosecution of the state action thus directly benefitted class

14     members because the global settlement was intended to "resolve[] everything," including claims

15     brought in state court.  1/11/23 Hr'g Tr. 46:18–47:3.

16           The Court therefore agrees with Class Counsel that JCCP Counsel directly benefited the

17     Class and inclusion of JCCP Counsel's hours in the lodestar is appropriate.

18                           **b.      The Lodestar Cross-Check Supports 26%-of-the-Fund**

19           For the foregoing reasons, the Court finds that the totality of the factors supports approval

20     of a lodestar multiplier of 2.232.

21           **B.      Costs Award**

22           Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses.  Fed. R.

23     Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may

24     recover reasonable expenses that would typically be billed to paying clients in non-contingency

25     matters).  Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by

26     law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  In this case, Class Counsel has

27     Case No.: 5:18-md-02827-EJD
       ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
28     SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
       AWARDS

United States District Court
Northern District of California

1   substantiated $995,244.93 in unreimbursed litigation expenses, including costs advanced in

2   connection with consultants, legal research, court reporting services, travel for depositions,

3   copying and mailing, and other customary litigation expenses."  ECF No. 468 at 16 (citing

4   Dearman Decl. ¶ 11, Exs. 41-42, and Decl. of JCCP Counsel, Ex. C).

5         The Court finds Class Counsel's declarations (*see* ECF No. 469) adequately support their

6   requests and "that the expenses are typical for this type of class litigation, including for experts,

7   mediations, legal research, court reporting services, travel, and copying."  *See In re Lending Club*

8   *Sec. Litig.*, 2018 WL 4586669, at *3 (N.D. Cal. Sept. 24, 2018).  The Court therefore finds the

9   requested expenses reasonable, fair, and adequate.

10        **C.     Service Awards**

11        Service awards are "intended to compensate class representatives for work undertaken on

12  behalf of a class" and "are fairly typical in class action cases."  *DVD-Rental*, 779 F.3d 934, 943

13  (9th Cir. 2015) (internal quotation marks and citation omitted).  The district court must evaluate

14  the Named Plaintiff's requested award using relevant factors including "the actions the plaintiff

15  has taken to protect the interests of the class, the degree to which the class has benefitted from

16  those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the

17  litigation."  *Staton*, 327 F.3d at 977; *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th

18  Cir. 2009) ("Such awards are discretionary . . . and are intended to compensate class

19  representatives for work done on behalf of the class, to make up for financial or reputational risk

20  undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private

21  attorney general.").  Service awards of $5,000 are "presumptively reasonable" in this district.

22  *Bellinghausen*, 306 F.R.D. at 266.  District courts must "scrutiniz[e] all incentive awards to

23  determine whether they destroy the adequacy of the class representatives."  *Radcliffe v. Experian*

24  *Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

25        Here, Named Plaintiffs request service awards of $1,500 for those who were not deposed

26  and $3,500 for the nine Named Plaintiffs who were deposed.  "Named Plaintiffs were willing to

27  Case No.: 5:18-md-02827-EJD
ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION

28  SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
AWARDS

United States District Court
Northern District of California

step forward to represent and protect the interests of the Settlement Class by actively monitoring the status of the litigation, communicating regularly with Class Counsel, searching for and producing responsive documents, responding to interrogatories, and reviewing significant pleadings prior to their filing." ECF No. 468 at 20.  The Court finds that the requested service awards are reasonable in light of Named Plaintiffs' efforts in this case. The requested service awards are also below the presumptively reasonable amount of $5,000 and are consistent with precedent.  *See Allagas v. BP Solar Int'l*, 2016 WL 9114162, at *4 (N.D. Cal. Dec. 22, 2016) (awarding $7,500 to named plaintiffs who were deposed and $3,500 to one named plaintiff who was not deposed).  The Court finds that the requested service awards are appropriate in this case.

### D.  Objections to Attorneys' Fees and Costs Are Overruled

Objector Anna St. John and the Feldman Objectors oppose the renewed motion for attorneys' fees, costs, and service awards.

*First*, both Objector St. John and the Feldman Objectors oppose the requested fees, arguing that an upward adjustment in the Ninth Circuit Benchmark is unsupported by the results achieved and awards in similar cases.  Feldman Objectors' Joint Opp'n to Pls.' and Def.'s Renewed Mot. for Att'ys' Fees, Expenses, and Serv. Awards ("Feldman Obj. to Fee Request") at 2–4, ECF No. ECF No. 638; Obj. of Anna St. John to Pls.' Renewed Mot. for Att'ys' Fees, Expenses, and Serv. Awards ("St. John Obj.") at 5, ECF No. 639.  The Feldman Objectors assert that the *Vizcaino* factors and case law supports a significant downward adjustment.  Feldman Obj. to Fee Request at 4.  Likewise, St. John argues that the *Vizcaino* factors support a downward—not upward— departure from the benchmark (below 17.7%) because this is a "megafund" and the 25% benchmark would result in a windfall to Class Counsel.  St. John Obj. at 5.  Instead, she argues a downward adjustment is appropriate because (1) Class Counsel failed to maximize total recovery that defendant was willing to pay and (2) the size of the settlement fund is a function of the class size (the number of eligible devices).  *Id.* at 6.  This objection largely reiterates St. John's previous objection (*see* ECF No. 523), which the Court rejected.  The Ninth Circuit directed the Court to

Case No.: 5:18-md-02827-EJD
ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV. AWARDS

United States District Court
Northern District of California

1    "more clearly explain" its analysis regarding the *Vizcaino* factors, which the Court has done.

2    *Apple*, 50 F.4th at 784 n.11.  As discussed in Section III.A.1., the Court finds that the *Vizcaino*

3    factors support a modest 1% upward adjustment.

4         *Second*, Objector St. John opposes the 26% fee request as unsupported by the lodestar

5    cross-check.  St. John Obj. at 7.  She argues that the (1) JCCP Counsel work should be excluded

6    and (2) Plaintiff failed to "submit any meaningful breakdown of the aggregated lodestar

7    information to class members."  *Id.* at 8.  She argues that a lodestar multiplier of 1.64 is

8    appropriate.  *Id.* at 9.  The Court finds, however, that JCCP time was properly considered,

9    supported by the record, and included in the lodestar.  *See supra* Section III.A.2.a.  A 2.232

10   lodestar multiplier is appropriate and within the "1 to 4" range "commonly found to be appropriate

11   in common fund cases."  *Aboudi*, 2015 WL 4923602, at *7 (S.D. Cal. Aug. 18, 2015) (citing

12   *Vizcaino*, 290 F.3d at 1051 n.6).  Class Counsel and JCCP Counsel submitted sufficient records of

13   their billing and lodestar calculations.  *See* Decl. of JCCP Counsel; Dearman Decl.

14        Similarly, the Feldman Objectors assert that JCCP Counsel's work is largely duplicative of

15   class counsel and should not be included in the lodestar.  *Id.* at 5–9, 11–12.  As the Court

16   previously discussed, JCCP Counsel's time was beneficial to the class and is supported by the

17   record.  At the hearing, the Feldman Objectors explored the potential of duplicative efforts to no

18   avail, and the Court found that this speculation is unsupported by the record.  1/11/23 Hr'g Tr.

19   45:4–46:3; 50:18–52:9.

20        *Third*, the Feldman Objectors oppose the inclusion of paralegal charges, totaling

21   $2,846,443, and international liaison fees in the lodestar.[12]  Feldman Obj. to Fee Request at 11.

22   As to the inclusion of paralegal fees, the Feldman Objectors previously raised this argument (*see*

23   ECF No. 512).  They failed to present evidence that the paralegal hours may not be included in the

24   lodestar, and the Court once again declines to exclude them.  The Feldman Objectors also contend

25   _____

26   [12] This argument was raised on appeal and the Ninth Circuit did not address international liaison
     fees in its opinion.

27   Case No.: 5:18-md-02827-EJD
     ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
28   SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
     AWARDS

United States District Court
Northern District of California

1    that international liaison counsel fees are undocumented and unsupported and thus should be

2    removed from the lodestar.  *Id.* at 10.  This argument was raised on appeal.  To be clear,

3    international liaison counsel did, in fact, submit declarations in support of their expenses.  *See*

4    ECF Nos. 469-24, 469-27.  Class Counsel also addressed the inclusion of international liaison fees

5    at the hearing.  1/11/23 Hr'g Tr. 74:11–75:4.

6         *Finally*, the Feldman Objectors argue that non-class members should not receive service

7    awards as Named Plaintiffs.  Feldman Obj. to Fee Request at 16.  Service awards to non-class

8    members are permitted.  *See Chambers v. Whirlpool Corp.*, 980 F.3d 645, 670 (9th Cir. 2020)

9    (allowing service award payments to non-class members).

10        For these reasons, the Court OVERRULES the aforementioned objections.

11   **IV.    CONCLUSION**

12        Based upon the foregoing, the Renewed Motion for Final Approval of Class Action

13   Settlement is GRANTED.  The Renewed Motion for Attorneys' Fees, Expenses, and Service

14   Awards is also GRANTED, as follows:

15      • Class Counsel is awarded $995,244.93 in costs;

16      • Each Named Plaintiff who was not deposed is granted a $1,500 service award and each

17        Named Plaintiff who was deposed is granted a $3,500 service award: and,

18      • Class Counsel is awarded $80,600,000 million as attorneys' fees.

19        Without affecting the finality of this order in any way, the Court retains jurisdiction of all

20   matters relating to the interpretation, administration, implementation, effectuation and

21   enforcement of this order and the Settlement, including the designation of a *cy pres* recipient

22   should the need arise.

23        The parties shall file a post-distribution accounting in accordance with this District's

24   Procedural Guidance for Class Action Settlements.

25

26

27   Case No.: 5:18-md-02827-EJD
     ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
28   SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
     AWARDS

United States District Court
Northern District of California

1      **IT IS SO ORDERED.**

2    Dated: February 17, 2023

3

4                                                    _____

5                                                    EDWARD J. DAVILA
                                                     United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   Case No.: 5:18-md-02827-EJD
     ORDER GRANTING RENEWED MOT. FOR FINAL APPROVAL OF CLASS ACTION
28   SETTLEMENT; GRANTING RENEWED MOT. FOR ATT'YS' FEES, EXPENSES, & SERV.
     AWARDS
                                    40